# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

Kohchise Jackson,

    Plaintiff,

v.

Corizon Health, Inc., et al.

    Defendants.

Case No: 2:19-cv-13382
District Judge: Terrence G. Berg
Magistrate Judge: Patricia T. Morris

---

| | |
|---|---|
| MARGOLIS, GALLAGHER & CROSS<br>Lawrence H. Margolis (P69635)<br>Attorney for Plaintiff<br>214 S. Main St., Suite 200<br>Ann Arbor, MI 48104<br>(734) 994-9590<br>larry@lawinannarbor.com<br><br>CORBET, SHAW, ESSAD, & BONASSO, PLLC<br>Daniel R. Corbet (P37306)<br>Kenneth A. Willis (P55045)<br>Attorneys for Prime Healthcare Services,<br>Colleen M. Spencer, and David A. Krause<br>30500 Van Dyke Ave., Suite 500<br>Warren, MI 48093<br>(313) 964-6300<br>daniel.corbet@cseb-law.com<br>kenneth.willis@cseb-law.com | CHAPMAN LAW GROUP<br>Ronald W. Chapman Sr., M.P.A.,<br>LL.M. (P37603)<br>Attorneys for Defendant Corizon Health, Inc.<br>and Keith Papendick, M.D.<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>rchapman@chapmanlawgroup.com |

**DEFENDANT CORIZON HEALTH, INC. AND KEITH PAPENDICK, M.D.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) [ECF NO. 12]**

**EXHIBIT B**    Michigan Department of Corrections Policy Directive 03.04.100 (Effective Date February 1, 2015)

| | | |
|---|---|---|
| MICHIGAN DEPARTMENT OF CORRECTIONS<br># POLICY DIRECTIVE | EFFECTIVE DATE<br>02/01/2015 | NUMBER<br>03.04.100 |
| SUBJECT<br>HEALTH SERVICES | SUPERSEDES<br>03.04.100 (12/29/10) | |
| | AUTHORITY<br>MCL 791.203, 791.233d, 330.1001 *et seq*; 1974 PA 258, The Prison Rape Elimination Act of 2003 | |
| | PAGE   1   OF   11 | |

**POLICY STATEMENT:**

Prisoners shall be provided with a continuum of medically necessary health care services that are supported by evidence based medical research.

**RELATED POLICIES:**

03.03.140    Prohibited Sexual Conduct Involving Prisoners
03.04.101    Prisoner Health Care Copayment
03.04.105    Informed Consent to Medical Care
03.04.110    Control of Communicable Diseases
03.04.120    Control of Communicable Bloodborne Diseases

**POLICY:**

DEFINITIONS

A.   Medical Provider: A qualified health professional who is a licensed physician, physician assistant, or nurse practitioner in the State of Michigan.

B.   Qualified Health Professional (QHP):  A health care professional licensed by the State of Michigan or registered/certified to practice within the scope of his/her training.

C.   Qualified Mental Health Professional (QMHP):  A physician, psychiatrist, nurse practitioner, physician's assistant, psychologist, social worker, or registered nurse who meets the requirements set forth in MCL 330.1001b and is trained and experienced in the areas of mental illness or mental disabilities.

D.   Types of Conditions:

   1.   Emergent:  A condition which requires treatment within one hour.

   2.   Routine:  A condition which requires non-urgent, non-emergent health care contact with a prisoner, including screening, chronic disease follow-up, and requests for elective treatment and surgeries.

   3.   Urgent:  A condition that is not likely to cause death or irreparable harm if not treated immediately.  However, the condition needs to be treated as soon as possible and cannot wait for normal scheduling.

E.   Prisoner Health Record:   All information recorded in electronic form, paper form, or any other medium that pertains to a prisoner's mental and/or physical health care, history, diagnosis, prognosis, or condition that is maintained by a health care provider.

GENERAL INFORMATION

F.   All prisoners in Correctional Facilities Administration (CFA) institutions shall have access to health services as described in this policy, regardless of custody level or security classification.  A prisoner whose health care needs cannot be met at the facility where the prisoner is housed shall be transferred to a facility where those needs can be met, consistent with PD 05.01.140 "Prisoner Placement and Transfer."  The Administrator of the Bureau of Health Care Services (BHCS) shall ensure parolees in Residential Reentry Program facilities and probationers in the Special Alternative Incarceration Program (SAI) are provided access to appropriate health care services.

G. Prisoners shall be charged a fee for health care services as set forth in PD 03.04.101 "Prisoner Health Care Copayment."

H. The use of offenders in medical, pharmaceutical, or cosmetic experiments is prohibited.

I. Prisoners shall not perform direct patient care, schedule medical appointments, determine access to care, handle critical tools or medications (this does not include prisoners handling their own medications/injections as appropriate), operate diagnostic or therapeutic equipment, or have access to information contained in other prisoner's health records.

J. Health care services identified by the BHCS Administrator may be provided to prisoners through telemedicine, which is a video conferencing system that allows for video, audio, and data transmission of information between a prisoner and a health care provider. Telemedicine services shall be provided and documented. BHCS staff shall inform a prisoner if s/he will receive telemedicine services. BHCS staff also shall inform the prisoner that s/he may choose not to receive the telemedicine services but that it will constitute a refusal of health care services and services will not be provided through any other means. Refusals shall be documented as set forth in PD 03.04.105 "Informed Consent to Medical Care."

K. All health care interviews, examinations, procedures, and other encounters shall be conducted in a setting that provides for the prisoner's privacy, consistent with custody and security controls. All information regarding health care and treatment provided to an offender shall be entered in the appropriate prisoner health record as set forth in PD 03.04.108 "Prisoner Health Information."

ORGANIZATION

L. BHCS shall be responsible for the Department's health services program, including coordinating and monitoring all health care services. Services shall be provided under the direction of the BHCS Administrator, in consultation with the Chief Medical Officer (CMO) and/or Chief Psychiatric Officer (CPO), as applicable, and shall include medical, nursing, dental, psychiatric, psychological, and ancillary services. However, all medical, psychiatric, and dental matters involving medical judgment are the sole province of the responsible physician, psychiatrist, or dentist, under the direction of the CMO or CPO, as applicable. Licensed and credentialed health care providers shall practice within the limits of applicable laws and regulations.

M. Health care services may be delivered directly by BHCS or through a health care network provider. If delivered by a network provider, the network provider shall be required to comply with all Department policy directives on the delivery of health care services to prisoners, unless specifically exempted by contract. The contract shall be administered by the BHCS Administrator or designee. The delivery of health care services to prisoners shall be monitored under the direction of the CMO or CPO, as applicable.

N. There shall be a Nursing Advisory Committee, which shall be chaired by a Director of Nursing. Members shall include selected Licensed Practical Nurses and Registered Nurses, and other medical staff as determined by the Director of nursing. The Committee shall be responsible for recommending improvements in the delivery of nursing services, developing nursing guidelines and other responsibilities as determined by the BHCS Administrator.

O. There shall be a Medical Services Advisory Committee, which shall be chaired by the CMO. Members shall include the Assistant Chief Medical Officers (ACMO) and others as determined by the CMO. The Committee shall be responsible for recommending improvements to the delivery of health care services, developing criteria for care to be provided to prisoners with chronic illness, approving medications to be added to the BHCS uniform formulary, and other responsibilities as identified by the BHCS Administrator.

P. There shall be a Psychiatric Services Advisory Committee, which shall be chaired by the CPO. Members shall include the Chief Psychiatrist from the Corrections Mental Health Program and others as determined by the CPO. The Committee shall be responsible for recommending improvements to the delivery of mental health care services and other responsibilities as identified by the BHCS Administrator.

Q. The Health Unit Manager shall be responsible for the operation of the health care clinic, except for issues

Case 2:19-cv-13382-GAD-PTM   ECF No. 17-2, PageID.340   Filed 01/14/20   Page 4 of 12

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 3 OF 11 |

which require medical judgment. The Health Unit Manager shall meet with the Warden of his/her facility as often as necessary but at least quarterly and submit at least quarterly reports and annual statistical summaries on the facility's health care delivery system and health environment to the Assistant Health Services Administrator and to the Warden. The Health Unit Manager shall report immediately to the Warden and the appropriate ACMO, Nursing Director, and Assistant Health Services Administrator any condition that poses a danger to the health of staff or prisoners at the facility.

INTAKE SERVICES

R. The prisoner health record shall be established as soon as possible after the prisoner's arrival at a reception facility as set forth in PD 03.04.108 "Prisoner Health Information." Each prisoner received at a reception facility shall be provided a health screening and full health appraisal as set forth below, except as indicated in PD 04.01.105 "Reception Facility Services."

S. The following shall be provided to each prisoner as soon as possible but no later than eight hours after arrival at a reception facility:

1. A preliminary health screening, including recording height, weight, and vital signs, and arranging for any needed medical treatment, including medicine renewals and detoxification.

2. A suicide risk screening as set forth in PD 04.06.115 "Suicidal and Self-Injurious Behavior" and identification of any immediate mental health needs.

3. An assessment to determine any need for a therapeutic diet pursuant to PD 04.07.101 "Therapeutic Diet Services."

4. Tuberculosis (TB) screening, counseling, and education, as set forth in PD 03.04.115 "Control of Tuberculosis in Offenders."

5. Information regarding how to access health care services.

T. The following shall be completed for each prisoner within 14 calendar days after arrival at a reception facility:

1. A comprehensive history and physical examination by a medical provider, unless documented in the prisoner's health record that one was completed within the preceding year.

2. A comprehensive health appraisal by an appropriate QHP, unless documented in the prisoner's health record that one was completed within the preceding 90 calendar days. This shall include the following:

    a. Reviewing preliminary health screening conducted pursuant to Paragraph R.

    b. All necessary lab tests.

    c. Appropriate diagnostic procedures and treatment, including for chronic illness.

    d. Any necessary immunizations.

    e. Dental screening and examination as set forth in PD 04.06.150 "Dental Services." The screening shall be provided no later than seven calendar days after arrival.

    f. Psychological screening and additional testing, if indicated.

    g. Assessing disabilities and arranging for any necessary accommodations or medical details as set forth in PD 04.06.160 "Medical Details and Special Accommodation Notices."

3. A comprehensive assessment shall be conducted by custody staff to determine whether a prisoner has experienced prior sexual victimization or has previously perpetrated sexual abuse

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 4 OF 11 |

and whether it occurred in an institutional setting or in the community. If the assessment determines a prisoner has such a history, the prisoner shall be offered a follow-up meeting with a QMHP within 14 calendar days of the assessment.

U. The following also shall be completed for each prisoner within 14 calendar days after arrival at a reception facility, unless otherwise determined by the BHCS Administrator or designee:

1. Provide screening and/or testing for Human Immunodeficiency Virus (HIV) and Hepatitis C Virus (HCV) as set forth in PD 03.04.120 "Control of Communicable Bloodborne Diseases." The prisoner also shall be provided health education and counseling on HIV and HCV as required by PD 03.04.120, including information on prevention and the risks associated with exposure.

2. Provide health education and counseling on Hepatitis B Virus (HBV) and administer a HBV or corresponding vaccine to all prisoners consenting to vaccination, as set forth in PD 03.04.120.

3. Provide advance directives information and document the prisoner's response in the prisoner's physical health file, as set forth in PD 03.04.107 "Advance Directives for Health Care."

4. Referral to QHP specific to identified prisoner needs.

5. Identify any substance abuse related health problems (e.g., chemical dependency) and provide treatment as required.

V. All female prisoners (excluding those that are already pregnant) must be tested for pregnancy at intake. The following guidelines shall be followed:

1. All female prisoners under 55 years of age, unless physical exam and/or documentation make pregnancy impossible (i.e. previous hysterectomy), must have a pregnancy test upon arrival to Women's Huron Valley Correctional Facility (WHV). Female prisoners who are pregnant shall be provided information on specific health services available related to their pregnancy (e.g., pre-natal care).

2. All female prisoners who have a negative initial pregnancy test shall have an additional test performed 4-6 weeks later to confirm they are not pregnant.

3. Prisoners will not be cleared for transfer from WHV (i.e. to SAI) until the second pregnancy test is completed and the results are negative.

4. The appropriate Medical Officer and CMO shall be informed if any prisoner eligible for a pregnancy test refuses.

W. A valid DNA sample shall be collected from all prisoners, including probationers in SAI, in accordance with MCL 791.233d, unless a valid sample has already been collected pursuant to the DNA Identification Profiling System Act, 250 PA 1990, and MCL 28.171 – 28.176. Consent is not required to collect the sample. A DNA Sample–Collection Record form (CHJ-269) shall be completed documenting the offender's compliance with or refusal to provide the sample. The Department is not required to give the prisoner an opportunity for a hearing or obtain a court order before collecting the sample. Any sample collected must be submitted to the Michigan State Police pursuant to the DNA Identification Profiling System Act. If an offender refuses to allow staff to collect the sample and after consultation with the Warden, health care staff determines that the sample cannot be collected without undue danger to staff or the prisoner, appropriate health care staff shall contact the CMO, who shall consult with the CFA Deputy Director to obtain further direction on how to proceed. DNA samples shall be collected from newly committed prisoners by Health Care as part of intake processing, when notified by the records office. For prisoners and SAI probationers, the sample shall be collected by health care staff during the first 90 days after intake.

SERVICES PROVIDED AT ANNUAL HEALTH CARE SCREENING

X. Health care staff shall schedule an annual health care screening appointment for each prisoner in a CFA facility within 30 calendar days before or after the prisoner's birthday, unless the prisoner is in SAI.

Case 2:19-cv-13382-GAD-PTM ECF No. 17-2, PageID.342 Filed 01/14/20 Page 6 of 12

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 5 OF 11 |

Prisoners who are not seen on the scheduled day shall be rescheduled within the 30 calendar day period. A prisoner who does not attend the subsequent health care screening appointment shall be rescheduled and seen by a medical provider to discuss the reason for the screening and to sign a release of responsibility if the prisoner declines the screening. Prisoners who are hospitalized at the time of their regularly scheduled annual health screen may have the time adjusted as necessary.

Y. The health status of the prisoner at the time of the annual health care screening shall be documented by a Registered Nurse (RN) or Licensed Practical Nurse (LPN) in the prisoner's health record and the prisoner referred as necessary to the appropriate QHP as indicated by the screening. The screening shall include the following:

   1. Recording vital signs, including weight.

   2. TB screening, counseling, and education as set forth in PD 03.04.115 "Control of Tuberculosis in Offenders."

   3. Reviewing continued need for any currently valid accommodations and medical details issued pursuant to PD 04.06.160 "Medical Details and Special Accommodation Notices."

   4. Reviewing HBV vaccine status.

   5. Providing health education and counseling, including for HIV, HBV, and HCV. Information regarding HIV and HCV shall be provided both verbally and in writing, and include information on prevention and the risks associated with exposure.

   6. Referral to an appropriate QHP, if indicated.

CHRONIC CARE SERVICES

Z. Prisoners with chronic diseases or disorders as set forth in the chronic care guidelines approved by the CMO shall be provided health care services for chronic diseases or disorders as needed. Prisoners who are seen for chronic care shall be identified in the prisoner's health record.

CORRECTIVE AND RECONSTRUCTIVE SURGERY SERVICES

AA. Corrective surgery is a surgical procedure to alter or adjust body parts or the body structure. Reconstructive surgery is a surgical procedure to reform body structure or correct defects. For purposes of this policy, corrective and reconstructive surgery does not include procedures which can be done under local anesthesia.

BB. Corrective and reconstructive surgery shall be authorized for a prisoner only if determined medically necessary and only if approved by the CMO. It shall not be approved if the sole purpose is to improve appearance.

CC. Before referring a prisoner for corrective or reconstructive surgery, the medical provider shall monitor the prisoner's condition for an appropriate period of time to establish the actual degree of disability or dysfunction. The feasibility of corrective or reconstructive surgery shall be evaluated to determine whether to make a referral. This shall include evaluating the expected improvement in the prisoner's level of functioning, any risks and their probabilities, and available non-surgical treatments.

MENTAL HEALTH SERVICES

DD. Mental health services shall be provided to prisoners in accordance with PD 04.06.180 "Mental Health Services" and PD 04.06.183 "Voluntary and Involuntary Treatment of Mentally Ill Prisoners" when any of the following circumstances occur:

   1. A referral is made by an appropriate QHP after assessment at intake, transfer into the facility, at the ambulatory care clinic, during segregation or other rounds, or at the annual health screening.

   2. A prisoner requests mental health services. The request shall be referred to a QMHP within 24

Case 2:19-cv-13382-GAD-PTM ECF No. 17-2, PageID.343 Filed 01/14/20 Page 7 of 12

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 6 OF 11 |

    hours after receipt of the request by health care services.

  3. A referral is made by a non-health care Department employee based on the prisoner's behavior. The Mental Health Services Referral form (CHX-212) shall be used for this purpose and referred to a QMHP within two hours after receipt by health care services.

  4. Follow-up care as determined appropriate by a QMHP.

DENTAL SERVICES

EE. Prisoners shall be provided dental services in accordance with PD 04.06.150 "Dental Services" through any of the following:

  1. Referral by a QHP after assessment at intake, transfer into the facility, at the ambulatory care clinic, or at the annual health screening.

  2. Prisoner request for dental services.

  3. Referral to a dental specialist by the primary dentist.

  4. Follow-up as determined appropriate by the primary dentist.

ANCILLARY SERVICES

FF. Health care staff shall ensure that necessary ancillary services are provided to prisoners as ordered by a medical provider. The services may be provided on-site or off-site and may include:

  1. Pharmacy services.

  2. Laboratory services.

  3. Radiology services.

  4. Physical therapy services and other therapies such as occupational and speech.

  5. Dietary services, which shall include evaluation by a registered dietician for special or therapeutic diets.

  6. Optometric services as set forth in PD 04.06.165 "Optometric Services."

ADDITIONAL SERVICES

GG. Health care staff shall ensure that additional necessary services are provided as ordered by a medical provider. Additional services that are available include the following:

  1. Specialty service appointments. These appointments shall be scheduled by health care staff as soon as possible after receipt of an approved referral. The Medical Provider must complete, at a minimum, a chart review of the prisoner every 30 calendar days leading up to the offsite evaluation.

  2. Routine medical/surgical inpatient care, long-term inpatient care, hospice services, and rehabilitative services. This care shall be obtained through the Duane L. Waters Health Center (DWH), an approved local hospital including a secure unit hospital, or a medical center when available and medically appropriate.

  3. Hospital based outpatient diagnostic or therapeutic services. These services shall generally be scheduled at DWH, an approved local hospital including a secure unit hospital, or a medical center; however, alternative local services may be used if the services will be provided in a more cost efficient or timely manner and there are no overriding custody concerns. Decisions on appropriateness of the site shall be made in consultation with the health care network provider.

    4.    Long term care. This care shall be provided in units established to provide such care.

OUTSIDE HEALTH SERVICES AT PRISONER'S EXPENSE

HH.    While the Department is responsible for providing prisoners with necessary health care services, prisoners may be allowed to receive health services by an outside QHP with prior approval of the Warden after consultation with the appropriate ACMO. A request which poses a custody and security concern shall be denied, including if custody coverage is unavailable. If approved, the Warden is responsible for approving all security measures.

II.    Custody coverage shall be provided on a volunteer basis only by qualified corrections officers who are not assigned to the regular shift for which the coverage is required and who are not related to the prisoner by blood or marriage. Officers shall be compensated in accordance with Civil Service Commission rules and the Department of Technology, Management and Budget Standardized Travel Regulations. Receipts for all expenses, including meals, shall be required for officer reimbursement. Pay shall be only for actual hours worked. Each officer shall be fully paid for custody coverage on the next regular payroll.

JJ.    If a prisoner is approved to receive health services by an outside QHP, the prisoner is responsible for all costs, including any costs for transportation and custody coverage. The estimated costs must be paid in full by or on behalf of the prisoner, or adequate funds must be encumbered in the prisoner's trust account, prior to receiving the approved health care service. Approval shall be withdrawn if verification is not received prior to the scheduled visit that payment has been made in full or that the prisoner has sufficient funds in his/her account to pay the costs. The actual cost shall be calculated after the prisoner has returned. If the actual cost is less than the estimated cost, the difference shall be refunded. If subsequent treatment or testing is approved by the Warden after consultation with the ACMO, the prisoner shall be advised prior to the treatment or testing that s/he will be responsible for all costs of the subsequent treatment and testing, including any costs resulting from complications arising from the treatment or any follow-up therapies.

KK.    An outside QHP may examine a prisoner at one of the Department's institutions or at an off-site location. Prior arrangements shall be made with the Warden and, if the examination will occur at a Department institution, the Health Unit Manager. The Warden shall be responsible for making all necessary security arrangements. If the examination will occur in a Department facility, an appropriate clinic location shall be arranged for the examination.

LL.    Before being seen by an outside QHP, the prisoner must provide a signed release authorizing the QHP to review relevant portions of the prisoner's physical health file. The prisoner also must supply a written agreement from the QHP to comply with any security measures required, to furnish the Department with a written summary of the findings and any recommendations, and to not provide or order treatment or further testing without prior approval of the Warden after consultation with the appropriate ACMO. After receipt, appropriate health care staff shall review the written summary provided by the QHP with the prisoner.

MM.    The outside QHP shall be viewed as a consultant only. Responsibility for the case management of a prisoner rests with BHCS. The Department assumes no liability for approving a request to receive outside medical services or for any outside medical services provided.

PRISONER REQUESTS FOR ROUTINE HEALTH SERVICES

NN.    Prisoners shall submit a Health Care Request (CHJ-549) to request routine health care services, including reassessment of the need for an assistive device or other service provided the prisoner to meet his/her medical needs. Housing unit staff shall assist illiterate prisoners and others who are unable to complete the form. A locked container shall be provided which is easily accessible to all general population prisoners in which they can place the form; these containers shall be opened only by health care staff. Health care staff shall collect the forms at least daily; the date and time of receipt of each form and presenting complaint shall be documented in the prisoner's health record.

OO.    An appropriate QHP shall triage the information presented on the Health Care Request as soon as possible but no later than one business day after initial receipt by health care staff. Requests shall be

addressed as follows:

1. For conditions which could be emergent, schedule the prisoner to be seen immediately by an appropriate QHP.

2. For conditions which could be urgent, schedule the prisoner to be seen by an appropriate QHP no later than the next business day.

3. In all other cases, provide the prisoner a written response or an appointment within five business days after receipt of the request. For medication issues, the matter may be referred to a Pharmacy Assistant or LPN to take appropriate action; for health record information, the matter may be referred to a Health Information Manager.

PP. In all cases, whenever a prisoner is referred to a medical provider for a routine matter, the medical provider shall see the prisoner within five business days of the referral.

REQUESTS FOR URGENT/EMERGENT HEALTH SERVICES

QQ. Wardens shall ensure that telephone numbers necessary for provision of emergency health care are readily available to appropriate staff at their facility. On-duty health care staff shall ensure that the facility's Control Center is aware of how to contact them at all times. Staff shall respond in accordance with PD 03.04.125 "Medical Emergencies" whenever a person is determined to be in need of emergency medical attention.

RR. Any prisoner who believes s/he has an urgent/emergent health condition may request health care services by notifying staff of the problem which the prisoner believes requires an immediate health care visit. The staff person shall contact health care services and convey the prisoner's request, regardless of the prisoner's custody status or the time or day of the request; staff shall similarly contact health care services whenever s/he believes that a prisoner may have an urgent/emergent health condition even if the prisoner has not requested a health care visit. The contact shall be responded to within two hours by one or more of the following methods, as determined by the QHP:

1. The prisoner shall be allowed to speak directly to the QHP by telephone.

2. The prisoner shall be allowed to go to the health services area.

3. The QHP shall go to the prisoner's location to conduct an evaluation.

SS. Staff may contact the facility's on-call medical provider for urgent health care complaints made by prisoners. If the on-call medical provider cannot be reached, the ACMO for the health care network provider shall be contacted. When warranted and possible, the medical provider shall speak directly to the prisoner when making a telephone evaluation.

TT. Prisoners who require urgent care shall be sent to a local hospital or local emergency clinic if a QHP determines necessary services cannot be provided at the facility. An ambulance shall be used whenever deemed necessary by appropriate health care staff.

UU. A prisoner, who is alleged to have been sexually abused less than 96 hours previously and where forensic evidence may be present, shall be transported to a local hospital for a forensic medical examination. The examination shall be performed by a Sexual Assault Forensic Examiner (SAFE) or Sexual Assault Nurse Examiner (SANE), where possible. If a SAFE or SANE cannot be made available, the examination can be performed by another qualified medical practitioner. Efforts to provide the examination by a SAFE or SANE shall be documented in the prisoner's health record. Prisoner victims of sexual abuse shall be provided treatment services without financial cost to the prisoner.

VV. Facilities shall offer medical and mental health evaluations and treatment that is determined medically necessary to prisoners who have been victimized by sexual abuse. Female prisoner victims of sexual abuse shall be offered a pregnancy test. Prisoner victims of sexual abuse while incarcerated shall be offered tests for sexually transmitted diseases as deemed medically appropriate. Treatment for services shall be provided to the victim without financial cost regardless of whether the victim names the abuser or

cooperates with any investigation.

WW. A prisoner who has been treated off-site for an urgent or emergent condition shall be seen by an RN for follow-up no later than the next business day or, if hospitalized, no later than the business day following his/her return to the facility. The RN shall consult with the on-call or on-site medical provider as necessary to ensure that the prisoner's health care needs are met. If follow-up is not necessary, the RN shall direct the prisoner to request follow-up as the need arises. If follow-up is required, the RN shall respond by taking one of the following actions, as deemed appropriate:

1. Schedule the prisoner for an appointment no later than the next business day with a medical provider.

2. Schedule a chart review by a medical provider to be completed within five business days after the prisoner's return to the facility.

XX. Each health care clinic shall maintain an urgent/emergent log to document every prisoner contact for urgent or emergent health care services; this is required only until data can be entered into and retrieved from the prisoner's health record.

SICK CALL ACCESS

YY. Health care staff shall provide prisoners with access to sick call through ambulatory care clinics. Access shall be permitted by request of the prisoner or staff, including requests made during rounds.

ZZ. Sick call shall be available to prisoners through an ambulatory care clinic at least five days per week. Prisoners who appear for a scheduled clinic visit but are not seen on that day will be seen at the next clinic without having to resubmit a written request for services. Any prisoner who presents the same symptoms/clinical findings three times in a 30 calendar day period shall be referred to a medical provider. However, if a Medical Services Advisory Committee guideline addresses the issue (e.g., special accommodation request for a bottom bunk, cotton blanket, and specialized shoes); it shall first be determined whether the prisoner meets the requirements of the guideline.

FAILURE TO REPORT FOR A SCHEDULED HEALTH SERVICES APPOINTMENT

AAA. Health care staff shall follow-up on all appointments for which the prisoner failed to report (no show). If rescheduling is necessary, the prisoner shall be seen by an appropriate QHP within a time frame appropriate to the prisoner's condition. A misconduct report may be written on a prisoner who misses an appointment, when appropriate.

BBB. If a prisoner is scheduled for treatment and chooses not to receive the treatment that decision shall be documented as set forth in PD 03.04.105 "Informed Consent to Medical Care." Continued treatment shall be provided in accordance with PD 03.04.105; however, the prisoner shall be seen by a medical provider within a time frame appropriate to the prisoner's condition for counseling about the importance of having his/her health care needs addressed. Health care staff shall continue to schedule the prisoner for necessary chronic and convalescent care follow-up, annual health assessments, and counseling on the importance of these visits even though there exists documented refusal of treatment for previous appointments.

HEALTH EDUCATION AND COUNSELING

CCC. Health care staff shall take an active role in providing instruction and information to prisoners for self care, including the following:

1. All prisoners shall be provided with health education and wellness information at the time of the prisoner's annual health screening.

2. Patient education regarding TB, hepatitis infection, HIV infection, and AIDS shall be given to each diagnosed prisoner at the time test results are provided to him/her and as necessary throughout the course of the prisoner's illness. Counseling also shall be provided to the prisoner as determined necessary by health care staff.

Case 2:19-cv-13382-GAD-PTM   ECF No. 17-2, PageID.347   Filed 01/14/20   Page 11 of 12

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 10 OF 11 |

3.   Each prisoner shall be instructed by health care staff regarding the advantages and risks of vaccination before s/he receives any immunization.

4.   Health care staff shall provide appropriate patient education to all prisoners with a chronic disease or who are diagnosed with a chronic illness regarding the disease or illness during chronic care clinic visits.

5.   All convalescent prisoners and prisoners who are discharging from an inpatient unit shall receive education regarding their condition and necessary follow-up.

6.   Upon request, prisoners will be given the "Patient's Authorization for Disclosure of Health Information," form CHJ-121.

SEGREGATION

DDD.   Health care staff shall make rounds in segregation units as set forth in PD 04.05.120 "Segregation Standards" and PD 04.06.182 "Mentally Disabled Prisoners in Segregation." During rounds, health care staff shall visit each prisoner, collect written requests for health care services, and follow up on any health care concerns. The presence of health care staff shall be announced in the unit and documented in the unit's logbook.

EEE.   Health care services shall be provided to segregation prisoners in the housing unit clinic area when medically appropriate. If not medically appropriate, the prisoner shall be escorted to the health care clinic. Any prisoner who presents to the nurse three times within a 30 calendar day period with the same health complaint shall be referred to a medical provider. However, if a Medical Services Advisory Committee guideline addresses the issue (e.g., special accommodation request for a bottom bunk, cotton blanket, specialized shoes), it shall first be determined whether the prisoner meets the requirements of the guideline.

CFA INTER-INSTITUTIONAL TRANSFERS

FFF.   The BHCS Administrator shall ensure that an Onsite Health Care Services Grid identifying the health care services and special accommodations available at each facility is maintained and available to health care and facility staff. Prior to transfer to another facility, prisoners shall be medically cleared for the transfer consistent with the Onsite Health Care Services Grid and in accordance with PD 05.01.140 "Prisoner Placement and Transfer." Clearance codes shall be updated prior to the transfer, as necessary.

GGG.   Health care staff shall complete routine requests for medical clearance for transfer within three business days after receiving the request. Urgent requests for medical clearance for transfer shall be addressed during the shift in which the request is received or as soon thereafter as possible.

HHH.   Prisoners shall be seen by an RN or LPN as soon as possible but no longer than 24 hours after arrival at a CFA facility. The RN or LPN shall do all of the following:

1.   Observe and interview the prisoner.

2.   Review the prisoner's health record.

3.   Complete transfer screening.

4.   Ensure that the prisoner has the necessary medications and special accommodations.

5.   Provide orientation to the medical program at the facility. Special instructions, if appropriate, shall be given to a prisoner enrolled in the chronic care clinic program.

6.   Schedule appropriate referrals, including as needed to ensure that prescription medication is available to the prisoner and continued or discontinued, as appropriate.

| DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
|---|---|---|---|
| POLICY DIRECTIVE | 02/01/2015 | 03.04.100 | PAGE 11 OF 11 |

HEALTH SERVICES PRIOR TO RELEASE

III. Prior to a prisoner paroling or discharging, health care staff shall provide the prisoner with HCV health education/disease prevention information. Prior to discharge, the prisoner shall be tested for HIV and Hepatitis C as set forth in PD 03.04.120 "Control of Communicable Bloodborne Diseases." Unless previously provided, a DNA sample also shall be taken from the prisoner prior to discharge as set forth in PD 03.01.135 "Discharge/Termination of Sentence."

JJJ. Mentally ill prisoners who may require continuing institutional care or other mental health service upon discharge shall be referred by the Assistant Health Services Administrator to the Bureau of Forensic Mental Health Services, Department of Community Health, as set forth in PD 03.01.135 "Discharge/Termination of Sentence."

PROCEDURES

KKK. The BHCS Administrator shall ensure that procedures are developed as necessary to implement requirements set forth in this policy directive; this shall be completed within 60 calendar days after the effective date of the policy directive.

AUDIT ELEMENTS

LLL. A Primary Audit Elements List has been developed and is available on the Department's Document Access System to assist with self audit of this policy pursuant to PD 01.05.100 "Self Audit of Policies and Procedures."

APPROVED: DHH   12/19/14