**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KOHCHISE JACKSON**,
 Plaintiff,

v.

**CORIZON HEALTH, Inc.,**, et al,
Defendants.

Case No.: 2:19-cv-13382
Hon.: Terrence G. Berg
Mag.: Patricia T. Morris

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT CORIZON HEALTH,
INC. AND KEITH PAPENDICK, M.D.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6) [ECF NO. 12]**</u>

_____

Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
*Margolis, Gallagher & Cross*
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: larry@lawinannarbor.com

Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
*Corbet, Shaw, Essad & Bonasso, Pllc*
Attorneys for Defendant Prime Healthcare
Services, Colleen Spencer and David Kraus
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
Phone: (313) 964-6300
Email: daniel.corbet@cseb-law.com
Email: kenneth.willis@cseb-law.com

Ronald W. Chapman Sr., (P37603)
*Chapman Law Group*
Attorneys for Defendant Corizon Health, Inc.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
Phone: (248) 644-6326
Email:rchapman@chapmanlawgroup.com

# **TABLE OF CONTENTS**

Page

ARGUMENT……..…………………………………………...…………………..1

I.     PLAINTIFF HAS ADEQUATELY PLED MONELL LIABILITY ON THE BASIS OF ACTIONS TAKEN BY AN OFFICIAL WITH FINAL DECISION-MAKING AUTHORITY………………………1

     (a) Defendant Papendick is sued in his individual capacity…………..1

     (b) Plaintiff can plead a Monell claim on the basis of a single incident of misconduct………………………………………………………...3

II.    PLAINTIFF HAS ALSO ADEQUATELY PLED MONELL LIABILITY ON THE BASIS OF CORIZON'S OFFICIAL POLICY………………………………………………………………6

III.   DEFENDANTS CANNOT USE DOCUMENTS OUTSIDE THE PLEADINGS TO CHALLENGE THE VERACITY OF FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT WITHOUT CONVERTING THEIR MOTION TO A MOTION FOR SUMMARY JUDGMENT…………………………………………8

IV.   THE CORIZON DEFENDANTS WERE SUBJECTIVELY AWARE OF PLAINTIFF'S MEDICAL NEED………………………………14

V.    MR. JACKSON'S NEED FOR A COLOSTOMY REVERSAL WAS 'SUFFICIENTLY SERIOUS' TO IMPLICATE THE EIGHTH AMENDMENT……………………………………………..……..16

CONCLUSION………………………………………………………….......21

## **ARGUMENT**

## I.   **PLAINTIFF HAS ADEQUATELY PLED** *MONELL* **LIABILITY ON THE BASIS OF ACTIONS TAKEN BY AN OFFICIAL WITH FINAL DECISION-MAKING AUTHORITY**

In their Motion to Dismiss, Defendants Corizon Health, Inc. and Dr. Keith Papendick (hereafter "the Corizon Defendants,") construe Plaintiff's allegation that Defendant Papendick is a Corizon "official with final decision-making authority" as an official-capacity-only designation, sidestepping both the pleading standard for *Monell* claims premised on the acts of final decisionmakers and the issue of Dr. Papendick's personal liability. Essentially, the Corizon Defendants are taking the position that Corizon Health, Inc. cannot be held liable under *Monell* for a decision made by its employee, and that its employee also cannot be held liable because he is sued only in his "official" capacity, which is no different from a suit against Corizon. The Corizon Defendants misread both *Monell* and the Amended Complaint.

### a)  **Defendant Papendick is sued in his individual capacity.**

There is no need for a Plaintiff to distinguish a defendant's "official" vs. "individual" capacity when no government employees are parties to the lawsuit. *See Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) ("the Eleventh Amendment creates a jurisdictional bar to suits against states and state employees

1

sued in their official capacities for money damages; Rule 9(a) states in relevant part that it is not necessary to aver the capacity of a party . . . except to the extent required to show the jurisdiction of the Court.") "Official capacity" suits against public officials exist as a mechanism to circumvent a State's Eleventh-Amendment sovereign immunity when a plaintiff is seeking only prospective injunctive relief. They are premised on a legal fiction, first promulgated in *Ex. parte Young*, 209 U.S. 123 (1908), "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 248 (2001). A § 1983 plaintiff can therefore bring a suit for injunctive relief against a state official in his official capacity to enjoin allegedly unconstitutional State conduct, and any injunction the plaintiff obtains against the official will effectively function as an injunction against the State. But because the State is not technically named as a defendant, the Eleventh Amendment is not implicated. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493 (2011).

Here, Defendant Papendick is not a State official, Defendant Corizon is not a State agency, and Plaintiff is not seeking injunctive relief, so there is no logical reason to construe the allegations against Defendant Papendick as "official-capacity-only" claims. But even assuming, *arguendo*, some ambiguity as to whether Plaintiff's Amended Complaint demonstrates an intent to hold Dr. Papendick

2

personally liable or merely to name Corizon as a defendant twice, a § 1983 plaintiff can resolve 'capacity' ambiguities in his response to a defendant's motion to dismiss. *See Moore v. City of Harriman*, 272 F.3d 769, 773-74 (6th Cir. 2001). Therefore, to resolve any ambiguity, Plaintiff hereby notifies Dr. Keith Papendick that he is seeking to hold him personally liable in his individual capacity for the constitutional torts alleged in Plaintiff's Amended Complaint. Plaintiff is suing Defendant Papendick in his individual capacity.

### b) Plaintiff can plead a *Monell* claim on the basis of a single incident of misconduct.

Contrary to the Corizon Defendants' assertions, Plaintiff is not required to demonstrate a "pattern" of unconstitutional conduct to state a *Monell* claim against a corporation or municipality. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). That is because "[t]he requirement that a municipality's wrongful actions be a "policy" is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994). Rather:

> "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the

3

municipality"— that is, acts which the municipality has officially sanctioned or ordered."

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). (emphasis in original).

There are "at least four avenues" by which a plaintiff can establish municipal (or corporate) liability under *Monell*. A plaintiff can point to:

"(1) the municipality's legislative enactments or official policies;
(2) actions taken by officials with final decision-making authority;
(3) a policy of inadequate training or supervision; or
(4) a custom of tolerance or acquiescence of federal violations."

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (2005).

The Corizon Defendants' Motion addresses only the pleading standards for the "official policy" and "custom of tolerance or acquiescence" (AKA "custom of acquiescence or inaction") bases of municipal liability. Defendants do not address the standard for pleading *Monell* liability on the basis of an action taken by an official with final decision-making authority, despite Plaintiff's clear intent to plead a *Monell* claim on this basis. (**ECF No. 12, Amended Complaint, ¶ ¶ 37, 50, 80, 83.**) The Corizon Defendants' Motion should be denied for this reason alone.

*Monell* liability attaches for the decisions of corporate officials exercising their policymaking authority, when "a deliberate choice to follow a course of action is made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur,*

4

475 U.S. at 483. The word "policy" in the *Monell* context encompasses not only

formal written or unwritten rules intended to control the corporate entity's decisions

over time, but also:

> "a course of action tailored to a particular situation and not intended to
> control decisions in later situations. **If a decision to adopt a particular
> course of action is made by that government's authorized
> decisionmakers, it surely represents an act of official government 'policy'
> as that term is commonly understood.**"

> *Pembaur*, 475 U.S. at 481 (emphasis added).

The "subject matter in question" in this case was whether to approve a 407

request for a surgical consult for reversal of Mr. Jackson's temporary colostomy.

Plaintiff alleges that a Corizon medical provider at the Cooper St. Correctional

Facility submitted the 407 request to Corizon's Utilization Management office on or

about April 18th, 2017. (**ECF No. 12, Amended Complaint, PageID.193).** Plaintiff

alleges that Defendant Papendick, Corizon's Director of Utilization Management,

"refused/deferred the request for a surgical consult for colostomy reversal for Mr.

Jackson." *Id.* Plaintiff further alleges that Defendant Papendick "processes

approximately two thousand 407s per month," (**ECF No. 12, PageID.194**), that no

other Corizon employee in Michigan had similar job responsibilities, (**ECF No. 12,

PageID.190**), and that Defendant Papendick "is an official with final decision-

making authority with respect to whether 407 requests are approved." (**ECF No. 12,**

**PageID.191**). Plaintiff has therefore pled a *Monell* claim on the basis of an action taken by a Corizon official with final decision-making authority. Additionally, Corizon cannot evade liability by claiming that "final" decisionmaking authority was vested in some other official who did not rule on the matter:

> "[a] municipality may not escape *Monell* liability . . . by simply delegating decisionmaking authority to a subordinate official and thereafter studiously refusing to review his unconstitutional action on the merits."

> *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994).

## II.   PLAINTIFF HAS ALSO ADEQUATELY PLED *MONELL* LIABILITY ON THE BASIS OF CORIZON'S OFFICIAL POLICY

Although Plaintiff is not required to plead more than one basis for *Monell* liability, he has also stated a claim against Corizon under the "official municipal policy" standard. The Corizon Defendants appropriately cite *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) for the pleading standard for *Monell* claims on the basis of an official policy: "a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."

In this case, the particular injury at issue is a refusal to perform Plaintiff's scheduled colostomy take-down surgery. Plaintiff alleged that this refusal was pursuant to a policy of denying all requests for referrals to specialists or surgeons submitted by Corizon's on-site medical providers, unless a failure to provide the requested treatment would endanger life or limb or create difficulties with ADLs. (**ECF No. 12, PageID.192**). Plaintiff even identified another instance in which, pursuant to the same policy, a different Michigan prisoner with a temporary colostomy was denied a reversal surgery by Defendant Papendick's predecessor at Corizon's Utilization Management office. (**ECF No. 12, PageID.192**).

Plaintiff adequately alleged that his injury was incurred because of this policy, rather than because reversal of his temporary colostomy was medically contraindicated. Dr. Kansakar, who performed the emergency surgery to create the colostomy, had previously cleared Plaintiff for the Hartmann's Step-II takedown procedure and scheduled him for the reversal. (**ECF No. 12, PageID.188**). The UpToDate database, which Dr. Papendick is required to rely on when formulating "Alternative Treatment Plans," does not recommend permanent colostomy as a treatment for colovesical fistulas. (**ECF No. 13, Page.ID 270-284**). And Plaintiff received the reversal surgery through Michigan's Medicaid program almost immediately upon his release on parole. (**ECF No. 12, Page.ID 201**). Any lingering doubt about whether Plaintiff's damages were incurred because of the execution of

7

an official policy can be resolved by reference to the responses Mr. Jackson received

to his administrative grievances:

> "a referral for surgical consultation regarding colostomy reversal was submitted and denied based on no medical necessity documented . . . POLICY IS NO REVERSALS unless there is a MEDICAL REASON."

> (**ECF No. 12, Page.ID 268**) (emphasis in original).

## III. DEFENDANTS CANNOT USE DOCUMENTS OUTSIDE THE PLEADINGS TO CHALLENGE THE VERACITY OF FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT WITHOUT CONVERTING THEIR MOTION TO A MOTION FOR SUMMARY JUDGMENT

In Part B of their Motion to Dismiss, the Corizon Defendants introduce MDOC

Policy Directive 03.04.100, a document mentioned in a letter to Plaintiff from the

Office of the Legislative Corrections Ombudsman. That letter was attached to the

Amended Complaint as an exhibit. The Corizon Defendants introduce this document

in support of a claim that "the MDOC, through the CMO, has ultimate authority to

authorize corrective or reconstructive surgery, *not* Corizon or its employees." (**ECF

No. 17, Page.ID 325**) (emphasis in original). They cite *Weiner v. Klaise & Co.*, 108

F.3d 86, 89 (6th Cir. 1997) for the proposition that "[a] defendant may introduce a

document incorporated by reference in a complaint if it is not attached by plaintiff" in a Motion to Dismiss. (**ECF No. 17, Page.ID 324**).

In making this argument, the Corizon Defendants are challenging to the veracity of facts alleged in the Amended Complaint, rather than to the Complaint's legal sufficiency. What *Weiner* held was that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint **and are central to her claim.**" *Weiner*, 108 F.3d at 89 (quoting *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429 (7th Cir. 1993)) (emphasis added). The document at issue in *Weiner* was the insurance contract for a group health insurance plan. The claim was that the defendant failed to pay benefits that it was required to pay pursuant to the plan. *Id.* at 88. "This is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see also Bowens v. Aftermath Entm't*, 254 F.Supp 2d 629, 639-40 (E.D. Mich. 2003).

Where, as here, "the attached document does not itself form the basis for the allegations, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." *Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008). If a defendant uses a disputed factual statement

contained in an exhibit (or a document referenced in an exhibit) to support its position on the merits, the plaintiff "should [be] allowed to refute that evidence, and provide its own as well, in a full motion for summary judgment." *Burns v. United States*, 542 Fed.Appx. 461, 467 (6th Cir. 2013); *accord.*, *Passa v. City of Columbus,* 694 Fed.Appx. 697-98 (6th Cir. 2005).

Here, the Corizon Defendants imply that the decision not to reverse Plaintiff's colostomy was made by the Chief Medical Officer (CMO) of the Michigan Department of Corrections, *not* by Corizon or its employees. But Plaintiff alleges that the decision was made by Corizon's Director of Utilization Management, Dr. Keith Papendick, between April 17, 2017, and April 27, 2017. (**ECF No. 12, Amended Complaint, ¶ 50, Page.ID 193**). Plaintiff alleges that the Acting CMO at the time, Dr. William Borgerding, had no involvement in the decision. (**ECF No. 12, ¶ 57, Page.ID 194**). On June 25, 2018, Defendant Papendick testified in a deposition[1] that he reviews all 407 requests (requests for specialty care, surgery, etc.), coming from Michigan prisons, except those that were automatically approved per Corizon's written Utilization Management protocols. See Ex. A: Papendick Deposition, 06/25/2018. In a different deposition, Defendant Papendick testified that

---

[1] Deposition testimony from another case can be used in the same manner as an affidavit to oppose a motion for summary judgment, regardless of whether the deposition transcript would be admissible at trial. *See Willecke v. Toth*, 2009 U.S. Dist. LEXIS 90318 at *5-6 (E.D. Mich. 2009).

he handles approximately two thousand 407 requests per month. See Ex. B:
Papendick Deposition, 11/09/2018. Assuming Dr. Papendick works 40 hours per
week processing 407 requests, he would spend an average of approximately five
minutes on each request. Dr. Steve Bergman, a Corizon Regional Medical Director,
corroborated Defendant Papendick's testimony regarding his role as the sole
decisionmaker in the 407-review process for the Michigan prison system. See Ex.
C: Bergman Deposition, Pg. 6-7 of 27. Dr. Bergman's testimony also provides
helpful background information about Corizon's operations and the healthcare
delivery process within the MDOC. *Id.*

Plaintiff grieved the denial of a surgical consult for colostomy reversal. The
following was noted in the Step I response to Plaintiff's administrative grievance:

> "the grievant was seen by the JCS facility MP on 4/18/17 and a request was
> submitted and refused/deferred for surgical consult for colostomy reversal, with
> indication from Lansing that states: "medical necessity not demonstrated at this
> time . . . "

Indication from "Lansing" presumably refers to Corizon's Utilization Management
Office in Lansing, rather than to the office of the CMO. Dr. Bergman testified that
Corizon's Utilization Management staff are all stationed at Corizon's office on
Millennium Drive in Lansing, Michigan. See Ex. C.: Bergman Deposition, Pg. 5, 21
of 27. Former Acting CMO Dr. William Borgerding testified in a trial that his office
was located in the Kinross Correctional Facility in the Upper Peninsula, nearly three
hundred miles north of Lansing. See Ex. D: Borgerding Trial Testimony. Dr.

11

Borgerding also testified in a deposition that although MDOC had a CMO position and three Assistant CMO positions, due to recruiting and retention difficulties, all of those positions were unfilled by the end of his tenure except for his. See Ex. E: Borgerding Deposition. The MDOC employs a "Chief Psychiatric Officer" (CPO) who is a licensed physician but deals only with mental health policies/issues. Former CMO Jeffrey Stieve testified in a trial on March 22, 2016 that the MDOC was only employing two physicians at that time. He also testified that:

> it certainly wasn't practical in my role as either Regional Director nor as Chief Medical Officer to micro-manage the care of 50,000 inmates. We simply didn't have the time or the resources. In lieu of that, we hired vendors that had competent providers to see and evaluate those inmates . . .

Ex. F: Dr. Stieve Trial Testimony.  Thus, at the time the request for a colostomy reversal for Plaintiff was denied, there was **only one** non-psychiatrist physician employed by MDOC. That physician, Dr. Borgerding, was stationed in the Upper Peninsula, hundreds of miles north of 'Lansing.'

Another reason to suspect that the decision not to reverse Plaintiff's colostomy was made by Defendant Papendick, rather than ACMO Borgerding, is the content of the response received from 'Lansing:' "Medical necessity not demonstrated at this time." Dr. Papendick testified that he bases his decisions whether to approve or deny a 407 request on: "Medical necessity. Medical necessity primarily is difficulty with activities of daily living, risks to life or limb." Ex. A: Papendick Deposition, 06/25/2018, Page 8 of 26). MDOC's policies do not define "medical necessity," but

12

MDOC's policy on "Gender Dysphoria-Related Surgical Interventions" (**ECF No. 12-8, Page.ID 266**) indicates that their definition is not as restrictive as that employed by the Corizon Defendants. Given that MDOC does not consider its policy requirements that corrective and reconstructive surgeries be "medically necessary," and not performed "if the sole purpose is to improve appearance," to be a blanket ban on surgical procedures to initiate sex reassignment, it is hard to see how MDOC could interpret those requirements as a blanket ban on colostomy reversals.

Yet another reason to infer that the Corizon Defendants made the decision to deny colostomy reversal is the fact that Corizon would bear the financial cost of the surgery if it were approved. Plaintiff has alleged, and the Corizon Defendants have not denied, that Corizon Health, Inc. is a for-profit entity paid on a per-prisoner-per-month basis, rather than a fee-for-service basis, to provide healthcare to Michigan prisoners. Corizon therefore has a strong financial incentive to "manage" the "utilization" of healthcare services by Michigan prisoners, by denying them access to expensive medical treatments whenever possible. (**ECF No. 12, Page.ID 199**). The Corizon Defendants construed these allegations as an argument "that it is unconstitutional for the State of Michigan to contract with a for-profit company to provide medical services to prisoners." (**ECF No. 17, Page.ID 318**). Plaintiff never claimed that the State of Michigan violated the Constitution by hiring a private contractor; no State entities or employees are even named as defendants in this

13

lawsuit. The allegations regarding Corizon's profit motive are included to satisfy the heightened federal pleading standard under *Twombly/Iqbal*: they are circumstantial evidence that it was Corizon, rather than the MDOC, that enforced an unconstitutionally-restrictive definition of "medical necessity" to deny Plaintiff access to the Hartmann's Step II procedure.

Finally, even if the Corizon Defendants succeed in proving that MDOC employees were the ones who promulgated the restrictive treatment policies at issue, or succeed in proving that the Acting CMO was involved in the specific decision not to reverse Plaintiff's colostomy, these facts would not excuse them from liability. Plaintiff need only show that the Corizon Defendants were "jointly engaged with state officials in the prohibited action." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). In other words, "it is enough that [they are] willful participant[s] in a joint activity with the State or its agents." *United States v. Price*, 383 U.S. 787, 794 (1966). Plaintiff has raised a genuine issue of material fact under this standard.

## IV.   THE CORIZON DEFENDANTS WERE SUBJECTIVELY AWARE OF PLAINTIFF'S MEDICAL NEED.

Prison officials violate the Eighth Amendment when they are "deliberately indifferent" to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104 (1970). A deliberate-indifference claim has objective and subjective

components. "To satisfy the objective component, a prisoner must show that his medical needs are 'sufficiently serious.'" *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005). "To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs." *Id.*

The subjective component may be relevant in this case to Plaintiff's claims against Defendant Kraus, who can colorably argue that he was not subjectively aware that Plaintiff's symptoms were caused by a colovesical fistula while he was treating Plaintiff at the St. Clair County Jail. But the subjective component is not legitimately at issue with respect to Plaintiff's claims against the Corizon Defendants. There can be little doubt that the Corizon Defendants had a subjective awareness that Plaintiff had undergone a temporary colostomy while he was a detainee in the St. Clair County Jail and had been scheduled for reversal surgery in February of 2017. The response to Plaintiff's administrative grievance notes that the Plaintiff made the following statements to Corizon MPs:

> Reports that he was scheduled for the procedure while being house [sic] in the St. Clair County Jail prior to being transferred to MDOC and states "I was told that my surgery had been cancelled because I was transferring and that once I transferred that MDOC would take over and do all the paperwork for me to have the surgery". . . continues to verbalize that ostomy was to be temporary and reversed . . . (**ECF No. 12-9, Page.ID 268**).

Plaintiff's electronic medical record corroborated the repeated assertions he made to Corizon employees that his colostomy was intended to be temporary, a reversal

15

surgery was part of his prescribed plan of treatment, and that the reversal surgery had been scheduled for February 9, 2017. (**ECF No. 12-3, Page.ID 210-11**).

It is well-settled that "when prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay treatment of that condition for non-medical reasons, their conduct in causing the delay creates a constitutional infirmity." *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017) (quoting *Blackmore v. Kalamazoo Cty*, 390 F.3d 890, 899 (6th Cir. 2004). This is not a case in which these Defendants lacked an accurate diagnosis. What is at issue is not the Corizon Defendants' subjective awareness of the Mr. Jackson's medical condition, it is whether Mr. Jackson's need for a colostomy reversal constituted a "sufficiently serious" medical need. In other words, this case hinges on the 'objective component' of the Eighth Amendment deliberate-indifference inquiry.

## V.   MR. JACKSON'S NEED FOR A COLOSTOMY REVERSAL WAS 'SUFFICIENTLY SERIOUS' TO IMPLICATE THE EIGHTH AMENDMENT.

The Corizon Defendants argue in passing that Plaintiff failed to state a claim because he did not allege that the need for reversal of a temporary colostomy is a serious medical need. (**ECF No. 17, Page.ID 325**) ("[h]e complains of discomfort, incontinence, and embarrassment when he allegedly did not have adequate colostomy bags and patches but does not allege or explain how reversal of his

16

colostomy was a serious medical need.") The Corizon Defendants also argue that Plaintiff's citation to *Swift v. Edelman*, 2017 U.S. Dist. LEXIS 182524 (W.D. Mich., Nov. 3, 2017) for the proposition that the need for colostomy reversal is sufficiently serious to state an Eighth Amendment claim, should be discounted because the plaintiff in *Swift* was a pro se litigant, while Mr. Jackson is represented by counsel. (**ECF No. 17, Page.ID 318**). They further claim that "[p]laintiff has failed to allege that the MDOC policy is unconstitutional on its face or that the surgery he wanted was medically necessary." (**ECF No. 17, Page.ID 325**).

Plaintiff did allege that the Corizon Defendants' policy of denying requests for specialty care or surgery unless they meet Corizon's restrictive definition of "medical necessity" is unconstitutional. (**ECF No. 12, ¶ 50, Page.ID 193**). And it is. The Sixth Circuit and other federal courts have held on numerous occasions that medical needs that do not implicate risks to life or limb, or interfere with ADLs, can be sufficiently serious to implicate the Eighth Amendment. *See, e.g. Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017) (medical need for psoriasis medication was sufficiently serious); *Flanory v. Bonn*, 604 F.3d 249 (6th Cir. 2010) (holding that prisoners have a serious medical need for toothpaste, denying access to toothpaste for an extended period is deliberate indifference); *Talal v. White*, 403 F.3d 423 (6th Cir. 2005) (medical need to avoid exposure to secondhand tobacco smoke can be sufficiently serious); *Helling v. McKinney*, 509 U.S. 25 (1993) (same); *Doss v.*

17

*Corizon Med. Corp.*, 2019 U.S. Dist. LEXIS 138051 (E.D. Mich.) (need for cataract surgery in right eye is sufficiently serious); *Phillips v. Michigan Dep't of Corrections*, 731 F.Supp. 792 (W.D. Mich. 1990) (transgender prisoner's need for hormone therapy was a serious medical need); *Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019) (denial of sex-change surgery for transgender inmate constituted deliberate indifference); *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) (holding that paraplegia with inability to control passing urine is a serious medical need); *Baker v. Blanchette*, 186 F.Supp. 2d. 100 (D. Conn. 2001) (holding that prisoner's need for colostomy reversal is a serious medical need, unjustified four-month delay in providing the surgery was actionable); *Wilson v. Arpaio*, 2015 U.S. Dist. LEXIS 84843 (D. Ariz., June 30, 2015) (prisoner's need for colostomy reversal was sufficiently serious); *Gomez v. Walker*, 2009 U.S. Dist. LEXIS 677 (S.D. Ill. 2009) (need for colostomy reversal sufficiently serious); *Wesley-El v. Beard*, 2011 U.S. Dist. LEXIS 16931 (W.D. Penn., January 19, 2011) (colostomy reversal); *Arnold v. Doe*, 2012 U.S. Dist. LEXIS 101925 (D. Conn. 2012) (colostomy reversal); *Ramos-Rodriguez v. Las Vegas Metro. Police Dep't.*, 2017 U.S. Dist. LEXIS 92206 (D. Nev. 2017) (colostomy reversal); *Swift v. Edelman*, 2017 U.S. Dist. LEXIS 182524 (W.D. Mich. 2017) (colostomy reversal).

"A prisoner has adequately stated a cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an

18

obvious need for such attention where the inmate is thereby exposed to undue suffering **or** the threat of tangible residual injury." *Scott v. Ambani*, 577 F.3d 642, 648 (6th Cir. 2009) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)) (emphasis added). <u>Exposure to undue suffering is enough</u>.  The Sixth Circuit "has held that an actual [permanent] injury is not a necessary predicate to receiving damages for an Eighth Amendment violation." *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991).[2] A prisoner can recover for the "deprivation and degradation" of, for example, being "forced to sit in his own feces for several hours,"  even though leaving a paraplegic and incontinent prisoner to sit in his own feces may not involve a serious risk of physical injury. *See Boretti* at 1155, quoting and explaining *Parrish v. Johnson*, 800 F.2d 600, 610 (6th Cir. 1986).  This is because "[t]he infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Boretti* at 1153 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

Plaintiff alleged that he suffered the following as a result of Defendant's denials of his reasonable requests for medical treatment:

> "pain, incontinence, ostracization and humiliation for the duration of his sentence. Both Defendant Prime Healthcare Services – Port Huron LLC and Defendant Corizon Health, Inc. frequently failed to provide Mr. Jackson with a sufficient supply of colostomy bags and patches, or to provide bags and

---

[2] While a provision of the Prison Litigation Reform Act, 42 U.S.C. 1997e(e), bars federal civil rights claims by prisoners for mental and/or emotional injuries without a showing of a prior physical injury or the commission of a sexual act, the PLRA is not applicable to Plaintiff's claims because he was not in custody at the time this lawsuit was filed.

patches that fit with each other or were the correct size for his stoma. When Mr. Jackson lacked appropriately-sized medical supplies, watery excrement and digestive juices would leak out of the stoma and onto his body, bedding, and clothes. Because a stoma does not contain a sphincter, Mr. Jackson had no ability to control the timing of his bowel movements in order to avoid defecating on himself."

(**ECF No. 12, ¶ 60, Page.ID 195**).

The degradation, humiliation, and indignity that Mr. Jackson pled that he endured throughout his time in custody is analogous to that experienced by the plaintiffs in *Parrish v Johnson*, 800 F.2d 600 (6th Cir. 1986), and *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991). The Corizon Defendants attempt to construe his claim as an effort to "second guess medical judgments and to constitutionalize claims that sound in state tort law." (**ECF No. 17, Page.ID 325**). However, their decision not to even allow Mr. Jackson to be evaluated for colostomy reversal was not based on bona-fide "medical judgment" that a colostomy reversal operation was contraindicated. It was based on their conclusion that the surgery was not "medically necessary" because failing to perform it would not cause him to die.

The basic concept underlying the Eighth Amendment is not the preservation of human life, but rather, human dignity:

Prisoners retain the essence of human dignity inherent in all persons. Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment. 'The basic concept underlying the Eighth Amendment is nothing less than the dignity of man.'

*Brown v. Plata*, 563 U.S. 493, 510 (2011) (quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)).

## **CONCLUSION**

For the foregoing reasons, the Corizon Defendants' Motion to Dismiss should be

denied.

Respectfully submitted,


*/s/Laurence H. Margolis*
Laurence H. Margolis (P69635)
*Margolis, Gallagher & Cross*
214 S. Main St. Ste. 200
Ann Arbor, MI 48104
(734) 994 - 9590
Attorney for Plaintiff

21

## <u>PROOF OF SERVICE</u>

I hereby certify that on February 5, 2020, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non-participants.

Dated: February 5, 2020


<u>/s/Laurence H. Margolis</u>
Laurence H. Margolis (P69635)
214 S. Main St. Ste. 200
Ann Arbor, MI 48104
(734) 994 - 9590
Attorney for Plaintiff