**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

    *Plaintiff*,                         CASE NO. 19-cv-13382

v.                                DISTRICT JUDGE TERRENCE G. BERG
                                  MAGISTRATE JUDGE PATRICIA T. MORRIS

CORIZON HEALTH, INC.,
PRIME HEALTHCARE SERVICES
– PORT HURON, LLC, COLLEEN
MARIE SPENCER, DAVID A.
KRAUS, and KEITH PAPENDICK,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT KRAUS'S MOTIONS TO DISMISS (ECF NOS. 8, 22), DEFENDANT CORIZON'S MOTION TO DISMISS (ECF NO. 10), AND DEFENDANT'S CORIZON AND PAPENDICK'S MOTION TO DISMISS (ECF NO. 17)**

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that all the motions be **GRANTED**. (ECF Nos. 8, 10, 17, and 22.)

**II.    REPORT**

    **A.    Background**

Plaintiff Kohchise Jackson ("Plaintiff") filed the original complaint in this matter on November 15, 2019. (ECF No. 1.) Plaintiff alleged that his civil rights were violated, citing 42 U.S.C. § 1983. Specifically, he alleged the following counts: (1) deprivation of

1

substantive due process rights under the 14th Amendment against Defendants Spencer, Doe, and Prime Healthcare; and (2) deprivation of his 8th Amendment right against deliberate indifference to serious medical needs against Defendant Corizon. (ECF No. 1.) On January 3, 2020, Plaintiff filed an amended complaint alleging the following claims against the following Defendants: (1) deprivation of substantive due process rights under the 14th Amendment against Defendants Spencer, Kraus, and Prime Healthcare; and (2) deprivation of his 8th Amendment right against deliberate indifference to serious medical needs against Defendants Corizon and Papendick. (ECF No. 12.)

Plaintiff alleges that in July 2016, he was a pretrial detainee at the St. Clair Correctional Facility and he developed a colovesical fistula, i.e., a hole in the tissue that separates the large intestine from the bladder. (ECF No. 12, PageID.186.) As a result of this condition, Plaintiff suffered from bladder infections, urinary tract infections, high fevers, chills, nausea, vomiting and pain. (*Id*.) Plaintiff alleges that from July through December 2016 that Plaintiff complained of the above symptoms and "that he was 'farting out my penis' and that feces was coming out in his urine.'" (*Id*.) Plaintiff further contends that "[i]n response to his requests for medical attention" that Plaintiff was seen by Defendant Kraus "at least four times between July and December of 2016." (ECF No. 12, PageID.187.) During "each examination, he was diagnosed with a urinary tract infection and prescribed an antibiotic, despite the fact that he exhibited symptoms of a fistula such as passing gas and feces through his urethra." (*Id*.) Plaintiff submits that the "only possible cause of 'fecaluria,' the condition of feces passing out of the urethra in the patient's urine stream, is a fistula." (*Id*.) On December 6, 2016, Plaintiff was taken to a local hospital's

2

emergency room, was diagnosed with a "colovesical fistula, and Dr. Erina Kansakar elected to treat it via Hartmann's procedure[,] [] an emergency surgical procedure used in situations involving a pathology in the sigmoid colon or rectum that makes primary anastomosis (cutting out the damaged section of a colon and connecting the two ends) unsafe." (*Id*.) Plaintiff describes the Hartmann's procedure as follows:

> First, the large intestine is cut upstream from the pathology and diverted out through the patient's skin. Following the first operation, the patient passes gas and feces through the resulting stoma, into a colostomy bag. The pathology in the downstream section of the colon is also addressed in the first operation. After the downstream section of the colon has had time to heal, a second operation is performed to reconnect the two sections of colon and close the stoma. After the reversal operation the patient will again pass gas and feces out of their anus.

(ECF No. 12, PageID.187-188.)

Plaintiff went through the first surgery on December 10, 2016, Plaintiff recovered normally, and was scheduled for the colostomy reversal on February 9, 2017, but Defendant Spencer "'postponed' the surgery for a nonmedical reason, pursuant to an official policy, practice, or custom of her employer, Prime Healthcare Services – Port Huron LLC." (ECF No. 12, PageID.188.) Plaintiff then clarified that "Defendant Spencer postponed the surgery because it was not 'emergent or life-threatening'" and that [o]n information and belief, Defendant Spencer postponed [Plaintiff's] surgery in order to pass the cost of surgery onto the Michigan Department of Corrections" (MDOC) because "Defendant Spencer knew that [Plaintiff] would soon be transferred to a state prison, at which point MDOC, rather than St. Clair County and Prime Healthcare Services – Port Huron LLC, would be responsible for his healthcare needs." (ECF No. 12, PageID.189.)

3

Plaintiff was "told by his medical staff at the St. Clair County Correctional Facility that he would receive the colostomy reversal surgery after he arrived in prison" and Plaintiff was transferred to the custody of the MDOC on March 23, 2017. (*Id.*) Once at the MDOC, Corizon because the provider of medical services and Defendant Dr. Papendick was "Corizon's Director of Utilization Management for Michigan prisons." (*Id.*) Defendant Papendick "is an official with final decision-making authority with respect to whether 407 requests [for referrals to outside providers] . . . are approved." (ECF No. 12, PageID.191.) The possible responses to a 407 request are approve, alternate treatment plan (ATP), or need more information (NMI). (*Id.*) Plaintiff alleges that Defendant Papendick "does not approve 407 requests if he finds that 'medical necessity' is not demonstrated" and Defendant Papendick "considers treatment to be 'medically necessary' only if failure to provide the treatment would create risks to life or limb, or would create difficulty with Activities of Daily Living ('ADLs')." (ECF No. 12, PageID.192.) Plaintiff adds that the "six generally-recognized ADLs are bathing, dressing, eating, transferring (getting in and out of bed, or getting from a bed to a wheelchair), toileting, and continence." (ECF No. 12, PageID.193.) Plaintiff contends that Defendant Papendick's "restrictive definition of 'medical necessity' is not congruent with Corizon's contractual responsibilities under its contract with the State of Michigan, with MDOC policy, or with the constitutional standard for a 'serious medical need' for purposes of the objective component of an Eighth Amendment deliberate indifference claim." (*Id.*)

Plaintiff alleges that on or about April 18, 2017, "a Corizon MP stationed at the Cooper Street Correctional Facility submitted a 407 request for a surgical consult for

colostomy reversal" for Plaintiff. (*Id.*) Plaintiff further avers that "[s]ometime between April 18, 2017, and April 27, 2017, Dr. Papendick refused/deferred the request for a surgical consult for colostomy reversal for [Plaintiff] because he determined that reversal of the colostomy was not 'medically necessary.'" (*Id.*) Plaintiff contends that although his "colostomy was intended to be temporary, it was not reversed at any point during his two-year and two-month stay in the Michigan prison system." (ECF No. 12, PageID.195.)

On December 13, 2019, Defendant Kraus filed a motion to dismiss (ECF No. 8), Plaintiff responded (ECF No. 15), and Defendant Kraus replied. (ECF No. 19.) On December 16, 2019, Defendant Corizon filed a motion to dismiss (ECF No. 10) and on January 14, 2020, Defendant Corizon and Defendant Papendick filed a motion to dismiss (ECF No. 17), Plaintiff responded (ECF No. 21), and Defendants Corizon and Papendick replied. (ECF No. 24.) On February 7, 2020, Defendant Kraus filed an amended motion to dismiss (ECF No. 22) and Plaintiff responded. (ECF No. 25.) The court has reviewed and considered all the arguments made in the motions, responses, and replies.

Defendants Spencer and Prime Healthcare have not filed any dispositive motion as of the date of this Report and Recommendation.

**B.     Motion To Dismiss Standards**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to

5

relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a

6

court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.–Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which she complains was committed by a person acting under color of state law and (2) the conduct deprived her of a federal constitutional or statutory right. In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).

### C. Eighth Amendment Deliberate Indifference Standard

In *Estelle v. Gamble*, the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause because it constitutes the "unnecessary and wanton infliction of pain" and is "repugnant to the conscience of mankind" by offending our "evolving standards of decency." 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 97, 104 (1976)). To establish a cognizable claim, Plaintiff's allegations must show Defendant's 'sufficiently harmful' acts or omissions. *Id.* at 106. "[I]nadvertent failure to provide adequate medical care . . . will not violate the Constitution." *Id.*

The "deliberate indifference" inquiry has objective and subjective elements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry asks whether the deprivation was "sufficiently serious," which a claimant satisfies when his or her condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citation omitted). The former standard focuses on the "effect of delay in treatment." *Anthony v. Swanson*, 701 F. App'x 460, 463 (6th 2017). In *Napier v. Madison Co.*, 238 F.3d 739 (6th Cir. 2001), the court held that a plaintiff "'must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Id.* (citation omitted). This rule applies more broadly to claims "based on the prison's failure to treat a condition adequately." *Blackmore v. Kalamazoo Co.*, 390 F.3d 890 (6th Cir. 2004). The Sixth Circuit recently explained that

8

when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). The plaintiff must present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment. There must be "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013). This will often require "expert medical testimony ... showing the medical necessity for" the desired treatment and "the inadequacy of the treatments" the inmate received. *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017); *see Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (explaining that adequacy-of-care claims may require expert testimony "to create a genuine dispute that the prisoner's medical needs are serious"). The plaintiff also must "place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment.

*Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

The subjective inquiry, by contrast, considers whether official's state of mind was sufficiently culpable; it requires a showing that an official "'knows of and disregards an excessive risk to inmate health or safety[.]'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quotation omitted). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* Inferences from circumstantial evidence can suffice to satisfy the subjective showing. *Magnum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017).

The Supreme Court examined the subjective prong in *Farmer v. Brennan*, 511 U.S. 825, 834-847 (1994). The subjective nature of deliberate indifference follows from the Eighth Amendment's principle proscription of "only the unnecessary and wanton infliction of pain," and focus on the defendant's culpability. *Id.* at 834 (citation omitted). The

9

culpable state of mind, the Court said, was not ordinary negligence—cruel and unusual punishment is something more than run of the mill medical malpractice. *Id.* at 835; *see also Estelle*, 429 U.S. at 110. But not so much more that the defendant must intentionally or purposefully inflict injury. *Farmer*, 511 U.S. at 837. Instead, as noted above, the standard turns on whether the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The upshot, for present purposes, is that defendants who "responded reasonably to the risk," even if the potential harm subsequently eventuates, have not violated the Eighth Amendment. *Id.* at 844-845.

Courts are reluctant "to second guess medical judgments ," *Oliver v. Wolfenbarger*, No. 07-12672, 2008 WL 4387210, at *8 (E.D. Mich. Sept. 24, 2008) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)), and thus "differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim," *Pettway v. Squier*, 2014 WL 4924302, at *3 (E.D. Mich. Sept. 25, 2014). "[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). Instead, when treatment is afforded, "the Eighth Amendment is violated if the care [was] '"so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."'" *Id.* (citation omitted). The treatment must be "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 604.

10

Courts have accordingly rejected inadequate-treatment claims when the plaintiff received treatment but complained it was insufficient. *Bright v. Martin*, 37 F. App'x 136, 138 (6th Cir. 2002) ("In sum, it is clear that Bright received medical treatment for many years while incarcerated and has now concluded that he has a liver condition which Dr. Messany did not treat properly. Accepting Bright's allegations as true, they amount to a medical malpractice claim and not an Eighth Amendment claim."); *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) ("An examination of the record shows that the defendants provided Powell with medical treatment for his condition, even though he may not have been satisfied with the treatment that he received. . . . Under these circumstances, Powell has alleged no more than a medical malpractice claim that is not cognizable under 42 U.S.C. § 1983.").

These standards apply to "a private entity contracted to perform the traditional state function of prison medical care." *Baker v. Stevenson*, 605 F. App'x 514, 520 (6th Cir. 2015).

**D.     Should the claim against Defendant Kraus be analyzed under a different standard?**

Plaintiff was a pretrial detainee during the time he was at the St. Clair Correctional Facility where his allegations arose against Defendant Kraus. Plaintiff argues that the Fourteenth Amendment standard for pretrial detainees is different from the Eighth Amendment deliberate indifference standard in that Plaintiff does not need to satisfy the subjective prong under the Fourteenth Amendment, *i.e.*, as to Defendant Kraus. (ECF No. 15, PageID.290-292.)

11

The "Eighth Amendment applies only after a formal adjudication of guilt," and thus does not extend to pretrial detention. *Walker v. Sharrar*, 2019 WL 3714494, at *2 (E.D. Mich. Aug. 7, 2019). But the Sixth Circuit "has made clear that, under the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates,'" and the same analysis applies to both types of claims. *Richko v. Wayne Co., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (citation omitted).

Questions have arisen whether the subjective prong applies to Fourteenth Amendment claims concerning pretrial detention. In *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015), the Supreme Court held that the subjective prong does not apply to excessive force claims brought under the Fourteenth Amendment by pretrial detainees." Although this holding did not cover deliberate indifference claims, some courts have extended it to such claims. *See Love v. Franklin Co., Ky.*, 376 F. Supp. 3d 740, 746 (E.D. Ky. 2019). The Sixth Circuit, however, has noted the issue but not yet resolved it, instead applying both prongs. *See, e.g., Powell v. Med. Dep't Cuyahoga Co. Correctional Ctr.*, 2019 WL 3960770 (6th Cir. Apr. 8, 2019); *Richmond v. Huq*, 885 F.3d 928, 938, n.3 (6th Cir. 2018) ("[W]e recognize that this shift in Fourteenth Amendment deliberate indifference jurisprudence calls into serious doubt whether Richmond need even show that the individual defendant-officials were subjectively aware of her serious medical conditions and nonetheless wantonly disregarded them." ); *see also Richko*, 819 F.3d at 915.

Federal district courts in Michigan have unanimously concluded that until the Sixth Circuit expressly rules that *Kingsley* alters the analysis for deliberate indifference claims,

12

such claims proceed under the same two-pronged inquiry, requiring proof of the subjective awareness of the serious medical need and the wanton disregard of it. *See, e.g., Elhady v. Bradley*, ___ F. Supp. 3d ___, 2020 WL 619587, at *14 (E.D. Mich. Feb. 10, 2020) (since the Sixth Circuit applied the subjective element to a deliberate indifference case after *Kingsley* in *Cooper v. Montgomery Cty, Ohio Sheriff's Dept.*, 768 F. App'x 385, 392 (6th Cir. 2019), "[t]he need to establish that subjective element remains the law of this Circuit"); *Eidam v. County of Berrien*, 2019 WL 7343354, at *4 (W.D. Mich. Dec. 31, 2019) (since the Sixth Circuit declined to decide whether *Kingsley* applied to deliberate indifference to serious medical needs cases in *Huq* "the two-pronged deliberate-indifference standard found in the Eighth Amendment continues to apply to medical claims by pretrial detainees."); *Greiner v. County of Oceana*, 2019 WL 6799096, at *4, n.1 (W.D. Mich. Dec. 13, 2019) (since the Sixth Circuit declined to decide whether *Kingsley* applied to deliberate indifference to serious medical needs cases in *Huq* "the two-pronged deliberate indifference standard continues to apply to medical claims by pretrial detainees."); *Hunt v. Jones*, 2018 WL 1858164, at *4, n.1 (E.D. Mich. Apr. 18, 2018) ("[T]he Court proceeds under the presumption that *Kingsley* only changed the standard for excessive-force claims."); *Waddell v. Lloyd*, 2019 WL 1354253, at *4 (E.D. Mich. Mar. 26, 2019) (noting that although the Sixth Circuit suggested that *Kingsley* "warrants a reconsideration of circuit precedent," later Sixth Circuit cases, such as *McCain v. St. Clair Cty*, 750 F. App'x 399, 403 (6th Cir. 2018), did not extend *Kingsley* to deliberate indifference claims thus concluding that "the Court will proceed based on the (still) governing legal standard" which includes the subjective prong of the inquiry); *Gallmore v. York*, 2018 WL 1737120, at *8

(E.D. Mich. Apr. 11, 2018) ("[T]he Court proceeds under the presumption that *Kingsley* did not change the standard governing claims of constitutionally inadequate medical care brought by pretrial detainees."); *Wilber v. Co. of Jackson*, 2016 WL 892800, at *6 (E.D. Mich. Mar. 9, 2016) (noting post-*Kingsley* cases from the Sixth Circuit and other courts applying both prongs).

As the Sixth Circuit has not yet addressed the matter, and the district courts have uniformly concluded that *Kingsley* has not altered the analysis for deliberate indifference claims, I will follow current standards requiring both the objective and the subjective showings.

### E. Analysis and Conclusions

#### 1. Defendant Kraus

The allegations against Dr. Kraus regard the time Plaintiff spent as a pretrial detainee at the St. Clair Correctional Facility. Defendant contends that they show, at most, a disagreement with the course of medical care which is not actionable.

Plaintiff alleged that while he was a pretrial detainee, he developed a colovesical fistula, *i.e.*, a hole in the tissue that separates the large intestine from the bladder. (ECF No. 12, PageID.186.) Plaintiff's complaint contends that this fistula was not diagnosed properly by Defendant Kraus even though a fistula is the "only possible cause of 'fecaluria,' the condition of feces passing out of the urethra in the patient's urine stream." (ECF No. 12, PageID.187.) Plaintiff concedes that "[i]n response to his requests for medical attention" that Plaintiff was seen by Defendant Kraus "at least four times between July and December of 2016." (*Id.*) But Plaintiff complains that during "each examination, he was diagnosed

14

with a urinary tract infection and prescribed an antibiotic, despite the fact that he exhibited symptoms of a fistula such as passing gas and feces through his urethra." (*Id.*) Plaintiff submits that the, is a fistula." (*Id.*) Plaintiff was eventually, on December 6, 2016, diagnosed with a "colovesical fistula" by an emergency room doctor and treated for it. (*Id.*)

Plaintiff's complaint, therefore, is with the five-month delay in being properly diagnosed. However, "a plaintiff alleging deliberate indifference must show more than mere negligence or the misdiagnosis of an ailment[.]" *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005). Plaintiff has not alleged anything beyond misdiagnosis here against Defendant Kraus. Nor has Plaintiff made any allegations with respect to the subjective prong, *s*, Plaintiff has not even averred that Defendant Kraus had a culpable state of mind. *Farmer*, 511 U.S. at 835. Nor has Plaintiff alleged that Defendant Kraus's actions were "so woefully inadequate as to amount to no treatment at all." *Mitchell*, 553 F. App'x at 604. Instead, Plaintiff has alleged mere "differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment [which] are insufficient to state a deliberate indifference claim[.]" *Pettway*, 2014 WL 4924302, at *3. ssTo the extent that Plaintiff rests any part of his claim against Defendant Kraus on the delay in being properly diagnosed, it must also fail for lacking even allegations that Defendant Kraus had a culpable state of mind. *Clark v. Corrs. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (no deliberate indifference where a misdiagnosed broken jaw resulted in permanent nerve damage requiring surgery to correct it).

Therefore, I suggest that Defendant Kraus's motions to dismiss should be granted. (ECF Nos. 8, 22.)

15

### 2. Defendants Corizon and Papendick

Plaintiff's amended complaint avers that once at the MDOC, Corizon is the provider of medical services and Defendant Dr. Papendick "is Corizon's Director of Utilization Management for Michigan prisons." (ECF No. 12, PageID.189.) Defendant Papendick "is an official with final decision-making authority with respect to whether 407 requests [for referrals to outside providers] . . . are approved." (*Id.*) Plaintiff contends that Defendant Papendick's "restrictive definition of 'medical necessity' is not congruent with Corizon's contractual responsibilities under its contract with the State of Michigan, with MDOC policy, or with the constitutional standard for a 'serious medical need' for purposes of the objective component of an Eighth Amendment deliberate indifference claim." (ECF No. 12, PageID.193.) Plaintiff alleges that on or about April 18, 2017, "a Corizon MP stationed at the Cooper Street Correctional Facility submitted a 407 request for a surgical consult for colostomy reversal" for Plaintiff. (*Id.*) Plaintiff further avers that "[s]ometime between April 18, 2017, and April 27, 2017, Dr. Papendick refused/deferred the request for a surgical consult for colostomy reversal for [Plaintiff] because he determined that reversal of the colostomy was not 'medically necessary.'" (*Id.*) Plaintiff contends that although his "colostomy was intended to be temporary, it was not reversed at any point during his two-year and two-month stay in the Michigan prison system." (ECF No. 12, PageID.195.)

Plaintiff underwent colostomy reversal surgery in June of 2019. (ECF No. 12, PageID.201.) Plaintiff contends that Corizon, "through its final decisionmaker Defendant Keith Papendick, refused to reverse Plaintiff's colostomy in order to avoid paying for the procedure, so that it could retain a larger portion of the prisoner healthcare payments it

16

received from the State of Michigan as corporate profit." (ECF No. 12, PageID.200.) Defendants Corizon and Papendick counter that the "MDOC, through the CMO [Chief Medical Officer], has the authority to authorize corrective or reconstructive surgery, *not* Corizon or its employees." (ECF No. 17, PageID.324-25.)

I suggest that it matters little who had the authority to make the decision or who actually made the decision since the decision as the timeframe in which to perform a reversal of a colostomy is a medical decision that this court is reluctant "to second guess[.]" *Oliver, supra; Swarbrick v. Frantz,* 2012 WL 833882 (D. Colo. Feb. 21, 2012) (no deliberate indifference where plaintiff "is asserting that he is being denied a surgical reversal" of his ostomy and defendants "are of the opinion that such surgery is not medically necessary and is instead elective"). Plaintiff's claim is not revitalized by his assertion that economic factors motivated the decision. *Wesley v. McCarthy*, 2017 WL 3701826 (M.D. Penn. Aug. 28, 2017) (finding res judicata applied and where plaintiff's previous suit was dismissed despite allegations that the decision not to perform a colostomy reversal was motivated by economic considerations and showed deliberate indifference). I therefore suggest that Plaintiff fails to state a deliberate indifference claim.

Since Papendick's decision, as the alleged decisionmaker, was not unconstitutional, there can be no *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) or other supervisory liability against Corizon for that decision.[1]

---

[1] Plaintiff's complaint fails to state a colorable deliberate-indifference claim against Corizon for an additional reason. The Supreme Court held, in *Monell v. Department of Social Services of City of New York*, that a government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers

Accordingly, I suggest that Defendants Corizon and Papendick's motions to dismiss be granted. (ECF Nos. 10, 17.)

### F.  Conclusion

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants Motions to Dismiss (ECF Nos. 8, 10, 17 and 22) be **GRANTED**.

### III.  REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

---

or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). Section 1983 also permits suit against "a private entity that contracts to perform traditional state functions," but that contractor is only liable under a *Monell* claim "for a policy or custom *of that private contractor,* rather than a policy or custom of" a governmental entity. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). For this reason, no liability can attach to Corizon for deliberate indifference.

1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 20, 2020                             S/ PATRICIA T. MORRIS
                                                  Patricia T. Morris
                                                  United States Magistrate Judge

### CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: March 20, 2020                              By s/Kristen Castaneda
                                                  Case Manager