# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**KOHCHISE JACKSON**,
 Plaintiff,

v.

**CORIZON HEALTH, Inc.,**, et al,
Defendants.

Case No.: 2:19-cv-13382
Hon.: Terrence G. Berg
Mag.: Patricia T. Morris

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS [ECF NO. 26]

---

Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
*Margolis, Gallagher & Cross*
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: larry@lawinannarbor.com

Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
*Corbet, Shaw, Essad & Bonasso, Pllc*
Attorneys for Defendant Prime Healthcare
Services, Colleen Spencer and David Kraus
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
Phone: (313) 964-6300
Email: daniel.corbet@cseb-law.com
Email: kenneth.willis@cseb-law.com

Ronald W. Chapman Sr., (P37603)
*Chapman Law Group*
Attorneys for Defendant Corizon Health, Inc.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
Phone: (248) 644-6326
Email:rchapman@chapmanlawgroup.com

1

## SPECIFIC OBJECTIONS

**Objection #1: The Magistrate Judge erred in her reliance on *Wesley v. McCarthy*, 2017 WL 3701826 (M.D. Penn. Aug. 28, 2017) for the proposition that prison management may deny an inmate a colostomy reversal solely for economic reasons.**

The Report and Recommendation cites *Wesley v. McCarthy*, (*"Wesley II"*) 2017 WL 3701826 (M.D. Penn. Aug. 28, 2017), for the proposition that denying a prisoner a colostomy reversal, solely to avoid the cost of the surgery, does not violate the Eighth Amendment. (ECF No. 26, PageID 546). This is not an accurate representation of the holding in that case.

*Wesley v. Wetzel,* (*"Wesley I"*) 2016 U.S. Dist. LEXIS 95594 (M.D. Penn. Jul. 22, 2016), formed the basis for the res judicata dismissal in *Wesley II*. The Report and Recommendation implies that *Wesley I* was dismissed for failure to state a claim. However, *Wesley I* "proceeded through discovery," and ended with a grant of summary judgment for the defendants, since the plaintiff's "contention that the decision not to approve the surgery was economically motivated was rejected as wholly unsupported by the record." *Wesley v. McCarthy*, (*"Wesley II"*) 2017 U.S. Dist. LEXIS 137383 (M.D. Pa. Aug. 28, 2017) at *2-3.  In fact, the *Wesley* plaintiff received multiple surgical consults to examine the feasibility of colostomy reversal; his treating physicians concluded that a reversal operation was not likely to be successful if attempted. *Wesley I*, 2016 U.S. Dist. LEXIS 95594 (M.D. Pa. July 22,

2

2016) at *12. The plaintiff in *Wesley I* was defeated because he could not put forth admissible evidence to prove his allegations, not because those allegations, if true, would not have entitled him to relief.

*Wesley I* and *II* have no bearing on the pure question of law at hand: whether denying a prisoner a colostomy reversal, solely to avoid the cost of the surgery, can constitute a constitutional violation. That question was considered in *Swift v. Eldeman*, 2017 U.S. Dist. LEXIS 182524 (W.D. Mich., Nov. 3, 2017) and the allegations were found to state an Eighth Amendment claim. *See also*, *Baker v. Blanchette*, 186 F.Supp. 2d 100, 105 (D. Conn. 2001) (denying summary judgment where evidence suggested that colostomy reversal surgery was delayed, "not because of medical decisionmaking involving the use of professional judgment, but solely because of cost"); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) (holding that "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay" violates the Eighth Amendment.)

Even if the Court were to construe Defendants' motions as motions for summary judgment, *Wesley I* and *II* would remain inapposite. While the plaintiff in *Wesley* received multiple surgical consults to examine the feasibility of colostomy reversal, *See Wesley I*, 2016 U.S. Dist. LEXIS 95594 at *6-7, Mr. Jackson did not

receive a surgical consult for colostomy reversal during his time in MDOC custody. When a request for a surgical consult for Mr. Jackson was submitted to Defendant Papendick, Defendant Papendick denied it. (**ECF No. 12, Amended Complaint, PageID.193**). The specialists who examined the plaintiff in *Wesley* believed that colostomy reversal "most likely would not be feasible" because too much time had passed since the surgery that created the stoma, and "this length of time would have led to atrophy of the diverted colorectal segment and anus so successful stoma reversal is less likely to succeed." *Wesley I* at *12 (incidentally, these medical opinions contradict the claims made by the defendants in *Swarbrick*, discussed below, that indefinitely delaying colostomy reversal surgery poses no risk of permanent harm.)  But when Mr. Jackson was evaluated for colostomy reversal while he was in county jail, Dr. Kansakar found that colostomy reversal was feasible and scheduled Mr. Jackson for the surgery. (**ECF No. 12-3, Ex. C: Medical Record for January 2017 Appointment with Dr. Erina Kansakar, PageID.210-211**). The Prime Health Care-Port Huron Defendants and the Corizon Defendants then denied Mr. Jackson a colostomy reversal for non-medical reasons in spite of Dr. Kansakar's recommendation. "Failure by jail medical staff to adhere to a prescribed course of treatment," or "the failure to provide the prescribed plan of treatment," can violate the Eighth Amendment. *Richmond v. Huq*, 885 F.3d 928, 939, 941 (6th Cir. 2018).

**Objection #2: The Magistrate Judge erred in finding that because the decision whether to reverse a colostomy is a medical decision, prison officials cannot, as a matter of law, be held liable under the Eighth Amendment for failing to reverse a colostomy.**

The Report and Recommendation cites *Oliver v. Wolfenbarger*, 2008 WL 4387210 (E.D. Mich. Sept. 24, 2008), and *Swarbrick v. Frantz,* 2012 WL 833882 (D. Colo. Feb. 21, 2012), for the proposition that "it matters little who had the authority to make the decision [not to allow a surgical consult for colostomy reversal] or who actually made the decision since the decision as the timeframe in which to perform a reversal of a colostomy is a medical decision that this court is reluctant "to second guess[.]" (ECF No. 26, PageID 546). The Report notes that the *Swarbrick* magistrate found no deliberate indifference where "defendants 'are of the opinion that such surgery is not medically necessary and is instead elective.'" *Id*. The citation to *Oliver v. Wolfenbarger*, 2008 WL 4387210 (E.D. Mich. Sept. 24, 2008), is presumably in error since that opinion does not contain the cited language.

While *Swarbrick v. Frantz*, 2012 WL 833882 (D. Colo. Feb. 21, 2012), did hold that a prisoner cannot state an Eighth Amendment claim for failure to reverse a functional colostomy, other district court decisions previously cited by the Plaintiff have reached the opposite conclusion on nearly identical facts. *See Ramos-Rodriguez v. Las Vegas Metro. Police Dep't.*, 2017 U.S. Dist. LEXIS 92206 (D. Nev. 2017); *Wilson v. Arpaio*, 2015 U.S. Dist. LEXIS 84843 (D. Ariz., June 30, 2015); *Gomez v. Walker*, 2009 U.S. Dist. LEXIS 677 (S.D. Ill. 2009); *Arnold v. Doe*,

2012 U.S. Dist. LEXIS 101925 (D. Conn. 2012); *Baker v. Blanchette*, 186 F.Supp. 2d. 100 (D. Conn. 2001); *Swift v. Eldeman*, 2017 U.S. Dist. LEXIS 182524 (W.D. Mich., Nov. 3, 2017). The Magistrate Judge does not explain why *Swarbrick v. Frantz*, 2012 WL 833882 (D. Colo. Feb. 21, 2012), is more persuasive than these cases.

To the extent that *Swarbrick* holds that prison authorities do not have any duty to provide a surgery that they classify as "elective," it is a constitutional outlier. *See, e.g. Doss v. Corizon Med. Corp.*, 2019 U.S. Dist. LEXIS 138051 (E.D. Mich. Aug. 15, 2019) (holding that Plaintiff had a serious medical need for cataract surgery to restore vision in his right eye, despite Defendants' classification of the surgery as "cosmetic and unnecessary"); *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("[a] reasonable jury could find that Colwell was denied surgery, not because it wasn't medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn't have helped him, but because the *policy* of the NDOC is to require an inmate to endure reversible blindness in one eye if he can still see out of the other. This is the very definition of deliberate indifference.") A passage in *Baker v. Wilkinson*, 635 F.Supp. 2d 514 (W.D. La. 2009), collecting cases on this topic is instructive:

> Defendants argue Baker did not have a "serious medical need" for surgery because the surgery was merely elective. However, the classification of a surgery as elective does not abrogate a prison's duty or power to promptly provide necessary medical treatment for prisoners. Johnson v. Bowers, 884

F.2d 1053, 1056 (8th Cir. 1989). Denial of necessary treatment due to classification of the surgery as elective surgery, and due to budgetary constraints, does not justify cruel and unusual punishment. Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (hernia repair surgery). In Hathaway v. Coughlin, 37 F.3d 63, 64-69 (2d Cir. 1994), cert. den., 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995), the court upheld a jury verdict on an Eighth Amendment claim in favor of the plaintiff where the defendants delayed the plaintiff's elective hip surgery for two years. In West v. Keve, 541 F. Supp. 534, 540 (D.Del. 1982), the district court held that a seventeen month delay between recommendation and performance of elective surgery constituted deliberate indifference. In Delker v. Maass, 843 F.Supp. 1390, 1392-1399 (D.Or. 1994), the district court found an inmate was injured by a two year delay in surgery for his non-incarcerated hernia. The district court in Delker stated that **prison officials may not avoid their duty to provide medical treatment by the simple expediency of labeling such a treatment as elective**, and distinguished elective surgeries such as surgical repair of a hernia, from elective surgeries such as surgical breast augmentation or tummy tucks. Also, Garrett v. Elko, 120 F.3d 261 (4th Cir. 1997); Monmouth Cty. Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 348 n.32 (3d Cir. 1987), cert. den., 486 U.S. 1006, 108 S. Ct. 1731, 100 L. Ed. 2d 195 (1988); Faulkner v Griffith, 1995 U.S. Dist. LEXIS 1150, 1995 WL 55300 (E.D.Tex. 1995).

*Baker v. Wilkinson*, 635 F.Supp. 2d 514, 520-21 (W.D. La. 2009) (emphasis added.)

Defendants' gratuitous classification of colostomy reversal surgery as "cosmetic" or "elective" should have no bearing on the outcome of this case.

Aside from the citation to *Swarbrick*, the Report and Recommendation appears to base its finding that Plaintiff failed to state a claim against the Corizon Defendants on a determination that the decision not to reverse Plaintiff's colostomy was a "medical decision." The Court reasons that a "medical decision" cannot form the basis for a deliberate indifference claim, because "federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

There are two problems with this analytical approach. First, finding that the decision was a "medical decision," or an exercise of "medical judgment," when Plaintiff alleged that the decision was based on solely economic factors, is inconsistent with presumption of truth to which Plaintiff's factual allegations are entitled for purposes of a motion to dismiss. Second and more importantly, this approach does not take into account any of the Supreme Court's guidance regarding the proper framework for analyzing Eighth Amendment claims subsequent to *Westlake*, including *Estelle v. Gamble*, 429 U.S. 97 (1976), *Wilson v. Seiter*, 501 U.S. 294 (1991) or *Farmer v. Brennan*, 511 U.S. 825 (1994).

Eighth Amendment claims now consist of an objective component and a subjective component. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). "The objective component requires the existence of a "sufficiently serious" medical need." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004), while the subjective test requires the defendant to possess "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). A subjective inquiry into the Defendant's state of mind is necessary because "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant must therefore act with

some mental element of punitive intent for his conduct to constitute 'punishment.' *Wilson v. Seiter*, 501 U.S. 294, 300 (1991). The minimum mens rea element sufficient to satisfy this requirement is "deliberate indifference," which lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other;" deliberate indifference is approximately equivalent to recklessness. *Farmer*, 511 U.S. at 836. The oft-repeated shibboleth that "medical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle* at 106, stems from the fact that harm inflicted accidentally, i.e. negligently, cannot be 'punishment:' unintentionally-inflicted harms do not satisfy the subjective element.

It does not follow that the Eighth Amendment is never implicated so long as some medical attention is provided. "[P]rison officials may not entirely insulate themselves from liability under § 1983 simply by providing some measure of treatment," *McCarthy v. Place*, 313 Fed.Appx. 810, 814 (6th Cir. 2008), because not every failure to render adequate care is the result of inadvertence or negligence. A conscious "decision to provide an 'easier or less efficacious form of treatment' may suffice to establish deliberate indifference." *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). For example, "a doctor's choosing the easier and less efficacious treatment of throwing away a prisoner's ear and stitching the stump," when it was medically feasible to reattach the ear, may be exhibiting "deliberate indifference . .

. rather than an exercise of professional judgment." *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976). In *Lemarbe v. Wisneski*, 266 F.3d 429 (6th Cir. 2001), the Sixth Circuit found that a doctor's failure to address a bile leak while performing surgery on the plaintiff could constitute deliberate indifference, because the doctor was aware of the bile leak, knew that bile leaks can cause painful and severe internal injuries, and disregarded the risk. *Id.* at 439. Summary judgment was denied to a prison dentist in *McCarthy v. Place*, 313 Fed.Appx. 313 Fed.Appx. 810, 816 (6th Cir. 2008), who could have placed a temporary filling in the plaintiff's cavity, "but instead chose a less efficacious treatment route by giving [plaintiff] packets of ibuprofen" while he delayed extracting the tooth for seven months. A jury could infer that the dentist knew that this treatment plan could cause plaintiff to endure unnecessary pain. *Id.* In *Darrah v. Krisher*, 865 F.3d 361, 372-73 (6th Cir. 2017), summary judgment was denied where the defendant doctor prescribed a less effective medication, not for any legitimate medical reason, but solely because it was cheaper. In all of these cases, the defendants acted with *knowledge* that their conduct would cause the plaintiff unwarranted pain and suffering, or at the very least, with *deliberate indifference* as to whether such harm would occur. A defendant's subjective awareness that his conduct will cause unnecessary suffering, and not whether that conduct constituted a "medical decision," is the touchstone of the subjective element.

In this case, Plaintiff complained to prison medical staff that he was incontinent, that he had a stoma, and that he had to wear a colostomy bag. The only way to restore continence, close the stoma, and relieve Plaintiff of the need to carry a bag of feces around was with surgery. Defendant Papendick's denied a request to evaluate Mr. Jackson for surgery. Defendant Papendick's act cannot be construed as "an inadvertent failure to provide adequate medical care," *Wilson*, 501 U.S. at 297, or the provision of treatment which unintentionally resulted in harm due to a mistake or error in judgment. Defendant Papendick did not provide Plaintiff with any treatment at all. Rather, he denied care with actual knowledge that the denial would result in the Plaintiff's incontinence continuing for the remainder of his prison term. A mental state of actual knowledge is more than sufficient to satisfy the subjective component of an Eighth Amendment claim.

Of course, not every intentional denial of treatment violates the Eighth Amendment. Prison officials are permitted to exhibit deliberate indifference to an inmate's complaints about, for example, dandruff, *Cole v. Litscher,* 2005 U.S. Dist. LEXIS 8585 at *18 (W.D. Wis. May 6, 2005), because "to satisfy the objective component, the injury must be sufficiently serious." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). In the present case,

> a reasonable jury could find that [Plaintiff's] colostomy constituted a serious medical condition because (1) the colostomy prevented him from eliminating waste in a normal manner; (2) the colostomy required him to wear a bag that constantly emitted a foul odor; and (3) the colostomy required significant

11

> maintenance by the plaintiff and medical personnel. Though these consequences do not inevitably entail pain, they adequately meet the test of 'suffering' that *Gamble* recognized is inconsistent with 'contemporary standards of decency.'

*Baker v. Blanchette*, 186 F.Supp. 2d. 100, 103 (D. Conn. 2001). The Sixth Circuit similarly explained in *Boretti v. Wiscomb*, 930 F.2d 1150, 1155 (6th Cir. 1991), that a prisoner can recover for the "deprivation and degradation" of being "forced to sit in his own feces for several hours," even though leaving a paraplegic and incontinent prisoner to sit in his own feces may not involve a serious risk of physical injury. *See Boretti* at 1155, quoting and explaining *Parrish v. Johnson*, 800 F.2d 600, 610 (6th Cir. 1986). This is because "[t]he infliction of such unnecessary suffering is inconsistent with contemporary standards of decency." *Boretti* at 1153. *See also Swift v. Edelman*, 2017 U.S. Dist. LEXIS 182524 (W.D. Mich. 2017) (need for colostomy reversal sufficiently serious); *Wilson v. Arpaio*, 2015 U.S. Dist. LEXIS 84843 (D. Ariz., June 30, 2015) (same); *Talal v. White*, 403 F.3d 423 (6th Cir. 2005) (medical need to avoid exposure to secondhand tobacco smoke can be sufficiently serious); *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017) (medical need for psoriasis medication was sufficiently serious); *Flanory v. Bonn*, 604 F.3d 249 (6th Cir. 2010) (holding that prisoners have a serious medical need for toothpaste, denial of access to toothpaste for an extended period is actionable).

12

**Objection #3: The Magistrate Judge erred in her conclusion that the Amended Complaint failed to state a *Monell* claim against Corizon.**

The Magistrate Judge largely declined to reach the issue of *Monell* liability, although this issue was extensively briefed by the parties. The Magistrate Judge's treatment of *Monell* is limited to the following footnote:

> Plaintiff's complaint fails to state a colorable deliberate-indifference claim against Corizon for an additional reason. The Supreme Court held, in *Monell v. Department of Social Services of City of New York*, that a government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." 436 U.S. 658, 694 (1978). Section 1983 also permits suit against "a private entity that contracts to perform traditional state functions," but that contractor is only liable under a *Monell* claim "for a policy or custom *of that private contractor,* rather than a policy or custom of" a governmental entity. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). For this reason, no liability can attach to Corizon for deliberate indifference.

**(ECF No. 26, PageID 546-47).**

Every injury inflicted by a corporate entity, (whether that entity is municipal or private), is on some metaphysical level inflicted by one or more of the entity's employees or agents. To satisfy the "official policy" requirement of *Monell*, a plaintiff is not required to plead that his injury was caused by a published, officially-promulgated corporate policy condoning the violation of constitutional rights: "local governments, like every other § 1983 'person,' may by the very terms of the statute, be sued for constitutional deprivations visited pursuant to governmental "custom,"

13

even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). *Monell* also does not stand for the proposition that a corporate entity cannot be sued for a single wrongful action taken by its authorized agent. *See, e.g. Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994) (holding that "the requirement that a municipality's [or contractor's] wrongful actions be a "policy" is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials.") Rather:

> "*Monell* is a case about responsibility.  . . . The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality"— that is, acts which the municipality has officially sanctioned or ordered."

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986). (emphasis in original). What *Monell* prohibits is the imposition of § 1983 liability on a corporate entity "for the random, unauthorized acts of its employees," *Mills v. City of Barbourville*, 389 F.3d 568, 578 (6th Cir. 2004), in other words, "*solely* because [the corporation] employs a tortfeasor." *Monell*, 436 U.S. at 691 (emphasis in original.) *Compare Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996) (municipality not responsible for sexual assault of student by school employee) *and Pecsi v. City of Niles*, 674 Fed.Appx. 544 (6th Cir. 2017) (municipality not liable where arresting

14

officer forced detainee to masturbate into a cup), *with Meyers v. City of Cincinnati*, 14 F.3d 1115 (1994) (municipality liable for retaliatory demotion of fire department employee by city manager), *and Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (municipality liable for county prosecutor's directive to police to search plaintiff's office without a warrant.)

Here, Plaintiff alleges that Defendant Papendick "is Corizon's Director of Utilization Management for Michigan prisons." (**ECF No. 12, PageID 190).** He alleges that Defendant Papendick's duties as Director of Utilization Management included of determining whether to approve or deny "407 Requests," which are requests from on-site medical providers at the prisons for off-site care. He alleges that Defendant Papendick is Corizon's final decisionmaker with regard to whether a 407 request is approved or denied, and making these decisions is Defendant Papendick's primary job responsibility. (**ECF No. 12, PageID 189-192).** When Defendant Papendick denies a 407 request, his decision is not "the random, unauthorized act" of a rogue employee for which Corizon cannot fairly be held responsible; his decision *is* Corizon's decision. *See Pembaur*, 475 U.S. 469 at 481.

While not addressed by the Report, the Corizon Defendants also raised the *Monell*-related argument that MDOC's "corrective and reconstructive surgery" policy absolves them of liability, because "evidence supports that MDOC, through its Chief Medical Officer, has ultimate authority to authorize corrective and

reconstructive surgery, *not* Corizon or its employees," and therefore Defendant Papendick is not a "final decisionmaker" for *Monell* purposes. (**ECF No. 24, PageID 487**). This argument improperly conflates the *Monell* question, whether decisions made by Defendant Papendick on 407 requests are properly chargeable to Corizon, with the broader question of liability: whether Corizon, MDOC employees, or both were responsible for the denial of care.

If Defendant Papendick is ***Corizon's*** final decisionmaker with respect to approvals or denials of 407 requests, the decisions he makes within the scope of his authority are chargeable to ***Corizon***. If Corizon's 'final decisionmaker' is some other Corizon employee who does not review Defendant Papendick's decisions, then Defendant Papendick's decisions are *still* chargeable to Corizon, because a corporation "may not escape *Monell* liability . . .  by simply delegating decisionmaking authority to a subordinate official and thereafter studiously refusing to review his unconstitutional action on the merits." *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994). If Defendant Papendick actually approved the request for a surgical consult, but an MDOC employee stepped in and vetoed his decision, then the Corizon Defendants would not be liable. But the Corizon Defendants have put forth no evidence that this occurred, while Plaintiff proffered substantial circumstantial evidence that it did not. (*See* ECF No. 21, PageID 391-

16

397 and cited exhibits.)  In any case, it is a question of fact better suited for resolution on summary judgment or at trial.

The Corizon Defendant's reliance on the "corrective and reconstructive surgery" policy language is also misplaced, since even if the policy was strictly enforced, (which is doubtful, particularly for the portion of Mr. Jackson's incarceration when the CMO position and all Assistant CMO positions were vacant), the Corizon Defendants interpretation of the policy is not inconsistent with their liability. The policy states:

> AA. Corrective surgery is a surgical procedure to alter or adjust body parts or the body structure. Reconstructive surgery is a surgical procedure to reform body structure or correct defects. For purposes of this policy, corrective and reconstructive surgery does not include procedures which can be done under local anesthesia.

> BB. Corrective and reconstructive surgery shall be authorized for a prisoner only if determined medically necessary and only if approved by the CMO. It shall not be approved if the sole purpose is to improve appearance.

Almost every major surgical procedure, from setting a broken bone, to coronary artery bypass, to repairing a hernia, involves either "alter[ing] or adjust[ing] body parts," "reform[ing] body structure," or "correct[ing] defects." It may be true that Assistant Chief Medical Officer Borgerding personally approved every major surgery for 40,000 inmates. But even if Dr. Borgerding's approval was *necessary* for a surgical procedure to take place, the policy does not indicate that it was *sufficient*. More than one official can have veto power over a decision. Since

17

Defendant Papendick had the authority to veto requests for surgery from on-site medical providers, presumably before those requests ever reached Dr. Borgerding, the fact that Dr. Borgerding was also vested with the authority to veto requests for surgery does not relieve the Corizon Defendants of responsibility for their own unconstitutional conduct. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1250 (6th Cir. 1989); *United States v. Price*, 383 U.S. 787, 794 (1966); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

**Objection #4: The Magistrate Judge erred by failing to address the merits of Plaintiff's argument that *Kinglsey v. Hendrickson* alters the constitutional standard for Fourteenth Amendment due process claims by pretrial detainees outside of the excessive-force context.**

Mr. Jackson was a pretrial detainee, not a convicted prisoner, at all times relevant to his claims against Defendant Dr. Kraus, so the Fourteenth Amendment, not the Eighth Amendment, forms the basis for his claim against Dr. Kraus. *Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Historically, § 1983 claims for inadequate medical treatment in pretrial detention were analyzed under the same standard as Eighth Amendment claims brought by convicted prisoners. However, since *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015), a circuit spilt has developed regarding whether the subjective component of the Eighth Amendment inquiry is still applicable in pretrial detention conditions-of-confinement cases. The Sixth

Circuit has noted the controversy, but has not taken a side. *See Richmond v. Huq*, 885 F.3d 928, 937 n.3 (6th Cir. 2018). At least one district court in this Circuit has considered the issue and followed the Ninth, Seventh, and Second Circuits in applying an objective test to a Fourteenth Amendment conditions-of-confinement claim brought by pretrial detainee. *See Love v. Franklin Cty.*, 376 F.Supp. 3d 740 (E.D. Ky. 2019).

The Report and Recommendation asserts that "[f]ederal district courts in Michigan have unanimously concluded that until the Sixth Circuit expressly rules that *Kingsley* alters the analysis for deliberate indifference claims, such claims proceed under the same two-pronged inquiry," (**ECF No. 26, PageID 541**), citing *Elhady v. Bradley*, ___ F. Supp. 3d ___, 2020 WL 619587 (E.D. Mich. Feb. 10, 2020), and a number of other Michigan district court cases where the constitutional uncertainty had been noted by the Court but was either not dispositive or not raised by the parties. The Magistrate Judgme then proceeds to apply the traditional two-pronged inquiry, and finds that the Plaintiff's claim against Dr. Kraus should be dismissed for failure to adequately plead the subjective prong. (**ECF No. 26, PageID 544**).

The subjective prong is the portion of the test that was altered by *Kingsley* in the context of an excessive-force claim, the portion that is the subject of the circuit split, and the portion that the Plaintiff argued should be jettisoned or modified in

19

light of *Kingsley*. The Court in *Elhady v. Bradley*, 2020 WL 619587 (E.D. Mich. Feb. 10, 2020) noted that the law in this area was unsettled at \*14 n.12, but declined to modify the old standard because the plaintiff in that case had not adequately developed his constitutional argument. *Id*. at \*13.

The Magistrate Judge did not find that the Plaintiff in this matter failed to adequately explain his position regarding how and why *Kingsley* should modify the pleading standard for Fourteenth Amendment substantive due process claims in the pretrial detention conditions-of-confinement context. That argument is propounded at (**ECF No. 25, PageID 517-524**). In essence, Plaintiff argued that the Court should apply the same "substantial departure from accepted professional judgment" standard that the Sixth Circuit applied to Fourteenth Amendment substantive-due-process claims brought by an involuntarily civilly-committed individual in *Terrance v. Northville Reg'l Psychiatric Hosp.*, 268 F.3d 834, 848-850 (6th Cir. 2002). The Magistrate Judge should have either found that the outcome of this case would be the same with or without the subjective prong, or she should have addressed Plaintiff's constitutional arguments on the merits.

Respectfully submitted,


*/s/Laurence H. Margolis*
Laurence H. Margolis (P69635)
*Margolis, Gallagher & Cross*
214 S. Main St. Ste. 200
Ann Arbor, MI 48104
(734) 994 - 9590
Attorneys for Plaintiff




## PROOF OF SERVICE


I hereby certify that on February 5, 2020, I presented the foregoing paper to the
Clerk of the Court for filing and uploading to the ECF system, which will send
notification of such filing to the attorneys of record listed herein and I hereby
certify that I have mailed by US Postal Service the document to the involved non-
participants.

Dated: April 3, 2020


*/s/Laurence H. Margolis*
Laurence H. Margolis (P69635)
214 S. Main St. Ste. 200
Ann Arbor, MI 48104
(734) 994 - 9590
Attorney for Plaintiff

21