**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KOHCHISE JACKSON**,
  Plaintiff,

v.

**CORIZON HEALTH, Inc.,**, et al,
Defendants.

Case No.: 2:19-cv-13382
Hon.: Terrence G. Berg
Mag.: Patricia T. Morris

---

Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: larry@lawinannarbor.com
Email: ian@lawinannarbor.com

Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
*Corbet, Shaw, Essad & Bonasso, Pllc*
Attorneys for Defendant Prime Healthcare
Services and Colleen Spencer
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
Phone: (313) 964-6300
Email: daniel.corbet@cseb-law.com
Email: kenneth.willis@cseb-law.com

Ronald W. Chapman Sr., (P37603)
Delvin Scarber (P64532)
*Chapman Law Group*
Attorneys for Defendants Corizon Health,
Inc. and Keith Papendick, M.D.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
Phone: (248) 644-6326
Email: rchapman@chapmanlawgroup.com
Email: dscarber@chapmanlawgroup.com

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
A SUBSTANTIVE RESPONSE TO AN INTERROGATORY**

Plaintiff Kohchise Jackson, by and through his attorneys, Laurence H. Margolis and Ian T. Cross, and pursuant to Fed. R. Civ. P. 37(a)(3)(B), seeks an order compelling Defendant Corizon Health, Inc. to substantively respond to Plaintiff's Third Interrogatory and to produce documents responsive to Plaintiff's Second Requests for Production of Documents. On January 11, 2021, Plaintiff served discovery requests on Corizon seeking certain policy manuals, staff training materials, and Key Performance Indicators. Corizon requested and received a one-week extension, and served responses on February 17, 2021. Corizon objected to all of the requests, did not substantively respond to an interrogatory, and did not produce a number of responsive documents. Counsel for the parties attempted to amicably resolve these issues on multiple occasions between February 26, 2021 and April 16, 2021, including telephonic conferences on March 3, March 26, April 16, and April 20. On April 21, 2021, Corizon served supplemental responses with new, additional objections. The parties narrowed the issues but have been unable to reach agreement on all aspects of Plaintiff's discovery requests. Plaintiff explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought. Plaintiff relies on the attached brief in support of his motion.

*/s/ Ian T. Cross*
Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: ian@lawinannarbor.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**KOHCHISE JACKSON**,
  Plaintiff,

Case No.: 2:19-cv-13382
v.                                          Hon.: Terrence G. Berg
                                            Mag.: Patricia T. Morris

**CORIZON HEALTH, Inc.,**, et al,
Defendants.

_____

Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
*Margolis and Cross*
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: larry@lawinannarbor.com
Email: ian@lawinannarbor.com

Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
*Corbet, Shaw, Essad & Bonasso, Pllc*
Attorneys for Defendant Prime Healthcare
Services and Colleen Spencer
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
Phone: (313) 964-6300
Email: daniel.corbet@cseb-law.com
Email: kenneth.willis@cseb-law.com

Ronald W. Chapman Sr., (P37603)
Delvin Scarber (P64532)
*Chapman Law Group*
Attorneys for Defendants Corizon Health,
Inc. and Keith Papendick, M.D.
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
Phone: (248) 644-6326
Email: rchapman@chapmanlawgroup.com
Email: dscarber@chapmanlawgroup.com

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND A SUBSTANTIVE RESPONSE TO
AN INTERROGATORY**

**TABLE OF CONTENTS**

| SECTION | PAGE NO. |
|---|---|
| Table of Contents……………………………………………...………… | ii. |
| Index of Authorities…………………………………………………… | iii. |
| Index of Exhibits …………………………………………………… | vi. |
| Statement of Issues Presented………..…………………………………. | vii. |
| Controlling or Most Appropriate Authorities………………………………. | viii. |
| Background …………………...…………………………………….. | 1 |
| I) Requests to Produce Three: The PIP Manual …………………………. | 1 |
| II)  Request to Produce Two: The CQI Manual …………………………. | 9 |
| III) Plaintiff's Third Interrogatory: Corizon's KPIs …………………………. | 11 |
| IV) Requests to Produce Five, Six, and Seven: Training Materials ………….. | 15 |

**INDEX OF AUTHORITIES**

**CASES**                                                                                    **PAGE NO**

**Supreme Court of the United States**

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ………………………….    *passim*

*New Hampshire v. Maine*, 532 U.S. 742 (2001) …………………………………    6


**United States Courts of Appeals**

*Fears v. Morgan (In re Ohio Execution Protocol),*
860 F.3d 881 (6th Cir. 2017) …………………………………………………    6

*Han v. Hankook Tire Co.*, 2020 U.S. App. LEXIS 2494
(6th Cir. Jan. 23, 2020) ………………………………………………………….    6

*Lee v. Max Int'l, LLC*, 638 F.3d 1318 (10th Cir. 2011)……………………….    10


**United States District Courts**

*Bennett v. Corizon, LLC*, 2016 U.S. Dist. LEXIS 187257
(W.D. Mo. 2016)…………………………………………………………………...    3

*Congress v. Tillman*, 2009 U.S. Dist. LEXIS 101296 (E.D. Mich.)…………...    8

*Cratty v. City of Wyandotte,* 296 F. Supp. 3d 854 (E.D. Mich. 2017) ……….    4

*Crawford v. Corizon Health, Inc.*, 2018 U.S. Dist. LEXIS 113828
(W.D. Penn. 2018)………………………………………………………………...    10

*Davidson v. Corizon, Inc.*, 2015 U.S. Dist. LEXIS 89527
(N.D. Ala. 2015). ………………………………………………………... …    16

*Ellis v. Corizon, Inc.*, 2018 U.S. Dist. LEXIS 67084
(D. Idaho 2018)…………………………………………………………………….    15

*Flagg v. City of Detroit*, 252 F.R.D. 346, (E.D. Mich. 2008)………………...    9

*Herriges v. Cty. Of Macomb*, 2020 U.S. Dist. LEXIS 146663
(E.D. Mich. 2020)……………………………………………………………………    7, 10, 18

*In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2D 509
(D. N.J. 2005) ……………………………………………………... 14

*Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*,
2016 U.S. Dist. LEXIS 120874 (E.D. Mich. 2016)………………………… 1

*Liguria Foods, Inc. v. Griffith Labs, Inc.*, 320 F.R.D.
168, (N.D. Iowa 2017) …………………………………………………….. 4

*Nelson v. Avon Prods.*, 2015 U.S. Dist. LEXIS 51104
(N.D. Cal. 2015)………………………………………………………… 14

*Norwood v. Thomas*, 2016 U.S. Dist. LEXIS 5255
(N.D. Al. 2016)…………………………………………………….. 2

*Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668
(C.D. Cal. 1998)……………………………………………………. 1

*Scott v. AREX, Inc.*, 124 F.R.D. 39 (D. Conn. 1989)……………………….. 8

*Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200
(E.D. Mich. 2018)……..……………………………………………………… 4

*Tran v. Nuclear Mgmt. Co., LLC*, 2007 U.S. Dist. LEXIS 34877
(N.D. Iowa 2007)…………………………………………………………… 13

*Verna L. Johnson v. Cook Cnty.*, 2015 U.S. Dist. LEXIS 115868
(N.D. Ill. 2015)…………………………………………………………. 11

*Walker v. Corizon Health, Inc.,* 2019 U.S. Dist. LEXIS 4671
(D. Kan. 2019)…………………………………………………………….. 9

*Wesley Corp. v. Zoom T.V. Prods., LLC*, 2018 U.S. Dist.
LEXIS 5068 (E.D. Mich. 2018) ……………………………………………. 4

*Winebarger v. Corizon, LLC*, 2019 U.S. Dist. LEXIS 43588
(W.D. Mo. 2019)……………………………………………………… *passim*

## State of Michigan Court of Appeals

*Gallagher v. Detroit-Macomb Hospital Asso.*,
171 Mich. App. 761 (1988)…………………………………………………. 5

## Constitutions, Statutes and Court Rules

Fed. R. Civ. P. 33(b)(4)………………………………………………….. 5

Fed. R. Civ. P. 26(b)(2)(C)(i)…………………………………………....        7

FRE 403 …………………………………………………………...,.        7

Fed. R. Civ. P. 26(b)(3)(A)……………………………………………        7

Fed. R. Civ. P. 26(b)(3)(B) ……………………………………………        7, 8

Fed. R. Civ. P. 34(a)(1)…………………………………………………....        8

## INDEX OF EXHIBITS

**EXHIBIT**                                                                **PAGE NO**

Ex. A: *Docket entry 275 in Bennett v. Corizon, LLC……………………….*          2

Ex. B: *Defendant Corizon's Response to Plaintiff's*
      *First Discovery Requests………………………………………………….*          2, 4

Ex. C: *Defendant Corizon's Response to Plaintiff's*
      *Second Discovery Requests……………………………………………….*          4

Ex. D: *Corizon Bid Excerpts Re: Tracking of Performance Measures…*          12, 13

Ex. E: *Practitioner Clinical Onboarding -Prison – Phase II…………...*          14

Ex. F: *InGauge Screenshot ……………………………………………………*          15

Ex. G: *CQI Slideshow, pg. 8 ……………………………………………...........*          15

Ex. H: *407 Response Re: Colostomy Reversal Surgery……………...........*          16

Ex. I: *Corizon Contract Bid Excerpt Re: Training Materials..………….*          17

## STATEMENT OF ISSUES PRESENTED

1.  Should Defendant Corizon Health, Inc. be required to produce the document filed under seal as ECF 131, Exhibit 19 in Winebarger v. Corizon, LLC et. al., Western District of Missouri, Case no.: 2:17-cv-04072?

    Plaintiff answers: YES

    Defendant answers: NO

2.  Should Defendant Corizon Health, Inc. be required to produce the document filed under seal as ECF 131, Exhibit 37 in Winebarger v. Corizon, LLC et. al., Western District of Missouri, Case no.: 2:17-cv-04072?

    Plaintiff answers: YES

    Defendant answers: NO

3.  Should Defendant Corizon Health, Inc. be required to disclose its Key Performance Indicators in response to Plaintiff's Third Interrogatory?

    Plaintiff answers: YES

    Defendant answers: NO

4.  Should Defendant Corizon Health, Inc. be required to produce certain training materials requested by the Plaintiff?

    Plaintiff answers: YES

    Defendant answers: NO

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1) *Herriges v. Cty. Of Macomb*, 2020 U.S. Dist. LEXIS 146663 (E.D. Mich. 2020)

2) *Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008)

3) *Wesley Corp. v. Zoom T.V. Prods., LLC*, 2018 U.S. Dist. LEXIS 5068 (E.D. Mich. 2018)

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND SUBSTANTIVE RESPONSES TO AN INTERROGATORY**

## BACKGROUND

This is a § 1983 claim alleging deliberate indifference to a former prisoner's serious medical needs. Specifically, Plaintiff alleges that Michigan's prison healthcare vendor (Corizon Health, Inc.) refused to reverse his colostomy, leaving him to live with a colostomy bag for the duration of his incarceration. At issue in this Motion are one interrogatory and five requests to produce.[1] Plaintiff will address each item at issue separately.

### I. Request to Produce Three: The PIP Manual

Plaintiff's Third Request seeks portions of Corizon's PIP Manual. The Corizon PIP Manual has made several appearances in § 1983 cases alleging that Corizon has a policy or custom of denying medical care to prisoners in order to save money. "The Provider Information Program is a manual ("PIP Manual") that outlines Corizon corporate practices and performance expectations for physicians." *Winebarger v.*

---

[1] Corizon asserted new, additional objections to some of the discovery requests at issue in its April 21, 2021 supplemental response. Additional objections raised for the first time in a supplemental response served after the time permitted by Rule 33(b) are waived. *See Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671-72 (C.D. Cal. 1998); *Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, 2016 U.S. Dist. LEXIS 120874 at *6-7 (E.D. Mich. 2016).

*Corizon, LLC,* 2019 U.S. Dist. LEXIS 43588 at \*10-11 (W.D. Mo. 2019). The PIP Manual "indicates that cost is a major, if not the preeminent, factor Corizon providers should consider when making treatment decisions regarding inmates, and strongly suggests that the containment of costs is more important than doing one's "best."'" *Norwood v. Thomas,* 2016 U.S. Dist. LEXIS 5255 at \*27 (N.D. Al. 2016). Corizon appears to have lost it's *Monell*-based Motion for Summary Judgment in *Winebarger* partially on account of statements in the PIP Manual, which was filed under seal in that case. *See Winebarger,* 2019 U.S. Dist. LEXIS 43588 at \*17 ("[w]hile Defendant Corizon argues its policies allow its physicians discretion to exercise medical judgment, a reasonable factfinder could conclude that this discretion is illusory given the policies' countervailing focus on cost-containment.")

Corizon also lost its Motion for Summary Judgment in *Bennett v. Corizon, LLC,* 2:10-cv-4149 (W.D. Mo.), another Eighth Amendment § 1983 *Monell* case alleging a custom or policy of delaying or denying care to save money. In *Bennett,* both the Plaintiff's response to the motion for summary (ECF No. 275), and the Court's Opinion and Order (ECF No. 292), were filed under seal, but the docket entry text for the Plaintiff's response shows that the Plaintiff attached as exhibits <u>twenty-two separate excerpts</u> from the Corizon PIP Manual. Ex. A: *Docket entry 275 in Bennett v. Corizon, LLC.* Corizon also moved in limine in *Bennett* to prevent Plaintiff's expert from

2

testifying about a "Physician Information Program" Manual. *Bennett v. Corizon, LLC,* 2016 U.S. Dist. LEXIS 187257 at \*2 (W.D. Mo. 2016).

Plaintiff requested the PIP Manual in his First Requests to Produce, but Corizon claimed to be unable to locate the document. Ex. B: *Defendant's Responses to Plaintiff's First Discovery Requests*. Plaintiff then submitted another request for Corizon produce those portions of the document that were filed under seal by the Plaintiff in *Winebarger,* which Corizon can presumably obtain from the attorney that represented it in that case. Corizon proffered the following response:

> Defendant objects that this request is unreasonable, unduly burdensome, not relevant, disproportionate to the needs of this case, not important to resolving the issues at stake in the action, and the burden and expense of attempting to research and produce such information is outweighed by any benefit that such information could have to this case. See Fed R. Civ. P. 26(b)(1).

> Defendant further objects on the basis that Defendant Corizon's policies and procedures, and/or manuals do not set the standard of care, cannot be used as a substitute for the exercise of medical judgment, and are therefore irrelevant. See Gallagher v. Detroit-Macomb Hosp Ass'n, 171 Mich. App. 761, 764-765; 431 N.W.2d 90 (1988).

> Defendant further objects that the request, on its face, is improper as it would violate the spirit of sealed documents, court rules, and pertinent orders and/or protective orders or agreements that Plaintiff alleges existed in the alleged Missouri case. Defendant further objects that this request improperly asks Defendant to comment or provide information or documents concerning legal strategies of attorneys and prior litigation in violation of Fed R. Civ. P. 26(b)(3)(A)(B) and Fed. R. Evid. 403. Defendant objects that such information, prior case information, and litigation strategies can be obtained by Plaintiff from other sources. See Fed. R. Civ. P. 26((b)(2)(C)(i). Defendant further objects that this request is vague and ambiguous, thereby making it difficult for Defendant to decipher what is actually being requested from said case.

3

Without waiving said objection, Defendant has searched for and not yet located such a document to which Plaintiff may be referring. If such a document is located, the Manual and/or portions thereof will be produced subject to the above objections.

Corizon repeated its initial paragraph of objections, verbatim, in response to nearly every one of Plaintiff's discovery requests to date. See Ex. B: *Defendant Corizon's Response to Plaintiff's First Discovery Requests*; Ex. C: *Defendant Corizon's Response to Plaintiff's Second Discovery Requests*. This first paragraph of objections are boilerplate objections. A boilerplate objection "merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request." *Wesley Corp. v. Zoom T.V. Prods., LLC*, 2018 U.S. Dist. LEXIS 5068 at *9 (E.D. Mich. 2018). "Boilerplate objections to interrogatories and requests for production are not permitted under the Federal Rules of Civil Procedure," constitute forfeiture of the objections, and are sanctionable. *Id.* at *10-12; *See also, Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection"); *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017) ("NO MORE WARNINGS. IN THE FUTURE, USING 'BOILERPLATE' OBJECTIONS TO DISCOVERY IN ANY CASE BEFORE ME PLACES COUNSEL AND THEIR CLIENTS AT RISK FOR SUBSTANTIAL SANCTIONS.") (quoting *Liguria Foods, Inc. v. Griffith Labs, Inc.*, 320 F.R.D. 168, 192

4

(N.D. Iowa 2017)) (emphasis in original). Corizon's initial paragraph of objections are boilerplate, fail to satisfy the "specificity" requirement of Fed. R. Civ. P. 33(b)(4), and should be considered forfeited.

Corizon next objects that its "policies and procedures, and/or manuals do not set the standard of care, cannot be used as a substitute for the exercise of medical judgment, and are therefore irrelevant." It cites a state-law medical malpractice case, *Gallagher v. Detroit-Macomb Hospital Assoc.*, 171 Mich. App. 761 (1988), in support.

Corizon vigorously argued in its previous briefing in this case that Plaintiff bears the burden of showing that a policy, practice, or custom of Corizon "was the 'moving force' behind a violation of the Plaintiff's constitutional rights." (ECF No. 17, Pg.ID 320-21). Corizon's earlier position was summarized as follows:

> "To state a claim of deliberate indifference against Corizon, Plaintiff must plead that a policy, practice, or custom of Corizon is unconstitutional, and that claim must be specific. "[T]o satisfy the Monell requirements a plaintiff must 'identify the policy, connect the policy to the [defendant] itself and show that the particular injury was incurred because of the execution of that policy.'

Corizon Defendants' Motion to Dismiss, ECF No. 17, Pg.ID 317.

Corizon cannot now take the position that its corporate policies, practices, and customs are "irrelevant," after previously arguing that Plaintiff must prove a causal relationship between his alleged harm and a corporate policy, practice or custom. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that

position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This doctrine, known as judicial estoppel, prohibits "playing fast and loose with the courts—that is, abusing the judicial process through cynical gamesmanship." *Fears v. Morgan (In re Ohio Execution Protocol)*, 860 F.3d 881, 892 (6th Cir. 2017). "There is no set formula for assessing when judicial estoppel should apply. However, courts usually focus on three factors:

> First, a party's later position must be 'clearly inconsistent' with its earlier position.
>
> Second, a court should review "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.
>
> Finally, the court should evaluate whether the party advancing an inconsistent position would gain an unfair advantage if allowed to proceed with that argument."

*Han v. Hankook Tire Co.*, 2020 U.S. App. LEXIS 2494 at *6 (6th Cir. Jan. 23, 2020) (internal citations omitted).

The doctrine of judicial estoppel should apply to Corizon's objections regarding the relevance of its policies, practices, and procedures. First, Corizon's sequential positions concerning the relevance of its corporate policies in this litigation are clearly inconsistent. Second, while Corizon did not ultimately prevail on its Motion to Dismiss, it did succeed in convincing the Court that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658

6

(1978) shields private contractors like Corizon from *respondeat superior* § 1983 liability, meaning that Plaintiff bears the burden of demonstrating a relationship between a Corizon policy, practice, or custom and his alleged harm. (ECF No. 32, PageID 626-27). Finally, Corizon would gain an unfair advantage if it were able to withhold evidence of its corporate policies, practices, and customs, and then move for summary judgment on the grounds that Plaintiff lacks proof that a policy, practice, or custom of Corizon was the moving force behind the alleged violation of his Eighth Amendment rights.

Corizon's objections on the basis of Fed. R. Civ. P. 26((b)(2)(C)(i), FRE 403, and "Fed R. Civ. P. 26(b)(3)(A)(B)" are similarly unavailing. The requested document is not easily obtainable by the Plaintiff from another source per Fed. R. Civ. P. 26((b)(2)(C)(i) because it is Corizon's confidential information, provided to the plaintiff in *Winebarger* subject to a protective order, and filed under seal. Regarding the FRE 403 objection, because "information need not be admissible in evidence to be discoverable," a party cannot refuse to produce documents in response to a discovery request on the grounds that the documents "would be more prejudicial than probative under Federal Rule of Evidence 403." *Herriges v. Cty. Of Macomb*, 2020 U.S. Dist. LEXIS 146663 at *4 (E.D. Mich. 2020).

Fed. R. Civ. P. 26(b)(3)(A) prohibits discovery of "documents and tangible things that are prepared in anticipation of litigation or for trial ***by or for another party* *or its* *representative*,**" i.e. trial preparation materials, while Rule 26(b)(3)(B) protects against

7

disclosure "the mental impressions, conclusions, opinions, or legal theories *of a party's attorney or other representative* concerning the litigation," i.e. attorney work product. The PIP Manual is not a document prepared by Corizon in anticipation of trial. To the extent that disclosing the portions of the PIP Manual that were attached to ***the plainiff's*** summary judgment response in *Winebarger* would reveal the mental impressions of an attorney, they would reveal the mental impressions of the plaintiff, Richard Winebarger's, attorney. Richard Winebarger is not a party to this case. Rule 26(b)(3)(B) does not shield documents that might reveal the mental impressions of Mr. Winebarger's attorney from disclosure.

In its supplemental response, Corizon again indicated that it is unable to locate the PIP Manual. However, the present request seeks not the entire PIP Manual, but rather those PIP Manual excerpts filed under seal in "ECF 131, Exhibit 19 in Winebarger v. Corizon, LLC et. al., Western District of Missouri, Case no.: 2:17-cv-04072." Rule 34 provides that a party may request production of any items "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "The word 'control' is to be broadly construed. A party controls documents that it has the right, authority, or ability to obtain on demand." *Congress v. Tillman*, 2009 U.S. Dist. LEXIS 101296 (E.D. Mich.) (quoting *Scott v. AREX, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989)). Thus, a "party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that

8

information reasonably available to him from his employees, agents, or others subject to his control." *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008)

Missouri Bar rules provide that case files be maintained by the parties' attorneys for six years after the conclusion of litigation under ordinary circumstances. Mo. R. Gov. Bar Jud. 4-1.22. The *Winebarger* litigation concluded in May of 2019. Corizon can obtain the requested document by contacting the attorney who represented it in *Winebarger,* if it is otherwise unable to find the document.

## II. Request to Produce Two: The CQI Manual

Plaintiff also requested "a complete copy" of the CQI Manual in his first Requests to Produce. Defendant instead produced the table of contents of the CQI Manual, declaring that, "if after reviewing the Table of Contents Plaintiff is able to demonstrate that a particular topic is relevant, Defendants may produce said documents pertaining to such topic, subject to the above objections." Corizon employed the same table-of-contents response in *Walker v. Corizon Health, Inc.,* 2019 U.S. Dist. LEXIS 4671 (D. Kan. 2019), yet another Eighth Amendment § 1983 *Monell* case alleging that Corizon has a policy of denying medical care to prisoners to save money. The Court in that case found that the entire CQI Manual was relevant and discoverable. *Id*. at *14-15. A protective order has been entered in the instant case, and producing the complete CQI Manual is no more burdensome for Corizon than producing the manual's table of

9

contents. Requiring Plaintiff to play a guessing game concerning which sections might contain evidence of a policy, practice, or custom related to the denial of his surgery serves no legitimate purpose in the discovery process. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011) ("discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered").

Rather than accepting Corizon's invitation to engage in a guessing game, Plaintiff submitted a subsequent discovery request seeking the portions of the CQI Manual filed under seal in the Plaintiff's response to Corizon's summary judgment motion in *Winebarger*, which are presumably the relevant portions. Corizon then produced what appears to be a set of power-point slides *about* the CQI Manual, rather than the CQI Manual itself. Corizon further objected to producing the CQI Manual on the ground that the manual is subject to the statutory Patient Safety Work Product ("PSWP") privilege.

In order to demonstrate that a document is PSWP and covered by the privilege, Corizon bears the burden of showing that 1) the document was *actually reported* to a Patient Safety Organization ("PSO"), and 2) the document was developed *for the purpose of* reporting to a PSO. *See Crawford v. Corizon Health, Inc.*, 2018 U.S. Dist. LEXIS 113828 at *5-8 (W.D. Penn. 2018); *Herriges v. Cty. Of Macomb*, 2020 U.S. Dist. LEXIS 146663 at *7-8 (E.D. Mich. 2020). "[I]nformation is privileged only if it is specifically generated or assembled for the purpose of reporting to a PSO or patient

10

safety evaluation system. Information generated or assembled for some other purpose, *even if the information relates to quality improvement measures*, is not considered patient safety work product." *Verna L. Johnson v. Cook Cnty*., 2015 U.S. Dist. LEXIS 115868 at *21 (N.D. Ill. 2015) (emphasis added). Corizon has put forth no evidence that the CQI Manual, itself, was reported to a PSO, or that Corizon created the Manual for the sole purpose of reporting the Manual to a PSO. The more probable purpose of the Manual is to serve as a reference material for Corizon's employees. Corizon has not met its burden of demonstrating that the CQI Manual is PSWP.

### III. Interrogatory #3: Corizon's KPIs

Plaintiff's Third Interrogatory requests "Key Performance Indicators and Key Process Indicators used by Defendant Corizon to compare and track its performance in various state prison systems." After repeating its boilerplate objections, Corizon responded as follows:

> Without waiving said objection, Defendant has searched for and has not yet finalized its search for such information. Once such information is obtained, this response will be supplemented subject to the above objections.

On April 21, 2021, Corizon supplemented its response, appending the following paragraph:

> Without waiving said objection, Corizon does not track performance measures or indicators for the MDOC contract. Corizon only contracts for the physician and mid-level component. Therefore, performance measures or indicators would be the

11

responsibility of the State of Michigan. This further demonstrates the irrelevant, unreasonable, and unduly burdensome nature of this request.

This answer is evasive and non-responsive to the interrogatory. It is evasive because Corizon does, in fact, track a number of metrics for the MDOC contract which in laymans' terms would be considered "performance measures or indicators," even if Corizon does not specifically label them as such. In October of 2020, Corizon submitted a Statement of Work Contract Activities with its bid for the renewal of Michigan Department of Corrections' prisoner healthcare contract. Plaintiff recently obtained this document via a FOIA request. (Ex. D: *Corizon Bid Excerpts Re: Tracking of Performance Measures*). Corizon made the following representations to the State of Michigan in its bid packet:

> *RFP Question:* "Bidder must provide a description of at least one successful means of increasing provider and pharmacy staff productivity used in a prison or jail."
>
> *Corizon Response:* "As noted above, **in our contract with the MDOC, productivity is tracked on our productivity tracking tool.** We also have a Waitlist Tracking spreadsheet to track waitlist trends. This enables us proactively allocate resources to ensure patients' clinical needs are being met . . . **Productivity standards are tracked through COMS and monitored daily.**" (emphasis added).
>
> *RFP Question:* "Bidder must describe your organization's philosophy on providing Collaborative Care and how it will be implemented with Michigan's prison population."
>
> *Corizon Response:* ". . . In addition to tracking risk scores from Impact Pro in which the risk score algorithm includes compliance/noncompliance with HEDIS measures (along with other gaps in care), **Corizon Health tracks the following trends:**
>
> ▪ Average Daily Population (ADP) and demographics (age)

12

- ▪ Utilization Management
- - Outpatient Referrals
- - Outpatient Procedures
- - Advanced Age Patients
- - Oncology Patients
- - CHOICES Patients
- - Gender Identity Disorder Patients
- - Hepatitis C Patients
- - Integrated Care Patients
- - ER Runs
- - Inpatient Days
- - Number of Admits
- - Average Length of Stay (ALOS)
- - Impact Pro Risk Scores . . . ”

Ex. D: *Corizon Bid Excerpts Re: Tracking of Performance Measures* (emphasis added).

Besides being evasive, Corizon's answer is *non-responsive* to the interrogatory. The interrogatory does not request "performance measures or indicators" specific to the Michigan contract, it asks for <u>Key</u> Performance Indicators ("KPIs") used to "<u>*compare*</u> and track [Corizon's] performance *in various state prison systems.*" In other words, Plaintiff seeks Corizon's KPIs for its "State" division, which comprises its prison healthcare business. A useful working definition of KPIs is provided in *Tran v. Nuclear Mgmt. Co., LLC*, 2007 U.S. Dist. LEXIS 34877 (N.D. Iowa 2007):

"[KPIs] help an organization define and measure progress towards organization goals. [KPIs] are quantifiable measurements, agreed to beforehand, that reflect the critical success factors of an organization. A primary purpose of KPIs is to give everyone in the organization a clear picture of the goals of the organization and what must be done to accomplish the goals."

*Id.* at *11 n.2.

13

For example, "[n]ew and existing proved reserves are Key Performance Indicators in the oil and gas industry," *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2D 509, 516 (D. N.J. 2005), while "the number of [Avon] Representatives a [Direct Sales Manager] recruits and the sales those Representatives make" are KPIs for Avon Products, Inc., a multi-level marketing company. *Nelson v. Avon Prods.*, 2015 U.S. Dist. LEXIS 51104 at *5 (N.D. Cal. 2015).

Corizon, like almost every other major American corporation, uses KPIs. According to Corizon's website,[2] Corizon presents annual awards to regional teams of employees within its "Community" (county jail), and "State" (prison) divisions, whose "**contracts are under budget and ahead of their KPIs**." In a document Corizon produced outlining a training program for its new employees, one required training module is entitled: "Key Performance Indicators/Process Indicators (KPIs/PIs) and Quality Indicators." See Ex. E: *Practitioner Clinical Onboarding -Prison – Phase II*. Another document Corizon produced in discovery contains login instructions for its proprietary business intelligence tool, InGauge. A screenshot included in the instructions demonstrates that InGauge contains a "KPI Dashboard" with a year-to-date view of KPIs. Ex. F: *InGauge screenshot.* Yet another document Corizon produced mentions "monitoring our Key Performance Indicators such as inpatient/outpatient therapies, and ER runs." Ex. G: *CQI slideshow, pg. 8.*

---

2  http://www.corizonhealth.com/index.php/S=0/Corizon-News/connections/ %20annual-leadership-meeting-and-awards-ceremony-held-in-franklin-tennessee (accessed 4/13/2021)

14

Corizon regularly monitors its KPIs, it teaches every new employee about its KPIs, and it presents awards to its staff when they exceed its KPI targets for their contracts. Corizon has KPIs, and it should know what they are. *See Ellis v. Corizon, Inc.,* 2018 U.S. Dist. LEXIS 67084 at *14 (D. Idaho 2018) ("a corporation should reasonably know its own policies and procedures.")

## IV. Requests to Produce  Five, Six, and Seven: Training Materials

Requests to Produce Five, Six, and Seven seek training materials for certain modules of the Corizon Practitioner Clinical Onboarding program. Corizon's training materials for its clinical staff are likely to contain evidence relevant to its policies, practices, and customs with respect to the provision of healthcare services to prisoners. For example, one module is entitled: "Contract Overview / Full Risk / Shared Risk / Pass-Through." A "Full Risk" contract is one in which:

> "Corizon assesses the inmate population and creates a budget. Then, for a pre-agreed contract price, Corizon employs all medical staff in the facility and covers the cost of medication, off-site referrals, and hospitalizations. (Doc. 74-2, pp. 28-29). Therefore, the less treatment inmates require, the more money Corizon makes."

*Davidson v. Corizon, Inc.,* 2015 U.S. Dist. LEXIS 89527 at *20-21 (N.D. Ala. 2015). "Shared Risk" contracts presumably involve Corizon and its governmental client sharing the cost of each individual medical procedure, while "Pass-Through" contracts likely

15

involve the governmental client paying for prisoner heathcare via a fee-for-service model, in addition to paying Corizon a mark-up or management fee. If Corizon's training materials instruct its physicians to make every effort to avoid sending prisoners off-site for treatment in "Full-Risk" and "Shared-Risk" contracts, but not in "Pass-Through" contracts, that would be evidence that Plaintiff's colostomy reversal surgery may have been withheld for a financial, rather than a medical, reason. It is unclear why Corizon would need to teach its physicians about the differences between "Full-Risk," "Shared-Risk," and "Pass-Through" contracts if it did not instruct them to make some change in the way they deliver care based on the contract type. Another training module is entitled "Determining Medical Necessity." This module is highly likely to contain information relevant to this case, given that Defendant Papendick's stated reason for denying Plaintiff's surgery was: "medical necessity not demonstrated at this time." Ex. H: *407 Response Re: colostomy reversal surgery.*

Corizon has not produced these training materials. Instead, it referred Plaintiff to its previous document production, containing only the titles of most training modules, and produced slideshows for "CHEO Corrections Environment" and "Corizon Behavioral Health Employee Orientation," which are not among the modules Plaintiff requested. Corizon claimed to be unable to locate further responsive material. But in its recent bid packet for the Michigan contract renewal, Corizon made the following representations concerning its training materials:

16

"All Corizon Health required training is digitized to create an interactive, learning-rich experience. . . . **Each module includes narration, knowledge checks, and additional educational material** to support learning transfer to on-the-job experiences. In addition, completion is managed through Corizon University."

"Corizon Health supports our on-site education programs with thorough, timely, quality, state-of-the-art, customized online training programs designed to improve our teams' performance for Corizon Health's client partners. **Corizon University ensures all staff members have complete access to the latest material necessary to be successful on the job, 24/7, using a laptop, tablet, or mobile device.**"

"All newly hired employees participate in a minimum of 16 hours of standardized learning that is a blend of classroom training, facility tours, and online content. In addition, clinical employees complete 24 hours of classroom and online learning prior to providing patient care."

"Clinical employees also have an additional three and one-half hours of online learning to complete within the first 30 days followed by three hours of content to complete by the end of 60 days."

"Corizon Health provides copies of the training modules and a cover sheet to the Health Unit Manager (HUM) at the facilities when the new provider starts."

"Managers have access to their direct reports' learning transcripts and can view completed training, assign learning, and recommend content."

Ex. I: *Corizon Contract Bid Excerpt Re: Training Material*.

Plaintiff has not received any "narration," "knowledge checks," "online content," etc. for any of the training modules he requested. This content is not privileged, and it satisfies the "extremely low bar" for relevance in discovery. *Herriges v. Cty. Of Macomb*, 2020 U.S. Dist. LEXIS 146663 at *4 (E.D. Mich. 2020). Most of the requested materials are training modules from "Practitioner Clinical Onboarding I" and "Practitioner Clinical Onboarding II," which appear to correspond to the "additional three and one-half hours

17

of online learning" that "clinical employees" must complete within the first 30 days, and the "three hours of content to complete by the end of 60 days." If all Corizon clinical employees have "complete access" to these materials, "24/7, using a laptop, tablet, or mobile device," Corizon should be able to produce them to the Plaintiff.

/s/ Ian T. Cross
Laurence H. Margolis (P69635)
Ian T. Cross (P83367)
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
Phone: (734) 994-9590
Email: larry@lawinannarbor.com
Email: ian@lawinannarbor.com

18