## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Kohchise Jackson,

      Plaintiff,

v.

Corizon Health, Inc., et al.

      Defendants.

Case No: 2:19-cv-13382
District Judge: Terrence G. Berg
Magistrate Judge: Patricia T. Morris

---

MARGOLIS, GALLAGHER & CROSS
Lawrence H. Margolis (P69635)
Ian T. Cross (P83367)
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin K. Scarber (P64532)
Attorneys for Defendants Corizon Health, Inc.
and Keith Papendick, M.D.
1441 West Long Lake Road, Suite 310
Troy, MI  48098
(248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

CORBET, SHAW, ESSAD, & BONASSO, PLLC
Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
Attorneys for Prime Healthcare Services,
Colleen M. Spencer, and David A. Krause
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
(313) 964-6300
daniel.corbet@cseb-law.com
kenneth.willis@cseb-law.com

---

## DEFENDANTS CORIZON HEALTH, INC., AND KEITH PAPENDICK, M.D.'S RESPONSES TO PLAINTIFF'S SECOND REQUESTS TO ADMIT, THIRD INTERROGATORIES AND FOURTH REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW COMES Defendants CORIZON HEALTH, INC., and KEITH PAPENDICK, M.D., by and through their attorneys, CHAPMAN LAW GROUP, and submits the following responses to Plaintiff's Second Request to Admit, Third Interrogatories, and Fourth Requests for Production directed to them:

## **GENERAL OBJECTIONS**

The following objections shall apply to each and every answer set forth herein, whether it expressly states that any particular objection applies or not:

1.     Defendant objects to each and every interrogatory and request to the extent that it purports to require anything more than the Federal Rules of Civil Procedure, the local court rules, and the applicable caselaw required of Defendant in responding to request for production.

2.     Defendant objects to each and every request to the extent that it seeks information protected by the attorney-client privilege, by the work product doctrine, by any other applicable privilege, or for the reason that it is confidential or proprietary in nature.

3.     Defendant's responses to these requests are based upon a diligent review of information presently available to it. Because investigation of the facts pertaining to this pending action is continuing and pretrial discovery has not yet been completed, Defendant reserves the right to amend or supplement this response in accordance with the applicable court rules and applicable caselaw.

4.      Defendant objects to each and every request to the extent that it calls for information that is not reasonably calculated to lead to the discovery of admissible evidence, or that is not relevant to any claim or defense in the pending action.

5.      Defendant objects to each and every request to the extent that it calls for information that is (a) unreasonably cumulative or duplicative; (b) obtainable from some other source that is more convenient, less burdensome, or less expensive; or (c) already available to Plaintiff or which was already provided to Plaintiff.

6.      Defendant objects to each and every request to the extent that it seeks information or documents in the possession, custody, or control of any third party.

7.      Neither Defendant's response to any request for information, nor its production of any documents, shall be construed as an admission by it of the relevance or admissibility of such information or documents.

8.      A response that Defendant will produce responsive documents is not an indication that any such documents exist, but only a representation that it will be made available if they do exist.

9.      Defendant reserves the right to rely upon additional documents and information that may be discovered in connection with this proceeding, including documents and information that may be produced or provided by Plaintiff.

10.     All documents produced are subject to the protective order to which the parties have stipulated in this case.

## **Plaintiff's Requests to Admit to Defendant Corizon Health, Inc.**

**REQUEST TO ADMIT 1:** Please admit that you make every effort to maximize the extent to which healthcare services are provided on-site at the prison facilities in which your patients are confined.

**RESPONSE:**
**Defendants object to the overbroad and ambiguous nature the phrase "every effort," including in the context of the facts and evidence which exists in this case, as the word "every" means "without exception." See Webster's dictionary. Therefore, denied.**

**REQUEST TO ADMIT 2:** Please admit that in calendar year 2017, you had budgetary targets for pharmacy utilization and outpatient utilization for each of your state contracts.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of targets, performance, or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.  Defendants further object on the basis that the term "budgetary targets" is ambiguous, not defined, and not placed in any context. Without waiving said objection, denied for the MDOC contract.**

**REQUEST TO ADMIT 3:**  Please admit that in calendar year 2017, you tracked inpatient hospital days per 1000 prisoners for each of your state contracts, with the goal of reducing hospital utilization.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Without waiving said objection, admit that this data was tracked for the MDOC contract. However, denied that it was for the goal of reducing hospital utilization, but was tracked to identify ways that might improve patient care.**

**REQUEST TO ADMIT 4:** Please admit that in calendar year 2017, you tracked

outpatient referrals per 1000 prisoners for each of your state contracts, with the goal

of reducing offsite physician specialty visits.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Without waiving said objection, admit that this data was tracked for the MDOC contract.  However, denied that it was for the goal of reducing offsite physician specialty visits, but was tracked to identify ways that might improve patient care.**

**REQUEST TO ADMIT 5:** Please admit that in calendar year 2017, you tracked

sentinel events per 1000 prisoners for each of your state contracts, with the goal of

reducing sentinel events.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request,**

which was Plaintiff served the court's ruling, is improper as stated and is objectionable.

Without waiving said objection, admit that this data was tracked for the MDOC contract.  However, denied that it was for the goal of reducing sentinel deaths, but was tracked to identify ways that might improve patient care.

**REQUEST TO ADMIT 6:**  Please admit that in calendar year 2017, you tracked

Lawsuits for each of your state contracts, with the goal of reducing the volume of

inmate lawsuits filed against you and/or your employees.

**RESPONSE:**
Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.

Without waiving said objection, admit that this data was tracked for the MDOC contract.  However, denied that it was for the goal of reducing lawsuits, but was tracked to identify ways that might improve patient care.

**REQUEST TO ADMIT 7:** Please admit that in calendar year 2017, you tracked

hospital admissions per 1000 prisoners for each of your state contracts, with the goal

of reducing the number of hospital admissions.

**RESPONSE:**
Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.

Without waiving said objection, admit that this data was tracked for the MDOC contract. However, denied that it was for the goal of reducing the number of

hospital admissions, but was tracked to identify ways that might improve patient care.

**REQUEST TO ADMIT 8:** Please admit that in calendar year 2017, you tracked average length of stay for hospitalized prisoners for each of your state contracts, with the goal of reducing the average length of hospital stay for hospitalized prisoners.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only. Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Without waiving said objection, admit that this data was tracked for the MDOC contract. However, denied that it was for the goal of reducing average length of hospital stays for hospitalized prisoners, but was tracked to identify ways that might improve patient care.**

**REQUEST TO ADMIT 9:** Please admit that in calendar year 2017, you tracked prescription drug utilization for each of your state contracts, with the goal of reducing your spending on prescription drugs.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only. Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Without waiving said objection, admit that this data was tracked for the MDOC contract. However, denied that it was for the goal of reducing spending on prescription drugs, but was tracked to identify ways that might improve patient care. See also Dr. Bomber's testimony that medical providers were instructed to practice medicine based upon medical necessity, not costs.**

**REQUEST TO ADMIT 10:**  Please admit that in calendar year 2017, you tracked offsite utilization for each of your state contracts, with the goal of reducing your spending on offsite services.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only.  Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Without waiving said objection, admit that this data was tracked for the MDOC contract.  However, denied that it was for the goal of reducing spending on offsite services, but was tracked to identify ways that might improve patient care.  See also Dr. Bomber's testimony that medical providers were instructed to practice medicine based upon medical necessity, not costs.**

## Interrogatories to Defendant Corizon Health Inc.

**INTERROGATORY 1:**  At Bates 00104, you indicated that to measure the success of the new Utilization Management Core Process, you would focus specifically on "outpatient referrals/1,000, claims/1,000, referrals per UMMD, claims without a referral, ATPs, and % ATPs overturned."

Please specify the meaning of "outpatient referrals/1000." In other words, does "outpatient referrals/1000" mean the number of referral requests submitted per thousand prisoners for a given state contract in a specified time period, such as per month, or the number of referral requests approved per thousand prisoners for a

given state contract in a specified time period, such as per month, or something else?

If the phrase means something else, please explain its meaning.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only. Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Defendants further object to the form of this interrogatory in that it is confusing ambiguous, and compound. The fact the interrogatory is compound makes the interrogatory more confusing and difficult to answer or understand. Essentially, this interrogatory asks five compound questions.**

**Additionally, Defendants object to the extent that the cited Bates page or document is fairly straightforward and self-explanatory and speaks for itself.**

**Without waiving said objection, this particular measurement refers to a common method to measure standardized data. Outpatient referrals would be the number of patients referred per 1000 patients.**

**INTERROGATORY 2:** At Bates 00104, you indicated that to measure the success of the new Utilization Management Core Process, you would focus specifically on "outpatient referrals/1,000, claims/1,000, referrals per UMMD, claims without a referral, ATPs and % ATPs overturned."

Please specify the meaning of "claims/1000." In other words, does "claims/1000" mean the *number* of claims for payment submitted to you by offsite healthcare providers per thousand prisoners for a given state contract in a specified time period, such as per month, or the *dollar amount*

of claims for payment submitted to you by offsite healthcare providers per

thousand prisoners for a given state contract in a specified time period,

such as per month, or something else? If the phrase means something else,

please explain its meaning.

**RESPONSE:**
**Defendants object on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only. Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Defendants further object to the form of this interrogatory in that it is confusing ambiguous, and compound. The fact the interrogatory is compound makes the interrogatory more confusing and difficult to answer or understand. Essentially, this interrogatory asks five (5) compound questions.**

**Additionally, Defendants object to the extent that the cited Bates page or document is fairly straightforward and self-explanatory and speaks for itself.**

**Without waiving said objection, this particular measurement refers to a common method to measure standardized data. Claims would be the number of claims for payment submitted by offsite healthcare providers per thousand prisoners.**

**INTERROGATORY 3:** At Bates 00104, you indicated that to measure the success

of the new Utilization Management Core Process, you would focus specifically on

"outpatient referrals/1,000, claims/1,000, referrals per UMMD, claims without a

referral, ATPs and % ATPs overturned."

Please specify the unit of measurement for the "ATPs" metric. In other

words, does "ATPs" mean the total number of ATPs issued for a given

state contract in a given time period, or the number of ATPs issued *per thousand prisoners* for a given state contract in a given time period, or the *percentage* of referral requests that result in an ATP for a given state contract in a given time period, or something else? If the metric means something else, please explain its meaning.

**RESPONSE:**
**Defendants objects on the basis that the Court has already limited the information of performance or metrics to those which are used for the Michigan Department of Corrections (MDOC) contract only. Therefore, this request, which Plaintiff served after the court's ruling, is improper as stated and is objectionable.**

**Defendants further object to the form of this interrogatory in that it is confusing ambiguous, and compound. The fact the interrogatory is compound makes the interrogatory more confusing and difficult to answer or understand. Essentially, this interrogatory asks six (6) compound questions.**

**Additionally, Defendants object to the extent that the cited Bates page or document is fairly straightforward and self-explanatory and speaks for itself.**

**Also, Defendants object that this interrogatory seeks information which is confidential and protected by legal privilege in accordance with the Federal Patient Safety & Quality Improvement Act and applicable State Peer Review Laws. Defendant reiterates its prior objections that the Patient Safety and Quality Improvement Act of 2005 serves as a complete bar to the discovery of quality improvement reviews.**

**Furthermore, Defendant objects to the extent that this interrogatory has already been asked and answered in depositions and/or in prior documents that Defendant has already produced to Plaintiff, subject to objection. Therefore, the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source. *See Fed R. Civ. P. 26(b)(2)(c).***

**Without waiving said objections, please see Bates pages 578, 581, and 588.**

## Requests to Produce to Defendant Corizon Health Inc.

**REQUEST FOR PRODUCTION 1:** Defendant Dr. Keith Papendick testified to the existence of a "Corizon Health Provider Handbook." He has previously testified that this handbook contains information that providers need "to supply care the way the State of Michigan and Corizon want it supplied." Please produce any versions of the handbook to which Defendant Papendick was referring that are in use or that were previously in use in Michigan.

**RESPONSE:**
**Defendant objects that this request is unreasonable, unduly burdensome, not relevant, disproportionate to the needs of this case, not important to resolving the issues at stake in the action, and the burden and expense of attempting to research and produce such information is outweighed by any benefit that such information could have to this case. See Fed R. Civ. P. 26(b)(1).**

**Defendant further objects on the basis that Defendant Corizon's policies and procedures, and/or manuals do not set the standard of care, cannot be used as a substitute for the exercise of medical judgment, and are therefore irrelevant. See *Gallagher v. Detroit-Macomb Hosp Ass'n*, 171 Mich. App. 761, 764-765; 431 N.W.2d 90 (1988).**

**Additionally, Defendants object on the basis that Plaintiff has not identified nor cited any "previous" testimony to which Plaintiff is referring.  Defendants also object that Plaintiff has taken such testimony out of context.  Without being provided such testimony, nor its context, Defendants cannot provide "any versions of the handbook to which Defendant Papendick was referring." Furthermore, at his deposition in this case, Dr. Papendick could not recall such previous testimony nor what he was allegedly referring to.**

**REQUEST FOR PRODUCTION 2:**  Dr. Jeffrey Bomber recently testified to the existence of a provider onboarding manual that was intended to be digitized, but is presently only available in paper form at Corizon's Lansing-area office. Please produce the provider onboarding manual to which Dr. Bomber was referring.

**RESPONSE:**

**Defendant objects that this request is unreasonable, unduly burdensome, not relevant, disproportionate to the needs of this case, not important to resolving the issues at stake in the action, and the burden and expense of attempting to research and produce such information is outweighed by any benefit that such information could have to this case. See Fed R. Civ. P. 26(b)(1).**

**Defendant further objects on the basis that Defendant Corizon's policies and procedures, and/or manuals do not set the standard of care, cannot be used as a substitute for the exercise of medical judgment, and are therefore irrelevant. See *Gallagher v. Detroit-Macomb Hosp Ass'n*, 171 Mich. App. 761, 764-765; 431 N.W.2d 90 (1988).**

**Defendants also object that Plaintiff has not accurately stated Dr. Bomber's testimony.   However, without waiving said objection, see attached the documents referenced by Dr. Bomber.**

**REQUEST FOR PRODUCTION 3:**  Dr. Jeffrey Bomber recently testified that the forms used for Dr. Papendick's annual performance evaluation are similar to, but not the same as, the forms used by Corizon for annual performance evaluations of site-level providers in Michigan. Please produce a copy of the form(s) used by Corizon for performance evaluations of site-level providers in Michigan.

**RESPONSE:**

**Defendants object for reasons that Plaintiff's request goes beyond the issues in this case and is disproportionate to this case. "The new rule permits discovery only of information 'relevant to any party's claim or defense <u>and proportional</u> to the needs of the case.'" *Helena Agri-Enterprises, LLC v. Great Lakes Grain*, LLC, 988 F.3d 260, 273 (6th Cir. 2021) (emphasis added). Here, Plaintiff is requesting a performance review form for a site-level provider when Plaintiff has made no allegations against any site-level providers in this case. Plaintiff's allegations in this case relate solely to Dr. Papendick and utilization management.  Defendant has already provided Plaintiff with the performance reviews of Dr. Papendick, including as to peer review, utilization management director, and regional medical director.  To request that Defendants now search for an additional performance review form for a site-level provider which has no relevance to the issues in this case is unduly burdensome and**

unreasonable and not proportional to the needs of this case.  Defendants further object that Plaintiff has mischaracterized Dr. Bomber's testimony. The request is further unreasonable because Dr. Bomber testified that other than the manner in which the lines and boxes were organized on the form, the questions and information were all similar.  "The discovery rules are not a ticket...to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *Uppal v. Rosalind Franklin University of Medicine and Science*, 124 F. Supp. 3d 811, 814 (N.D. Ill. 2015).  Moreover, Plaintiff has also ignored Defense counsel's foundation objection at Dr. Bomber's deposition.   Dr. Bomber did not prepare or conduct the performance evaluation nor sign it.


Respectfully submitted,


Dated: July 7, 2021

Patricia Ann Schmidt, D.O.
State Medical Director


Dated: July 7, 2021                                   CHAPMAN LAW GROUP

Devlin K. Scarber (P64532)
Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
Attorneys for Corizon Defendants
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com


14

## **PROOF OF SERVICE**

I certify that this document was served upon all attorneys of record at their respective addresses as listed on this 12th day of July 2021, by means of:

☐ U.S. Mail         ☐ Hand Delivery
☐ Facsimile         X  _Email_


_____ /s/ Elizabeth Smith_____
ELIZABETH SMITH