IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

EMANUEL COATES,

    Plaintiff,

vs.

JEMER JURADO, SUBRINA AIKEN, *RN*, CORIZON, INCORPORATED,

    Defendants.

CIVIL ACTION NO.:
2:12-CV-15529-PJD-PJK

District Judge: Patrick J. Duggan
Magistrate Judge: Paul J. Komives

**Emanuel Coates, #155262**
Carson City Correctional Facility
10274 Boyer Road
Carson City, MI 48811
*Pro Se Plaintiff*

**MI DEPT ATTORNEY GENERAL**
**CORRECTIONS DIVISION**
Kandy C. Ronayne (37355)
Kevin R. Himebaugh (P53374)
P. O. Box 30217
Lansing, MI 48909-7717
Phone: (517) 335-7021
Fax: (517) 335-7157
E-Mail: ronaynek@michigan.gov

CHAPMAN LAW GROUP, P.C.
Ronald W. Chapman (P37603)
Kimberley A. Koester (P48967)
*Attorneys for Corizon Health, Inc.*
*and Jemer Jurado*
40950 Woodward Avenue, Suite 120
Bloomfield Hills, MI 48304
Phone: (248) 644-6326
Fax: (248) 644-6324
E-Mail: kkoester@chapmanlawgroup.com

## DECLARATION PURSUANT TO 28 U.S.C. § 1746
## OF HARRIET SQUIER, M.D., M.A.

Pursuant to 28 U.S.C. § 1746, HARRIET SQUIER states under oath as follows:

1.

I am over eighteen (18) years of age, suffer from no impairment, and am otherwise legally competent to make this Declaration.

2.

My name is HARRIET SQUIER. I am a physician licensed by the State of Michigan since 1990. I was previously employed by Corizon Health, Inc. as the Medical Director for Outpatient Utilization Management until my retirement.

3.

The matters stated in this Declaration are based on my personal knowledge and review of the patient's medical record as maintained by the Michigan Department of Corrections ("MDOC"). A true and correct copy of the pertinent portions of the medical record is attached to Defendants' Motion for Summary Judgment as "Exhibit A" and references to the medical records contained herein follow the format of "MR-," with a reference to the page number. The medical record contains diagnoses, conditions, opinions, acts, and events made at or near the time of entry by a person with knowledge and are kept in the course of a regularly conducted business activity by the MDOC. Medical professionals reasonably rely on the facts and data maintained in the medical record in forming their opinions. I give the opinions I state within this Declaration within a reasonable degree of medical certainty.

4.

As a physician and Director of Utilization Management for Corizon during the time period relevant to the claims in this suit, I was responsible for reviewing consultation requests and off-site referrals. In my roles in Utilization Management, I was presented with requests for consultations and approvals for medical procedures. Specifically, medical providers at facilities submitted requests for referrals to me for review and recommendation as to an appropriate course of treatment. However, if a medical provider disagreed with my recommendation or felt strongly about another course of treatment, there were steps and avenues of dialogue that could have been utilized to address any disagreements they may have regarding my recommendations.

5.

I reviewed Audiology consultation requests from Nurse Practitioner Jemer Jurado for patient Emanuel Coates in May and June 2012.

6.

On May 18, 2012, N.P. Jurado submitted a consultation request to Corizon to evaluate Mr. Coates for a hearing aid. [Ex. A, MR-113-14] In this request, N.P. Jurado noted:

> 53 years old AAM with [history of] bilateral hearing loss since 2002. Patient is experiencing difficulty discriminating voices; previously use hearing aids

3

provided by MDOC at previous facilities that he ha[d] been at. [Prior medical history] includes HTN, GERD, BPH, hearing loss (improved with use of hearing aids). Need evaluation for new hearing aids.

7.

When a medical provider requests off-site services, such as for an audiology consultation, the medical provider is to submit a consultation request, referred to as a "407 Request," to Corizon Health, Inc. These requests are reviewed by licensed physicians at Corizon for approval or alternative treatment plans based upon the medical necessity of the requested service.

8.

I reviewed N.P. Jurado's May 18, 2012 request and determined that more information was needed before a determination for a hearing aid could be made. As such, I recommended an alternative treatment plan. I directed the provider to submit a new 407 request for an audiogram that included a focused physical examination of the patient's ears to rule out an obstruction, infection, etc. [Ex. A, MR-121-22]

9.

The information needed in order to decide if a patient needs a hearing aid involves making sure there is not a reversible component to the problem. In addition, an evaluation needs to assess the patient's ability to communicate with

the medical professional. This is because if a patient can carry on a normal conversation and hear and follow directions, the hearing impairment does not present a serious medical need. The first request submitted did not include a sufficient examination, so I requested more information.

10.

On June 13, 2012, N.P. Jurado thoroughly evaluated Mr. Coates's ears. [MR-123-25] An examination of the right ear was unremarkable, and his hearing was normal to a whispered voice and normal to finger rub. [*Id.* at 124] The patient's left ear was also unremarkable to inspection, although the hearing was decreased to a whispered voice and decreased to finger rub. [*Id.*] The whispered voice and finger rub tests are commonly used to test for hearing loss. N.P. Jurado used the Weber Test and the Rinne Test to evaluate the patient's hearing. It is common practice in the medical community to use those tests to evaluate hearing loss. Using the Weber Test to evaluate the patient's hearing, N.P. Jurado concluded that the sound was louder in the patient's right ear. Using the Rinne Test, N.P. Jurado determined that the air conduction was greater than the bone conduction in both of the patient's ears. Although sound was heard in both ears, it was diminished in the left ear. [*Id.*]

11.

On June 13, 2012, I received a new 407 request for hearing aids from N.P. Jurado. [Ex. A, MR-128-29] I determined that Mr. Coates did not demonstrate a medical necessity for a hearing aid or audiology consultation. Examination revealed that he could perceive a whispered voice and finger rub on his right ear. [MR-129] His records also reflected no difficulties in communicating with his providers. With good hearing in one ear, the additional benefit from a hearing aid for the other ear is not considered significant. Thus, if a person has normal hearing in one ear, a hearing aid is not considered medically necessary for decreased hearing in the other ear. Mr. Coates's examination suggested that he had very good hearing in the right ear; therefore, a hearing aid in the other ear would not add much benefit and there was no medical necessity for Mr. Coates to have a hearing aid. However, I instructed that Mr. Coates's providers continue to monitor him for any changes in his hearing. [*Id.*]

12.

Whether or not Mr. Coates had previously worn a hearing aid would not be determinative to my decision. I based my recommendation on how he presented and his condition at the time of the consultation request. Because he did not meet the criteria for a hearing aid at the time I did my review, an audiology consultation

6

for a new hearing aid was not medically indicated, regardless of whether or not he had been given a hearing aid previously.

13.

In determining whether to approve the 407 request, I relied on Mr. Coates's medical records and my medical judgment to determine the appropriate medical care for him and how to provide it. I never knowingly disregarded Mr. Coates's medical needs or health.

14.

The above statements are true and based upon my personal knowledge and expertise to which I am competent to testify at trial. I declare, certify, verify and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 18, 2014.

_____
HARRIET SQUIER, M.D., M.A.

7

448087v.1