## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Kohchise Jackson,

       Plaintiff,

v.

Corizon Health, Inc., et al.

       Defendants.

Case No: 2:19-cv-13382
District Judge: Terrence G. Berg
Magistrate Judge: Patricia T. Morris

---

MARGOLIS, GALLAGHER & CROSS
Lawrence H. Margolis (P69635)
Ian T. Cross (P83367)
Attorneys for Plaintiff
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

CHAPMAN LAW GROUP
Ronald W. Chapman Sr., M.P.A.,
LL.M. (P37603)
Devlin K. Scarber (P64532)
Attorneys for Defendants Corizon Health, Inc.
and Keith Papendick, M.D.
1441 West Long Lake Road, Suite 310
Troy, MI 48098
(248) 644-6326
rchapman@chapmanlawgroup.com
dscarber@chapmanlawgroup.com

CORBET, SHAW, ESSAD, & BONASSO, PLLC
Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
Attorneys for Prime Healthcare Services,
Colleen M. Spencer, and David A. Krause
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
(313) 964-6300
daniel.corbet@cseb-law.com
kenneth.willis@cseb-law.com

---

## DEFENDANTS CORIZON HEALTH INC., AND KEITH PAPENDICK M.D.'S REPLY BRIEF REGARDING THEIR MOTION FOR SUMMARY JUDGMENT

In his response, Plaintiff takes the approach of avoiding the evidence and testimony in this case, and instead focusing on other lawsuits and policies, procedures, contracts, and declarations from other states or lawsuits.  The fact is that Plaintiff Kohchise Jackson's facts and evidence are very precise:  His surgeon (Dr. Kansakar) and his retained expert (Dr. Silverman) both testified that the decision as to whether a colostomy reversal is performed is "medical judgment," (**Ex C**, pp. 58-59; **Ex J**, pp. 17, line 16-22) and specifically Dr. Silverman testified that he simply disagreed with the medical judgment of Dr. Papendick. (*Id.* at pp. 10, 19). Dr. Kansakar even acknowledged numerous written articles on the subject stating that there can be differences of opinion on whether to reverse colostomies and the timing of any reversals. (**Ex C**, pp. 57).  "Neither negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim." *Rhinehart v. Scutt*, 894 F.3d 721, 752 (6th Cir. 2018).  Plaintiff's experts acknowledge that there can be differences of opinion as to colostomy reversals, yet Plaintiff wishes to ignore this testimony in favor of general arguments about other cases, other non-related alleged medical conditions of other people, the MDOC contract with Corizon, Corizon's alleged business model, and the non-novel concept that corporations consider costs and make profits. Plaintiff's allegations are essentially the same as those decided and dismissed by summary judgment in *Colwell v. Corizon Healthcare*, 2014 U.S. Dist. LEXIS 165866, *33 (E.D. Mich. Aug. 11, 2014) (**Ex M**), (adopted by and dismissed at 2014 U.S. Dist.

LEXIS 165458 (E.D. Mich., Nov. 26, 2014) (J. Stephen J. Murphy, III, adopting Report and Recommendation of Mag. J. David Grand).

> whether surgery is "the most effective" course of action to take…is not the relevant issue…. Nor is it relevant that a person who requires surgery may or may not exhibit the symptoms Edelman believed were required. Against the unrebutted evidence supplied by Edelman, the materials presented by Colwell would show, at most, that Edelman inaccurately assessed his condition, and denied the surgical consultation "carelessly or inefficaciously," or even" incompeten[tly]. *Comstock*, 273 F.3d at 703. But, that would establish merely that Edelman committed medical negligence…

Similarly, just like the medical journals/articles in Jackson's case, the *Colwell* Court also noted that "even Colwell's own articles note differences of opinion on the issue…" *Id.* at *34.  Like the herein Jackson case, *Colwell* was a case against Corizon's utilization management medical doctor. "Edelman was tasked with reviewing treating physician requests for various medical procedures, including radiographic films, specialist consultations and surgery." *Id*. at 2.  The *Colwell* plaintiff made a similar argument that the utilization management department was unconstitutional, and Dr. Edelman blocked a request by a treating provider within the prison system.[1]  But irrespective of whether there is a disagreement amongst outside doctors or doctors within the prison system who are on the same staff, the court held:

---

[1] Plaintiff misrepresents that the there was a general surgery "referral."  The facts are that Dr. Alsalman did not make any referral but requested that the need for a referral be reviewed by utilization management.

> That Edelman overrode a treating physician's surgery consult request does not change the analysis. A difference of opinion between a prisoner and prison medical staff, or even between various doctors involved in a prisoner's medical care regarding the treatment and diagnosis of a medical condition does not [**35**] constitute deliberate indifference. *Johnson v. Stephan*, 6 F.3d 691 (10th Cir. 1993). *Id*. at *34-35.

Plaintiff's argument that, somehow, Dr. Papendick's role of assessing the necessity of care and approving it does not amount to medical judgment (**ECF No. 66, PageID.1895**) flies in the face of *Colwell* and well-settled law on this issue, e.g., see *Colwell's* legal analysis and holding: "Colwell has offered no admissible evidence show that Edelman's denial was anything other than the "product of considered **medical judgment**." *Colwell*, at *42. "Dr. Papendick's" assessment involves medical judgment. *Sumerlin v. Papendick*, 2019 U.S. Dist. LEXIS 29529 (W.D. Mich. Feb. 1, 2019) (**Ex N**); "[D]ecisions made by Dr. Papendick were the product of medical judgment." *Wright v. Corizon Health, Inc.*, 2019 U.S. Dist. LEXIS 95011, *53 (E.D. Mich. Jun 6, 2019) (**Ex 0**). Dr. Papendick is a licensed medical doctor who specifically testified that he used his medical judgment regarding his review of Mr. Jacksons' condition.

Plaintiff's response improperly focuses on the alleged medical situations of other individuals who are not parties to this case as opposed to himself. Dr. Alsalman's April 18, 2018 medical examination and request for a utilization management review indicated that Plaintiff had **no** symptoms or problems: "currently doing well," "having functional colostomy," "denies abdominal pain or UTI's," "Colostomy in

place that's functioning well," "normal abdominal muscles," abdomen "soft, nontender, no organomegaly," "no hepatic enlargement," negative for palpable masses." (**Ex A, pp. 43-45**).  As Dr. Silverman admitted, Plaintiff immediately demanded the reversal as soon as he arrived at the MDOC without demonstrating any medical complaints as of April 2017 during the time of Dr. Papendick's or Corizon's only involvement in a colostomy reversal request. (**Ex J**, Silverman dep, pp. 24-25). Also, Plaintiff's proposed declarations of Plaintiff and Dr. Silverman as an attempt to change or correct their deposition testimony are improper and must be stricken. *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

There is no further involvement by Dr. Papendick or relating to any of Corizon's policies or procedures after April 19, 2017, nor any allegations and evidence that Plaintiff requested some form of treatment from them, and they denied or ATP'd after that date. Therefore, any allegations by Plaintiff that somehow his condition worsened or was different after April 19, 2017 or became difficult during his MDOC incarceration (e.g., difficulty defecate, his bag leaked, he was getting into fights, not getting proper supplies) are improper against Dr. Papendick and Corizon and cannot serve as a basis for any deliberate indifference allegations against *these* Defendants. [T]he Court's "subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary." *Colwell*, at 36 (citing *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006). "Even if Colwell could show that doctors refused to provide

[treatment] on other occasions, this might constitute evidence that *those doctors* were deliberately indifferent to Colwell's medical needs, but it would not be evidence that *Edelman* acted with deliberate indifference." *Id.* at 38 (emphasis as in original). Here, Plaintiff's single allegation concerns Dr. Papendick and Corizon about what was known and what his medical situation was on April 19, 2017. Had Plaintiff wished to make allegations against MDOC and/or its nurses for not giving adequate supplies, or any other provider for not properly addressing any alleged colostomy concerns that occurred <u>after</u> April 19, 2017, Plaintiff should have filed suit against them. Here, he <u>did not</u>.

Plaintiff's arguments regarding financial considerations, the MDOC contract, other inmate lawsuits, unconstitutionality of utilization review process, Corizon's alleged business model were all analyzed and dismissed in *Colwell*. *Id.* at *47-52. "[T]he existence of a contract between MDOC and Corizon…does not raise a reasonable inference that *Colwell's* care was motivated solely or primarily by profitability." *Id.* at *48. See also Colwell (citing *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society"). Therefore, Colwell's argument that Corizon's alleged policy of managed healthcare violates a prisoner's Eighth Amendment rights must be rejected." *Id.* at 51-52. The evidence in this case, although not unconstitutional anyway, is that for the Michigan

contract, the In Gauge tracking tool is not used and tracking is done to improve performance. (**Ex P**, Defs. Ans. to 2nd RFA, Nos. 2-7). See *Marvin v. City of Taylor,* 2006 U.S. Dist. LEXIS 42747, *9 (E.D. Mich. 2006) (the number of civil rights complaints filed against an entity is insufficient to show a policy or custom, especially where the Plaintiff's facts are not similar). Dr. Silverman testified that Plaintiff did not have "any issues with constipation, polyps, bleeding, open sores, bloody sores, stoma issues, while he was in the MDOC. (**Ex H**, p. 78). Therefore, Plaintiff is not similar to inmates with stoma damages (i.e., inmate Larry Cowan nor Keith Swift, whose case was dismissed by summary judgment at *Swift v. Edelman*, 2018 U.S. Dist. LEXIS 206805 (W.D. Mich., Dec. 7, 2018)

All of the evidence in this case (e.g., **Ex G**, Plaintiff, p. 136); **Ex C,** Kansakar, p. 59); **Ex E**, Bomber, pp. 74-77); **Ex H**, MDOC Grievance Response citing its policy directive as reason for denial) demonstrates that the herein Defendants did not have the final decision and it was MDOC policy that ultimately decided it. In fact, Plaintiff's Complaint never alleged nor premised his claim on any *Monell* liability except "final decisionmaker" analysis. (**ECF No. 66, PageId.191 and 200**). None of the other inmates' grievances (**ECF No.66-38**) indicate the actual medical exams or records, and whether, as here, the inmate's own surgeon/expert and evidence stated that a procedure was not medically necessary and was subject to a difference of opinion (i.e., meaning that a denial or ATP is not unconstitutional anyway. In fact, one (1) of the grievances states that "healthcare…said surgery <u>was</u> needed, and

6

blames MDOC (**ECF NO. 66-38, PageID.2634**). Dr. Papendick testified that whenever he approved a request regarding colostomy reversal, still it had to be approved by MDOC's CMO, which is exactly what the policy states (**Ex D**, p. 114). Plaintiff's response makes conclusory statements that the policy was not applicable, despite the clear words "and only if approved by the CMO," with **no** evidence or witness who is familiar with or follows the policy.  In *Strayhorn v. Caruso*, 2015 U.S. Dist. LEXIS 114980 (E.D. Mich. Jul 31, 2015), unlike this case, there was no document given to Plaintiff by MDOC stating that his request was being denied pursuant to MDOC policy (**Ex H**).  To the extent that Corizon is said to be a private entity contracting to perform traditional state functions, Corizon is only liable under a *Monell* claim "for a policy or custom of that private contractor, rather than a policy or custom of" a governmental entity. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).  Here, MDOC policy controls.  There is no "community standard" to perform reversals within eight (8) weeks. It is pure medical judgment and personal practice. (**Ex C**, Kansakar, p. 40,58-59); **Ex I**, Dr. McQuiston).  The fact that Plaintiff argues that Dr. Papendick's judgment was outside the "standard" clearly shows that this case is a malpractice claim couched as a deliberate indifference claim.

CHAPMAN LAW GROUP

Dated: September 27, 2021          /s/Devlin Scarber
                                   Ronald W. Chapman Sr., M.P.A.,
                                   LL.M. (P37603)
                                   Devlin Scarber (P64532)
                                   Attorneys for Corizon Defendants

**<u>PROOF OF SERVICE</u>**

I hereby certify that on September 27, 2021, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved nonparticipants.

/s/ Devlin Scarber
Devlin Scarber (P64532)
1441 W. Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

1