# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

Kohchise Jackson,

    Plaintiff,

v.

Corizon Health, Inc., et al.

    Defendants.

Case No: 2:19-cv-13382
District Judge: Terrence G. Berg
Magistrate Judge: Patricia T. Morris

| | |
|---|---|
| MARGOLIS, GALLAGHER & CROSS<br>Lawrence H. Margolis (P69635)<br>Ian T. Cross (P83367)<br>Attorneys for Plaintiff<br>214 S. Main St., Suite 200<br>Ann Arbor, MI 48104<br>(734) 994-9590<br>larry@lawinannarbor.com<br>ian@lawinannarbor.com | CHAPMAN LAW GROUP<br>Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)<br>Devlin K. Scarber (P64532)<br>Attorneys for Defendants Corizon Health, Inc. and Keith Papendick, M.D.<br>1441 West Long Lake Road, Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>rchapman@chapmanlawgroup.com<br>dscarber@chapmanlawgroup.com |

CORBET, SHAW, ESSAD, & BONASSO, PLLC
Daniel R. Corbet (P37306)
Kenneth A. Willis (P55045)
Attorneys for Prime Healthcare Services,
Colleen M. Spencer, and David A. Krause
30500 Van Dyke Ave., Suite 500
Warren, MI 48093
(313) 964-6300
daniel.corbet@cseb-law.com
kenneth.willis@cseb-law.com

**DEFENDANTS CORIZON HEALTH INC., AND KEITH PAPENDICK M.D.'S REPLY BRIEF REGARDING THEIR OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING THEIR MOTION FOR SUMMARY JUDGMENT (ECF. NO. 69)**

**<u>Objection No. 1:</u>** Plaintiff's argument that the "medical judgment" testimony in this case was "general" and did not specifically apply to Dr. Papendick's decision is simply not true. Dr. Silverman was very fact-specific to Dr. Papendick:

> Q. Dr. Silverman, <u>your opinion in this case is that Dr. Papendick failed to exercise proper medical judgment in treating Mr. Jackson, correct?</u>
> A. **Yes**. (**ECF No. 60, PageID.1272**; **ECF No. 60-10**, Dep., p. 10)

In fact, Plaintiff omits this testimony (**ECF No. 71, PageID.2924**). Because the testimony and evidence clearly dictate that the decision on Mr. Jackson's colostomy reversal was medical judgment, Plaintiff argues that Dr. Papendick did not exercise *proper* medical judgment and instead should have agreed that the Plaintiff required a colostomy reversal. But this is a circular argument and ultimately an attack on medical judgment. Plaintiff cites *Comstock v. McCrary*, 273 F3d 693, 707, n.5 (6th Cir. 2001), an easily distinguished prisoner suicide case involving extreme neglect in which the defendant argued that his decision to release the inmate from suicide watch without actually evaluating the patient's suicide risk constituted medical judgment. In that case, **all** of the experts testified that the defendant ignored the patient and did not follow any proper procedures whatsoever. *Id.* at 708-709:

> "McCrary <u>offers nothing to refute the evidence that his level of care was grossly substandard other than to say that he exercised his medical judgment when he removed Montgomery from suicide watch</u>. Neither does he dispute…that when he discharged Montgomery, he failed to follow the prison's policies with regard to suicide prevention." *Id.* at 709.

<u>This is not the case here</u>. Plaintiff also argues that the cited medical literature which completely contradicted his claims "were removed from the context of Mr. Jackson's

1

specific condition."[1]  Mr. Jackson underwent the very procedure in the articles. His own surgeon, Dr. Kansakar, specifically testified to surgical risks that *specifically pertained to Plaintiff*.  She testified that he was at no less risks than anybody else because these serious risks of harm could actually and equally happen to him:

> Q.  And it [December Operative Report] indicates that even…in your operative report, you double document that you explained the risks and dangers associated with the procedure that you performed, correct?
> A.  Yes, sir. (**ECF 60-3,** Dep p. 38)
> Q.  And you're not just making this stuff up, right? Something has told you that these things can happen, and that's why you're informing them, right?
> A.  Yes, sir. (**ECF 60-3,** Dep p. 39)
> Q.  Okay.  So you didn't give him any kind of special, special risks and complications.  You told him the same risks and complications that can occur with everybody, right?
> A.  Yes, sir. (**ECF 60-3,** Dep p. 77)

Therefore, any argument by Plaintiff that the same medical risks of a reversal would not equally apply to him, that he was less susceptible to complications due to age or comorbidities, or that Dr. Papendick did not consider Plaintiff's risks is completely contrary to the testimony and evidence. In making such an argument, Plaintiff is truly challenging Dr. Papendick's medical judgment, even though the literature and testimony supports that Dr. Papendick's consideration of the medical risks was wholly appropriate in light of no medical complaints at the time of his review. (**ECF No. 60, PageID.1272**).  Dr. Papendick testified that the potential risks that he

---

[1] Interestingly, the medical literature which Plaintiff now claims to be out-of-context is the very same medical literature which Plaintiff attached to his Complaint to support his claims. (**ECF 12-6, PageID.227**).

considers when determining medical necessity include "heart attack, stroke, death, infection, the potential need for a reoperation, the potential for a leak, and potential for damage to surrounding structures, including the ureter, general urinary system." **(ECF No. 60-4, Papendick Dep p.101-3)**.  Dr. Papendick also testified that, "irrespective of a person's age or comorbidities, these risks are still risks that can occur." (*Id.*)   In this case, less than two weeks before Dr. Papendick's involvement, it was actually Dr. Kansakar and her medical staff who advised the Corizon medical staff that there was "<u>no medical necessity</u>" for Plaintiff's colostomy being reversed. (See **ECF No.60-1, PageID.1293-1294; ECF No. 60-2, PageID.1298-1299**). Plaintiff omits that Dr. Kansakar <u>never</u> recanted this.  When specifically confronted with the question about medical necessity in light of the medical documentation of her and her staff's prior statements, Dr. Kansakar then testified: "**<u>I think I would agree with the first part which says it's not medically necessary</u>**, but I do not agree with just the second part that it's just a lifestyle preference." (**ECF No. 60, PageID.1268**). Moreover, Plaintiff's argument about Dr. Kansakar or Dr. Silverman testifying that there was no medical reason to not perform a colostomy reversal is similar to the Magistrate Judge's Report, whereby both Plaintiff and the Magistrate Judge place their focus on which doctor's judgment is better.  (**ECF No. 71, PageID.2927; ECF No. 69, PageID.2785**).  But "a disagreement over the wisdom or correctness of a medical judgment" is sufficient for deliberate indifference. *Rhinehart v. Scutt*, 894 F.3d 721, 752 (6th Cir. 2018).   Plaintiff is incorrect in his

3

statement that Dr. Papendick did not review Plaintiff's pertinent medical information or records when he made his decision. Dr. Papendick testified that he could not remember nearly four years later at his deposition everything that he reviewed in April 2017, but that he certainly reviewed the 407 record (i.e., a medical summary prepared by the medical provider), and may have looked at further records if he felt that he needed to (**ECF NO. 66-8, Dep. p. 107**). Plaintiff's generic attack of the 407 process and about Dr. Papendick's review role, job duties, and Corizon's alleged business practice as a means to establish his alleged deliberate indifference via "circumstantial evidence" (e.g., how many referral requests he reviews, how long he takes to review a matter, whether he personally contacts treating physicians, etc.) (**ECF No. 71, PageID76.2927-2932**), does not negate his medical judgment. It is also outside of Defendant's Objections and far outside the R&R which did not even consider such arguments in evaluating Dr. Papendick's alleged deliberate indifference. Plaintiff's "response must specifically address each issue raised in the objections." (R&R Objection Directive, **ECF No. 69, PageID.2789**). Raising these new arguments in a Response is a violation of the Fed. R. Civ. P. 72(b)(2) and E.D. Mich. L.R. 72.1(d). Moreover, the Plaintiff's allegation that he has just received **new** evidence in the form of private emails from Dr. Papendick to other members of Corizon (none of which are in any context, relate to Plaintiff, this case, nor colostomy reversals) which were never disclosed to Defendants until now is not

4

relevant at all to Defendant's Objection.  <u>It would take twenty (20) pages to respond to Plaintiff's new arguments here and Defendant is only allotted seven (7) pages</u>.

**Objection No. 2:**  Plaintiff fails to demonstrate that *Jones* is not distinguished.

**Objection No. 3:**  Plaintiff has decided that merely because he had a colostomy bag means that a colostomy reversal in April 2017 was automatically medically necessary ***at that time***.  It is undisputed that the first day that Plaintiff arrived to the MDOC he took the position that <u>he was going to sue</u> if they did not immediately reverse his colostomy even without any physical complaints or complications at that point (**ECF 70, PageID.2806**).  And within four (4) weeks of his arrival, Dr. Papendick rendered a decision that was completely in accord with his 407 medical request record, his medical records showing no complications, his own surgeon's documented conversations with the Corizon medical staff stating there was "no medical necessity," and all of the medical literature supporting the severe risks of harm from such a surgery where Plaintiff was having no medical complaints at that time.  The only way that Plaintiff can establish a serious medical need is by relying on the medical conditions of inmates in other cases in more serious situations than his own.  Hence, the Magistrate Judge improperly relied upon such a case (*Champion v. Dicocco*) as the basis of her recommendation and failed to appreciate its key distinctions from Plaintiff's case (**ECF No. 70, PageID.2806-2808**).  Because the evidence and medical testimony in Plaintiff's case contradicted his claims, Plaintiff now argues that such evidence should be ignored and that, instead,

the court should justify medical necessity because a lay person would recognize it, even where his own experts testified that he never complained of having any pain issues, functional issues, psychological issues, and never suffered any medical problems as a result of not receiving his colostomy reversal when he first arrived to the MDOC. (**ECF No. 70, PageID.2806-2806**). Plaintiff's argument that Plaintiff may have been a good surgical candidate, was eligible for surgery, that it would have been paid by Medicare, that he could have benefited from surgery (**ECF No. 71, PageID.2940,2942**), or that his experts testified that even though surgery was "not mandated" and "not medically necessary" still they [*in their practices*] regularly perform colostomy reversals about two months after placement" (**ECF No. 69, PageID.2785**) is not determinative of medical necessity. Here, the R&R erred.

**Objection #4:** Defendant's Objection was very specific. The basis of the Magistrate Judge's recommendation to not dismiss the *Monell* claim was not due to an internal definition of "medical necessity." Instead, based on an overruled R&R on the case of *Strayhorn v. Caruso*, she concluded that a question of fact existed that Corizon "had a policy or custom of denying reversal of colostomies without engaging in any **individualized assessment of each prisoner's condition** for the purposes of cutting costs as…evidenced by Corizon's achieved goal of reducing spending." (**ECF No. 69, PageID.2787-2788**). In *Strayhorn*, the District Court Judge held that the MDOC contract linking "**profits to prisoner healthcare costs**" and a business model to consider healthcare costs when providing treatment **is not** unconstitutional and **not**

6

**deliberate indifference**. The evidence demonstrates Corizon **did** engage in an individualized assessment of Plaintiff, as proven by the medical records, testimony, and medical evidence. Defendant's *Monell* objection should be sustained.

<u>Plaintiff wishes to ignore the facts and evidence concerning his fact-specific situation</u> and instead make generic arguments from other cases or outside sources that Corizon considers healthcare costs, makes profits, and keeps statistics or metrics of how it performs. The MDOC contract requires Corizon to track data (KPIs) for various medical categories (including outpatient referrals, sentinel events, hospital admissions, etc.), which are used <u>not</u> for reducing spending but to "identify ways that might improve patient care." (**Ex A**). According to Plaintiff, tracking such data somehow means that a business (e.g., Corizon) is trying to save costs and is unconstitutional and demonstrates deliberate indifference. <u>This is not the law</u>.

In this case, no unconstitutional policy of Corizon was the moving force behind Plaintiff not receiving a colostomy reversal. *Plaintiff's* condition was individually assessed by Dr. Papendick and numerous other Corizon medical staff. The overwhelming evidence, medical literature, medical records, and medical testimony demonstrates that the decision regarding *his* colostomy reversal constituted medical judgment and that there was no medical necessity *at that time*.

**Objection #5:** Plaintiff did not respond.

Dated: January 19, 2022              /s/Devlin Scarber
                                     Devlin K. Scarber (P64532)
                                     Attorney for Corizon Defendants

7

## LOCAL RULE CERTIFICATION

I, DEVLIN K. SCARBER, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3)

/s/Devlin K. Scarber
Devlin K. Scarber (P64532)
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com

## PROOF OF SERVICE

I hereby certify that on January 19, 2022, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

/s/Devlin K. Scarber
Devlin K. Scarber (P64532)
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
dscarber@chapmanlawgroup.com