# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KOHCHISE JACKSON**,
Plaintiff,

v.

Case No.: 2:19-cv-13382
Hon.: Terrence G. Berg
Mag.: Patricia T. Morris

**CORIZON HEALTH, Inc.,** et al,
Defendants.

---

**PLAINTIFF'S REPLY TO THE YESCARE PARTIES' RESPONSE [ECF NO. 83] IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE YESCARE CORP AND CHS TX INC. AS PARTY DEFENDANTS IN PLACE OF CORIZON HEALTH, INC. [ECF NO. 77]**

i

## TABLE OF CONTENTS

| SECTION | PAGE NO. |
|---|---|
| Table of Contents………...………………….………....………… | ii. |
| Index of Exhibits ………...…………………………….………… | iii. |
| Controlling or Most Appropriate Authorities………….…………. | iv. |

### PLAINTIFF'S REPLY BRIEF

| | |
|---|---|
| I) Preliminary Statement.….…………………………………….......  | 1 |
| II) Personal Jurisdiction is Imputed to Successor Entities…...……..…. | 4 |
| III) The Allocation of Liabilities is not Even Enforceable Under Texas Law………………………………………………… | 5 |
| IV) Substitution via Rule 25(c) in the Successor-Liability Context is Procedurally-Proper and does not Violate Due Process…………….. | 6 |

## **Index of Exhibits**

**Ex. A**: Debtor Connections Community Support Programs, Inc.'s Post-Sale Motion to Convert Chapter 11 Case to Chapter 7, Sept. 1, 2021 (Case No. 21-10723-MFW, Bankr. D. Del.)

## **Controlling or Most Appropriate Authorities**

1. *Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894 (1st Cir. 1987)

2. *Sullivan v. Running Waters Irrigation Inc.,* 739 F.3d 354 (7th Cir. 2014)

3. *3M v. Eco Chem, Inc.,* 757 F.2d 1256 (Fed. Cir. 1985)

4. *Rodríguez-Miranda v. Benin*, 829 F.3d 29 (1st Cir. 2016)

5. *Plastronics Socket, Ltd. v. Hwang,* 2022 U.S. App. LEXIS 883 (Fed. Cir. 2022).

iv

**Preliminary Statement**

The allocation of assets and liabilities in the plan of divisional merger is manifestly unfair to Plaintiff and Defendant Papendick. Under the Plan, the 160 personal-injury claimants and 21 employment-law claimants whose cases were assigned to the "NewCo" will be able to pursue their claims against the operating successor entity. (ECF No. 83-4, PageID.3532-36). Those that are successful will presumably be able to achieve a full recovery. The medical-professional defendants named in the NewCo personal-injury claims will likewise be indemnified, and have their defense costs covered, by the NewCo. (ECF No. 83-4, PageID.3531).

The 475 personal injury claimants, 44 employment-law claimants, and the various medical-professional defendants whose suits were assigned to the "RemainCo" will be treated quite differently.[1] The RemainCo was generously allocated $1 million to cover the defense costs and liabilities associated with these claims, amounting to a mere $1,926 per lawsuit. This is plainly insufficient to cover even defense costs. Once this $1 million fund is depleted, former Corizon

---

[1] The YesCare parties would not have been able to discriminate in this manner among similarly-situated creditors in a Chapter 11 plan. *See In Re Trenton Ridge Investors LLC*, 461 B.R. 440, 495 (Bankr. S.D. Ohio 2011). They also would not be able to retain for themselves any interest in the Corizon assets while unsecured creditors go unpaid, even after giving what they unilaterally determined to be fair value for what is now the YesCare/CHS equity. *See In Re G & D Inv. Props., LLC,* 2014 Bankr. LEXIS 4946 at *7-*14 (Bankr. E.D. Mich. 2014).

1

employees like Defendant Dr. Papendick will be forced to pay out-of-pocket for their own legal defense, and will be subject to potentially ruinous personal liability.[2] Over a dozen Corizon-related personal injury lawsuits are currently pending against Dr. Papendick. His opposition to Plaintiff's Motion is astounding.

The YesCare parties assert that they have done Plaintiff a favor by placing his claim in the RemainCo bucket, rather than the NewCo bucket. (ECF No. 83, PageID.3344-3345). Per the YesCare parties, those 160 unlucky personal injury claimants in the NewCo bucket will supposedly receive nothing, because their claims stand behind $100 million in secured debt.[3] (ECF No. 83, PageID.3362). But Corizon has always carried secured debt: in 2011, the long-term secured debt encumbering its assets totaled approximately $384 million. (ECF No. 77-7, PageID.3161). The YesCare parties have proffered no evidence of either the value of the NewCo assets or whether the income they generate is sufficient to cover the

---

2  This is absent a RemainCo bankruptcy filing. But if there is a RemainCo bankruptcy filing, Dr. Papendick is still not out of the woods: recent precedent suggests that bankruptcy courts lack statutory authority to grant third-party releases of direct claims asserted against the debtor's former employees. *See In re Purdue Pharma, L.P.*, 635 B.R. 26, 104-13 (S.D.N.Y. 2021); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 665-70 (E.D. Va. 2022).

3 The NewCo did not assume the secured debt when it took the Corizon assets in order to confer a benefit on the Michigan, Arizona, Kansas and Missouri personal-injury claimants. It did so because it had to assume that debt in order to take possession of the encumbered assets. "It is black letter law that when a property is subject to a lien, no matter into whose hands the property goes, it passes encumbered by the lien." *United States v. Harold*, 2021 U.S. App. LEXIS 250 at *7 (6th Cir. 2021).

2

associated debt-service costs. It is likely that after discharging approximately 74% of its tort liability and at least $15.4 million in trade debt via the 2022 Corporate Restructuring, the NewCo is solvent. It has recently represented to its clients that it enjoys "strong financial . . . stability." (ECF No. 77-28, PageID.3253).

The YesCare parties' dire prognostications of chaotic mass layoffs, pennies-on-the-dollar recoveries for creditors, and interruptions of essential medical services had Corizon not undergone a Texas divisional merger (ECF No. 83, PageID.3337) are a gross misrepresentation of the Chapter 11 process. Corizon in bankruptcy would have continued operating as a debtor-in-possession. It would not have discharged all its employees, abandoned its clients, and sold its office furniture. Rather, its assets would have been sold together, in a public auction as a single operating business unit, because their value is highest as an operating business unit. The last time a correctional healthcare contractor declared bankruptcy, in 2021, that is exactly what happened. (**Ex. A**). Jobs could have been preserved in a bankruptcy. What could not have been preserved is the YesCare parties' continuing interest in the Corizon assets, "without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan." *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. Lasalle St. P'ship*, 526 U.S. 434, 454 (1999).

3

The YesCare parties also grossly misrepresent the relief requested by Plaintiff. Plaintiff is not seeking rescission of a contract, or wholesale unwinding of the 2022 Corporate Restructuring. (ECF No. 83, PageID.3358). He does not care if other Michigan creditors receive nothing. Plaintiff merely seeks to substitute parties in his specific case; effectively transferring his claim from Schedule 4.01(b) of the Plan, (ECF No. 83-4, PageID.3543), to Schedule 4.01(a). (ECF No. 83-4, PageID.3533). This is the most appropriate remedy for an abusive allocation of liabilities in a Texas divisional merger:

"[a]lthough various remedies are possible where the allocation of a liability in a merger constitutes a fraudulent transfer, **the most appropriate remedy in such a case would generally be to reallocate all or a portion of the allocated liability to one or more of the surviving entities in the merger** or to make some or all of the resulting entities liable for all or a portion of the liabilities of the predecessor debtor corporation."

*Aldrich Pump LLC v. Those Parties to Actions Listed on Appendix A (In re Aldrich Pump LLC),* 2021 Bankr. LEXIS 2294 at *79-*80 (Bankr. W.D.N.C. 2021) (quoting T.B.O.C. legislative history) (emphasis added).

### **Personal Jurisdiction is Imputed to Successor Entities**

It is well-established that in the successor-liability context, the predecessor's contacts with the forum are imputed to the successor entity for purposes of establishing personal jurisdiction. *See, e.g., Perceptron, Inc. v. Silicon Video, Inc.,* 423 F. Supp. 2d. 722, 725-28 (E.D. Mich. 2006); *Rodríguez-Miranda*

4

*v. Benin,* 829 F.3d 29, 45 (1st Cir. 2016). "Were this not so, the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom." *3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985). The sole case cited by the YesCare parties for their specific-jurisdiction argument, *Franklin Capital Funding,* did not involve successor liability. And even if, for some reason, Corizon's contacts with the forum were not imputed to the YesCare parties, their specific-jurisdiction argument would still fail in light of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1023-24 (2021).

### **The Allocation of Liabilities is Not Even Enforceable Under Texas Law**

While Texas law does not apply,[4] the YesCare parties would not fare much better if it did. The Texas Business Organizations Code specifically provides that "[t]his code does not . . . abridge any right or rights of any creditor under existing laws." T.B.O.C. § 10.901. Thus, "while the TBOC permits a company to engage in a divisional merger, it does not permit that company to thereby prejudice its

---

4   The YesCare parties have no operations in Texas. (ECF No. 83-4, PageID.3420). By reincorporating there, they are forum-shopping. Texas does not have a more significant relationship to the issues in this case than Michigan does under such circumstances. *See Simon v. AMISCO Techs., Inc. (In re Am. Camshaft Specialties, Inc.)*, 410 B.R. 765, 776-77 (Bankr. E.D. Mich. 2009).

5

creditors." *Aldrich Pump*, 2021 Bankr. LEXIS 2294 at *76 (Bankr. W.D.N.C. 2021). Under Texas law, "if a corporation uses a divisional merger to dump its liabilities into a newly created "bad" company that lacks the ability to pay creditors while its "good" twin walks away with the enterprise's assets, a fraudulent transfer avoidance action lies." *Id.* at *80. It does not matter that a Texas divisional merger "will not involve a 'transfer' of assets in the traditional sense," because "the allocation of assets in a merger should constitute both a 'transfer' and 'conveyance' of assets under both the letter and spirit of the UFTA, the UFCA and the Bankruptcy Code." *Id.* at *78 (quoting T.B.O.C. legislative history).

The only case that the YesCare parties cite in support of their position that Texas law allows them to do this is a Magistrate's opinion in *Plastronics Socket*. (ECF No. 83, PageID.3354-3355). *Plastronics Socket* was appealed to the Federal Circuit, which examined the legislative history of the T.B.O.C., and held that an allocation of assets and liabilities in a Texas divisional merger is unenforceable under Texas law to the extent that the allocation prejudices the rights of third parties. *Plastronics Socket, Ltd. v. Hwang*, 2022 U.S. App. LEXIS 883 at *6-*11 (Fed. Cir. 2022).

## Application of Rule 25(c) in the successor-liability context is procedurally-proper and does not violate due process

A Rule 25(c) motion is unquestionably an appropriate procedural vehicle for substituting a successor or alter-ego entity for a corporate defendant that has been stripped of assets.[5] *Sullivan v. Running Waters Irrigation Inc.*, 739 F.3d 354, 358-360 (7th Cir. 2014) (holding that plaintiff can substitute successor entity for defunct defendant via Rule 25(c) motion, without the need to bring a new cause of action); *3M v. Eco Chem, Inc.*, 757 F.2d 1256, 1264 (Fed. Cir. 1985). Substitution via Rule 25(c) is particularly appropriate where the party opposing substitution exercises "ultimate and complete control over the litigation strategy" of a "now defunct corporation" that is the nominal party. *Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 905 (1st Cir. 1987). The YesCare parties are clearly exercising control over Tehum Care Services' litigation strategy in this matter. Why else would Tehum Care Services oppose a motion to absolve itself of liability? (ECF No. 82, PageID.3325).

/s/ Ian T. Cross
Ian T. Cross (P83367)
Attorney for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
734-994-9590/ ian@lawa2.com

---

5    Nor does Rule 9(b) present any impediment to substitution. (ECF No. 83, PageID.3359). Rule 9(b) is not applicable to allegations involving 'fraudulent' transfers, as opposed to common-law fraud. *Van American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 541-42 (S.D. Ohio 2000). Even if Rule 9(b) did apply in this context, Plaintiff's Motion explains the transaction in great detail. (ECF No. 77, PageID.3011-3016).

7