Positive
As of: November 10, 2022 7:07 PM Z

# *Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous., LLC*

United States District Court for the Eastern District of Kentucky, Central Division

March 22, 2010, Decided; March 22, 2010, Filed

CIVIL ACTION NO. 5:07-388-KKC

**Reporter**
2010 U.S. Dist. LEXIS 27348 *; 2010 WL 1235276

ALLIANT TAX CREDIT FUND 31-A, LTD, et al., PLAINTIFFS v. NICHOLASVILLE COMMUNITY HOUSING, LLC, et al., DEFENDANTS

**Subsequent History:** Motion granted by, Motion denied by, As moot *Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous., LLC, 2010 U.S. Dist. LEXIS 110707 (E.D. Ky., Oct. 18, 2010)*

Affirmed by *Alliant Tax Credit Fund 31-A, Ltd. v. Murphy, 494 Fed. Appx. 561, 2012 U.S. App. LEXIS 17385 (6th Cir.), 2012 FED App. 904N (6th Cir.) (6th Cir. Ky., 2012)*

**Prior History:** *Alliant Tax Credit Fund 31-A, Ltd. v. Nicholasville Cmty. Hous., LLC, 663 F. Supp. 2d 575, 2009 U.S. Dist. LEXIS 90782 (E.D. Ky., 2009)*

## Core Terms

damages, general partner, rescission, Partnership, argues, guarantors, summary judgment motion, affiliates, limited partnership, calculation, Investor, credits, tax credit, apartment building, construct, Guaranty, projects, loans, properties, permanent, mitigate, amounts, asserts, proceeds, notice, liens, issue of damages, election, offsets

**Counsel:** [*1] For Alliant Tax Credit Fund 31-A, LTD, Alliant Tax Credit 31, Inc., Alliant Tax Credit Fund XXVII, LTD, Alliant Tax Credit XXVII, Inc., Alliant Tax Credit XI, LTD, Alliant Tax Credit XI, Inc., Plaintiffs: Barry D. Hunter, Catherine M. Stevens, LEAD ATTORNEYS, Frost Brown Todd LLC - Lexington, Lexington, KY.

For Robert A. McMaster, Defendant, Cross Defendant, Cross Claimant: Jeffrey D. Horst, LEAD ATTORNEY, PRO HAC VICE, Krevolin & Horst, Atlanta, GA; Mark T. Hayden, Richard Boydston, LEAD ATTORNEYS, Greenebaum, Doll & McDonald PLLC - Cincinnati, Cincinnati, OH.

For M. Vincent Murphy, III, Defendant, Cross Claimant, Counter Claimant: Stan Kreimer, Jr., LEAD ATTORNEY, PRO HAC VICE, Johnson & Ward, Atlanta, GA; James M. Mooney, Moynahan, Irvin, Mooney & Stansbury, Nicholasville, KY.

For Alliant Tax Credit XXVII, Inc., Alliant Tax Credit XI, LTD, Alliant Tax Credit XI, Inc., Alliant Tax Credit Fund 31-A, LTD, Alliant Tax Credit 31, Inc., Alliant Tax Credit Fund XXVII, LTD, Counter Defendants: Catherine M. Stevens, Frost Brown Todd LLC - Lexington, Lexington, KY.

For M. Vincent Murphy, III, Cross Defendant, Cross Claimant, Counter Claimant: Stan Kreimer, Jr., LEAD ATTORNEY, Johnson & Ward,  [*2] Atlanta, GA; James M. Mooney, Moynahan, Irvin, Mooney & Stansbury, Nicholasville, KY.

For Robert A. McMaster, Cross Defendant: Jeffrey D. Horst, LEAD ATTORNEY, Krevolin & Horst, Atlanta, GA; Mark T. Hayden, Richard Boydston, LEAD ATTORNEYS, Greenebaum, Doll & McDonald PLLC - Cincinnati, Cincinnati, OH.

**Judges:** Karen K. Caldwell, United States District Judge.

**Opinion by:** Karen K. Caldwell

## Opinion

**OPINION AND ORDER**

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment regarding the damages owed them. In their motion, the Plaintiffs ask the Court to find as a matter of law that the Defendants owe them liquidated damages of $ 8,194.136. After the filing of the Motion for Summary Judgment, the parties filed briefs on the issue of damages and the Court has conducted a

hearing. In their damages brief, the Plaintiffs assert that their damages are now $ 8,946,643.

## I. FACTS.

### A. The General and Limited Partners.

This matter involves a dispute between the limited and general partners of six limited partnerships.

The Plaintiffs are six corporations who were the Limited Partners of the limited partnerships. The Defendants are six corporations who were the General Partners.

Also named as Defendants are the three [*3] guarantors of the corporate General Partners: two individuals and one corporation. The individual guarantors are Robert A. McMaster and M. Vincent Murphy, III. McMaster and Murphy co-owned the General Partners. The corporate guarantor is Ironwood Development, LLC.

The six limited partnerships were formed in order to construct and lease six low-income, senior citizen apartment buildings in Kentucky. By owning the buildings, the Limited Partners should have qualified for federal tax credits under a low-income housing tax credit program governed by [Section 42 of the Internal Revenue Code](). The program is designed to encourage private investors to invest in low-income properties.

Under the Limited Partnership Agreements, the Plaintiff Limited Partners were required to contribute millions of dollars of capital to the projects and, in return, would receive the majority of the tax credits. (DE 151 at 2). The Defendant General Partners were required to construct the housing projects and keep them leased. (DE 151 at 2). They were also required to pay off all loans and liens on the projects. (DE 123 at 1). In return, the General Partners would receive 80 percent of the net proceeds when the projects [*4] were re-financed or sold. (DE 119 at 7).

In the Limited Partnership Agreements, the General Partners specifically agreed to pay any Development Deficit as that term was defined under the Limited Partnership Agreements. (DE 98, Ex. B, Limited Partnership Agreement § 5.9(B)). The Plaintiffs assert that the calculation of the Development Deficit is straightforward and that, pursuant to the definition, "[a]fter crediting Defendants for the proceeds of the capital contributions and the permanent loans to which they could ultimately become entitled, the Guarantor Defendants are required, *inter alia,* to pay all excess costs necessary to finish construction at the Apartment Buildings, to pay off all liens at the Properties, to pay off the Limited Partnerships' Bridge Loans, and to convert the Multifamily Loans to permanent status." (DE 98 at 20).

In the Guaranty Agreements, each Guarantor guarantees the due, prompt, and complete performance of certain of the General Partners' obligations including the obligation to pay the Development Deficits and the obligations to pay rescission damages as provided for in the agreement. (DE 98, Mot. for Summ. J., Ex. E, Guaranty, PP 1(A)(ii), 1(A)(iii)).

### B. [*5] Breaches of Limited Partnership Agreements by General Partners.

There is no dispute that, in April 2007, Bank of America sued to foreclose on all the apartment buildings involved. Nor is there any dispute that, at that time, though the deadline for construction, renting up, and paying off all loans and liens on the projects had passed, one of the apartment buildings had not been constructed at all, there were unpaid liens on all the buildings, and there were past due balances of over $ 10 million on the Limited Partnerships' loans from Bank of America.

Nor is there any dispute that the Guarantors Murphy and McMaster have failed to perform these obligations as they were required to do under their Guaranty Agreements.

Accordingly, the Limited Partners filed this action, charging the General Partners with breach of the Limited Partnership Agreements and the Guarantors with breach of the Guaranty Agreements.

### C. Procedural History.

None of the General Partners has appeared in this action and their default has been entered. The corporate guarantor, Ironwood Development, LLC, has not appeared in this action and its default has been entered. Thus, the sole active defendants are McMaster and Murphy, [*6] the owners and guarantors of the General Partners.

Judge Forester, to whom this case was previously assigned, granted the Plaintiffs summary judgment

against McMaster and Murphy, finding they breached the Guaranty Agreements. However, he determined that the issue of the Plaintiffs' damages presented complex issues requiring further analysis that would be addressed in a separate opinion. Due to scheduling issues, Judge Forester then assigned the matter to this Court to determine the Plaintiffs' damages.

## II. ANALYSIS.

In their motion for summary judgment, the Plaintiffs argue that the Limited Partnership Agreements specify the appropriate remedy where the General Partners fail to fully "develop" the properties, which the Plaintiffs define as "to construct, rent up and pay off the loans and the liens at the Limited Partnerships' Properties." (DE 123 at 9).

The Plaintiffs also argue that the agreements specify the appropriate remedy where, as in the case of the Renaissance project, the General Partners failed to construct one of the properties at all.

In their motion for summary judgment, the Plaintiffs asserted that, according to those provisions, they were entitled to $ 1,874,513 as Development [*7] Deficit damages for the five completed projects and $ 6,319,623 including interest through June 30, 2009 (the date the Motion for Summary Judgment was filed) as the rescission damages for the Renaissance project which was never completed. Thus, the total damages owed the Plaintiff was $ 8,194,136.

As stated, after the filing of the summary judgment motion, the parties submitted additional briefs on the issue of damages alone. In that brief, the Plaintiffs assert that their total damages are now $ 8,946,643 because of additional contributions made to the Renaissance project. The Plaintiffs assert the amount due them as rescission damages for the Renaissance project is now $ 7,072,130.

### A. Development Deficit Damages.

The Limited Partnership Agreements define "Development Deficit" as all funds in excess of:
   1) the proceeds of the Permanent Loan;
   2) operating income of the Apartment Complex realized prior to the Conversion Date;
   3) that portion or portions of the investor Limited Partner Contribution payable at or prior to the Conversion Date; and
   4) the proceeds of the Bridge Loan which are required to;
      a) complete the Construction;
      b) payment in full of the Bridge Loan;
      c) achieve the Conversion [*8] Date;
      d) pay any applicable loan assessment fees, discounts or other expenses incurred by the Partnership as a result of the occurrence of the Conversion Date;
      e) pay any costs incurred in connection with the preparation of the Cost Certification;
      f) pay any lease-up fees payable pursuant to the Management Agreement; and
      g) pay any Operating Deficits incurred by the Partnership prior to Rental Achievement.
(DE 98, Ex. B, Limited Partnership Agreement, Article I, Definitions).

The Plaintiffs assert that this means that, where the General Partners fail to fully develop a constructed property, the General Partners agreed to pay "the expenditures necessary to complete construction of the Apartment Buildings, to pay off all liens at the Project, to rent up the Buildings, and to pay [off] the Bridge and Construction Loans -- after crediting Defendants for: the total amount of the capital contributions required under the LPAs and the proceeds of the permanent loan." (DE 123, at 9).

The Plaintiffs argue that this calculation is "straightforward" for the five Limited Partnerships where construction is complete. (DE 98 at 20). The Plaintiffs submit the affidavit of Brian Doran who identifies himself [*9] as "an authorized representative of each Plaintiff" and states he makes his affidavit based on personal knowledge. (DE 98, Ex. A, Doran Aff.). Doran concludes that the Development Deficit owed by the Guarantors with regard to the five completed apartment buildings is $ 1,874,513.

In response, McMaster submits his own affidavit (DE 114, McMaster Aff.) in which he argues that the damages due the Plaintiffs with regard to the five constructed apartment buildings should be reduced for the following:
   1. "Developer fees" due to certain affiliates of the Defendant General Partners pursuant to Development Services Agreements between the Limited Partnerships for each project and those affiliates;
   2. "Acquisition and Financing Services Fee" due to certain affiliates of the Defendant General Partners

Case 2:19-cv-13382-GAD-PTM ECF No. 91-7, PageID.3733 Filed 11/10/22 Page 4 of 7

Page 4 of 7
2010 U.S. Dist. LEXIS 27348, *9

pursuant to Acquisition and Financing Services Agreements between the Limited Partnerships for each project and those affiliates;

3. Certain amounts representing the cash flow from the operations of the apartments due certain affiliates of the Defendant General Partners under Supervisory Management and Incentive Agreements between the Limited Partnership and those affiliates; and

4. Certain amounts that [*10] the General Partners should receive when the apartments are sold under the Limited Partnership Agreements.

McMaster asserts that, any amount owed by the Defendants to the Plaintiffs should be offset by these amounts owed to the General Partners and their affiliates under various agreements with the Limited Partnership. This is because the Limited Partnership Agreements provide that when the General Partner or any of its affiliates withdraws from the Limited Partnership, neither the General Partner nor any of its affiliates have a right to any fees due from the Limited Partnership. McMaster argues that, because the Plaintiffs no longer have to pay these amounts to the General Partners or their affiliates, the amounts owed by the Defendants to the Plaintiffs should be reduced by these amounts.

McMaster also asserts that the Plaintiffs' damages should be reduced by some unspecified amount for tax credits available to the Limited Partnership but not purchased by the Limited Partner. McMaster argues that these credits can be sold by the Partnership to another investor. McMaster argues that, because these "unused" tax credits will have a monetary effect on the Partnership, they "must be taken [*11] into account when calculating damages."

McMaster also asserts that each project had a targeted "internal rate of return" and that he "believes" the internal rate of return for the projects has increased because "the final capital contribution has been delayed and other factors such as increased losses." (DE 114, Response, Ex. McMaster Aff. at 6). Nevertheless, he asserts that the "monetary impact of the increased IRR for the Investor Limited Partner cannot be determined at this time. . . [because] the amount and timing of the tax credits cannot be determined." (DE 114, Response, Ex. McMaster Aff. at 6). McMaster asserts that the increased internal rate of return "will have a financial impact on the Investor Limited Partner and thus must be taken into account when calculating damages." (DE 114, Response, McMaster Aff. at 6).

Finally, in his response, McMaster argues that the Plaintiffs "seem" to have overstated their damages by $ 1.5 million by attempting to be reimbursed twice for the same equity advances. (DE 114 at 8-9).

The Plaintiffs reply that the agreements specifically provide for the credits to which the Defendants are entitled in calculating Development Deficits and that these [*12] credits are capital contributions and permanent loan proceeds. They argue that the agreements do not provide for the credits that McMaster urges in his Response.

Further, the Plaintiffs argue that the premise for McMaster's argument regarding these offsets is wrong. The Plaintiffs state that McMaster's premise is that the Plaintiffs have "saved" these amounts that were due the General Partners or their affiliates now that the General Partners have been removed. However, the Plaintiffs point out that they will replace the General Partners with other entities who will provide the services the General Partners's affiliates agreed to provide. Those new entities will then be entitled to the payment that would have gone to the General Partners' affiliates.

The Plaintiffs also reject McMaster's contention that the Plaintiffs are not entitled to Development Deficit damages if it would cause them to achieve a higher rate of return than originally projected. The Plaintiffs argue there is nothing in the contract to support this argument.

In his response to the Plaintiffs' Motion for Summary Judgment on damages, Murphy adopts McMaster's arguments. (DE 119 at 22). Murphy also states that "there is [*13] evidence that the properties have a value. . . of at least $ 655,000" and "may also have a substantial value in the future. . .." He argues that the guarantors should be able to offset these amounts. In reply, the Plaintiffs argue that the agreement does not provide for such offsets.

Neither Defendant has set forth specific objections to the Plaintiffs' Development Deficit calculation. McMaster argues that the Plaintiffs' calculations "seem" to be overstated by $ 1.5 million but he offers nothing beyond this superficial observation. Neither Defendant offers their own calculation. Nor does either Defendant object to the Plaintiffs' interpretation of the Development Deficit provision.

The Defendants' argument with the Development Deficit calculation is that they should be entitled to additional

credits or offsets. However, they point to no provision in the agreement that provides for those additional credits.

Accordingly, there is no issue of fact regarding the Development Deficit calculation and the Plaintiffs are entitled to summary judgment awarding them these damages.

## B. Renaissance Project and Rescission.

As to the incomplete site -- Renaissance -- the Plaintiffs argue that it is more [*14] difficult to quantify the Development Deficit because "the amount of the capital contribution and the permanent loan to which the GP Defendants would ultimately become entitled cannot be computed. . . before the Apartment Buildings are substantially complete." (DE 98 at 21). Nevertheless, the Plaintiffs argue that the Limited Partnership Agreements and the Guarantee Agreements provide for rescission as the remedy in such circumstances.

Specifically, the Plaintiffs cite Article 7.4 of the Limited Partnership Agreements which provides, in relevant part:

> A. At the Investor Limited Partner's election, a rescission of its investment in the Partnership shall occur in accordance with Section 7.4B hereof if
> . . . .
> (ii) Completion does not occur on or before the earlier to occur of (a) the Completion Date, or (b) the date required by the Code and the Credit Agency to preserve the Housing Tax Credits; or
> (iii) Prior to Completion, there is an uncured default under the Permanent Loan and/or the Bridge Loan which results in acceleration of either or both or a foreclosure action is commenced against the Apartment Complex which is not cured within sixty (60) days; or. . .
>
> (vi) Rental Achievement does [*15] not occur on or before September 30, 2005.
> . . . .
> B. If any of the grounds for rescission described in Section 7.4A hereof arises, the General Partner shall notify the Invested Limited Partner. . . . which notice (the "Rescission Notice") shall also automatically constitute an offer by the General Partner. . . to return the Investor Limited Partner Contribution to the Investor Limited Partner (together with interest thereon at the rate of twelve percent (12%) per annum or the Interest Rate from the respective dates on which the various installments of the Investor Limited Partner Contribution were made). . . Furthermore, if the General Partner fails to give the Rescission Notice as required above, the Investor Limited Partner may, at its option, at any time after acquiring notice of the event giving rise to the right of rescission, unilaterally give written notice of its election to rescind, which shall be deemed acceptance of the Offer that the General Partner was required to make. . . .

(DE 98, Ex. B, Agreement).

The Plaintiffs assert that this provision "simply [*16] requires the Guarantor Defendants to pay Plaintiffs back for the amounts that Plaintiffs invested into the Renaissance Properties." (DE 98, Motion at 21).

In his affidavit submitted with the Plaintiffs' Motion for Summary Judgment, Doran stated that the Plaintiffs are entitled to $ 6,319,623 in rescission damages which represents the amounts advanced by the Plaintiffs to the Limited Partnerships plus interest at 12% from the date of contribution as provided in the agreements. (DE 98, Ex. A., Doran Aff. P 11). In their damages brief, the Plaintiffs submit an affidavit by Doran stating that the total contributions by the Plaintiff to the Renaissance project with interest through January 28, 2010 now total $ 7,072,130. (DE 186).

In response, McMaster asserts that, instead of awarding rescission damages as provided for under the applicable agreements, the Court should award the Plaintiffs the cost to complete the project. He argues that, until the filing of the summary judgment motion, the Plaintiffs never represented that they sought rescission damages, but instead sought only the cost to complete the project.

McMaster attaches a "cost to complete analysis" prepared by his staff. In his [*17] response, McMaster argues that it is "too late in the game," for the Plaintiffs to seek rescission. (DE 114, Response at 9). He argues that, if the Plaintiffs had "timely elected rescission," then he and Murphy could have sold the Plaintiffs' limited partnership interest in the project to other tax credit investors.

Murphy also argues in his damages brief that it is unfair to award the Plaintiffs rescission damages because they did not request those damages until the motion for summary judgment. Murphy asks the Court to defer ruling on the damages issue until he has conducted discovery on the issue of rescission damages.

McMaster also argues that the Plaintiffs increased their damages by $ 1.66 million because the Plaintiffs' "failure to continue construction and complete the project" has caused the majority of the estimated $ 1.66 million. McMaster argues that "most of these costs could have been prevented had the Partnership completed the project and started operations." (DE 114, McMaster Aff. at 24).

McMaster further argues that, because the Plaintiffs failed to construct the project, they have allowed over $ 8,770,000 in tax credits to expire and be recaptured by the Kentucky Housing [*18] Corporation. McMaster argues that the Plaintiffs could have completed the project by December 2008 which would have saved the tax credits. McMaster argues these credits were the Partnership's main asset.

Neither Defendant objects to the Plaintiffs' calculation of the rescission amount or to the Plaintiffs' interpretation of the rescission provision in the Agreement. As to McMaster's argument that the Plaintiffs' rescission remedy should be barred as untimely, he points to no provision in the Agreement that required the Plaintiffs' to elect rescission in any particular time period. Further, as Judge Forester noted in his October 15, 2009 Order, "[t]he right of rescission is expressly included" in the agreements and the Guarantee Agreement waives "any defense based upon election of remedies by a Limited Partner." (DE 172). Thus, it should not have surprised either defendant that the issue of rescission damages would arise in this case and that discovery on that issue would be appropriate.

The agreements expressly provide for the right of rescission Further, in an order issued on August 26, 2009, Judge Forester specifically stated that "Defendant Murphy was put on notice by the June 10, [*19] 2009 summary judgment motion that Alliant was seeking rescission damages" and that Murphy deposed the Plaintiffs' representative Brian Doran nearly a month after that. (DE 129). Accordingly, the Court does not view the Plaintiffs' request for rescission damages to be unfair and denies Murphy's request for discovery on those damages.

As to the Defendants' argument that the Plaintiffs failed to mitigate their damages, the Defendants do not present sufficient evidence to raise a genuine issue of fact on this issue. A mitigation of damages defense requires a showing that the Plaintiffs could have reduced the Guarantors' damages by taking reasonable action. See *Morgan v. Scott, 291 S.W.3d 622, 641 n. 49 (Ky. 2009)*("[t]he duty to mitigate is not absolute; recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances"); *Meade Const. Co., Inc. v. Mansfield Commercial Elec., Inc., 579 S.W.2d 105, 107 (Ky. 1979)*; *Carney v. Scott, 325 S.W.2d 343, 345-46 (Ky. 1959)*("it is well settled that the wrongdoer always has the burden of proving that some of the consequences of the injuries [*20] inflicted by him might have been avoided through proper efforts and the exercise of ordinary care by the injured person.").

While the question of whether the plaintiff took reasonable actions to mitigate may often present a fact issue, here the Defendants have presented no evidence as to the reasonable actions that the Plaintiffs should have taken. Thus, there is no evidence from which a jury could determine that the Plaintiffs failed to take reasonable actions to mitigate their damages.

In his damages brief, Murphy also argues that, because the Defendant corporations who were General Partners have been removed as General Partners, "as a matter of law," the Plaintiffs cannot seek rescission damages against them. Murphy cites no authority for this legal argument, either in case law or in the agreements at issue and the Court has found none. Further, the issue here is whether Murphy and McMaster are liable as Guarantors of the General Partners' obligations under the Limited Partnership Agreements. It would make no sense that those guaranties end when the General Partner is removed where the removal occurs precisely because the General Partner failed to fulfill its obligations under the [*21] Limited Partnership Agreement. Further, the Guaranty Agreements specifically provide that the guarantors are liable to the plaintiffs for damages under Section 7.4 of the Limited Partnership Agreements in the event of a rescission. (DE 98, Ex. E, Guaranty, § 1(A)(ii)).

Finally, in his damages brief, Murphy argues that there are fact issues as to whether the Plaintiffs have waived their right to seek rescission damages based on "waiver and estoppel." Nevertheless, Murphy does not present any evidence of such waiver or estoppel or make any legal argument as to why waiver or estoppel apply in this case. The Court cannot deny summary judgment merely on the defendant's assertions that there are fact issues about affirmative defenses that may or may not be applicable.

### C. Murphy's Request that the Court Reconsider Judge Forester's Ruling as to Liability.

In its December 15, 2009 Order prior to the hearing on damages, this Court ruled that the parties could file 5-page briefs "on the issue of damages addressed in the Motion for Summary Judgment" and that the briefs "shall not introduce new issues." In his damages brief, which was filed on January 21, 2010, Murphy asks the Court to reconsider [*22] Judge Forester's September 30, 2009 summary judgment ruling on liability. The Court declines to reconsider Judge Forester's ruling.

As an initial matter, Murphy's request for reconsideration does not come in the form of a "motion" as required by *Rule 7(b)(1) of the Federal Rules of Civil Procedure*. Instead, his request consists of two sentences in his damages brief. Further, the request is contrary to this Court's order that the damages briefs should specifically address the issue of damages and no new issues. Finally, while Murphy does not specify which federal rule he invokes for his request, the request is untimely if made under *Rule 59(e)* and the request sets forth no grounds for relief under *Rule 60(b)*.

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1) The Plaintiffs' Motion for Summary Judgment (DE 98) on the issue of damages is GRANTED;

2) In accordance with this Opinion and Order and the Opinion and Order entered in this matter on September 30, 2009, the Plaintiffs' Motion for Summary Judgment (DE 98) is GRANTED in full and judgment will be entered in favor of the Plaintiffs in the amount of $ 8,946,643;

3) All pending motions in this matter are DENIED [*23] as moot; and

4) This matter is STRICKEN from the active docket of this Court.

Dated this 22nd day of March, 2010.

*/s/ Karen K. Caldwell*

**United States District Judge**