UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KONCHISE JACKSON,

          Plaintiff,

                                  Case No. 19-13382

v.                              U.S. DISTRICT COURT JUDGE

                                  GERSHWIN A. DRAIN

CORIZON HEALTH, INC., *et al.*,

          Defendants.

_____/

## OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT CHS TX, INC.'S OBJECTIONS TO MAGISTRATE JUDGE MORRIS'S ORDER ON PLAINTIFF'S MOTION TO SUBSTITUTE [#92]

### I.   INTRODUCTION

Presently before the Court are CHS TX's Objections to Magistrate Judge Morris's Order on Plaintiff's Motion to Substitute. Magistrate Judge Morris's Order finds that CHS TX is a successor-in-interest to Defendant Corizon Health Inc.'s ("Corizon") interest in this case and, as such, adds CHS TX to this case as a defendant. For the reasons that follow, CHS TX's objections are SUSTAINED IN PART and OVERRULED IN PART. CHS TX shall remain a Defendant in this case.

## II.   <u>BACKGROUND</u>

### A. Factual Background

The factual background of this case is detailed in Magistrate Judge Morris's Order on Plaintiff's Motion to Substitute. Because none of the parties object to its recitation of the facts, the Court incorporates it by reference.

### B. Procedural Background

Pursuant to Federal Rule of Civil Procedure 25(c), Plaintiff filed a Motion to Substitute CHS TX and YesCare Corp. ("YesCare") for Defendant Corizon in this case, arguing that CHS TX and YesCare are alter-egos, successors, or continuations of Corizon. Pursuant to 28 U.S.C. 636(b)(1)(A), the Court referred this motion to Magistrate Judge Morris, who granted Plaintiff's motion in part. Magistrate Judge Morris found that under Michigan law, CHS TX is a successor-in-interest to Corizon's interest in this case because it is a "mere continuation" of Corizon. Accordingly, Magistrate Judge Morris ordered the addition of CHS TX to this case as a defendant.

On November 15, 2022, CHS TX filed objections to Magistrate Judge Morris's Order. CHS TX claims she lacked the authority to decide Plaintiff's Motion to Substitute because it was functionally a dispositive motion, as it disposed of CHS TX's successor liability defenses. Furthermore, CHS TX argues that Magistrate Judge Morris erred by (1) applying Michigan's choice-of-law rules; (2) failing to

apply Texas's successor liability laws; (3) finding that CHS TX is a "mere continuation" of Corizon; (4) failing to determine whether an actual transfer of interest occurred; (5) relying on unauthenticated hearsay; (6) adding CHS TX as a defendant in this case despite a lack of evidence demonstrating its successor liability; (7) erroneously finding that there were no facts in dispute; and (8) failing to hold an evidentiary hearing. Plaintiff filed a Response to CHS TX's objections on November 29, 2022, and CHS TX filed a Reply on December 6, 2022.

## III.   <u>LEGAL STANDARD</u>

### A. Objections to Magistrate Judge Orders

When a party objects to a magistrate judge's ruling on a non-dispositive matter, a district court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Mabry*, 518 F.3d 443, 449 (6th Cir. 2008) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "[T]his standard does not allow a reviewing court to reverse a magistrate judge's finding merely because it would have decided the matter differently." *Sedgwick Ins. v. F.A.B.E. Custom Downstream Sys., Inc.*, 47 F. Supp. 3d 536, 538 (E.D. Mich. 2014) (citation omitted). "The 'clearly erroneous' standard applies only to the magistrate

judge's factual findings; [her] legal conclusions are reviewed under the plenary 'contrary to law' standard." *Id.* (citation omitted). "The 'contrary to law' standard requires the district court [to] employ independent judgment in determining whether the magistrate judge's legal conclusions contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id.* (citation and quotation marks omitted). "Legal conclusions are reviewed *de novo*." *McClean v. Ogemaw Cnty.*, 642 F.Supp.3d 616, 619 (E.D. Mich. 2022) (citation omitted).

"Objections to a magistrate judge's non-dispositive order must be both timely and specific." *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 3995937, at *1 (E.D. Mich. July 26, 2022) (citing *Slater v. Potter*, 28 F. App'x 512, 512 (6th Cir. 2002)). "A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge." *Id.* (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)). "An 'objection' that does nothing more than disagree with a magistrate judge's determination, 'without explaining the source of the error,' is not considered a valid objection." *Id.* (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). Furthermore, "absent compelling reasons," objecting parties may not raise new arguments or issues that were not previously presented to the magistrate judge. *United States v. Santos*, 1:18-cr-20719, 2021 WL 5563972, at *5 (E.D. Mich. Nov. 29, 2021) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1

4

(6th Cir. 2000)).

### B. Federal Rule of Civil Procedure 25(c)

Under Federal Rule of Civil Procedure 25(c), "[i]f an interest [in a case] is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). Rule 25(c) is a "procedural device designed to facilitate the conduct of a case, and does not affect the substantive rights of the parties or the transferee." *Iron Workers Local No. 25 Pension Fund v. Watson Wyatt & Co.,* No. 04-40243, 2008 WL 1924884, at *1 (E.D. Mich. Apr. 30, 2008) (citing 6 Moore's Federal Practice, § 25.32 (Matthew Bender 3rd Ed.)). As such, "[r]ule 25(c) does not require that anything be done after an interest has been transferred." *Blachy v. Butcher,* 221 F.3d 896, 911 (6th Cir. 2000) (quoting *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.,* 13 F.3d 69, 71 (3rd Cir. 1993)).

## IV.   UNDERLINE ANALYSIS

### A. Objection #1: Magistrate Judge Lacked Authority to Decide Plaintiff's Motion to Substitute

First, CHS TX claims Magistrate Judge Morris lacked the authority to decide Plaintiff's Motion to Substitute because this motion was "functionally equivalent to a motion for summary judgment on CHS TX's successor liability defenses." ECF No. 92, PageID.3752.

This objection is deemed waived. CHS TX did not present this argument to

Magistrate Judge Morris, nor does it offer any explanation for its failure to do so. Furthermore, in the context of magistrate judge referrals, the Sixth Circuit has recognized that "a party who objects to a reference to a magistrate must make his objections known either at the time of reference or soon thereafter." *Hill v. Duriron Co.*, 656 F.2d 1208, 1213 (6th Cir. 1981) (citations omitted). Allowing parties to raise such objections after the magistrate judge issues a ruling "would certainly not serve the cause of judicial economy. Parties who did not prevail before the magistrate would routinely seek to have the reference set aside for reasons that either could have been corrected or would have stopped the proceedings if promptly brought to the referring court's attention." *See id.*

Even if this objection were not waived, Plaintiff's Motion to Substitute is not a dispositive motion. Dispositive motions resolve claims. Motions to substitute brought pursuant to Rule 25(c), on the other hand, do "not change the substantive rights and obligations of the parties or of the transferee." *United States v. Harold*, 423 F. Supp. 3d 410, 415 (E.D. Mich. 2019). In successor liability cases, "the judgment will be binding on the successor even if the successor is not named in the lawsuit." *Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) (citations omitted); *see also Harold*, 423 F. Supp. 3d at 414 (adopting *Luxliner*'s rationales in the absence of applicable Sixth Circuit case law). As such, if CHS TX is a successor-in-interest to Corizon's stake in this lawsuit, it will be

bound by the Court's judgment regardless of whether it is added to this case as a defendant. Therefore, Plaintiff's Motion to Substitute is not a dispositive motion. Accordingly, this objection is overruled.

### B. Objection #2: Magistrate Judge Erred by Applying Michigan's Choice-of-Law Rules

Second, CHS TX claims Magistrate Judge Morris erred in applying Michigan choice-of-law rules to determine whether Texas or Michigan law govern the successor liability issues Plaintiff raises in his motion. Because the Court has federal question jurisdiction over this case, CHS TX argues, the federal common law's choice-of-law rules apply.

The undersigned agrees. The Sixth Circuit has recognized that the federal common law governs choice-of-law issues in federal question cases. *Med. Mut. of Ohio v. DeSoto*, 245 F.3d 561, 570 (6th Cir. 2001); *see also Design Basics, LLC v. Chelsea Lumber Co.*, 977 F. Supp. 2d 714, 730 (E.D. Mich. 2013) ("Because the Court has federal-question jurisdiction over this case, the Court applies federal choice-of-law principles."). As such, this objection is sustained. The Court notes, however, that this error was inconsequential. The federal common law adheres to the Restatement (Second) of Conflict of Laws, and sections 301 and 302 govern choice-of-law issues involving the rights and liabilities of business corporations. *See Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1101-02 (E.D. Mich. 1997). Magistrate Judge Morris ultimately consulted sections 301 and 302 of the

Restatement to resolve the choice-of-law issue.

### C. Objection #3: Magistrate Judge Erred by Applying Michigan's Successor Liability Laws Instead of Texas's Laws

Third, CHS TX claims Magistrate Judge Morris erred in finding that Michigan's successor liability laws apply here. Under section 302 of the Restatement, CHS TX argues, the successor liability laws of the state of incorporation should apply except in "extremely rare" circumstances.

Sections 301 and 302 of the Restatement provide as follows:

§ 301: The rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties.

§ 302:(1) Issues involving the rights and liabilities of a corporation, other than those dealt with in § 301, are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.(2) The local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws §§ 301, 302 (1971). In instances where "a corporation does an act that can be committed by a non-corporate entity, § 301 applies standard choice of law rules according to the particular liability involved (e.g., contract or tort law)." *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997). If instead "the act is one peculiar to corporations," section 302 provides that "the law of the state of incorporation will normally be applied,

8

unless another state has a 'more significant relationship' to the lawsuit." *Id.*

In *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097 (E.D. Mich. 1997), this Court faced a choice-of-law question in a case with factual similarities to the present one. At issue was whether a purchaser of a corporate subsidiary was a successor-in-interest to the subsidiary's former parent corporation's alleged liabilities incurred in Michigan under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id.* at 1099-1100. The defendants argued that the laws of the state of the subsidiary's incorporation, Pennsylvania, should apply "since the purported successor liabilities of [the subsidiary] are at issue." *Id.* at 1101. The purchaser, in contrast, argued that Michigan law should apply because Michigan had the greatest interest in, and connection to, the events giving rise to the parent corporation's CERCLA liabilities. *Id.*

The Court recognized that sections 301 and 302 of the Restatement governed the choice-of-law analysis. *Id.* at 1102. In deciding which section to apply, the Court reasoned:

> A non-corporate entity may accrue CERCLA liability, and on that basis § 301 would appear to apply here, leading to the application of normal contract or tort choice of law rules. However, it could also be argued that successor liability or piercing of the corporate veil are theories of liability peculiar to corporations, in which case § 302 applies. Even if that is so, the terms of § 302 do not mandate the law of the state of incorporation in this case, where the matter is not one of internal corporate governance but rather external liability, and where Michigan has a far more significant relationship to the events in question than does the state of incorporation.

*Id.* at 1102. The Court also emphasized that in cases where external liabilities are involved, the interests "go far beyond corporate governance, as the acts of predecessor and successor corporation affect a wide range of interests outside the corporation." *Id.* at 1103. The state where the acts giving rise to the alleged external liability occurred has an "interest in applying its law to citizens injured by foreign corporations," which "outweighs the interest of the incorporating state." *Id.* Furthermore, the Court noted that "[t]he alleged successor (or *alter*-ego) and those who seek to recover from it did not organize their relationship under the umbrella of the incorporating state's law, as would be the case in an internal dispute within a corporation or between a corporation and its shareholders." *Id.* Therefore, the Court concluded that section 302 did not require the application of Pennsylvania's successor liability laws. The Court instead applied section 301 and found that Michigan's successor liability laws applied.

*Chrysler* and the present case bear substantial similarities. Just as CERCLA liability is not purely a matter of internal corporate governance, neither is liability under 42 U.S.C. § 1983. Furthermore, similar to *Chrysler*, Corizon's divisional merger implicates a wide range of interests with respect to Plaintiff's § 1983 claim against Corizon. Plaintiff has an interest in Michigan's successor liability laws applying here because he formed his relationship with Corizon in Michigan. The State of Michigan also has an interest in having its successor liability laws govern

cases where its citizens are injured by foreign corporations. As recognized in *Chrysler*, interests of this nature outweigh any interest the company's state of incorporation might have in having its successor liability laws apply. This is especially true here in light of the fact that Corizon undertook its divisional merger and incorporated in Texas *after* Plaintiff's alleged injury occurred and *after* Plaintiff initiated the present lawsuit. As such, in accordance with *Chrysler*, the Court concludes that section 302 of the Restatement does not require the Court to apply Texas's successor liability laws here. Therefore, this objection is overruled.

### D. Objection #4: Magistrate Judge Failed to Apply Texas's Successor Liability Law, as Required by Michigan Law

Even if Michigan successor liability laws apply here, CHS TX posits, Michigan law nevertheless requires the Court to apply Texas's successor liability laws. In support of this position, CHS TX cites the Michigan Court of Appeals' decision in *In re Estate of Upjohn*, No. 278668, 2010 WL 624413 (Mich. Ct. App. Feb. 13, 2010), which states that "the effect of a merger or consolidation on the existing constituent corporations depends upon the terms of the statute under which the merger or consolidation is accomplished." *Id.* at *5. CHS TX's reliance on this case is misplaced, as it does not address successor liability. Instead, at issue there was whether a corporate subsidiary legally ceased to exist following its merger with another company, which is purely a matter of internal corporate governance. This is distinct from successor liability cases, where, as discussed above, third-party

interests are directly implicated. Therefore, *In re Estate of Upjohn* is inapposite to the present case, and this objection is overruled.

### E. Objection #5: Magistrate Judge Erred in Finding that CHS TX is a "Mere Continuation" of Corizon

Fifth, CHS TX claims Magistrate Judge Morris erred in finding that it is a "mere continuation" of Corizon. Relying on the Sixth Circuit's decision in *Stramaglia v. United States*, 377 F. App'x 472 (6th Cir. 2010), CHS TX claims it is not a "mere continuation" of Corizon because not all of Corizon's pre-merger assets were transferred to CHS TX.

In *Stramaglia*, the Sixth Circuit explained that "[t]o determine whether a successor corporation is a mere continuation of its predecessor, Michigan courts examine the totality of the circumstances and engage in a multi-factor analysis." *Id.* at 475 (citing *Pearce v. Schneider*, 242 Mich. 28 (Mich. 1928); *Shue & Voeks, Inc. v. Amenity Design & Mfg., Inc.*, 203 Mich. App. 124 (Mich. Ct. App. 1993); *Ferguson v. Glaze*, No. 268586, 2008 WL 314544 (Mich. Ct. App. Feb. 5, 2008)). The court further noted that "[t]he only indispensable prerequisites to application of the [mere continuation doctrine] appear to be common ownership and a transfer of substantially all assets." *Id.* (citing *Pearce*, 242 Mich. at 29-31; *Shue & Voeks*, 203 Mich. App. at 128-29; *Gougeon Bros. v. Phoenix Resins, Inc.*, No. 211738, 2000 WL 33534582, at *2 (Mich. App. Feb. 8, 2000)). Beyond these factors, the court stated, "the most important consideration appears to be the nature of the business

performed by the successor corporation—that is, whether its 'main corporate purpose was to conduct the same business' as its predecessor." *Id.* (quoting *Pearce*, 242 Mich. at 31). Other relevant factors include "the new corporation's retention of the old corporation's officers and employees." *Id.* (citing *Shue & Voeks*, 203 Mich. App. at 128-29).

Magistrate Judge Morris disagrees with *Stramaglia*'s position that common ownership and the transfer of substantially all assets are required successor liability elements. She notes that none of the Michigan cases cited by the Sixth Circuit in support of this rule involve a reversal of "a lower court's finding that a new corporation was a mere continuation solely on the grounds that one of these two 'required' elements had been satisfied." ECF No. 89, PageID.3683. Instead, she reasons, "[e]ach case treats ownership and transfer of assets as nothing more than factors to be considered when assessing the totality of the circumstances." *Id.* at PageID.3684. While this may be true, this does not necessarily mean *Stramaglia* mischaracterizes Michigan law. In fact, none of the cases cited in *Stramaglia* involve a Michigan court imposing successor liability in the absence of either element, which supports the *Stramaglia* court's observation that these elements appear to be "indispensable prerequisites." The Court is also unaware of any Michigan cases that directly contravene *Stramaglia*, and this Court has consistently treated the satisfaction of these elements as required. *See, e.g.*, *Dabrowski v. Tubular Metal*

*Sys., LLC*, 722 F. Supp. 3d 766, 770 (E.D. Mich. 2024); *In re Clements Mfg.*

*Liquidation Co.*, 521 B.R. 231, 258 (Bankr. E.D. Mich. 2014); *see also C.T.*

*Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 554 (6th Cir. 2013)). As

such, the undersigned sees no reason to depart from *Stramaglia*.

The Court finds that *Stramaglia*'s prerequisites are satisfied here. First, there

was common ownership. It is undisputed that as a result of the divisive merger, 100%

of Corizon's and CHS TX's capital stock were owned by the same, sole shareholder:

Valitas Holdings. ECF No. 83-4, PageID.3410. Second, Corizon transferred

substantially all of its assets to CHS TX. Following the divisional merger, it is

undisputed that Corizon retained all inactive or expired contracts, one million dollars

in cash, the right to collect up to four million dollars under a "funding agreement"

with a Corizon affiliate provided that certain conditions are met, and the right to

collect on insurance policies relating to or arising from the assets it retained

following the divisive merger. *See id.* at PageID.3429-30. CHS TX, on the other

hand, received the vast majority of Corizon's pre-divisional merger assets, including

all active contracts; all furniture, fixtures, and assets; all intellectual property,

including trademarks, tradenames, trade secrets, and domain names; all of Corizon's

permits and licenses; all bank accounts except for one; all real estate assets; and

approximately $17.5 million in collateral held by AIG for Corizon's workers'

compensation program. *See id.* at PageID.3417-18. While CHS TX claims it cannot

be a mere continuation because Corizon did not transfer *all* of its assets to CHS TX, that is not the standard. The proper inquiry is whether Corizon transferred *substantially all* of its assets to CHS TX. Such is the case here.

Several of the remaining factors further reinforce a finding that CHS TX is a mere continuation of Corizon. It is undisputed that the nature of CHS TX's business—correctional healthcare—is identical to that of pre-divisional merger Corizon. *See* ECF No. 77-36. It is also undisputed that CHS TX retained *all* of Corizon's pre-divisional merger employees—including, most importantly, its Chief Executive Officer, Sara Tirschwell—and that following the divisional merger, CHS TX held itself out as a continuation of Corizon. *See* ECF No. 83-1, PageID.3371; ECF No. 83-2, PageID.3391; ECF No. 83-4, PageID.3410; ECF Nos. 77-16; 77-36. And crucially, as CHS TX itself recognizes, Corizon undertook its divisional merger—which resulted in CHS TX's creation—to preserve its ongoing viability amidst mounting expenses. ECF No. 83, PageID.3337 ("Years of mounting costs, including litigation expenses relating to claims asserted by incarcerated individuals, threatened Corizon Health's ability to continue as a going concern. . . . Faced with these circumstances, Corizon Health determined that the fairest and value-maximizing path forward would be a divisional merger[.]").Therefore, the Court finds that CHS TX is a "mere continuation" of Corizon. This objection is thus overruled.

### F.  Objection #6: Magistrate Judge Failed to Find an Actual Transfer of Interest

Sixth, CHS TX claims Magistrate Judge Morris erred by failing to consider whether there was an actual "transfer of interest," claiming that Michigan law "provides that whether a corporation transferred an interest is a separate inquiry than whether successorship liability applies—one dependent on the corporate form and the specific facts, not an equitable analysis." ECF No. 92, PageID.3768. In support of this position, CHS TX cites the Michigan Court of Appeals' decision in *Gaylord Alpine Invs., Inc. v. Mercy Props., LLC*, No. 356344, 2022 WL 1701941 (Mich. Ct. App. May 26, 2022). CHS TX's reliance on this case is misguided, as it neither supports this assertion nor addresses successor liability. Instead, successor liability is *one way* in which a corporation can transfer its interest in a liability to a successor corporation. Therefore, this objection is overruled.

### G. Objection #7: Magistrate Judge Erred by Relying on Unauthenticated Hearsay

Seventh, CHS TX claims Magistrate Judge Morris erred in granting Plaintiff's Motion to Substitute "despite lacking a record of admissible evidence." ECF No. 92, PageID.3755. The only evidence CHS TX specifically points to are the "emails and webpage printouts [supporting] the proposition that YesCare allegedly holds itself out in the marketplace as a continuation of Corizon," which it claims are unauthenticated hearsay. *Id.*

16

This argument was not raised before Magistrate Judge Morris. While CHS TX's response to Plaintiff's Motion to Substitute asserts that Plaintiff bears the burden of proving transfer of interest through admissible evidence, it does not specifically identify objectionable evidence. CHS TX has not offered any explanation for why it did not raise this argument before Magistrate Judge Morris.

In any event, the emails and webpages are not unauthenticated hearsay. First, to authenticate evidence, the proponent of the evidence must produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "This requirement 'does not erect a particularly high hurdle' for a proponent to clear." *United States v. Hall*, 20 F.4th 1085, 1104 (6th Cir. 2022) (citations omitted). In the context of motion practice, evidence can be authenticated by an affidavit or declaration. *See Bodman v. Dennis*, Nos. 14-1316/1363, 2015 WL 13927074, at *1 (6th Cir. Mar. 31, 2015). Here, Plaintiff authenticated the emails and webpages by submitting a declaration by Nathan Kent Lumbard, a paralegal for Plaintiff's counsel. Mr. Lumbard affirms that he personally located and acquired the emails through Freedom of Information Act ("FOIA") requests, and that he printed the webpages from YesCare's website. ECF No. 95-1. This declaration supports a finding that the emails and webpages are what Plaintiff claims they are, and as such, Plaintiff sufficiently authenticated this evidence.

Second, under Federal Rule of Evidence 801, hearsay is a statement that "a

party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "A statement offered as evidence of the bare fact that it was said, rather than for its truth, is not hearsay." *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009). Here, Plaintiff did not offer this evidence to prove the truth of the matters asserted therein. Instead, it was offered as evidence that CHS TX and YesCare hold themselves out to the public as a continuation of Corizon, which is not hearsay. Therefore, this objection is overruled.

### H. Objection #8: Magistrate Judge Erred by Adding CHS TX as a Defendant Despite Lack of Evidence Regarding its Successor Liability

Eighth, CHS TX claims Magistrate Judge Morris erred by adding it to this case as a defendant "despite the barren record as to that entity." ECF No. 92, PageID.3755. It argues that "virtually all of the purported evidence submitted with Plaintiff's Motion refers to YesCare, not CHS TX." *Id.*

This objection is meritless. As discussed above, there is undisputed evidence demonstrating that CHS TX is, in fact, a "mere continuation" of Corizon. The Court also notes that CHS TX refers to itself as "CHS TX, Inc., d/b/a YesCare" in its bankruptcy proceedings in the Southern District of Texas. *See, e.g.*, Agreed Motion for Order Granting Relief from Automatic Stay to Settle Claim and Authorize Insurance Payment, Dkt. No. 1855, *In re Tehum Care Services, Inc.*, No. 23-90086 (Bankr. S.D. Tex. Dec. 4, 2024) (referring to itself as " 'CHS TX' or YesCare'" and "CHS TX, Inc. d/b/a YesCare"). Therefore, this objection is overruled.

## I. Objection #9: Magistrate Judge Erred in Concluding No Facts Were in Dispute

Ninth, CHS TX claims Magistrate Judge Morris incorrectly concluded there were no facts in dispute. First, CHS TX asserts that it disputes its alleged contacts with the forum, which Magistrate Judge Morris should have considered, pursuant to section 302 of the Restatement, in deciding the choice-of-law issue. However, CHS TX fails to identify specific facts it believes are actually in dispute. "An 'objection' that does nothing more than disagree with a magistrate judge's determination, 'without explaining the source of the error,' is not considered a valid objection." *Peterson v. Burris*, No. 14-cv-13000, 2016 WL 3995937, at *1 (E.D. Mich. July 26, 2016) (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). In any event, the undersigned has concluded that section 302 does not require the Court to apply Texas's successor liability laws here. Therefore, this objection is overruled.

Second, CHS TX disputes Magistrate Judge Morris's finding that "all parties agree that CHS TX and YesCare have virtually no connection to Texas other than their incorporation." ECF No. 92, PageID.3756. CHS TX argues that this finding is incorrect because its CEO is based in Texas, "meaning that Texas is the location of all significant decisions affecting the corporation." *Id.* CHS TX, however, did not present this fact to Magistrate Judge Morris in its briefing. And in any event, this fact did not bear on the undersigned's determination that CHS TX is a "mere

continuation" of Corizon. Therefore, this objection is overruled.

### J. Objection #10: Magistrate Judge Erred by Failing to Hold Evidentiary Hearing

Lastly, CHS TX claims Magistrate Judge Morris erred in deciding Plaintiff's Motion to Substitute without holding an evidentiary hearing. CHS TX asserts that courts must grant an evidentiary hearing "where there is conflicting evidence regarding a Rule 25(c) motion." ECF No. 92, PageID.3755. As discussed above, the facts demonstrating that CHS TX is a "mere continuation" of Corizon are undisputed. As such, there is no conflicting evidence on any material issues, and thus an evidentiary hearing was not necessary to decide Plaintiff's Motion to Substitute. Therefore, this objection is overruled.

## V. CONCLUSION

Based on the foregoing, Defendant CHS TX's Objections to Magistrate Judge Morris's Order on Plaintiff's Motion to Substitute [#92] are SUSTAINED IN PART and OVERRULED IN PART. CHS TX shall remain a Defendant in this case.

SO ORDERED.

Dated: February 19, 2025                           /s/Gershwin A. Drain
                                                   GERSHWIN A. DRAIN
                                                   United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 19, 2025, by electronic and/or ordinary mail.

<u>/s/ Marlena Williams</u>
Case Manager