```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3        KOHCHISE JACKSON,

 4                  Plaintiff,

 5         v                                   No. 19-cv-13382

 6
          CORIZON HEALTH, INC., KEITH
 7        PAPENDICK,CHS TX,INC., and
          YESCARE CORPORATION,
 8
                    Defendants.
 9        _____/

10
                          STATUS CONFERENCE
11
                BEFORE THE HONORABLE GERSHWIN A. DRAIN
12                   UNITED STATES DISTRICT JUDGE
              Theodore Levin United States Courthouse
13                  231 West Lafayette Boulevard
                          Detroit, Michigan
14                    Friday, January 31, 2025

15   APPEARANCES:

16
          For the Plaintiff:     MR. IAN CROSS
17                               Cross Law, PLLC
                                 402 W. Liberty Street
18                               Ann Arbor, Michigan  48103
                                 (734) 994-9590
19
                                 MR. LAWRENCE MARGOLIS
20                               Margolis Law Firm
                                 214 South Main Street
21                               Suite 202
                                 Ann Arbor, Michigan  48104
22                               (734) 994-9590

23        For the Defendants     MR. MAX NEWMAN
          Tehum, Corizon, and    Butzel Long
24        CHS Texas:             201 W. Big Beaver Road
                                 Suite 1200
25                               Troy, Michigan  48084
                                 (248) 258-1616
```

```
 1
              APPEARANCES:
 2

 3          For the Defendant          MR. CONNOR MCLAUGHLIN
            Keith Papendick:           Hackney Odlum & Dardas
 4                                     10850 E. Traverse Highway
                                       Suite 4440
 5                                     Traverse City, Michigan 49684
                                       (231) 642-5026
 6

 7
    Reported by:                 Merilyn J. Jones, RPR, CSR
 8                               Official Federal Court Reporter
                                 merilyn_jones@mied.uscourts.gov
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

TABLE OF CONTENTS

**WITNESSES:   PLAINTIFF**                                                      **PAGE**
None

**WITNESSES:   DEFENDANT**
None

**OTHER MATERIAL IN TRANSCRIPT:**
Proceedings                                                                        4

**EXHIBITS:**                       Identified              Received
None

```
 1                Detroit, Michigan
 2                Friday, January 31, 2025 - 12:03 p.m.
 3                THE LAW CLERK:  All rise.  The United States District
 4  Court for the Eastern District of Michigan is now in session.
 5  The Honorable Gershwin A. Drain presiding.
 6                You may be seated.
 7                Calling Civil Action Jackson versus Corizon Health,
 8  et al.  Case Number 1913382.
 9                Counsel, please place your appearances on the record.
10                MR. CROSS:  Good morning, your Honor.  Ian Cross
11  appearing for the plaintiff, Kohchise Jackson.
12                MR. MARGOLIS:  Good afternoon, judge.  Lawrence H.
13  Margolis, co-counsel for the plaintiff.
14                THE COURT:  All right. Good morning.  No.  Good
15  afternoon.
16                MR. NEWMAN:  Good afternoon, your Honor.  Max Newman
17  appearing for Tehum, Corizon, and CHS Texas, TX.
18                MR. MCLAUGHLIN:  Good morning, your Honor.  Connor
19  McLaughlin appearing for Defendant Papendick.
20                MR. CROSS:  Your Honor, with your permission, our
21  paralegal, Nathan Lumbard, is also here.
22                THE COURT:  Okay.
23                MR. LUMBARD:  Good morning, your Honor.
24                THE COURT:  All right.  Good morning to you also.
25                MR. CROSS:  Thank you, judge.
```

1         THE COURT: All right. Gentlemen, where are we with
2 this matter?
3         Is Corizon still tied up in bankruptcy?
4         MR. NEWMAN: Your Honor, I can provide an update on
5 that if you would like.
6         THE COURT: Okay.
7         MR. NEWMAN: A plan has been filed for the entity that
8 we're hoping is confirmed.
9         The voting deadline on the plan, creditors have an
10 opportunity to vote on whether to accept or reject the plan, is
11 February 21st, that is also the date for objections to the plan.
12         The confirmation hearing is scheduled for March 3rd of
13 2025.
14         And if the Court wants the case number, I can give
15 that as well.
16         THE COURT: Okay. We'll take it.
17         MR. NEWMAN: Southern District of Texas Bankruptcy
18 case 2390086.
19         Right now there is a plan pending for that case. And
20 for tort claimants like the plaintiff, there are three options
21 that are contained in the plan, not all of which may apply to
22 this plaintiff.
23         The first option is that there is a trust that is
24 going to created for the benefit of tort claimants, which is
25 going to include 25 million dollars payable over 30 months and

1  creditors with tort claims will have an opportunity to file the
2  dollar amount to the claim.
3          There will be a procedure for objections, but the
4  distributions are expected from the 25 million to be pro rata
5  among the class of tort claims.
6          And --
7          THE COURT:  Before you go any further, how many tort
8  claims are there?
9          MR. NEWMAN:  I don't have that number.  There are an
10 awful lot.
11         THE COURT:  Roughly?
12         MR. NEWMAN:  My understanding is that the dollar
13 amount is expected to be around 75 million dollars, so that the
14 25 million dollars is about 33 percent.
15         I don't know how many claims that consists of, but
16 it's, obviously, quite a few.
17         THE COURT: Do you have any general sense of it, I
18 mean, roughly.  Like is it a thousand people, ten thousand
19 people or --
20         MR. NEWMAN:  I think it's more like a thousand.
21         MR. CROSS:  Your Honor, I believe there's about 180
22 tort claimants.
23         MR. NEWMAN:  Okay.
24         So I was erring on the high side.
25         THE COURT:  Okay.

```
 1              MR. NEWMAN:  I'm glad it's not quite as bad as I
 2   thought.
 3              THE COURT:  Okay.
 4              MR. NEWMAN:  So Option One:  They can join the tort
 5   claim pool.
 6              Option Two:  If there is insurance in place related to
 7   the claim, they can pursue that insurance while giving a release
 8   to the debtor and its affiliates.
 9              And I should mention, if they choose Option One, there
10   is a third-party release in Option One as well.
11              The final option is that they can go through civil
12   litigation against the debtor; however, if more than five
13   percent of the tort claimants choose Option Three to go through
14   the civil court system, the whole plan is going to collapse
15   because the party that's going to be funding this is not willing
16   to fund and then face, you know, more than five percent of the
17   claimants in lawsuits.
18              And, again, the deadline for the voting where we
19   should have a better idea of whether or not it's going to be
20   confirmed, is February 21st and the confirmation hearing is
21   scheduled for March 3rd, 2025.
22              I probably don't need to advise the Court of this, but
23   I may as well.  Those hearings have a bad habit of being
24   adjourned to allow the parties to work it out.
25              So I can't stand here and say I'll know on March 4,
```

```
1    2025 whether everything is done or not.
2               THE COURT:  Okay.
3               Mr. Cross, do you have anything to add or some
4    clarity?
5               MR. CROSS:  Yes.  Just a clarification.
6               That Option Three under the plan isn't an option to
7    pursue a claim against the debtor.  It's an option to pursue
8    successor liability claims against nondebtor third parties such
9    as CHS Texas and YesCare.
10              And that is the option that Mr. Jackson has chosen.
11   He's submitted his opt out form.
12              So regardless of whether the plan is confirmed or not,
13   Mr. Jackson will be pursuing his successor liability claims
14   against the nondebtor third parties in this case.
15              THE COURT:  Okay.
16              Who are they?  Who are the nondebtor third parties?
17              MR. CROSS:  Well, they are, Dr. Papendick and CHS
18   Texas Incorporated.
19              THE COURT:  Okay.  When do you think you all can
20   start the Option Three litigation?
21              We've talked about that.
22              MR. CROSS:  It's -- I believe it's already going.  I
23   mean, I don't think there's a stay active in this case right
24   now, and that litigation should be proceeding.
25              THE COURT:  Well, let's see.
```

1                From the defendants, is there any reason not to move
2    forward with the case at this point?
3                MR. MCLAUGHLIN:  Just briefly, your Honor.
4                You know, it's good to know that Mr. Jackson is opting
5    out because that does answer one of the questions because in
6    some of these other cases, Dr. Papendick has about nine cases,
7    and some of those will go away if the plaintiffs opt out.
8                Like, Mr. Cross said, we're one of the released
9    parties, Dr. Papendick or any former employees of Corizon or
10   Tehum.
11               So we would ask -- we've been asking in those cases
12   that we set a status conference for after, on or after April 1st
13   so that we will know the voting.
14               In this case I would ask for something similar or a
15   settlement conference, I think, is our next step set in May so
16   that Dr. Papendick kind of knows how many cases are against him.
17               He is not getting any money out of the plan.  He
18   doesn't even have an option to get any money out of the plan, so
19   -- and nobody else is -- he does not have insurance.  None of
20   the other parties, such as, YesCare, who are kind of -- or
21   alleged successor liability entities are paying his defense or
22   indemnification there.
23               So when we proceed with a settlement conference, he'll
24   be on his own and it will be helpful to know, does he have eight
25   cases against him; does have two cases against him?

1                    So that would be our request.
2                    THE COURT:  And so, when did you say -- you mentioned
3    a date for something, and I can't remember exactly what it was.
4                    MR. MCLAUGHLIN:  Yes, your Honor.
5                    I mentioned April 1st or after.
6                    THE COURT:  Okay.
7                    MR. MCLAUGHLIN:  Like Mr. Newman said, there are
8    certainly dates that are set.  I think the voting day will be
9    firm and certain.  We will have all the votes in by the 21st of
10   February.
11                   I believe it's March 3rd is the hearing.
12                   Like Mr. Newman said, sometimes those move by a week
13   or day or so.
14                   So, April 1st gives us enough time to know the result
15   of the bankruptcy.
16                   It could be voted down.  It could be -- you know, we
17   won't know the opt outs.  If it is passing, we'll know if
18   YesCare is going to exercise its right to back out of the plan.
19                   THE COURT:  Mr. Cross, any response to that?
20                   MR. CROSS:  I would add that I don't believe the
21   outcome of whether the bankruptcy plan is approved or not is
22   going to affect this case, given the current posture.
23                   There's also a pending objection to the magistrate's
24   order substituting CHS Texas for Tehum Care Services in this
25   case that the Court needs to rule on, but after that, I think we

```
1    should proceed.
2                THE COURT:  Is the doctor collectible?
3                MR. CROSS:  Your Honor, we don't have information
4    about Dr. Papendick's personal assets, but we believe CHS Texas
5    is collectible.
6                THE COURT:   So what's their role in this, CHS Texas?
7                MR. CROSS:  So CHS Texas is, is essentially the
8    successor company of Corizon, which was the original defendant
9    in this case.
10               Corizon provided health care in prison systems.  It
11   underwent a divisional merger in which it split itself into two
12   companies.
13               One company, CHS Texas, took all the employees, the
14   active contracts, the ongoing business.
15               The other company, Tehum Care services, took all the
16   liabilities and trade debt and filed bankruptcy.
17               So only Tehum Care Services is in bankruptcy.  CHS
18   Texas continues to operate, and we believe that it's the
19   successor of Corizon Health and should be libel for Corizon
20   Health's liabilities.
21               THE COURT:   So, when would you like to start
22   litigating this case?
23               MR. CROSS:  As soon as possible.
24               THE COURT:   Okay.
25               What's your response or reaction to that?
```

1  MR. MCLAUGHLIN: Obviously, you know, your Honor, like
2 you said, the big issue is collectability.
3  And as far as my client is concerned, we've gone
4 through motion practice on this case. Most of it got litigated
5 before I appeared for Mr. Papendick, Dr. Papendick in 2023.
6  So against my client it's only the settlement
7 conference and trial, and so for those reasons, you know, we
8 wanted to wait out the bankruptcy and know all these things.
9  You know, I agree with Mr. Cross, it doesn't actually
10 probably matter too much whether the plan is voted up or down,
11 especially now that we know he's opting out.
12  One way or another, I think that we've run out of
13 argument to keep it stayed.
14  I do ask -- I think it does make sense to, we've come
15 so far, you know, if we can wait another two months to know
16 because if we have a settlement conference in April, you know,
17 Dr. Papendick may not know how many cases, you know, is he
18 facing. Does he have to have eight trials; does he have to have
19 two trials?
20  It's kind of our -- it's the kind of thinking he has
21 to do.
22  But other than that, I do understand why, you know,
23 Mr. Jackson wants to get this case going.
24  THE COURT: So have you all been through discovery
25 and everything? Is that --

1     MR. CROSS: Your Honor, we've completed discovery,
2  motions for summary judgment, everything is --
3     THE COURT: Okay.
4     MR. CROSS: The case has been pending for six years.
5     THE COURT: Okay. Have you ever had a trial date
6  before?
7     MR. CROSS: No, your Honor.
8     THE COURT: Okay.
9     How long do you think a trial would take?
10    MR. CROSS: Four days I would estimate.
11    THE COURT: Four days. Okay.
12    So, are there any motions in limine, or anything like
13 that, kind of hanging out there or pending?
14    MR. CROSS: Oh, yes.
15    There's a pending motion that CHS, or -- I'm sorry.
16 Objection that CHS Texas brought to the magistrate's opinion and
17 order adding them to this case. So that needs to be ruled on.
18    THE COURT: Okay. Okay.
19    Do you see any value in waiting until April 1st as
20 suggested by the defendants?
21    MR. CROSS: I wouldn't be opposed to a trial date
22 after April 1st, but I don't see why this case would need to be
23 stayed for another two or three months.
24    THE COURT: Okay.
25    So have you all had a settlement conference with

```
 1   anyone?
 2           MR. CROSS:  No, your Honor.
 3           THE COURT:  Okay.
 4           Would you like to have one?
 5           We frequently have magistrate judges do settlement
 6   conferences.
 7           MR. CROSS:  Yeah.  We have no opposition to a
 8   settlement conference.
 9           THE COURT:  Okay.
10           MR. MCLAUGHLIN:  I think that makes sense, your Honor.
11   I think, you know -- I'll let Mr. Newman talk.  We would be
12   ready to attend a settle conference with their objections
13   pending, but for Dr. Papendick's purposes, I think, you know, we
14   can do a settlement -- we think it would be a good idea.
15           THE COURT:  Okay.
16           MR. NEWMAN:  Your Honor, we would, of course, prefer
17   that the objection to the magistrate's order be decided before a
18   settlement conference.
19           From our perspective, also, it makes sense to
20   determine how many people opted out of the plan, because, quite
21   frankly, my client wants to know, like Dr. Papendick kind of has
22   a sense of, how many of these lawsuits it's going to be facing;
23   how much litigation is in its future, and, you know, what
24   ability it has to settle this case if it's got, you know, 30 or
25   40 more cases coming down the road.
```

```
 1                I appreciate that doesn't matter much to this
 2   plaintiff who's got his own discrete set of facts and
 3   circumstances, but from our perspective we'd be more able to
 4   participate in a settlement conference after April 1st.
 5                THE COURT:  How long did you say the trial would
 6   take; about four days?
 7                MR. CROSS:  That's right, your Honor.
 8                THE COURT:  About four days.  Okay.
 9                Do you agree with that; if the case went to trial, it
10   would be about four days?
11                MR. NEWMAN:  I think, so, your Honor.  That would be
12   on the lower end.  This is essentially a medical treatment case,
13   not a medical malpractice case, but a lot like that.
14                And there's -- I think there's a number of experts,
15   so, you know, four to five.  I think our proofs would do two
16   days, two and a half days.
17                THE COURT:  All right. Let me do this.  I'm going to
18   look at my calendar and see what we can set in terms of a trial
19   date, and I haven't really looked at the order that was issued
20   by the magistrate judge and the objections.  So I have to do
21   that, too.
22                And I would like to get you all before a magistrate
23   judge on the case.
24                Looks like Patricia Morris is the magistrate judge on
25   the case.
```

1       Is she the one who issued the opinion that draws the
2  objections?
3       MR. CROSS:  That's correct, your Honor.
4       THE COURT:  Okay.  And so I could really refer a
5  settle conference to her to have with you all.
6       What month do you think would be the best month to do
7  that, Mr. Cross?
8       MR. NEWMAN:  April or May, your Honor.  You know, the
9  farther into April, the better, but either one of those will, I
10 think we'll have some knowledge for my client for, you know, the
11 issues I've raised.
12      THE COURT:  Okay.
13      MR. CROSS:  I wouldn't be opposed to a settlement
14 conference in April, your Honor.
15      THE COURT:  Okay.  All right.
16      All right.  I'm going to -- has she done a lot of work
17 on the case at all as far as you know?
18      MR. CROSS:  Yes, your Honor.  She ruled on the motion
19 for summary judgment and the motion to dismiss.
20      THE COURT:  Okay.  Okay.
21      So she's pretty familiar with the facts of the case
22 and the whole shot?
23      MR. CROSS:  If she remembers it.
24      THE COURT:  Okay.
25      MR. CROSS:  It's been a few years.

Case 2:19-cv-13382-GAD-PTM   ECF No. 115, PageID.4427   Filed 02/25/25   Page 17 of 20

17

```
 1                  THE COURT:  Okay.
 2                  All right.  I think what I'll do is I'll issue an
 3     order referring the case to her for a settlement conference, and
 4     I'm going to request that she do it during the month of April.
 5                  And I need to figure out a trial date that I can give
 6     you after that.
 7                  Do you want me to give you a trial date today?
 8                  MR. CROSS:  I would appreciate that, your Honor.
 9                  THE COURT:  All right.  It will be, of course, after
10     April, but let me take a break and look at my schedule and talk
11     to my case manager, and we'll figure out a spot we can put you
12     in.
13                  All right.  We'll be in recess.
14                  MR. NEWMAN:  Thank you, your Honor.
15                  THE LAW CLERK:  All rise.  The court is now in recess.
16          (At 12:22 p.m. to 12:24 p.m. court in recess)
17                  THE LAW CLERK:  Please remain seated.  This court is
18     back in session.
19                  THE COURT:  Okay.  I'm going to give you a trial date
20     of May the 20th.
21                  And I'm going to, like I said, issue an order to the
22     magistrate judge to do a settlement conference with you during
23     the month of April.
24                  And so what she'll do is she'll contact you, give you
25     a date, and try to work out a date that's convenient for both
```

1    sides, and you can talk to her and hopefully she can resolve it.
2              But my calendar is pretty clear for May, so, May 20th
3    will be the date.  That's a Tuesday, and we usually pick juries
4    on Tuesdays.
5              So be ready to go.  It sounds interesting.
6              Okay.  Anything else before we break?
7              MR. CROSS:  No.  Thank you, your Honor.
8              MR. MARGOLIS:  Does your Honor go all day?
9              THE COURT:  No.  I usually do a 8:30 to 1:30 or 8:30
10   to 2.
11             MR. MARGOLIS:  Okay.
12             THE COURT:  I've decided that breaking for lunch
13   doesn't really help that much when you've only got a couple
14   hours in the afternoon.
15             So we work through and we keep rolling.
16             MR. MARGOLIS:  Typically what happens after lunch they
17   don't remember half of that stuff.
18             THE COURT:  Maybe.
19             MR. MARGOLIS:  So I think I commend the Court for that
20   decision.
21             THE COURT:  I like starting early, too, and I'm
22   amazed at how timely jurors are.
23             I finished a trial, I think -- when was that?  That
24   was -- I think it was earlier this month we started a trial.
25   Yeah.  It was on January 7th, and it went about a week and a

1  half and the one day that it snowed real bad, one of the jurors
2  was late, but every other day, they were timely.  We moved the
3  case, and they decided it pretty quickly, too.
4          Okay.  Any other questions like that?
5          MR. MARGOLIS:  Not from us.
6          THE COURT:  Okay.
7          MR. MCLAUGHLIN:  No, your Honor.
8          THE COURT:  So, we'll issue a scheduling order
9  indicating the settlement conference and the trial date, and I
10 hope to get to the response to the magistrate judge's, or the
11 objections to the magistrate judge's opinion.
12         Okay.  Good enough.
13         MR. MARGOLIS:  Thank you, judge.
14         THE COURT:  We will be in recess.
15         MR. CROSS:  Thank you, your Honor.
16         MR. NEWMAN:  Thank you, your Honor.
17         THE LAW CLERK:  All rise.  Court is now in recess.
18    (At 12:27 p.m. proceedings concluded)

C E R T I F I C A T E

I, Merilyn J. Jones, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages 1-20 inclusive, comprise a full, true and correct transcript taken in the matter of Kochise Jackson versus Corizon Health, Inc., et al, 19-cv-13382 on Friday, January 31, 2025.

/s/Merilyn J. Jones
Merilyn J. Jones, CSR 0935, RPR
Federal Official Reporter
231 W. Lafayette Boulevard
Detroit, Michigan 48226

Date: February 24, 2025