## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

      Plaintiff,

v.

CHS TX, INC., et al.,

      Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## DEFENDANTS CHS TX, INC. AND KEITH PAPENDICK, M.D.'S EMERGENCY MOTION PURSUANT TO FED. R. CIV. P. 16(b)(4) TO CONTINUE THE AUGUST 18, 2025 TRIAL DATE

Defendants CHS TX, Inc. ("CHS") and Keith Papendick, M.D., by and through counsel,  pursuant to Fed. R. Civ. P. 16(b)(4), LR 40.02 and in accordance with LR 7.1, move this Honorable Court for an Emergency Order to continue the August 18, 2025 trial date of this case for a period of no less than six months in light of two separate substantive legal issues that arose in the last week, or such other time thereafter as would be convenient for the Court.  As set forth more fully in the accompanying Memorandum of Law, good cause exists for this modification of the Court's Amended Scheduling Order because:

1.    Last week, Plaintiff's counsel disclosed *for the first time* that Plaintiff has been undergoing treatment at Henry Ford Hospital for gastrointestinal issues

*since last summer* and that he was diagnosed *nine months ago* with ulcerative colitis, a serious, chronic disease of the colon.  This core medical issues in this case are about the Plaintiff's colon, and Defendants have a right to know how these previously undisclosed medical issues may impact its case.  Defendants require additional time to complete the required investigation, discovery, and expert review; and

2.     A significant jurisdictional and standing issue *in this case* is currently the subject of a June 28, 2025 motion in the Bankruptcy Court that will not even be fully briefed for another three weeks.  There is no way to know when the Bankruptcy Court will decide this issue, which directly impacts the evidence and arguments that Plaintiff can introduce at trial relating to CHS and Corizon Health, Inc.

Good cause exists because these are both substantive legal issues, CHS has timely raised both issues and not previously asked for a continuance for any reason, and as the Memo of Law explains, Plaintiff cannot claim prejudice because Plaintiff is the reason these issues exist.

Pursuant to LR 7.1, the undersigned counsel certifies that on June 27, 2025, the parties met and conferred about potentially moving the trial date out for six months so both sides could obtain new medical records of Plaintiff and conduct discovery. Plaintiff did not agree to a stipulation.

Accordingly, Defendants CHS TX, Inc. and Keith Papendick, M.D.

respectfully request that this Court enter an Emergency Order in the form provided, continuing the scheduled August 18, 2025 trial of this case for a period of no less than six months, or until such time as the parties reasonably agree that the pre-trial requirements and trial can be rescheduled.

Dated:  June 30, 2025                      Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:    /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
Attorneys for Defendant CHS TX, Inc.,
d/b/a YesCare and Keith Papendick, M.D.
101 W. Big Beaver Road., Suite 1100 Troy,
MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
Attorneys for Defendants CHS TX, Inc.,
d/b/a YesCare and Keith Papendick, M.D.
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

Plaintiff,

v.

CHS TX, INC., et al.,

Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**DEFENDANTS CHS TX, INC. AND KEITH PAPENDICK, M.D.'S**
**BRIEF IN SUPPORT OF ITS EMERGENCY MOTION TO CONTINUE**
**THE AUGUST 18, 2025 TRIAL DATE**

32087001

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF ISSUES PRESENTED............................................... iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..............................v

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND....................................................................2

    A.    Plaintiff's Failure to Disclose Plaintiff's Colon Disease
or Treatment ..........................................................................2

    B.    The Bankruptcy Court Needs to Decide a Jurisdictional
Issue in This Case...................................................................4

ARGUMENT .......................................................................................5

    I.    Good Cause Exists to Continue The Trial Date Based On
The Need For Discovery Into Plaintiff's Previously
Undisclosed Colon Condition ..............................................5

    II.    Good Cause Exists to Continue The Trial Date Based On
The Need For the Bankruptcy Court to Resolve
Jurisdictional Issues Well Before Trial .................................9

CONCLUSION ...................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),*
    714 F.2d 1266 (5th Cir. 1983)................................................................... 11, 12

*Anstead v Virginia Mason Med Ctr,*
    No. 221CV00447JCCJRC, 2022 WL 10404496 (WD Wash, October 18, 2022)........ 6, 9

*Brooks v Caterpillar Glob. Mining Am, Inc,*
    No. 4:14-CV-00022-JHM, 2017 WL 1424804 (WD Ky, April 20, 2017)...................... 7

*FW/PBS, Inc v City of Dallas,*
    493 US 215; 110 S Ct 596; 107 L Ed 2d 603 (1990)......................................... 11

*Howard v. J&B. Hauling, Inc., et al.,*
    No. 22-993, 2024 WL 912491 (E.D. La. Mar. 4, 2024)............................... 6, 7

*In re Educators Gr. Health Trust,*
    25 F.3d 1281 (5th Cir. 1994).................................................................... 12

*In re Moore,*
    608 F3d 253 (CA 5, 2010).......................................................................... 12

*In re Schimmelpenninck,*
    183 F3d 347 (CA 5, 1999)........................................................................... 12

*Inge v Rock Fin Corp,*
    281 F3d 613 (CA 6, 2002) ........................................................................... 8

*S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition),*
    817 F.2d 1142 (5th Cir. 1987) ................................................................... 12

*United States v Hays,*
    515 US 737; 115 S Ct 2431; 132 L Ed 2d 635 (1995)...................................... 10

*Uselmann v Pop,*
    No. 19-13652, 2024 WL 4235468 (ED Mich, September 19, 2024) .......................... 8, 9

## Statutes

11 USCA 541(a)(1) (West) ........................................................................... 11

## Rules

Fed. R. Civ. P. 16(b)(4)................................................................................. 6

## <u>STATEMENT OF ISSUES PRESENTED</u>

Whether CHS TX, Inc. and Keith Papendick, M.D.'s emergency motion to adjourn the trial for six months should be granted?

       CHS TX, Inc.'s Answer:           Yes

       Keith Papendick, M.D.'s Answer:     Yes

       Plaintiff's Answer:              No

       The Court should Answer:         Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

- *Brooks v Caterpillar Glob. Mining Am, Inc*, No. 4:14-cv-00022-JHM, 2017 WL 1424804 (WD Ky, April 20, 2017)

- Fed. R. Civ. P. 16(b)(4)

- E.D. Michigan Local Rule 40.2

- E.D. Michigan Local Rule 7.1

# INTRODUCTION

Defendants request that the Court continue the August 18, 2025 trial date for six months because of two material, substantive legal issues that arose in the last week, including (1) Plaintiff's informing Defendants on June 25, 2025, for the first time, that Plaintiff has been treating for GI issues and a serious, chronic colon disease *since last summer*, and (2) a significant jurisdictional and standing issue *in this case* that is currently the subject of a June 28, 2025 motion by Plaintiff in the Bankruptcy Court that will not even be fully briefed for another three weeks.  Good cause exists for this request pursuant to Fed. R. Civ. P. 16(b)(4) because either and both of these issues make proceeding on the current date impossible and fundamentally unfair, CHS has not previously requested a continuance, and Plaintiff cannot be prejudiced because both of these issues are their own doing.  Accordingly, for good cause established by the reasons discussed further below, and pursuant to Fed. R. Civ. P. 16(b)(4), Defendants move for an Emergency Order continuing the upcoming August 18, 2025 trial date for a minimum of six months, to allow them to accomplish the necessary investigation, discovery and expert review this new medical information requires and to allow the Bankruptcy Court time to rule on the pending jurisdictional issues.

## FACTUAL BACKGROUND

**A.      Plaintiff's Failure to Disclose Plaintiff's Colon Disease or Treatment**

As the Court is aware, this case involves allegations that Defendants Corizon Health, Inc. ("Corizon") and Keith Papendick, M.D. violated Plaintiff's constitutional rights by not approving his request for a surgical reversal of his colostomy in April of 2017.  Plaintiff had the colostomy in the first place because of a diseased colon.  The Court last held a status conference on May 5, 2025, which was the first appearance after the Court added CHS as a defendant in this case and the first where CHS's current counsel appeared.   At the conference, the Court set out an Amended Scheduling Order providing that the parties must submit motions *in limine* by July 30, 2025 and that trial will begin on August 18, 2025.  Amended Scheduling Order dated May 6, 2025, ECF No. 119.

Although Defendants now know that Plaintiff had been treating for a serious, chronic colon disease since at least the summer prior to conference, Plaintiff failed to disclose this medical condition or treatment to Defendants prior to the May 5 conference—and not even until this week.  Five years ago, in 2020, Corizon and Dr. Papendick served Plaintiff with their First Set of Interrogatories and Request for Production of Documents.  Interrogatory No. 1 sought the identities of all medical providers who provided Plaintiff with any type of medical care from the year 2000 through the present.  *See* **Exhibit A**, Defendants Corizon Health, Inc. and Keith

Papendick, M.D.'s First Set of Interrogatories and Request for Production of Documents to Plaintiff.  Plaintiff responded to Defendants' discovery requests on November 9, 2020.  *See* **Exhibit B**, Plaintiff's Response to Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s First Set of Interrogatories and Request for Production of Documents to Plaintiff.  In the almost-five ensuing years, notwithstanding his ongoing duty to supplement his responses, Plaintiff never provided additional information in response to Interrogatory No. 1, or otherwise served Defendants will any information about Plaintiff's medical condition.

On June 24, 2025, counsel for CHS TX, Inc. and Dr. Papendick emailed Plaintiff's counsel with the following request: "Pursuant to your duty to supplement your responses, please provide us with the identities of any additional medical providers or facilities that have treated Plaintiff for any gastrointestinal issue, illness, disorder, or concern since . . . you responded to the Interrogatories."  *See* **Exhibit C**, Email from Rachel Weil, Esq. to counsel for Plaintiff dated June 24, 2025.  Plaintiff's counsel responded the next day, July 25, stating, "Mr. Jackson tells me he has treated at Henry Ford Hospital – Gastroenterology since last summer.  He is being treated by Cheryl Casico, NP.  He also saw Dr. Tingting Xiong at Henry Ford [Hospital] for a colonoscopy in October of 2024.  His complaints were abdominal cramping and bloody stool, and he was diagnosed with ulcerative colitis.  We have not obtained the medical records for the Henry Ford treatment."  *See* **Exhibit D**, Email from Ian Cross

to Rachel Weil dated June 25, 2025.

Ulcerative colitis is a severe, chronic, autoimmune disease of the colon.  It can significantly affect the life of a patient who suffers from it.[1]  It is facially obvious that the diagnosis, course, and treatment of this colon disease has potential implications for both liability and damages in this case.  Because Plaintiff failed to disclose this information to Defendants, Defendants do not possess any records of Plaintiff's medical treatment since (at least) last summer, have not deposed any of the treating physicians, have not had an opportunity to depose Plaintiff about these issues and potentially any other relevant medical care that remains undisclosed over the last five years, have not had their experts review this newly-learned information, and have been unable to assess how this information may impact Plaintiff's case or any defenses.  Defendants cannot possibly complete these tasks in the six weeks remaining before trial – indeed, record collection alone may take longer than that – and they will suffer significant and irreparable prejudice if they are not afforded the time they need to complete this investigation and discovery.

**B.**   **The Bankruptcy Court Needs to Decide a Jurisdictional Issue in This Case**

A substantial jurisdictional issue related to the *In re Tehum Care Services,*

---

[1]https://www.thisislivingwithuc.com/?cmp=170311080361&utm_source=MICRO SOFT&utm_medium=paidsearch&pid=Condition&utm_term=Ulcerative%20Colit is%20Info&network=o&gclid=650f97b948f111e5d24fffe7a8b53de5&gclsrc=3p.d s&msclkid=650f97b948f111e5d24fffe7a8b53de5

*Inc.* (fka Corizon Health Inc.) bankruptcy has arisen related to Plaintiff's lack of standing to hold Defendant CHS liable for Defendant Corizon's conduct based on arguments sounding in fraud, alter ego, and veil piercing—claims that belong to the Debtor's estate, not Plaintiff.  The Bankruptcy Court retained exclusive jurisdiction to hear and decide this issue as it arises out of the now-confirmed Bankruptcy Plan. Defendants initiated a meet and confer via an email on June 18, 2025, see **Exhibit E** (Masin email to Plaintiff's counsel) in an effort to obtain a stipulation that would avoid this issue impacting the trial.  On a subsequent phone call, Plaintiff stated their intent to pursue these theories at trial despite their lack of standing.  On June 27, 2025, Plaintiff filed a motion in the Bankruptcy Court to seek resolution of this issue (Defendants were about to do the same).  Although Plaintiff asked the Bankruptcy Court to decide this issue by July 18, there is no way to predict when the Court will rule on the issue.  Current pre-trial deadlines start on July 30 and the pre-trial conference is currently set on August 5.  There is no way the parties can prepare for pre-trial deadlines or trial without knowing what evidence and arguments can be made as to CHS's potential liability for Corizon's actions.

## **ARGUMENT**

### I.    **Good Cause Exists to Continue The Trial Date Based On The Need For Discovery Into Plaintiff's Previously Undisclosed Colon Condition**

Defendants—and the Court—were completely unaware that Plaintiff had been treating for a serious, chronic colon disease for the better part of the prior year

when the Court set the current schedule at the May 5, 2025 status conference. Had Plaintiff disclosed that fact prior to the conference (or until now), Defendants and the Court obviously would have taken that into consideration when deciding when the case might be trial ready. Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) "[T]he discovery of new evidence . . . is an archetypical example of a matter" establishing good cause for modification of a scheduling order. *Anstead v Virginia Mason Med Ctr*, No. 221CV00447JCCJRC, 2022 WL 10404496, at *2 (WD Wash, October 18, 2022) (internal punctuation and citation omitted). Specifically, when new medical evidence is disclosed in a case involving the plaintiff's medical condition, courts routinely extend deadlines, including trial dates, to permit the extensive investigation and discovery such newly-discovered evidence demands.

In *Howard v. J&B. Hauling, Inc., et al*., No. 22-993, 2024 WL 912491 (E.D. La. Mar. 4, 2024), for example, Plaintiff's counsel informed Defendants, shortly before trial, of Plaintiff's new medical diagnosis. The Court extended the trial date, holding:

> Plaintiff's untimely disclosure of Dr. Oberlander's new diagnosis and surgery recommendation days before the March 4, 2024 trial is not harmless, as Defendants will be prejudiced from the inability to evaluate this new evidence and prepare a defense. . .. Defendants will require additional time for their medical experts to evaluate these new opinions and potentially depose Dr. Oberlander ahead of trial. A

continuance of the trial date in this matter and a re-opening of discovery
to allow the parties to conduct discovery related to medical damages
will cure the prejudice Defendants face.

*Howard*, 2024 WL 912491, at *2.  That is precisely the situation here.

Similarly, in *Brooks v Caterpillar Glob. Mining Am, Inc*, No. 4:14-CV-00022-

JHM, 2017 WL 1424804 (WD Ky, April 20, 2017), Plaintiffs supplemented their

discovery responses, long after the close of discovery, with information that

implicated the plaintiff's medical condition.   At the same time, they disclosed

supplemental expert opinions considering the information.   The court commented:

> The Court appreciates that the [plaintiffs] want to proceed to trial on
> May 22, 2017. However, the [plaintiffs' last minute supplementations
> have substantially increased the amount of damages they are claiming.
> Clearly, CGMA will be unduly prejudiced if it proceeds to trial without
> having an adequate opportunity to conduct discovery related to the
> supplementations as well as have its own experts prepare responses to
> the supplemental opinions issued by the Brooks' experts.

*Brooks*, 2017 WL 1424804, at *3.  The court acknowledged that defendant would

require, *inter alia*, a medical examination and supplemental deposition of the

plaintiff, depositions of medical providers, and depositions of Plaintiffs' experts.  *Id.*

The court concluded, "Clearly, the appropriate remedy is to continue the trial date

and establish new scheduling order deadlines that will allow the parties adequate

time to accomplish these tasks."  *Id.* at 4.

Plaintiff's belated disclosure has created identical requirements for

Defendants here.  As they state in their email, Plaintiff's attorneys do not have – and

so cannot provide – the records of Plaintiff's ulcerative colitis diagnosis and his treatment to date for this serious disease. Defendants must collect these records themselves, identify and depose medical providers, provide all relevant information to their experts, possibly schedule an updated deposition and IME of Plaintiff, serve supplemental expert reports, and contemplate any rebuttal expert testimony served by Plaintiff. This information has implications for motions *in limine* addressed to expert testimony, evidentiary issues, and each element of Plaintiff's claims and any defenses. In sum, Plaintiff's year-long treatment and ulcerative colitis diagnosis, just revealed to Defendants, requires investigation, written discovery, depositions, and supplemental expert opinions that cannot be accomplished for many months, much less before the deadlines running up to the August 18, 2025 trial date.

This Court has emphasized that "the primary measure of good cause is the moving party's diligence in attempting to comply with the court's scheduling order." *Uselmann v Pop*, No. 19-13652, 2024 WL 4235468, at *2 (ED Mich, September 19, 2024) (Drain, J.) (internal punctuation omitted), *citing Inge v Rock Fin Corp*, 281 F3d 613, 625 (CA 6, 2002). In this case, present counsel for CHS and Dr. Papendick only assumed these representations in April 2025. *See* Appearance of Sunny Rehsi dated April 4, 2025, ECF No. 117. Since that time, counsel have worked diligently to analyze the file in advance of the May 5 conference, have taken three depositions of Plaintiff's since-disclosed so-called "non-retained experts," prepared for the

upcoming facilitation on July 7, addressed deficiencies (like Plaintiff's failure to supplement his discovery responses), and the standing issue discussed herein. Defendants are filing this Motion only days after Plaintiff's late disclosure.  *See Anstead*, 2022 WL 10404496, at *2 ("[D]efendants acted diligently in bringing this motion less than one month after it *[sic]* obtained the evidence purporting to support the amendments to its answer and counterclaims.").

Finally, this Court has noted that "another relevant consideration," in the 'good cause' analysis, "is possible prejudice to the party opposing the modification." *Uselmann*, 2024 WL 4235468, at *2 (citation omitted).   Plaintiff cannot claim prejudice here because the failure to disclose these facts is their own fault.  Plaintiff will also surely want to know information that they do not know themselves because they do not have the medical records.  Accordingly, Defendants request a six month continuance so the parties can conduct discovery related to this newly disclosed, facially relevant medical information, and conduct all other normal pre-trial litigation related to this discovery.

## II. Good Cause Exists to Continue The Trial Date Based On The Need For the Bankruptcy Court to Resolve Jurisdictional Issues Well Before Trial

As the Court is aware, CHS is a party to this case because the Court held before the Plan became effective that CHS is a "mere continuation" of Corizon (l/k/a

Tehum Care Services, Inc, the "Debtor") under Michigan law.[2]  However, Plaintiff never amended his Complaint to assert any allegations or claims against CHS.  As such, six weeks before trial CHS has no clear way of knowing what theories or claims that it may have to defend itself against at trial.[3]  That is why Defendants asked Plaintiff to stipulate that they would not be introducing evidence or argument relating to theories that they do not have standing to pursue.[4]  This case plainly cannot conclude pre-trial procedures or proceed to trial until the Bankruptcy Court resolves this issue both because standing is a jurisdictional issue, and the outcome of this motion impacts what evidence and arguments can be made at trial.  *United*

---

[2]   The Plan expressly preserved CHS's ability to challenge a claim of "successor liability" as discussed in the Plan, Art. IX.K.

[3]   CHS raised this issue at the May 5 status conference, where the Court in an oral ruling denied CHS's request that Plaintiff file an Amended Complaint to conform with the Court's Rule 25(c) holding, denied CHS any discovery, and denied CHS the ability to file a summary judgment motion.  CHS is not aware of any Rule or procedure under the Federal Rules of Civil Procedure that compels a defendant to trial based on a Complaint that contains no allegations against it and which allows no ability for the defendant to challenge the legal merit of the claims brought against it after it is added as a new party.  Notably, Corizon itself cannot be tried because of a permanent injunction, so this is not a situation where CHS is merely "riding along" as Corizon defends itself.  Counsel for CHS does not and cannot represent Corizon.  CHS reserves all due process arguments it has about this situation, but this dispute demonstrates how the lack of a Complaint setting forth allegations against CHS causes problems that would not otherwise arise.

[4]   Because CHS is already a party under a "mere continuation" theory, this evidence and argument should also be excluded as not relevant under Fed. R. Evid. 401 and because it is substantially more prejudicial than probative under Fed. R. Evid. 403.  CHS cannot possibly by liable to Plaintiff directly.  The only reason Plaintiff would want to introduce evidence and argue that CHS was involved in a fraud or abuse of the corporate form related to the Divisional Merger is to impugn CHS's reputation before the jury on matters that are not relevant to Plaintiff's constitutional claims against Corizon.  If the Court precludes Plaintiff from introducing this evidence and argument under Fed. R. Evid. 401 and 402, then the issue before the Bankruptcy Court becomes moot.

*States v Hays*, 515 US 737, 742; 115 S Ct 2431; 132 L Ed 2d 635 (1995); *see also FW/PBS, Inc v City of Dallas*, 493 US 215, 230–31; 110 S Ct 596; 107 L Ed 2d 603 (1990) ("standing is perhaps the most important of the jurisdictional doctrines"). The Bankruptcy Court unambiguously retained "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan." *See* **Exhibit F,** Plan, Art. XII.A.[5]

As Defendants will shortly explain in the Bankruptcy Court, Plaintiff does not have standing to assert that CHS can be liable for Corizon's acts based on fraud, alter ego, veil piercing, or similar claims contesting the property of the Divisional Merger involving Corizon because they are "Estate Causes of Action" that belong to the Debtor's Estate (now, the GUC Trustee under the effective Plan). The filing of a bankruptcy petition creates the estate that is comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USCA 541(a)(1) (West). The phrase "all legal or equitable interests of the debtor in property" has been construed broadly and includes "rights of action" such as claims based on state or federal law. *See Am. Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th

---

[5] By Order dated March 3, 2025 (Bankr. SD Tex. Doc. No. 2014), the Bankruptcy Court confirmed the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors and Debtor (the "Plan") in the bankruptcy proceeding styled as *In re Tehum Care Services, Inc.*, Case No. 23-90086 (CML) venued in the United States Bankruptcy Court for the Southern District of Texas (Houston Division).

Cir. 1983).   The bankruptcy trustee has exclusive standing to assert claims that belong to the bankruptcy estate.  *See In re Educators Gr. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994).

Alter ego, fraudulent transfer, veil piercing, and similar theories that contest the propriety of pre-Petition transactions involving the division of corporate assets and liabilities (e.g., the Divisional Merger involving CHS and the Debtor) are actions that belong to the debtor's estate because they assert a generalized injury to the debtor's estate that ultimately affects all creditors and are not actions that only affect that creditor at issue personally.  *See In re Schimmelpenninck*, 183 F3d 347, 358 (CA 5, 1999); *In re Moore*, 608 F3d 253, 258–59 (CA 5, 2010).  These are claims that "the debtor could have raised the claim as of the commencement of the case."  *In re Educators*, 25 F.3d at 1284 (5th Cir. 1994) (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142 (5th Cir. 1987); *In re MortgageAmerica Corp*, 714 F2d at 1275–77.  Thus, "[i]f a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Matter of Educators Group Health Trust*, 25 F3d at 1284 (citations omitted).

Consistent with the precedent, the Plan defines "Estate Causes of Action" as:

> (a) Causes of Action that prior to the Petition Date could have been asserted by the Debtor on its own behalf under applicable state law, including Causes of Action seeking to impose liability based on *(i) the doctrine of successor liability*, *__or__* (ii) the doctrines of alter ego or veil piercing; (b) Causes of Action that seek to impose liability for a Claim against the Debtor on any non-Debtor based on a theory of liability that is not specific to one or more particular creditors and is common to all creditors of the Debtor and can be asserted by the Debtor under applicable state law; and (c) all other Causes of Action that are property of the Estate under the Bankruptcy Code, including any other form of derivative or vicarious liability for liabilities of the Debtor.

Thus, the Plan expressly separates, distinguishes, and treats differently, on one hand, "the doctrine of successor liability," and on the other hand, "the doctrines of alter ego and veil piercing" and claims that are common to all creditors (and "all other Causes of Action that are Property of the Estate…").  This distinction is important. Holders of a Class 7 Opt-Out PI/WD Claim like Plaintiff can proceed "based on the doctrine of successor liability" but are otherwise not permitted to assert "Estate Causes of Action."  Plan, Art. III.F.5(a).  That means they cannot assert alter ego, veil piercing, fraud, or other claims against the Debtor that are common to all creditors.  Indeed, these Causes of Action are all expressly part of the Estate Release resulting from the Estate Party Settlement.  Plan, Art. IV.7.

Plaintiff's argument before the Bankruptcy Court appears to be that Michigan law includes fraud and lack of consideration theories under a broad "successor liability" rubric.  This argument puts nomenclature over substance.  It is also

irrelevant to the disposition of this issue.  *The Plan* controls the definition of Estate Causes of Action and makes the express distinctions between "successor liability" and fraud or abuse of corporate form-based theories discussed above.  In any event, Texas law—not Michigan law—expressly applies to the "rights, obligations, construction, and implementation" of the Plan.  Plan, Art. I.D.  If Texas law applies to the meaning of "successor liability" as used in the Plan, the only "successor liability" theory available to Plaintiff is "express assumption of the risk" because that is the only successor liability theory that Texas recognizes.

Defendants note that although the Plaintiff's motion in the Bankruptcy Court was directed at CHS, the successor to the Debtor's Trustee (the GUC Trustee) is the entity that owns the Estate Causes of Action.   Plaintiff did not formally serve the GUC Trustee with the motion, and the Trustee may also move to intervene to protect their rights.  Plaintiff asked for a decision from the Bankruptcy Court by July 18, 2025, but obviously cannot compel the Bankruptcy Court to rule within a given time. The Bankruptcy Court has multiple hearings on other complex motions set prior to July 18, including motions that CHS and Plaintiff's counsel is involved with in other cases.

As such, we are six weeks before a scheduled trial, only four weeks until motions *in limine* and other critical pre-trial deadlines arise, the parties cannot know when the Bankruptcy Court will decide this issue, and because Plaintiff is trying to

pursue these arguments CHS still does not even know what claims or evidence it has to defend against.  It is not possible to finalize pre-trial procedures by July 30, to have a final pre-trial conference on August 5, or to start trial on August 18 under these circumstances.

This issue by itself should be sufficient to continue the trial date.  Coupled with Plaintiff's failure to disclose a years' worth of relevant medical records and the necessary discovery that entails, it should be clear that this case needs time before there can be a fair trial.  CHS's request for a continuance is reasonable, timely, and based on the need to deal with these recent substantive legal events.  CHS has not moved to continue the trial date previously.  Plaintiff cannot claim any prejudice from a continuance because the present issues are their own doing, and it is in everyone's interest that these issues are resolved before a trial.

## CONCLUSION

Defendants have demonstrated good cause to continue the trial date under Fed. R. Civ. P. 16(b)(4).  Accordingly, Defendants CHS TX, Inc. and Keith Papendick, M.D. respectfully request that this Court enter an Emergency Order in the form provided, continuing the scheduled August 18, 2025 trial of this case for a period of no less than six months, or until such time as the parties reasonably agree that the pre-trial requirements and trial can be rescheduled.

Dated:  June 30, 2025                    Respectfully submitted,

                                             **BOWMAN AND BROOKE LLP**

By:     /s/*Sunny Rehsi*
                   Sunny Rehsi (P80611)
                   Attorneys for Defendant CHS TX, Inc.,
                   d/b/a YesCare and Keith Papendick, M.D.
                   101 W. Big Beaver Road., Suite 1100 Troy,
                   MI 48084
                   248.205.3300
                   sunny.rehsi@bowmanandbrooke.com

                   Adam Masin (Admitted 5/1/2025)
                   Attorneys for Defendants CHS TX, Inc.,
                   d/b/a YesCare and Keith Papendick, M.D.
                   750 Lexington Avenue
                   New York, NY 10022
                   646.914.6790
                   adam.masin@bowmanandbrooke.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on June 30, 2025, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Thomas G. Hackney** (P81283)
Hackney Odlum & Dardas
Michigan
Attorneys for Keith Papendick
Bayview Professional Center
10850 E. Traverse Hwy., Suite 4440
Traverse City, MI 49684
231.642.5056
thackney@hodlawyers.com

**Jonathan R. Marko** (P72450
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

### BOWMAN AND BROOKE LLP

By:    /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
Attorneys for Defendant CHS TX, Inc., d/b/a YesCare Corp.
101 W. Big Beaver Road., Suite 1100
Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
Attorneys for Defendant CHS TX, Inc., d/b/a YesCare Corp.
750 Lexington Avenue

New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

18