# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KOHCHISE JACKSON,

                Plaintiff,

v.

CHS TX, INC., et al.,

                Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM ARGUING THAT DEFENDANTS' HAVE LIABILITY AFTER THE <u>MDOC DENIED HIS STEP II GRIEVANCE ON JUNE 8, 2017</u>**

32198142

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES ..................................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................v

INTRODUCTION ...........................................................................1

FACTUAL BACKGROUND.................................................................2

    A. Corizon's Medical Evaluation of Plaintiff Prior to April 19, 2017
    ...........................................................................................2

    B. The MDOC Denies Plaintiff's Grievances Related to Dr. Papendick's April 19, 2017 Decision .................................3

ARGUMENT ................................................................................7

CONCLUSION .............................................................................11

[PROPOSED] ORDER ON DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM ARGUING THAT DEFENDANTS' HAVE LIABILITY AFTER THE MDOC DENIED HIS STEP III GRIEVANCE ON OCTOBER 13, 2017 ...................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alman v. Reed*,
   703 F.3d 887 (6th Cir. 2013) ................................................................8

*Braswell v. Corr. Corp. of Am.*,
   419 F. App'x 622 (6th Cir. 2011)..........................................................8

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808 (1985)..............................................................................9

*Dixon v. Burke Cnty.*,
   303 F.3d 1271 (11th Cir. 2002) .........................................................10

*Filarsky v. Delia*,
   566 U.S. 377 (2012)..............................................................................9

*Jackson v. City of Cleveland*,
   925 F.3d 793 (6th Cir. 2019) ................................................................8

*Johnson v. Corr. Corp. of Am.*,
   26 F. App'x 386 (6th Cir. 2001)............................................................8

*Mann v. Helmig*,
   289 F. App'x 845 (6th Cir. 2008)..........................................................9

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)..............................................................................8

*Napper v. Hankison*,
   617 F. Supp. 3d 703 (W.D. Ky. 2022)..................................................9

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
   501 F.3d 592 (6th Cir. 2007) .........................................................9, 10

*Thomas v. City of Chattanooga*,
   398 F.3d 426 (6th Cir. 2005) ................................................................8

Rules

Fed. R. Evid. 401, 402, and 403.................................................................1

## <u>STATEMENT OF ISSUES</u>

1. **Whether the Court should preclude Plaintiff from arguing that Defendants have liability after the MDOC denied his Step II Grievance on June 8, 2017, and limit the period of alleged damages from Dr. Papendick's decision on April 19, 2017 to June 8, 2017?**

   Defendants' Answer:  Yes.

   Plaintiff May Answer: No.

   The Court Should Answer:  Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- Fed. R. Evid. 401

- Fed. R. Evid. 402

- Fed. R. Evid. 403

- *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)

- *Johnson v. Corr. Corp. of Am.,* 26 F. App'x 386, 388 (6th Cir. 2001)

- *Braswell v. Corr. Corp. of Am.,* 419 F. App'x 622, 627 (6th Cir. 2011)

- *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)

- *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019)

- *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)

- *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985)

- *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007)

- *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008)

- *Filarsky v. Delia,* 566 U.S. 377, 389 (2012)

- *Napper v. Hankison,* 617 F. Supp. 3d 703, 730 (W.D. Ky. 2022)

## **INTRODUCTION**

Pursuant to Federal Rules of Evidence 401, 402, and 403, and the additional authority cited herein, Defendants CHS TX, Inc. ("CHS") and Dr. Keith Papendick (collectively "Defendants"), by and through counsel, move *in limine* to preclude Plaintiff from offering any testimony, evidence, opinions, or argument that Defendants have liability to Plaintiff for conditions or events after the MDOC denied his Step II Grievance Appeal on June 8, 2017.  The MDOC's decision denying his Step II Grievance was expressly based on ***MDOC's own policy***, and not any alleged Corizon policy or Dr. Papendick's decision, and became final when the MDOC denied his Step III Grievance.  The MDOC's imposition of its own policy therefore ***breaks the causal chain*** related to Defendants' only decision related to this matter on April 19, 2017.  Plaintiff never filed a new request that went before Corizon or a new grievance arguing some new basis for why his desired surgery was medically necessary.

The Court should therefore limit the alleged period of damages from the date of Dr. Papendick's decision on April 19, 2017 to the MDOC's denial of the Stage II Grievance on June 8, 2017.

## FACTUAL BACKGROUND

### A. Corizon's Medical Evaluation of Plaintiff Prior to April 19, 2017

Plaintiff came under Corizon's care for the first time when he was transferred to the MDOC on March 23, 2017.  Without recounting his entire pre-grievance medical history, Plaintiff was evaluated by medical providers related to his desire for a colostomy reversal surgery on March 24, 2017 (CLG_MDOC Records_0086-90), March 29, 2017 (CLG_MDOC Records_0072-73), April 3, 2017 (CLG_MDOC Records_0069-70), and April 7, 2017 (CLG_MDOC Records_0060-66).  *See* **Exhibit A**.  On April 7, 2017, he presented for medical clearance for his transfer, had an abdominal x-ray and was examined.  In addition, Ronald Drinkert, NP, reported in his medical record "No medical NECESSITY per outside documentation or from conversation w/ surgeon's office (Dr. Kansakar)."  *See* **Exhibit B** (CLG_MDOC Records_0062-66).

Plaintiff was transferred between MDOC prisons on April 12, 2017.  On April 18, 2017, Mahir Alsalman, M.D. examined Plaintiff and reported "He's currently doing well, having functional colostomy, denies abdominal pain or UTIs."  Dr. Alsalman also submitted a "407" based on Plaintiff's request for a surgical consultation for a reversal surgery.  *See* **Exhibit C** (CLG_MDOC Records_0037-38).  On April 19, 2017, based on a review of independent UptoDate medical review guidelines, his experience as a physician and the above-reported history, Defendant

Keith Papendick decided: "Medical necessity not demonstrated **at this time.** Continue to follow in on site clinic." *Id*. Dr. Papendick had no other involvement with Plaintiff's care. No other Corizon employee was ever asked to review a request for a colostomy reversal surgery for this Plaintiff.

### B. The MDOC Denies Plaintiff's Grievances Related to Dr. Papendick's April 19, 2017 Decision

The MDOC has a three-step prisoner grievance process (PD 03.02.130) that enables prisoners to challenge what they consider to be unsatisfactory conditions, including health care decisions. Step I is the initial complaint, Step II is the initial appeal, and a Step III decision is final (and serves to exhaust administrative remedies). Corizon has no authority or role in the grievance process.

Plaintiff was made aware of the decision on his 407 on April 26, 2017. *See* **Exhibit D** (CLG_MDOC Records_0033-34). Plaintiff then filed a Step I Grievance *See* **Exhibit E** (No. JCS 2017 05 0352 12D). On May 15, 2017 the MDOC denied his grievance as follows

> SUMMARY OF STEP I RESPONSE: Electronic Health Record (EHR) was reviewed. The Grievant complains that he requires a surgical procedure to reverse a colostomy. He reports that he was scheduled for the procedure while being house in the St. Clair County Jail prior to being transferred to MDOC and states, "I was told that my surgery had been cancelled because I was transferring and once I transferred that MDOC would take over and do all the paperwork for me to have the surgery." The Grievant arrived at RGC on 3/23/17. On 3/24/17 he was seen by the facility Medical Provider (MP) at RGC for intake. It is documented by the MP that the colostomy was in good status and that the Grievant, "able to complete self-care. Has a greater degree of body

image issue than other concerns." On 3/29/17 a ROBERTA-R was completed on the Grievant by healthcare because the Grievant was displaying mild anxiety. It is documented in the ROBERTA-R by the facility MP, "No urgent medical issues were reported from the surgeons office and the colostomy is functional. It is not likely that the colostomy will be reversed in the MDOC." On 4/3/17 the Grievant was seen by Mental Health (MH) provider. It is documented by the Mil provider, "He signs a consent for me to contact the proper recipient rights person on his behalf and his given a copy of it." On 4/7/17 the Grievant was seen by the MP at RGC for medical clearance. It is documented, "Continues to verbalize that ostomy was to be temporary and reversed. No medical necessity per outside documentation or from conversation w/surgeons office (Dr. Kansakar)." The Grievant received radiologic studies on 4/7/17, which showed no issues with the colostomy. On 4/12/17 the Grievant arrived at JCS and was referred to the MP by the nurse for questions regarding his colostomy. The Grievant was seen by the JCS facility MP on 4/18/17, and a request was submitted and refused/deferred for surgical consult for colostomy reversal, with indication from Lansing that is documented, "Medical necessity not demonstrated at this time. Continue to follow in on site clinic by MP." On 4/26/17 the Grievant was seen by the JCS MP to inform him of the denial of the surgical consult for colostomy reversal. It is documented that the Grievant, "Became so upset when told about the not approval consult request stating that he's planning to file a law suit." During the grievance the Grievant states, "I was approved for the surgery in January and was scheduled to have the operation on February/ 9 th . I just feel like I have been lied too." This writer also discussed with Grievant that he has the option to pay for outside medical services according to policy if he is not satisfied with the healthcare that he is receiving, but he would assume all costs incurred. Encouraged to utilize the health care request (HCR) forms to address current healthcare issues and concerns. **The Grievant has been seen on multiple occasions for his complaint. A referral for surgical consultation regarding colostomy reversal was submitted and denied based on no medical necessity documented. According to PD 03.04.100, Health Services, paragraph O, AA, and HH-MM, the Grievant has received the appropriate referrals and may request outside medical services which he would assume all costs incurred.** Grievance denied. Date of response 5/15/17.

*See* **Exhibit F**, p. 1 (ECF No. 60-8).

On June 8, 2017, the MDOC denied Plaintiff's Step II appeal. Ex. F. The MDOC official who denied the Step II appeal was Subrina Aiken, RN, the Clinical Administrative Assistance, Jackson Health Care Office Administration. The MDOC denied the Step II appeal as follows:

> SUMMARY OF STEP II INVESTIGATION: Upon investigation of the Step II appeal; the Step I response, reason for appeal, the Electronic Health Record (EHR), and policies were all reviewed, including any additional information needed was obtained as necessary to complete the response. **The Michigan Department of Corrections (MDOC) doesn't reverse colostomies unless it is medically necessary, the surgery you are requesting is non-essential. Currently documentation reflects the colostomy is functional.** While the Department is responsible for providing prisoners with necessary health services, prisoners may seek non-essential health services from outside providers at no cost or liability to the Department. Grievant is to follow OP 04.06.135 Prisoners Requesting Outside Health Sendees At Own Expense; submit HCR to HUM after obtaining information from the outside provider, including provider contact information and estimate of medical cost, for approval for outside health care at prisoner's own expense, which includes medical, transportation and custody costs. Prisoner must have adequate funds in his account to cover the cost of the health services, as well as funds to cover transportation and custody costs. If prisoner has outside insurance that will cover the cost of the medical procedure, prisoner must obtain written verification of coverage. Please review OP 04.06.135 and PD 03.04.100 Health Services; Outside Health Services at Prisoner's Expense. Grievant's allegations are not substantiated by the evidence. **Review of the evidence supports that Grievant's medical needs are being addressed. Grievant is encouraged to access health care through the kite process to address any current health care concerns**.

The Step II denial continued:

> Grievance Denied: Review of the evidence supports that Grievant's medical needs are being addressed. **Mr. Jackson, per documentation, you are doing fine with current condition, the reversal is a major surgery with potential complications up to death and <u>the Department will not ok</u> a dangerous unnecessary elective procedure, a reversal for a functional colostomy is considered non-essential. POLICY IS NO REVERSALS UNLESS there is a MEDICAL REASON.** Grievant can seek outside Services at his Own Expense, by following policy/procedures.

Ex. F, p. 1 (emphasis added).

The Step II therefore established two MDOC polices: (1) "The *Michigan Department of Corrections (MDOC)* doesn't reverse colostomies unless it is medically necessary, the surgery you are requesting is non-essential.," and (2) "*the Department* will not ok a dangerous unnecessary elective procedure, a reversal for a functional colostomy is considered non-essential." Notably, nothing in the Step II denial referred to Corizon, or any Corizon policy, or Dr. Papendick's rationale.

On October 13, 2017, the MDOC denied Plaintiff's Step III Grievance. Ex. F, p.2. The Step III denial was approved by (i) R. Harbaugh, RN of the Bureau of Health Care Services on October 19, 2017, and (ii) Richard D. Russell, Manager, Grievance Section Office of Legal Affairs, on October 25, 2017. The MDOC denied the Step III Grievance as follows:

> Grievant alleges he has been denied surgery to reverse his colostomy. All relevant information within the electronic medical record has been reviewed. **Step I and Step II appropriately addressed this grievance and are affirmed at the Step III appeal.** Grievant will continue to be monitored and treatment will be determined by a qualified Medical

Provider. A disagreement with the plan of care does not support a denial of care or inadequate medical treatment.

Thus, the MDOC affirmed its own policy.  Plaintiff remained incarcerated after October 13, 2017 until he was paroled on May 16, 2019.  *See* **Exhibit G** (CLG_MDOC Records_0168).  Plaintiff did not ever file a new Step I grievance related to his colostomy—he never claimed something new happened that caused his colostomy reversal to become "medically necessary" under MDOC policy.

## <u>ARGUMENT</u>

### <u>THE MDOC'S FINAL IMPOSITION OF ITS OWN POLICY ON JUNE 8, 2017 IS A SUPERSEDING CAUSE THAT LIMITS DEFENDANTS' POTENTIAL LIABILITY TO THE PERIOD PRIOR TO THE MDOC'S DECISION</u>

Defendants cannot be liable to Plaintiff after June 8, 2017 because any alleged constitutional deprivation after that date was due solely to (i) the MDOC's imposition of its own policy, and (ii) the fact that Plaintiff did not file a subsequent grievance claiming that a newfound "medical necessity" arose that satisfied the MDOC policy.  The issue is not merely that MDOC denied Plaintiff's grievances. The causal chain is broken in this case because in denying his grievances the MDOC imposed *its own* policy rather than enforcing any supposed Corizon policy or Dr. Papendick's rationale.  The MDOC's imposition of its own policy breaks the causal chain with Corizon and Dr. Papendick at least as of the date of the MDOC's Stage II denial, when the MDOC stated its own policy as the explicit reason for the denial.

It is easy to see why: if the MDOC determined that its own policy allowed for Plaintiff's reversal surgery despite an alleged illegal Corizon policy, then Plaintiff would have had the surgery.

Under § 1983, municipal entities are not liable for the acts of their employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Johnson v. Corr. Corp. of Am.,* 26 F. App'x 386, 388 (6th Cir. 2001). Thus, Corizon "cannot be held liable under a theory of respondeat superior" for the acts of its employees. *Braswell v. Corr. Corp. of Am.,* 419 F. App'x 622, 627 (6th Cir. 2011).

A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

As is critical here, the plaintiff must also prove causation: the challenged policy or custom must be the "moving force" behind the constitutional violation. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Alman v.*

*Reed*, 703 F.3d 887, 903 (6th Cir. 2013)).  The "moving force" requirement is a causation requirement.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985) ("§ 1983 only imposes liability for deprivations 'cause[d]' by a particular defendant") (citation omitted); *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) ("At bottom, this is a causation inquiry, requiring the plaintiff to show that it was the defendant's custom or policy that led to the complained of injury."); *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) ("'in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact.'") (citation omitted).

Proof of causation under § 1983 is subject to general tort principles.  *See Filarsky v. Delia,* 566 U.S. 377, 389 (2012) ("We read § 1983 in harmony with general principles of tort immunities and defenses.").  Causation defenses include that "an intervening act of a third party, which [causes harm] after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable [even though the first person's conduct] was a substantial factor in bringing about" the harm."  *Powers v. Hamilton Cnty. Pub. Def. Comm'n,* 501 F.3d 592, 610 (6th Cir. 2007); *Napper v. Hankison,* 617 F. Supp. 3d 703, 730 (W.D. Ky. 2022) (recognizing "superseding cause" can cut off chain of causation). There is no question that superseding municipal decisions can sever the causal chain from prior acts.  It is well-recognized, for example, that a legally erroneous judicial

order can be a superseding cause that will break the causal chain when the order results from a full presentation of the facts. *Powers,* 501 F.3d 610-611 (discussing cases).

Whatever Plaintiff may claim about a supposed Corazon policy or Dr. Papendick's decision on April 19, 2017, that decision was plainly no longer the "moving force" behind Plaintiff's inability to obtain a reversal surgery once the MDOC denied his Step II Grievance on June 8, 2017.  As of June 8, 2017, the MDOC's policy and decision-making was the moving force.  On October 13, 2017, the MDOC Step III's denial expressly "affirmed" the MDOC Step II decision that (1) "*The Michigan Department of Corrections (MDOC) doesn't* reverse colostomies unless it is medically necessary, the surgery you are requesting is non-essential.," and (2) "*the Department will not ok* a dangerous unnecessary elective procedure, a reversal for a functional colostomy is considered non-essential."  The MDOC Grievance decisions were therefore expressly based on MDOC policy and not any alleged Corizon policy or Dr. Papendick decision. *See Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002) (stating that proximate causation "does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers").  The MDOC is plainly an intervening "deliberative and autonomous decision-maker[]."

The MDOC's denial of the Step II grievance on June 8, 2017 therefore broke the causal chain between Dr. Papendick's decision and anything after that date. Corizon and Dr. Papendick were never asked to make a new decision about a reversal surgery based on new information or new circumstances after the MDOC denied the Step I Grievance, much less the Step II or III Grievances (or any time after April 19, 2017). Further, Plaintiff never submitted a new MDOC grievance contending that a new reason arose to conclude that a reversal surgery was "medically necessary" under MDOC policy.

## CONCLUSION

For the reasons explained herein, the Court should preclude Plaintiff from offering any testimony, evidence, opinions, or argument that Defendants have liability to Plaintiff for conditions or events after the MDOC denied his Step II Grievance Appeal on June 8, 2017. The Court should limit the alleged period of damages from the date of Dr. Papendick's decision on April 19, 2017 to the MDOC's denial of the Stage II Grievance on June 8, 2017.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a YesCare and Keith Papendick, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 29, 2025, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Thomas G. Hackney** (P81283)
Hackney Odlum & Dardas Michigan
Attorneys for Keith Papendick
Bayview Professional Center
10850 E. Traverse Hwy., Suite 4440
Traverse City, MI 49684
231.642.5056
thackney@hodlawyers.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
 Sunny Rehsi (P80611)
 101 W. Big Beaver Road.,
 Suite 1100 Troy, MI 48084
 248.205.3300
 sunny.rehsi@bowmanandbrooke.com

 Adam Masin (Admitted 5/1/2025)
 750 Lexington Avenue
 New York, NY 10022
 646.914.6790
 adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a YesCare and Keith Papendick, M.D.*

14

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

               Plaintiff,

v.

CHX TX, INC., et al.,

               Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## [PROPOSED] ORDER ON DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM ARGUING THAT DEFENDANTS' HAVE LIABILITY AFTER THE MDOC DENIED HIS STEP II GRIEVANCE ON JUNE 8, 2017

Upon consideration of Defendants' Motion, and any response by Plaintiff filed thereto, the Court GRANTS Defendants *motion in limine* for the reasons stated therein and Orders that Plaintiff is precluded from offering any testimony, evidence, opinions, or argument that Defendants have liability to Plaintiff after the MDOC denied his Step II Grievance Appeal on June 8, 2017.  Without ruling on the underlying merits of Plaintiff's claim, the Court holds that the relevant period for alleged damages in this case is from the date of Dr. Papendick's decision on April 19, 2017 to the MDOC's denial of the Stage II Grievance on

June 8, 2017.  The Court will so instruct the jury.  Nothing herein shall constitute an admission or waiver of any rights by any party.

To the extent Defendants objected to an exhibit on Plaintiff's Proposed Exhibit List by referring to this Motion, the Defendants' Objections are SUSTAINED for the reasons stated herein and the Exhibits are EXCLUDED from trial.


Dated:                                          _____
                                                                Hon. Gershwin A. Drain