**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

               Plaintiff,                        Case No. 19-cv-13382

-vs-                                      Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

               Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

---

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE HEARSAY STATEMENTS REPORTEDLY MADE BY AN UNIDENTIFIED SPEAKER AT DR. KANSAKAR'S OFFICE

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7-LAW
F: (313) 771-5785

MARKO LAW

NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and for his Motion in Limine to Preclude Evidence of, or Reference to, Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits, states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should grant Plaintiff's Motion in Limine to Preclude Evidence of or Reference to alleged conversations between Ronald Drinkert and an unidentified person from "Dr. Kansakar's office."

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court GRANT his Motion in Limine to Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date: July 30, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,                       Case No. 19-cv-13382

-vs-                                   Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

---

## PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE HEARSAY STATEMENTS REPORTEDLY MADE BY AN UNIDENTIFIED SPEAKER AT DR. KANSAKAR'S OFFICE

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.  Whether this Court should permit Defendants to elicit testimony from Ronald Drinkert about statements allegedly made to him by an unidentified staff person at "Dr. Kansakar's office" which Dr. Kansakar herself denies any knowledge of.

**Plaintiff states: No.**
**This Court should state: No.**

II.  Whether this Court should permit Defendants to introduce Ronald Drinkert's notes memorializing conversations he claims to have had with an unidentified staff person at "Dr. Kansakar's office" which Dr. Kansakar herself denies any knowledge of.

**Plaintiff states: No.**
**This Court should state: No.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

### <u>Federal Rules</u>

Fed. R. Evid. 803(4)

Fed. R. Evid. 803(5)

Fed. R. Evid. 803(6)

Fed. R. Evid. 805

### <u>Cases</u>

*Field v. Trigg County Hosp., Inc.*, 386 F.3d 729 (6th Cir. 2004)

*United States v. Schoenborn*, 4 F.3d 1424 (7th Cir. 1993)

*United States v. Cecil,* 615 F.3d 678 (6th Cir. 2010)

*United States v. Graham,* 47 F.4th 561, 567 (7th Cir. 2022)

## <u>INTRODUCTION AND FACTUAL BACKGROUND</u>

Plaintiff anticipates Defendants will attempt to introduce hearsay statements of an unidentified speaker affiliated with "Dr. Kansakar's office" that were purportedly made to former prison medical provider Ronald Drinkert. The statements are set forth in Mr. Drinkert's affidavit, as follows:

> On March 29, 2017 and April 5, 2017, in following up and obtaining further information regarding Mr. Jackson's care, I contacted his colostomy surgeon Dr. Kansakar's office and discussed the patient's care. During these conversations, I was advised by Dr. Kansakar's office that there were no urgent medical issues, the colostomy was functional, and there was no medical necessity for a colostomy reversal. I documented these conversations in the patient's Michigan Department of Corrections medical chart.

ECF No. 60-2, PageID.1299-1300.

Mr. Drinkert wrote two notes in Plaintiff's prison health record referring to these alleged conversations. One note, entered on March 29, 2017, reads:

> "No urgent medical issues were reported from the surgeon's office and the colostomy is functional. It is not likely that the colostomy will be reversed in the MDOC."

ECF No. 60-1, PageID.1296. The second note, entered on April 7, 2017, reads:

> "Stoma deep pink & functioning w/ soft light brown stool & no evidence of melena or hematochezia. Cont's to verbalize that 'ostomy was to be temporary & reversed. No medical NECESSITY per outside documentation or from conversation w/ surgeon's office (Dr. Kansakar)."

ECF No. 60-1, PageID.1293-1294 (emphasis in original).

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

When questioned about these notes at her deposition, Dr. Kansakar had no recollection of speaking with anyone from the prison about Mr. Jackson, and denied that she would have conveyed the opinions that Mr. Drinkert memorialized to her office staff. Dr. Kansakar testified:

> Q.      Let me try another one. Doctor, here's a note from the state prison, and near the bottom of it can you read – can you see my mouse?
>
> **A.      Yes, I do.**
>
> Q.      Now, do you see the date?
>
> **A.      That is March 29, 2017.**
>
> Q.      All right. Where it talks about no urgent medical issues were reported from the surgeon's office and the colostomy is functional, do you happen to have a recollection of maybe talking to either your office manager or somebody about this patient back on or about March 29, 2017?
>
> **A.      No. When I reviewed the medical records, I think the last office note was 1-10, and, unfortunately, I do not have any other, you know, recollection of the details.**
>
> Q.      Okay. So we'll call this one for the record Defendants' Exhibit 2. Yeah, 2.
>       So, Doctor, let me try to refresh your recollection with one more note. Doctor, let me get the date of this thing. So here's another note from the state prison.
>       Can you read that date for us?
>
> **A.      It's 4-7, 2017.**
>
> Q.      Okay. And the only place it mentions surgeon is – can you see where my mouse is and start reading there, just that sentence?

**A.     No medical necessity per outside documentation or from conversation with surgeon's office, Doctor Kansakar.**

Q.     So does that refresh your recollection that maybe you had a conversation with somebody either from the state prison or in your office?

**A.     Unfortunately, I do not.**

Q.     Okay. Nobody expects you to. This is four years ago. So if Kathy had come to you either in February, March, or April and asked you is the reversal of the colostomy medically necessary, would it be correct to say that you may have told her it's not medically necessary, its more for the preference of the patient, is that fair?

**A.     I cannot say that for sure because in my mind, you know, I want the natural route to be established for the patient.**

ECF No. 60-3, PageID.1308-1309, Dep. 25:5-27:4. Dr. Kansakar also testified:

Q.     Right, but we're allowed to ask you hypothetical questions, and we'll get a chance to ask Kathy questions and try to connect the dots.
        But at this moment, I still need to ask you that question. Would that have been something incorrect for Kathy to have told the jail or prison or whoever called and talked to her that the reversal was not medically necessary but it is a lifestyle preference?

**A.     I think I would say it is medically necessary to have the colostomy reversed for the general well-being of the patient.**

ECF No. 60-3, PageID.1310, Dep. 31:2-13.

In his affidavit, Mr. Drinkert does not claim to have spoken to Dr. Kansakar herself, and he does not identify the declarant from Dr. Kansakar's office who allegedly conveyed these medical opinions to him. Dr. Kansakar testified that,

"Kathy at that time being my office manager would have taken the lead on the communication part," ECF No. 60-3, PageID.1318, Dep. 64:19-20, and that she did not remember Kathy's last name. ECF No. 60-3, PageID.1307, Dep. 18:17-21.

The statements made by this unidentified declarant are inadmissible hearsay not within the FRE 803(4), 803(5), or 803(6) exceptions. The statements would not even be admissible if "Kathy" were present and testifying, because they amount to the medical opinions of an office staff person whom the Defendants cannot show possessed the requisite expertise to opine about Plaintiff's medical condition under FRE 702.

Defendants may argue that even if Mr. Drinkert's testimony about what the office staff person told him is inadmissible hearsay, the notes themselves should be admissible for the limited purpose of showing the effect they had on Dr. Papendick's state of mind at the time he made the decision to block Dr. Alsalman's referral to a general surgeon for colostomy reversal. But to introduce the evidence for this limited purpose, Defendants would need to first establish a foundation by presenting evidence that Dr. Papendick actually reviewed and relied on the notes when making his decision. Dr. Papendick's deposition testimony indicates that he has no memory of reviewing any of Mr. Jackson's medical records when making his decision, and that *it was unlikely that he even had access to Mr. Jackson's medical records* at the time. Dr. Papendick testified:

Q.     Okay. So what are your options in responding to a request for off-site treatment?

**A.     Approve, ATP defer, need more information. I think that's the only three.**

Q.     What is ATP?

**A.     ATP is an alternative treatment plan.**

. . .

Q.     When do you respond with need more information?

**A.     When I need more information. I do "NMI:" and tell them what I need.**

Q.     Okay. Do you look in the medical records to find more information?

**A.     I do not. Most of the time I don't have access, and anyone else, who is in the group doing my job, does not have access. So all the information must be in the request.**

ECF No. 60-4, PageID.1342-1343, Dep. 28:15-18; 29:18-30:1. It is undisputed that

Dr. Papendick's response to the request for off-site treatment for the Plaintiff was,

"ATP." ECF No. 60-1, PageID.1285-1286. Dr. Papendick did not initially request

more information from his colleagues at the prison, and there is no evidence that he

contemporaneously reviewed, or even had the ability to review, Mr. Drinkert's

notes about the alleged conversation with Dr. Kansakar's office staff. When

defense counsel brought the notes to Dr. Papendick's attention during his

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

deposition, Dr. Papendick testified that the notes "would support" his decision. ECF No. 60-4, PageID.1361, Dep. 102:23-104:7. But on redirect examination, he could not testify that he had, in fact, actually reviewed the notes prior to issuing the ATP. ECF No. 60-4, PageID.1362, Dep. 107:4-24.

## ARGUMENT

### I. The statements allegedly made by the unidentified office staff person to Ronald Drinkert are hearsay not within the FRE 803(4) exception

It is clear that the statements allegedly made by an unidentified staff person at Dr. Kansakar's office to Ronald Drinkert are hearsay. Fed. R. Evid. 801(c). Defendants may argue that they are statements "made for—and [] reasonably pertinent to—medical diagnosis or treatment" and are thus admissible under the Rule 803(4) hearsay exception.

This argument is foreclosed by binding Sixth Circuit precedent. In *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729 (6th Cir. 2004), the panel held:

> the hearsay exception set forth in Fed. R. Evid. 803(4) applies only to statements made by the one actually seeking or receiving medical treatment. Accordingly, the Vanderbilt physicians' statements-as statements made by consulting physicians to the treating physician-are not admissible pursuant to the Fed. R. Evid. 803(4) hearsay exception. *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004).[1]

---

1 The *Field* panel also found that exposing the jury to hearsay opinions about how the plaintiff's medical condition should be treated, conveyed over the phone to the plaintiff's treating physician from unidentified physicians at a different hospital, constituted reversible error despite the trial court's limiting instruction. *See Field*, 386 F.3d at 736-737.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

The statements at issue were not made by Kohchise Jackson, the person actually seeking or receiving the medical treatment, so they cannot fall within the Rule 803(4) hearsay exception.

## II. Ronald Drinkert's notes summarizing his conversations with the unidentified staff person are hearsay not within the FRE 803(5) exception and are not extrinsic evidence of a prior inconsistent statement under FRE 613

Dr. Kansakar testified that she had no recollection of conversing with anyone in her office or at the prison concerning Mr. Jackson's colostomy reversal in March or April of 2017. ECF No. 60-3, PageID.1308-1309, Dep. 25:1-26:19. Defendants might argue that the statements recorded in Plaintiff's prison medical record qualify as a "recorded recollection" of a matter that Dr. Kansakar once knew but has forgotten under Rule 803(5).

A written record of a witness's recollection is not admissible under FRE 803(5) unless it is "*shown to have been made or adopted by the witness* when the matter was fresh in the witness's memory". Fed R. Evid. 803(5)(B) (emphasis added). Here, Dr. Kansakar did not "make" the written records at issue; Mr. Drinkert did. While some courts have allowed a third-party's transcription of the witness's past statement to come into evidence under the Rule 803(5) hearsay exception, *see, e.g. United States v. Hernandez,* 333 F.3d 1168, 1178 (10th Cir. 2003), such a third-party transcription is only admissible if "each participant in the

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5765

MARKO LAW

chain testifies at trial as to the accuracy of his or her piece of the chain."
*Hernandez,* 333 F.3d at 1179. In other words, the declarant with the faulty memory
"must testify to the accuracy of his oral report to the person who recorded the
statement. The recorder must also testify to the accuracy of his transcription."
*United States v. Schoenborn*, 4 F.3d 1424, 1428 (7th Cir. 1993).

The burden is even greater here, with three people in the (alleged) chain. To
admit the notes under Rule 803(5), Dr. Kansakar would need to testify that she had
made a statement to "Kathy" the office manager, whose content she could not
remember, although she could remember that her oral statement accurately
reflected her contemporaneous personal knowledge. Kathy would then need to
testify that she accurately repeated Dr. Kansakar's oral statement to Mr. Drinkert,
and finally, Mr. Drinkert would need to testify that his transcription of Kathy's oral
statement was accurate. Defendants cannot establish that Mr. Drinkert's notes are
recorded recollections of a statement made by Dr. Kansakar. "Kathy" has never
been identified by the parties and will not be available to testify. Dr. Kansakar also
testified that she has no memory of making the purported oral statement to anyone.

For the same reasons, the notes are not admissible as extrinsic evidence of a
prior inconsistent statement under Rule 613(b). A "written summary of an
interview with a declarant cannot be used to impeach the declarant's later
testimony unless the declarant has attested to the report's accuracy." *United States*

*v. Carpenter*, 819 F.3d 880, 892 (6th Cir. 2016) (overruled on other grounds). Dr. Kansakar did not testify that Mr. Drinkert's notes were an accurate account of her prior statement. Indeed, there is no evidence in the record that Dr. Kansakar even made a prior statement, as Mr. Drinkert does not allege that he spoke with Dr. Kansakar herself rather than with some other person who worked in her office.

**III. The written summaries of the oral statements allegedly made by the unidentified office staff person to Ronald Drinkert are hearsay not within the FRE 803(6) exception**

It is anticipated that Defendants will attempt to introduce Mr. Drinkert's notes concerning his purported conversations with "Dr. Kansakar's office" under the Rule 803(6) hearsay exception. To introduce a record under Rule 803(6), five requirements must be satisfied:

**(A)** the record was made at or near the time by—or from information transmitted by—someone with knowledge;

**(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

**(C)** making the record was a regular practice of that activity;

**(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

**(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

Fed. R. Evid. 803(6). "Additionally, if the record is based on the statements of an informant rather than the first-hand observations of its author, the informant must also be acting under a business duty." *United States v. Cecil,* 615 F.3d 678, 690 (6th Cir. 2010).

Where, as here, a purported business record is a summary or transcript of the purported oral statements of a third-party declarant, "the transcript is hearsay within hearsay, and therefore needs an exception to cover both layers to be admissible[.]" *Essex Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.,* 282 Fed. Appx. 406, 411 (6th Cir. 2008) (citing *United States v. De Peri,* 778 F.2d 963, 976-77 (3rd Cir. 1985)); *see also, United States v. Yates,* 553 F.2d 518, 521 (6th Cir. 1977) (holding that "[t]he mere fact that the recordation of the third party statements is routine, taken apart from the source of the information recorded, imports no guaranty of the truth of the statements themselves."); *United States v. Goodchild*, 25 F.3d 55, 63 (1st Cir. 1994) ("the business records exception merely avoids having to call the person in the business who had the telephone conversation but does not justify admitting the statements of the outsider for their truth.").

Defendants cannot establish that Mr. Drinkert's summaries of the oral statements of an unidentified staff person at Dr. Kansakar's office concerning Plaintiff's medical condition are admissible under Rule 803(6). First, Defendants

cannot establish that the information was "transmitted by someone with knowledge." Second, they cannot establish that the outsider declarant was acting under a business duty, and third, the record in this case shows that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

The purported statements from "Dr. Kansakar's office" consist of medical opinions about Plaintiff's contemporaneous health condition, such as whether there was "medical NECESSITY" [sic] for a colostomy reversal surgery. As Defendants have not even identified the person who provided the information to Mr. Drinkert, Defendants cannot show that the source of the information was "someone with knowledge." Fed. R. Evid. 803(6)(A). "Personal knowledge is a particularly acute concern where the information involved could have been relayed through a "telephone game" involving an indeterminate train of persons with no personal involvement in the events supposedly memorialized." *United States v. Musaibli,* 577 F. Supp. 3d 609, 630 (E.D. Mich. 2021) (overruled on other grounds). There is no evidence in the record that "Kathy," or whomever Mr. Drinkert spoke to, ever provided medical treatment to Mr. Jackson, or that she had the requisite training or experience to render reliable medical opinions.

Defendants also cannot establish that the declarant who made the oral statements to Mr. Drinkert was acting pursuant to a "business duty." On this point,

*United States v. Cecil,* 615 F.3d 678 (6th Cir. 2010), is instructive. The record at issue in *Cecil* was a police report written by one officer at the Metropolitan Nashville Police Department, Officer McWright, based on information provided to him by Officer Cecil, who was also employed by the Metropolitan Nashville Police Department. The panel held that the report did not fall within the 803(6) hearsay exception. Officer Cecil was not "under a duty to report" the information to Officer McWright, because "Officer McWright was neither Cecil's supervisor nor even in the same section." *United States v. Cecil,* 615 F.3d 678, 690 (6th Cir. 2010).

In this case, the informant and the creator of the record did not even work for the same organization. There is no evidence of any business or contractual relationship between Dr. Kansakar's medical practice and Corizon which gave rise to any duty for anyone at Dr. Kansakar's office to report any information to Corizon. Under Michigan law, Dr. Kansakar also did not have a common-law duty to orally communicate accurate information to Plaintiff's then-current treating medical providers. *See Hill v. Kokosky*, 186 Mich. App. 300, 305-306 (Nov. 19, 1990); *Weaver by Weaver v. University of Mich. Bd. of Regents,* 201 Mich. App. 239, 245-249 (Aug. 16, 1993);  *NBD Bank, N.A.Trust Div. v. Barry,* 223 Mich. App. 370, 373 (May 9, 1997).

Finally, Mr. Drinkert's notes are not admissible because the source of the information and the method and circumstances of preparation indicate a lack of

trustworthiness. Fed. R. Evid. 803(6)(E). Dr. Kansakar testified that she directed "Kathy" to fax a letter she wrote concerning the Plaintiff, which said, "[m]y recommendation and standard of care for this patient is to have a barium enema x-ray via the distal rectal stump and a colostomy reversal." ECF No. 60-3, PageID.1306, Dep. 16:1-19-21. Dr. Kansakar's testimony indicates that she was of the opinion that Plaintiff should receive a colostomy reversal, and that she directed "Kathy" to communicate that opinion to third parties. Mr. Drinkert's summaries of his conversations with someone at Dr. Kansakar's office thus do not appear to accurately reflect the medical opinions that Dr. Kansakar expressed, either in her contemporaneous treatment recommendations, or in her 2021 deposition testimony. The notes are more likely to reflect the medical opinions of either "Kathy" or Mr. Drinkert than those of the physician they are supposedly ascribed to.

**IV. The written summaries of the oral statements allegedly made by the unidentified office staff person to Ronald Drinkert are not admissible to show their effect on Dr. Papendick without evidence that Dr. Papendick read and relied on the statements.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

It is anticipated that Defendants may argue that Mr. Drinkert's notes are admissible for the non-hearsay purpose of showing the effect the notes had on Dr. Papendick's state of mind at the time he made the decision to deny colostomy reversal surgery to the Plaintiff.[2] "A statement is offered to show an effect on the listener only if the listener heard and reacted to the statement, and if the "actual use" of the statement at trial was to demonstrate the listener's response." *United States v. Graham,* 47 F.4th 561, 567 (7th Cir. 2022) (internal citation omitted); *see also, United States v. Kouza,* U.S. Dist. LEXIS 181117 at *7 (E.D. Mich. Oct. 3, 2024).

Dr. Papendick's testimony at his deposition suggests that he neither saw nor relied on Mr. Drinkert's notes when making his decision. He testified that he normally does not have access to the patient's medical records, and does not communicate with his colleagues, when determining whether to approve or "ATP" a requested service. ECF No. 60-4, PageID.1342-1343, Dep. 29:21-30:5. If he needs additional information, he has to ask for it. *Id.* at 29:15-20. Dr. Papendick also testified that he does not look at the medical records if everything he needs to make his decision is contained in the request form, that everything he needed was contained in the request form in this instance, and that he had no memory of

---

2   The notes and statements are not admissible to show their effect on Mr. Drinkert's state of mind, because Mr. Drinkert is not a defendant in this case. His subjective intent when treating the Plaintiff is irrelevant.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

reviewing any documents outside of the request form when making his decision. ECF No. 60-4, PageID.1362, Dep. 107:4-24. Unless Dr. Papendick first testifies that he actually reviewed and relied on Mr. Drinkert's notes when making his decision, the notes should not be admitted for the purported non-hearsay purpose of showing their effect on Dr. Papendick's state of mind. *See United States v. Kouza,* U.S. Dist. LEXIS 181117 at *7 (E.D. Mich. Oct. 3, 2024).

## <u>CONCLUSION</u>

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court GRANT his Motion in Limine, preclude Ronald Drinkert from testifying about any phone conversations he had with anyone at Dr. Kansakar's office, order that the portions of Mr. Drinkert's notes containing hearsay from the unidentified declarant at Dr. Kansakar's office be redacted in the documents used at trial, and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date: July 30, 2025

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **July 30, 2025**, via:

☐ U.S. Mail                    ☐ Fax
☐ Hand Delivered          ☐ Overnight Carrier
☐ Certified Mail             ☐ Other:
☐ ECF System               ☐ Email

*/s/* _____

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO**LAW**