**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

               Plaintiff,                    Case No. 19-cv-13382

-vs-                                     Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

               Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## **PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM APPORTIONING FAULT ON ANY NON-PARTY**

NOW COMES Plaintiff, **KOHCHISE JACKSON**, by and through his

attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and for his

Motion in Limine to Preclude Defendants From Apportioning Fault on Any Non-Party, states as follows:

1. Trial for this matter is scheduled to begin on August 18, 2025.

2. At trial, Defendants will attempt to apportion fault and blame to the Michigan Department of Corrections by claiming that the MDOC, not Defendants, is responsible for the harm in this case, or that the MDOC otherwise supported Dr. Papendick's decision to deny Plaintiff's surgery. Defendants may also attempt to apportion blame to the dismissed Prime Healthcare defendants.

3. This evidence is irrelevant to either damages or liability, and it is highly likely to confuse the issues, mislead the jury, and create unfair prejudice. It should be excluded pursuant to FRE 401, 402, and 403.

4. The MDOC's responses to Plaintiff's prison grievances are also hearsay not within any exception, and are subject to exclusion per FRE 802.

5. In accordance with Local Rule 7.1, counsel for Plaintiff contacted counsel for the Defendants and sought concurrence in this motion. Concurrence could not be obtained.

WHEREFORE, for the reasons more fully set forth in the attached brief, Plaintiff respectfully requests this Honorable Court grant Plaintiff's Motion in Limine to Preclude Defendants From Apportioning Fault on Any Non-Party.

2

Respectfully submitted,


/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date: July 30, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

               Plaintiff,                          Case No. 19-cv-13382

-vs-                                     Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

               Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM APPORTIONING FAULT ON ANY NON-PARTY

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.      I.  Whether testimony that the MDOC maintained policies that required Dr. Papendick to deny colostomy reversal surgery to Plaintiff, or otherwise supported the denial, is relevant to any fact of consequence in determining the present action.

**Plaintiff states: No.**

**This Court should state: No.**


II.     Whether testimony or other evidence that the MDOC maintained policies that required Dr. Papendick to deny colostomy reversal surgery to Plaintiff, that the MDOC otherwise supported the denial, or that the dismissed Prime Healthcare defendants also denied the same surgery, would be likely to confuse the issues, mislead the jury, waste time, and create unfair prejudice.

**Plaintiff states: Yes.**

**This Court should state: Yes.**


III.    Whether the MDOC's responses to Plaintiff's prison grievances are hearsay not within any exception.

**Plaintiff states: Yes.**

**This Court should state: Yes.**


IV.     Whether this Court should permit Defendants to attempt to apportion fault to and/or blame at trial dismissed parties or non-parties, or reference that any dismissed parties were previously sued by Plaintiff.

**Plaintiff states: No.**

**This Court should state: No.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

### <u>Federal Rules</u>

Fed. R. Evid. 401

Fed. R. Evid. 402

Fed. R. Evid. 403

Fed. R. Evid. 802

### <u>Cases</u>

*Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 780 Fed.Appx. 197 (6th Cir. 2019)

*Weeks v. Chaboudy*, 984 F.2d 185 (6th Cir. 1993)

*Williams v. Nashville Network*, 132 F.3d 1123 (6th Cir. 1997)

*Jordan v. Binns*, 712 F.3d 1123 (7th Cir. 2013)

ii

## STATEMENT OF MATERIAL FACTS

In March of 2017, Kohchise Jackson entered the custody of the Michigan Department of Corrections ("MDOC"), where Defendants were contracted to provide medical care for prisoners. At the time Mr. Jackson entered the prison system, he had a temporary colostomy that his surgeon had intended to reverse the previous month. **ECF No. 65-1, PageID.1632-33, Dep. 16:16-17:7.** Defendants refused to provide the reversal surgery to Mr. Jackson, forcing him to live with a colostomy bag for his entire term of incarceration. This made prison life ever more miserable. The bag would spill feces on him and caused a host of other problems, including making him a pariah with other prisoners.

Dr. Papendick is the individual who approved or denied requests for surgery. Indeed, as noted by this Court in denying Defendants' motion to be dismissed from this case, "[w]hen Mr. Jackson submitted a request for an outside referral to have the colostomy reversal surgery, it was not approved by Defendant Dr. Keith Papendick, who determined that the reversal was not 'medically necessary.'" **ECF No. 73, PageID.2973.**

Defendants are expected to elicit testimony and introduce evidence at trial for the purpose of blaming the State for their refusal to provide colostomy reversal surgery, or to otherwise show that the State supported their decision. Indeed,

1

repeatedly in the deposition of Plaintiff, Defense counsel asked him why he was

suing Defendants rather than MDOC:

> Q. Okay. So if Dr. Papendick is not the CMO or chief medical officer of the MDOC, why are you suing Dr. Papendick?

**ECF No. 58-6, PageID.1136.**

> Q. So you don't know why you're suing Dr. Papendick?
>
> A. I know but I don't feel like that's my place to answer it. I feel like it's my attorney's.
>
> Q. Well, I can't ask your attorney the question. You're the plaintiff. He's just representing you. So I have to ask you the questions. **<u>Why are you suing Dr. Papendick if it is the CMO of the MDOC that makes the final determination on whether or not you would have a colostomy reversal procedure?</u>**
>
> A. Why am I suing Dr. Papendick?
>
> Q. Yes.

**ECF No. 58-6, PageID.1136** (emphasis added).

The evidence that Defendants are expected to elicit includes State

employees' denials of Plaintiff's prison grievances regarding his colostomy

reversal surgery, Plaintiff's correspondence concerning his colostomy with the

State's Legislative Corrections Ombudsman, and MDOC Policy Directive

03.04.100, which Defendants contend somehow prohibited them from providing

the surgery. **ECF No. 60, PageID.1261.** This evidence is irrelevant under

applicable law. It is also likely to confuse the issues, mislead the jury, waste time,

and create unfair prejudice. To the extent they are offered for the truth of the matters asserted within them, the MDOC's responses to Mr. Jackson's grievances are also hearsay not within any exception. Plaintiff now seeks an order excluding this evidence at trial pursuant to FRE 401, 402, 403, and 802.

In addition to blaming non-party MDOC for Plaintiff's injury, Defendants may also try to apportion fault to dismissed parties. Plaintiff was housed at the St. Clair County jail for approximately ten months before he entered prison, where he received emergency surgery to create his temporary colostomy in December of 2016. His surgeon had scheduled the reversal surgery for February of 2017, but for reasons that are unclear from the record, the healthcare contractor for the St. Clair County jail, Prime Healthcare Services – Port Huron LLC, "postponed" the February 9, 2017 reversal surgery. **ECF No. 69, PageID.2771-2772.** Plaintiff was transferred to the Michigan Department of Corrections in March of 2017. Plaintiff brought claims against the healthcare contractor for the St. Clair County Jail and two of its employees, however, his claims against these former defendants have been dismissed. **ECF No. 73, PageID.2971.**

Plaintiff anticipates that Defendants may attempt to reference at trial the fact that Plaintiff also sued Prime Healthcare Services -- Port Huron LLC, Dr. David Kraus, and Colleen Spencer, and will attempt to blame these dismissed parties for the constitutional deprivations he has alleged against Defendants. However, such

reference to dismissed parties and claims is both irrelevant to the remaining Defendants' liability under FRE 401 and will only serve to confuse the jury, unnecessarily prolong trial and create a risk that the jury may base its verdict on an improper basis. It must be excluded under FRE 401 and FRE 403.

## <u>LAW AND ARGUMENT</u>

**I.  Evidence that Michigan Department of Corrections' policies required Defendants to deny colostomy reversal surgery to Plaintiff is both irrelevant to liability and extremely prejudicial.**

Defendants should not be permitted to mislead the jury by presenting a state-compulsion defense to liability. State compulsion, i.e., an argument that a state or local government compelled the defendant to violate the plaintiff's constitutional rights, is absolutely not a valid defense to liability in a § 1983 suit. To understand why, it is helpful to return to the basic principles underlying § 1983 claims.

A § 1983 claim "has two elements: (1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." *League of Women Voters v. Brunner*, 548 F.3d 463, 475 (6th Cir. 2008). Generally, public employees act "under color of state law" when carrying out their duties. *See West v. Atkins*, 487 U.S. 42, 50 (1988). But the statute's reach is not limited to public employees. Private parties can also act "under color of state law," and thus be subject to liability under § 1983, "if their conduct qualifies them to be considered state actors. Essentially, "a private party's

4

actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'"" *Nugent v. Spectrum Juv. Just. Servs.,* 72 F.4th 135, 140-141 (6th Cir. 2023) (quoting *Chapman v. Higbee Co.,* 319 F.3d 825, 833 (6th Cir. 2003) (en banc)). To satisfy the 'color of state law' element of a § 1983 claim when a defendant is a private corporation, the plaintiff must demonstrate that the private corporation's conduct satisfied at least one of three tests: "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007).

The public function test "requires that the private entity exercise powers that are traditionally exclusively reserved to the state," while the state-compulsion test "requires that a state ***exercise such coercive power*** or ***provide such significant encouragement***, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). (emphasis added). Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.*

The color-of-state-law element generally is not at issue in § 1983 actions concerning private contractors that provide medical care in prisons. That is because it is well-established that providing healthcare to prisoners satisfies the public-

function test. *See, e.g. Carl v. Muskegon County*, 763 F.3d 592, 596 (6th Cir. 2014). But outside the prison context, "the public function test has been interpreted narrowly" and applies to only a few activities, like running an election or operating a company-owned town. *See Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). In most other contexts, in order to hold a private corporation liable under § 1983, plaintiffs must satisfy either the nexus test or the state-compulsion test. The latter test requires the plaintiff to prove that the state <u>compelled</u> the private corporation to violate his federal rights. *See, e.g. S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 565 (6th Cir. 2007); *Marble v. Snyder (In re Flint Water Cases)*, 453 F.Supp. 3d 970, 987 (E.D. Mich. 2020). Counter-intuitively, if the private-party defendant made the decision to harm the plaintiff of its own accord, the defendant is generally ***not liable*** under § 1983.

Particularly instructive on this point is *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 780 Fed. Appx. 197 (6th Cir. 2019). In *Snodgrass*, the Tennessee Medicaid program hired defendant DentaQuest, a private corporation, to serve as its dental benefits manager. *Snodgrass* at 201. Plaintiff Snodgrass-King was a partnership of dentists whose principals were engaged in a long-running feud with DentaQuest and Tennessee officials. *Id*. at 198-199. After DentaQuest won the Tennessee dental-benefits-manager contract in 2013, DentaQuest executives plotted to, and did, exclude Snodgrass-King from

participating in the Tennessee Medicaid program. *Id.* at 201-202. Snodgrass-King then sued DentaQuest under § 1983 for First-Amendment retaliation. *Id.* at 203.

Snodgrass-King prevailed at trial, but the district court granted judgment notwithstanding the verdict to DentaQuest, finding that while Tennessee officials also wanted to exclude Snodgrass, they did not force DentaQuest to do so: "it is undisputed that DentaQuest made the final decision on which providers were allowed in the network." *Id.* at 204. The Sixth Circuit affirmed. Since "DentaQuest 'made a free-will choice to' exclude Snodgrass," it was ***not*** liable. *Id.* at 205. Simply put, any argument that defendants are not liable because their decisionmaking was constrained by a state policy is backwards. State compulsion is not a defense; it is something the *plaintiff* typically has to prove in private-party § 1983 litigation.

The fact that state-compulsion *is a basis for imposing liability* under § 1983, rather than *a defense to liability*, is highly counter-intuitive. It goes against the way that ordinary people think about blameworthiness and responsibility for harm. As the erroneous jury verdict in *Snodgrass* demonstrates, there is extreme risk that evidence of state compulsion will confuse the issues and cause the jury to decide the case "on an improper basis[.]"" *Journey Acquisition-II, L.P. v. EQT Prod. Co.,* 830 F.3d 444, 459 (6th Cir. 2016). The jury may erroneously decide that if the State

"made them do it," then Mr. Jackson's injury is the State's fault, rather than Defendants' fault, and Defendants are not liable.

Defendants are expected to attempt to take full advantage of the confusion created by the counter-intuitive nature of the law of private-party § 1983 liability by eliciting testimony and introducing evidence at trial intended to "shift the blame" for the denial of Plaintiff's surgery from themselves to the State. In their summary-judgment briefing, Defendants argued that MDOC Policy Directive 03.04.100 somehow prohibited them from providing the surgery.[1] **ECF No. 60, PageID.1261.** Defendants also argued that after Dr. Papendick blocked a referral that Mr. Jackson's prison treating physician made for a colostomy reversal, MDOC personnel denied Mr. Jackson's subsequent grievances regarding the incident. **ECF No. 60, PageID.1272.** Defendants have also issued trial subpoenas for all of the state employees responsible for responding to Plaintiff's grievances.

This evidence has no relevance to Defendants' liability. If the State compelled or encouraged Defendants to violate Plaintiff's Eighth Amendment rights, then the Defendants are liable for the civil rights violation under the state-compulsion or nexus tests. If the State did not compel Defendants, and they "made a free-will choice to" violate Plaintiff's civil rights, *see S.H.A.R.K. v. Metro Parks*

---

[1] Defendant Papendick has acknowledged that he was able to approve similar surgeries for other prisoners. **ECF No. 60-4, PageID.1363, Dep. 112:16-24.**

*Serving Summit County,* 499 F.3d 553, 565 (6th Cir. 2007), they are nevertheless liable for any constitutional violation under § 1983, because the color-of-state-law element is satisfied in this case by the fact that providing health care to prisoners is a traditional public function. *See Carl v. Muskegon County*, 763 F.3d 592, 596 (6th Cir. 2014).

## II. Evidence that non-parties and dismissed parties also violated Plaintiff's Eighth Amendment rights is irrelevant to Defendants' damages exposure and must be excluded under Rules 401 and 403.

Evidence of either state compulsion or non-party fault also is not a basis for reducing Defendants' damages exposure. If some non-party Michigan Department of Corrections' personnel, or any of the dismissed Prime Healthcare defendants, also bear responsibility for Plaintiff's constitutional injury, that fact "cannot diminish Defendants' liability." *Weeks v. Chaboudy*, 984 F.2d 185, 189 (6th Cir. 1993).

*Weeks* is directly on-point. The plaintiff in that case, a paralyzed prisoner, sued defendant Dr. Chaboudy for refusing to allow him to be housed in the prison infirmary, which was the only area in the prison where wheelchairs were permitted. *Weeks*, 984 F.2d. 185 at 187. Because Mr. Weeks was denied access to a wheelchair, he was "unable to take advantage of his limited out-of-cell time, or to shower himself. He could not care for his person or clean his cell." *Id*. After granting summary judgment in Weeks' favor, the district court apportioned the

9

plaintiff's damages between the named defendant, Dr. Chaboudy, and non-party MDOC personnel whom the Court felt bore 90% of the responsibility for Weeks' injury. *Id.* at 188. The Sixth Circuit reversed, holding that the fact "[t]hat other prison personnel were aware of Weeks' predicament may render them liable **as well**, but it cannot diminish Defendants' liability." *Id.* at 189 (emphasis in original). In other words, **"the actions of concurrent tortfeasors are irrelevant regarding an indivisible injury."** *Id.* (emphasis added).

Here, too, Defendants cannot utilize the fact that MDOC and/or the dismissed Prime Healthcare defendants may *also* be liable for the violation of Plaintiff's constitutional rights to diminish Defendants' own liability. This is the only purpose for which Defendants could possibly offer this evidence, to tell the jury that Defendants are not liable for the claims alleged by Plaintiff because other parties may be liable for the refusal to provide Plaintiff's surgery. As discussed by the Sixth Circuit in *Weeks*, such a strategy is impermissible and contrary to the law of this Circuit. Indeed, "[a] tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury." *Id.* at 189.

The simple fact that the MDOC or Prime Healthcare may have also wronged Plaintiff does not allow Defendants to reduce or evade liability for the wrongdoing they have committed. Evidence of non-party fault is both irrelevant under Rule 401

10

and unduly prejudicial under Rule 403. This Court recently held, in another prisoner civil rights case, that "there is no probative value in admitting evidence of dismissed Defendants" and that such evidence "is excludable under Rule 403 as it will only serve to confuse the jury, unnecessarily prolong trial and cause severe risk that the jury may base its verdict on an improper basis." *Sedore v. Lanfair*, 2025 U.S. Dist. LEXIS 117160 at *11 (E.D. Mich. March 14, 2025) (Drain, J.).

Other federal courts throughout the country have also excluded reference to alleged wrongdoing by dismissed parties and non-parties. *See Bryce v. Trace, Inc.*, No. CIV-06-775-D, 2008 U.S. Dist. LEXIS 27310, 2008 WL 906142 at *6 (W.D. Okla. March 31, 2008) (In a case in which the plaintiff moved to exclude claims resolved by summary judgment or which were voluntarily dismissed, the Court granted the motion and held: "Like other pretrial rulings, shielding such matters from the jury is common practice."); *Young v. Version Allsteel Press Co.*, 539 F. Supp. 193, 197 (E.D. Pa., 1982) (holding that "evidence of settlement is superfluous. Its sole use is to obtain possible tactical advantage at trial"); *Trout v. Milton S. Hershey Medical Center*, 572 F. Supp. 2d 591, 599 (M.D. Pa. 2008) (stating "Rule 408 embraces a strong public policy favoring settlement. Under this policy, federal courts frequently exclude evidence of settlements reached between a plaintiff and a former defendant or between a plaintiff and a non-defendant who is responsible for a portion of plaintiff's damages" and that "Introduction of the

11

settlement agreement and claim documents therefore conflicts with the policy underlying Rule 408 and that its probative value is substantially outweighed by the danger of unfair prejudice and misleading the jury.").

*Slappy v. City of Detroit,* 2021 U.S. Dist. LEXIS 131929 (E.D. Mich. July 15, 2021) is also on point. That opinion concerned a plaintiff's request in a § 1983 case to disallow reference to dismissed parties and claims. In *Slappy*, the plaintiff alleged that two Detroit police officers – Bromley and Carthan – hit him and rendered him unconscious. *Slappy v. City of Detroit*, No. 19-10171, 2021 U.S. Dist. LEXIS 131929, at *2 (E.D. Mich. July 15, 2021). Slappy "filed a 42 U.S.C. § 1983 claim against the City of Detroit, Eric Carthan, Eric Bromley, and Randolph Williams" *Id.* at *1. "Slappy voluntarily dismissed a number of claims, and the Court dismissed several claims as a result of Defendants' summary judgment motion. [sic] The only surviving claims [were] all against Carthan, Bromley, and Williams: (1) Fourth Amendment unlawful search and seizure (Count I); (2) First Amendment retaliation (Count I); and (3) false arrest and false imprisonment (Count IV)." *Id.* at *3-4.

Slappy moved to exclude reference by Defendants to any dismissed claims and parties. *Id.* at *4. The defendants in *Slappy* conceded that they did not intend to refer to dismissed defendants or claims "but argued that the alleged use of force and Slappy's ability to recall events are directly at issue" and thus "to the extent

MARKO LAW

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKOLAW.COM

that there are facts related to both a dismissed claim and a pending claim, Defendants argue[d] that those facts should be admissible." *Id.* at \*5. The Court, however, granted Slappy's motion to exclude such evidence and held: **"Case law does not support the admission of evidence related to dismissed parties and claims; it lacks probative value."** *Id.* (emphasis added)

III. **Testimony that the Michigan Department of Corrections' policies required Defendants to deny colostomy reversal surgery, and evidence that the MDOC denied Plaintiff's grievances or otherwise supported the denial of the surgery, are extremely likely to confuse the issues, mislead the jury, and create unfair prejudice.**

Even if evidence that the MDOC required, permitted, or encouraged the Defendants to deny Plaintiff access to colostomy reversal surgery was somehow relevant, such evidence is still inadmissible because it creates an extreme risk of confusing the issues, misleading the jury, wasting time, and creating unfair prejudice. Fed. R. Evid. 403. "With respect to "unfair prejudice," "confusing the issues," and other factors, [the Sixth Circuit] has noted that the exclusion of evidence may be appropriate when the evidence suggests to the jury that it should decide the case "on an improper basis[.]"" *Journey Acquisition-II, L.P. v. EQT Prod. Co.,* 830 F.3d 444, 459 (6th Cir. 2016) (quoting *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011)).

Evidence that the MDOC required, permitted, or encouraged the Defendants to deny Plaintiff access to colostomy reversal surgery has a tendency to suggest a

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

13

decision on at least two improper bases. First, introducing evidence that the MDOC compelled Defendants to deny Plaintiff access to colostomy reversal surgery could cause the jury to view Plaintiff's injury as mostly or entirely the MDOC's "fault," rather than Defendants' fault, which is an improper consideration given that private parties are liable under § 1983 when a state actor compels them to violate a plaintiff's civil rights. Second, introducing evidence that the MDOC denied Plaintiff's grievances relating to his colostomy reversal surgery would suggest that the jury should find that the denial of the surgery was lawful or appropriate, ***because a state entity had deemed it to be appropriate***.

When a party seeks to introduce pre-litigation findings from a government agency concerning the validity of a Plaintiff's claim, "the danger of unfair prejudice, confusing the issues, and wasting time is high if the evidence were to be admitted." *EEOC v. HP Pelzer Auto. Sys.*, 363 F.Supp. 3d, 864, 866 (E.D. Tenn. 2019). Social Security Administration findings concerning a plaintiff's disability, for example, are commonly excluded under Rule 403 in personal-injury cases, *see, e.g. Roach v. Hughes*, 2016 U.S. Dist. LEXIS 192835 at *10-*12 (W.D. Ky. March 9, 2016) (collecting cases), as are Equal Employment Opportunity Commission 'cause determinations' and 'letters of violation' in Title VII cases. *See EEOC v. Ford Motor Co.,* 1996 U.S. App. LEXIS 26263 at *26-27 (6th Cir. 1996); *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (1997).

"The test imposed under FRE 403 . . . is a balancing test" that weighs the probative value of the evidence against the danger of unfair prejudice, confusing the issues, or misleading the jury. *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997). The grievance responses in this case clearly fail this test, since the conclusions of the MDOC employees who responded to Plaintiff's prison grievances have substantially less probative value and are even more prejudicial than the EEOC 'cause determination' letter whose exclusion under Rule 403 was affirmed by that the Sixth Circuit in *Williams.*

In the Title VII employment-discrimination context, an employee exhausts his administrative remedies (a mandatory prerequisite for filing a lawsuit) by filing a complaint with the EEOC against his employer, which the EEOC then investigates. "The purpose of the EEOC's investigation of a discrimination charge is to determine if there is a reasonable basis for the charge." *EEOC v. Keko Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984). But unlike employees alleging workplace discrimination, state prisoners do not get to submit their pre-litigation grievances regarding their medical care to an independent federal agency tasked with enforcing the Eighth Amendment. Instead, they must submit their grievances for investigation and adjudication by the very organ of state government that is responsible for their custody and care. If employees had to submit their pre-suit complaints of workplace discrimination to their own

15

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

employers for investigation, how often would such investigations conclude that their complaints were meritorious?

Rather than representing the findings of an independent investigation by an ostensibly neutral federal agency, the responses to Plaintiff's grievances are essentially self-serving denials of liability by an entity that viewed itself (and/or its officials and employees) as potential litigation targets of Mr. Jackson. The MDOC's response to Mr. Jackson's Step I grievance notes, "It is documented that the Grievant, 'Became so upset when told about the not approval consult request stating that he's planning to file a law suit.'" [sic] **ECF No. 60-8, PageID.1523.** Mr. Jackson's Step II Grievance Appeal is effectively a threat to sue. He wrote, "Denial is a deliberate indifference, . . . Refusal to treat my medical concerns is actionable under the 42 USCA 1983 Act." [sic] **ECF No. 60-8, PageID.1523.** The MDOC thus had a clear incentive to find Mr. Jackson's grievances to lack merit, because a contrary finding could be construed as an admission of liability.

The *Williams* panel, in discussing an EEOC cause determination, noted that "[a] strong argument can be made that a jury would attach undue weight to this type of agency determination, viewing it as a finding of discrimination--as the plaintiff himself suggests it should be viewed--rather than as a mere finding of probable cause." *Williams*, 132 F.3d at 1129. The panel also noted that EEOC "letters of violation," which are less tentative in their conclusions than preliminary

16

"cause determinations," are "widely considered to be presumptively inadmissible" due to their unfair prejudice to the defendant employer. *Id.* at 1129. The MDOC's responses to Plaintiff's grievances are not tentative, like a cause determination. They expressly conclude that Plaintiff's complaint lacked merit. Jurors would be very likely put undue weight on the MDOC grievance responses, especially since a false inference of impartiality may be drawn from the fact that neither the MDOC nor any of its employees are named defendants in this case.

Such evidence is therefore utterly lacking in probative value, yet it possesses an extraordinary risk of unfair prejudice to Plaintiff. Indeed, such self-serving determinations by the MDOC may be given undue weight by jurors at trial and, accordingly, Defendants should be precluded from introducing evidence that the MDOC allegedly prohibited reversals of functional colostomies or determined through its own investigation that Plaintiff's claim lacked merit.

## IV.    The MDOC's denials of Plaintiff's prison grievances are also hearsay not within any exception.

Defendants are expected to argue that the MDOC's responses to Plaintiff's prison grievances concerning his colostomy fall within the FRE 803(6) (records of a regularly-conducted activity) or FRE 803(8) (record or statement of a public office) hearsay exceptions. Both of these hearsay exceptions only apply if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FRE 803(6)(E);

17

FRE 803(8)(B). For purposes of both FRE 803(6) and FRE 803(8), when records were made in anticipation of litigation, "the circumstances of their preparation tend to indicate a lack of trustworthiness." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016); *see also, Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) ("it is well-established . . . that documents prepared in anticipation of litigation are not admissible under FRE 803(6).") (collecting cases); *Palmer v. Hoffman*, 318 U.S. 109, 113-114 (1943).

The MDOC's responses to Mr. Jackson's grievances were clearly prepared in anticipation of litigation. The Prison Litigation Reform Act requires prisoners to exhaust their administrative remedies prior to filing suit concerning prison conditions, *see, e.g. Heard v. Strange,* 127 F.4th 630, 632 (6th Cir. 2025), so completion of the MDOC's grievance procedure is the first step a prisoner takes when he intends to commence litigation against his jailers. The MDOC employees who responded to Mr. Jackson's grievances were also indisputably aware that Mr. Jackson intended to sue: they documented in their response that Mr. Jackson had expressed his intention to file a lawsuit. **ECF No. 60-8, PageID.1523.**

The Sixth Circuit has held that "a specific threat of litigation is not needed in order to make the anticipation of litigation reasonable." *St. Paul Fire & Marine Ins. Co. v. Conagra Foods*, No. 2:07-cv-0009, 2008 U.S. Dist. LEXIS 8945, at *6 (S.D. Ohio Jan. 25, 2008) (citing *United States v. Roxworthy*, 457 F.3d 590, 599

18

(6th Cir. 2006)). Here, however, there was – as stated above – a threat to sue by Plaintiff, which was actively acknowledged by Defendants when they responded to his grievances. Such responses were therefore prepared in anticipation of litigation and do not reflect the ordinarily trustworthy nature of a document prepared by a public office, which are typically neutral and removed from any self-serving statements and assertions of fact. The MDOC's responses to Plaintiff's prison grievances thus do not fall within either the FRE 803(6) or 803(8) hearsay exceptions, are therefore inadmissible.

## **RELIEF REQUESTED**

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests this Honorable Court GRANT Plaintiff's Motion in Limine to Preclude Defendants From Apportioning Fault on Any Non-Party in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date: July 30, 2025

## **PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **July 30, 2025**, via:

☐ U.S. Mail                    ☐ Fax
☐ Hand Delivered               ☐ Overnight Carrier
☐ Certified Mail               ☐ Other:
☐ ECF System                   ☐ Email

*/s/*_____

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

JM MARKO LAW