# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,

v.

CHS TX, INC., et al.,

        Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM INTRODUCING TESTIMONY OR EVIDENCE FROM OR RELATING TO SONYA FULKS, R.N. PURSUANT TO RULES 702, 401, 402, AND 403 OF THE FEDERAL RULES OF EVIDENCE**

32241020

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... iii

STATEMENT OF ISSUES ......................................................................................v

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... vi

INTRODUCTION ...................................................................................................1

    I.      FACTUAL AND LEGAL BACKGROUND ......................................3

        A.      Plaintiff's Claims ...........................................................................3

        B.      Sonya Fulks, R.N. ..........................................................................5

    II.     STANDARD OF REVIEW .................................................................8

    III.    MS. FULKS'S  OPINIONS DO NOT SATISFY THE
           ADMISSIBILITY STANDARDS OF FED. R. EVID. 702 ...............10

        A.      Ms. Fulks is Not Qualified to Offer Opinions about the Medical
             Standard of Care for Colostomy Reversals....................................10

        B.      Ms. Fulks's Remaining Testimony Is Inadmissible......................12

CONCLUSION ......................................................................................................15

[PROPOSED] ORDER ON DEFENDANTS MOTON *IN LIMINE* TO
PRECLUDE PLAINTIFF FROM OR RELATING TO SONYA FULKS, R.N.
PURSUANT TO RULES 702, 401, 402, AND 403 OF THE FEDERAL RULES
OF EVIDENCE.......................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Alspaugh v. McConnell,*
  643 F.3d 162 (6th Cir. 2011) ................................................................3
*Anthony v. Swanson,*
  701 F. App'x. 460 (6th Cir. 2017)......................................................3, 4
*Austin v. Corizon Health Care,*
  No. 24-10023, 2025 WL 1509364 (E.D. Mich. May 27, 2025)............5
*Daubert v. Merrell Dow Pharms, Inc.,*
  509 U.S. 579 (1993)..............................................................................8
*Estelle v. Gamble,*
  429 U.S. 97 (1976)............................................................................3, 4
*Farmer v. Brennan,*
  511 U.S. 825 (1994)..............................................................................4
*In re Aredia & Zometa Prods. Liab. Litig.,*
  483 F. App'x 182 (6th Cir. 2012) .........................................................9
*In re Chrysler Pacifica,*
  767 F. Supp. 3d 495 (E.D. Mich. 2025) .............................................10
*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999)..............................................................................9
*Miller v. Calhoun Cty.,*
  408 F.3d 803 (6th Cir. 2005) ................................................................5
*Owens v. O'Dea,*
  149 F.3d 1184 (6th Cir. 1998) ..............................................................4
*Rhinehart v. Scutt,*
  894 F.3d 721 (6th Cir. 2018) .............................................................4, 5
*Shipp v. Murphy,*
  9 F.4th 694 (8th Cir. 2021) .................................................................11
*Shupe v. Rocket Cos., Inc.,*
  752 F. Supp. 3d 689 (E.D. Mich. 2024) ...............................................9
*State Farm Mut. Auto. Ins., Co. v. Campbell,*
  538 U.S. 408 (2003)............................................................................14
*Thomas v. Lambert,*
  606 F. Supp. 3d 592 (E.D. Mich. 2022) ...............................................9
*United States v. Farmer,*
  No. 22-CR-20678, 2025 WL 1338264 (E.D. Mich. May 7, 2025) .......9

*Westlake v. Lucas*,
    537 F.2d 857 (6th Cir. 1976) ..................................................................5
*Wright v. Taylor*,
    9 Fed. App'x. 829 (6th Cir. 2003) .........................................................4

Rules

Fed. R. Civ. P. 26(a)(20).........................................................................1
Fed. R. Evid. 702 ............................................................................. passim
Federal Rules of Evidence 401, 402, 403, 702, and 703 ...................... 1, 12, 14, 15
LR 7.........................................................................................................2

## <u>STATEMENT OF ISSUES</u>

1. **Whether the Court should preclude Plaintiff's "non-retained expert," Sonya Fulks, R.N., from testifying at trial.**

   Defendants' Answer: Yes

   Plaintiffs May Answer:  No

   Court Should Answer:  Yes

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Evid. 401, 402, 403, 702

*Daubert v. Merrell Dow Pharms, Inc.* 509 U.S. 579 (1993)

*In re Aredia & Zometa Prods. Liab. Litig.,* 483 F. App'x 182 (6th Cir. 2012)

*Shipp v. Murphy,* 9 F.4th 694 (8th Cir. 2021)

*In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.,* 767 F. Supp. 3d 495 (E.D. Mich. 2025)

## INTRODUCTION

Pursuant to Federal Rules of Evidence 401, 402, 403, and 702, Defendants, CHS TX, Inc. ("CHS") and Keith Papendick, M.D., respectfully move *in limine* to exclude all testimony and evidence from or relating to Sonya Fulks, R.N. Plaintiff first disclosed this individual as potential witness and putative "non-retained expert" on May 20, 2025. *See* **Exhibit A** ("Plaintiff Kochise Jackson's Expert Disclosures Pursuant to Fed. R. Civ. P. 26(a)(20)") (the "Disclosure"). The Court should not permit Ms. Fulks to testify at trial for the multitude of reasons explained herein and in CHS's Objections to Plaintiff's Expert Disclosures, dated June 2, 2025 which are attached hereto as **Exhibit B**.

This trial will be about the care Plaintiff Kohchise Jackson received for his colostomy. Ms. Fulks is a nurse who used to treat MDOC *oncology* patients. She has no conceivable qualification that would allow her, under Fed. R. Evid. 702, to provide expert medical opinions about colostomy care or the potential need for a reversal surgery. She is not a medical doctor, much less Board Certified in a relevant medical field. She has never been responsible for diagnosing or recommending a need for a colostomy reversal surgery. Her "expert" disclosure does even mention colostomies. Nevertheless, at her deposition, Ms. Fulks claimed for the first time that she intends to offer "expert opinions" about the medical "standard of care" for colostomy reversal. The Court should preclude this testimony. There cannot be a

better example of a witness who fails to satisfy the admissibility standards of Fed. R. Evid. 702.

The Court should preclude all of Ms. Fulks's proposed testimony because she has never been involved in colostomy reversal surgeries in any capacity, decision-making or otherwise, and has no knowledge of the justification for approving or denying any colostomy reversal procedure in the MDOC.  She was not involved in any events relating to Plaintiff, Dr. Papendick, or anyone else relevant to Plaintiff's care.  She was not even employed by Corizon when Dr. Papendick made his decision on April 19, 2017.

Plaintiff nevertheless wants Ms. Fulks to offer the opinion that Corizon made decisions about oncology patients based on cost factors.  This proposed testimony is irrelevant, and is also inadmissible because it is soaked in layers of unreliable hearsay, is not supported by any documents, medical records, or other reliable foundation, it is clothed in faux-expert opinionating about the medically necessary care for irrelevant medical conditions, and it invites tangential mini-trials about the credibility of her stories and the care provided by different people, at different times, relating to irrelevant conditions.  Again, this Court should exclude Fulks's testimony in its entirety.

Pursuant to LR 7.1, the undersigned counsel certifies that, on July 25, 2025, the parties met and conferred about the instant motion.  Plaintiff did not agree to

refrain from seeking admission of evidence discussed herein.

## I.        FACTUAL AND LEGAL BACKGROUND

### A. <u>Plaintiff's Claims</u>

Plaintiff, Kohchise Jackson, underwent a surgery to create a colostomy in December 2016, when he was an inmate in the St. Clair County Jail, after he was diagnosed with a fistula (a hole between his colon and his urethra that allowed feces to leak into his urethra).   The surgery likely saved his life.   He alleges that Defendants violated his Eighth Amendment rights on April 19, 2017, during his time as a prisoner in the Michigan Department of Corrections ("MDOC"), when Dr. Papendick approved continued care for his colostomy rather than a surgery to reverse the colostomy.

Plaintiff's claim is rooted in *Estelle v. Gamble*, 429 U.S. 97 (1976), in which the Supreme Court held "that deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment's Cruel and Unusual Punishment Clause. *Estelle,* 429 U.S. at 104.  But Plaintiff's "desire for additional or different treatment," beyond what was provided to him, "does not by itself suffice to support" a "deliberate indifference" claim. *See, e.g., Anthony v. Swanson*, 701 F. App'x. 460, 464 (6th Cir. 2017)*; Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("[w]here a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgment.'").

Apart from the elements necessary to prove a respective claim against a corporate entity or individual, it is black-letter law that a prisoner alleging inadequate medical care fails to establish an Eighth Amendment claim without expert medical testimony "showing the medical necessity for such a treatment." *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017). ***But that is not enough***. "[M]ere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. App'x. 829, 831 (6th Cir. 2003). "An allegation of questionable medical judgment states, at most, a claim for a medical malpractice, as opposed to a constitutional violation." *Owens v. O'Dea*, 149 F.3d 1184 (6th Cir. 1998); *Estelle*, 429 U.S. at 107 (poor exercise of medical judgment insufficient). Even a medical provider's "failure to alleviate a significant risk that he should have perceived but did not...cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

At a minimum, "[t]here must be medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Rhinehart v. Scutt*, 894 F.3d 721, 737-738 (6th Cir. 2018). "But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment." *Id.* at 737. "A doctor is not liable under the Eighth Amendment if he or she provides *reasonable* treatment, even if the outcome of the treatment is insufficient or even harmful." *Id.* at 738 (emphasis added). When an inmate has received on-going

treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires expert medical testimony "of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart v. Scutt*, 894 F.3d 721, 736 (6th Cir. 2018); *see also Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005).  A treatment must be "so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976); *Austin v. Corizon Health Care*, No. 24-10023, 2025 WL 1509364, *1 (E.D. Mich. May 27, 2025) (granting summary dismissal).

### B.  Sonya Fulks, R.N.

In a case in which the medical issues relate solely to Plaintiff's colostomy, Plaintiff has disclosed Sonya Fulks, R.N., an oncology (cancer) nurse as a "non-retained expert."  *See* **Exhibit A**. In his disclosures, Plaintiff states that Fulks will offer anecdotes and observations about her cancer patients that ostensibly relate to Plaintiff's allegation that Corizon was trying to save money, along with other opinions criticizing the general quality Corizon's medical care of incarcerated patients.  **Ex. A.**, at 6-9.  Ms. Fulks's Disclosure does not mention colostomies.

At her deposition, for the first time, Ms. Fulks stated that she will also offer opinions at trial related to the standard of care for colostomy reversals:

15. .Q.· ·Do you intend to offer any opinions at trial relating
16· · · · to the need for a colostomy or a colostomy reversal?

17· ·A.· ·Yes.
18· ·Q.· ·What opinions do you intend to offer?
19· ·A.· ·My experience.· I've taken care of a lot of
20· · · · colostomies and colostomy -- and had lots of patients
21· · · · with colostomy reversal during my time at U of M, so I
22· · · · have opinions on standard of care for colostomy care
23· · · · and colostomy reversals.
24· ·Q.· ·And during the time -- so let me understand then.
25· · · · Your testimony is that your experience with

                          Page 23
·1· · · · patients who've had colostomies was during your time
·2· · · · at the University of Michigan; is that right?
·3· ·A.· ·Yes, and I did have some patients with colostomies
·4· · · · when I worked for the MDOC.
·5· ·Q.· ·So you believe that you're qualified to testify as to
·6· · · · what the standard of care is for colostomy reversals?
·7· ·A.· ·Yes.
·8· ·Q.· ·What is the basis of your belief that you're qualified
·9· · · · to testify to that?
10· ·A.· ·As a nurse, I am well-versed in standard of care for
11· · · · med-surg patients, especially anybody that was in my
12· · · · direct care over the years, so --
13· ·Q.· ·What do -- okay.
14· ·A.· ·I'm sorry.
15· ·Q.· ·But when you say you're well-versed in standard of
16· · · · care, are you referring to a standard of care that was
17· · · · in a place at the University of Michigan or are you
18· · · · referring to something else?
19· ·A.· ·I'm referring to the national standard of care for
20· · · · medical providers and practitioners.· We have
21· · · · something called the gold standard.· It's nationally
22· · · · known for medical care of human beings, and the
23· · · · standard of care, I believe I have a good grasp on the
24· · · · standard of care for colostomies.

**Exhibit C,** June 12, 2025 Fulks Dep. Tr., at 22:15-23:24.

But when pressed about her experience or knowledge about reversals,

- She could not name a book or a medical journal that discussed the medical

standard of care of colostomy reversals.  Ex. B., Fulks dep., at 22:9-19.   She testified, "I believe there is a standard of care for colostomies.  I can't speak to whether every journal in existence agrees to the standard of care, no, I cannot.  *Id.* at 22:18-23.

- She has never performed a colostomy surgery.  *Id.* at 25:23-24.

- She has never performed a colostomy reversal.  *Id.* at 25:25-26:1.

- She has never been present for a colostomy surgery.  *Id.* at 26:2-3.

- She has never been present for a colostomy reversal.  *Id.* at 26:4-5.

- She has never diagnosed a patient as needing a colostomy.  *Id.* at 26:6-8.

- She has never diagnosed a patient as needing a colostomy reversal.  *Id.* at 26:9-11.

- She has no idea what percentage of people who have a colostomy undergo reversal surgery.  *Id.* at 26:12-15.

- Other than "some CEUs" (continuing education courses) "on GI and colostomy," she has had no coursework related to colostomies, and she has no training or certification in colostomies or colostomy reversal. *Id.* at 27:6-12.

- She has never published any literature on colostomy or colostomy reversal.  *Id.* at 27:13-17.

- She does not know the mortality or morbidity rate associated with colostomy reversal surgery.  *Id.* at 60:9-11.

- She is not aware of any literature relating to the amount of time that passes between the time that a patient has a Hartmann's colostomy procedure (the procedure performed on Plaintiff) and the time that the procedure is reversed, if it ever is.  *Id.* at 60:18-23.

- She has never published a chapter of a medical textbook.  *Id.* at 27:18-20.

- She has never spoken at a conference, or in any forum, on medical-related issues.  *Id.* at 27:21-23.

- She has never been qualified by a court of law to offer expert testimony in any lawsuit.  *Id.* at 27:24-28:1.

- She has never been retained in any other case to provide expert

testimony related to colostomies.  *Id.* at 28:2-4.

In other words, although she is not a medical doctor, and although her substantive experience is as an oncology nurse, Ms. Fulks believes she is qualified to offer expert opinions about the national medical standard of care for colostomy reversals merely because some of her cancer patients have had colostomies, and because she has talked to doctors about colostomy reversal.  Her Disclosure, and her deposition testimony, provided no other basis for these opinions.

## II.    STANDARD OF REVIEW

As amended in 2023, Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Pharmaceuticals, Inc.*, the United States Supreme Court held that Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." 509 U.S. 579,

589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

As this Court recently explained, Rule 702's gatekeeping role requires the Court to conduct "three basic inquiries." *United States v. Farmer*, No. 22-CR-20678, 2025 WL 1338264, at *2–3 (E.D. Mich. May 7, 2025), *citing Shupe v. Rocket Cos., Inc.*, 752 F. Supp. 3d 689, 717 (E.D. Mich. 2024) (citation omitted).  First, the Court must determine whether the witness's "knowledge, skill, experience, training, or education" qualifies him "to answer the specific questions in the expert report." *Id., citing Thomas v. Lambert*, 606 F. Supp. 3d 592, 599 (E.D. Mich. 2022).   Second, "the court "turns to the expert's proffered testimony, asking whether such testimony is relevant and would assist the jury in understanding the evidence at trial or determining a genuine factual issue." *Id., citing Shupe*, 752 F. Supp. 3d at 717 (citations omitted).  "Finally, the court considers whether the expert's testimony is reliable . . . ." *Id.*  And non-retained experts are not analyzed differently, or held to any lower standard of admissibility, than retained experts.  *See, e.g.*, *In re Aredia & Zometa Prods. Liab. Litig.*, 483 F. App'x 182, 184-89 (6th Cir. 2012) (affirming trial courts exclusion of Plaintiffs' non-retained expert because his testimony did not satisfy the admissibility requirements imposed by Rule 702 and *Daubert*).

As amended, Rule 702 now makes clear that the proponent of expert evidence is required to prove, by a preponderance of the evidence, that all of the Rule's admissibility requirements are satisfied before the expert is permitted to testify.  The

amendment was enacted "to reinforce the idea, sidestepped sometimes by some courts, that Evidence Rule 104(a) entrusts the court with deciding whether the admissibility criteria have been satisfied, rather than treating them as "questions of weight" to be determined by the factfinder. *In re Chrysler Pacifica,* 767 F. Supp. 3d 495, 504 (E.D. Mich. 2025) *citing* Fed. R. Evid. 702 Advisory Committee Notes to 2023 Amendments.  Ms. Fulks's  opinions fail, in their entirety, to satisfy Rule 702's admissibility standards, and this Court should make a threshold determination that her testimony is excluded from the trial of this case.

## III.   MS. FULKS'S  OPINIONS DO NOT SATISFY THE ADMISSIBILITY STANDARDS OF FED. R. EVID. 702

### A. Ms. Fulks is Not Qualified to Offer Opinions about the Medical Standard of Care for Colostomy Reversals

As an initial matter, Plaintiff's expert disclosures did not disclose Ms. Fulks to offer medical standard-of-care opinions related to colostomies and colostomy reversals.  Any such opinions are therefore beyond the scope of Plaintiff's expert disclosures and should be excluded for this reason alone.  Even if the Court does not exclude Ms. Fulks's medical standard-of-care opinions for this reason, it should exclude these opinions because Ms. Fulks completely fails to satisfy Rule 702's requirement that she be qualified by "knowledge, skill, experience, training, or education" to offer them.

As a threshold matter, Ms. Fulks is a nurse, not a doctor.  This alone means

32241020                                      10

she is not qualified to offer "expert opinions" about the standard of care doctors must satisfy. *See, e.g., Shipp v. Murphy,* 9 F.4th 694, 701 (8th Cir. 2021) (affirming trial court's decision to exclude Plaintiff's medical expert, a nurse practitioner, in Eight Amendment case involving medical care offered to prisoner, where expert's "academic, training, licensure, and scope of practice [did] not qualify her to opine on a physician's standard of care).

Apart from her lack of basic qualifications to testify as expert, as Ms. Fulks admits, the only basis for her "expert" standard-of-care testimony is her personal opinion that "colostomies in general, if they can be reversed should. . . . It is always better for the patient to have their intestines reattached so we don't have fecal matter coming on to the skin outside the body." *Id.* at 25:13-22.

Often, Courts are faced with difficult questions about whether a proffered "expert" is qualified under Rule 702 to offer her "expert opinions." This is not even close. Ms. Fulks is not a doctor, which disqualifies her from offering expert opinions about the standard of care by which doctors are bound. Beyond this, she knows nothing about colostomies or colostomy reversal beyond her observations of some of her cancer patients who have had them and her conversations with doctors. In Rule 702's terms, there can be no dispute that Ms. Fulks is not qualified by "knowledge, skill, experience, training, or education" to testify about the medical standard of care for colostomy reversal surgery. Moreover, the nonexistent

probative value of Ms. Fulks's "standard of care" testimony will be substantially

outweighed by the potential for prejudice to Defendants if Ms. Fulks is permitted to

offer these opinions in the presence of the jury.   Pursuant to Fed. R. Evid. 401, 402,

403, and 702, Ms. Fulks must be precluded from offering any of her "medical

standard of care" opinions and testimony at trial.

### B.  Ms. Fulks's Remaining Testimony Is Inadmissible

Plaintiff's expert disclosure concludes that Ms. Fulks:

> is expected to testify that many of the care decisions made by Corizon
> would never be tolerated in a community healthcare setting and only
> occurred because the patients were incarcerated.  She will testify that
> in her experience, Corizon routinely denied or delayed necessary care
> based on financial considerations alone.

**Ex. A**, at pp 6-9.   Plaintiff prefaces this conclusion with a litany of "examples"

about which Ms. Fulks is expected to testify, including allegations that Corizon

"made it difficult to obtain approval for diagnostic procedures" for cancer, "failed to

follow up with patients," and discouraged providers from sending patients to the

emergency room.

Beyond the fact that all of this testimony is unsupported, anecdotal, and

drowned in hearsay, it is completely irrelevant to the question of whether it was

medically necessary to reverse Plaintiff's colostomy in April 2017 or why Corizon

approved continued care for his colostomy instead of a colostomy reversal surgery.

The word "colostomy" does not appear in the three pages of rhetoric leading up to

leading up to the substance of Ms. Fulks's expected testimony.   At her deposition,

Ms. Fulks revealed why it does not.  She testified that:

- She does not know how many requests there were in the MDOC for a colostomy reversal between 2016 and 2020.  Ex. B, at 51:8-11.

- She does not know how many requests for colostomy reversal were approved for prisoners in the MDOC between 2016 and 2020.  *Id.* at 51:15-18.,

- She does not know how many requests for colostomy reversal Dr. Papendick approved in the MDOC between 2016 and 2020. *Id.* at 51:19-22.

- She does not know how many patients had alternative treatment plans instead of colostomy reversals approved in the MDOC between 2016. *Id.* at 52:15-17.

- She does not recall any of her oncology patients she believed needed colostomy reversals.  *Id.* at 53:8-11.

- She was not aware of any decision to approve or not approve a colostomy reversal based on cost.  *Id.* at 56:15-17.

- She does not know what  colostomy reversal costs. *Id.* at 56:18-20.

- She does not know the costs associated with caring for a colostomy. *Id.* at 56:21-23.

In short, Ms. Fulks does not know anything relevant about colostomy reversal

surgery. Ironically, the only recollections she has of justifications for approving or

not approving colostomy reversals in the MDOC between 2016 and 2020 were

"several" that were not approved because they were "not medically necessary." *Id.*

at 51:23-52:4.  But she has no specific memory of these cases either.

The only medical issues in this case relate to Plaintiff's colostomy and his

desire to have it reversed.  Ms. Fulks, who did not even begin working for Corizon

until a year after the events giving rise to this lawsuit, **Ex. B** at 19:4-9, has admitted that she has no knowledge, experience, or even anecdotal recollection related to the number of patients seeking colostomy reversals between 2016 and 2020 or how many of those were approved.  And, critically, she is not aware of any decision to approve or not approve a colostomy reversal based on cost.

Allowing Ms. Fulks to ruminate about irrelevant medical conditions in the presence of the jury risks confusing the jury and prejudicing Defendants to a degree that substantially outweighs the nonexistent probative value of her completely irrelevant testimony.   Pursuant to Fed. R. Evid. 401, 402, 403, and 702, Ms. Fulks should be precluded from offering any opinion related to Corizon's reasons for denying medical care or procedures.

Ms. Fulks proposed testimony about non-colostomy care is also inadmissible as to potential punitive damages.  See *State Farm Mut. Auto. Ins., Co. v. Campbell*, 538 U.S. 408, 421-422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis…").

## <u>CONCLUSION</u>

In its role as gatekeeper, this Court is charged with ensuring that the jury is shielded from witnesses offering expert opinions they are not qualified to offer and that are irrelevant to the case.  Ms. Fulks personal opinions, random stories, and vague recollections are not admissible.  None of the opinions reflected in her disclosure or her deposition satisfies the admissibility standards imposed by Fed. R. Evid. 702 and the cases construing it.  Moreover, the nonexistent probative value of Ms. Fulks's opinions is substantially outweighed by the risk that she will confuse the jury and prejudice Defendants if she is permitted to offer them.  The Court should exclude Ms. Fulks' opinions in their entirety, pursuant to Fed. R. Evid. 401, 402, 403, and 702.


Dated:  July 30, 2025                          Respectfully submitted,

                                               **BOWMAN AND BROOKE LLP**

                                       By:     /s/*Sunny Rehsi*
                                               Sunny Rehsi (P80611)
                                               101 W. Big Beaver Road.,
                                               Suite 1100 Troy, MI 48084
                                               248.205.3300
                                               sunny.rehsi@bowmanandbrooke.com

                                               Adam Masin (Admitted 5/1/2025)
                                               750 Lexington Avenue
                                               New York, NY 10022
                                               646.914.6790
                                               adam.masin@bowmanandbrooke.com

32241020                               15

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

## CERTIFICATE OF SERVICE

I certify that, on July 30, 2025, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:    /s/*Sunny Rehsi*
        Sunny Rehsi (P80611)
        101 W. Big Beaver Road.,
        Suite 1100 Troy, MI 48084
        248.205.3300
        sunny.rehsi@bowmanandbrooke.com

        Adam Masin (Admitted 5/1/2025)

32241020                                    17

750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

Plaintiff,

v.

CHS TX, INC., et al.,

Defendants

Case No.:  19-13382

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**[PROPOSED] ORDER ON DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM
INTRODUCING TESTIMONY OR EVIDENCE
FROM OR RELATING TO SONYA FULKS, R.N. PURSUANT TO
<u>RULES 702, 401, 402, AND 403 OF THE FEDERAL RULES OF EVIDENCE</u>**

AND NOW, this date of August, 2025, in consideration of Defendants'
Motion *in Limine* to Preclude Plaintiff from Introducing Testimony or Evidence
From or Relating to Sonya Fulks, R.N. Pursuant to Rules 702, 401, 402 and 403 of
the Federal Rules of Evidence and any response thereto, it is hereby ORDERED that
the Motion is GRANTED.  Ms. Fulks's opinions and testimony are excluded, in their
entirety, from the trial of this case.

To the extent Defendants objected to an exhibit on Plaintiff's Proposed
Exhibit List by referring to this Motion, the Defendants' Objections are

SUSTAINED for the reasons stated herein and the Exhibits are EXCLUDED from

trial.

Dated:                                    _____
                                                        Hon. Gershwin A. Drain