# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KOHCHISE JACKSON,

                Plaintiff,

v.

CHS TX, INC., et al.,

                Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**CORRECTED
DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM
INTRODUCING TESTIMONY OR EVIDENCE FROM OR RELATING
TO JAN WATSON, MD., and CRISTIN RETTLER, P.A.,**

31974694

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF ISSUES ........................................................................ iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............................ v

INTRODUCTION ...................................................................................... 1

   I.  The Court Should Preclude Dr. Watson from Testifying ................................ 3

     A. Dr. Watson's Experience and Proposed Testimony .................................. 3

     B. Dr. Watson does not offer admissible expert testimony under
       Fed. R. Evid. 702 .................................................................................. 5

     C. Dr. Watson does not offer admissible fact testimony under
       Fed. R. Evid. 402 .................................................................................. 7

     D. The unfairly prejudicial nature or Dr. Watson's testimony
       substantially outweighs its non-existent probative value ......................... 8

  II.  The Court Should Preclude Cristin Rettler from Testifying ......................... 8

     A. Ms. Rettler's Experience and Proposed Testimony ................................. 8

     B. Ms. Rettler does not offer admissible expert testimony ........................... 10

     C. Ms. Rettler does not offer admissible factual testimony ......................... 11

     D. The unfairly prejudicial nature of Ms. Rettler's testimony
       substantially outweighs its non-existent probative value ......................... 12

CONCLUSION ........................................................................................ 13

[PROPOSED] ORDER ON DEFENDANTS' MOTION *IN LIMINE*
TO PRECLUDE TESTIMONY OR EVIDENCE FROM OR
RELATING TO JAN WATSON, M.D., AND CRISTIN
RETTLER, P.A. ...................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*State Farm Mut. Auto. Ins., Co. v. Campbell*,
   538 U.S. 408 (2003) ........................................................................ 7, 12

Rules

Fed. R. Civ. P. 26(a)(2)(c) ....................................................... 1, 5, 10
Fed. R. Civ. P. 26(a)(20)............................................................1
Fed. R. Evid. 401 ...................................................................... 7, 11
Fed. R. Evid. 402, 403, 702, 703 and 802 ...........................................1, 7
Fed. R. Evid. 403 ...................................................................... 8, 12
Fed. R. Evid. 408 ...................................................................... 7, 11
Fed. R. Evid. 702 ...................................................................... 5, 6, 10
LR 7.1.............................................................................1

## <u>STATEMENT OF ISSUES</u>

1. **Whether the Court should preclude Plaintiff from offering any testimony or evidence from or relating to Jan Watson, M.D. and Christin Rettler, PA. ?**

   Defendants' Answer:  Yes.

   Plaintiff May Answer: No.

   The Court Should Answer:  Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1.      Fed. R. Evid. 702

2.      Fed. R. Evid. 401

3.      Fed. R. Evid. 402

4.      Fed. R. Evid. 403

5.      Fed. R. Civ. P. 26(a)(2)(c)

6.      *State Farm Mut. Auto. Ins., Co. v. Campbell*, 538 U.S. 408, 421-422 (2003).

## INTRODUCTION

Pursuant to Federal Rules of Evidence 401, 402, 403, 702, 703 and 802 and Federal Rules of Civil Procedure 26(a)(2)(c), Defendants CHS Tx, Inc. ("CHS") and Keith Papendick, M.D. (together, "Defendants") move *in limine* to preclude Plaintiff from introducing any testimony or evidence from or relating to: (1) Jan Watson, M.D., and (2) Cristin Rettler, P.A.  Plaintiff first disclosed these individuals as potential witnesses and putative "non-retained experts" on May 20, 2025.  *See* **Exhibit A** ("Plaintiff Kochise Jackson's Expert Disclosures Pursuant to Fed. R. Civ. P. 26(a)(20)") (the "Disclosure").  The Court should not permit these individuals to testify at trial for the multitude of reasons explained herein and in CHS's Objections to Plaintiff's Expert Disclosures, dated June 2, 2025 which are attached hereto as **Exhibit B**.  Pursuant to LR 7.1, there was a conference between attorneys in which the movant explained the nature of the motion or request and its legal basis and requested but did not obtain concurrence in the relief sought.

This trial will be about the care Plainitff Kohchise Jackson received for his colostomy from Corizon Health, Inc. ("Corizon"), Dr. Papendick, and individuals working in the Michigan Department of Corrections ("MDOC") while Plaintiff was in prison in Michigan between March 2017 and May 2019.  Corizon provided care to an average of 44,000 prisoners in the MDOC's custody at a given time pursuant to the terms of its five-year contract with the State of Michigan for Integrated Prisoner

Healthcare Services, effective June 1, 2016, and subsequent change notices.  *See*

**Exhibit C**.   In an obvious attempt to present irrelevant, inflammatory, and unfairly

prejudicial testimony, Plainitff wants to call at trial: (1) Dr. Jan Watson, an OB/GYN

by training, to complain to the jury about her experiences working for five months,

part time, as a temp doctor in one Arizona prison, and (2) Cristin Rettler, P.A., to

complain about her experiences working one small Oregon county jail between April

2012 and April 2014--three years before the facts of Plaintiff's case.  The Court

should preclude these witnesses from testifying.

Dr. Watson and Ms. Rettler are not experts in any field that is relevant to this

case.   Their "non-retained expert" disclosures did not disclose any purported

"expert" testimony and Ms. Rettler at least admits she is not an expert.  They offer

no relevant fact testimony.  They have no personal knowledge of any facts related

to Plainitff, Michigan, the MDOC, Corizon's work in the MDOC, Dr. Papendick, or

any other individuals who saw or made decisions about Plainitff or any other MDOC

colostomy patient.  They also have no personal knowledge of, and have not been

disclosed to testify about, any facts relating to care *for colostomies*.  Their brief,

limited, out-of-state experiences dealing with non-colostomy patients and

individuals who have nothing to do with Plaintiff's case cannot establish anything

relevant to Plaintiff's case.  Their proposed fact testimony is also inadmissible

because it is soaked in layers of unreliable hearsay, is not supported by any

documents, medical records, or other reliable foundation, it is clothed in faux-expert opinionating about the medically necessary care for irrelevant medical conditions, and it invites tangential mini-trials about the credibility of their stories and the care provided outside of Michigan, by different people, at different times, relating to irrelevant conditions.

As their depositions confirmed, Plainitff wants to call these individuals to testify in an unfairly prejudicial attempt to inflame and confuse the jury by broadly painting Corizon as a bad company.  But there is no evidence that their handful of out-of-State stories about non-colostomy patients in two small facilities (one of which is a small jail with an average stay of 14 days) is indicative of any Corzion policy, practice or custom relating to the colostomy care provided to any of the 44,000 Michigan prisoners who may have needed such care.  The danger of unfair prejudice if they are allowed to testify substantially outweighs the non-existent probative value of their testimony.  Dissimilar, out-out-state conduct is also inadmissible to prove punitive damages.  The Court should not allow these witnesses.

## I.     The Court Should Preclude Dr. Watson from Testifying

### A.     Dr. Watson's Experience and Proposed Testimony

Dr. Watson is an OB/GYN with experience in perinatal genetics.  *See* **Exhibit D**, Deposition of Jan Watson, M.D., 6/17/25 ("Watson Dep."), 23:21-25:19.   She

resides in, and has spent most of her career, in Arizona. Watson Dep., 6:3-5, 30:19-25. She has spent much of her career since 2009 working around Phoenix as a doctor doing "locum tenes" assignments, which are "temporary fill-in" positions. Watson Dep., 18:18-19:13. She has never lived, worked, had a medical license, or had any training in Michigan. Watson Dep., 22;16-18, 45:5-7, 50:14-17.

Dr. Watson was never employed by CHS TX, Inc. or Corizon. Watson Dep., 44:5-23. In 2017, she was hired as a locum tenes doctor by a company called Onyx to work in the Eyman Complex (prison) in Florence, Arizona. Watson Dep., 44:24-45:25. She worked for Onyx doing nine-hour shifts, three days a week, for a total of five months. Watson Dep., 46:19-47:17. Those five months are entire time she has ever worked in a facility where Corizon provided medical care. Watson Dep., 49:21-25. While at Eyman, she was not responsible for approving medical requests made by prisoners. Watson Dep., 54:14-17. She never took care of a patient with a colostomy there. Watson Dep., 60:12-14. She has no knowledge relating to colostomy reversal surgeries at Eyman or in Michigan. Watson Dep., 59:2-14.

Dr. Watson confirmed that she has never interacted with Plaintiff, Dr. Papendick, or any other individual involved in Plaintiff's case. Watson Dep., 43:2-15, 52:4-6, 54:11-13, 55:6-19, 59:15-18. She has never reviewed any of Plaintiff's medical records, any records from the MDOC (on any subject), or any documents relating to Corizon's work in Michigan. Watson Dep., 43:16-44:4. She has no

personal knowledge of any health decisions relating to any patient in Michigan between 2017-2019.  Watson Dep., 88:12-16.

Dr. Watson's disclosure, and her deposition testimony in response to questions from Plaintiff's counsel, set out nothing other than her vague, rambling, unsubstantiated subjective complaints about her part time work the Eyman Complex in Arizona for five months.  Disclosure at 3-5; Watson Dep., 88:3-11.  Her disclosure does not mention colostomies.  It does mention a patients with seizures, a patient with a hand fracture, and a patient with coronary issues—none of which are relevant to this case.  Dr. Watson produced no documents or other material to support her proposed testimony on any subject.  Watson Dep., 17:1-18:6.  Her proposed testimony also purports to recount communications with many third parties who are unidentified or had no connection to Plaintiff's case.

### B.    Dr. Watson does not offer admissible expert testimony under Fed. R. Evid. 702

Plaintiff disclosed Dr. Watson as a non-retained "expert," but that disclosure was a sham intended to untimely identify her as a fact witness.  The Disclosure does not identify *any* expert opinions that Dr. Watson would offer, much less any foundation for any opinions under Fed. R. Evid. 702.  The inadequacy of the "expert" disclosure under Fed. R. Civ. P. 26(a)(2)(c) by itself should preclude her from testifying.  *See* Exhibit B, Objections.

Regardless, Dr. Watson does not provide admissible testimony under Fed. R. Evid. 702 which governs the admissibility of expert evidence.[1]  Her experience does not qualify her to offer expert opinions in any medical field that is relevant to this case and her testimony will not help the trier of fact.  She concedes that she is not offering opinions relating to the need for a colostomy or reversal surgery, Watson Dep., 41:9-12, and her disclosure does not even mention colostomies.  Her putative testimony about her experiences related to irrelevant medical conditions is not based on any data, principles, or methods.  She has performed no relevant research, whether on colostomies or prison healthcare.  Watson Dep. 41:3-8, 13-23.  The only time she testified in court as an expert was in genetics in the 1980s.  Watson Dep., 42:8-43:1.  The Court should not admit her testimony at all, including as an "expert."

---

[1]  Fed. R. Evid. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

    **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    **(b)** the testimony is based on sufficient facts or data;

    **(c)** the testimony is the product of reliable principles and methods; and

    **(d)** the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

## C.    Dr. Watson does not offer admissible fact testimony under Fed. R. Evid. 402

Dr. Watson offers no relevant factual testimony. *See* Fed. R. Evid. 401.  She knows nothing about Plaintiff, MDOC, Dr. Papendick or Corizon's work in Michigan.   She offers no facts about colostomy patients, much less in Michigan.  Her five-month, three-day a week experience with non-colostomy patients as a temp doctor in one Arizona prison is not relevant to any issue in Plaintiff's case.  Any argument that her temp stint in one Arizona prison is somehow indicative of how Corizon, Dr. Papendick, or others were making decisions about Plaintiff's colostomy reversal surgery in the Michigan DOC is a baseless speculation.

Dr. Watson's testimony should not be admitted for other reasons.  There is no evidentiary foundation.  She does not provide any way to identify the patients she wants to testify about, and her entire testimony is not supported by any documents.  That makes her entire putative testimony just unverifiable storytelling.   Her testimony is also inherently based on inadmissible hearsay under Fed. R. Evid. 408.

Dr. Watson's proposed "dissimilar and out-of-state conduct evidence" is also inadmissible as to potential punitive damages.  See *State Farm Mut. Auto. Ins., Co. v. Campbell*, 538 U.S. 408, 421-422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process

does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis…").

Accordingly, the Court should preclude her from testifying.

### D.    The unfairly prejudicial nature or Dr. Watson's testimony substantially outweighs its non-existent probative value

The Court should also exclude Dr. Watson's testimony pursuant Fed. R. Evid. 403 because its non-existent "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time…"  It is obvious that Plaintiff wants to call Dr. Watson to try to make the jury mad about her short time in an Arizona prison treating non-colostomy patients in the hopes that the jury will transfer inflamed emotions about those irrelevant facts to Plaintiff's care in Michigan.  There is hardly a better example of testimony that should be excluded under Rule 403.

## II.    The Court Should Preclude Cristin Rettler from Testifying

### A.    Ms. Rettler's Experience and Proposed Testimony

Cristin Rettler is a Physician's Assistant for Northern Arizona Healthcare. *See* **Exhibit E**, Deposition of Cristin Rettler, P.A., 6/20/25 ("Rettler Dep."), 8: 17-19, 25:15-26:5.  Although she was disclosed as an "expert," she admits "I have not been asked to give expert testimony in this case at all to my understanding."  Rettler Dep., 43: 17-21, *see also* 21:19-24 ("I'm not giving expert testimony.").

From April 2012 to April 2014, Ms. Rettler worked as a P.A. for Corizon in the Washington County jail in Hillsboro, Oregon.  Rettler Dep., 30:22-31:12.  That job—which was 3-5 years before the events of this case—is the entire time she worked for Corizon or in a correctional facility where Corizon provided medical care.  Rettler Dep., 31:10-15.  She testified that the average length of incarceration in Oregon jails is only 14 days.  Rettler Dep., 56:13-19.  She has never worked as a P.A. in a prison (i.e., the relevant setting in Plaintiff's case).  Rettler Dep., 32:3-14.  She concedes that she has no personal knowledge of any Corizon policy, practice of custom after April 2014.  Rettler Dep., 44: 13-15.  She concedes that she has "no personal knowledge of any facts relating to Corizon's care for prisoners in the [MDOC] between 2017 and 2019.  Rettler Dep. 83:10-14.

Ms. Rettler never worked for CHS, Quality Correctional Care of Michigan, P.C., or the MDOC.  Rettler Dep., 16:4-15. She holds no professional licenses in Michigan and has never worked as a P.A. in Michigan.  Rettler Dep., 16:16-2, 26:6-12.  She has never spoken to Plaintiff or reviewed any documents about him, the MDOC, or Corizon's work in Michigan.   Rettler Dep., 43:22-44:12.  She has never interacted with any individual involved in Plaintiff's case.  Rettler Dep., 45:3-47:1.  Her disclosure does not mention colostomies.  She knows no facts about colostomy care in the MDOC.  Rettler Dep. 48:2-5. Ms. Rettler admits: "So I don't even know

the details of this case.  Like I'm not part of this case." Rettler Dep., 21:19-24.  ***And she shouldn't be.***

Although her disclosure curiously leaves out the location or timeframe of her experience, everything in Ms. Rettler's disclosure relates to her time working in the Washington County jail in Oregon in 2012-2014.  Rettler Dep., 50:23-51:12, 53:8-12.  Plaintiff's counsel questioned Ms. Rettler at length during her deposition.  Her entire rambling testimony in response was about patients in the Washington County jail in Oregon in 2012-2014.  Rettler Dep. 83:3-9.  She knows no facts about colostomy care in the Washington County jail.  Rettler Dep. 47:23-48:1.

## B.      Ms. Rettler does not offer admissible expert testimony

Ms. Rettler was disclosed as a non-retained "expert," but that disclosure was a sham to belatedly identify her as a fact witness. The Disclosure does not identify any expert opinions that she would offer, much less any foundation for any opinions under Fed. R. Evid. 702.  The inadequacy of the "expert" disclosure under Fed. R. Civ. P. 26(a)(2)(c) by itself should preclude her from testifying.  *See* Exhibit B, Objections.

But there really is no dispute about the intent of her proposed testimony. The Court should preclude her from testifying as an expert because she admits that she was not disclosed to provide expert testimony. Rettler Dep., 43: 17-21 ("I have not been asked to give expert testimony in this case at all to my understanding."), *see*

*also* 21:19-24 ("I'm not giving expert testimony.").  She specifically denied being asked to give expert testimony relating to colostomies.  Rettler Dep., 43: 17-21.  Accordingly, the Court should not admit her testimony.

### C.   Ms. Rettler does not offer admissible factual testimony

Ms. Rettler offers no relevant factual testimony. *See* Fed. R. Evid. 401.  She knows nothing about Plaintiff, MDOC, Dr. Papendick or Corizon's work in Michigan.   She offers no facts about colostomy patients, much less in Michigan.  Her two years working in a small Oregon country jail—with an average length of stay of 14 days—was between 3-5 years before the events at issue. There is no evidence connecting her time in Oregon to Plaintiff's care in prison in Michigan from 2017-2019.  Any argument that her experience in the Oregon jail is somehow indicative of how Corizon, Dr. Papendick, or others were making decisions about Plaintiff's colostomy reversal surgery in the Michigan DOC three years or more later is baseless speculation.

As with Dr. Watson's, Ms. Rettler does not provide any way to identify the patients she wants to testify about, and her entire testimony is not supported by any documents.  That makes her entire putative testimony just unverifiable storytelling.  Her testimony is also inherently based on inadmissible hearsay under Fed. R. Evid. 408.  Accordingly, the Court should preclude her from testifying.

Ms. Rettler's proposed "dissimilar and out-of-state conduct evidence" is also inadmissible as to potential punitive damages. *See State Farm Mut. Auto. Ins., Co. v. Campbell*, 538 U.S. 408, 421-422 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis…").

### D.      The unfairly prejudicial nature of Ms. Rettler's testimony substantially outweighs its non-existent probative value

The Court should also exclude Ms. Rettler's testimony pursuant Fed. R. Evid. 403 because its non-existent "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time…" It is obvious that Plaintiff wants to call Ms. Rettler to try to make the jury mad about her experience in an Oregon county jail treating non-colostomy patients three-five years before the facts of this present case in the hopes that the jury will transfer inflamed emotions about those irrelevant facts to Plaintiff's care in Michigan. Again, there is hardly a better example of testimony that should be excluded under Rule 403.

## <u>CONCLUSION</u>

For the reasons stated herein, the Court should preclude Plaintiff from offering any testimony or evidence from or about Jan Watson, M.D. and Cristin Rettler, P.A. Dr. Watson and Ms. Rettler should be precluded from testifying at trial.

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By: /s/*Sunny Rehsi*

Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a YesCare and Keith Papendick, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 29, 2025, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Thomas G. Hackney** (P81283)
Hackney Odlum & Dardas Michigan
Attorneys for Keith Papendick
Bayview Professional Center
10850 E. Traverse Hwy., Suite 4440
Traverse City, MI 49684
231.642.5056
thackney@hodlawyers.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790

adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a
YesCare and Keith Papendick, M.D.*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

                    Plaintiff,

v.

CHX TX, INC., et al.,

                    Defendants

Case No.:  2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
 HON. GERSHWIN A. DRAIN

### [PROPOSED] ORDER ON DEFENDANTS' MOTION
### *IN LIMINE* TO PRECLUDE TESTIMONY OR EVIDENCE FROM
### OR RELATING TO JAN WATSON, MD., AND CRISTIN RETTLER, P.A.

Upon consideration of Defendants' above-entitled Motion, Exhibits, and any response by Plaintiff filed thereto, the Court GRANTS Defendants Motion for the reasons stated therein and Orders that Plaintiff is precluded from introducing any testimony or evidence from or relating to Jan Watson, M.D. and Cristin Rettler, P.A. Dr. Watson and Ms. Rettler are precluded from testifying at trial in this case.

To the extent Defendants object to an exhibit on Plaintiff's Proposed Exhibit List by referring to this Motion, Defendants' Objections are SUSTAINED for the reasons stated herein and the Exhibits are EXCLUDED from trial.


Dated:                                    _____
                                                            Hon. Gershwin A. Drain