# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KONCHISE JACKSON,<br><br>                Plaintiff,<br><br>v.<br><br>CHX TX, INC., et al.,<br><br>                Defendants | Case No.: 2:19-cv-13382-GAD-PTM<br><br>U.S. DISTRICT COURT JUDGE<br>GERSHWIN A. DRAIN |

**CHS TX, INC.'S OBJECTIONS TO
PLAINTIFF'S EXPERT DISCLOSURES**

Defendants CHS Tx, Inc. and Keith Papendick, M.D., by and through their attorneys, Bowman and Brooke, LLP object to Plaintiff's Expert Disclosures, dated May 20, 2025, pursuant to Federal Rules of Evidence 402, 403, 702, 703 and 802 and Federal Rule of Civil Procedure 26(a)(2)(c) as set forth below. Defendants reserve the right to make any and all further objections as may arise to any disclosed expert witness not stated herein.

**OBJECTIONS TO NON-RETAINED EXPERTS**

**Plaintiff's Disclosure of Jan Watson, M.D.:** Dr. Watson is expected to testify regarding her experience working as a primary-care physician for Corizon in a state prison. Dr. Watson is expected to testify that Corizon regularly denied necessary medical care to incarcerated patients as a means of saving money. She will testify that when she worked at a Corizon facility, her requests for necessary specialty care for prisoners were routinely denied, or "ATP'd", by Corizon's Utilization Management Medical Directors. Dr. Watson will testify that the care she was

31921946

requesting for incarcerated patients was what would normally be considered appropriate medical care. She is expected to provide specific examples, including a patient with recurring seizures who was repeatedly denied a neurology consult, a patient with an angled fracture in his hand who was denied an orthopedic consult, and a patient with acute coronary syndrome whom Dr. Watson was told, "that I was to just keep him comfortable and let him die because none of his arteries were bypassable," when medical records from a recent hospital visit showed that some of the patient's arteries were, in fact, bypassable, and that the patient was a candidate for bypass surgery. Dr. Watson is expected to testify that she was required to participate in regular conference calls with other Corizon doctors that were led by higher-up Corizon officials in Tennessee. During the meetings, the group would discuss each patient that was sent to the hospital and was encouraged to consider ways in which the patient could have been managed on-site at the prison. In one such meeting, the providers were warned to stop writing negative comments about the Utilization Management Medical Directors in patients' charts following an ATP. An example given of such a comment (which Dr. Watson did not write) was, "did you even go to medical school?" With respect to the patient with seizures, Dr. Watson will testify that she participated in a meeting about the patient's care with both the patient and her Corizon supervisor, Dr. Stewart. In the meeting, Dr. Stewart told her that sometimes we couldn't control seizures. When Dr. Watson pointed out that one of the best neurological institutes in the country was just down the road, and the patient could be sent there. Dr. Stewart said it would cost too much. Rather than sending the patient to a neurologist to treat his frequent seizures, Dr. Stewart suggested that Dr. Watson obtain a helmet for the patient.

**OBJECTIONS:**

1. Defendants object that Dr. Watson is not properly disclosed as an "expert" witness under Fed. R. Evid. 702 in that her putative testimony is testimony regarding purported facts and not any expert opinion.

2. Defendants object that Dr. Watson's putative testimony is not admissible under Fed. R. Evid. 702 because she is not qualified to offer any relevant expert testimony in Plaintiff's case, her testimony is not the product of reliable

2

31921946

principles and methods, her testimony is not based on sufficient facts or data, and her testimony does not reflect a reliable application of any principles or methods to the facts of Plaintiff's case.

3. Defendants object that Dr. Watson's putative testimony is not admissible under Fed. R. Evid. 703 because her testimony is not amissible under Fed. R. Evid. 702, any facts or data she would disclose to the jury are inadmissible, and the probative value in helping the jury evaluate any opinion she may offer does not substantially outweigh their prejudicial effect.

4. Defendants object that Dr. Watson's putative testimony is not admissible pursuant to Fed. R. Evid. 402 and 403 because her testimony is not relevant to Plaintiff's case and its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

5. Defendants object that Dr. Watson's putative testimony is not admissible pursuant to Fed. R. Evid. 802 because it is replete with inadmissible hearsay.

6. Defendants object to Dr. Watson's putative testimony pursuant to Fed. R. Civ. P. 26(a)(2)(c) because the Plaintiff's disclosure did not adequately identify the subject matter of any purported expert opinions that would be admissible under Fed. R. Evid. 702, 703, or 705 or any purported expert opinions.

31921946

7. Defendants reserve any and all further objections not stated herein.

In support of these objections, Defendants state as follows: Dr. Watson is an OB/GYN, a specialty that has no relevance to this case. Although Plaintiff improperly failed to disclose these facts, her putative testimony relates to her employment by a non-party entity in the Arizona Department of Corrections three days a week for five months in 2017. Dr. Watson has no relevant expertise in any subject related to this case, her disclosure offers no purported or admissible expert opinions, and her putative testimony does not relate to colostomies or colostomy reversals. Further, Dr. Watson has never been an employee of Corizon Health, Inc. or CHS Tx Inc., she never worked in Michigan, she has no experience or connection to the Michigan Department of Correction or any individuals relevant to Plaintiff's case, and she never treated Plaintiff. Dr. Watson's brief experience working with Arizona prisoners with irrelevant medical conditions is not relevant to any issue in this case and is only intended to create unfair prejudice by inflaming. confusing and misleading the jury with irrelevant stories and inadmissible hearsay. Defendants reserve the right to present additional facts and arguments supporting exclusion of Dr. Watson as discovery may reveal.

31921946

**Plaintiff's Disclosure of Cristin Rettler, P.A:** Ms. Rettler is expected to testify regarding her experience working as a physician's assistant for Corizon in a county jail. Ms. Rettler is expected to testify that Corizon regularly denied necessary medical care to incarcerated patients as a means of saving money. She will testify that there was constant pressure from her supervisors not to send patients to the E.R., even when their condition was emergent and required hospitalization. P.A. Rettler will further testify that she was criticized by her Corizon Regional Medical Director every time she ordered a patient transported to the emergency room; in eighteen months of employment, not one of her ER referrals was considered appropriate by Corizon, and every single request she made for off-site specialty care at the jail where she worked was denied. Often, the justification proffered for the denial was an assertion that the detainee could obtain the necessary care after they were released from jail or transferred to prison, at which point Corizon would no longer be financially responsible for their care. Ms. Rettler will testify that she has worked in an E.R. and was aware of which conditions could be safely treated at the jail and which conditions required prompt treatment at an emergency department. Ms. Rettler will also testify that she attended a conference at Corizon's corporate headquarters in Tennessee. Ms. Rettler will testify that the presentations at the conference focused on ways to increase Corizon's profits by denying medical care, and how to limit exposure to liability while providing as little medical care to incarcerated patients as possible.

**OBJECTIONS:**

1. Defendants object that Ms. Rettler is not properly disclosed as an "expert" witness under Fed. R. Evid. 702 in that her putative testimony is testimony regarding purported facts and does not offer any expert opinion.

2. Defendants object that Ms. Rettler's putative testimony is not admissible under Fed. R. Evid. 702 because she is not qualified to offer any relevant expert testimony in Plaintiff's case, her testimony is not the product of reliable principles and methods, her testimony is not based on sufficient facts or data, and

her testimony does not reflect a reliable application of any principles or methods to the facts of Plaintiff's case.

3. Defendants object that Ms. Rettler's putative testimony is not admissible under Fed. R. Evid. 703 because her testimony is not amissible under Fed. R. Evid. 702, any facts or data she would disclose to the jury are inadmissible, and the probative value in helping the jury evaluate any opinion she may offer does not substantially outweigh their prejudicial effect.

4. Defendants object that Ms. Rettler's putative testimony is not admissible pursuant to Fed. R. Evid. 402 and 403 because her testimony is not relevant to Plaintiff's case and its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

5. Defendants object that Ms. Rettler's putative testimony is not admissible pursuant to Fed. R. Evid. 802 because it is replete with inadmissible hearsay.

6. Defendants object to Ms. Rettler's putative testimony pursuant to Fed. R. Civ. P. 26(a)(2)(c) because the Plaintiff's disclosure did not adequately identify the subject matter of any purported expert opinions that would be admissible under Fed. R. Evid. 702, 703, or 705 or any purported expert opinions.

7. Defendants reserve any and all further objections not stated herein.

In support of these objections, Defendants state as follows: Although Plaintiff fails to disclose these facts, Ms. Rettler was a Physician's Assistant in an Oregon county jail who left her position in 2013. Ms. Rettler has no relevant expertise in any subject related to this case, her disclosure offers no purported or admissible expert opinions, and her putative testimony does not relate to colostomies or colostomy reversals. Further, Ms. Rettler never worked in Michigan, she has no experience or connection to the Michigan Department of Correction or any individuals relevant to Plaintiff's case, and she never treated Plaintiff. Ms. Rettler's alleged experience working as a P.A. with inmates with irrelevant medical conditions in an Oregon county jail over four years prior to the events of Plaintiff's case is not relevant to any issue in this case and is only intended to create unfair prejudice by inflaming, confusing, and misleading the jury with irrelevant stories and inadmissible hearsay. Defendants reserve the right to present additional facts and arguments supporting exclusion of Ms. Rettler as discovery may reveal.

**Plaintiff's Disclosure of Sonya Fulks, RN:** Ms. Fulks is expected to testify regarding her experience working for the Michigan Department of Corrections (MDOC), working as an Oncology Case Manager for Corizon, and working for correctional health companies that have replaced Corizon as the MDOC's healthcare contractor. Ms. Fulks is expected to testify that, in her role, she routinely observed Corizon delay or deny necessary diagnostic testing and medical care to incarcerated patients, including bone scans and CT lung scans for individuals with significant smoking histories. She will testify that Corizon refused to approve certain chemotherapy regimens recommended by outside oncologists when those treatments required admission to a hospital or outside medical facility. Instead, Corizon would only authorize chemotherapy drugs that could be administered within the correctional facility, even when such treatment was not consistent with

the oncologist's recommendation. Ms. Fulks is expected to testify that Corizon's Utilization Management team regularly made it difficult to obtain approval for diagnostic procedures like biopsies or radiation-related testing, and that even when care was approved, it was routinely delayed for five to seven months or longer. Ms. Fulks is also expected to testify that Corizon medical providers were routinely not held accountable for lapses in patient care. Doctors frequently failed to follow up with patients and often failed to report to the facilities at all, instead "punching in" from home despite being scheduled to be on-site at a facility. She will testify that many Corizon medical providers, including those in Utilization Management, were quick to dismiss incarcerated patients' reports of illness or symptoms as malingering. Fulks will describe one instance in which Dr. Papendick, a Utilization Management physician, called her to question a request for cancer-related testing for an inmate with a reported cancer history, asking, "How do we even know it's true?" Fulks will testify that this skepticism toward patients' reported medical histories was common and contributed to delayed diagnoses and treatment. Ms. Fulks will describe an incident involving an inmate who had been discharged from a hospital intensive care unit and who required placement at a step-down facility. Instead, the patient was transferred to the MDOC's Duane Waters facility, which is a health center. Fulks knew—based on her extensive experience working at the University of Michigan Hospital—that Duane Waters was not equipped to care for a critically ill patient who was unconscious with a tracheotomy in place. Providers at Duane Waters also recognized they were not equipped to manage the patient, but were told by Corizon Regional Medical Director Dr. Ricky Coleman that Corizon had ordered the patient to remain there. Fulks is expected to testify that the only justification she is aware of for this decision was cost. Ms. Fulks will further testify that Corizon medical providers were consistently discouraged from sending patients to the emergency room, and that any such decisions were closely scrutinized by supervisors. Providers were instructed not to document in patient records that a test, treatment, or procedure had been "denied" by Utilization Management. Instead, they recorded the request as having been "ATP'd," or subject to an "alternative treatment plan"—a designation intended to shield Corizon and its providers from liability. Finally, Ms. Fulks is expected to testify that many of the care decisions made by Corizon would never be tolerated in a community healthcare setting, and only occurred because the patients were incarcerated. She will testify that in her experience, Corizon routinely denied or delayed necessary medical care based on financial considerations alone.

**OBJECTIONS:**

1. Defendants object that Ms. Fulks is not properly disclosed as an "expert" witness under Fed. R. Evid. 702 in that her putative testimony is testimony regarding purported facts and does not offer any expert opinion.

2. Defendants object that Ms. Fulks's putative testimony is not admissible under Fed. R. Evid. 702 because she is not qualified to offer any relevant expert testimony in Plaintiff's case, her testimony is not the product of reliable principles and methods, her testimony is not based on sufficient facts or data, and her testimony does not reflect a reliable application of any principles or methods to the facts of Plaintiff's case.

3. Defendants object that Ms. Fulks's putative testimony is not admissible under Fed. R. Evid. 703 because her testimony is not amissible under Fed. R. Evid. 702, any facts or data she would disclose to the jury are inadmissible, and the probative value in helping the jury evaluate any opinion she may offer does not substantially outweigh their prejudicial effect.

4. Defendants object that Ms. Fulks's putative testimony is not admissible pursuant to Fed. R. Evid. 402 and 403 because her testimony is not relevant to Plaintiff's case and its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

9

31921946

5. Defendants object that Ms. Fulks's putative testimony is not admissible pursuant to Fed. R. Evid. 802 because it is replete with inadmissible hearsay.

6. Defendants object to Ms. Fulks's putative testimony pursuant to Fed. R. Civ. P. 26(a)(2)(c) because the Plaintiff's disclosure did not adequately identify the subject matter of any purported expert opinions that would be admissible under Fed. R. Evid. 702, 703, or 705 or any purported expert opinions.

7. Defendants reserve any and all further objections not stated herein.

In support of these objections, Defendants state as follows: Ms. Fulks is a nurse who was employed from May 30, 2018 to September 2021 as an Oncology Manager, a medical specialty that has no relevance to this case. Ms. Fulks has no relevant expertise in any subject related to this case, her disclosure offers no purported or admissible expert opinions, her putative testimony about cancer-related experience is not relevant to colostomies or colostomy reversals, and her testimony is rife with inadmissible hearsay and unsupported speculation about the state of mind and motives of unidentified individuals. Ms. Fulks has no connection to Plaintiff or his medical care. Her disclosure alleges that she had one interaction with Dr. Papendick, which did not relate to a gastrointestinal patient and/or patient seeking a colostomy reversal, and dos not allege any relevant contacts with others related to this case. Her putative testimony about the Duane Waters facility or community health centers has no connection to Plaintiff's case. Ms. Fulks's

putative testimony is not relevant to any issue in a case about Plaintiff's colostomy and is only intended to create unfair prejudice by inflaming, confusing, and misleading the jury with irrelevant stories and inadmissible hearsay. Defendants reserve the right to present additional facts and arguments supporting exclusion of Ms. Fulks as discovery may reveal.

Defendants reserve the right to present additional facts and arguments supporting exclusion of the Plaintiffs' disclosed experts as discovery may reveal and/or pursuant to Fed. R. Evid. 702 and its progeny.

Dated: June 2, 2025

**BOWMAN AND BROOKE LLP**

By: /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
Adam M. Masin
Attorneys for Defendant CHS TX, Inc., d/b/a YesCare and Keith Papendick, M.D.
101 W. Big Beaver Road, Suite 1100
Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com
adam.masin@bowmanandbrooke.com

11

31921946