## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,                    Case No. 19-cv-13382

-vs-                                Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF RALPH SILVERMAN, M.D. PURSUANT TO RULES 702, 401, AND 403 OF THE FEDERAL RULES OF EVIDENCE**

NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and in response to Defendants' Motion in Limine to Exclude the Opinions of Ralph Silverman, M.D. Pursuant to Rules 702, 401, and 403 of the Federal Rules of Evidence, states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should deny Defendant's Motion as without merit.

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Exclude the Opinions of Ralph Silverman, M.D. Pursuant to Rules 702, 401, and 403 of the Federal Rules of Evidence in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date:  August 5, 2025

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7-LAW
F: (313) 771-5785

MARKO LAW

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

          Plaintiff,                  Case No. 19-cv-13382

-vs-                              Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

          Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF RALPH SILVERMAN, M.D. PURSUANT TO RULES 702, 401, AND 403 OF THE FEDERAL RULES OF EVIDENCE

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.    Whether the Court should exclude Plaintiff's expert, Dr. Ralph Silverman, from giving relevant testimony at trial that will assist the jury in making determinations as to core issues in this case.

**Defendant states: Yes.**
**Plaintiff states: No.**
**This Court should state: No.**

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Federal Rules

Fed. R. Ev. 401

Fed. R. Ev. 402

Fed. R. Ev. 403

Fed. R. Ev. 702

### Cases

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993)

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976 (6th Cir. 2004)

*Gass v. Marriott Hotel Servs.*, 558 F.3d 419 (6th Cir. 2009)

*Stewart v. Wilkinson*, No. 2:03-cv-0687, 2008 U.S. Dist. LEXIS 35715 (S.D. Ohio Apr. 30, 2008)

*Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004)

# INTRODUCTION

The Court is well-acquainted with this case, wherein Plaintiff Kohchise Jackson entered the custody of the Michigan Department of Corrections ("MDOC") in 2017. Defendants were contracted to provide medical care for prisoners at the time Plaintiff was incarcerated. When Mr. Jackson entered the prison system, he had a temporary colostomy that his surgeon had intended to reverse the previous month. **ECF No. 65-1, PageID.1632-33, Dep. 16:16-17:7.** Defendants refused to provide the reversal surgery to Mr. Jackson, forcing him to live with a colostomy bag for his entire term of incarceration. Dr. Papendick is the individual who approved or denied requests for surgery. Plaintiff brought suit against Defendants, alleging deliberate indifference and a *Monell* claim due to Defendants' refusal to grant Plaintiff care in order to save themselves money.

Plaintiff has retained an expert, Dr. Ralph Silverman, to assist jurors in the consideration of a core issue in this case: whether Defendants' conduct in refusing to allow Plaintiff treatment was based on reasonable medical judgment. Dr. Silverman's C.V. shows a highly qualified colorectal surgeon with decades of experience. **Exhibit 1, Silverman CV.** Dr. Silverman was timely and properly disclosed in this case, and Defendants deposed him. Dr. Silverman is keenly familiar with the standard of care for treating colostomy patients. Indeed, he has treated hundreds of them:

Q. About how many colostomy takedowns do you perform in a typical month?

**A. Well, like I said, it's usually one or maybe two a week.**

Q. So, perhaps, six per month –

**A. Yes.**

Q. -- approximately? So that would be almost 70, about, per year?

**A. That sounds reasonable.**

. . .

Q. How many colostomy closures do you think you've performed over the course of your career?

**A. I don't know, but 17 years would be hundreds, obviously.**

**ECF No. 60-10, PageID.1545.**

Dr. Silverman graduated medical school in 1998 in the top third of his class. **Ex. 1 at 2.** Here, in his deposition, Dr. Silverman testified that he has been a licensed medical professional for almost thirty years, since 1998. **ECF No. 60-10, PageID.1532.** He is board certified in both colon and rectal surgery, as well as in general surgery. **Ex. 1 at 1.** He has held numerous positions in colorectal surgery for nearly twenty years:

| | |
|---|---|
| Attending Surgeon- Signature Health Group | 4/2012-Present |
| Clinical Assistant Professor of Surgery, St. Louis University (*nonpaid position*) | 6/2012-Present |
| Attending Surgeon-ColoRectal Specialists, P.C. | 3/2006-2012 |
| Director of Surgery Southeast Texas Medical Associates | 7/2004-2/2006 |
| Attending-Colorectal Surgery and General Surgery Memorial Hermann Baptist Hospital Christus Saint Elizabeth Hospital | 7/2004-2/2006 |
| Director of Total Parenteral Nutrition Memorial Hermann Baptist Hospital | 7/2004-2/2006 |

*Id.*

Dr. Silverman did his fellowship in colon and rectal surgery at William Beaumont Hospital in Royal Oak, Michigan. *Id.* He has served as an author on numerous papers and given several presentations at medical conferences. *Id.* **at 3.** He has also been published seven times. *Id.* **at 4.** He has served on over a dozen professional committees throughout his career. *Id.* He has also been a member of the American College of Surgeons since 2005 and the American Society of Colorectal Surgeons since 2006. *Id.* **at 5.**

Dr. Silverman is qualified to testify in this case as to colostomy reversal surgery, when a patient may need one, and the appropriate medical care that should be given to such a patient. Such testimony is extremely relevant to the issues in this case. After all, if Dr. Silverman testifies as to the care he, in his decades of

experience, has found colostomy patients to need, this will greatly assist the jury in making a determination as to whether Defendants' truly acted with reasonable medical judgment or if they, as Plaintiff alleges, ignored their medical duty to Plaintiff and instead pursued higher profits over caring for the prison population they were contractually bound to care for.

## LAW AND ANALYSIS

Federal Rule of Evidence ("FRE") 401 determines that evidence is relevant if "(a) it has the tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." According to FRE 402, all relevant evidence is generally admissible, but the evidence must first be relevant.

Relevant evidence may be excluded under FRE 403 if its probative value is substantially outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." However, "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be unfair." *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (internal citations and quotations omitted).

FRE 702 governs the admissibility of expert testimony, providing:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise

if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals*, the United States Supreme Court held that FRE 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). Ensuring reliability requires the trial court to make "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-593.

"The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008).

Moreover, as noted by this Court, "rejection of expert testimony is the exception rather than the rule." *Thompson v. Ryobi Ltd.*, Civil Action No. 19-13081, 2021 U.S. Dist. LEXIS 244466, at \*4 (E.D. Mich. Sep. 16, 2021).

**I.    Dr. Silverman's Extensive Experience in Colorectal Surgery is Sufficient to Allow Him to Give Highly Relevant Testimony at Trial That Will Be Helpful to Jurors in Making Determinations in this Case**

While Defendants' Motion appears to argue that every opinion rendered by Dr. Silverman must apparently be backed up by some citation to medical literature, such a stringent standard has explicitly been rejected within this circuit. Indeed, according to the Sixth Circuit, a physician need not "demonstrate a familiarity with accepted medical literature or published standards in [an area] of specialization in order for his testimony to be reliable in the sense contemplated by Federal Rule of Evidence 702." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 980 (6th Cir. 2004). The position advocated for by Defendants "is an erroneous statement of the law." *Id.* "In fact, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of *experience*." *Id.* (emphasis in original) (internal quotation and citation omitted); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

"The exclusion of a medical doctor's professional opinion, rooted in that doctor's 'extensive relevant experience,' is 'rarely justified in cases involving medical experts as opposed to supposed experts in the area of product liability.'" *Gass v. Marriott Hotel Servs.*, 558 F.3d 419, 427 (6th Cir. 2009) (quoting *Dickenson*, 388 F.3d at 982). Indeed, "nothing in the amendment requires the court to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support. The Rule 104(a) standard does not require perfection." Rule 702 Advisory Committee's Notes to 2023 Amendments.

Here, in his deposition, Dr. Silverman testified that he has been a licensed medical professional for almost thirty years, since 1998. **ECF No. 60-10, PageID.1532.** Dr. Silverman has performed hundreds of colostomy reversals throughout his career. *Id.* **at PageID.1545.**

Dr. Silverman also testified that, his many years of experience, he has found that the adverse effects of having a colostomy and the suffering involved lead to almost everyone who has one seeking to have it reversed:

> **THE WITNESS: I, personally, would like my stoma reversed. In my experience, I will tell you that, the overwhelming majority, I'd venture to say, 99 percent of people who have had stomas would like them reversed.**
>
> BY MR. CROSS:
>
> Q. Why would -- or let me ask it this way. Why do the overwhelming majority of your patients want to have their stoma reversed?

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

. . .

**THE WITNESS: Because people want their stomas reversed because they can be difficult to manage, they require a lot of upkeep, they require having a constant supply of -- supplies to change the stoma. They can leak, they can be embarrassing, they can smell, and cause social anxiety and psychological issues; and we have teams of people, clinics that we send patients, just for these particular issues.**

BY MR. CROSS:

Q. So would you agree that having a colostomy involves suffering?

. . .

**THE WITNESS: That question is based on my experience over the last 17 years, dealing with patients with colostomies; that, in fact, there is a significant amount of suffering that goes with them, and social disability.**

BY MR. CROSS:

Q. And you testified that you refer patients with colostomies to special treatment providers to deal specifically with those social and personal issues associated with having a bag?

**A. Yes. So people we send them to not only help them with the appliances, and what is the most secure appliance, and things that they can live with, and they also help them socially, and what things you can and can't do, and things like that.**

*Id.* **at PageID.1547-1548.**

Critically, in this case, Dr. Silverman testified that his experience involving

these hundreds of colostomy patients he has treated and seen, as well as the suffering

they experience and complications that may arise, contributes to the standard of care and why he found such was breached by refusing to reverse the colostomy for Plaintiff:

> **A. The longer you wait to reverse a colostomy, the more intraabdominal scarring, and the other things that I mentioned can happen. It doesn't mean it's going to. Nothing is a hundred percent, Counselor, but it doesn't mean that it can't happen.**
>
> Q. Let me ask you this question then. So it sounds like, Dr. Silverman, what you're saying is that, because these things could happen, it was worth you considering these types of things when you were issuing your expert report, correct?
>
> **A. Absolutely. Absolutely.**
>
> Q. It was worth you mentioning that these things could happen, that these are risks that could happen, when you were trying to consider, with your medical judgment, what the standard should be, right?
>
> **A. That's right.**

*Id.* **at PageID.1540.**

Dr. Silverman's decades of experience have clearly been adequately connected to the opinions he has reached in this case, based on his extensive experience with other colostomy patients before.

*Daubert*'s role is "ensuring that the courtroom door remains closed to junk science[.]" *Dickenson*, 388 F.3d at 982 (quoting *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002)). Clearly, a colorectal surgeon with decades of experience and who has seen and treated hundreds of colostomy patients is not the sort of "junk

science" this Court should preclude under a *Daubert* analysis. Simply because Dr. Silverman did not append every opinion he reached with a citation to some medical literature, as Defendants wish for, does not negate his extensive knowledge and experience upon which he can permissibly base his testimony under *Daubert*.

Moreover, an expert witness's opinion also must be based on record facts "as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citing Fed. R. Evid. 702 (explaining that expert testimony must be based on "sufficient facts or data" and the "product of reliable principles and methods")).

Here, it is clear that Dr. Silverman's opinions are based on the facts of this case, as he extensively noted the facts of Plaintiff's case in his declaration and in his deposition.

19. Mr. Jackson's medical records show no contraindications to a colostomy reversal surgery within two to three months of placement. Mr. Jackson did not have any relevant comorbidities that would make the surgery more difficult or higher-risk than normal.

20. Simply put, there was absolutely no medical reason to justify delaying the procedure for Mr. Jackson for over two years.

**Exhibit 2, Silverman Declaration, p. 4.**

He also testified that as to the litany of files he possesses and has reviewed pertaining to the facts of this case:

A. I brought my record with me, including -- in no particular order -- an expert report from Dr. McKenna, a filed amended complaint, an expert report from Dr. McQuiston, the Michigan Department of Correction records, a deposition of Dr. Papendick, a record of replacement surgery at Jackson, a second Corizon expert report, a Notice of Deposition, and a third Corizon expert report. I can open any of these.

**ECF No. 60-10, PageID.1532.**

Dr. Silverman has extensively reviewed the facts of this case, and the facts have clearly contributed greatly to his opinion that Defendants did not act according to reasonable medical judgment in denying care to Plaintiff. The fact that his opinions were based in part on the facts of this case rather than citations to literature does not render his testimony impermissible at trial, contrary to Defendants' arguments. His findings are not mere speculation; they are well grounded in the record, which reflects the gross refusal of Defendants to allow a medically necessary procedure for Plaintiff. Dr. Silverman's opinions are evidently based on his decades of experience, connected to this case through his intimate review of the facts thereof. His opinions will clearly assist the trier of fact in making determinations as to whether Defendants refused to allow Plaintiff treatment based on well-founded, honest medical judgment or – as Plaintiff has alleged – in defiance of medical judgment, but rather to increase Defendants' profit margins.

Moreover, it bears noting that Defendants' experts also cited no medical literature in their reports. Defendants argue to this Court that Dr. Silverman, a

colorectal surgeon with many years of experience and hundreds of colostomy surgeries he has performed, cannot opine as to the standard of care for colostomy reversals because he has cited no medical literature. Yet Defendants' retained experts, only one of whom is even a surgeon, have also not cited to literature. **Exhibit 3, Defendants' Disclosure of Expert Reports.** This simply demonstrates the absurdity of Defendants' argument here.

Defendants' Motion should be accordingly denied.

## II. Dr. Silverman's Testimony Need Not Single-Handedly Prove Plaintiff's Claims in Order to Be Admissible

Defendants also proffer the baffling argument that, because Defendants claim Dr. Silverman's testimony cannot single-handedly prove Plaintiff's claims and establish liability, his testimony would thus "inflame" and "confuse" the jury. This argument is simply nonsensical. In support of this argument, Defendants attempt to relitigate the issue of whether Defendants' decision to refuse care to Plaintiff was based on sound medical judgment. Indeed, Defendants repeatedly characterize Dr. Silverman's testimony as constituting mere differences of medical opinion with Defendants.

Defendants contend Dr. Silverman must be excluded because, put concisely, "[h]e does not contend that not approving a reversal surgery amounted to something more than gross negligence or medical malpractice." ***See* ECF No. 144,**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

**PageID.5109.** However, Dr. Silverman need not single-handedly prove Plaintiff's entire case. This Court has already noted that Plaintiff has shown sufficient evidence that Defendants' conduct was not based on medical judgment, but rather on profit-seeking motivations:

> Different physicians can have different approaches; conflicting testimony on medical judgment alone is not enough to show that the defendant doctor was reckless or intentional, and courts must give deference to properly stated and supported medical judgments. But on the facts of this case, there is also evidence that raises a genuine issue of material fact as to whether the decision to deny Plaintiff the surgery was in fact based on sound medical judgment, or whether the justification now offered is post-hoc and pretextual. Defendant has failed to establish credible, specific reasons for denying Plaintiff's medical treatment. **And Plaintiff plausibly alleges, as is discussed more thoroughly _infra_ in Section C, that the denial was instead primarily or wholly driven by economic considerations.**

**ECF No. 73, PageID.2980-2981 (emphasis added).**

Indeed, this Court stated:

> Here, Plaintiff has provided sufficient circumstantial evidence that cost-cutting motives, rather than assessment of health risks and medical needs of patients, drive the approval of off-site referral procedures like colostomy reversals.
>
> . . .
>
> The evidence shows that Corizon's contract with the state includes a formula by which Corizon and MDOC share the costs for off-site procedures such as surgeries, up to a certain per-patient cost threshold. Pl.'s Ex. 2, ECF No. 66-2, PageID.2009-11. Corizon therefore has a financial incentive to keep its off-site costs below that threshold, because it is wholly responsible for any costs above that amount. ECF No. 66, PageID.1884-85. Plaintiff presents evidence that Corizon has

achieved significant reduction in expenditures towards off-site utilization services since it began working with MDOC in 2009. Pl.'s Ex. 19, ECF No. 66-19, PageID.2300-01. Plaintiff further presents evidence of key performance indicators, or KPIs, tracked by Corizon for its MDOC contract per 1000 prisoners, including: inpatient hospital days, outpatient referrals, and offsite procedure utilization. Pl.'s Ex. 24, ECF No. 66-24, PageID.2415-18. Plaintiff plausibly alleges that these metrics are tracked against set targets in order to keep costs down.

**Id. at PageID.2985-2986.**

Defendants' attempts to argue that Dr. Silverman must be precluded from testifying at trial because, according to them, his testimony does not single-handedly prove Plaintiff's entire case – that Defendants acted for profit rather than out of medical judgment – are devoid of merit. Dr. Silverman's testimony is just one piece of evidence out of many. It need not, as Defendants absurdly appear to contend, single-handedly prove Plaintiff's entire case.

Defendant makes a similar argument that "Dr. Silverman has done nothing whatsoever to establish a 'pattern' claim." **See ECF No. 144, PageID.5110.** For the same reason, this argument is nonsensical. Dr. Silverman's testimony is just one of many pieces of evidence. Again, this Court has already held that Plaintiff presented evidence on this issue of Defendants' pattern of bad conduct:

There are also two affidavits from MDOC prisoners, one who had a colostomy reversal approved only after suffering severe complications, and one who has to this day never had the reversal surgery done and has been told more than once that "a request to reverse a functional colostomy would never be approved." Exs. 36, 37, ECF No. 66. These examples fit the pattern of the alleged policy to not approval colostomy

reversals if the colostomy is generally functioning, thereby avoiding the cost of the offsite procedure.

**ECF No. 73, PageID.2987.**

Dr. Silverman need not opine as to Defendants' pattern of bad behavior, nor is Plaintiff even sure how he would do that, as he does not work for or with Defendants.

Defendants also proffer the ludicrous argument that Dr. Silverman must not be permitted to testify because he "does not offer any opinions about any other specific colostomy patient." *Id.* Dr. Silverman testified that he has treated hundreds of colostomy patients over the years:

Q. About how many colostomy takedowns do you perform in a typical month?

**A. Well, like I said, it's usually one or maybe two a week.**

Q. So, perhaps, six per month –

**A. Yes.**

Q. -- approximately? So that would be almost 70, about, per year?

**A. That sounds reasonable.**

. . .

Q. How many colostomy closures do you think you've performed over the course of your career?

**A. I don't know, but 17 years would be hundreds, obviously.**

**ECF No. 60-10, PageID.1545.**

He also testified that, based on his experience, most colostomy patients suffer and want the procedure reversed. ***Id.* at PageID.1547-1548.**

He clearly has ample experience with colostomy patients to testify as to colostomy-related issues. The fact he does not testify as to any single specific one patient out of the hundreds he has treated is utterly irrelevant. That does not render his testimony inadmissible or otherwise untrustworthy to be admitted at trial.

Each of Defendants' arguments that Dr. Silverman's testimony is irrelevant and would confuse jurors are, as discussed above, entirely without merit. Defendants nitpick tiny instances where his testimony could be different and attempts to argue this renders his opinions outright inadmissible. Such arguments hold no weight and should be accordingly rejected by this Court.

<u>**CONCLUSION**</u>

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Exclude the Opinions of Ralph Silverman, M.D. Pursuant to Rules 702, 401, and 403 of the Federal Rules of Evidence in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date:  August 5, 2025

<u>**PROOF OF SERVICE**</u>

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 5, 2025**, via:

☐ U.S. Mail              ☐ Fax
☐ Hand Delivered         ☐ Overnight Carrier
☐ Certified Mail         ☐ Other:
☒ ECF System             ☐ Email

/s/ *Mackenzie S. Kell*