# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KOHCHISE JACKSON,

                Plaintiff,                    Case No. 19-cv-13382

-vs-                                      Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

                Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JOHN WEBBER

     NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his

attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and states as

follows for his Motion to Overrule Defendants' Objections to the Deposition

Testimony of Dr. John Webber for the reasons more fully set forth in Plaintiff's Brief in Support, which is hereby incorporated by reference.

Pursuant to Local Rule 7.1, Plaintiff's counsel sought concurrence with Defense counsel, but concurrence was refused.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court GRANT Plaintiff's Motion to Overrule Defendants' Objections to the Deposition Testimony of Dr. John Webber.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 470-2011
Email: jon@markolaw.com

Date: August 5, 2025

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,                        Case No. 19-cv-13382

-vs-                                 Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JOHN WEBBER

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.   Whether the Court should overrule Defendants' objections to the deposition
     testimony of Dr. John Webber.

**Plaintiff states: Yes.**
**This Court should state: Yes.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Cases

*Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-302, 2017 U.S. Dist. LEXIS 28325, (S.D. Ohio Feb. 28, 2017)

*Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 318 (N.D. Fla. 2021).

# INTRODUCTION

On July 29, 2025, the parties took the de benne esse trial deposition of Dr. John Webber. During the deposition, a number of objections were made by counsel the Defendants. **Exhibit 1, Webber Deposition.**[1] Defense counsel objected to almost every question. On August 1, 2025, in an attempt to save time for both the parties and this Honorable Court, Plaintiff's counsel reached out to Defense counsel to attempt to reach agreement on as many objections as possible and sent a purged transcript. Defense counsel, however, refused to withdraw or even consider withdrawing even a single objection. **Exhibit 2, Purged Transcript**



**Exhibit 3, Email.**

Defense counsel's refusal to withdraw any of the objections highlighted in Plaintiff's purged deposition transcript has necessitated the filing of this Motion, including far more objections should be necessary to discuss. Defendants' refusal to

---

[1] Dr. Webber is a general surgeon and former head of surgery, who practices at DMC in Commerce Township. He is unable to testify live at trial due to pre-scheduled patient surgeries.

4

withdraw a single objection, out of many made, is absurd and a waste of the parties' time and, more importantly, a waste of this Court's time, particularly in the final weeks before trial with a flurry of Motions in Limine, objections to jury instructions, and objections to verdict forms that the Court must also consider. Simply put, such extensive briefing on this issue should not have been necessary at all.

## LAW AND ANALYSIS

The following are each objection made by Defendants and why they should be overruled:

```
 7   Q.  So, these are all risks of harm that Mr. Jackson would
 8        have been exposed to due to the prolonged delay in
 9        getting the reversal?
10   A.  Yes. And --
11            MS. WEIL: Objection. Argumentative.
12   Q.  Go ahead.
13   A.  And another complication of a colostomy is the
14        development of what we call a colostomy stenosis, or a
15        recessed colostomy, where the colostomy shrinks.
16        Instead of being rose budded off the abdominal wall by
17        two centimeters, it actually recesses into the skin so
18        that it's hard to even see. And if it becomes stenotic
19        or recessed or sunken, some people call it a sunken
20        colostomy, it's hard to defecate through that colostomy,
21        and that would mimic a large bowel obstruction which is
22        also life-threatening.
```

**Ex. 1 at 10:7-22.**

This objection is not argumentative. It simply asks whether the delay in Plaintiff's care would have resulted in the risks of harm listed by Dr. Webber. It in no way was combative with the witness or suggestive of how he should answer.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

1  A.  -- Dr. Papendick a surgeon?
2  Q.  No, he was not.
3  A.  Well, what kind of physician is he, if I might ask?
4         MS. WEIL:  Objection.  The witness is asking
5    questions.
6         MR. MARKO:  Yeah.  That's okay.

This baseless objection to Dr. Webber "asking questions" must be overruled

as well. It is clear that he was simply trying to get context for Dr. Papendick in the

context of the standard of care. A witness requesting context for a question is in no

way impermissible.

25  Q.  I want you to assume, and the jury will hear in this

1    case, that Dr. Papendick is not a surgeon, not only is
2    he not a surgeon but he is not board-certified, yet he
3    is making decisions and making recommendations on
4    surgery for outpatient purposes.  What does that tell
5    you, Doctor?
6         MS. WEIL:  Objection.  Foundation,
7    argumentative.
8  Q.  Go ahead.

6         MS. WEIL:  Objection.  Foundation,
7    argumentative.
8  Q.  Go ahead.
9  A.  Am I allowed to answer?
10  Q.  Yes.

24         MS. WEIL:  Objection.  Assumes facts not in
25    evidence.

*Id.* at 17:1-10; 17:24-25.

This objection must be overruled as well. Plaintiff's counsel gave Dr. Webber

sufficient context to give his opinion on Dr. Papendick. Dr. Webber thus had

adequate foundation to give that testimony. Moreover, the question was not

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

argumentative and merely sought Dr. Webber's opinion. Moreover, the facts are in

evidence, as it is true that he is not board-certified and was in charge of Defendants'

decision making process, as argued repeatedly throughout Plaintiff's briefing.

```
16  Q.  And we'll talk about that and why not, but for
17      Mr. Jackson, did you have any qualms?  Did you say, you
18      know, did you have -- you know, think to yourself:
19      Well, you know what, maybe he should just keep this
20      colostomy forever?  Did you ever have any second
21      guessing of yourself?
22          MS. WEIL:  Objection.  Leading.
23  A.  First of all, again, as I said earlier, colostomies, if
24      the patient is in good health and has some longevity to
25      them, meaning they're not -- you know, I don't think I

1       would reverse a colostomy in somebody who is over
2       90-years-old unless they were really in good health, but
3       if they have longevity in their life -- or they have
4       life expectancy and they're in good health and there's
5       no medical contraindication to reversing them, they
6       don't have terminal cancer or something like that, they
7       should be reversed.
8           So, I never even thought twice about not
9       offering him reversal.  I think reversal was indicated,
10      and as a medical provider, I thought that's the least I
11      could do is to offer him my expertise in reversing his
12      colostomy.
```

*Id.* **at 23:16-24-12.**

This is not a leading question. It is not an affirmative statement simply seeking

confirmation thereof. The question does not guide Dr. Webber toward an inevitable

answer and, thus, this objection must be overruled.

7

23  Q.  Now, Dr. Kansakar, in Exhibit 2, which the jury's gonna
24      see, wrote a letter that says (as read):  "My
25      recommendation and the standard of care for this patient

Page 27

1      is to have an X-ray via the distal rectal stump and a
2      colostomy reversal.  Please see attached note."
3             Do you agree with the board-certified treating
4      physician who wasn't hired by anybody in this case, that
5      Mr. Jackson's -- it was medically indicated to have, and
6      the standard of care required, a colostomy reversal
7      surgery?
8             MS. WEIL:  Objection.  Argumentative.
9   Q.  Go ahead.  Do you agree with her?
10  A.  **I believe after you defined the standard of care is what**
11      **the average general surgeon of average learning,**
12      **intelligence, training, and expertise would do in given**
13      **a similar circumstance, this is what all general**
14      **surgeons would do.  It would be to reverse this**
15      **colostomy.**
16  Q.  Thank you, Doctor.
17             We can go back to this now just for the jury.
18      Okay.  Now, Doctor, what if somebody were to say, "Well,
19      you know what, he had on this colostomy bag so what's
20      the big deal?  It wasn't medically necessary."  Would
21      you agree with that?
22             MS. WEIL:  Objection.  Leading, argumentative.

*Id.* **at 26:23-27:22.**

These questions are neither argumentative nor leading. As for the first question, regarding Dr. Webber's agreement with Plaintiff's treating physician, there was no argumentation here. It was simply providing context as to who the doctor is. As to the second question, it was neither leading nor argumentative. The question simply whether Dr. Webber agreed with the general sentiment that the surgery was not medically necessary. It did not argue any point nor did it attempt to lead Dr. Webber to any inevitable answer.

8

```
 9  BY MR. MARKO:
10  Q.  Doctor, do you agree with Dr. Papendick that this can be
11      left, these colostomy surgeries, without reversal, in
12      someone like Mr. Jackson for the rest of his life?
13          MS. WEIL:  Objection.  That's not what the
14      testimony said.  Assuming facts not in evidence.
```

*Id.* at 29:9-14.

This objection is similarly baseless. This *is* in evidence. Dr. Papendick *did* testify that a person like Mr. Jackson could have been left with the colostomy for his whole life.

```
 6  Q   So if a patient has a colostomy bag and a life
 7      sentence, you think that they should never have it
 8      reversed, unless -- as long as the colostomy is
 9      functioning.
10  A   If the colostomy is functioning with no issue
11      whatsoever, yes, he should continue to have his
12      colostomy.
13  Q   For his whole life.
14  A   If that's what it takes.
```

**Exhibit 4, Papendick Deposition, 75:6-14.**

```
18  Q.  With gas?  With gas?
19  A.  Gas.  With --
20  Q.  Smelly gas?
21  A.  Absolutely smelly gas.
22          MS. WEIL:  Objection.

 1          MR. MARKO:  What's the objection?
 2          MS. WEIL:  You're leading him.  You're putting
 3      words in his mouth.
```

**Ex. 1 at 34:18-22; 35:1-3.**

This is not a leading question. It does not lead Dr. Webber to any particular conclusion. It merely asked for clarification on the severity of the gas.

9

24  Q.  What about physical harm?  You said that -- we talked
25     about the psychological and emotional.  You said that a

Page 39

1    delay of not getting this reversal can cause physical
2    harm and you listed some things.  Can we go through
3    those?  What are the -- what are high-risk physical
4    harms for not letting somebody get this surgery?
5        MS. WEIL:  Objection.  Asked and answered.
6  Q.  No.  Go ahead.
7  A.  Okay.  So, the one that I would point out mostly would
8    be the development of what we call a parastomal hernia.
9    So, it would be the exception or the exceptional
10    colostomy that did not develop a hernia around it.  And,
11    again, a hernia is the hole in the fascia surrounding
12    the actual stoma as the stoma transits from the
13    abdominal cavity onto the skin.
14        Again, we try to make those holes so that
15    they're snug, but over time, physics and mechanics allow
16    for these holes to get larger.  And so now you have a
17    large defect that's only occupied in one part of it by
18    the actual stoma or the colon itself, and that allows
19    bowel to get into the colostomy and literally --
20    literally cause an obstruction.
21        So, I recently did an emergency bowel surgery
22    on a patient who had a complete bowel obstruction from a
23    previous colostomy.

*Id.* **at 38:24-39:23.**

This objection must be overruled, as well, as it merely requests further information as to *high-risk* physical harms for someone who did not get surgery. It is not simply reiterating any prior testimony.

Pages 41:9-45:16 (***Id.* at 41:9-45:16**) of Dr. Webber's deposition contain several pages of Defense counsel making a speaking objection and interrupting Plaintiff's counsel. "Regardless of their motivation and purpose in a particular context, speaking objections are impermissible because they inhibit the truth-seeking function of depositions." *Mitnor Corp. v. Club Condos.*, 339 F.R.D. 312, 318 (N.D.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

Fla. 2021). This objection, which amounts to nothing more than argumentation over

Plaintiff's conditions he had, should be stricken by this Honorable Court.

```
17  Q.  Would you ever bill an insurance provider such as
18      Medicaid for a service that was not medically necessary?
19  A.  I would not.
20          MS. WEIL:  Objection.  Foundation.

23  Q.  Why would you not bill Medicaid for a medically
24      unnecessary surgery?  Or --
25          MS. WEIL:  Objection.
```

*Id.* **at 48:17-20; 48:23-25.**

These objections should be overruled as well. It is a ludicrous argument to say

Dr. Webber lacks the foundation to say *he himself* would not bill Medicaid for a

service that is not medically necessary and why he would not do so – It does not

require an expert in a sprawling federal program to know that billing Medicaid for

services that are not necessary is a crime.

```
24  Q.  Okay.  The total amount of the cost of the surgery, the
25      whopping amount was $919.78?

1   A.  Was the other number --
2           MS. WEIL:  Objection.  Argumentative.
3   A.  -- to the left of that, the 5,000 number, was that what
4       was billed out?
5   Q.  Correct.
6   A.  Was that the charge?
7   Q.  Yep.
8   A.  Okay.
9   Q.  But it looks like that was what was paid.
10  A.  So, was this -- I can't -- am I allowed to ask a
11      question?  Was this Medicare or Medicaid?
12  Q.  It was Medicaid.
13  A.  Okay.  So, the Medicaid payment was $919 on a $5,000
14      charge.
```

11

*Id.* **at 49:24-50:8.**

This objection is also baseless. The question is not argumentative. It does not purport to argue affirmatively one way or another as to the question, which merely asked how much the surgery cost.

```
15  Q.  Yeah.  So, I mean, are these -- were you doing this
16      surgery for the money?
17  A.  No.
18          MS. WEIL:  Objection.
```

*Id.* **at 50:15-18.**

Next, Defense counsel objected to a question from Plaintiff's counsel asking if Dr. Webber performed the surgery "for the money." Defense counsel provided no basis for the objection and simply stated "Objection" with no further clarification. This objection must be overruled because it is impossible to gauge the basis for said objection. The objection is therefore waived. *See Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-302, 2017 U.S. Dist. LEXIS 28325, *3-4 (S.D. Ohio Feb. 28, 2017) ("To the extent that counsel made a generic objection to 'form,' but failed to specify the basis for the objection, the Court also considers those objections to be waived.").

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

6  Q.  So, was this a -- given that Plaintiff's Exhibit 13 of
7      $919.78 to -- for your Physicians Group to do this
8      surgery, is this an expensive surgery comparatively
9      speaking?
10         MS. WEIL:  Objection.  Argumentative, no
11     foundation, no relevance.  Objection.
12  Q.  Go ahead.
13  A.  I think the $919 payout for the complexity of the case,
14     the preoperative evaluation of the patient, the actual
15     operation itself and duration and length of the
16     operation, and again, the complexity of the operation,
17     and then the postoperative care -- most colostomy
18     patients like this are in the hospital for about seven
19     to eight days.  And I think that's a very low payout for
20     the amount of time and investment that I spent in this
21     particular case.
22  Q.  But you did it anyways?
23  A.  Again, I don't look at the insurances that -- of the
24     patients that I see.  My group takes the insurance.
25     I'll do the surgery.

*Id.* **at 51:6-25.**

This objection should be overruled, as this is relevant in this case. Plaintiff anticipates Defendants will attempt to argue that Dr. Webber is a doctor who favors Plaintiff or that he only did the surgery for the money, not because it was a medical necessity. This evidence is relevant to that issue, and Dr. Webber obviously has the foundation to know about his own surgeries.

1  Q.  Would you do surgery on a patient who was -- needed
2      surgery who was in the department of corrections who was
3      sent to you?
4          MS. WEIL: Objection. Relevance.
5  A.  Yes, I would.
6  Q.  Why?
7  A.  Because they're a patient, and just because they're in
8      the department of corrections doesn't mean that they
9      need to be treated differently than other citizens of
10     the country. And so if they have a medically necessary
11     condition, whether it be the reversal of a colostomy or
12     the repair of a hernia, these conditions need to be
13     repaired. And that's why I took a Hippocratic Oath to
14     be a doctor and a surgeon, and I will do what I believe
15     is medically necessary on any patient regardless.

*Id.* **at 52:1-15.**

For a similar reason, this objection must be overruled. It is relevant whether

Dr. Webber would do surgery on an incarcerated person, as it goes to Defendants'

arguments that surgery was not feasible for Plaintiff when he was in custody.

23  Q.  Now, do you understand, you're entitled as a medical
24      professional to be reimbursed for your time?
25          MS. WEIL: Objection. Leading, argumentative,
                                                    Page 53
1      irrelevant.
2  Q.  Go ahead.
3  A.  I do understand that I'm entitled to ask for payment for
4      my time and services here or service or -- no. But I
5      don't need it; don't want it.

*Id.* **at 52:23-53:5.**

This question is neither leading or argumentative. It merely asks Dr. Webber

whether he believes he should be paid for his time, a rather innocuous inquiry. The

question does not lead him to any specific answer or argue for anything at all.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

Whether Dr. Webber was paid by Plaintiff to testify is obviously relevant to his credibility.

```
 5  Q.  Okay.  So, you don't have any idea what Dr. Papendick
 6      did or considered before he decided to approve
 7      continuing care of Mr. Jackson's colostomy rather than a
 8      reversal surgery; is --
 9           MR. MARKO:  Objection.
10  Q.  -- that a correct statement?
11           MR. MARKO:  Objection.  Form and foundation.
12  A.  Other than the segments that were played, no.
13  Q.  Okay.  So, you -- let me just go back and make sure --
14  A.  Okay.
15  Q.  -- we're clear on the record.  You did not review
16      anything that Dr. Papendick reviewed before he made his
17      decision; is that correct?
18  A.  That is correct.
19           MR. MARKO:  Object.  Same objection.
20           MS. WEIL:  Okay.  What's the nature of the
21      objection?
22           MR. MARKO:  It's form and foundation.
```

*Id.* **at 56:5-22.**

Next, Plaintiff's counsel objected to Defense questions regarding what Dr. Papendick did. These objections should be sustained. Indeed, the questions impermissibly ask Dr. Webber about what Dr. Papendick did, which he would have no idea of. There is no foundation for any of these questions. The form is also improper, as it is simply a statement seeking affirmative thereof.

```
11  Q.  Do you have any knowledge of whether Dr. Kansakar was
12      ever consulted by anyone from the Michigan Department of
13      Corrections later, after Mr. Jackson had his colostomy,
14      about whether it was medically necessary to reverse the
15      colostomy?
16           MR. MARKO:  Objection.  Foundation and
17      hearsay.
18  A.  I don't know.
```

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

JM MARKO LAW

15

*Id.* **at 68:11-18.**

Plaintiff's counsel next objected to a question of whether Dr. Kansakar was ever consulted. Dr. Webber has no foundation to know anything about this. Moreover, even if he *had* heard something about it, anything he heard would be hearsay – an out of court statement offered for its truth. This objection should be sustained.

```
19  Q.  If Dr. Papendick testifies to this jury consistent with
20      his deposition testimony on page 10 that he made
21      decisions regarding the approval or otherwise of this
22      colostomy reversal procedure, and that in doing so, he
23      did not meet with or talk to the patient, do you think
24      that's appropriate?
25          MS. WEIL:  Objection.  Leading and foundation
```

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

1  and assumes facts not in evidence.

2  A.  Yeah.  Unfortunately, I don't think it's appropriate,

3     but again, I think people that make these decisions

4     never meet with their patients.  They sit in --

5           MS. WEIL:  I move to -- I'm sorry.

6  A.  -- some kind of...

7           MS. WEIL:  I'm sorry.  I'm sorry.  I thought

8  you were finished.

9           MR. MARKO:  Yeah.  Please don't interrupt the

10  doctor.

11          MS. WEIL:  I'm sorry.  I thought he was

12  finished.  I apologized.

13  A.  I think it's kind of a sterilized procedure where

14     patients -- or doctors like Dr. Papendick sit in

15     boardrooms and make decisions on cost cutting and

16     whatever based on, you might say, administrative order

17     from whom he works.

18  Q.  Would you ever make a decision --

19          MS. WEIL:  I'm sorry.  I never got to object

20  because you didn't let me -- you didn't let me object

21  after he was finished.

22          I'm going to object and move to strike the

23  whole answer as speculation, as lacking foundation, as

24  irrelevant, and as 401, 403.

25          MR. MARKO:  Are you done?

3  Q.  Okay.  Now, would you ever make a medical decision

4     affecting the future of one of your patients without

5     ever seeing or talking to the patient?

6           MS. WEIL:  Objection.  Argumentative.

7  A.  Again, I'm a front-line clinician or physician, surgeon,

8     whatever you want to say.  I talk to my patients,

9     period.  I don't think I would ever offer a patient

10     surgery without sitting down and talking to them

11     face-to-face or even by Zoom and, you know,

12     telemedicine --

## *Id.* at 71:19-73:12.

This first objection must be overruled because it is not leading – It is providing

context so that Dr. Webber may answer the question. Moreover, there was foundation

to the question. Plaintiff's counsel provided context to allow Dr. Webber to answer

17

the question and seek his opinion of the contents of the deposition testimony explained by Plaintiff's counsel. Notably, Defense counsel did *not* object here that this was not said by Dr. Papendick or not in evidence. The next objection that must be struck is this long objection as to speculation, foundation, and under FRE 401 and 403. First, Dr. Webber was not required to offer any speculation, merely his opinions. Second, as he was simply offering his own opinions, there was foundation for him to do so. Moreover, the objection on the basis of FRE 401 is baseless. If Defense counsel believes the question to lack relevance, that is no reason to strike it. It simply goes to the weight of the testimony jurors will hear. Moreover, it is relevant as to Defendants' policies. The FRE 403 objection must be overruled as well, as Defense counsel provided no basis for it. Defense counsel provided no prejudice despite that being the entire basis of that objection and, thereby, waived such an objection.

Page 73:19-77:21 (*Id. at* **73:19-78:8**) contains a long speaking objection by Defense counsel, arguing about Dr. Kansakar's testimony. As stated above, speaking objections are improper. "Regardless of their motivation and purpose in a particular context, speaking objections are impermissible because they inhibit the truth-seeking function of depositions." *Mitnor*, 339 F.R.D. at 318. This objection, which is nothing more than Defense counsel arguing with and interrupting Plaintiff's counsel, should be overruled. Moreover, the objections are baseless, as Plaintiff's counsel gave Dr. Webber context sufficient to answer questions about whether he agrees with the opinions given by Dr. Kansakar. Moreover, the question does not lead Dr. Webber in

18

any particular direction as to how to answer. Moreover, the statements are in evidence, as they are from Dr. Kansakar's deposition testimony.

## <u>CONCLUSION</u>

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court GRANT Plaintiff's Motion to Overrule Defendants' Objections to the Deposition Testimony of Dr. John Webber.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 470-2011
Email: jon@markolaw.com

Date: August 5, 2025

### <u>PROOF OF SERVICE</u>

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 5, 2025**, via:

☐ U.S. Mail              ☐ Fax
☐ Hand Delivered         ☐ Overnight Carrier
☐ Certified Mail         ☐ Other:
☐ ECF System             ☐ Email

*/s/* _____