**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,                         Case No. 19-cv-13382

-vs-                                  Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | THOMAS G. HACKNEY (P81283) |
| IAN T. CROSS (P83367) | **HACKNEY ODLUM & DARDAS** |
| **MARGOLIS, GALLAGHER &** | Attorney for Keith Papendick, M.D. |
| **CROSS** | 10850 E. Traverse Hwy., Ste. 4440 |
| Attorneys for Plaintiff | Traverse City, MI 49684 |
| 214 S. Main St., Ste. 200 | (231) 642-5057 |
| Ann Arbor, MI 48104 | thackney@hodlawyers.com |
| (734) 994-9590 | |
| larry@lawinannarbor.com | ADAM MASIN |
| ian@lawinannarbor.com | SUNNY REHSI (P80611) |
| | **BOWMAN AND BROOKE LLP** |
| JONATHAN R. MARKO (P72450) | Attorney for CHS TX, Inc. |
| MICHAEL L. JONES (P85223) | 101 W. Big Beaver Rd., Ste. 1100 |
| **MARKO LAW, PLLC** | Troy, MI 48084 |
| Co-counsel for Plaintiff | (248) 205-3300 |
| 220 W. Congress, 4th Floor | Adam.masin@bowmanandbrooke.com |
| Detroit, Michigan 48226 | Sunny.rehsi@bowmanandbrooke.com |
| P: (313) 777-7777 / F: (313) 470-2011 | |
| jon@markolaw.com | |
| michael@markolaw.com | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS CHS TX, INC. AND KEITH PAPENDICK, M.D.'S MOTION TO DESIGNATE PORTIONS OF JEFFREY BOMBER, D.O.'S DEPOSITION AT TRIAL**

    NOW COMES Plaintiff, **KOHCHISE JACKSON**, by and through his

attorneys, **MARKO LAW, PLLC,** and **MARGOLIS, GALLAGHER & CROSS,**

1

and for his Response to Defendants CHS TX, INC. and Keith Papendick, M.D.'s Motion to Designate Portions of Jeffrey Bomber, D.O.'s Deposition at Trial, and respectfully requests that this Honorable Court denies Defendants' Motion for the reasons more fully set forth in the attached brief, which is hereby incorporated by reference.

WHEREFORE, for the reasons more fully set forth in the attached Brief, Plaintiff respectfully requests this Honorable Court denies Defendants CHS TX, INC. and Keith Papendick, M.D.'s Motion to Designate Portions of Jeffrey Bomber, D.O.'s Deposition at Trial.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
Attorney for Plaintiff
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
Date: August 7, 2025                    Email: jon@markolaw.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KOHCHISE JACKSON,

               Plaintiff,

-vs-

CHS TX., INC., *et al.,*

               Defendants.

Case No. 19-cv-13382

Hon. Gershwin A. Drain

---

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS, GALLAGHER & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7777 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

THOMAS G. HACKNEY (P81283)
**HACKNEY ODLUM & DARDAS**
Attorney for Keith Papendick, M.D.
10850 E. Traverse Hwy., Ste. 4440
Traverse City, MI 49684
(231) 642-5057
thackney@hodlawyers.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS CHS TX, INC. AND KEITH PAPENDICK, M.D.'S MOTION TO DESIGNATE PORTIONS OF JEFFREY BOMBER, D.O.'S DEPOSITION AT TRIAL

# **TABLE OF CONTENTS**

Index of Authorities ................................................................. ii

Concise Counter-Statement of Issue Presented ................................... v

Controlling or Most Appropriate Authority........................................ vi

Counter-Statement of Material Facts .................................................. 1

Argument........................................................................... 2

    I.    Live Trial Testimony—Not Cold Deposition Transcripts—is
        Strongly Preferred Because It Allows the Factfinder to Assess
        Credibility, Demeanor, and Truthfulness Firsthand........................ 2

    II.   Even if In-Person Appearance Is Infeasible, Rule 43(a) Permits
        Live Remote Testimony Where, as Here, Good Cause and
        Compelling Circumstances Exist ...................................... 9

    III.  Rule 32(a) Does Not Permit Use of Deposition Testimony
        Based Solely on Geographic Distance, and Defendants Have
        Failed to Meet Their Burden to Show Unavailability or Make
        Any Good-Faith Effort to Secure Live or Remote Testimony ........ 14

Conclusion ....................................................................... 18

i

# INDEX OF AUTHORITIES

## Cases

*Adkins v. TQT, LLC*,
No. 6:21-167-KKC, 2024 U.S. Dist. LEXIS 21329
(E.D. Ky. 2024) ................................................................................. 17

*Fischer v. United States*,
608 F.Supp.3d 533 (E.D. Mich 2022) ............................................... 12

*Garcia-Martinez v. City & Cnty. of Denver*,
392 F.3d 1187 (10th Cir. 2004) ........................................................ 15

*Gonzalez Prod. Sys. v. Martinrea Int'l Inc.*,
No. 13-cv-11544, 2015 U.S. Dist. LEXIS 108357
(E.D. Mich. 2015) ............................................................................... 5

*Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*,
470 F. Supp. 3d 735 (E.D. Mich. 2020) ................................ 3, 4, 10, 11

*In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987*,
720 F. Supp. 1493 (D. Colo. 1989) ................................................... 15

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
129 F.R.D. 424 (D.P.R. 1989) .......................................................... 6, 7

*Johnston v. Harris County Flood Control Dist.*,
869 F.2d 1565 (5th Cir. 1989) ............................................................ 6

*Keil v. Eli Lilly & Co.*,
88 F.R.D. 296 (E.D. Mich. 1980) ....................................................... 8

*Meirs v. Cashman*,
No. 1:15-cv-866, 2018 U.S. Dist. LEXIS 230084
(W.D. Mich. 2018) .......................................................................... 4, 13

*Napier v. Bossard*,
102 F.2d 467, 469 (2d Cir. 1939)................................................................... 15

*Polys v. Trans-Colorado Airlines, Inc.*,
941 F.2d 1404 (10th Cir. 1991) ..................................................................... 15

*SCM Corp. v. Xerox Corp.*,
77 F.R.D. 16 (D. Conn. 1977)........................................................................ 15

*Scozzari v. City of Clare*,
No. 08-10997-BC, 2012 U.S. Dist. LEXIS 77869
(E.D. Mich. 2012) ...................................................................................... 4, 13

*Sherrod v. VNA*,
No. 5:17-cv-10164-JEL-KGA, 2022 U.S. Dist. LEXIS 59316
(E.D. Mich. Mar. 30, 2022)............................................................................ 12

*Truth Tellers, LLC v. Levine*,
662 F. Supp. 3d 605 (N.D.W. Va. 2023) ........................................................ 15

*U.S. v. Warren*,
713 F.Supp.2d 1 (D.D.C. 2010) ..................................................................... 16

*United States v. Florence*,
No. 2:13-cv-00035, 2021 U.S. Dist. LEXIS 232192
(M.D. Tenn. 2021) ......................................................................................... 16

*Williams v. Johnson*,
278 F.R.D. 1 (D.D.C. 2011)............................................................................ 16

*Williams v. United Dairy Farmers*,
188 F.R.D. 266 (S.D. Ohio 1999).................................................................. 16

*Worrell v. Henry*,
219 F.3d 1197 (10th Cir. 2000) ....................................................................... 7

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

iii

**<u>Federal Rules</u>**

Fed. R. Civ. P. 32.............................................................................. 17, 18

Fed. R. Civ. P. 32(a) ........................................................................ *passim*

Fed. R. Civ. P. 43............................................................................... 18

Fed. R. Civ. P. 43(a) ........................................................................ *passim*

Fed. R. Civ. P. 77(b) ...................................................................... 3, 10, 11

Fed. R. Evid. 804 ............................................................................. 16, 17

Fed. R. Evid. 804(a) .......................................................................... 16

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (l313) 470-2011

## <u>CONCISE COUNTER-STATEMENT OF ISSUE PRESENTED</u>

I.    Whether Defendants may avoid presenting live or remote trial testimony from Dr. Bomber—whose testimony concerns core issues of corporate control and medical decision-making—based solely on their unproven assertion that he resides more than 100 miles from the courthouse, where they have offered no evidence of unavailability, made no good-faith effort to procure his presence, and blocked Plaintiff's subpoena, despite this Court's discretion and clear Sixth Circuit authority favoring live or contemporaneous testimony over cold transcripts?

**Plaintiff states:**          **Yes.**

**This Court should state:**    **Yes.**

**Defendants state:**       **No.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Fed. R. Civ. P. 43(a) and 32(a)

*Scozzari v. City of Clare,* No. 08-10997-BC, 2012 U.S. Dist. LEXIS 77869 (E.D. Mich. 2012)

*United States v. Florence*, No. 2:13-cv-00035, 2021 U.S. Dist. LEXIS 232192 (M.D. Tenn. 2021)

## <u>COUNTER-STATEMENT OF MATERIAL FACTS</u>

Dr. Bomber is a central witness whose credibility bears directly on the issues of core liability, deliberate indifference, damages,  and Corizon's efforts to circumvent Michigan's prohibition on the corporate practice of medicine. At the time of his deposition in May 2021, Dr. Bomber testified that he served as the northern regional medical director, the state medical director, and was then-currently a contracted employee of Defendant Corizon, supervising the providers at seven sites in the northern region. (**ECF No. 60-5, PageID.1386-1387**). Dr. Bomber also testified that regarding his role as owner of Quality Correctional Care of Michigan, the private professional corporation that formally employed Dr. Papendick. ***Id.* at PageID. 1393.**

In its opinion denying summary judgment, this Court expressly held that a triable issue of deliberate indifference exists where Plaintiff can show that Papendick's denial of the colostomy reversal surgery was based on cost, rather than his independent medical judgment. (**ECF No. 73, PageID.2976).** Dr. Bomber's testimony speaks directly to that issue. He offered vague and unconvincing statements suggesting that cost never played a role in utilization-management decisions, despite evidence to the contrary. His credibility—and the jury's opportunity to assess it in real time—will be central to resolving the deliberate indifference question.

1

Now, with trial approaching, Defendants have moved—on July 30, 2025—to designate Dr. Bomber's deposition transcript in lieu of live testimony, offering no documentation of any effort to secure his presence at trial. **(ECF No. 167).** They rely solely on the unsupported assertion that he resides more than 100 miles from the courthouse, without providing a single affidavit, email, subpoena, or declaration to substantiate that claim. Worse still, Defendants have affirmatively obstructed Plaintiff's ability to secure Bomber's appearance. They refused to accept service of a trial subpoena, moved to quash that subpoena, and failed to include updated contact information in either their witness list or Rule 26 disclosures. *See* **ECF No. 162; ECF No. 174)**. Their actions are directly at odds with the Federal Rules' strong preference for live, in-person testimony—particularly where credibility is central—and cannot justify admission of a cold, outdated transcript in lieu of testimony the jury has a right to observe firsthand.

## <u>ARGUMENT</u>

## I.    LIVE TRIAL TESTIMONY—NOT COLD DEPOSITION TRANSCRIPTS—IS STRONGLY PREFERRED BECAUSE IT ALLOWS THE FACTFINDER TO ASSESS CREDIBILITY, DEMEANOR, AND TRUTHFULNESS FIRSTHAND.

Defendants assert—without any evidentiary support—that Dr. Bomber resides more than 100 miles from this Court and claim that this alone automatically entitles them to present his testimony by deposition transcript at trial. Even assuming *arguendo* that Dr. Bomber does reside beyond the 100-mile threshold, Defendants'

2

position is legally meritless. Geographic distance alone does not render a witness "unavailable" within the meaning of Rule 32(a)(4), nor does it strip this Court of its discretion to require live testimony, or remote testimony under Rule 43(a). Defendants' argument ignores both the substantial preference for live testimony and the reasonable alternatives expressly provided by the Rules—particularly where, as here, Defendants are the party offering the witness and have made no good-faith effort to secure his presence.

The desire and demand for live witness testimony at trial, in open court, is directly provided for in the Federal Rules of Civil Procedure, and their explicit mandates that "**[a]t trial, the witness' testimony must be taken in open court**" and "**[e]very trial on the merits must be conducted in open court . . . in a regular courtroom**." Fed. R. Civ. P. 43(a); Fed. R. Civ. P. 77(b) (emphasis added). Federal courts, particularly those within this district, in turn have **consistently and universally recognized** the long-standing preference for live testimony at trial. For example, in *Gould Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, 470 F. Supp. 3d 735, 738–39 (E.D. Mich. 2020), this Honorable Court recognized that:

> When the Federal Rules were adopted in 1937, Rule 43(a). . .was designed to curtail the practice in patent and trademark actions of using affidavits in place of live expert testimony. Treatises also note that Rule 43(a) was intended to combat the early practice in equity of providing juries with edited depositions of witnesses' testimony. In addition to the concern that affidavits or edited testimony would be inaccurate, one-sided, and incapable of being tested by cross-examination, **Rule 43's strong preference for live testimony would allow the factfinder to**

> **observe a witness's demeanor in order to determine the veracity of the testimony. Thus, Rule 43(a)'s requirement that testimony take place in open court was designed to serve two functional purposes**: (i) to ensure that the accuracy of witness statements may be tested by cross-examination, and (ii) to allow the trier of fact to observe the appearance and demeanor of the witnesses. . . . To be sure, the advisory committee notes indicate a strong preference for live testimony. "The importance of presenting live testimony in court cannot be forgotten."

*Id.* (internal quotations and citations omitted) (emphasis added).

Similarly, this Court in *Scozzari v. City of Clare*, No. 08-10997-BC, 2012 U.S. Dist. LEXIS 77869, at *3–4 (E.D. Mich. 2012) emphasized the importance of live testimony, particularly for the jury, who, as the trier of fact, is tasked with the responsibility of weighing the evidence and assessing credibility:

> Live, in-person testimony has been held to optimal for trial testimony because "[t]he very ceremony of trial and the presence of the fact-finder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition.". *Id.*

Likewise, the Western District of Michigan echoed this principle in *Meirs v. Cashman*, No. 1:15-cv-866, 2018 U.S. Dist. LEXIS 230084, at *3–4 (W.D. Mich. 2018), applying it even where the witness resided beyond the 100-mile radius:

> However, Rule 32(a)(4)(E) notes that, in considering use of a deposition, courts should give due regard to the importance of live testimony in open court[.] **The preference for live testimony . . . is because of the importance of cross-examination, the greatest legal engine ever invented for the discovery of truth**.

> Other rules also come into play. For example, the Court has the authority to exercise reasonable control over the mode and order of examining witnesses and presenting evidence, so as to make those

4

procedures effective for determining the truth, to avoid wasting time, and to protect witnesses from harassment or undue embarrassment. And the Court enjoys substantial discretion in managing [its] courtroom.

Here, in light of the importance of Mr. Dalman's testimony—and specifically, **the importance of his credibility as a witness**—the Court finds that the preference of live testimony outweighs any benefit obtain by utilizing a *de bene esse* deposition to secure the relevant testimony.

*Id.* (internal quotations and citations omitted) (emphasis added).

So too has this Court explicitly recognized the **direct benefits of live testimony**, far outweighing the negligible gains allowed by simply reading a deposition transcript into the record:

Lastly, Gonzalez requests an order "requiring the presentation of live testimony from all witnesses, not deposition snippets." The Federal Rules of Civil Procedure express an unmistakable preference for live testimony in open court over testimony taken in a deposition. This Court also has a strong preference for live testimony. "The preference for live testimony . . . is because of the importance of cross-examination, 'the greatest legal engine ever invented for the discovery of truth.'"

*Gonzalez Prod. Sys. v. Martinrea Int'l Inc.*, No. 13-cv-11544, 2015 U.S. Dist. LEXIS 108357, at *49-50 (E.D. Mich. 2015) (citations omitted).

Here, this recognized preference is well-founded and applies directly to Dr. Bomber's testimony. As established, **live testimony ensures accuracy through real-time cross-examination**. Moreover, the need for visual—and preferably live—testimony is particularly critical where the witness presents credibility concerns, heightening the jury's need to assess his demeanor, hesitation, and confidence—

components essential to determining truthfulness that are **severely impaired** when testimony is reduced to paper.

Dr. Bomber's credibility is central to multiple material issues—particularly regarding the utilization-management program and whether the medical denials were based on cost containment rather than medical necessity. This Honorable Court has already recognized this in denying summary judgment, noting that deliberate indifference may be shown if Defendant Papendick's denial of surgery was based on cost, not medical judgment. Bomber's credibility is thus paramount. His testimony is also key to understanding the structure of Quality Correction Care of Michigan, P.C., its overlap with Corizon, and his operational control—facts bearing directly on Corizon's efforts to evade Michigan's ban on the corporate practice of medicine.

Further, substantial changes have occurred in the more than four years since his deposition—most notably, Defendants now assert he is no longer their employee. This undermines any assumption that his prior testimony was free from influence. Courts recognize the pressures placed on employee-witnesses testifying against their employer:

> The Fifth Circuit's decision in *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir. 1989), provides an overview of the reasons for protecting government employees' testimony. Absent such protection, employers seeking to silence truthful testimony could present employees with a difficult choice. "Employees could either testify truthfully and lose their jobs or could lie to the tribunal and protect their job security." *Id*. at 1578. Either choice would come at too high a price: "Those able to risk job security would suffer state-

sponsored retaliation for speaking the truth before a body entrusted with the task of discovering the truth." *Id*. On the other hand, "[t]hose unwilling or unable to risk unemployment would scuttle our efforts to arrive at the truth." *Id*.

*Worrell v. Henry*, 219 F.3d 1197, 1205 (10th Cir. 2000)

At the time of his deposition in May 2021, Dr. Bomber was employed as a contract supervisor for Corizon, overseeing providers at seven sites. (ECF No. 60–5, PageID.1386–1387). He was therefore subject to the very pressures described in *Johnston* and *Worrell*—to either testify truthfully and risk consequences, or temper his answers to protect his employer. Live testimony today—after his separation—is the only way to mitigate those pressures and allow the jury to assess him unfiltered.

Courts are especially critical of **non-video, non-live** deposition readings as substitutes for testimony. A 1989 federal court sharply criticized this approach when issuing its trailblazing ordering satellite testimony:

> [Plaintiff] wants the Court to order certain witnesses employed and/or otherwise under the control of defendants and who are beyond the 100 mile trial subpoena power of this Court to testify in these proceedings via a satellite hookup between their place of residence and this courtroom. The main purpose of the satellite transmission option is to provide the jury and this Court with **<u>live testimony rather than with the droning recitation of countless transcript pages of deposition testimony read by stand-in readers in a boring monotone. The reading of depositions also gives rise to ludicrous objections concerning whether the reader may interpret the tone and mood of the questions and answers and whether the reader may or may not give inflection to certain words or passages</u>**. . . . **<u>[L]ive testimony as opposed to deposition readings will facilitate more comprehensive factual determinations by the jury as well as help it assess the credibility of witnesses</u>**.

7

*In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424, 425 (D.P.R. 1989)

(emphasis added).

This Court, too, has distinguished between video depositions and transcript readings, recognizing that only the former allows the jury to observe *demeanor, tone, and interaction*—critical indicators of credibility:

> Plaintiff argues that there is a strong preference in the law for live testimony over deposition testimony, and that that preference should prevail here. The preference on which plaintiff relies, however, is significantly undercut when the deponent is presented via videotape rather than through the procedure of having the testimony read to the jury from the written transcript. A videotape deposition gives jurors the opportunity to observe the witness answering the questions of both the examining and cross examining attorneys. Thus, the jurors have a countenance upon which they can base assessments of credibility. In short, the arguments advanced by plaintiff have much less force with respect to a videotaped deposition than with respect to a transcribed deposition.

*Keil v. Eli Lilly & Co.*, 88 F.R.D. 296, 299 (E.D. Mich. 1980)

Here, Defendants do not even offer a videotape. They propose to have stand-ins read from Bomber's years-old transcript—an approach that strips the jury of every tool it needs to evaluate truthfulness. Unlike a video, there is no tone, no pacing, no inflection—only the performative choices of whoever happens to read the words. As courts—including this one—have recognized, the preference for live testimony is at its strongest when the proposed substitute is a cold, scripted recitation devoid of human expression.

Accordingly, where credibility is central and the factfinder must evaluate demeanor, the use of cold, stale deposition transcripts—particularly when read by stand-ins—is not merely disfavored, it is fundamentally incompatible with the truth-seeking function of trial. The Court should require Dr. Bomber to testify live—either in person or, at a minimum, remotely—rather than allow Defendants to shield him behind a transcript. Fortunately, the Federal Rules already provide an alternative mechanism for doing exactly that.

## II.   EVEN IF IN-PERSON APPEARANCE IS INFEASIBLE, RULE 43(a) PERMITS LIVE REMOTE TESTIMONY WHERE, AS HERE, GOOD CAUSE AND COMPELLING CIRCUMSTANCES EXIST.

While live, in-person testimony remains the gold standard, the Federal Rules expressly recognize that where physical presence is impractical, **live remote testimony** may serve as a fully adequate substitute. Rule 43(a) authorizes contemporaneous transmission of testimony upon a showing of "good cause in compelling circumstances"—a standard plainly satisfied here given the critical nature of Dr. Bomber's testimony, the more than four-year lapse since his deposition, and the ease with which current technology enables real-time, reliable participation in open court. At minimum, this Court should require Dr. Bomber to testify remotely, rather than permit Defendants to hide behind a transcript and deprive the jury of any opportunity to observe him directly.

Rule 43(a) provides, in relevant part, that while generally all witness trial testimony must be taken in open court, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."

In *Gould*, this Court noted that the "so far as convenient" language of rule 77(b), as well as the "[f]or good cause in compelling circumstances and with appropriate safeguards" language of Rule 43(a) provides for the

> [A]llowance for flexibility in conducting trials in non-traditional ways when exigencies make traditional procedures impracticable. Without that flexibility, the federal judiciary would be paralyzed from utilizing an essential tool in dispensing justice to civil litigants.

*Gould*, 470 F.Supp. 3d at 738.

The *Gould* Court went on to explain that **Rule 43(a)'s purpose is functional, not geographic**, and that live remote testimony is fully consistent with the requirement that proceedings be conducted in "open court":

> [A]dvances in technology render it possible for remote testimony to nevertheless take place in open court. . . . [M]any recent cases acknowledge that "[t]he near-instantaneous transmission of video testimony through current technology permits 'the jury [or, in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.]'" "Because a witness testifying by video is observed directly with little, if any delay in transmission . . . courts have found that video testimony can sufficiently enable cross-examination and credibility determinations, as well as preserve the overall integrity of the proceedings.".

\* \* \*

10

In view of the text and history of Rules 77(b) and 43(a), as well as the considerations set forth in Black's Law Dictionary and caselaw, the Court is persuaded that conducting a bench trial by videoconference is consistent with the requirement that such proceedings take place in open court. As indicated above, videoconferencing technology enables counsel to test witnesses through cross-examination and courts to observe witnesses' demeanor. Additionally, a videoconference bench trial in the present action will observe the traditional formalities of an in-person trial, including that the undersigned will preside over the proceedings, that the parties and counsel will be present, that the proceedings will take place on the record, and that the proceedings will be open to the public. Consequently, conducting a bench trial via videoconference satisfies the requirement that such proceedings take place in open court. *Id.* at 738-40 (internal citations omitted).

Finally, the *Gould* Court highlighted the substantial discretion afforded to the district court in determining whether sufficient good cause exists, while additionally articulating instances where such cause exists so as to permit live remote testimony:

As indicated above, Rule 43(a) permits testimony by contemporaneous transmission only for good cause in compelling circumstances. Determining whether good cause and compelling circumstances exist is a matter left to the court's discretion. This discretion is further supplemented by the court's wide latitude in determining the manner in which evidence is to be presented under the Federal Rules of Evidence. According to the advisory committee, [t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons . . . but remains able to testify from a different place. Additionally, [c]ontemporaneous transmission may be better than an attempt to reschedule the trial, particularly if there is a risk that other—and perhaps more important— witnesses might not be available at a later time.

*Id.* at 740 (internal citations and quotations omitted).

11

Similarly, in *Sherrod*, the Court approved remote live testimony where the witness resided outside the subpoena range, and further articulated practical safeguards to ensure orderly, fair testimony:

> Live, in-court testimony is certainly preferable to testimony that is transmitted electronically. But it is undisputed that Mr. Del Toral is outside of this Court's subpoena range. Accordingly, the choice is. . . between remote testimony and the playing of a video deposition. Defendants' preference for live testimony therefore weighs in favor, not against, granting Plaintiffs' request.
>
> Finally, Defendants are concerned that testimony taken by video teleconference would be difficult to hear and that the witness could be difficult to control. The Court notes that several courts have managed to hold entire trials using zoom technology. To ensure that testimony will be received in an orderly manner, however, the Court adopts the [following] safeguards[:]
>
> (1) That Plaintiffs ensure that the witness can be heard and understood by the jury and the parties; (2) that the witness testifies alone, in a closed room, free of any outside influence; (3) that Plaintiffs mark all documentary evidence they intend to provide to the witness prior to trial; (4) that Defendant be allowed a sufficient opportunity to cross-examine the witnesses; and (5) that the transmission of the video conference be instantaneous.

*Sherrod v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 U.S. Dist. LEXIS 59316, at *12-13 (E.D. Mich. Mar. 30, 2022) (citations omitted).

Additionally, this Court in *Fischer v. United States*, 608 F.Supp.3d 533, 540-41 (E.D. Mich 2022) held that explicitly held that several federal courts have recognized that the "distant location of witnesses" sufficiently "present[s] compelling circumstances for remote testimony. And Zoom videoconferencing

affords adequate safeguards for such testimony, especially considering that the undersigned has presided over such testimony in other cases." (internal citations omitted).

Courts in this Circuit have likewise found good cause for remote testimony based on witness distance, citing it as a fair compromise between the policy favoring live testimony and the need to minimize burdens. *See Meirs*, 2018 U.S. Dist. LEXIS 230084 at *3-4; *Scozzari*, 2012 U.S. Dist. LEXIS 77869 at *7-9.

Here, Defendants assert—without offering any evidence—that Dr. Bomber resides outside the Court's subpoena range. But even if the Court were to credit that assertion, all of the reasons set forth above apply with even greater force to support requiring live remote testimony under Rule 43(a). Dr. Bomber's testimony is central to multiple disputed issues, including Corizon's corporate structure, the economic basis for medical denials, and the nature of his overlapping roles. More than four years have passed since his deposition, and Defendants now claim he is no longer in their employ—eliminating any justification for insulating him from cross-examination in real time. Notably, Defendants articulate no specific burden or obstacle that would prevent Dr. Bomber from testifying either in person or remotely. At a minimum, requiring his testimony via live contemporaneous transmission would reduce any speculative burden while still preserving the jury's ability to assess demeanor, hesitation, and credibility. Rule 43(a) exists for precisely this scenario,

13

and its safeguards—combined with this Court's discretion—more than justify requiring Dr. Bomber to appear live, even if by video.

**III.   RULE 32(a) DOES NOT PERMIT USE OF DEPOSITION TESTIMONY BASED SOLELY ON GEOGRAPHIC DISTANCE, AND DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN TO SHOW UNAVAILABILITY OR MAKE ANY GOOD-FAITH EFFORT TO SECURE LIVE OR REMOTE TESTIMONY.**

In In their Motion, Defendants assert that Dr. Bomber's deposition transcript is automatically admissible—and that he cannot be compelled to testify live, either remotely or in person—based solely on their unsupported assertion that he resides more than 100 miles from the courthouse. But Rule 32(a)(4) does not provide a blank check to replace live testimony with a transcript whenever a witness is geographically distant. Nor does it relieve the offering party of its burden to make a good-faith effort to secure the witness's presence. Courts have consistently held that geographic distance alone is insufficient to render a witness "unavailable," and that Rule 32's exception must be narrowly construed to protect the truth-seeking function of trial. Defendants—who seek to rely on this testimony—have offered no affidavit, no notice, no subpoena, and no evidence of any effort to produce Dr. Bomber. Their attempt to sidestep both the Federal Rules and this Court's discretion should be rejected.

Rule 32(a)(4) permits deposition use only where the proponent shows that a witness is "unavailable," including instances where the witness is more than 100

14

miles from trial. However, **mere geographic distance does not establish unavailability per se**. Courts have repeatedly rejected efforts to admit deposition testimony solely on that basis. In *Truth Tellers, LLC v. Levine*, the court flatly rejected a Rule 32(a)(4) justification based only on mileage:

> **Federal courts are not automatically required to admit deposition testimonies under Rule 32(a)(4)(B) just because the witness is more than one hundred miles away**. *See, e.g., Polys v. Trans-Colorado Airlines, Inc.*, 941 F.2d 1404, 1410 (10th Cir. 1991). Instead, courts may consider several other factors: the circumstances relating to the witness's absence, the surprise to opposing counsel, evidentiary rules, and the longstanding preference of federal courts to have live testimony over recorded testimony. *See, e.g., id.; Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939); *Garcia-Martinez v. City & Cnty. of Denver*, 392 F.3d 1187, 1191 (10th Cir. 2004); *In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1493, 1502 (D. Colo. 1989).

*Truth Tellers, LLC v. Levine*, 662 F. Supp. 3d 605, 620 (N.D.W. Va. 2023) (emphasis added).

The *Truth Tellers* court went further, holding that the availability of live remote video testimony was of "great significance" and weighed **heavily against** admitting a deposition transcript, particularly where the offering party "failed to provide a sufficient argument or explanation why the alternative method of remote testimony was not a viable option." *Id.* at 621–22.

Courts have also recognized that even if a witness resides outside the 100-mile radius, their employment within that radius may bar deposition use under Rule 32. See *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16, 18 (D. Conn. 1977).

And multiple courts have applied the same principle to Federal Rule of Evidence 804(a)—holding that physical distance does not make a witness "unavailable" a simply by the virtue of being located beyond the 100-mile threshold. *See U.S. v. Warren*, 713 F.Supp.2d 1, 4 (D.D.C. 2010) ("A witness who resides abroad and outside the reach of a court's subpoena power is not automatically "unavailable" without a further showing that he or she will not testify in court.").

The **burden to show unavailability always rests with the proponent**, and courts routinely deny Rule 32(a)(4) admission where the offering party fails to present **evidence of a good-faith effort** to obtain the witness's presence. In *United States v. Florence*, No. 2:13-cv-00035, 2021 U.S. Dist. LEXIS 232192, at *12-13 (M.D. Tenn. 2021), the court explained that neither of required showings can be satisfied by mere unsupported assertions:

> "Implicit in this provision is an obligation on the part of the proponent to first exercise 'reasonable diligence' to procure the witness's attendance by subpoena." *Williams v. Johnson*, 278 F.R.D. 1, 5 (D.D.C. 2011). Florence offers no proof or argument that he made any efforts to procure Anderson's attendance at trial. The Court has no way to know the source of his single cursory statement of Anderson's whereabouts or when Florence got that information. Florence has not demonstrated admissibility under Rule32(a)(4)(B) or (D). *See Williams*, 278 F.R.D. at 6 (finding "informal" and "belated" attempts to locate a witness "insufficient to discharge the [proponent's] burden"). *Id.*

Likewise, "[u]nder Rule 804, the proponent of the hearsay statement bears the burden of showing that the declarant is unavailable." *Williams v. United Dairy Farmers*, 188 F.R.D. 266, 271 (S.D. Ohio 1999).

16

In *Adkins v. TQT, LLC*, No. 6:21-167-KKC, 2024 U.S. Dist. LEXIS 21329, at *3-5 (E.D. Ky. 2024), explicitly held that the proponent's failure to offer proof of when they learned that the witness is outside the 100-mile boundary or provide any evidence of their reasonable means to procure the witness's attendance at trial is insufficient to satisfy their burden of proof under either Rule 32(a)(4) or Fed. R. Evid. 804. Moreover and further supporting that merely residing outside the geographic limitations does not make deposition testimony per se admissible, the *Adkins* Court additionally found that use of the deposition transcript would be unfair to the opposing party and would go against public policy. *Id.* at *5.

Here, Defendants offer no evidence—let alone the required showing—that Dr. Bomber is truly unavailable under Rule 32(a)(4). They have made no effort to subpoena him, no documented inquiry into his availability, no effort to schedule a remote appearance, and no affidavit or declaration verifying his location or any alleged burden. All they offer is a bare assertion that he resides more than 100 miles away—unsupported, unproven, and insufficient.

Even if their claim were credited, it would not justify use of the transcript under Rule 32. Courts have made clear that geographic distance does not establish unavailability. Rule 32 requires reasonable diligence by the offering party—and Defendants have shown none. Nor have they offered any reason why Dr. Bomber cannot appear remotely under Rule 43(a), as discussed above.

17

Accordingly, Defendants' motion should be denied. Their attempt to substitute Dr. Bomber's cold, four-year-old deposition transcript in place of live or contemporaneous testimony fails under every applicable rule. Rule 32 does not allow it. Rule 43 counsels against it. And the controlling case law confirms that both the law and the interests of justice favor live testimony, particularly where—like here—credibility, demeanor, and material factual disputes are at the heart of the case.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Honorable Court denies Defendants CHS TX, INC. and Keith Papendick, M.D.'s Motion to Designate Portions of Jeffrey Bomber, D.O.'s Deposition at Trial.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
Attorney for Plaintiff
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
Date: August 7, 2025                    Email: jon@markolaw.com

### **PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 7, 2025**, via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other: Mi-FILE Truefiling |
| ☒ ECF System | ☐ Email |

*/s/ Ebony White*