**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| KOHCHISE JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CHS TX, INC., et al.,<br><br>Defendants | Case No.: 2:19-cv-13382-GAD-PTM<br><br>U.S. DISTRICT COURT JUDGE<br>HON. GERSHWIN A. DRAIN |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING ANY EVIDENCE RELATED TO CORIZON HEALTH, INC. OUTSIDE OF MICHIGAN**

NOW COMES, Plaintiff, KOHCHISE JACKSON, by and through his attorneys, MARGOLIS & CROSS and MARKO LAW, PLLC, and in response to Defendants' Motion in Limine to Preclude Plaintiff from Offering Any Evidence Related to Corizon Health Care, Inc. Outside of Michigan Against Defendants, states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should deny Defendant's Motion as without merit.

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Offering Any Evidence Related to Corizon Health Care, Inc. Outside of Michigan in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

Date: August 8, 2025

*/s/ Laurence H. Margolis*
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
larry@lawa2.com

# BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING ANY EVIDENCE RELATED TO CORIZON HEALTH, INC. OUTSIDE OF MICHIGAN

# CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the Court should enter an order precluding Plaintiff from offering any evidence related to Corizon Health's policies from outside of Michigan at trial?

| | |
|---|---|
| Defendants' state: | Yes |
| Plaintiff states: | No |
| The Court should Answer: | No |

**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

- Fed. R. Evid. 401
- Fed. R. Evid. 402
- Fed. R. Evid. 403
- *Monell v. Dep't of Soc. Servs. of New York,* 436 U.S. 658 (1978)
- *Sykes v. Donnellon,* 2021 U.S. Dist. LEXIS 53655
- *Nouri v. County of Oakland,* 615 Fed. Appx. 291, 296
- *Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438; 2024 WL 811515
- *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)
- *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988)
- *Chism v. Christian County Jail*, 2010 U.S. Dist. LEXIS 107486
- *Koloda v. General Motors Parts Div., General Motors Corp.* (6th Cir. 1983)
- *Kidis v. Reid,* 973 F.3d 708, 715 (6th Cir. 2020)

## INTRODUCTION

Defendants move the Court to preclude Plaintiff from presenting any evidence of Corizon's business or activities outside the State of Michigan. Defendants attempt to exclude this evidence despite its relevance to Plaintiff's *Monell* claim and Plaintiff's claim for punitive damages. Defendants clothe their argument in sweeping terms, encompassing almost any "activity" of any Corizon employee outside Michigan; however, their Motion focuses on Plaintiff's use of Corizon's bid proposals in the several states where it conducted its operations. Nevertheless, this Court should deny the Motion in full. The evidence of contracts and bid proposals in any state is highly relevant to Plaintiff's *Monell* theory that Corizon had a nationwide custom or policy of intentionally denying necessary off-site medical care to prisoners in order to cut costs and increase shareholder profits.

Defendants' Motion to exclude Corizon's business activities outside Michigan ignores the fact that this case involves a *Monell* claim. Under most *Monell* theories, plaintiffs are not only permitted, ***but are required*** to introduce evidence of other incidents in which the corporate Defendant intentionally denied medical care to prisoners other than the plaintiff. *See, e.g., Sykes v. Donnellon,* 2021 U.S. Dist. LEXIS 53655 at *9 (E.D. Mich. Feb. 23, 2021) (dismissing *Monell* claim because "Sykes has failed to allege any other instances of tolerance of acquiescence of federal violations on the part of Corizon" and "[a] pattern of misconduct cannot be shown solely from the mistreatment of the

plaintiff."); *Nouri v. County of Oakland,* 615 Fed. Appx. 291, 296 (6th Cir. 2015) ("we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff."); *Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *37 (E.D. Mich. Feb. 27, 2024) ("[P]rior bad acts are admissible to establish a pattern for a Monell claim. . . . if this type of evidence were barred by Rule 404(b), one would wonder how a plaintiff could ever prove a Monell claim based upon a custom or practice.") (quoting *Trexler v. City of Belvidere,* 2023 U.S. Dist. LEXIS 12662 at *5 (N.D. Ill. Jan. 25, 2023)).

Since Corizon — formerly a nationwide for-profit prison healthcare contractor — did not limit its unconstitutional policies and practices to the borders of Michigan, Plaintiff need not constrain his evidentiary proofs to it either. Plaintiff need only prove one of four available avenues of *Monell* liability to prevail on his claim: "(1) the [corporation]'s legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). During all times relevant to this action, Corizon operated in numerous states, including Michigan. The company oversaw national operations from its central headquarters in Brentwood, Tennessee. From Brentwood, Corizon submitted contract bids, hosted policy and planning conferences with its nationwide managers and senior employees, and directed

and coordinated policy. For example, former Corizon employee Cristin Rettler testified that she attended a company-wide conference at Corizon's corporate headquarters in Tennessee, where she was explicitly taught how to avoid providing medical care to prisoners in order to save money:

> Q. Did you attend any presentations at the conference?
>
> **A. Yeah. There were lots of lectures and presentations, but it was all the same topic. It was -**
>
> Q. What was the topic?
>
> **A. The topic was how to avoid like providing medical care to inmates. That was basically the topic. No matter what the headline was, it evolved into this whole conversation about, you know, their goals of trying to provide the least care possible and to reduce their medical costs in an effort to, you know, keep their maximum profit, . .**
>
> **ECF No. 175-6, Rettler Dep. 73:13-23**.

This private corporation directed policy in a cohesive, consistent manner throughout the country, and there is no evidence of policies differentiating across individual states. In fact, the evidence shows the opposite: one centralized healthcare company providing the same substandard care to tens of thousands of inmates in each state that it operated.

As Ms. Rettler further testified:

> Q. Do you have any reason to believe that Corizon's policies and procedures were standardized across the entire company?
>
> MR. MASIN: Object to form.
>
> **THE WITNESS: Yes. That's absolutely what they discussed at that**

> **conference, which was actually -- you know, I mean, I guess I was a bit surprised, even though that's what Dr. Garlick always told me, but I didn't -- I wasn't sure if he was a reliable source, but, yeah, that was reinforced and so they would -- at the conference, you know, people would raise their hands and say yeah, that's how we do it in whatever, New York and Kentucky and Massachusetts and, oh, we just opened and that's how our referral process works, too.**
>
> **You know, they were really striving for standardization, and that's the way to make -- not make money but to keep your money, you know. They get a bucket of money from Washington County Jail and, you know, they're trying to keep that. They're trying to not use their resources on patients.**
>
> **ECF No. 175-6, Rettler Dep, Page ID.7519.**

Even Corizon itself, in official contract solicitation materials it submitted to the State of Kansas, has admitted that, "[a]s a company, Corizon has targeted several 'Key Performance Indicators (KPI)' **for improvement across our contracts companywide . . . thereby enhancing our ability to meet the budget expectations of each of our clients across the country." (ECF No. 66-23, PageID.2406)**. Corizon stated that these "companywide" KPIs included:

> "**Offender patient referrals per/1000 offenders:** Measures volume of physician specialty visits and other outpatient services with the goal of reducing unnecessary offsite trips."

**ECF No. 66-23, PageID.2406-2407** (emphasis in original).

Defendants are correct in stating that the "trial will be about the care Plaintiff Kohchise Jackson received for his colostomy from Corizon, Dr. Papendick, and individuals working for Corizon in the Michigan Department of Corrections ("MDOC")

while Plaintiff was in prison in Michigan between March 2017 and May 2019." Nevertheless, because Plaintiff seeks to establish *Monell* liability against Corizon, Mr. Jackson *must* demonstrate that the same policy was Corizon's company policy. Showing similar bid requests and business activities to maximize profits in lieu of adequate care, at Corizon staffed facilities across several states, is highly relevant to Plaintiff's *Monell* theories, and to his claim for punitive damages.

It is undisputed that Corizon operated facilities in multiple states. Specifically, Plaintiff will show that Corizon adopted an unduly restrictive definition of "medical necessity" and exerted significant pressure on its providers nationwide to limit outside referrals. Corizon conducted weekly reviews of every provider's decision to send an inmate to the emergency room, using these meetings to discourage providers from making such referrals in the future. Corizon even went as far as to maintain a list identifying the "top ten" referring providers – not as a genuine form of recognition, but as a thinly veiled method of shaming those who most frequently sent patients out to specialists for treatment. Plaintiff will establish that Corizon employed this same approach across the country for the same deliberate reason-to cut costs-and with the same predictable result: the denial of medically necessary care and needlessly suffering patients.

Far from being "random," Corizon's contract-solicitation documents relating to governmental entities and prisons outside of Michigan (primarily Missouri, Tennessee,

and Kansas) are proof positive that Corizon was seeking profits for its shareholders by cutting costs in each state wherever possible, without providing the reasonable and necessary medical care it had contracted with these states to provide. **(ECF No. 66.)** Cost cutting to the detriment of quality care was the policy Defendant pursued. Plaintiff can show it existed wherever Corizon policy was in force, be it in Michigan or another state.

All of this evidence from outside of Michigan is relevant to the central *Monell* questions the jury will be asked to determine in this case: whether Corizon had a policy and practice to cut costs by denying necessary medical care. Evidence of other states' contracts showing such policy and practice is both relevant and necessary to Plaintiff's burden under *Monell*.

## LAW AND ANALYSIS

Federal Rule of Evidence ("FRE") 401 determines that evidence is relevant if "(a) it has the tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." According to FRE 402, all relevant evidence is generally admissible, but the evidence must first be relevant. Relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

**"A district court should grant a motion *in limine* to exclude evidence "only**

**when [that] evidence is clearly inadmissible on all potential grounds.**" *Victor v. Reynolds*, 2024 U.S. Dist. LEXIS 33438 (E.D. Mich. Feb. 27, 2024)(quoting *Ind. Ins. Co. v. Gen. Elc. Co.* 326 F. Supp. 2d. 844 (N.D. Ohio 2004). If the party seeking exclusion is unable to meet their high burden, the district court should defer ruling until trial "so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id*. (internal citations omitted.)

### I. Evidence of Defendants' Business Activities is Relevant as to Plaintiff's *Monell* theories that Defendant Routinely Denied Prisoner Care to Save Money as a Matter of General Company Policy

Evidence of Defendants' business activities outside the state of Michigan is extremely relevant to Plaintiff's allegations that Defendants, as a matter of policy, cut prisoner care to save money. Defendant Corizon's corporate acts outside of Michigan show Defendants' intent to make drastic budget cuts at all its facilities nationwide. Defendant was aware of the anticipated litigation costs it would accrue, but deemed it profitable due to the savings they were to achieve by greatly reducing treatment and necessary healthcare. The evidence Defendant seeks to exclude is also relevant to Plaintiff's punitive damages claim, given Defendant Corizon's centralized approach to its unconstitutional and generally poor behavior across the nation.

"The touchstone of 'official policy' is designed to distinguish acts of the municipality from acts of the employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988).

"A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. To demonstrate municipal liability, a plaintiff must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy. The policy or custom 'must be the moving force of the constitutional violation' in order to establish the liability of a government body under sec. 1983." *Chism v. Christian County Jail*, 2010 U.S. Dist. LEXIS 107486; 2010 WL 3947504. (Internal citations omitted.)

Corizon ran its nationwide business from Tennessee, home to its board of directors and central offices. It tailored its bid packages for each state with which it intended to conduct its business of for-profit health care to state prisoners. Its model was the same, focused on saving state taxpayers money. The means did not change: cutting healthcare costs to maximize profits by denying off-formulary medicines and necessary offsite procedures.

Defendants have put forth no evidence that Corizon/CHS TX behaved differently in Michigan than in all the other states where it provided medical care in correctional facilities. In fact, there is evidence that Corizon's utilization-management program, Corizon's methodology to block the referral for colostomy reversal surgery for the Plaintiff, **was operated on a uniform basis across the country.** Defendant Dr.

Papendick testified:

> Q Do you apply the same definition of medical necessity when you're covering for other UMMDs in other states?
>
> **A Yes.**

**ECF No. 60-4, PageID.1343**, Dep. 32:14-17.

Dr. Papendick further testified that two other doctors with the same job as him who screened referral requests from Michigan prisons **also screened requests from multiple other states**. (**ECF No. 60-4, PageID.1352**, Dep. 67:7-68:12.) Dr. Watson's testimony was consistent:

> Q. So, who are these people at the utilization team that make these decisions?
>
> MR. MASIN: Object to form.
>
> **A. They are -- or were -- physicians who were not in the Department of Corrections system. They're outside and apparently have contracts with Corizon to review referrals and deny or approve them.**
>
> Q. Do you know if those physicians were located in Arizona?
>
> **A. They were not.**
>
> MR. MASIN: Object to form.
>
> Q. Where were they located?
>
> **A. They could be around the country. There was only one who I actually looked up to find out where she was. And, if I remember correctly, she was in Minnesota.**

**ECF No. 175-7, PageID.7470,** Watson Dep. 64:1-20.

Ms. Rettler, as shown above, also testified that Corizon's policies and procedures were **standardized across the entire company. ECF No. 175-6, PageID.7519**, Rettler Dep.

The question of whether Corizon's "cost-cutting motives, rather than assessment of health risks and medical needs of patients, drive the approval of off-site referral procedures" is a fact of consequence in determining this action. **(ECF No. 73, PageID.2985.)**

Dr. Watson's and Ms. Rettler's testimony will also concern Corizon-contracted facilities outside the state of Michigan, and they will testify that they did not experience the same difficulties when working in other correctional facilities where healthcare was not managed by Corizon. **(ECF No. 175-6 & 175-7,** Rettler Dep. & Watson Dep.).

The Defendants' argument for preclusion misses the point. Corizon's practice or custom relating to the colostomy care provided to Plaintiff, or "any of the 44,000 Michigan prisoners who may have needed such care," *is* directly related to Corizon's policy of denying psychotropic medicine to those in need of it in a sister state. It is directly related to the language in its bid proposal in Kansas. Corizon's policy was the same in practice, policy, and effect: profits over people. This defendant's official policy was to deny healthcare in order to save money. Plaintiff has a high burden to show a policy of deliberate indifference — Corizon somewhat eased that burden with its centralized policy statements in bid packets, its poor healthcare nationwide, and other

evidence showing company-wide inaction and plans to profit by reducing care and treatments. All of Corizon's policy proclamations and reductions in care to save money are admissible under Rule 401 and 402. They are far more probative than prejudicial under Rule 403, and they are not being used for a prohibited purpose under Rule 404, but rather to meet Plaintiff's burden under *Monell*. There is no prejudice from these out-of-state proposals, and their value to show that Corizon's business model ultimately hurt this Plaintiff substantially outweighs any prejudice. All evidence may harm the party contesting it; it is only evidence with minimal probative value that is *also* unduly prejudicial that Rule 403 seeks to limit. Indeed, "[v]irtually all evidence is prejudicial or it isn't material. The prejudice must be unfair." *Koloda v. General Motors Parts Div., General Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (internal citations and quotations omitted).

The case of *Victor v. Reynolds*, 2024 U.S. Dist. LEXIS 33438 (W.D. Mich. 2024), is instructive and should control the Court's disposition of Defendant's Motion. In that case, Plaintiff brought forth a *Monell* claim against a private prison contractor for withholding his seizure medications. The private health care contractor defendant had produced a "Loss Run" report, which contained 106 pages of **complaints from inmates around the country** regarding the medical care they had received from the same prison contractor. The defendants moved *in limine* to keep it out, arguing the same as the defendants in the present matter. Judge Luddington allowed this evidence from other

states, stating:

> **But the two *Monell* theories Plaintiff pursues demand this evidence, which would be offered to show [the prison contractor's] knowledge or notice of prior patterns of unconstitutional conduct, not for propensity as prohibited by Rule 404.**

***Id*.**

Judge Luddington explained his reason for allowing the nationwide inmate complaints to come in:

> **To satisfy his *Monell* claim against [the prison contractor], Plaintiff would use the Loss Run Report and prior 'bad acts" to show either (1) a clear and persistent pattern of illegal activity - in an attempt to satisfy his custom or practice theory; or (2) prior instances of unconstitutional conduct demonstrating that [the prison contractor] was on notice that the training they provided practitioners on inmate medication was deficient and likely to cause injury - in an attempt to satisfy his failure to train theory.**

***Id*.**

For the exact same reason, Corizon's out-of-state policies are also admissible to prove punitive damages because the evidence demonstrates that Corizon consistently acted similarly — and reprehensibly — across the nation: that it violated the constitutional rights of hundreds of thousands of inmates by denying care to maximize profits, and that it was company policy to act in the deliberate and harmful way it did. Indeed, "[p]unitive damages may only be awarded when the defendant's conduct is sufficiently reprehensible." Other actions that show what occurred with Plaintiff was not unique to him, but the result of ongoing, repeated policies, will be necessary to support an

award of punitive damages. *See Kidis v. Reid,* 973 F.3d 708, 715 (6th Cir. 2020) ("That a defendant engaged in tortious or other wrongful conduct is . . . not enough, standing alone, to justify a punitive damages award.") Plaintiff was denied necessary medical care due to Corizon's cost cutting policies. He was not alone in his suffering and Corizon's conduct was reprehensible. "[I]n assessing repressibility, [courts] consider whether:" (1) "the harm was physical rather than purely economic," (2) "the tortious conduct evidenced an 'indifference to or a reckless disregard of the health or safety of others,'" (3) "'the conduct involved repeated actions or was an isolated incident,'" and (4) "the harm resulted from 'intentional malice, trickery, or deceit, or mere accident.'" *Kidis*, 9973 F.3d at 716 (quoting *State Farm*, 538 U.S. at 419).

Finally, the authorities cited by Defendants in their motion do not stand for the proposition claimed and are wholly inapplicable to the case at hand. *Andrews v. Marshall*, No. 216CV814FTM99MRM, 2019 WL 11638833, at *11 (M.D. Fla. May 8, 2019), aff'd, 845 F. App'x 849 (11th Cir. 2021) (News articles submitted by the Plaintiff **are not relevant to Plaintiff's actual policy and practice claim.**) *Bell v. Washington*, No. 21-cv-10705, 2022 WL 19518444, at *2 (E.D. Mich. Dec. 19, 2022) (**Plaintiff failed to identify an unconstitutional policy or practice** to sustain his claim and instead sought to hold Corizon vicariously liable for actions of its staff.) (*Jackson v. Corizon Health, Inc.*, No. 20-14737, 2022 WL 303288, at *6 n.4 (11th Cir. Feb. 2, 2022) (**Speculative evidence offered by pro se Plaintiff deemed insufficient**

to create an issue of fact to survive summary disposition.)

If Corizon did not want its substandard practices to be examined and displayed to jurors, it should not have accepted billions of taxpayer dollars from the many sister states it duped into accepting their contract bids. But Corizon did, and now it must answer to a jury about said policies and practices, wherever they were undertaken. If the Plaintiff's exposure of Corizon's widespread and unconstitutional policies and practices "make[s] the jury mad at Corizon," then our jury system has duly performed its role.

## CONCLUSION

This Court should deny Defendants' Motion *in limine* and allow Plaintiff to submit relevant evidence, proof, or argument related to Corizon policies and practices from outside of Michigan.

Respectfully submitted,

*/s/ Laurence H. Margolis*

Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
larry@lawa2.com

Date: August 8, 2025

**CERTIFICATE OF SERVICE**

I certify that on August 8, 2025, I electronically filed the foregoing document with the clerk of the United States District Court, Eastern District Southern Division using the ECF system.

*/s/ Laurence H. Margolis*