## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,

-vs-

CHS TX, INC., *et al.,*

        Defendants.

Case No. 19-cv-13382

Hon. Gershwin A. Drain

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc. and Dr. Keith
Papendick, M.D.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE THAT IS UNRELATED TO CORIZON'S PROVISION OF COLOSTOMY CARE

NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and for his response to "Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care," states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should his Court should deny Defendant's Motion as without merit.

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com

Date:  August 8, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,                   Case No. 19-cv-13382

-vs-                               Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for CHS TX, Inc. and Dr. Keith |
| 214 S. Main St., Ste. 200 | Papendick, M.D. |
| Ann Arbor, MI 48104 | 101 W. Big Beaver Rd., Ste. 1100 |
| (734) 994-9590 | Troy, MI 48084 |
| larry@lawinannarbor.com | (248) 205-3300 |
| ian@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| | Sunny.rehsi@bowmanandbrooke.com |
| JONATHAN R. MARKO (P72450) | |
| MICHAEL L. JONES (P85223) | |
| **MARKO LAW, PLLC** | |
| Co-counsel for Plaintiff | |
| 220 W. Congress, 4th Floor | |
| Detroit, Michigan 48226 | |
| P: (313) 777-7529 / F: (313) 470-2011 | |
| jon@markolaw.com | |
| michael@markolaw.com | |

---

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE THAT IS UNRELATED TO CORIZON'S PROVISION OF COLOSTOMY CARE

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

Ⓜ MARKO **LAW**

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.    Whether this Court should preclude Plaintiff from introducing an exceedingly broad swath of evidence, defined as "any testimony, evidence, opinions, or argument related to Corizon's business other than the provision of colostomy care," and effectively prevent him from presenting his *Monell* claim?

**Plaintiff states: No.**
**This Court should state: No.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

**Federal Rules**

Fed. R. Evid. 401

Fed. R. Evid. 403

**Cases**

*Brown v. Oakland Cnty.,* 2015 U.S. Dist. LEXIS 120940 (E.D. Mich. Sept. 10, 2015)

*Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 (E.D. Mich. Feb. 27, 2024)

*LaRock v. Albany Cnty. Nursing Home,* 2024 U.S. Dist. LEXIS 193918 (N.D.N.Y. Oct. 24, 2024)

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKOLAW

**Introduction**

Defendants' Motion in Limine to Exclude Non-Colostomy Care seeks to exclude an exceedingly-broad swath of evidence, defined as "any testimony, evidence, opinions, or argument related to Corizon's business other than the provision of colostomy care." (ECF No. 166, PageID.6555). Defendants have even separately moved in limine to preclude Plaintiff from introducing testimony from other prisoners with colostomies. (ECF No. 147). In essence, Defendants are taking a "shotgun approach," objecting to the introduction of virtually all the evidence that the Court relied on in denying their motion for summary judgment on Plaintiff's *Monell* claim.

Generally, this is an improper use of the motion-in-limine device. As this Court succinctly explained a decade ago in *Brown v. Oakland Cnty.*, 2015 U.S. Dist. LEXIS 120940 at *4-*5 (E.D. Mich. Sept. 10, 2015) (Drain, J.):

> The Sixth Circuit has stated that "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) ("Normally, motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.") (citation omitted); *Land Situated in City of Detroit*, 547 F. Supp. at 681 ("Any broad pretrial exclusion of evidence . . . must be approached with great caution."). Thus, throughout this District, "[t]he denial of a motion in limine is warranted where the moving party seeks to argue the merits of its case and preclude the non-moving party from presenting its case." *Dunn ex rel. Albery*, 264 F.R.D. at 275 (citation omitted).

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

Preventing Mr. Jackson from presenting his *Monell* claim, based on the evidence that the Court has already ruled creates a genuine issue of material fact for trial, is exactly what Defendants seek to do here. Defendants' boldly assert that virtually all evidence about their business practices, including their marketing materials, the experiences of their former employees, and the medical treatment they failed to provide to other specific prisoners, is not relevant. This position is not supported by relevant caselaw and should be rejected.

## ARGUMENT

For ease of analysis, the evidence Defendants seek to exclude via this Motion can be divided into several categories. First is direct evidence of the existence policy or custom of denying offsite specialty care to prisoners to save money, in the form of Corizon's own policy documents, marketing documents, and the statements of its employees.

Examples of this "Category One" genre of evidence include Corizon's internal policies providing that when an entity other than Corizon, such as a worker's comp policy, or another State in the case of interstate-compact inmates, was responsible for paying for an off-site medical service, the request for that service was automatically approved without any review by a Utilization Management physician, strongly suggesting that the only purpose of the Utilization Management 'medical

necessity' reviews was to save money for Corizon by denying care, (ECF No. 66-82, PageID.2077, pg. 17; ECF No. 66-27, PageID.2558, 2559, 2561), Dr. Papendick's statements indicating that he knew his "cost per thousand patients . . . over a year," and was aware of this metric for the other four Corizon UMMD's, including the testimony, "I'm not the highest. I'm not the worst," (ECF No. 66-28, PageID.2572), Dr. Papendick's performance reviews, which demonstrate that his job performance was measured, in part, based on the percentage of requests for specialty care that he denied, (ECF No. 66-45, PageID.2680), and former Corizon employee Cristin Rettler's testimony that she went to a companywide conference at Corizon's corporate headquarters in Tennessee, where she attended a series of lectures on the topic of, "how to avoid like providing medical care to inmates." ECF No. 175-6, PageID.7518, Dep. 73:13-18.

The second category of evidence is population-wide statistical evidence, compiled by Corizon, showing that Corizon achieved dramatic reductions in spending on offsite medical care for prisoners. Examples of this evidence include a utilization-management statistical report submitted by Corizon to the Michigan Department of Corrections, showing "dramatic decreases in utilization since Corizon was awarded the medical contract in 2009," (ECF No. 66-19, PageID.2310), from $ 23.1 million per quarter to only $ 5.6 million per quarter by mid-2016, and demonstrating substantial decreases in spending in virtually every disease category:



ECF No. 66-19, PageID.2300.

Another example of this category of evidence are Corizon's statements in its bid materials submitted to the State of Tennessee, in which it touted the reductions in hospital days per 1000 inmates it had achieved through its Utilization Management program:

**Cost Driver:** Offsite Utilization

**The Corizon, Inc. Solution for the TDOC:** Corizon, Inc. has developed and implemented a sophisticated utilization management program to support our Tennessee providers and local hospital partners, enabling Corizon, Inc. to provide *appropriate clinical care* and *improved continuity of services* while returning value to the state of Tennessee. Through improved utilization processes that have resulted in reductions in

| Corizon, Inc. Utilization Management at TDOC Facilities | | | | |
|---|---|---|---|---|
| | 2010 | 2011 | 2012 (YTD) | Percent Reduction |
| Inpatient Hospital Days/1,000 Inmates | 191.5 | 142.3 | 126.7 | **-34%** |
| Hospital Admissions/1,000 Inmates | 43.6 | 35.6 | 33.9 | **-22%** |
| Average Length of Hospital Stay | 4.6 | 4.1 | 3.8 | **-17%** |

inpatient days and inmate average length of stay, Corizon, Inc. has reduced the security costs associated with offsite transports since 2010 (pages 148-149). **This reduction in offsite hospital days translates to savings for the TDOC in transportation and correctional officer costs as well as improved safety for the community.**

ECF No. 66-21, PageID.2321.

The third category of evidence consists of specific incidents, involving specific prisoners other than the Plaintiff, who were denied offsite specialty care by Corizon. Examples of this type of evidence include Dr. Watson's testimony that she failed in her efforts to refer a patient with frequent seizures to a neurologist, and that Corizon Site Medical Director Rodney Stewart told her and her patient that "it would cost too much" to have a specialist treat his seizures. (ECF No. 175-5, PageID.7471,

Dep. 66:4-67:24.). Another example is Dr. Watson's testimony that she was unable to refer a patient with a broken bone to an orthopedist, because her referrals were blocked by Corizon's Utilization Management department. (ECF No. 175-5, PageID.7471, Dep. 68:1-19.)

The thrust of Defendants' argument is focused on "category three" evidence, although the relief they seek also includes the exclusion of evidence in categories one and two. As discussed *infra,* none of these three broad categories of evidence should be excluded at trial.

**I.      "Category One" and "Category Two" evidence are relevant not just to proving Plaintiff's *Monell* claim, but also to proving that Dr. Papendick violated Plaintiff's constitutional rights.**

Defendants argue, "[t]his trial is about whether Kohchise Jackson had a Constitutional right to have a colostomy reversal surgery approved by Corizon Health, Inc. ("Corizon"), and/or Dr. Papendick in April 2017 while Plaintiff was incarcerated in the Michigan Department of Corrections ("MDOC")." (ECF No. 166, PageID.6544). Respectfully, Defendants are wrong. The jury in this case will be tasked with resolving *factual* disputes, not *legal* disputes about the contours of Plaintiff's constitutional rights. The Court has already held that Defendants "have a constitutional obligation to provide medical care that is informed by the legitimate medical needs of the individuals in their care, not by cost considerations." ECF No. 73, PageID.2988.

The first question of fact the jury will need to decide is *why* Dr. Papendick blocked Dr. Alsalman's general surgery referral for Mr. Jackson. This inquiry into Dr. Papendick's subjective motivations for his decision is necessary, because the Court held that "if Plaintiff raises a genuine issue of material fact that the decision was not based on medical judgment, **but rather on non-medical factors such as cost**, the decision of whether the subjective prong [of the deliberate-indifference inquiry] has been met must be left to the factfinder." *Order Adopting Report and Recommendation,* ECF No. 73, PageID.2976 (emphasis added).

Evidence demonstrating the underlying purpose of Dr. Papendick's job within in Corizon's managed-care system, which bears directly on Dr. Papendick's subjective motivation for denying Plaintiff's surgery, is thus highly relevant in this case. The fact that this evidence does not specifically concern colostomies does not reduce its relevance. For example, consider the emails that Dr. Papendick sent to Mason Gill and a Corizon medical provider about an outside surgeon who repaired a patient's hernia and removed a mass without his prior authorization. Dr. Papendick wrote:

> "who is this surgeon and what makes him or her think they are approved to remove a mass other than the shoulder lesion or repair a hernia. Neither of these were requested or approved and they will not be paid for."

ECF No. 71-3, PageID.2952. This email does not show that any non-party's constitutional rights were violated; indeed, this patient actually received surgery. But

it does demonstrate that Dr. Papendick was concerned about the cost of care. He wanted to make sure that an outside surgeon would not be paid for a procedure that he had not approved. He took action to make sure the surgeon would not be paid, by sending a second email to Mason Gill directing him not to pay. ECF No. 71-3, PageID.2953. This evidence supports inferences that cost control was part of Dr. Papendick's job, and that costs were therefore also on Dr. Papendick's mind when he determined that Mr. Jackson should not receive a colostomy reversal.

This is enough to render the evidence relevant under FRE 401. As the Sixth Circuit has explained:

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall.

*Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (quoting McCormick on Evidence § 185, at 542-43.).

"Category Two" population-wide statistical evidence is likewise extremely relevant in this case. As Corizon itself explained in its report to the MDOC:

> Categories reviewed include all major categories of outpatient utilization. The Tableau data appears on page 10 of this report and reveals dramatic decreases in utilization since Corizon was awarded the medical contract in 2009. The cost savings in the area above the curve in the MDOC/Tableau data is in the hundreds of millions of dollars. This is also shown graphically on page 11

where we compared the Average Quarterly Expenditures in Millions of dollars in Outpatient UM. There has been over a 60% cost savings over this time period.

ECF No. 66-19, PageID.2310. Jurors can infer, from the fact that Corizon saved "hundreds of millions of dollars" by reducing spending on offsite care for the Michigan prison population by over 60% since it was awarded the Michigan Department of Corrections medical contract in 2009, that "cost-cutting motives, rather than assessment of health risks and medical needs of patients, drive the approval of off-site referral procedures like colostomy reversals." *Jackson v. Corizon Health, Inc.,* 596 F. Supp. 3d 834, 843-844 (E.D. Mich. 2022). The data does not need to be specific to colostomies, nor do jurors need to hear from an "expert who has performed an analysis of Corizon's general business practices" (ECF No. 166, PageID.6548) in order to draw the inference. In fact, the Court explicitly relied on this evidence in denying summary judgment on Plaintiff's *Monell* claim. *Id.*

## II.   "Category Three" evidence is relevant and admissible.

The thrust of Defendants' argument concerns "Category Three" evidence. Defendants argue that it is "ludicrous for Plaintiff to cherry-pick random stories from random people about random medical conditions that have nothing to do with colostomy care in Michigan" and that "[a] *lawyer* merely cobbling together random

stories fails to provide admissible illegal[1] pattern evidence." ECF No. 166, PageID.6548-6549 (emphasis in original). Defendants imply that in the absence of expert statistical analysis, evidence of individual prior instances of civil rights violations are *inadmissible* to prove certain elements of a *Monell* claim, such as the existence of "a clear and persistent pattern" of constitutional violations, or "notice or constructive notice on the part of the [corporation]." *Doe v. Claiborne County,* 103 F.3d 495, 508 (6th Cir. 1996).

None of the cases Defendants cite in their brief hold that prior individual instances of civil rights violations are inadmissible without expert statistical analysis or random sampling. In fact, almost all of the cases Defendants cite in their brief do not even concern the admissibility of evidence. One set of cases, *Burgess v. Fischer,* 735 F.3d 462 (6th Cir. 2013), *Cunningham v. Hoff,* 2017 U.S. Dist. LEXIS 81584 (D. Colo. May 26, 2017), *Davis v. D.C.,* 156 F. Supp. 3d 194 (D.D.C. 2016), *Andrews v. Marshall,* 2019 U.S. Dist. LEXIS 231923 (M.D. Fla. May 8, 2019), *Bell v. Washington,* 2022 U.S. Dist. LEXIS 241400 (E.D. Mich. Dec. 19, 2022), *Arias v. Allegretti,* 2008 U.S. Dist. LEXIS 4352 (N.D. Ill. Jan. 22, 2008) and *Jackson v.*

---

[1] Defendants repeatedly argue, throughout their briefing and in their proposed jury instructions, that a *Monell* claim is only viable where the subject policy is "illegal," but that is not accurate. *See, e.g. Brown v. Shaner,* 172 F.3d 927, 930 (6th Cir. 1999) ("In *Canton* . . . [t]he Supreme Court rejected the municipality's contention that section 1983 liability can be imposed only where the municipal policy in question is itself unconstitutional.")

*Corizon Health*, 2022 U.S. App. LEXIS 3037 (11th Cir. Feb. 2, 2022), involved motions to dismiss or motions for summary judgment disposing of *Monell* claims. The fact that courts found the various plaintiffs' proffered evidence in those cases to be ***insufficient*** to create a genuine issue of material fact on the issue of *Monell* liability says nothing about whether the evidence would be ***admissible*** under Rule 401. "Relevant evidence is, of course, not just facts that "carry a party's evidentiary burden" by proving an element of a claim." *Meng Huang v. Ohio State Univ.,* 116 F.4th 541, 564 (6th Cir. 2024). Rather, "[t]he standard for relevance is capacious— evidence is relevant if it has "any tendency" to make a "fact of consequence" to the case "more probable or less probable than it would be without the evidence."" *Id.* (quoting *Dortch v. Fowler,* 588 F.3d 396, 401 (6th Cir. 2009)).

A second set of opinions cited by Defendants (*De-Leon Reyes v. Guevara, Curtis v. City of Detroit, Fairfield v. Waukesha County,* and *Constantino v. City of Atlantic City*) concerned discovery disputes in *Monell* claims, in which courts are defining the scope of material the defendant is required to produce. These also have no bearing on an admissibility analysis. *Caruso v. Solorio,* 2021 WL 22498 (E.D. Cal. Jan. 4, 2021), is also irrelevant because it does not even involve a *Monell* claim.

Courts actually faced with the question of whether prior individual instances of unconstitutional conduct are admissible in *Monell* cases have routinely admitted the evidence, notwithstanding that it was compiled by "[a] *lawyer* merely cobbling

together random stories" and was not accompanied by any kind of expert statistical analysis. *See, e.g., LaRock v. Albany Cnty. Nursing Home*, 2024 U.S. Dist. LEXIS 193918 at *44-*45 (N.D.N.Y. Oct. 24, 2024) (admitting evidence of prior lawsuits against defendant to prove *Monell* claim, over defendant's objection that "the lack of expert testimony attesting to the other cases' similarity with the standard of care applicable in the present case negates any probative value," and further holding, "[t]he Court also finds that the lack of expert testimony relating to the other litigations does not bar admissibility");  *James v. City of Los Angeles*, 2024 U.S. Dist. LEXIS 131376 at *5, (C.D. Cal. Feb. 15, 2024); *Bedetti v. City of Long Beach*, 2017 U.S. Dist. LEXIS 217194 at *1-*2 (C.D. Cal. April 12, 2017); *Gallagher v. City of W. Covina*, 2002 U.S. Dist. LEXIS 18077 at *2-*3 (C.D. Cal. Sept. 9, 2002).

The only case cited by Defendants in which a court ruled on whether specific prior instances of alleged constitutional violations were admissible at trial was *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647 (7th Cir. 2021). In *Howell*, the plaintiff claimed that Wexford Health Sources denied him a knee surgery through its "collegial review" process, which screened and rejected or approved primary-care physicians requests to refer patients to specialists, much like Corizon's utilization-management process. *Howell*, 987 F.3d at 651. The trial court in *Howell* prevented four other inmate witnesses from testifying. But they were not prevented from testifying because their medical problems were different: all four

prospective witnesses had orthopedic injuries, and three of them had knee injuries, just like the plaintiff. *Id.* at 658. The problem was that their grievances were with the quality of the physical therapy program in the prison, not Wexford's "collegial review" process, which the plaintiff blamed for delaying his surgery. Therefore, "[t]hese first three witnesses offered essentially no relevant support for Howell's attack on Wexford's collegial review process." *Id.*

The fourth witness "presented a closer question" but the panel ultimately concluded that "the district court did not abuse its discretion in excluding his testimony" because the witness could not "present evidence that the requested treatment was medically appropriate and that denial was not justifiable. The comparator evidence is not sufficient if it relies solely on the incarcerated person's own assessment of the appropriateness of the treatment." *Id.* This is not an issue in Mr. Jackson's case. The specific incidents of unreasonable denials of non-colostomy care will be presented through the testimony of medical professionals who treated those prisoners, not the prisoners themselves.[2]

---

2 Although it is not at issue in this motion in limine, Defendants may argue that Plaintiff's prisoner witnesses with colostomy bags, Keith Swift and Larry Cowan, are unqualified to testify under *Howell* because they cannot prove that they were candidates for colostomy reversal surgery. However, both of these witnesses actually received colostomy reversal surgeries while in prison. After living with a colostomy bag for ten years during Corizon's tenure as the MDOC healthcare contractor, Mr. Swift finally received a reversal surgery within approximately two months of the date Grand Prairie Health Services took over the contract.

Courts in this district have permitted plaintiffs to introduce mere *allegations* of prior constitutional violations in support of a *Monell* claim, "even if Defendants contest that these prior violations occurred." *Woodall v. Wayne County,* 590 F. Supp. 3d 988, 1009 (E.D. Mich. 2022). Particularly instructive is *Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *31-*37 (E.D. Mich. Feb. 27, 2024), a case involving a *Monell* claim against a correctional healthcare contractor in which the Court held that a 106-page document containing one-sentence summaries of hundreds of personal-injury lawsuits brought against the defendant, involving incidents in jails all over the Midwest, was admissible. The incidents in the chart were mere allegations, and they involved a diverse array of different injuries, medical conditions, and fact patterns. (Ex. 1- Loss Run Report admitted in *Victor v. Reynolds*). The court held:

> "ACH's prior bad acts are relevant and probative under Rule 401 as they increase the likelihood that ACH was on notice of a pattern of unconstitutional or unlawful conduct, which is a necessary element of Plaintiff's *Monell* claim under either theory he pursues. Further, the probative value of this evidence is not *substantially* outweighed by *unfair* prejudice to either ACH or Nurse Reynolds to bar its admission under Rule 403."

*Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *35 (E.D. Mich. Feb. 27, 2024).

## **CONCLUSION**

Page **19** of **20**

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ Ian T. Cross
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com

Date: August 8, 2025

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 8, 2025**, via:

☐ U.S. Mail          ☐ Fax
☐ Hand Delivered     ☐ Overnight Carrier
☐ Certified Mail     ☐ Other:
☒ ECF System         ☐ Email

/s/ Ian T. Cross