**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,                     Case No. 19-cv-13382

-vs-                              Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

        Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for CHS TX, Inc. and Dr. Keith |
| 214 S. Main St., Ste. 200 | Papendick, M.D. |
| Ann Arbor, MI 48104 | 101 W. Big Beaver Rd., Ste. 1100 |
| (734) 994-9590 | Troy, MI 48084 |
| larry@lawinannarbor.com | (248) 205-3300 |
| ian@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| | Sunny.rehsi@bowmanandbrooke.com |
| JONATHAN R. MARKO (P72450) | |
| MICHAEL L. JONES (P85223) | |
| **MARKO LAW, PLLC** | |
| Co-counsel for Plaintiff | |
| 220 W. Congress, 4th Floor | |
| Detroit, Michigan 48226 | |
| P: (313) 777-7529 / F: (313) 470-2011 | |
| jon@markolaw.com | |
| michael@markolaw.com | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO
PRECLUDE PLAINTIFF FROM INTRODUCING TESTIMONY OR
EVIDENCE FROM OR RELATING TO JAN WATSON, M.D., and
CRISTIN RETTLER, P.A.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and for his response to "Defendants' Motion in Limine to Preclude Plaintiff from Introducing Testimony or Evidence from or Relating to Jan Watson, M.D., and Cristin Rettler, P.A.," states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should his Court should deny Defendant's Motion as without merit.

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Introducing Testimony or Evidence from or Relating to Jan Watson, M.D., and Cristin Rettler, P.A. in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com

Date:  August 8, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

               Plaintiff,                     Case No. 19-cv-13382

-vs-                                         Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

               Defendants.

---

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for CHS TX, Inc. and Dr. Keith |
| 214 S. Main St., Ste. 200 | Papendick, M.D. |
| Ann Arbor, MI 48104 | 101 W. Big Beaver Rd., Ste. 1100 |
| (734) 994-9590 | Troy, MI 48084 |
| larry@lawinannarbor.com | (248) 205-3300 |
| ian@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| | Sunny.rehsi@bowmanandbrooke.com |
| JONATHAN R. MARKO (P72450) | |
| MICHAEL L. JONES (P85223) | |
| **MARKO LAW, PLLC** | |
| Co-counsel for Plaintiff | |
| 220 W. Congress, 4th Floor | |
| Detroit, Michigan 48226 | |
| P: (313) 777-7529 / F: (313) 470-2011 | |
| jon@markolaw.com | |
| michael@markolaw.com | |

---

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM INTRODUCING TESTIMONY OR EVIDENCE FROM OR RELATING TO JAN WATSON, M.D., and CRISTIN RETTLER, P.A.

## CONCISE STATEMENT OF ISSUES PRESENTED

I.     Whether this Court should preclude Defendants' former medical-professional employees from testifying about the company's customs, policies and practices?

**Plaintiff states: No.**
**This Court should state: No.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

**<u>Federal Rules</u>**

Fed. R. Civ. P. 26(a)(2)(C)

Fed. R. Evid. 403

**<u>Cases</u>**

*Stanton v. City of Detroit,* 2024 U.S. Dist. LEXIS 172560 (E.D. Mich. Sept. 24, 2024)

*Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 (E.D. Mich. Feb. 27, 2024)

*United States v. Anderson,* 563 F. Supp. 3d 691, 694 (E.D. Mich. 2021)

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKOLAW

**INTRODUCTION**

Defendants' move to exclude the testimony of their own former employee, Cristin Rettler, P.A., and that of Dr. Jan Watson, M.D., a doctor who worked in a prison for Corizon through a temp agency during the same time period when Plaintiff's claim arose. Dr. Watson and P.A. Rettler provided medical care in correctional facilities for Corizon, and they have extensive first-hand knowledge of Corizon's customs, policies, and practices. Their testimony is highly relevant to Plaintiff's *Monell* theory that Corizon had a custom or policy of intentionally denying necessary off-site medical care to prisoners in order to cut costs and increase its profit margin.

Defendants' Motion to exclude these witnesses wholly ignores the fact that this case involves a *Monell* claim. Under most *Monell* theories, plaintiffs are not only permitted, *but are required* to introduce evidence of other incidents in which the corporate Defendant intentionally denied medical care to prisoners other than the plaintiff. *See, e.g., Sykes v. Donnellon,* 2021 U.S. Dist. LEXIS 53655 at *9 (E.D. Mich. Feb. 23, 2021) (dismissing *Monell* claim because "Sykes has failed to allege any other instances of tolerance of acquiescence of federal violations on the part of Corizon" and "[a] pattern of misconduct cannot be shown solely from the mistreatment of the plaintiff."); *Nouri v. County of Oakland*, 615 Fed. Appx. 291, 296 (6th Cir. 2015) ("we have never found notice of a pattern of misconduct (or the

pattern itself) solely from the mistreatment of the plaintiff."); *Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *37 (E.D. Mich. Feb. 27, 2024) ("[P]rior bad acts are admissible to establish a pattern for a Monell claim. . . . if this type of evidence were barred by Rule 404(b), one would wonder how a plaintiff could ever prove a Monell claim based upon a custom or practice.") (quoting *Trexler v. City of Belvidere,* 2023 U.S. Dist. LEXIS 12662 at *5 (N.D. Ill. Jan. 25, 2023)).

Dr. Watson and Ms. Rettler's testimony is extremely relevant to Plaintiff's *Monell* claim. For example, Ms. Rettler testified that she attended a company-wide conference at Corizon's corporate headquarters in Tennessee, where she was explicitly taught how to avoid providing medical care to prisoners in order to save money:

Q.   Did you attend any presentations at the conference?

**A.   Yeah. There were lots of lectures and presentations, but it was all the same topic. It was -**

Q.   What was the topic?

**A.   The topic was how to avoid like providing medical care to inmates. That was basically the topic. No matter what the headline was, it evolved into this whole conversation about, you know, their goals of trying to provide the least care possible and to reduce their medical costs in an effort to, you know, keep their maximum profit, . . .**

Ex. 1- Rettler Dep. 73:13-23. Ms. Rettler also testified:

it was like no medical conference I had ever attended. I thought that we were going to be discussing like how to determine the appropriate level of care for, which is a worthwhile conversation, in the correctional setting, but really what the conversation was was how to deny care, which is shocking because there's a room full of medical directors and they -- I remember this one example they gave that this poor gentleman had gotten in a physical altercation from going from jail to prison with the deputy staff and he had fractured his spine which resulted in him being paralyzed and so when he sued Corizon, they were able to win the lawsuit, which they were really proud of because he -- the nurse was able to document that he had neurological function before they left. So instead of -- I thought the conversation was going to be how do we, you know, preserve -- you know, do appropriate medical exams when people are in, you know, assault situations to avoid bad outcomes, but actually the conversation was how to document so that Corizon's not on the hook for the patient's medical bills, which, I mean, is -- it's amazing that they're able to get a bunch of doctors who are onboard with that, but that was really the theme of the whole entire conference.

It was more a medical-legal how do we like reduce our services, avoid paying for services, return them to the community so that the community's on the hook for the bill, and, you know, I came to understand that, you know, through their jargon that they were incentivized, so that helped me to understand how these medical doctors and HSAs were, you know, justifying it to themselves that -- and, you know, really they spoke about these patients like they weren't people.

**Ex. 1**- Rettler Dep. 71:11-72:21. Ms. Rettler further testified:

Q. In your opinion, was Corizon delaying or denying necessary medical care to inmates in order to avoid paying for the care?

MR. MASIN:· Object to form.

**THE WITNESS:· There's no question. They weren't even pretending. I mean, that was like the goal of the conference.**

**Ex. 1**- Rettler Dep. 75:10-16. Dr. Watson and Ms. Rettler both testified that they experienced great difficulty referring patients to outside specialists when they worked in Corizon-contracted facilities, (**Ex. 1**- Rettler Dep. 59:12-18; **Ex. 2**- Watson Dep. 62:10-15, 68:1-19), but did not experience the same difficulties when working in other correctional facilities where healthcare was not managed by Corizon. (**Ex. 1**- Rettler Dep. 69:24-71:6; **Ex. 2**- Watson Dep. 86:21-87:13). Dr. Watson also testified she was explicitly told by her Corizon supervisor that she could not refer a patient with frequent seizures to a neurologist because it would be too expensive:

> Q. So, what was the purpose of Corizon's utilization management program?
>
> [objection omitted]
>
> **A. To save money.**
> . . .
>
> Q. Why do you believe the purpose of the utilization management program was to save money?
>
> **A. I actually had a case that a referral had been denied, and I called the on-site medical director in to have him tell a patient directly why we could not send him out for the referral like requested.**

Q. And who was that person, the on-site medical director?

**A. Rodney Stewart.**

Q. And did he work for Corizon?

**A. Yes.**

Q. And what did he say?

**A. He told the patient --**

MR. MASIN: Object to form.

**A. He told the patient it would cost too much.**

Q. What was the procedure you requested?

**A. I wanted him -- the patient to see a neurologist.**

Q. And why did you feel that that was necessary?

MR. MASIN:· Objection.

**A. He -- the patient was having frequent seizures. Multiple medications had been tried, and he was not responding. And he came in to the office one day with a black eye from where he had had a seizure, fallen and hit himself. And I was concerned that if we didn't do something, he could injure himself even worse than he did when he hit his face.**

Q. Do you know how many seizures a day that patient was having approximately?

MR. MASIN:· Object to form.

**A. At least two to three. And I -- I don't know that he had them every day but several times a week.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

**Ex. 2**- Watson Dep. 66:4-67:24.

Whether Corizon/CHS TX's "cost-cutting motives, rather than assessment of health risks and medical needs of patients, drive the approval of off-site referral procedures" is a fact of consequence in determining this action. *See Order Adopting Report and Recommendation,* ECF No. 73, PageID.2985. Under Rule 401, evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. "This threshold is low, and evidence is relevant if it "advance[s] the ball" one inch." *United States v. Lang,* 717 Fed. Appx. 523, 538 (6th Cir. 2017) (quoting *Dortch v. Fowler,* 588 F.3d 396, 401 (6th Cir. 2009).

This evidence is highly relevant. Indeed, it is hard to imagine evidence that would be more probative of the existence of a corporate policy of intentionally denying medical care to prisoners than the testimony of a former employee, who participated in a company-wide conference at the corporate headquarters, where she attended a series of lectures on the topic of, "how to avoid like providing medical care to inmates." **Ex. 1**- Rettler Dep. 73:17-18. It is telling that Defendants' Motion in Limine makes no reference to this extremely relevant testimony.

## ARGUMENT

**I.      Defendants' contention that Dr. Watson's and Ms. Rettler's testimony is not relevant because it concerns events that occurred in other States and involved different incarcerated patients is meritless.**

This case involves a *Monell* claim against a company headquartered in Tennessee that operates nationwide. Defendants have put forth no evidence that Corizon/CHS TX behaved differently in Michigan than in all the other states where the company provided medical care in correctional facilities. To the contrary, there is evidence that Corizon's utilization-management program, which is the mechanism through which the company blocked the referral for colostomy reversal surgery for the Plaintiff, was operated on a uniform basis across the country. Defendant Dr. Papendick testified:

> Q   Do you apply the same definition of medical necessity when you're covering for other UMMDs in other states?
>
> **A   Yes.**

ECF No. 60-4, PageID.1343, Dep. 32:14-17. Dr. Papendick further testified that two other doctors with the same job as him, who screened referral requests from Michigan prisons, also screened requests from multiple other states. ECF No. 60-4, PageID.1352, Dep. 67:7-68:12.  Dr. Watson's testimony was consistent:

> Q. So, who are these people at the utilization team that make these decisions?
>
> MR. MASIN: Object to form.

**A. They are -- or were -- physicians who were not in the Department of Corrections system. They're outside and apparently have contracts with Corizon to review referrals and deny or approve them.**

Q. Do you know if those physicians were located in Arizona?

**A. They were not.**

MR. MASIN: Object to form.

Q. Where were they located?

**A. They could be around the country. There was only one who I actually looked up to find out where she was. And, if I remember correctly, she was in Minnesota.**

**Ex 2**- Watson Dep. 64:1-20.

Ms. Rettler testified:

Q. Do you have any reason to believe that Corizon's policies and procedures were standardized across the entire company?

MR. MASIN: Object to form.

**THE WITNESS: Yes. That's absolutely what they discussed at that conference, which was actually -- you know, I mean, I guess I was a bit surprised, even though that's what Dr. Garlick always told me, but I didn't -- I wasn't sure if he was a reliable source, but, yeah, that was reinforced and so they would -- at the conference, you know, people would raise their hands and say yeah, that's how we do it in whatever, New York and Kentucky and Massachusetts and, oh, we just opened and that's how our referral process works, too.**

**You know, they were really striving for standardization, and that's the way to make -- not make money but to keep your money, you know. They get a bucket of money from Washington**

**County Jail and, you know, they're trying to keep that. They're trying to not use their resources on patients.**

**Ex. 1**- Rettler Dep. 76:14-77:9. Even Corizon itself, in official contract solitication materials it submitted to the State of Kansas, has admitted that, "[a]s a company, Corizon has targeted several 'Key Performance Indicators (KPI)' for improvement across our contracts companywide . . . thereby enhancing our ability to meet the budget expectations of each of our clients across the country." (ECF No. 66-23, PageID.2406). Corizon stated that these "companywide" KPIs included:

> **"Offender patient referrals per/1000 offenders:** Measures volume of physician specialty visits and other outpatient services with the goal of reducing unnecessary offsite trips."

ECF No. 66-23, PageID.2406-2407 (emphasis in original).

When faced with similar *Monell* claims against correctional healthcare contractors that operate nationwide, courts in this district and elsewhere have permitted plaintiffs to rely on evidence of the defendant's conduct at facilities in states other than the state where the plaintiff was injured to prove a policy or custom. *See, e.g. Johnson v. Corizon Health, Inc.,* 2015 U.S. Dist. LEXIS 44638 at *38 (D. Or. April 6, 2015) (relying on declaration of former Corizon employee from Georgia jail concerning his experiences in the Georgia facility to deny summary judgment to

Corizon on *Monell* claim, where Plaintiff's injury occurred in Oregon);   *Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *32-*37 (E.D. Mich. Feb. 27, 2024) (admitting summaries of allegations in over 100 other personal-injury lawsuits from across the Midwest in *Monell* case against correctional healthcare contractor, starting years before plaintiff's injury). There is no principled reason not to do the same in this matter.

Defendants' Motion in Limine to exclude these witnesses cites only one case for their argument that Plaintiff may not introduce evidence of events outside the State of Michigan, *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408 (2003). *State Farm* is inapposite. It is not a *Monell* case. It does not even involve a claim arising under federal law. *State Farm* concerns a claim against an insurance company under Utah law for conduct that is tortious in Utah, but legal in most other states. *State Farm,* 538 U.S. at 422. The principal reason that "out-of-state conduct" could not be considered in *State Farm* is because a jury "may not use evidence of out-of-state conduct to punish a defendant *for action that was lawful in the jurisdiction where it occurred.*" *Id.* (emphasis added). In essence, by allowing a Utah plaintiff to obtain a punitive-damages award that punished State Farm for its lawful conduct outside of Utah, the State of Utah was engaged in an extraterritorial application of its own law. *See State Farm,* 538 U.S. at 421. *State Farm* has nothing to do with *Monell* claims. It does not stand for the broad proposition that a plaintiff tasked with proving

that a corporation had a custom or policy may not introduce evidence of the corporation's conduct outside of the state in which the plaintiff was injured.

## II.     The Rule 26(a)(2)(C) disclosures for these witnesses are not deficient, and would not preclude them from testifying if they were.

"Rule 26(a)(2)(C) applies to "hybrid witnesses," i.e., fact witnesses who can also provide expert testimony. A common example of a hybrid witness is a treating physician." *United States v. EES Coke Battery, LLC,* 2025 U.S. Dist. LEXIS 109001 at *6 (E.D. Mich. June 9, 2025) (internal citation omitted). Dr. Jan Watson and Cristin Rettler, P.A. are hybrid witnesses. While they did not treat the Plaintiff, they did treat other prisoners in Corizon-operated facilities, and formed their opinions from their firsthand experiences working for Corizon rather than from information subsequently supplied by an attorney. *See EES Coke Battery, LLC,* 2025 U.S. Dist. LEXIS 109001 at *7. Therefore, they are not required to submit expert reports and their disclosures need only comply with Rule 26(a)(2)(C).

To comply with Rule 26(a)(2)(C), all that is necessary is:

> "a brief account of the main opinions of the expert, and the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice."

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7-LAW
F: (313) 771-5785

MARKO LAW

*Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 147 (E.D. Mich. 2016) (quoting *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, 2015 U.S. Dist. LEXIS 29918, at *9 (S.D. Ohio Mar. 11, 2015)).

The disclosures for Dr. Watson and Ms. Rettler meet this standard. Each disclosure reveals that the witness is expected to testify that, "Corizon regularly denied necessary medical care to incarcerated patients as a means of saving money," ECF No. 175-2, PageID.7325-7326, which is "a view or judgment regarding a matter that affects the outcome of the case." *Dobbins,* 336 F.R.D. at 147. It is also a "view or judgment" that relies on the witnesses' "scientific, technical or other specialized knowledge" of medicine, because these witnesses needed to draw on their specialized medical knowledge to form an opinion that the medical care that Corizon was denying to the patients they treated was *necessary* medical care. The disclosures also contain brief accounts of the facts that these witnesses relied on in forming their opinions. This is all that is required to comply with Rule 26(a)(2)(C).

It is irrelevant that the disclosures contain no information about colostomies. Ms. Rettler happens to have extensive experience with colostomies and colostomy reversal surgeries, (**Ex. 1**- Rettler Dep. 27:25-29:23), but that is not the purpose for which her testimony and Dr. Watson's testimony are being offered. Plaintiff has not alleged that Corizon's policy of denying referrals to specialists to cut costs only

applies to colostomy reversals, and has presented evidence throughout this case of the same policy affecting prisoners with other medical conditions, such as deafness, (ECF No. 66-32, PageID.2603) rectal bleeding, (ECF No. 66-50, PageID.2699) dense cataracts, (ECF No. 66-35, PageID.2619), a hernia documented by a physician as causing "extreme pain," (ECF No. 71-1, PageID.2950) and the need for a prosthetic limb. (ECF No. 71-2, PageID.2951). Dr. Watson and Ms. Rettler have extensive experience as primary-care providers, and they are well-qualified to determine when their patients need to be referred to a specialist.

Even if these witnesses' Rule 26(a)(2)(C) disclosures were somehow deficient, total exclusion of their testimony would not be warranted. *See Allstate Ins. Co. v. Ayman Tarabishy, M.D., PLLC,* 2025 U.S. Dist. LEXIS 18151 at *6 (E.D. Mich. Jan. 31, 2025) (holding that hybrid witness whose Rule 26(a)(2)(C) disclosure was insufficient "may still offer lay-witness testimony rationally based on his perceptions under Federal Evidence Rule 701"); *Stanton v. City of Detroit,* 2024 U.S. Dist. LEXIS 172560 at *12 (E.D. Mich. Sept. 24, 2024) (Drain, J) (holding that hybrid witnesses whose Rule 26(a)(2)(C) disclosures were insufficient "will not be permitted to testify as expert witnesses. They may, however, testify as lay witnesses.").

### III.    Defendants' arguments that Dr. Watson and Ms. Rettler's testimony is "soaked in layers of unreliable hearsay" and "just unverifiable storytelling" are meritless

Defendants' argue that Dr. Watson and Ms. Rettler should be precluded from testifying at all, because their testimony is "soaked in layers of unreliable hearsay" and "inherently based on inadmissible hearsay under Rule 408." [sic] (ECF No. 148, PageID.5491, 5496, 5500). First, Federal Rule of Evidence 408 relates to statements made in the course of settlement negotiations and has no clear relevance to Dr. Watson or Ms. Rettler's testimony.

Defendants' vague, overbroad hearsay objection also lacks merit. To the extent that Dr. Watson or Ms. Rettler testify about statements made to them by patients they were treating, the statements are likely to be admissible under the FRE 803(4) hearsay exception for statements made for the purpose of medical diagnosis or treatment. To the extent that Dr. Watson or Ms. Rettler testify about statements made by Corizon employees, those statements are likely to constitute opposing party admissions under FRE 801(d)(2), and are thus not hearsay at all.

Regardless, rather than excluding a witness entirely because the witness *might* offer testimony that is hearsay, the Court should rule on specific hearsay objections as they arise during the course of the trial. "A court should exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *United States v. Anderson,* 563 F. Supp. 3d 691, 694 (E.D.

Mich. 2021). Unless evidence meets this high standard, "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context." *Id.*

Defendants also complain, without citation to authority, that these witnesses' testimony is "just unverifiable storytelling," because it is "not supported by any documents." (ECF No. 148, PageID.5496). There is no requirement in the federal rules that witness testimony must be corroborated by documents to be admissible. Indeed, Fed. R. Evid. 602 provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." An absence of corroborating documents is thus not a valid reason to preclude a witness from testifying. *See Uselmann v. Pop*, 2025 U.S. Dist. LEXIS 55253 at *15 (E.D. Mich. March 24, 2025) ("the nonexistence of RSP Express's shipping transaction records for this time period does not necessarily mean Plaintiffs lack personal knowledge regarding 2011 damages. Their personal knowledge may come from, for example, their personal experiences, observations, and interactions with Defendants.").

## CONCLUSION

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Introducing Testimony or Evidence from or Relating to Jan Watson,

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

M.D., and Cristin Rettler, P.A. in its entirety and grant Plaintiff any other relief this

Court deems just.


Respectfully submitted,

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com


Date:  August 8, 2025

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 8, 2025**, via:

☐ U.S. Mail                  ☐ Fax
☐ Hand Delivered             ☐ Overnight Carrier
☐ Certified Mail             ☐ Other:
☒ ECF System                 ☐ Email

/s/ Ian T. Cross