**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

      Plaintiff,                          Case No. 19-cv-13382

-vs-                                          Hon. Gershwin A. Drain

CHS TX, INC., *et al.*,

      Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635)<br>IAN T. CROSS (P83367)<br>**MARGOLIS & CROSS**<br>Attorneys for Plaintiff<br>214 S. Main St., Ste. 200<br>Ann Arbor, MI 48104<br>(734) 994-9590<br>larry@lawinannarbor.com<br>ian@lawinannarbor.com | ADAM MASIN<br>SUNNY REHSI (P80611)<br>**BOWMAN AND BROOKE LLP**<br>Attorney for CHS TX, Inc. and Dr. Keith Papendick, M.D.<br>101 W. Big Beaver Rd., Ste. 1100<br>Troy, MI 48084<br>(248) 205-3300<br>Adam.masin@bowmanandbrooke.com<br>Sunny.rehsi@bowmanandbrooke.com |
| JONATHAN R. MARKO (P72450)<br>MICHAEL L. JONES (P85223)<br>**MARKO LAW, PLLC**<br>Co-counsel for Plaintiff<br>220 W. Congress, 4th Floor<br>Detroit, Michigan 48226<br>P: (313) 777-7529 / F: (313) 470-2011<br>jon@markolaw.com<br>michael@markolaw.com | |

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE FROM INMATES OTHER THAN PLAINTIFF CONCERNING THE ADEQUACY OF THEIR COLOSTOMY CARE**

NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and for his response to "Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates other than Plaintiff Concerning the Adequacy of their Colostomy Care," states as follows:

For reasons stated more fully in the attached Brief, which is hereby incorporated by reference, this Court should his Court should deny Defendant's Motion as without merit.

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates other than Plaintiff Concerning the Adequacy of their Colostomy Care in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com

Date: August 8, 2025

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

      Plaintiff,    Case No. 19-cv-13382

-vs-    Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

      Defendants.

_____

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc. and Dr. Keith Papendick, M.D.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

# BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF FROM OFFERING EVIDENCE FROM INMATES OTHER THAN PLAINTIFF CONCERNING THE ADEQUACY OF THEIR COLOSTOMY CARE

## **CONCISE STATEMENT OF ISSUES PRESENTED**

I. Whether this Court should bar the testimony of other Michigan prisoners whose requests for colostomy reversals were repeatedly denied by Corizon's Utilization Management department between 2011 and 2020?

**Plaintiff states: No.**
**This Court should state: No.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

### **Federal Rules**

Fed. R. Evid. 403

Fed. R. Evid. 402

Fed. R. Evid. 401

### **Cases**

*Dortch v. Fowler,* 588 F.3d 396 (6th Cir. 2009)

*Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 (E.D. Mich. Feb. 27, 2024)

*Blackmore v. Kalamazoo County,* 390 F.3d 890 (6th Cir. 2004)

*United States v. Anderson,* 563 F. Supp. 3d 691 (E.D. Mich. 2021)

**Introduction**

Defendants Motion seeks to exclude the entire testimony of two other Michigan prisoners who were repeatedly denied colostomy reversals by Corizon. These witnesses, Mr. Cowan and Mr. Swift, were forced to live with unnecessary colostomies for five years and ten years, respectively. Both of these individuals' colostomies were reversible, and both were, in fact, reversed while they were still in prison. Mr. Cowan's colostomy was reversed in 2017, but only after he suffered severe complications, (ECF No. 73, PageID.2987), and Mr. Swift's colostomy was reversed in late 2021, mere months after Corizon was replaced by Grand Prairie Health Services as the MDOC healthcare contractor.

The lengthy delays in reversing these prisoners' colostomies occurred entirely on Corizon's watch. Defendants' misleadingly argue that, "Plaintiff wants to call Mr. Cowan to testify about his experience in the MDOC since late 2012—**four years before Corizon's relevant contract with the MDOC**[,]" (ECF No. 147, PageID.5380) (emphasis added), but they conveniently omit the fact that 2016 Corizon-MDOC contract was a *renewal;* Corizon had been the incumbent healthcare contractor for Michigan's prison system since 2009. (ECF No. 66-19, PageID.2310).

Defendants raise essentially two arguments for exclusion of these witnesses: that their testimony is not relevant under Rule 401 because Plaintiff has not retained an expert to review the witnesses' medical records and opine that their colostomy

Page **6** of **17**

reversals were "medically necessary," (ECF No. 147, PageID.5383-5387), and that their testimony would consist entirely of hearsay. (ECF No. 147, PageID.5387-5389). Neither of these objections have merit. The Court has already effectively found that Mr. Swift's and Mr. Cowan's testimony is relevant to Plaintiff's *Monell* claim by explicitly relying on their affidavits in its opinion denying summary judgment:

> There are also two affidavits from MDOC prisoners, one who had a colostomy reversal approved only after suffering severe complications, and one who has to this day never had the reversal surgery done and has been told more than once that "a request to reverse a functional colostomy would never be approved." Exs. 36, 37, ECF No. 66. These examples fit the pattern of the alleged policy to not approval colostomy reversals if the colostomy is generally functioning, thereby avoiding the cost of the off-site procedure.

*Order Adopting Report and Recommendation,* ECF No. 73, PageID.2987.

### I. Plaintiff does not need an expert to review these witnesses' medical records in order for their testimony to be admissible to prove a *Monell* claim

Defendants argue that Mr. Swift and Mr. Cowan cannot testify because, a) "Plaintiff has no expert medical witness and no medical evidence from a treating physician opining that these inmates were denied a medically necessary colostomy reversal surgery," (ECF No. 147, PageID.5377), that without such expert testimony, b) "Plaintiff cannot establish that either individual's care was part of a "clear and

Page **7** of **17**

persistent pattern of ***illegal*[1]** activity" necessary to establish a claim against Corizon[,]" and c) that if these witnesses cannot prove that their own constitutional rights were violated, their testimony is not relevant or admissible. (*See* ECF No. 147, PageID.5387). Defendants are mistaken as to their conclusion, as well as to both of the premises that lead them to it.

First, the conclusion. The fact that a given piece of evidence is not *sufficient* to prove a plaintiff's claim does not mean the evidence is not relevant or admissible. "Relevant evidence is, of course, not just facts that "carry a party's evidentiary burden" by proving an element of a claim." *Meng Huang v. Ohio State Univ.*, 116 F.4th 541, 564 (6th Cir. 2024). Rather, "[t]he standard for relevance is capacious—evidence is relevant if it has "any tendency" to make a "fact of consequence" to the case "more probable or less probable than it would be without the evidence."" *Id*. (quoting *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009)). As the Sixth Circuit has explained:

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for

---

[1] Defendants repeatedly argue, throughout their briefing and in their proposed jury instructions, that a *Monell* claim is only viable where the subject policy is "illegal," but that is not accurate. *See, e.g. Brown v. Shaner*, 172 F.3d 927, 930 (6th Cir. 1999) ("In *Canton* . . . [t]he Supreme Court rejected the municipality's contention that section 1983 liability can be imposed only where the municipal policy in question is itself unconstitutional.")

Page **8** of **17**

> which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall.

*Dortch v. Fowler,* 588 F.3d 396, 401 (6th Cir. 2009) (quoting McCormick on Evidence § 185, at 542-43.).

In the context of *Monell* claims against prison healthcare contractors, this means that mere *allegations* of constitutional violations are admissible, even without *any testimony at all* to verify the truth of the allegations, let alone expert testimony. *See Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *31-*37 (E.D. Mich. Feb. 27, 2024) (admitting document containing brief summaries of the allegations in hundreds of personal-injury lawsuits against correctional healthcare contractor in *Monell* claim, without requiring any corroborating testimony for any specific allegation). The two cases that Defendants cite in support of their position that the testimony of other patients is inadmissible, *Cetlinski v. Brown,* 91 Fed. Appx. 384, 388 (6th Cir. 2004), and *Watkins v. Cnty. of Genesee,* No. 13-13678, 2016 WL 727855, at *3 (E.D. Mich. Feb. 24, 2016) are easily distinguishable. *Cetlinski* was a garden-variety medical-malpractice action; it did not involve a *Monell* claim, or any type of claim that required the plaintiff to prove a pattern of conduct. And in *Watkins*, the prior bad acts were uses of excessive force by one specific police officer, not an allegedly-widespread policy of the municipal defendant. As the Court explained in *Victor*:

Page **9** of **17**

> In *Watkins*, the "bad acts" evidence at issue only concerned one individual defendant, rather than the municipal defendant, and the plaintiff only pursued a failure-to-train *Monell* claim. 2016 U.S. Dist. LEXIS 22126, [WL] at *2. So the probative value of the bad acts evidence in *Watkins* was far less than the probative value of the bad acts evidence here, attributable not to Nurse Reynolds—the individual Defendant—but to ACH as a whole.

*Victor v. Reynolds,* 2024 U.S. Dist. LEXIS 33438 at *35-*36 (E.D. Mich. Feb. 27, 2024).

Defendants' premise that Mr. Cowan and Mr. Swift could not prove that their own constitutional rights were violated without expert testimony is also flawed. In fact, in this very case, the Court held,

> the Court need not resolve the question of whether Plaintiff's expert testimony is sufficient to create a genuine issue of material fact as to whether Plaintiff had a serious medical need for the reversal surgery. Instead, the Court reiterates its previous finding in this case that the serious medical need here is demonstrated by the presence of the *colostomy itself*, which "even a lay person" would recognize as creating a serious need for medical attention. ECF No. 32, PageID.625.

*Jackson v. Corizon Health Inc.,* 596 F. Supp. 3d 834, 842 (E.D. Mich. 2022). As the Court has held that not even the *Plaintiff* is required to present expert testimony to prove his own claims on the facts of this case, such a requirement cannot possibly apply to ancillary witnesses like Mr. Cowan and Mr. Swift.

Defendants argue that "it is black letter law that a prisoner alleging inadequate medical care fails to establish an Eighth Amendment claim without expert medical testimony "showing the medical necessity for such a treatment."" (ECF No. 147,

Page **10** of **17**

PageID.5384) (citing *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). But the Sixth Circuit (in addition to the Court in this case) has held that this requirement does not apply in certain circumstances where the need for treatment is "obvious:"

> where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize the necessity for a doctor's attention," *Gaudreault*, 923 F.3d at 208, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. **Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.**
>
> *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899-900 (6th Cir. 2004)

(emphasis added). The Court's holding denying summary judgment without even considering the expert medical testimony proffered by the Plaintiff confirms that this case is a *Blackmore*-type case, and expert testimony is therefore not required to prove the constitutional violation.

Finally, even if such testimony were required, the allegation that Plaintiff lacks an expert witness capable of testifying that patients with reversible colostomies such as Mr. Swift and Mr. Cowan should not be exposed to multi-year delays in receiving reversal surgery is simply false. At his deposition, Dr. Webber testified as follows about Mr. Cowan's stoma:

> **So, this is a prolapse, looking at this picture, which I don't believe Mr. Jackson had but this is what could potentially happen. This is obviously the herniation of mucosa through -- and you can see that**

Page **11** of **17**

**it's very long, and so that makes the placement of a bag somewhat difficult because these bags aren't that long, usually. So, it's hard to get an appliance over it and to keep the appliance over it.**

**And then these prolapses desiccate because they're stuck out like this. And so they become problematic and they get irritated because of desiccation, and they bleed. So, bleeding is a complication of this prolapse.[2]**

**But the biggest problem with the prolapse is that if it gets too large like this one, it'd be -- it's hard to get the stool to come through there. And they could develop an obstruction just from the prolapse, and that would require emergent surgical intervention.**

Q. So, this condition that we see right here, was this a risk that Mr. Jackson would have faced for not getting a timely reversal?

**A. I would go one -- the answer is yes, but I would go one above it and say that any patient with a colostomy is at risk for this complication.**

Q. And is that something that a provider needs to consider when they're deciding whether to do a reversal or not?

**A. Well, any surgeon would know that this is a potential risk, and that's why we choose to reverse colostomies, and that's why it's medically necessary to reverse these colostomies.**

ECF No. 183-1, PageID.7676, Dep. 46:7-47:11. As Dr. Webber testified, the photographs of Mr. Cowan's stoma are evidence that Mr. Cowan did suffer serious complications as a result of the five-year delay in receiving a colostomy reversal surgery, and that reversing his colostomy was medically-necessary. They show the existence, and that Defendants had notice, of a prior constitutional violation

---

2Mr. Cowan will testify that he did, in fact, bleed profusely from his stoma. *See* ECF No. 66-37, PageID.2628, ¶¶ 9-13.

involving an individual other than the Plaintiff. *See Scott v. Ambani*, 577 F.3d. 642, 648 (6th Cir. 2009) ("a prisoner has adequately stated a cause of action when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury."). This is precisely the kind of evidence that Plaintiff is required to present to prove his *Monell* claim.

Dr. Erina Kansakar, Dr. John Webber, and Plaintiff's retained expert, Dr. Ralph Silverman, will all testify that colostomies should generally be reversed in healthy patients as soon as it is possible to reverse them. For example, Dr. Kansakar testified:

> **A. There could be certain medical conditions like patients having very severe cardiac condition or lung condition which would make another surgery very high risk, and in those individuals, colostomy would be permanent.**
>
> Q. So barring those situations, would you typically try to reverse a colostomy at some point after you placed it?
>
> **A. Yes, that would be my recommendation to try and reverse the colostomy.**
>
> Q. And how long would you typically wait before reversing the colostomy?
>
> **A. I typically wait between six to eight weeks from the original surgery.**

Page **13** of **17**

> Q. Would there be a medical reason that you might wait, say, five years?
>
> **A. Not to my knowledge.**

ECF No. 60-3, PageID.1308, Dep. 22:11-23:5.

## II.  Mr. Cowan and Mr. Swift's testimony is relevant to Plaintiff's *Monell* claim and will not consist entirely of hearsay

Defendants never deposed Mr. Swift or Mr. Cowan, although they have been aware of these witnesses for over five years. Defendants thus lack a basis for their conclusory allegations that anything these witnesses say would be hearsay.

Indeed, some of the allegations in Mr. Swift's and Mr. Cowan's affidavits plainly are not hearsay. *See, e.g.* ECF No. 66-36, PageID.2623, ¶ 14 ("In December of 2019 I was transferred back downstate to the Muskegon Correctional Facility. My current treating physician, Dr. Dale Ashe, submitted a 407 request for a colostomy reversal surgery in July 2020. That request was denied."). These statements cannot be hearsay because they do not allege that a third-party declarant "assert[ed] a proposition that could be true or false." *United States v. Rodriguez-Lopez,* 565 F.3d 312, 314 (6th Cir. 2009).

To the extent that Mr. Swift or Mr. Cowan recount statements made to them by Corizon's employees or agents, these statements are likely to be opposing-party admissions under FRE 801(d)(2) and thus excluded from the definition of hearsay.

Page **14** of **17**

Even a statement from an unidentified speaker can qualify as an opposing party admission. *See Medical Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.,* 817 F.3d 934, 944 (6th Cir. 2016). Some statements may be admissible for purposes other than to prove the truth of the matters asserted in the statement. For example, the fact that a medical staff person told Mr. Cowan that he "would not receive the surgery because it was too expensive," ECF No. 66-37, PageID.2627, ¶ 7, would not be offered to prove *the truth of the matters asserted in the statement*: that Mr. Cowan would not receive the surgery (he did receive it), or that the surgery was too expensive. *See United States v. Rodriguez-Lopez,* 565 F.3d 312, 314-15 (6th Cir. 2016) (unidentified caller's statement, "I want some heroin" admissible not for the truth of the matter asserted, but as "probative circumstantial evidence of [defendant's] involvement in a conspiracy to distribute heroin.").

The Court should not preclude these witnesses from testifying merely because some of the statements in their affidavits might be hearsay. Rather, the Court should rule on specific hearsay objections as they arise during the course of the trial. "A court should exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *United States v. Anderson,* 563 F. Supp. 3d 691, 694 (E.D. Mich. 2021). Unless evidence meets this high standard, "evidentiary rulings should be deferred until trial so that questions of

Page **15** of **17**

foundation, relevancy, and potential prejudice can be resolved in the proper context." *Id.*

The facts alleged in Mr. Swift's and Mr. Cowan's affidavits are not clearly inadmissible on all potential grounds. Rather, as the Court has already recognized, they are highly probative evidence "that Corizon refuses to approve colostomy reversals solely in order to reduce costs." *Jackson v. Corizon Health, Inc.*, 596 F. Supp. 3d. 834, 844 (E.D. Mich. 2022). Mr. Swift's affidavit recounts seven separate instances, over the course of nine years, in which his primary-care providers at six different Michigan prisons attempted to refer him to a surgeon for a colostomy reversal. ECF No. 66-36, PageID.2622-2625, ¶¶ 7, 8, 11, 12, 13, 14. All seven of those requests were denied by Corizon's utilization management department. *Id*. Then, after a ten-year delay, Mr. Swift will testify that he suddenly received a colostomy reversal surgery shortly after Corizon was replaced by one of its competitors as the healthcare contractor for the Michigan Department of Corrections. There is absolutely no reason to exclude this evidence.

## **CONCLUSION**

WHEREFORE, for all of the reasons set forth above, Plaintiff respectfully requests that this Honorable Court DENY Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates other than Plaintiff Concerning the

Adequacy of their Colostomy Care in its entirety and grant Plaintiff any other relief this Court deems just.

Respectfully submitted,

                                      /s/ *Ian T. Cross*
                                      Ian T. Cross (P83367)
                                      Laurence H. Margolis (P69635)
                                      **MARGOLIS & CROSS**
                                      402 W. Liberty St.
                                      Ann Arbor, MI 48103
                                      (734) 994-9590
                                      Email: ian@lawinannarbor.com

Date: August 8, 2025

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 8, 2025**, via:

☐ U.S. Mail           ☐ Fax
☐ Hand Delivered    ☐ Overnight Carrier
☐ Certified Mail      ☐ Other:
☒ ECF System        ☐ Email

                              */s/* Ian T. Cross