# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

          Plaintiff,

v.

CHS TX, INC., et al.,

          Defendants.

Case No.: 2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION OVERRULE DEFENDANTS' OBJECTIONS TO THE
DEPOSITION TESTIMONY OF DR. JOHN WEBBER [ECF 183]**

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.     Whether the Court should overrule Defendants' objections to the deposition testimony of Dr. John Webber.

**Defendants state:  No.**

**Plaintiff states:  Yes.**

**The Court should state: No.**

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

Fed. R. Evid. 401

Fed R. Evid. 403

**INTRODUCTION**

It is tempting, in the face of Plaintiff's counsel's efforts to impugn the conduct of defense counsel both during and after the deposition of Dr. Webber, to "take the bait," as it were, and respond with descriptions and examples of Plaintiff's counsel's speeches and tirades, on and off the record, during Dr. Webber's deposition. But defense counsel will "take the high road' and respond only to Plaintiff's substantive motion.

Defense counsel's objections to the questioning of Dr. Webber were appropriate, procedurally proper, and legally correct. With the exceptions noted below, the objections should be sustained.

**ARGUMENT**

In the order in which Plaintiff's counsel presents them, Defendants respond as follows to Plaintiff's arguments about individual objections.[1]

**10:7-11**

·7· ·Q.· ·So, these are all risks of harm that Mr. Jackson would
·8· · · · have been exposed to due to the prolonged delay in
·9· · · · getting the reversal?
**10**· ·A.· ·Yes.· And --

---

[1] As Plaintiff has attached the original and purged deposition transcripts to his Motion, Defendants will not reattach them; rather, they will simply copy the relevant excerpts, in pertinent part, into the text of their Response.

11· · · · · · · · **MS. WEIL:· Objection.· Argumentative.**

Plaintiff's counsel argues that this question is not "argumentative" – that it "simply asks whether the delay in Plaintiff's care would have resulted in the risks of harm listed by Dr. Webber."  ECF 183 at 5.  But when Plaintiff adds his gloss to the question – asking about the "prolonged delay" rather than just the "delay" he turns the question into argument.  The objection should be sustained.

## 17:1-5

·1· ·A.· ·-- Dr. Papendick a surgeon?
·2· ·Q.· ·No, he was not.
·3· ·A.· ·Well, what kind of physician is he, if I might ask?
·4· · · · · · · · · **MS. WEIL:· Objection.· The witness is asking**
·5· · · · **questions.**

While this objection was arguably proper at the time, it requires no action from the Court.  For purposes of this Response, Defendants withdraw this objection.

## 17:25-18:7

1· · · · case, that Dr. Papendick is not a surgeon, not only is
·2· · · · he not a surgeon but he is not board-certified, yet he
·3· · · · is making decisions and making recommendations on
·4· · · · surgery for outpatient purposes.· What does that tell
·5· · · · you, Doctor?
·6· · · · · · · · · **MS. WEIL:· Objection.· Foundation,**
·7· · · · **argumentative.**

2

In this question, in which Mr. Marko asks Dr. Webber to comment on Dr. Papendick's qualifications to treat Plaintiff and patients like him, Mr. Marko supplies a cherry-picked list of qualifications listing only qualifications Dr. Papendick does not have.  He does not list the qualifications Dr. Papendick does have.  As such, he does not provide the witness with the proper foundation to answer the question and he structures the question in a manner designed to create the desired answer.   This is argument, not proper questioning, and the objection should be sustained.  Moreover, questions about Dr. Papendick's qualifications are outside of the scope of Dr. Webber's expert disclosure, **Exhibit A**, at p.3, and should be excluded for this reason alone.


**23:16-22**

16· ·Q.· ·And we'll talk about that and why not, but for
17· · · · Mr. Jackson, did you have any qualms?· Did you say, you
18· · · · know, did you have -- you know, think to yourself:
19· · · · Well, you know what, maybe he should just keep this
20· · · · colostomy forever?· Did you ever have any second
21· · · · guessing of yourself?
22· · · · · · · · · **MS. WEIL:· Objection.· Leading.**

While this objection was proper at the time – the question included a pre-fab sentence Mr. Marko was suggesting to the witness as a possible answer – it requires no action from the Court.  For purposes of this Motion, Defendants withdraw this objection.

3

**34:16-35:3**

16· ·A.· ·It's your -- the gasses from your colon that are being
17· · · · passed through the -- so the big fills up and --
18· ·Q.· ·With gas?· With gas?
19· ·A.· ·Gas.· With --
20· ·Q.· ·Smelly gas?
21· ·A.· ·Absolutely smelly gas.
22· · · · · · · · · MS. WEIL:· Objection.
23· ·A.· ·It's flatulence.· It fills up with --
24· ·Q.· ·Is it smelly gas?
25· ·A.· ·It is --
**Page 35**
·1· · · · · · · · MR. MARKO:· What's the objection?
·2· · · · · · · · **MS. WEIL:· You're leading him.· You're putting**
**·3· · · · words in his mouth.**

Here, Mr. Marko planted the phrase "smelly gas" in the Dr. Webber's mouth not once but twice.   Mr. Marko protests that he was merely asking "for clarification on the severity of the gas."   To the contrary, and obviously, this is not accurate. When Dr. Webber did not respond with the exact inflammatory verbiage Mr. Marko was seeking, Mr. Marko supplied him with the desired words.  This was leading, and the objection should be sustained.

**38:24-39:2**

24· ·Q.· ·What about physical harm?· You said that -- we talked
25· · · · about the psychological and emotional.· You said that a
**Page 39**
·1· · · · delay of not getting this reversal can cause physical
·2· · · · harm and you listed some things.· Can we go through
·3· · · · those?· What are the -- what are high-risk physical
·4· · · · harms for not letting somebody get this surgery?
**·5· · · · · · · · · MS. WEIL:· Objection.· Asked and answered**

4

Mr. Marko argues that this question "merely requests further information as to high-risk physical harms for someone who did not get surgery.  It is not simply reiterating any prior testimony." ECF 183 at 10.  In fact, 30 pages earlier, Mr. Marko had elicited detailed testimony about high-risk physical harms that could affect someone whose colostomy was not reversed:

```
5· ·Q.· ·Understood.· And is that delay in getting reversal, is
·6· · · · there a risk of physical harm?
·7· ·A.· ·Yes.· So, the physical harm that can occur when you
·8· · · · don't reverse a colostomy is they can develop what is
·9· · · · called prolapse of a colostomy, and that's where the
10· · · · colostomy protrudes out for some distance from the skin
11· · · · level.· Typically, when we put them there, they're only
12· · · · protruding maybe a couple centimeters above the level of
13· · · · the skin.
14· ·Q.· ·Understood.
15· ·A.· ·But in a case of a prolapse, they can protrude to be
16· · · · many centimeters, even 15, 20 centimeters.
17· ·Q.· ·Understood.
18· ·A.· ·And that could cause problems with the actual process of
19· · · · defecation.
20· · · · · · · · · Another complication of a colostomy is the
21· · · · development of what we would call a paracolostomy or a
22· · · · parastomal hernia where the original hole that the colon
23· · · · goes through, although, we try to make the hole in the
24· · · · muscle layers or fascia snug around the colostomy, in
25· · · · time, as it occurs in almost all patients, the hole
Page 10
·1· · · · widens.· And then you get a bigger hole.· The colon
·2· · · · itself or the colostomy remains the same size or
·3· · · · diameter, but the hole around it is now wider and so
·4· · · · knuckles of bowel can sneak into there and develop what
·5· · · · we call a bowel obstruction.· And bowel obstructions can
·6· · · · and sometimes are life-threatening.· I mean --
```

5

·7· ·Q.· ·So, these are all risks of harm that Mr. Jackson would
·8· · · · have been exposed to due to the prolonged delay in
·9· · · · getting the reversal?
10· ·A.· ·Yes.· And --
11· · · · · · · · · MS. WEIL:· Objection.· Argumentative.
12· ·Q.· ·Go ahead.
13· ·A.· ·And another complication of a colostomy is the
14· · · · development of what we call a colostomy stenosis, or a
15· · · · recessed colostomy, where the colostomy shrinks.
16· · · · Instead of being rose budded off the abdominal wall by
17· · · · two centimeters, it actually recesses into the skin so
18· · · · that it's hard to even see.· And if it becomes stenotic
19· · · · or recessed or sunken, some people call it a sunken
20· · · · colostomy, it's hard to defecate through that colostomy,
21· · · · and that would mimic a large bowel obstruction which is
22· · · · also life-threatening.
23· ·Q.· ·These are serious risks?
24· ·A.· ·Again --
25· · · · · · · · · MS. WEIL:· Objection.· Argumentative.
Page 11
·1· ·Q.· ·Are they serious risks?
2· ·A.· ·Not only serious risks, but potentially life-threatening
·3· · · · risks.
·4· ·Q.· ·Understood.

Tr., 9:5-11:2.  Allowing Plaintiff to elicit, again, this hypothetical "parade of

horribles" – none of which ever affected Plaintiff, as Dr. Webber admitted – is

cumulative, inflammatory, and prejudicial.  The objection should be sustained.


**41:9-45:16**

Plaintiff next directs the Court to a line of questioning beginning on page 41,

line 9.  Defense counsel objected to a large, color enlargement of a photograph of a

prolapsed stoma.   The photograph is graphic and designed to make the jury cringe.

6

And it is undisputed that the photograph is not of Plaintiff and depicts a condition that Plaintiff never developed.  As such, as defense counsel stated in her objection to the photograph and to the line of questioning surrounding it, the photograph was irrelevant and prejudicial and should be excluded pursuant to Fed. R. Evid. 401 and 403:

```
·6· ·Q.· ·Yeah.· Let me show you this as an example.· Would this
·7· · · · be an example?
·8· ·A.· ·That is a perfect example of a colostomy prolapse.
·9· · · · · · · · · MS. WEIL:· Objection.· Objection to the
10· · · · exhibit.· Objection to the question.· Objection on
11· · · · relevance, and 401, 403.· There is no evidence that
12· · · · Mr. Jackson had any of this.· This is irrelevant, this
13· · · · is prejudicial, and we object to the entire line of --
14· · · · · · · · · MR. MARKO:· Okay.· So --
15· · · · · · · · · MS. WEIL:· -- testimony.
```

Tr., 41:6-15.   That was the whole of defense counsel's objection.   This was not a "speaking objection" – it was a proper objection stating the grounds for the objection.  And, contrary to Mr. Marko's assertion that the Defense Counsel spoke and "interrupted" for the next "several pages," the Court can see, on the pages cited by Plaintiff, a speech by Mr. Marko worthy of closing argument followed by Defense counsel's repeated attempts to strike the speech.  But that is of no moment or purposes of this motion.   The Court should sustain defense counsel's objection to the use of the irrelevant, inflammatory, prejudicial photo that admittedly does not depict Plaintiff or any condition that ever affected him.

**48:17-49:5**

17· ·Q.· ·Would you ever bill an insurance provider such as
18· · · · Medicaid for a service that was not medically necessary?
**19· ·A.· ·I would not.**
**20· · · · · · · · · MS. WEIL:· Objection.· Foundation.**
21· ·Q.· ·Okay.
22· ·A.· ·I would not.
23· ·Q.· ·Why would you not bill Medicaid for a medically
24· · · · unnecessary surgery?· Or --
25· · · · · · · · · MS. WEIL:· Objection.
**Page 49**
·1· ·Q.· ·-- in other words -- let me rephrase it.· Why would you
·2· · · · only bill Medicaid for a medically necessary surgery?
**·3· · · · · · · · · MS. WEIL:· Objection.· Foundation.· There's**
**·4· · · · been no foundation laid about Medicaid or about his**
**·5· · · · knowledge of Medicaid or anything else.**

Plaintiff argues that it is "ludicrous" to object to this questioning on the basis of lack of foundation.  In fact, Mr. Marko laid no foundation for Dr. Webber's knowledge of Medicaid, his understanding of the meaning of "medically unnecessary," or  knowledge of how Medicaid defines, construes, and applies the term "medically unnecessary."  The objection should be sustained.

**49:24-50:2**

24· ·Q.· ·Okay.· The total amount of the cost of the surgery, the
25· · · · whopping amount was $919.78?
Page 50
·1· ·A.· ·Was the other number --
·2· · · · · · · · · MS. WEIL:· Objection.· Argumentative.

8

Plaintiff argues that this question was not argumentative, -- that it "merely asked how much the surgery cost." But by inserting the adjective "whopping" before the dollar value, Plaintiff inserts an improper argumentative gloss on the question. The objection should be sustained.

## 51:6-11

6· ·Q.· ·So, was this a -- given that Plaintiff's Exhibit 13 of
·7· · · · $919.78 to -- for your Physicians Group to do this
·8· · · · surgery, is this an expensive surgery comparatively
·9· · · · speaking?
10· · · · · · · · · **MS. WEIL:· Objection.· Argumentative, no**
11· · · · **foundation, no relevance.· Objection.**

Mr. Marko asked this question without laying any foundation in terms of the comparison he was asking Dr. Webber to make; for example, what Dr. Webber considers "expensive" and the range of typical charges assessed by his group. Whether Dr. Webber's group considered, or would have considered, the surgery "expensive" is irrelevant to any issue in this case and is beyond the scope of Dr. Webber's expert disclosure. The objection should be sustained.

## 52:1-4

1· ·Q.· ·Would you do surgery on a patient who was -- needed
·2· · · · surgery who was in the department of corrections who was
·3· · · · sent to you?
·4· · · · · · · · · MS. WEIL:· Objection.· Relevance.

9

Plaintiff argues that the relevance objection should be overruled because "[i]t is relevant whether Dr. Webber would do surgery on an incarcerated person, as it goes to Defendants' arguments that surgery was not feasible for Plaintiff when he was in custody." ECF 183 at 14.   In the first place, as Plaintiff and the Court are aware, Defendants have never argued that "surgery was not feasible for Plaintiff when he was in custody."   Moreover, Dr. Webber's speculation about whether he would "do surgery" of unspecified type on a hypothetical prisoner with an unknown medical condition is obviously not relevant to any of the Plaintiff's claims and is outside the scope of Dr. Webber's disclosure.   The objection should be sustained.


**72:2-25**

A.· ·Yeah.· Unfortunately, I don't think it's appropriate,
·3· · · · but again, I think people that make these decisions
·4· · · · never meet with their patients.· They sit in --
·5· · · · · · · · · MS. WEIL:· I move to -- I'm sorry.
·6· ·A.· ·-- some kind of...
·7· · · · · · · · · MS. WEIL:· I'm sorry.· I'm sorry.· I thought
·8· · · · you were finished.
·9· · · · · · · · · MR. MARKO:· Yeah.· Please don't interrupt the
10· · · · doctor.
11· · · · · · · · · MS. WEIL:· I'm sorry.· I thought he was
12· · · · finished.· I apologized.
13· ·A.· ·I think it's kind of a sterilized procedure where
14· · · · patients -- or doctors like Dr. Papendick sit in
15· · · · boardrooms and make decisions on cost cutting and
16· · · · whatever based on, you might say, administrative orders
17· · · · from whom he works.
18· ·Q.· ·Would you ever make a decision --
19· · · · · · · · · MS. WEIL:· I'm sorry.· I never got to object

20· · · · because you didn't let me -- you didn't let me object
21· · · · after he was finished.
22· · · · · · · · · **I'm going to object and move to strike the**
23· · · · **whole answer as speculation, as lacking foundation, as**
24· · · · **irrelevant, and as 401, 403.**

Mr. Marko argues that this objection should be overruled because it was Dr. Webber's "opinion," not speculation.  ECF 183 at 18.   To the contrary, the entire answer consists of Dr. Webber imagining how, and on what basis, "doctors like Dr. Papendick" make decisions about patient care.  The answer is pure speculation, irrelevant and inadmissible.   And, as such, it carries for prejudice that substantially outweighs its nonexistent probative value.   The objection should be sustained.

Finally, Mr. Marko argues that the Court should overrule a "speaking objection" by defense counsel about questions related to Dr. Kansakar's testimony.  Mr. Marko offered Dr. Webber an incomplete and inaccurate version of Dr. Kansakar's testimony; as Mr. Marko's version is not a fact that will be in evidence at trial.   Defense counsel's objections were proper and meritorious and should be sustained.

## <u>CONCLUSION</u>

Except as specifically set forth above, this Court should deny Plaintiff's motion and sustain defense counsel's objections to questioning during the course of Dr. Webber's deposition.

Respectfully submitted,

11

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
      Sunny Rehsi (P80611)
      101 W. Big Beaver Road., Suite 1100
      Troy, MI 48084
      248.205.3300
      sunny.rehsi@bowmanandbrooke.com

      Adam Masin (Admitted 5/1/2025)
      750 Lexington Avenue
      New York, NY 10022
      646.914.6790
      adam.masin@bowmanandbrooke.com

      Rachel B. Weil (Admitted 7/16/25)
      123 South Broad Street, Suite 1512
      Philadelphia, PA 19109
      267.908.7097
      rachel.weil@bowmanandbrooke.com

      *Attorneys for Defendants CHS TX, Inc. d/b/a*
      *YesCare and Keith Papendick, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 12, 2025, I electronically filed the foregoing paper with the clerk of the United States District Court, Eastern District Southern Division using the ECF system which will send notification of such filing to the following:

**Ian T. Cross**
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis**
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Jonathan R. Marko** (P72450
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:    /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road., Suite 1100
Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

13

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a YesCare and Keith Papendick, M.D.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

                    Plaintiff,                    Case No.: 2:19-cv-13382-GAD-PTM

v.                                              U.S. DISTRICT COURT JUDGE
                                                HON. GERSHWIN A. DRAIN
CHS TX, INC., et al.,

                    Defendants.

---

## [PROPOSED] ORDER DENYING PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE HEARSAY STATEMENTS REPORTEDLY MADE BY AN UNIDENTIFIED SPEAKER AT DR. KANSAKAR'S OFFICE [ECF 156]

For the reasons set forth in Defendants' Opposition to Plaintiff's Motion *in Limine* to Preclude Hearsay Statements Reportedly Made by an Unidentified Speaker at Dr. Kansakar's Office and any arguments thereto, the Plaintiff's motion is DENIED.

                                        _____
                                        Hon. Gershwin A. Drain