**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

Plaintiff,

-vs-

Case No. 19-cv-13382
Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

Defendants.

---

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc. and Dr. Keith Papendick, M.D.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

---

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION *IN LIMINE* TO ALLOW EVIDENCE OF BID MATERIALS SUBMITTED BY DEFENDANT CORIZON IN RESPONSE TO DEPARTMENT OF CORRECTIONS REQUESTS FOR PROPOSALS [ECF No. 171]**

## LAW AND ARGUMENT

In seeking to broadly exclude all of their own written statements to various state-government clients and potential clients from 2012 to 2020, Defendants advance the spurious argument that the only statements that can possibly be relevant to Plaintiff's *Monell* claim are statements made by the corporate defendant both in the place where the Plaintiff was incarcerated, and at the time when the Plaintiff was incarcerated. (ECF No. 206, PageID.8777).

This position is contrary to both applicable law and common sense. Corizon/CHS TX is a company that operates nationwide, and there is no logical reason to believe that policies that the company implements in one location would not also be implemented in every other location where it operates. In fact, Defendants' bid materials themselves provide direct evidence that its corporate policies were nationally-uniform. In its bid for the 2013 Kansas Department of Corrections contract, Defendant stated that, "[a]s a company, Corizon has targeted several 'Key Performance Indicators (KPI)' for improvement ***across our contracts companywide*** . . . thereby enhancing our ability ***to meet the budget expectations of each of our clients across the country.***" (ECF No. 66-23, PageID.2406) (emphasis added). Corizon's consistent bragging about saving money on psychiatric medication is another example. In Corizon's 2020 bid for the renewed Michigan Department of Corrections contract, Corizon explained:

> The success of this approach has been proven in Michigan. Shown in the graph below, upon transitioning the psychiatry contract from the MDOC's previous

> provider in June 2016, working with PharmaCorr and the MDOC, we implemented initiatives that decreased psychotropic medication spend by 60%, averaging $204,362 per month for a total savings of $9.8M since the onset of the contract. We also addressed the previous vendor's overutilization of "sleep" medications, such as Benadryl and Melatonin, by applying evidence-based interventions and one to one supervision and consultation for providers.

ECF No. 66-18, PageID.2286. In its 2020 bid for the renewal of the *Missouri* Department of Corrections Contract (also confusingly referred to as "MDOC"), Corizon explained the following about its efforts to reduce spending on psychiatric medication in Missouri prisons:

> The success of this approach has been proven in our contract with the MDOC. Shown in the graph below, upon transitioning the psychiatry services from the MDOC's previous provider, working with PharmaCorr and the MDOC, we reduced the cost of psychiatric medications by over $2 million over five years by carefully monitoring prescribing behavior each quarter and comparing individual providers to evidence-based prescribing quality indicators, as described above. We also addressed the previous providers overutilization of "sleep" medications, such as Benadryl and Melatonin, by applying evidence-based interventions and one-to-one supervision and consultation for providers.

**Ex. 1-** Excerpt from 2020 bid for Missouri DOC contract.

The point here is not that Kohchise Jackson was denied psychiatric medication or sleep medication. The point is that Corizon carried out *the exact same cost-cutting initiatives* in every state prison system where it operated. When it took all the Michigan prisoners off of Benadryl, it did the same to the Missouri prisoners. Corizon/CHS TX is one company, with one management team. If Corizon was doing something in Kansas or Tennessee, they were probably also doing it in Michigan. Former Corizon employee

Cristin Rettler has even testified in this case that Corizon's procedures were standardized nationwide:

> Q. Do you have any reason to believe that Corizon's policies and procedures were standardized across the entire company?
>
> MR. MASIN: Object to form.
>
> **THE WITNESS: Yes. That's absolutely what they discussed at that conference, which was actually -- you know, I mean, I guess I was a bit surprised, even though that's what Dr. Garlick always told me, but I didn't -- I wasn't sure if he was a reliable source, but, yeah, that was reinforced and so they would -- at the conference, you know, people would raise their hands and say yeah, that's how we do it in whatever, New York and Kentucky and Massachusetts and, oh, we just opened and that's how our referral process works, too.**
>
> **You know, they were really striving for standardization, and that's the way to make -- not make money but to keep your money, you know. They get a bucket of money from Washington County Jail and, you know, they're trying to keep that. They're trying to not use their resources on patients.**

**Ex. 1-** Rettler Dep. 76:14-77:9.

Nor does the fact that a given statement by the corporation was made in 2013 or in 2020 mean that the statement cannot have any bearing on whether a corporate policy existed in April of 2017. Common sense suggests that evidence that a corporate policy existed in 2013 increases the likelihood that the same corporate policy is still in existence four years later, especially if it is a policy that provides the corporation with a financial benefit. Courts have found far more temporally-remote conduct to be relevant to a *Monell* claim. *See, e.g. Jackson v. City of Cleveland*, 622 F. Supp. 3d 636, 641 (N.D.

Ohio 2022) (rejecting Defendant city's argument that "that the specific facts of a policy or custom alleged come from the 1960s and 1970s and cannot be the moving force for the constitutional violations at issue in 1991"). The same is true for corporate or municipal policies that are shown to exist *after* the event at issue, as courts around the country have also recognized. *See Abdur-Rahim v. City of Columbus*, 2019 U.S. Dist. LEXIS 71056 at *4 (S.D. Ohio April 26, 2019) ("Similar subsequent incidents can be probative and material of what policies, practices, or accepted customs existed at the time of the incident at issue, which would be relevant to Plaintiffs' *Monell* claims. This is supported by case law from the 1st, 3rd, 4th, 5th, 6th, 7th, 9th, 10th, and 11th Circuits") (collecting cases); *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir. 1997) ("we reiterate our rule that post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry.").

"Fed. R. Evid. 401—deeming evidence relevant if it has "*any* tendency to make a fact more or less probable" (emphasis added)—sets an extremely low bar" for relevance. *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014). It is clear that Defendants' statements in the bid materials about their initiatives for cutting costs on prisoner healthcare easily clear this modest hurdle. "Relevant evidence is, of course, not just facts that "carry a party's evidentiary burden" by proving an element of a claim." *Meng Huang v. Ohio State Univ.*, 116 F.4th

541, 564 (6th Cir. 2024). Rather, "[t]he standard for relevance is capacious—evidence is relevant if it has "any tendency" to make a "fact of consequence" to the case "more probable or less probable than it would be without the evidence."" *Id*. (quoting *Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009)). As the Sixth Circuit has explained:

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for which it is offered still can seem quite improbable. Thus, the common objection that the inference for which the fact is offered "does not necessarily follow" is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall.

*Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (quoting McCormick on Evidence § 185, at 542-43.).

Nor is the evidence unfairly prejudicial. "Evidence is unfairly prejudicial when it "tends to suggest decision on an improper basis," but is not unfairly prejudicial when it only damages the defendant's case due to the legitimate probative force of the evidence." *United States v. Houston*, 813 F.3d 282, 291 (6th Cir. 2016) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). On the question of unfair prejudice, Defendants argue that:

> The documents in question simply do not show what Plaintiff says they do, and the actual evidence says the opposite. Thus, admission of such evidence would confuse and mislead the jury into believing Plaintiff's false narrative on this issue —which is an ultimate issue that the jury will be tasked with deciding. Such an outcome would cause substantial undue prejudice to Defendants.

ECF No. 206, PageID.8782. Defendants' argument essentially starts from the premise that Plaintiff's allegation that there was a policy of denying medical care to prisoners to save money is a "false narrative," then concludes that *if* an item of evidence would make the jury more likely to believe this "false narrative," the item should be excluded as unduly prejudicial. By Defendants' logic, *any evidence* that Corizon had a policy of denying medical care to prisoners to save money should be excluded as unduly prejudicial. Evidence is not unduly prejudicial merely because it helps the Plaintiff to prove his claims.

Defendants also argue that, '[t]hese materials are also hearsay." ECF No. 206, PageID.8782. This contention borders on frivolous. The bid materials consist entirely of Defendant's own authorized written statements to state government procurement offices in support of its efforts to win public contracts. They are opposing party admissions under Rule 801(d)(2) and thus excluded from the definition of hearsay.

Respectfully submitted,

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103
(734) 994-9590
Email: ian@lawinannarbor.com

Date: August 12, 2025

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 12, 2025**, via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other: |
| ☒ ECF System | ☐ Email |

*/s/* Ian T. Cross