**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

    Plaintiff,        Case No. 19-cv-13382

-vs-             Hon. Gershwin A. Drain

CHS TX, INC., *et al.,*

    Defendants.

_____

| | |
|---|---|
| LAWRENCE H. MARGOLIS (P69635) | ADAM MASIN |
| IAN T. CROSS (P83367) | SUNNY REHSI (P80611) |
| **MARGOLIS & CROSS** | **BOWMAN AND BROOKE LLP** |
| Attorneys for Plaintiff | Attorney for Defendants |
| 214 S. Main St., Ste. 200 | 101 W. Big Beaver Rd., Ste. 1100 |
| Ann Arbor, MI 48104 | Troy, MI 48084 |
| (734) 994-9590 | (248) 205-3300 |
| larry@lawinannarbor.com | Adam.masin@bowmanandbrooke.com |
| ian@lawinannarbor.com | Sunny.rehsi@bowmanandbrooke.com |

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7777 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND GRANT PLAINTIFF'S OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JEFFREY BOMBER

  NOW COMES, Plaintiff, **KOHCHISE JACKSON**, by and through his

attorneys, **MARGOLIS & CROSS** and **MARKO LAW, PLLC**, and states as

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

follows for his Motion to Overrule Defendants' Objections and Grant Plaintiff's Objections to the Deposition Testimony of Dr. Jeffrey Bomber for the reasons more fully set forth in Plaintiff's Brief in Support, which is hereby incorporated by reference.

Pursuant to Local Rule 7.1, Plaintiff's counsel sought concurrence with Defense counsel, but concurrence was refused.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court GRANT Plaintiff's Motion to Overrule Defendants' Objections and Grant Plaintiff's Objections to the Deposition Testimony of Dr. Jeffrey Bomber.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: jon@markolaw.com

Date: October 8, 2025

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,

-vs-

CHS TX, INC., *et al.,*

        Defendants.

Case No. 19-cv-13382

Hon. Gershwin A. Drain

_____

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for Defendants
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Aadam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7777 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com

_____

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND GRANT PLAINTIFF'S OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JEFFREY BOMBER

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

I.  Whether the Court should overrule Defendants' objections to the deposition testimony of Dr. Jeffrey Bomber.

**Plaintiff states: Yes.**
**This Court should state: Yes.**

II.  Whether the Court should grant Plaintiff's objections to the deposition testimony of Dr. Jeffrey Bomber.

**Plaintiff states: Yes.**
**This Court should state: Yes.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

2

## __CONTROLLING OR MOST APPROPRIATE AUTHORITY__

### __Cases__

*The Charles Morgan*, 115 U.S. 69, 77, 5 S. Ct. 1172, 1176 (1885).

*Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-302, 2017 U.S. Dist. LEXIS 28325, (S.D. Ohio Feb. 28, 2017)

*United States v. Fonville*, 422 F. App'x 473, 481 (6th Cir. 2011)

*United States v. LaVictor*, 848 F.3d 428, 451 (6th Cir. 2017)

*Romero v. Selene Fin., LP*, No. 4:22-CV-00829-BCW, 2024 U.S. Dist. LEXIS 141524, at *6 (W.D. Mo. July 3, 2024).

*United States v. Durham*, 319 F.2d 590, 592 (4th Cir. 1963)

### __Rules of Evidence__

Fed. R. Ev. 404

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

**INTRODUCTION**

On September 4, 2025, the parties took the de benne esse trial deposition of Dr. Jeffrey Bomber. During the deposition, a number of objections were made by counsel the Defendants. **Exhibit 1, Bomber Deposition.** On August 1, 2025, in an attempt to save time for both the parties and this Honorable Court, Plaintiff's office contacted Defense counsel to attempt to reach agreement on as many objections as possible and sent a purged transcript. **Exhibit 2, Email.** Defense counsel, however, has ignored Plaintiff's attempt to discuss the matter, necessitating this Court's review of the disputed objections.

**DISPUTED OBJECTIONS**

**1.      Defendants' Objection to Plaintiff's Exhibit 1**

The first objection made by Defense counsel was to Plaintiff's Exhibit 1 in the deposition: the contract with the State of Michigan. Specifically, Defense counsel argued that the document was not properly admitted. **Ex. 1 at 7:20-25.** Plaintiff's counsel, however, correctly pointed out that the exhibit was, in fact, already admitted through the stipulation of the parties in the joint final pretrial order. *Id.* **at 8:1-9.** The joint final pretrial order betrays the falsity of Defense counsel's assertions and affirms the statement of Plaintiff's counsel that the contract exhibit had already been admitted by stipulation. **Exhibit 3, Joint Final Pretrial Order, p. 22.** Thus, this Honorable Court should overrule this objection made by Defense counsel.

4

**2.      Defendants' First Unclear and Baseless Objection**

Next, Defense counsel objected to a question by Plaintiff's counsel pertaining to whether Quality Correctional Health was a pass-through entity for Corizon Health. **Ex. 1 at 9:17-24.** Defense counsel offered no basis for the objection, simply stating, with no follow-up, "Object to -- objection." ***Id.* at 9:22.** This objection must be overruled because it is impossible to gauge the basis for said objection. The objection is therefore waived. *See Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-302, 2017 U.S. Dist. LEXIS 28325, *3-4 (S.D. Ohio Feb. 28, 2017) ("To the extent that counsel made a generic objection to 'form,' but failed to specify the basis for the objection, the Court also considers those objections to be waived."). Here, Defense counsel failed to even provide *any* basis for the objection, let alone actually expounding upon it. This Court should therefore overrule this objection.

**3.      Defendants' First Speculation Objection**

Defendants then objected to a question about whether Plaintiff would have been able to receive a colostomy reversal surgery had Dr. Papendick approved such:

> Q. So in this particular case, I understand you didn't have particular involvement in this, but applying this chart and criteria, if Dr. Papendick had given the "yes" to the request for a colostomy reversal for Mr. Jackson, it would have then went through to approval, correct?
>
> **A. Yes.**
>
> Q. And then it would have been sent back to the site, correct?
>
> **A. Correct.**

5

Q. And then Mr. Kohchise Jackson would have been able to get a colostomy reversal, correct?

MR. MASIN:· Object to --

**A. Correct.**

MR. MASIN: -- speculation.

**Ex. 1 at 15:21-25.**

This question in no way called for any speculation on the part of Dr. Bomber. This line of questioning merely asked for the steps in the procedure of how Plaintiff could have gotten treatment if he had been approved for such. Given Dr. Bomber's work with inmates and Corizon, it does not at all call for speculation for him to answer questions about the procedure of how inmates may receive treatment after approval for same.

This objection should be accordingly overruled.

**4.    Defendants' Second Unclear and Baseless Objection**

Shortly thereafter, Defense counsel lodged another objection totally devoid of any basis. Specifically, Defense counsel objected to "commentary in the question":

Q. Okay. And in fact, when -- I know that Corizon doesn't like to use the words "deny", but you've previously testified that those words had been used in the past, isn't that true?

MR. MASIN: Objection to the question, that --the commentary in the question.

Q. True or false?

**A. I'm sorry I lost the question.**

6

*Id.* **at 16:17-24.**

First, it must be noted that "commentary in the question" is not a valid objection. While, Plaintiff's counsel speculates perhaps Defense counsel meant to lodge a form objection, the lack of specificity and proper objecting in the deposition renders the objection waived. *See Fletcher*, 2017 U.S. Dist. LEXIS at *3-4 ("To the extent that counsel made a generic objection to 'form,' but failed to specify the basis for the objection, the Court also considers those objections to be waived.").

Further, even were this a valid basis for an objection, there is no commentary. The question was phrased to show inconsistencies between the phrasing utilized by Defendant Corizon in this lawsuit in contrast to the phrasing used by the individuals who actually performed the services relevant here. There was no commentary. Rather, the language included in the question lodged by Plaintiff's counsel was for context and to properly examine contradictions from the witness.

**5.    Defendants' First "Improper Impeachment" Objection**

Counsel for Defendants then lodged an objection to Plaintiff's question to Dr. Bomber, wherein he asked him about why he gave an answer in a previous deposition that was completely opposite to answers in the current deposition:

> Q. Let me show you your previous deposition testimony where you were asked (as read), "And the utilization management component of the review process takes into account -- consideration cost," correct?
>
> MR. MASIN: Objection to the use of this deposition testimony in this matter.

7

MR. MARKO: Excuse me, Mr. --

MR. MASIN: This is an improper way to impeach a witness.

MR. MARKO: Mr. Masin, I have not finished my question. You interrupted me in the middle of my question. And I'm directly impeaching the witness with a deposition transcript where he literally says the opposite answer.

MR. MASIN: It's an improper way to do it, sir.

MR. MARKO: Your objection is noted.

MR. McLAUGHLIN: I'm gonna object. I don't -- is this from the Franklin case or this case?

MR. MARKO: This is from the Franklin case. I'm allowed to impeach with any -- any document. This was under oath so I'm not sure I understand the objections.

**Ex. 1 at 17:23-18:20.**

Defendants offer the entirely unsupported assertion that Plaintiff's counsel's method of impeaching Dr. Bomber with prior inconsistent testimony is "improper." The apparent basis, although it is not clear from the objection itself, is that Defendants believe Plaintiff cannot utilize sworn deposition testimony from other prior cases to impeach Dr. Bomber. This is simply not correct.

Indeed, the United States Supreme Court has held that "[t]he rule is , that the contradictory declarations of a witness, whether oral or in writing, made at another time," may be used for the purpose of impeachment when "the witness has been examined upon the subject, and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or

exculpation, if he desires to make it." *The Charles Morgan*, 115 U.S. 69, 77, 5 S. Ct. 1172, 1176 (1885).

Here, this is exactly what Plaintiff's counsel did. He directly brought Dr. Bomber's attention to his prior inconsistent testimony in a prior case. Not only did he afford Dr. Bomber the "full opportunity for explanation or exculpation[,]" but that was, in fact, Plaintiff's entire question—asking about why the inconsistency may exist.

This objection should be overruled.

**6.     Defendants' Second "Improper Impeachment" Objection**

Defense counsel then immediately lodged another meritless "improper impeachment" objection:

BY MR. MARKO:

Q. Sir, do you see that you previously testified that the utilization management component of the review process takes into consideration cost; do you see that?

MR. MASIN: Objection. It's not an inconsistent statement.

**Ex. 1 at 18:21-19:1.**

This objection is just as devoid of merit as the first. The contention that Dr. Bomber's prior testimony is "not an inconsistent statement" is utterly ludicrous. Indeed, a single line before Defense's "improper impeachment" objections began, Dr. Bomber testified as follows:

Q. And let's talk about this process and the purpose of it, right?

9

The -- a component of this process that the patient has to go through
Corizon, this request from the doctor, going up to Dr. Papendick in this
case, a component of the review process takes into consideration cost;
isn't that true?

**A. No. Not on the medical side.**

*Id.* **at 17:15-22.**

Plaintiff's counsel then sought to impeach him by asking: "Q. Sir, do you see
that you previously testified that the utilization management component of the
review process takes into consideration cost; do you see that?" *Id.* **at 18:22-24.** This
is definitionally an inconsistent statement. An inconsistent statement is defined as
when two statements, "one made at trial and one made previously, are irreconcilably
at odds." *United States v. Fonville*, 422 F. App'x 473, 481 (6th Cir. 2011) (quoting
*United States v. Winchenbach*, 197 F.3d 548, 558 (1st Cir. 1999)). "[I]nconsistency
is defined broadly." *United States v. LaVictor*, 848 F.3d 428, 451 (6th Cir. 2017).

Thus, this question properly sought to probe inconsistencies in Dr. Bomber's
testimony that cost was not considered compared to prior testimony that it was, in
fact, considered. This objection should be accordingly overruled.

**7.     Defendants' First Relevance Objection**

Next, counsel for Defendants argued that Plaintiff lodged an irrelevant
question:

Q. And let me show you Exhibit 89 which is Corizon's own documents
in this case which is their own presentation about this. Do you see this,
sir?

10

MR. MASIN: Objection to this document.

MR. MARKO: What's the objection?

MR. MASIN: To relevance. We stated our objection to this document.

MR. MARKO: Relevance?

MR. MASIN: It's dated 2013.

MR. MARKO: Again, this is all -- this is -- Plaintiff's 88 which is InGauge screenshots admitted at his deposition and have been admitted by stipulation. Sir, please familiarize yourself with the file and stop making objections to exhibits that have already been stipulated to and admitted.

**Ex. 1 at 20:4-18.**

Once again, Plaintiff's counsel rightly corrected Defense counsel as to his objection here, as the contested document was already stipulated to by Defendants in the joint final pretrial order, which explicitly lists the document as Plaintiff's Exhibit 88, which is "Admitted by stipulation." **Ex. 3 at 33.** This objection should, thus, be overruled, as Defense counsel already stipulated to the admission of this allegedly disputed document.

## 8.   Defendants' First Lack of Personal Knowledge Objection

Defendants objected to Plaintiff's questioning as to Corizon's review process on the basis of lack of personal knowledge:

Q. So if somebody needs a colostomy reversal because they were injured at work and they have workers' compensation insurance, and workers' compensation insurance approves the procedure, then Corizon doesn't do a medical necessary review because it's on the pass-through list, true?

11

MR. MASIN: Objection. Lack of personal knowledge. He's just testified he does not have personal knowledge of that.

**Ex. 1 at 22:23-23:6.**

This argument is also, frankly, nonsensical. Indeed, Dr. Bomber was the state medical director responsible for overseeing the utilization review and management process, so to argue lack of personal knowledge as to what was on on the pass-through list in his own documents is absurd.

The Sixth Circuit has recently noted the low bar to satisfy the personal knowledge showing:

> Rule 602 of the Federal Rules of Evidence requires a witness to have personal knowledge of the matters about which he or she testifies. The required showing to satisfy Rule 602 is "low," and this Court has stated that "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)).

*United States v. Perry*, No. 22-2031, 2024 U.S. App. LEXIS 4030, at *19 (6th Cir. Feb. 20, 2024) (unpublished).

Dr. Bomber certainly did not lack personal knowledge required to at least give an answer to the question, and Defendants' baseless objection should be overruled accordingly.

12

9.      **Defendants' Third "Improper Impeachment" Objection**

Defense counsel objected a third time on the basis of "improper impeachment" and "not inconsistent statement."

> Q. My question was -- well, you previously testified in another case, in the Kensu matter, that you agree that the less money that Corizon spends on treatment, the more money Corizon makes, correct?
>
> MR. MASIN: Objection. Improper – improper impeachment, not inconsistent statement.
>
> Q. Let me ask you the question. Do you agree that the less money that Corizon spends on treatments, the more money Corizon makes? Do you agree with that statement?
>
> MR. MASIN: I object to this document being shown in respect to that question.

**Ex. 1 at 26:5-15.**

As is a common theme throughout Defense counsel's objections, the actual basis for this objection is unclear, although it appears the objection is based on the use of prior testimony from the *Kensu* matter referenced by Plaintiff's counsel. The mere use of prior deposition testimony does not warrant an objection. As already discussed, the US Supreme Court has held that "[t]he rule is, that the contradictory declarations of a witness, whether oral or in writing, made at another time," may be used for the purpose of impeachment when "the witness has been examined upon the subject, and his attention particularly directed to the circumstances in such a way as to give him full opportunity for explanation or exculpation, if he desires to make it." *The Charles Morgan*, 115 U.S. at 77. Thus, Plaintiff may properly impeach Dr.

Bomber with prior inconsistent testimony, as he is being presented with the same and had the full opportunity to explain why the difference may have existed.

Further, the argument that this is not an inconsistent statement also falls flat. Indeed, the question asked if Dr. Bomber agreed with his prior testimony that the less Corizon spends on treatment the more money Corizon makes. This is certainly an inconsistent statement, as he testified in this deposition: "They don't deny outside services based on money. It's whether or not the patient needs it or not." **Ex. 1 at 26:1-2.** This prior testimony, acknowledging Corizon's savings from denying care, greatly implies that money, not patient care, drives decisions, however. This is an inconsistent statement and Plaintiff's question was proper. This objection should be overruled.

**10.    Defendants' Second Speculation Objection**

Defendants objected again shortly thereafter on the basis of improper speculation:

> Q. Yes. Right? So the more utilization management reviews that are denied, the more requests for outside services that are denied by Corizon, the more money Corizon makes, correct?
>
> MR. MASIN: Objection. Calls for speculation.
>
> **A. That would --**
>
> Q. Go ahead.

*Id.* **at 26:24-27:5.**

14

...This does not call for speculation in any way. In fact, Dr. Bomber testified as to this exact point earlier in this very same deposition: "Of course they tried to save money and make a profit. All health care companies do[.]" *Id.* **at 25:16-17.** As noted in the prior section, Dr. Bomber also testified in a prior case that the less Corizon spends on treatment the more money Corizon makes. *Id.* **at 26:5-15.**

This baseless objection should be accordingly overruled.

**11.     Plaintiff's Motion to Strike Non-Responsive Answer**

Plaintiff's counsel moved to strike an entirely non-responsive answer given by Dr. Bomber.

> Q. Yes. Right? So the more utilization management reviews that are denied, the more requests for outside services that are denied by Corizon, the more money Corizon makes, correct?
>
> . . .
>
> **A. But you're implying that there is an intent to save money by denying treatment, and that does not happen.**
>
> Q. Sir --
>
> **A. So, the --**
>
> Q. -- that wasn't my question.
>
> MR. MARKO: I move to strike.

*Id.* **at 26:24-27:11.**

This Court should strike Dr. Bomber's entirely unresponsive and evasive answer to this question. It is not an answer at all, but rather disputing with counsel over the question itself.

**12. Defendants' Third Unclear and Baseless Objection**

Defense counsel offered another objection without any basis at all, leaving both Plaintiff and this Honorable Court to speculate and come up with the basis for Defendants:

> Q. Is it your testimony that through this process that saved Corizon hundreds of millions of dollars, that the quality of care improved for Mr. Jackson?
>
> MR. MASIN: Objection to the question.

*Id.* **at 28:16-19.**

As already stated, an objection without any basis is waived. *See Fletcher*, 2017 U.S. Dist. LEXIS at *3-4 ("To the extent that counsel made a generic objection to 'form,' but failed to specify the basis for the objection, the Court also considers those objections to be waived."). This Honorable Court should therefore overrule this objection.

**13. Defendants' Second Relevance Objection**

Next, Defense counsel objected to the use of an "out-of-state document" by Plaintiff's counsel:

> Q. Let me show you another Exhibit which is 62 which is part of the bid process where, again, Corizon uses the utilization management process to brag about how much cost savings they're providing to governments. Do you see that?
>
> MR. MASIN: Objection to the use of this document. It's an out-of-state document. It has nothing to do with Michigan. Relevance and 403.
>
> Q. Okay. Do you see that, sir?

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

**A. Yes. And I see that most of the savings is keeping people out of the hospital.**

Q. People like Mr. Jackson?

MR. MASIN: Objection --

**A. Correct. To keep people from --**

MR. MASIN:· Objection to --

**A. -- getting sick, meet their needs on-site so that they don't have to go to the hospital.**

**Ex. 1 at 29:4-20.**

This objection falls flat. This document is the subject of a Motion in Limine pending before the Court. ***See* ECF No. 171.** However, very briefly restated, Defendants' relevance objection is devoid of merit because Corizon is a national company. Thus, the fact that the document is "out-of-state" is entirely irrelevant. Indeed, the statements in Corizon's bid materials also demonstrate that these were *company-wide* policies, not policies limited to, for example, operations in Kansas. Corizon specifically stated that it was targeting specific cost-cutting initiatives "across our contracts companywide . . . thereby enhancing our ability to meet the budget expectations of each of our clients across the country." **ECF No. 66-23, PageID.2406.** The fact that this exhibit is "out-of-state" supports, rather than undermines, the relevance thereof.

The Court should thus overrule this objection.

17

**14.  Defendants' Third Speculation Objection**

Defense counsel objected to the following on the basis of improper speculation:

Q. Can a colostomy reversal be done on-site? Yes or no.

**A. No.**

Q. Okay. And Corizon would have to pay if that was done offsite, true?

**A. Yes. If that were approved, yes.**

Q. And because it wasn't in this case, Corizon didn't have to pay; true or false?

MR. MASIN: Objection to speculation.

**A. I don't know the specifics.**

Q. You don't know --

**A. You asked --**

Q. -- whether if a service isn't -- as a doctor, would you bill for a service for a patient that you never did or never saw, sir?

**A. I think you mentioned Mr. Jackson specifically, and I can't say.**

Ex. 1 at 30:3-18.

This question does not call for speculation. Rather, the question is a logical progression from Dr. Bomber's answer in the affirmative that Corizon would have to pay for a colostomy reversal if it was done offsite. It requires no speculation and is predicated entirely on the question Dr. Bomber had *just* answered and which Defense counsel did not object to. It does not take improper speculation to conclude, where Dr. Bomber just testified that Corizon would have to pay for a colostomy

18

reversal if it was done offsite, that Corizon did not have to pay for Plaintiff's surgery since it was not done.

This objection should be overruled as baseless.

**15.  Defendants' Objection as to Allegedly Misstated Testimony**

Defendants' final objection during the initial questioning by Plaintiff's counsel came on the final question:

> Q. Are you aware that his treating physicians all testified that it was medically necessary?
>
> MR. MASIN: Object to form, misstates testimony.
>
> **A. I'm not aware of the specifics, no.**

*Id.* **at 31:23-32:2.**

Simply put, it is not a misstatement of testimony to state that Plaintiff's treating physicians each testified as to the medical necessity of his colostomy reversal surgery. Defendants' objection is therefore baseless and should be overruled.

**16.  Plaintiff's Irrelevant, Good Character Evidence Objection**

Almost immediately upon beginning the Defense examination of Dr. Bomber, Defense counsel sought to elicit improper evidence of good character:

> Q. Where do you reside, sir?
>
> **A. I reside in Naubinway, Michigan, in the Upper Peninsula.**
>
> Q. And where did you grow up?
>
> MR. MARKO: Objection --
>
> **A. I grew up in --**

19

MR. MARKO: Hold on. I'm sorry. Objection. Relevance.

Q. You can answer.

MR. MARKO: And good character testimony which is inappropriate and not admissible.

MR. MASIN: Where he grew up is good character testimony? Okay.

///

BY MR. MASIN:

Q. Where did you grow up, sir?

**A. In Pellston, Michigan.**

Q. Where did you go to high school?

**A. Pellston High.**

MR. MARKO:· Same objection. Can I have a continuing objection?

Q. Did you go to -- did you graduate from high school?

**A. I did.**

Q. Did you attend any postsecondary education?

**A. I did.**

Q. Where did you go to college?

**A. I started at North Central Michigan College, and then I graduated from Jacksonville University with my bachelor's, and then MS/Ph.D. from the Florida Institute of Technology, and then my D.O. degree from Des Moines University.**

Q. And what year did you earn your D.O. degree?

**A. That was 1993.**

Q. After you earned your D.O. degree, did you have a residency?

20

**A. I did. I completed a family practice residency at the Toledo Hospital.**

Q. And how long did you -- how long was that residency?

**A. Three years.**

Q. What did you do after the residency?

**A. I practiced medicine in Findlay, Ohio, for 12 years, owned my own practice in conjunction with several other partners.**

Q. And what did you do after that practice ended?

**A. I moved back to Northern Michigan to the Upper Peninsula to become a rural health care physician at Helen Newberry Joy Hospital.**

Q. And how long did you do that for?

**A. Well, I did that full-time and part-time off and on for ten years, and then I moved over to the – to correctional medicine.**

Q. When did you first get involved with correctional medicine?

**A. That would have been 2009 when I started working at the Newberry Correctional facility.**

Q. Do you hold any board certifications?

**A. I do The American Board of Family Medicine.**

Q. And how long have you held a board certification in family medicine?

**A. Since I was a resident. I did let it lapse for a year or two, but overall, yeah, thirty-some years.**

*Id.* **at 32:13-34:22.**

Simply put, there is no relevance to either Dr. Bomber's medical qualifications or where he grew up. First, it is not in dispute by the parties that Dr. Bomber is a

21

qualified medical professional; rather the allegations are that *despite* the qualifications of the doctors working with Corizon, they still refused medically necessary treatment to save Corizon money. His qualifications are not in dispute and would only serve as a long-winded distraction if permitted to remain in the deposition transcript.

Further, there is no relevance to where Dr. Bomber grew up. Further, such evidence is impermissible evidence of good character. FRE 404 expressly provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Here, Defendants eliciting information about where he grew up, specifically in a small town in the Upper Peninsula, has absolutely no relevance to this case. However, such evidence could be utilized to portray Dr. Bomber as a down-to-earth, small-town individual who could not possibly have denied necessary care to save Corizon money. Such testimony serves no purpose other than to bias the jury in Dr. Bomber's and, thus, Defendant's favor.

This objection should be granted.

## 17.  Plaintiff's Objection That Sought Testimony is Subject a Ruling by This Honorable Court

Next, Plaintiff objected to Defense counsel's extensive line of questioning regarding attempts to cast blame on a party other than Corizon, as well as the appeal/grievance process. In the interest of saving trees, Plaintiff will not reiterate

the entire exchange subject to a continuing objection (which runs from Page 38, Line 19 to Page 51, Line 9 of **Ex. 1**), but will note the objection itself:

> MR. MARKO: Hold on. Let me object. Move to strike. We filed a motion with regards to both of these, referencing appeal process or grievances processes. No fault can be a portion on the Michigan Department of Corrections, ECF 160, and we're awaiting a ruling from Judge Drain. So, I want a continuing objection as it relates to anything, your attempts to cast blame or fault on some other party other than Corizon Healthcare.

**Ex. 1 at 39:5-13.**

Should this Honorable Court grant Plaintiff's Motion in Limine (*See* **ECF No. 160**) regarding Defendant's attempts to cast blame on any party other than Corizon and seeking to preclude any reference to the grievance responses, Page 38, Line 19 to Page 51, Line 9 of **Ex. 1** should be purged from the transcript, as the entirety of this exchange involves attempts to push blame from Corizon to the State of Michigan or the Department of Corrections.

**18.    Defendants' Second Lack of Personal Knowledge Objection**

Defendants objected, upon Plaintiff's reexamination, to a question pertaining to the appeal process:

Q. So, why didn't he start the appeal process?

MR. MASIN: Objection. Lack of personal knowledge.

Q. Go ahead.

MR. MASIN: He can't --

**A. My personal knowledge --**

23

MR. MASIN: -- testify as to what another person --

**A. I have no idea.**

(Simultaneous discussion interrupted by the reporter.)

MR. MARKO: Yeah. I need a --

MR. MASIN: He cannot testify as to what another person was thinking.

**Ex. 1 at 59:17-60:5.**

This objection should be overruled, as Dr. Bomber's prior testimony about

money providing a basis for decision making demonstrates knowledge as to why

improper denials would have been made for Corizon.

**19.    Defendants' Third Lack of Personal Knowledge Objection**

Defendants objected again on the basis of lack of personal knowledge:

Q. And you understand -- we talked about cost of surgery. In this particular case, it was a request for surgery, you understand that, a colostomy reversal surgery?

**A. Yes.**

Q. Which you understand would cost money to Corizon, true?

MR. MASIN: Objection. Lack of foundation.

MR. MARKO: He has absolute -- he's – you went over his tenure as a doctor. I think we all know that it costs money.

BY MR. MARKO:

Q. But go ahead, Doctor.

**A. A shared expense, MDOC and Corizon.**

*Id.* at 61:5-16.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

This objection is patently absurd. To argue that Dr. Bomber lacks personal knowledge that a colostomy reversal surgery, or any surgery for that matter, would cost Corizon money is nonsensical on its face. This is a basic fact practically any individual who has had even a glancing interaction with the healthcare system would be able to answer, let alone a doctor who specifically worked with Corizon. This objection should be overruled.

**20.    Defendants' Fourth Lack of Personal Knowledge Objection**

Defendants objected on the basis of lack of personal knowledge again:

MR. MARKO: And you also were asked about -- and I'm gonna ask this question pending the ruling on my motions in limine, but I feel compelled to address some of the areas that I believe were improperly gone into. So, we'll cut this question and answer depending on the judge's rulings on the other ones.

Q. But you understand that -- if we look at this, that Mr. Jackson did not have third-party insurance at the time that this request was done to get him surgery?

MR. MASIN: Objection. Lack of personal knowledge.

Q. This document right here. Do you see that?

**A. Okay. I -- yeah. I had no personal knowledge, but...**

*Id.* **at 62:2-14.**

Here, there can be no valid objection on the basis of lack of personal knowledge where Plaintiff's counsel showed Dr. Bomber the document needed for him to be able to answer. This objection should be accordingly overruled.

25

**21.     Defendants' Misstatement of Document Objection**

Defendants also objected to Plaintiff's characterization of an insurance document:

> Q. Right. There was no private insurance, at least according to this document, available to Mr. Jackson to get the surgery that he needed while he was in prison?
>
> MR. MASIN: Objection. Misstates the document.
>
> Q. Correct? Are you aware of any?
>
> **A. No.**

***Id.* at 62:19-25.**

This is not a misstatement of the document, pertaining to there being no private health insurance Plaintiff had access to while incarcerated. Indeed, Dr. Bomber's own answer in the negative supports this reading of the document. This objection should also be overruled.

**22.     Defendants' Misstatement of Testimony and Foundation Objections**

Defendants objected next as follows:

> Q. And you understand that Mr. Jackson was not free to -- once his utilization management review for this surgery was not approved by Dr. Papendick, he wasn't free to go out and get his own doctor on the outside world without assistance from the Michigan Department of Corrections and Corizon, correct?
>
> MR. MASIN: Objection --
>
> **A. I have no personal knowledge --**
>
> MR. MASIN: Objection. Misstates his testimony.

26

Q. Go ahead.

MR. MASIN: Foundation.

**A. I have no personal knowledge of his resources.**

*Id.* **at 63:6-18.**

These objections are both absurd. First, as noted above, Dr. Bomber testified that he was not aware of any private insurance available to Plaintiff while incarcerated. *Id.* **at 62:19-25.** This is, therefore, in no way a misstatement of his testimony. Further, as a logical matter, it is obvious that Plaintiff, as an incarcerated individual, was not free to go out into the world and get his own doctor to perform whatever surgery he wanted as if he was a free person. To argue lack of foundation to this obvious question is nonsensical, and these objections should be accordingly overruled.

**23.     Defendants' Third Relevance Objection**

The next objection involved a question of relevance:

Q. Are you aware that within a month of being released from the Department of Corrections, that Mr. Jackson was -- had already gone to a treating doctor and then scheduled and underwent a surgery for the colostomy reversal?

**A. I am not aware.**

Q. Based on your medical experience, that's a pretty quick turnaround, getting a -- going to see a doctor for a consultation, getting a surgery scheduled, and then getting it done all within about a month?

MR. MASIN: Objection to foundation, relevance.

27

**A. It just varies so much month-to-month and location-to-location. Sometimes people wait months; sometimes people just wait a few weeks. It depends on their backlog.**

*Id.* at 64:13-22.

This objection lacks merit. This line of questioning is directly relevant to the issues in this case, specifically the medical necessity of Plaintiff's surgery that Defendants denied him. Whether Plaintiff was able to receive a surgery in a remarkably short period of time is extremely relevant to that issue, as it shows the absurdity of Defendants' contentions that Plaintiff's colostomy reversal surgery was not medically necessary. There is foundation to answer given Dr. Bomber's medical experience of how physicians operate typically. This objection should be overruled.

**24.     Defendants' Foundation Objection**

Defendants objected to a question by Plaintiff's counsel regarding the consequences for individuals who need surgery and who are denied such:

Q. Which -- and that you understand that those have real world consequences for these individuals who are asking for and need the surgery?

MR. MASIN: Objection. Lack of foundation.

**A. I would say they have medical consequence. I'm not sure what real world consequences mean.**

*Id.* at 65:8-13.

The argument that this question lacks foundation falls flat. Indeed, "[w]hen attorneys and judges refer to a lack of 'foundation,' they generally refer to a link missing in a chain of logic needed to show that the evidence is actually relevant." *Elliott v. Elliott*, No. 1:21-cv-00897-SAB, 2021 U.S. Dist. LEXIS 222427, at *13 n.2 (E.D. Cal. Nov. 17, 2021) (internal citation and quotation omitted).

Here, the consequence of Plaintiff not receiving medically necessary surgery and the knowledge of the doctors working with Corizon of the consequences, and conscious disregard of such in order to make profit is directly relevant to Plaintiff's claims and, indeed, his damages. There was, thus, proper foundation as to the relevance of this question, and this objection should be accordingly overruled.

## 25. Defendants' Alleged Misstatement of Testimony Objection

Defendants again objected to testimony allegedly misstated by Plaintiff's counsel:

> Q. And are you aware of any follow-up by Dr. Papendick or anyone else at Corizon to ascertain the continuing need for this surgery?
>
> **A. Yes. Again, the on-site provider is compelled to follow that patient over time. That could be the alternative treatment plan, to follow the patient, close observation.**
>
> Q. And what did Dr. Papendick do to follow-up and reevaluate his request for surgery?
>
> **A. He's not --**
>
> MR. MASIN: Objection. Misstates his testimony.
>
> **A. I don't -- I don't know...**

29

Q. Go ahead.

**A. I don't know if he did anything. He's not required to.**

**Ex. 1 at 68:9-16.**

This is not a misstatement of testimony. After all, Plaintiff's counsel asked whether Dr. Bomber was "aware of any follow-up by Dr. Papendick or anyone else at Corizon to ascertain the continuing need for this surgery" and he answered unequivocally "Yes." Thus, Defendants' objection cannot be sustained and this Honorable Court should overrule same.

**26.    Defendants' Fourth "Improper Impeachment" Objection**

Defense counsel objected again to Plaintiff's questioning regarding Dr. Bomber's prior deposition in the case:

Q. Okay. Let's see what you said when I asked you that question there.

MR. MASIN: Objection. This is an improper attempt to impeach the witness.

MR. MARKO: It's not an improper attempt to impeach the witness. And, additionally, he was a corporate representative at the time of his deposition --

MR. MASIN: The way in which you're -- the way in which you're going about --

MR. MARKO: Excuse me --

MR. MASIN: -- it is not proper.

MR. MARKO: You're interrupting me, and it's inappropriate. As I was saying, the -- I'm impeaching the witness, and he is a party opponent at the time of his deposition at the time he gave testimony and at the time

that decisions were made in this case so I'm allowed to designate his testimony. I don't need to use it to impeach him.

(Video playing and transcribed as follows:)

"QUESTION: Does the MDOC have a definition of medical necessity?

"ANSWER: I don't think so, per se.

"QUESTION: Does the MDOC --

MR. MASIN: It's not inconsistent.

-- "have a definition of medical necessity?"

"ANSWER:· I don't think so, per se."

(Video stopped.)

MR. MASIN: Objection. It's not inconsistent.

MR. MARKO: Again -- well, we'll let the judge decide that.

*Id.* **at 69:7-70:12.**

As with the previous "improper impeachment" objections, the basis for this objection is far from clear. However, pursuant to the above-cited *The Charles Morgan* case, Plaintiff's counsel may impeach Dr. Bomber with prior testimony if he is given the opportunity to explain the discrepancy. Here, while Defense counsel did not allow Plaintiff to finish the question, Dr. Bomber would have had the opportunity.

Further, the testimony is, indeed, inconsistent. As shown above, he previously testified that MDOC did not have a definition of "medical necessity." Now, in this

deposition, Dr. Bomber testified, albeit evasively, that he was following MDOC policy:

> So, let me ask you about medical necessity because you were -- you used this word, medical necessity. You were shown a policy from the department of corrections. You agree with me, sir, that medical necessity is not defined by the Michigan Department of Corrections, true?
>
> **A. Well, we're compelled to follow their policies.**

*Id.* **at 68:18-24.**

The Court should therefore overrule this objection.

## 27.    Defendants' Asked and Answered Objection and Plaintiff's Motion to Strike Non-Responsive Answer

In the same line of questioning from the foregoing section, Defense counsel objected that Dr. Bomber had already answered:

> Q. So, again, the MDOC has no definition of medically necessary, correct?
>
> MR. MASIN: Objection. Asked and answered.
>
> **A. I answered that from the general perspective of us using current literature for medical necessity. Obviously, they have their own policies and procedures as well.**
>
> Q. Sir, that wasn't my question.
>
> MR. MARKO: I move to strike your answer.

*Id.* **at 70:14-21.**

Here, again, Dr. Bomber simply answered the question he wanted to, rather than the question posed. Plaintiff's counsel asked whether MDOC had a definition

of "medically necessary." Dr. Bomber answered what the "general perspective of us using current literature" was. "Rule 37(a)(4) compels a deponent to provide complete, direct, and non-evasive answers at depositions and any failure to do so must be treated as a failure to disclose, answer, or respond." *Romero v. Selene Fin., LP*, No. 4:22-CV-00829-BCW, 2024 U.S. Dist. LEXIS 141524, at *6 (W.D. Mo. July 3, 2024).

This answer was purposefully evasive, non-responsive, and serves only to taint the deposition, and it should be struck. Further, Defendants' "asked and answered" objection lacks merit because, as discussed, Dr. Bomber never answered the question, but elected to answer the question he would have rather been asked. The objection should be overruled.

## 28.   Defendants' Fourth Relevance Objection

Defense counsel objected next:

A. I believe they showed a document earlier that talked about cosmetic procedures.

Q. Cosmetic procedures? What -- this isn't a cosmetic procedure. Do you know the definition of cosmetic procedure?

MR. MASIN: Objection. Relevance.

**A. My answer is that we use -- again, for determining medical necessity, utilization management uses UpToDate, InterQual, and other resources as available.**

**Ex. 1 at 71:5-13.**

This objection is devoid of merit and should be overruled. First, it bears noting that the line of inquiry regarding "cosmetic procedures" started at Dr. Bomber's behest. He brought it up, not Plaintiff's counsel. The question from Plaintiff's counsel was merely a follow-up to Dr. Bomber's prior answer. Moreover, the question has relevance, as Dr. Bomber clearly indicated Defendants will attempt to argue a lack of medical necessity for the colostomy reversal surgery because it is merely a "cosmetic procedure." His definition of what exactly constitutes such is, thus, extremely relevant.

The Court should overrule this objection by Defendants.

**29.    Defendants' Second Asked and Answered Objection**

The next objection is a return to the prior line of inquiry regarding MDOC's definition (or lack thereof) for the term "medical necessity":

> Q. Back to my original question: The MDOC did not define for Corizon what is medically necessary, correct?
>
> MR. MASIN: Objection. Asked and answered.
>
> **A. So, no. Not on a day-to-day basis, no.**

*Id.* **at 72:22-25.**

As stated above, this objection fails because Dr. Bomber, in fact, did not ever answer this question, but instead evasively provided answers that danced around the question or answered a question he would have rather received instead of this one. Thus, it is not "asked and answered," even several pages after the first of these

34

objections, due to Dr. Bomber's evasive responses to this inquiry. The objection

should therefore be overruled by this Honorable Court.

**30.    Defendants' Alleged Misstatement of Testimony Objection**

Next, Defense counsel objected to the characterization of Dr. Bomber's

testimony regarding how medically necessary was defined:

> Q. So Corizon came up with its definition of what's medically necessary
> through the ways that you described through examination by brother
> counsel, correct?
>
> MR. MASIN: Objection. Misstates his testimony. He did not say that
> Corizon --
>
> MR. MARKO: No speaking objections, please.
>
> **A. In the initial procedure process, yes, it goes to Corizon first. Yes.**

*Id.* **at 73:1-8.**

This is, simply put, not a mischaracterization of Dr. Bomber's testimony.

Indeed, he testified exactly to what Plaintiff's counsel asked:

> Q. And Corizon applies its definition of medical necessity, correct?
>
> **A. Yes. In the first part of the process, yes.**

*Id.* **at 73:9-11.**

Plaintiff's counsel can hardly "misstate" Dr. Bomber's testimony where he

affirmed the alleged "misstatement." As such, this Court should overrule this

meritless objection.

35

**31.    Plaintiff's Leading Question Objection**

Finally, upon reexamination by Defense counsel, Plaintiff's counsel objected

to a flagrantly leading question by counsel for Defendants:

> Q. So if Dr. Papendick did not have a 407 in front of him, it just wasn't his job to actually keep monitoring all of the patients that he was making decisions for; that was the -- was that the on-site provider's job, right?
>
> MR. MARKO: Objection.
>
> **A. Yes. Correct.**
>
> MR. MARKO: Leading -- hold on. Objection. Form, leading.

*Id.* **at 75:5-12.**

This question is leading. "The essential test of a leading question is whether

it so suggests to the witness the specific tenor of the reply desired by counsel that

such a reply is likely to be given irrespective of an actual memory." *United States v.*

*Durham*, 319 F.2d 590, 592 (4th Cir. 1963); *see also De Witt v. Skinner*, 232 F. 443,

445 (8th Cir. 1916) ("The test of a leading question is whether it suggests or indicates

the particular answer desired."). In other words, a leading question is one that "put[s]

answers . . . in the mouth of [the] witness." *Durham*, 319 F.2d at 593. "Leading

questions may be defined as those which suggest to the witness the desired answer,

or which assume to be proved a fact which is not proved, **or which by stating a**

**material fact, permit an answer by a simple yes or no.**" *United States v.*

*Mansfield*, 33 M.J. 972, 989 (A.F.C.M.R. 1991) (emphasis added).

MARKO LAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

Here, Defense counsel essentially provided the answer for Dr. Bomber and appended it with "right?", leading Dr. Bomber to the "correct" answer in the affirmative. And that is the answer Dr. Bomber gave, given the nature of the question and how he was led to that conclusion through the framing.

As such, this Honorable Court should grant Plaintiff's objection and purge the leading question and answer from the deposition.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court GRANT Plaintiff's Motion to Overrule Defendants' Objections and Grant Plaintiff's Objections to the Deposition Testimony of Dr. Jeffrey Bomber.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Email: jon@markolaw.com

Date: October 8, 2025

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **October 8, 2025**, via:

☐ U.S. Mail                    ☐ Fax
☐ Hand Delivered        ☐ Overnight Carrier
☐ Certified Mail           ☐ Other:

☐ ECF System        ☐ Email

*/s/Ebony White*