# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KOHCHISE JACKSON,

        Plaintiff,

v.

CHS TX, INC., et al.,

        Defendants

Case No.: 2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND GRANT PLAINTIFF'S OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JEFFREY BOMBER

32747108v1

## **TABLE OF CONTENTS**

Page (s)

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF ISSUES .......................................................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................2

INTRODUCTION ..................................................................................3

DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DIRECT ................................4

   1.    Defendants Not Pursuing the Following Objections ...................................4

   2.    The Court Should Sustain the Following Defendants' Objections..............5

      A.   Speculation about Plaintiff's medical care: 15:21-25 ..............................5

      B.   Improper foundation 16:17-24................................................................5

      C.   Improper use of prior testimony: 17:15-19:1 and 26:5-15 ......................7

      D.   Lack of personal knowledge:  22:23-23:8 ................................................8

      E.   Improper use of prior testimony:  26:5-15................................................9

      F.   Speculation about costs: 26:24-27:5......................................................10

      G.   Lack of personal knowledge as to Plaintiff's care: 28:16-21 .................11

      G.   Irrelevant Delaware document: 29:4-20 and Plaintiff Exhibit 62 ..........12

      H.   Misstated testimony regarding treating physicians: 31:23-32:2.............12

      I.   Lack of personal knowledge about what another doctor was thinking: 59:17-60:5 ..............................................................................................14

      J.   Improper use of prior testimony: 69:7-70:12 .........................................14

PLAINTIFF'S OBJECTIONS TO DEFENDANTS' CROSS ................................15

      A.   Dr. Bomber rejection of the premise of Plaintiff's question is admissible: 26:24-27:11............................................................................15

      B.   Dr. Bomber's biographical background is admissible: 32:13-34:22......15

      C.   Plaintiff's rejection by the MDOC based on its own policy is admissible, and so is Dr. Bomber's testimony about the MDOC and Corizon's own review procedure: 38:19-51:9................................................................16

i

D.    Leading on cross is proper:  75:5-12. .....................................................17

CONCLUSION ...................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Rules

Fed. R. Evid. 401, 402, 403, 613, 801(d)................................................................2

Fed. R. Evid. 613 (b)........................................................................................6

Fed. R. Evid. 801 (d)(1)(B)..........................................................................6, 9

Fed., R. Evid. 801(d)(1)(A) .........................................................................6, 9

## <u>STATEMENT OF ISSUES</u>

**1.     Whether Defendants' objections to Plaintiff's questioning of Dr. Jeffrey Bomber during his *de bene esse* deposition should be sustained?**

Defendants' Answer: Yes

Plaintiffs May Answer:  No

The Court Should Answer:  Yes

**2.     Whether Plaintiff's objections to Defendants questioning of Dr. Jeffrey Bomber during his *de bene esse* deposition should be sustained?**

Defendants' Answer: No

Plaintiffs May Answer:  Yes

The Court Should Answer:  No

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1.      Fed. R. Evid. 401, 402, 403, 613, 801(d)

Defendants CHS TX, Inc. and Keith Papendick, M.D. respectfully respond to Plaintiff's "Motion to Overrule Defendants' Objections and Grant Plaintiff's Objections to the Deposition of Testimony of Dr. Jeffrey Bomber."  (ECF. 238). For the reasons stated herein, the Court should overrule Plaintiff's objections, sustain Defendants' objections, and/or defer ruling on objections until the Court has considered the motions *in limine* that will resolve the admissibility of some of the testimony discussed herein.[1]

## <u>INTRODUCTION</u>

Plaintiff's "motion" asks the Court to rule on a variety of separate objections made by Plaintiff and Defendants during the September 4, 225 *de bene esse* deposition of Dr. Jeffry Bomber, a Michigan physician who was formerly Corizon's State Medical Director for its MDOC contract.  ***See* Exhibit 1** (Dr. Bomber deposition transcript).  Plaintiff subpoenaed Dr. Bomber to testify and called him on direct.  The Plaintiff's "motion" is an inefficient 37-page tree killing exercise that Plaintiff is using as a vehicle to argue its case.  Routine objections to potential trial testimony could have been (and can be) handled efficiently in the ordinary course via brief oral discussion of objections at the final pretrial conference or prior to the

---

[1]      Plaintiff sent Defendants an email on Tuesday 9/30/2025 unreasonably asking that Defendants respond to the many issues raised herein by the following day, October 1, 2025.  The Court then cancelled the former trial date on October 1, 2025. There is a status conference to set a new trial date on October 23, 2025.

presentation of the testimony during trial to the extent that the objections may turn on other testimony elicited during trial.  The outcome of many of these objections will be obvious from the Court's ruling on already-briefed motions *in limine*.  In light of Plaintiff's written "motion," however, Defendants respond to the issues that Plaintiff raises as set forth herein.

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DIRECT

### 1. Defendants Not Pursuing the Following Objections

A *de bene esse* deposition is trial testimony, but produced in an artificial scenario where there is no judge to rule on an objection before a witness potentially answers the question and the witness answers anyway to preserve the record.  Having reviewed the *de bene esse* deposition transcript, including the post-objection answers, and without making any factual admissions or concessions, Defendants are not pursuing the following specific objections:

- 7:5-8:9
- 9:17-24
- 20:4-18
- 30:8:11
- 61:5-16
- 62:2-14
- 62:19-25
- 63:6-18
- 64:13-22
- 65:8-13.
- 68:9-16
- 71:5-13
- 72:22-25
- 73:1-8

2.     **The Court Should Sustain the Following Defendants' Objections**

A.     **Speculation about Plaintiff's medical care: 15:21-25**

Defendants objected to the question: "And then Mr. Kochise Jackson would have been able to get a colostomy reversal, correct?" as calling for speculation. Plaintiff asked this question in the context of Dr. Bomber explaining Corizon's *procedure* for approving a request that required approval from a Corizon Utilization Manager ("UM").  14:15-15:20. In this case, Dr. Mahir Alsalman requested that a UM approve a consult for a colostomy reversal surgery--not the actual surgery. Plaintiff has no evidence who the consulting physician would have been, when the consult would have occurred, whether or not that physician would have approved the surgery, or when a potential surgery would have occurred.  Dr. Bomber did not treat or opine about Plaintiff. The objectionable question therefore calls for speculation because Dr. Bomber could only speculate if Plaintiff "would have been able to get" the reversal surgery.  **Defendants' speculation objection should be SUSTAINED.**

B.     **Improper foundation 16:17-24**

Plaintiff's objectionable question was: "Okay.  An in fact, when—***I know that Corizon doesn't like to use the words 'deny***,' but ***you've previously testified*** that those words had been used in the past, isn't that true?"  There are two foundation objections to this question.

<u>First</u>, Plaintiff counsel's question included his own opinion that "I know Corizon doesn't like to use the words 'deny'...  This editorializing by counsel is irrelevant, not a proper question, and there was no evidentiary foundation set for *counsel's* opinion about what Corizon likes or does not like.

<u>Second</u>, the question's reference to Dr. Bomber's purported prior testimony is improper because—as became a theme during the Dr. Bomber's testimony—Plaintiff's counsel did not lay the proper foundation that is necessary to raise the witness's prior testimony.

- If a question is intended to establish a prior consistent statement, that prior testimony is inadmissible hearsay under Fed. R. Evid. 801 (d)(1)(B) unless it is offered to rehabilitate the witness and rebut an express or implied charge of recent fabrication or improper influence or motive.  That was not the purpose of the Plaintiff's question on direct examination.

- If a question is intended to establish a prior inconsistent statement under Fed., R. Evid. 801(d)(1)(A), the use of the prior statement is improper unless Plaintiff first obtains testimony that is inconsistent with the purported prior testimony and identifies the allegedly prior inconsistent statement. *See also* Fed. R. Evid. 613 (b).  Plaintiff did neither of these things here. **Defendants' objection should be SUSTAINED.**

6

### C.      Improper use of prior testimony: 17:15-19:1 and 26:5-15

This was another improper attempt to impeach Dr. Bomber by using his prior deposition testimony without having first obtained inconsistent testimony during his direct.  At his *de bene esse* deposition, Plaintiff asked Dr. Bomber:

> Q.  The  -- a component of this process that the patient has to go through Corizon, ***this request from the doctor, going up to Dr. Papendick in this case***, a component of the review process takes into consideration cost; isn't that true?
>
> A:  No.  Not on the medical side.

If counsel wanted to impeach the witness with prior inconsistent testimony, counsel would need to use prior testimony that the "medical side" *did* consider costs.  But Plaintiff never attempted to impeach Dr. Bomber with such testimony because Dr. Bomber never gave that testimony.

Instead, Plaintiff's counsel tried to impeach Dr. Bomber by producing extrinsic evidence of a completely different, much broader question from a prior case: "Q: And that utilization management component of the view process takes into consideration cost, correct?  A: Yes."  But this testimony was not inconsistent with his *de bene esse* testimony.  As Dr. Bomber explained, costs were considered "on the operation side" but not "[w]hen it came to approving things on a day-to-day basis versus alternative testament plan [when] cost was not considered."  19:2-13.  The "operation side" considered costs because they had to report and consider costs the part of the contract with the DOC, but costs were not considered on the medical side

"while approving tests."   19:14-22.   As such, Plaintiff's reference to his prior testimony was not a proper impeachment attempt because the prior testimony was not inconsistent.  **Defendants' objection should be SUSTAINED.**

### D.    Lack of personal knowledge:  22:23-23:8

Plaintiff asked Dr. Bomber a series of questions about how utilization management treated Workers' Compensation claims.  Dr. Bomber agreed that these claims were on a "pass-through list" document shown to him but testified "I have no other knowledge other than what you're showing me right now" and "I don't have any detailed knowledge of that."   22:5-22.   Plaintiff then asked a confusing hypothetical question inquiring if Corizon "doesn't do a medical necessary review" if "somebody needs a colostomy reversal because they were injured at work and they have workers' compensation insurance, and workers' compensation insurance approved the procedure."   22:23-23-3.   Having just testified twice that he no meaningful knowledge related to Workers' Compensation, Defendants objected based on lack of personal knowledge.  23:-4-6.  **Defendants' objection should be SUSTAINED.**   As if to prove that point, Dr. Bomber answered: "I do not.  I do not have personal knowledge of that. I can't answer it."   Incredibly, Plaintiff's "motion" fails to mention Dr. Bomber's three-times denial of personal knowledge of this subject.

### E.     Improper use of prior testimony:  26:5-15

Plaintiff again improperly asked if Dr. Bomber gave certain testimony in another case without laying a proper foundation to discuss prior testimony either as a prior consistent statement under Rule 801(d)(1)(B) or as a prior inconsistent statement under Rule 801(d)(1)(A).  The objectionable question was:

> Q. My question was -- well, you previously testified in another case, in the Kensu matter, that you agree that the less money that Corizon spends on treatment, the more money Corizon makes, correct?
>
> MR. MASIN: Objection. Improper – improper impeachment, not inconsistent statement.

- Plaintiff's counsel did not lay a proper foundation to use a prior consistent statement under Rule 801 (d)(1)(B) because the prior testimony was not offered to rehabilitate the witness and rebut an express or implied charge of recent fabrication or improper influence or motive.

- Plaintiff's counsel did not lay a proper foundation to use a purported prior inconsistent statement because Dr. Bomber did not provide testimony in his *de bene esse* deposition that is inconsistent with the alleged statement in the Kensu case that "the less money that Corizon spends on treatment, the more money Corizon makes." Plaintiff's motion attempts to rely on Dr. Bomber's *de bene esse* testimony: "They don't deny outside services based on money. Its whether or not the patient needs it or not."  26:1-2.  That statement is not in any way inconsistent with the purported Kensu testimony.  Corizon could consistently: (i) not deny outside services "based

9

on" money (the motive for medical decisions) and at the same time (ii) make more money the less it spends on treatment (a practical outcome). Because those are not inconsistent statements or even inconsistent concepts, Plaintiff's use of the prior testimony is improper. **Defendants' objection should be SUSTAINED.**

### F.    Speculation about costs: 26:24-27:5

Plaintiff asked: "the more utilization management reviews that are denied, the more requests for outside services that are denied by Corizon, the more money Corizon makes, correct?" 26:24-27:11. Defendants objected to this question as speculation because the answer could only be speculation absent a foundation that Plaintiff never established.

This question calls for speculation because it wrongly presumes an across the board, ***non-existent***, "approve/incur cost or deny/no cost" scenario. But the cost consequence of utilization review does not work that way. As in Plaintiff's own case, the utilization review resulted in Corizon incurring costs for Plaintiff's future colostomy care, treatment, and supplies. In order to know generally if an increase in outside service "denials" means that Corizon makes more or less money, which is what the question asked, one would have to compare (i) Corizon's costs related to all outside care when approved *versus* (ii) Corizon's costs for all approved alternative treatment plans. But Plaintiff did not ask Dr. Bomber if Corizon, the MDOC, or someone else performed such an analysis and Plaintiff produced no

evidence that the relationship implied in the question exists. To the contrary, Dr. Bomber testified that it was possible that an alternative treatment plan would cost *more* than the requested approval. 38: 13-18. As such, the Plaintiff's question calls for speculation. **Defendants' objection should be SUSTAINED.**

### G.    Lack of personal knowledge as to Plaintiff's care: 28:16-21

Plaintiff asked a series of questions relating to Corizon's contractually-obligated efforts to provide cost-effective care during a prior MDOC contract that prompted Dr. Bomber to testify that "[t]he quality of care actually improved markedly over that time." 27:15-28:15. Plaintiff then asked: "Is it your testimony that through this process that saved Corizon hundreds of millions of dollars, that the quality of care improved *for Mr. Jackson*?" Defendants objected to the question based on lack of personal knowledge because Dr. Bomber is a fact witness, subpoenaed to testify by Plaintiff, who did not treat Plaintiff and was not disclosed to offer opinions about his care. As if to prove the basis for Defendants' objection, Dr. Bomber answered: "I can't speak to Mr. Jackson. I can tell you the overall quality of health care improved dramatically." 28:16-21. **Defendants' objection should be SUSTAINED.**

### G.    Irrelevant Delaware document: 29:4-20 and Plaintiff Exhibit 62

Defendants objected to this question, and Exhibit, on relevance grounds because they relate to a Delaware bid proposal from December 2019.  Defendants moved *in limine* exclude out-of-state "evidence" like this under Rule 401 and 403 because it has nothing to do with decisions under Corizon's 2016-2021 contract with the MDOC, Dr. Papendick's decision-making relating to Plaintiff, colostomy care in Michigan, or the costs of colostomy care in Michigan.  *See* ECF No. 164. **Defendants' objection to the question and document should be SUSTAINED.**

### H.    Misstated testimony regarding treating physicians: 31:23-32:2.

Plaintiff asked: "Are you aware that his treating physicians all testified that it was medically necessary?"  Defendants objected to this question because it misstates testimony.  Plaintiff's motion contends that the proposition in this question is true without providing any record citations to support that statement.  But the statement is not true as stated and mischaracterizes testimony from one of his treating physicians.

The factual assertion in the question is untrue for two reasons.  First, Dr. Mahir Alsalman treated Plaintiff while he was in prison and did not testify.  Indeed, none of the physicians who treated him in prison have testified at this time.  Second, the evidence will show that Corizon NP Ronald Drinkert called the office of Dr. Erina Kansakar, who created his colostomy, shortly after his imprisonment to obtain

information about his colostomy (certainly no evidence of deliberate indifference there).  Dr. Kansakar was asked if her office manager "had actually said something along those lines that it's not medically necessary according to Doctor Kansakar, it's more of a lifestyle preference, are you saying she was in error telling that to the jail person?." Dr. Kansakar responded: *"No, it's not a life-threatening situation.   As I said, it's more of a quality of life."*  **Exhibit 2**, Deposition of Erina Kansakar, M.D., 3/5/2021, at 28:23-29:7.   Counsel followed up and asked directly if her office manager would "have been incorrect to tell that to the jail person that this was not medically necessary, it was a lifestyle preference?,"  Dr. Kansakar testified: **"*I think I would agree with the first part which says it's not medically necessary*,** but I do not agree with just the second part that it's just a lifestyle preference.  It's for the mental and, you know, psychological well-being to have a normal colostomy, I mean colostomy reversed and having a natural route reestablished."   Kansakar Dep., 31:24-32-9 (compare to her agreement that his creation surgery was "absolutely necessary" at 34-17-23).  Although Dr. Kansakar spun the term medical necessity differently at other times during her deposition, her testimony that it was not in error to tell NP Drinkert that it was not medically necessary, and her opinion "I think I would agree…that its not medically necessary" does not support the blanket statement in Plaintiff's question.  **Defendants' objection should be SUSTAINED.**

### I.      Lack of personal knowledge about what another doctor was thinking: 59:17-60:5

Plaintiff's counsel asked Dr. Bomber why a Corizon physician, Dr. Mahir Alsalman, did not start Corizon's internal appeal process after Dr. Papendick reviewed his "407" request for Plaintiff.   59:5-60:5. Defendants objected to lack of personal knowledge because Dr. Bomber cannot testify what Dr. Alsalman was thinking, and Plaintiff did not lay a foundation for establishing that Dr. Bomber would have such knowledge.  As if to prove the basis for Defendants' objection, Dr. Bomber responded: "My personal knowledge…I have no idea….I have no knowledge.  I can't answer that."  **Defendants' objection should be SUSTAINED.**

### J.      Improper use of prior testimony: 69:7-70:12

Plaintiff asked Dr. Bomber: "You agree with me, sir, that medical necessity is not defined by the Michigan Department of Corrections, true?"  Dr. Bomber answered: "Well, we're compelled to follow their policies."   Plaintiff then improperly attempted to impeach Dr. Bomber by presenting extrinsic evidence of his deposition testimony where he was asked "Q: Does the MDOC have a definition of medical necessity?  A. I don't think so, per se."  Because his deposition testimony was not inconsistent with his *de bene esse* testimony, the use of the deposition testimony was not a proper attempt to impeach with a prior inconsistent statement.  **Defendants' objection should be SUSTAINED.**

<u>**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' CROSS**</u>

**A.    Dr. Bomber rejection of the premise of Plaintiff's question is admissible: 26:24-27:11**

As previously discussed, Plaintiff asked: "Q. Yes. Right? So the more utilization management reviews that are denied, the more requests for outside services that are denied by Corizon, the more money Corizon makes, correct?" 26:24-27:11. After Defendants objected to this question as speculation, Dr. Bomber responded "A.  That would -- But you're implying that there is an intent to save money by denying treatment, and that does not happen."  There is nothing improper about a witness disagreeing with the implication of the question.    **Plaintiff's objection should be OVERRULED.**

**B.    Dr. Bomber's biographical background is admissible: 32:13-34:22.**

Defendants asked Dr. Bomber ordinary background questions regarding his residence, education, training as a physician, board certification, and work experience as a physician prior to becoming Corizon's Medical Director for Michigan.  32:13-34:22. In response to the second background question in this string – "where did you grow up?"—Plaintiff objected based on relevance and, oddly, because "good character testimony which is inappropriate and not admissible."  In response to the next question: "Where did you go to high school?" Plaintiff asked for a "continuing objection" without defining the scope of that

objection. Defendants proceeded to ask questions about Dr. Bomber's education, training, and experience as a physician.

It should be obvious that where someone is from, by itself, is not evidence of their character. There is also no reasonable relevance objection to this routine background testimony. Particularly in a case where Plaintiff is necessarily putting Corizon's subjective motives directly at stake, the fact that Corizon's Medical Director for Michigan during Plaintiff's incarceration was is a well-educated, board-certified Michigan medical professional is directly relevant to a jury's assessment of his and Corizon's motivation about the reasons behind Corizon's medical decisions. Indeed, Plaintiff's motion highlights that Plaintiff put Dr. Bomber's medical experience directly at issue during Plaintiff's questioning. 64:13-22. **Plaintiff's objection should be OVERRULED.**

## C. Plaintiff's rejection by the MDOC based on its own policy is admissible, and so is Dr. Bomber's testimony about the MDOC and Corizon's own review procedure: 38:19-51:9

It is undisputed that Plaintiff sought to obtain a colostomy reversal during his incarceration by appealing Dr. Papendick's April 19, 2017 decision to approve his continued colostomy care "at this time" to the MDOC, that Corizon had no role in the MDOC process, that the MDOC had the final say when it denied his surgery request based on its own policy, and as Dr. Bomber testified, that Corizon had no ability to overturn the State of Michigan's decision. 42: 15-43:2; 43:19-44:13. As

16

the State's subcontractor, Corizon was also required to follow MDOC policy.  44:14-47:4.  Plaintiff wants to pretend these facts do not exist and hide them from the jury.  But these facts do exist, and they are critically relevant to dispute multiple elements of Plaintiff's case, including demonstrating the objective reasonableness of Dr. Papendick's decision at the time and to causation of Plaintiff's alleged damages, including the period of damages potentially attributable to Defendants.  *See* ECF 143.  Plaintiff's *motion in limine* seeking to exclude this evidence should be denied in its entirety for the reasons explained by Defendants in ECF. No.  143 and 196.

Plaintiff's motion does not merely pursue objections to evidence about the MDOC's procedure and policy.  Plaintiff's motion also incorporates objections to question about Corizon's internal appeals process and its ability to contradict its contractor.  39:15-42:4. Plaintiff has no possible basis to object to Corizon's own process for reviewing medical decisions and its motion does not argue one. **Plaintiff's objections within 38:19-51:9 should be OVERRULED.**

**D.     Leading on cross is proper:  75:5-12.**

Dr. Bomber was *Plaintiff's* witness on direct. He is not a current Corizon employee.  Plaintiff subpoenaed him to testify.  It is proper to ask a leading question on cross. **Plaintiff's objection should be OVERRULED.**

## **CONCLUSION**

For the reasons stated here, the Court should SUSTAIN Defendants' objections discussed herein and OVERRULE Plaintiff's objections discussed herein.

Dated:  October 21, 2025                    Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:    /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on October 21, 2025, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Thomas G. Hackney** (P81283)
Hackney Odlum & Dardas Michigan
Attorneys for Jeffrey Bomber
Bayview Professional Center
10850 E. Traverse Hwy., Suite 4440
Traverse City, MI 49684
231.642.5056
thackney@hodlawyers.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

19

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KOHCHISE JACKSON,

Plaintiff,

v.

CHS TX, INC., et al.,

Defendants

Case No.: 2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

---

## [PROPOSED] ORDER ON PLAINTIFF'S MOTION TO OVERRULE DEFENDANTS' OBJECTIONS AND GRANT PLAINTIFF'S OBJECTIONS TO THE DEPOSITION TESTIMONY OF DR. JEFFREY BOMBER

AND NOW, this Date Of _____, 202_, in consideration of Plaintiff's Motion and Defendants' response thereto, including the transcript of the *de bene esse* deposition of Dr. Jeffrey Bomber, and any motions *in limine*, responses, replies, and Exhibits thereto relevant to the objections herein, it is hereby ORDERED:

**DEFENDANTS' OBJECTIONS ARE SUSTAINED AS FOLLOWS**:

- Speculation: 15:21-25

- Improper foundation 16:17-24

- Improper use of prior testimony: 17:15-19:1 and 26:5-15

- Lack of personal knowledge: 22:23-23:8

- Improper use of prior testimony: 26:5-15

- Speculation: 26:24-27:5

- Lack of personal knowledge: 28:16-21

- Misstated testimony: 31:23-32:2.

- Lack of personal knowledge: 59:17-60:5

- Improper use of prior testimony: 69:7-70:12

**PLAINTIFF'S OBJECTIONS ARE OVERRULED AS FOLLOWS:**

- Dr. Bomber rejection of the premise of Plaintiff's question in 26:24-27:11 admissible.

- Dr. Bomber's biographical background set forth in 32:13-34:22 is admissible.

- Dr. Bomber's testimony about the MDOC grievance process and Corizon's appeals set forth in 38:19-51:9 is admissible.

- Plaintiff's leading question objection in 75:5-12 is overruled.

Any objections expressly withdrawn by the parties are OVERRULED.  All objections not ruled on herein are preserved until the time of trial.

**SO ORDERED.**

Dated:                                                    _____

                                                              Hon. Gershwin A. Drain