UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOHCHISE JACKSON,

          Plaintiff,

                                Case No. 19-13382

                            U.S. DISTRICT COURT JUDGE

                            GERSHWIN A. DRAIN

v.

CORIZON HEALTH, INC., *et al.*,

          Defendants.

_____/

**OPINION AND ORDER ON THE PARTIES' MOTIONS IN LIMINE [#129, #142, #143, #144, #145, #146, #147, #148, #149, #150, #151, #152, #153, #154, #155, #156, #157, #158, #159, #160, #161, #163, #164, #165, #166, #168, #171, #175, #183]**

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................1

II.   BACKGROUND ..................................................................................4

III.  LEGAL STANDARD ..........................................................................6

IV.   ANALYSIS ..........................................................................................8

    A.    **Plaintiff's Motions in Limine** ...................................................8

       i.    Motion to Designate Portions of Dr. Kansakar's Deposition for Use at Trial [#129] ...............................................................................8

       ii.   Motion in Limine for Attorney-Conducted Voir Dire [#150] .................9

       iii.  Motion in Limine to Preclude Defendants From Eliciting Opinion Testimony from Non-Retained Experts for Whom Rule 26(a)(2)(C) Disclosures Were Not Provided [#151] ...........................................................10

       iv.   Motion in Limine to Allow Evidence of Michigan Utilization Management Reporting Samples and U/M Stats Report [#152] ....................12

       v.    Motion in Limine to Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits [#153] .......................15

       vi.   Motion in Limine to Preclude Any Evidence of or Reference to Other Cases Dr. Silverman Worked On [#154] .........................................15

       vii.  Motion in Limine to Preclude Any Evidence of or Reference to Plaintiff's Emotional Outburst at the Hospital [#155] .....................................16

       viii. Motion in Limine to Exclude Hearsay Statement Purportedly Made by an Unidentified Speaker at Dr. Kansakar's Office [#156] .............................17

       ix.   Motion in Limine to Exclude Evidence of Plaintiff's Receipt of Food Stamps [#157] ..........................................................................19

       x.    Motion in Limine to Exclude Evidence of and Reference to Plaintiff's Homelessness [#158] ...................................................................19

       xi.   Motion in Limine Regarding the Law of the Case [#159] ....................19

xii.    Motion in Limine to Preclude Defendants from Apportioning Fault on Any Non-Party [#160] ...................................................................................21

xiii.    Motion to Designate Portions of Dr. Papendick's Deposition for Use at Trial [#161] ..............................................................................................24

xiv.    Motion in Limine to Allow Evidence of Bid Materials Submitted by Corizon in Response to Department of Corrections Requests for Proposals [#171] ……………………………………………………………………25

xv.    Motion to Overrule Defendants' Objections to Dr. Webber's Deposition Testimony [#183]....................................................................................29

**B.    Defendants' Motions in Limine** ............................................................30

i.    Motion in Limine to Exclude Evidence and Argument Concerning "Medical Necessity" Under Medicare and Medicaid [#142] .........................30

ii.    Motion in Limine to Exclude Evidence and Argument Regarding Defendants' Liability After June 8, 2017 [#143]...............................................33

iii.    Motion in Limine to Exclude Dr. Silverman [#144] ..............................35

iv.    Motion in Limine to Bifurcate Punitive Damages [#145].....................39

v.    Motion in Limine to Preclude Plaintiff from Making "Golden Rule" Arguments or Statements [#146] .........................................................................40

vi.    Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates Other than Plaintiff Concerning the Adequacy of Their Colostomy Care [#147] .........................................................................................................41

vii.    Motion in Limine to Preclude Plaintiff from Offering Evidence or Argument Relating to the 2022 Corizon Divisional Merger or 2023 Bankruptcy [#149] ............................................................................................44

viii.    Motion in Limine to Exclude Evidence of Previous Lawsuits Against Defendants [#163]................................................................................................46

ix.    Motion in Limine to Exclude Evidence Related to Corizon Outside of Michigan [#164]..................................................................................................50

x.    Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care [#166] .........................51

xi.     Motion in Limine to Preclude Arguments Regarding the Value of
Constitutional Rights [#165]..............................................................52

xii.    Motion in Limine to Exclude Jan Watson and Cristin Rettler [#175]....53

xiii.   Motion in Limine to Exclude Sonya Fulks [#168] ............................57

**V.   CONCLUSION**...............................................................................59

4

## I.   <u>INTRODUCTION</u>

Presently before the Court are the parties' motions in limine. Upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of the motions, and thus they will be decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow:

- Plaintiff's Motion to Designate Portions of Dr. Kansakar's Deposition for Use at Trial [#129] is DENIED WITHOUT PREJUDICE;

- Plaintiff's Motion in Limine for Attorney-Conducted Voir Dire [#150] is DENIED;

- Plaintiff's Motion in Limine to Preclude Defendants From Eliciting Opinion Testimony from Non-Retained Experts for Whom Rule 26(a)(2)(C) Disclosures Were Not Provided [#151] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Allow Evidence of Michigan Utilization Management Reporting Samples and U/M Stats Report [#152] is GRANTED;

- Plaintiff's Motion in Limine to Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits [#153] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Preclude Any Evidence of or Reference to Other Cases Dr. Silverman Worked On [#154] is DENIED WITHOUT PREJUDICE;

1

- Plaintiff's Motion in Limine to Preclude Any Evidence of or Reference to Plaintiff's Emotional Outburst at the Hospital [#155] is GRANTED;

- Plaintiff's Motion in Limine to Exclude Hearsay Statement Purportedly Made by an Unidentified Speaker at Dr. Kansakar's Office [#156] is DENIED;

- Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Receipt of Food Stamps [#157] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Exclude Evidence of and Reference to Plaintiff's Homelessness [#158] is DENIED AS MOOT;

- Plaintiff's Motion in Limine Regarding the Law of the Case [#159] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion in Limine to Preclude Defendants from Apportioning Fault on Any Non-Party [#160] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion to Designate Portions of Dr. Papendick's Deposition for Use at Trial [#161] is GRANTED;

- Plaintiff's Motion in Limine to Allow Evidence of Bid Materials Submitted by Corizon in Response to Department of Corrections Requests for Proposals [#171] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion to Overrule Defendants' Objections to Dr. Webber's Deposition Testimony [#183] is DENIED WITHOUT PREJUDICE;

- Defendants' Motion in Limine to Exclude Evidence and Argument Concerning "Medical Necessity" Under Medicare and Medicaid [#142] is DENIED;

- Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Defendants' Liability After June 8, 2017 [#143] is DENIED;

- Defendants' Motion in Limine to Exclude Dr. Silverman [#144] is DENIED;

- Defendants' Motion in Limine to Bifurcate Punitive Damages [#145] is DENIED;

- Defendants' Motion in Limine to Preclude Plaintiff from Making "Golden Rule" Arguments or Statements [#146] is DENIED AS MOOT;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates Other than Plaintiff Concerning the Adequacy of Their Colostomy Care [#147] is DENIED WITHOUT PREJUDICE;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence or Argument Relating to the 2022 Corizon Divisional Merger and 2023 Bankruptcy [#149] is GRANTED IN PART and DENIED IN PART;

- Defendants' Motion in Limine to Exclude Evidence of Previous Lawsuits Against Defendants [#163] is GRANTED IN PART and DENIED IN PART;

- Defendants' Motion in Limine to Exclude Evidence Related to Corizon Outside of Michigan [#164] is DENIED;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care [#166] is DENIED WITHOUT PREJUDICE;

3

- Defendants' Motion in Limine to Preclude Arguments Regarding the Value of Constitutional Rights [#165] is GRANTED;

- Defendants' Motion in Limine to Exclude Jan Watson and Cristin Rettler [#148] is DENIED AS MOOT;

- Defendants' Corrected Motion in Limine to Exclude Jan Watson and Cristin Rettler [#175] is GRANTED IN PART and DENIED IN PART; and

- Defendants' Motion in Limine to Exclude Sonya Fulks [#168] is GRANTED IN PART and DENIED IN PART.

## II.   **BACKGROUND**[1]

Plaintiff's Amended Complaint alleges that Defendants Corizon and Dr. Papendick were deliberately indifferent to a serious medical need in violation of the Eighth Amendment. To establish his deliberate indifference claim, Plaintiff must show (1) a sufficiently serious medical need, and (2) deliberate indifference to that medical need on the part of a defendant. *Farmer v. Brennan*, 511 U.S. 825, 833, 837 (1994). A deliberate indifference claim has both an (1) objective and (2) a subjective component. *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017). To satisfy the objective component, a plaintiff must show the existence of a serious medical need, which is "one that has been diagnosed by a physician as mandating treatment or one

---

[1] The Court incorporates by reference the factual and procedural background set forth in Magistrate Judge Patricia T. Morris's Order on Plaintiff's Motion for Substitution. ECF No. 89.

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation omitted). To satisfy the subjective component, the plaintiff must show that the defendant acted with a mental state "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 592 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834).

Moreover, to establish liability against Corizon—and, as its successor-in-interest to its stake in the case, CHS TX, Inc. ("CHS TX")—Plaintiff must show that the alleged constitutional violation occurred because of a Corizon policy or custom. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). This showing can be made by demonstrating one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff must also identify a connection between the policy or custom and the unconstitutional conduct that led to his injury; the policy or custom must be the "moving force" behind the constitutional violation. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted).

As this Court observed at summary judgment, Plaintiff's *Monell* theory seems to fall under theory (1), as he alleges that Corizon had an internal policy or practice

of spending less on prisoner medical care, including by denying non-emergent or life-threatening medical treatments, in order to save money. To prevail on this theory, Plaintiff must demonstrate that there were "formal rules or understandings— often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (alterations in original).

## III.  <u>LEGAL STANDARD</u>

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The purpose of this motion is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). While frequently used to exclude evidence, a motion in limine may also be used to establish the admissibility of evidence before trial. *Barrette Outdoor Living, Inc. v. Mich. Resin Representatives*, No. 11-cv-13335, 2015 WL 356996, at *12 (E.D. Mich. Jan. 27, 2015).

"Given that motions in limine often rely on a limited factual record, they should be granted only if the evidence in question is clearly inadmissible on all

6

potential grounds." *Hillman Power Co. v. On-Site Equip. Maint., Inc.*, 672 F. Supp. 3d 379, 383 (E.D. Mich. 2023) (cleaned up). "In cases where that high standard is not met, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (cleaned up). Furthermore, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

The threshold issue of admissibility is relevance. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "But evidence is not excluded as unfairly prejudicial merely because it is damaging to the party against whom it is offered." *Fischer v. United States*, 608 F. Supp. 3d 533, 538 (E.D. Mich. 2022). Rather, unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citation omitted).

7

IV.   **ANALYSIS**

### A. Plaintiff's Motions in Limine

     i. <u>Motion to Designate Portions of Dr. Kansakar's Deposition for Use at Trial [#129]</u>

Plaintiff seeks an order allowing him to admit into evidence portions of Dr. Erina Kansakar's deposition transcript under Federal Rule of Civil Procedure 32(a). Rule 32(a) provides:

> At a hearing or trial, all or part of a deposition may be used against a party on these conditions:
> (A) the party was present or represented at the taking of the deposition or had reasonable notice of it;
> (B) it is used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying; and
> (C) the use is allowed by Rule 32(a)(2) through (8).

Fed. R. Civ. P. 32(a). In turn, Rule 32(a)(4) provides that "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." Fed. R. Civ. P. 32(a)(4). Here, it appears that several of Rule 32(a)'s requirements are satisfied. For instance, it is undisputed that Dr. Kansakar was present at the taking of the deposition, and that she is presently located over 100 miles away in Washington State.

However, in seeking Defendants' concurrence in the relief sought in this motion, Plaintiff did not inform them of the specific designations. In their response, Defendants ask the Court to refrain from ruling on these designations until the parties have conferred. The Court finds that Plaintiff did not adequately seek concurrence as required under the Local Rules and will deny the motion without prejudice.

ii.   <u>Motion in Limine for Attorney-Conducted Voir Dire [#150]</u>

Plaintiff seeks an order allowing for "limited" attorney-conducted voir dire. Given that "this case involves sensitive issues of the rights of incarcerated individuals," Plaintiff asserts that his counsel's direct participation in questioning prospective jurors is necessary to meaningfully probe the venire's potential biases. ECF No. 150, PageID.5689. Defendants oppose this motion, asserting that they "are comfortable with the Court's exercise of its discretion and feel confident that the Court's experience stands it in good stead to select an impartial jury to decide this case." ECF No. 188, PageID.8093.

Federal Rule of Civil Procedure 47(a) provides that a "court may permit the parties or their attorneys to examine prospective jurors *or may itself do so*." Fed. R. Civ. P. 47(a) (emphasis added). In instances where the court itself examines the jurors, "it must permit the parties or their attorneys to make any further inquiry it considers proper, or must itself ask any of their additional questions it considers proper." *Id.* "Because the obligation to impanel an impartial jury lies in the first

9

instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges [are] accorded ample discretion in determining how best to conduct the voir dire." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981).

The undersigned's Practice Guidelines provide that voir dire is conducted by the Court.[2] The Guidelines permit the parties to submit proposed questions at least one week prior to trial and, during voir dire, allow counsel to propose follow-up questions at a sidebar conference. These procedures comply with the governing rules and provide an adequate way for counsel to explore potential juror biases in cases involving sensitive issues. The undersigned believes that court-conducted voir dire safeguards against advocacy-driven questioning that could prejudice the venire, and helps ensure the process proceeds as efficiently as possible. For these reasons, this motion is denied.

    iii.   <u>Motion in Limine to Preclude Defendants From Eliciting Opinion Testimony from Non-Retained Experts for Whom Rule 26(a)(2)(C) Disclosures Were Not Provided [#151]</u>

Plaintiff moves to preclude Defendants from introducing undisclosed expert testimony. He points specifically to: (1) Ronald Drinkert, a nurse practitioner who completed Plaintiff's intake evaluation when Plaintiff first arrived in prison; (2) Dr.

---

[2]

https://www.mied.uscourts.gov/altindex.cfm?pagefunction=pgToPDFAll&judgeID=36.

Patricia Schmidt, a physician who was employed by Corizon and, later, by CHS TX as its state medical director for Michigan; and (3) nurses who responded to Plaintiff's prison grievances. Since the filing of this motion, the parties have stipulated that Dr. Schmidt and Mr. Drinkert are fact witnesses and will testify as such. They have also stipulated that Defendants will not call the nurses who responded to Plaintiff's grievances. In light of these stipulations, the Court will deny the motion as moot.

The Court acknowledges, however, that there is an apparent disagreement about whether Mr. Drinkert's "opinions he reached while caring for Plaintiff" is fact testimony or expert testimony. Plaintiff argues that these opinions, offered by a treating provider, are expert testimony and should have been disclosed in accordance with Rule 26(a)(2)(C). Because no such disclosure was made with respect to Mr. Drinkert, Plaintiff asserts that the testimony must be excluded. Defendants, on the other hand, claim that these opinions are fact testimony, as they were formed in the course of caring for Plaintiff.

At this juncture, the Court cannot determine whether the challenged opinions amount to fact testimony or expert testimony. Neither party has identified with specificity the substance of Mr. Drinkert's expected testimony, and the Court cannot meaningfully assess whether it constitutes permissible fact testimony or impermissible expert opinions. The Court will be better positioned to resolve this issue at trial.

11

In sum, in light of the parties' stipulations, the Court will deny this motion in limine as moot. Plaintiff may object at trial should it appear that Mr. Drinkert's testimony amounts to impermissible expert opinion.

<ol type="i" start="4">
<li>Motion in Limine to Allow Evidence of Michigan Utilization Management Reporting Samples and U/M Stats Report [#152]</li>
</ol>

Plaintiff moves for the admission of the "utilization management reporting samples and U/M stats reports" ("the Reports") that Corizon submitted to the State of Michigan. ECF No. 152, PageID.5759. He asserts that the contract between Corizon and MDOC required the monthly submission of these Reports, and that the Reports demonstrate that Corizon cut spending on offsite services for Michigan prisoners by over 75% between 2009 and 2016. Defendants object to the admissibility of this evidence, arguing that it is irrelevant and its probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury.

As a preliminary matter, the Reports are nearly 70 pages. Plaintiff's argumentation, however, focuses on a single graph[3] depicting Corizon's average quarterly expenditures on outpatient services for the years 2009 through 2016. Much of the information contained elsewhere in the Reports appears irrelevant to the present case, addressing, for example, trends in new oncology patients and

---

[3] The graph can be found at ECF No. 152-2, PageID.5826.

12

behavioral health ER visits. To ensure the Court's evidentiary ruling is properly confined to the issues actually raised by Plaintiff, the Court will address the motion in limine only as it pertains to the graph.

Turning next to relevance, the graph is probative of Plaintiff's *Monell* claim. As the Court recognized in denying Corizon and Dr. Papendick's motion for summary judgment, the graph demonstrates that "Corizon [had] achieved significant reduction in expenditures towards off-site utilization services since it began working with MDOC in 2009." ECF No. 73, PageID.2986. While, as Defendants contend, the time period depicted in the graph predates Plaintiff's incarceration and the contract in effect at that time, it nevertheless demonstrates a persistent pattern of cost-cutting on outpatient services in the years preceding Plaintiff's incarceration in 2017. In this way, the graph tends to substantiate Plaintiff's claim that Corizon had a policy or practice of denying medical care to prisoners in order to save money.

Defendants claim the graph is irrelevant for two additional reasons. First, Defendants argue that the graph is irrelevant because it "shows objective raw data, not subjective 'proof' of supposed policies or practices of Corizon." ECF No. 197, PageID.8219. Even so, to establish *Monell* liability, the existence of an unconstitutional policy or practice "can be shown by a written policy, and, if not, by circumstantial evidence." *Young v. St. Clair Shores Police Dep't*, No. 22-11968, 2024 WL 4697672, at *3 (E.D. Mich. Nov. 6, 2024) (citing *Monell*, 436 U.S. at 692-

13

94). The graph can reasonably serve as circumstantial evidence of Corizon's policy or practice of spending less on prisoner care to save money.

Second, Defendants claim this evidence is irrelevant because Dr. Jeffrey Bomber, former state medical director and a utilization management physician for Corizon, testified at his deposition that the utilization management physician never considers costs when making medical decision and is instead instructed "to practice medicine based on medical necessity, not cost." ECF No. 197, PageID.8221. Defendants also contend that this evidence is "not even relevant to show that Corizon 'cut spending' in a general sense from one year to the next" because, as Dr. Bomber testified, "Corizon does not decide how much it is going to spend in a given year" and it is MDOC that sets the budget. *Id.* at PageID.8221-22. These arguments, however, go to the weight of the evidence, not its relevance. Relevance turns on whether the evidence tends to prove a fact, not whether that fact is unchallenged.

Defendants also argue that under Rule 403, the graph's probative value is substantially outweighed by a danger of unfair prejudice and confusing the jury, as Plaintiff will use it "to make an illogical leap in reasoning to argue that [this evidence] establishes '*exactly* that' Corizon had a policy for denying medical care to save costs." *Id.* at PageID.8225 (emphasis in original). In essence, Defendants appear concerned that Plaintiff will claim the graph conclusively demonstrates the existence of an unlawful policy or practice. This concern, however, does not render

14

the evidence unfairly prejudicial, as the graph depicts objective data collected by Corizon and, standing alone, does not suggest a decision on an improper basis. Any prejudice to Defendants would be the result of the evidence's legitimate probative value. Moreover, there is no reason to believe that introducing this evidence will confuse the jury. Defendants concerns go to the weight of the evidence, not its admissibility, and they may argue at trial that the evidence does not prove what Plaintiff claims it does. As such, Defendants have not shown that the graph should be excluded under Rule 403.

For these reasons, the Court will grant this motion in limine.

v.   Motion in Limine to Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits [#153]

Plaintiff moves to exclude evidence of and reference to previous lawsuits brought against his experts Dr. Silverman and Dr. Watson. In the time since Plaintiff filed this motion, the parties have stipulated that, should these witnesses testify, Defendants will not introduce evidence or argument pertaining to these previous lawsuits. ECF No. 246, PageID.9608. In light of this stipulation, this motion is denied as moot.

vi.   Motion in Limine to Preclude Any Evidence of or Reference to Other Cases Dr. Silverman Worked On [#154]

Plaintiff seeks to exclude evidence of and reference to previous cases in which Dr. Silverman was precluded from providing expert testimony, asserting that such

15

evidence is irrelevant and that its probative value is substantially outweighed by a danger of unfair prejudice and misleading the jury. In response, Defendants contends that this evidence is admissible for purposes of probing Dr. Silverman's credibility.

Federal Rule of Evidence 611(b) allows a party conducting cross-examination to inquire into "the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b). It is possible that cases where Dr. Silverman was precluded from offering expert testimony are probative of his credibility. The Court will be in a better position to assess the probative value of this evidence at trial, and will thus defer ruling on this issue until then. As such, this motion in limine is denied without prejudice.

vii.   Motion in Limine to Preclude Any Evidence of or Reference to Plaintiff's Emotional Outburst at the Hospital [#155]

Plaintiff moves to exclude a medical record containing a note from his patient discharge from McLaren Port Huron Hospital that purportedly states:

> Patient requested something to eat. Spoke with Anna who stated he could not eat yet. Spoke with patient again who became argumentative, cursing, refusing medications. Patient stated, quote, bitch, I am not taking that shit until I get something to eat. I asked the patient not to yell and to refrain from cursing. The patient denied cursing.

ECF No. 58-6, PageID.1112. Plaintiff does not cite the medical record itself, and instead points to Plaintiff's deposition transcript, where defense counsel read this excerpt of the record in the course of examining Plaintiff. According to the

16

deposition transcript, this medical record was prepared by a nurse in the course of treating Plaintiff for stomach issues in 2014. Plaintiff asserts that this evidence is irrelevant and amounts to inadmissible hearsay. In response, Defendants argue this evidence is not hearsay.

It is not apparent what relevance, if any, this evidence has to the issues in this case. Defendants' response to this motion in limine does not address relevance, and instead focuses exclusively on whether this evidence falls under a hearsay exception or exclusion, suggesting that they seek to introduce it for the truth of the matter asserted therein. The facts contained in the medical record do not bear on any claim or defense at issue in this case, as it was purportedly created several years prior to Plaintiff's incarceration by a hospital that is not a party to this case. Accordingly, the Court finds that this evidence is irrelevant and will grant Plaintiff's motion in limine.

    viii.   <u>Motion in Limine to Exclude Hearsay Statement Purportedly Made by an Unidentified Speaker at Dr. Kansakar's Office [#156]</u>

Plaintiff moves to exclude testimony from Ronald Drinkert, a former nurse practitioner for Corizon, regarding statements allegedly made by an unidentified staff person at Dr. Kansakar's office. Specifically, Plaintiff contends that, as memorialized in his affidavit, Mr. Drinkert will testify that on March 29, 2017 and April 5, 2017, he contacted Dr. Kansakar's office to discuss Plaintiff's care and was

advised "that there were no urgent medical issues, the colostomy was functional, and there was no medical necessity for a colostomy reversal." ECF No. 60-2, PageID.1299-1300. Similarly, Plaintiff also moves to exclude the MDOC medical records containing Mr. Drinkert's notes memorializing these conversations. One note, entered on March 29, 2017, reads: "No medical issues were reported from the surgeon's office and the colostomy is functional. It is not likely that the colostomy will be reversed in the MDOC." ECF No. 60-1, PageID.1296. The second, entered on April 7, 2017, states: "Cont's to verbalize that 'ostomy was to be temporary & reversed. No medical NECESSITY per outside documentation or from conversation w/ surgeon's office (Dr. Kansakar)." *Id.* at PageID.1293-94. Plaintiff asserts that Mr. Drinkert's anticipated testimony and the medical records are impermissible hearsay.

Defendants, on the other hand, contend that they are not seeking to admit the statements for their truth, but instead, "for their effect on Mr. Drinkert in his treatment of Plaintiff and on Dr. Papendick in his decisions related to Plaintiff's request for colostomy reversal surgery." ECF No. 204, PageID.8702. When used in this way, this evidence is not hearsay. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay."). As such, the Court will deny this motion in limine. To the extent it appears at trial that Defendants

are introducing this evidence to prove the truth of the matter asserted therein, Plaintiff may raise a hearsay objection at that time.

    ix.  <u>Motion in Limine to Exclude Evidence of Plaintiff's Receipt of Food Stamps [#157]</u>

Plaintiff moves to exclude any evidence or argument about public benefits he has received, including food stamps. Since filing this motion, the parties have stipulated that Defendants will not present any such evidence or argument unless Plaintiff opens the door and Defendants seek leave of court. As such, the Court will deny this motion in limine as moot.

    x.  <u>Motion in Limine to Exclude Evidence of and Reference to Plaintiff's Homelessness [#158]</u>

Plaintiff moves to exclude any evidence of or argument about Plaintiff's homelessness. Since filing the motion, the parties have stipulated that Defendants will not present such evidence or argument unless Plaintiff opens the door and Defendants first seek leave of court. As such, the Court will deny this motion in limine as moot.

    xi.  <u>Motion in Limine Regarding the Law of the Case [#159]</u>

Plaintiff seeks an order finding that, "as a matter of law and pursuant to the law of this case," he has established that CHS TX is a mere continuation of Corizon, and that a colostomy constitutes a serious medical need. ECF No. 159, PageID.6006. "The law of the case doctrine provides that 'when a court decides upon a rule of law,

19

that decision should continue to govern the same issues in subsequent stages in the same case.' " *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (citation omitted). Put another way, the doctrine "precludes reconsideration of issues decided at an earlier stage of the case." *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (citation omitted). "The doctrine applies only to issues that were actually decided, whether explicitly or by necessary implication." *Id.*

Here, Defendants do not dispute that the Court has found that, as a matter of law, CHS TX is a "mere continuation" of Corizon and, thus, is a successor-in-interest to Corizon's stake in this lawsuit. Defendants represent that they do not intend to argue otherwise at trial. As such, the motion in limine will be granted as it relates to this previous finding.

However, the Court has not found that a colostomy is a "serious medical need" as a matter of law. In adjudicating Corizon's motion for summary judgment, the Court acknowledged that a colostomy is a serious medical need. *See* ECF No. 69, PageID.2787; ECF No. 73, PageID.2983. Critically, however, this finding was made in the context of *denying* Corizon's summary judgment motion. In so doing, the Court did not hold that Plaintiff had established any aspect of his deliberate indifference claim as a matter of law, as would have been the case if the Court granted a motion for summary judgment filed by Plaintiff. It instead found that a

triable issue of fact existed. As such, the law of the case doctrine does not apply to this finding.

For these reasons, the Court will grant the motion as it relates to the Court's "mere continuation" finding, and deny it with respect to the Court's "serious medical need" acknowledgment.

xii.  Motion in Limine to Preclude Defendants from Apportioning Fault on Any Non-Party [#160]

Plaintiff moves to exclude evidence demonstrating that the MDOC "maintained policies that required Dr. Papendick to deny colostomy reversal surgery to Plaintiff[] or otherwise supported the denial," claiming that such evidence is irrelevant and "would be likely to confuse the issues, mislead the jury, waste time, and create unfair prejudice." ECF No. 160, PageID.6025. The specific evidence Plaintiff points to are "State employees' denials of Plaintiff's prison grievances regarding his colostomy reversal surgery, Plaintiff's correspondence concerning his colostomy with the State's Legislative Corrections Ombudsman, and MDOC Policy Directive 03.04.100, which Defendants contend somehow prohibited them from providing the surgery." *Id.* at PageID.6028. In response, Defendants claim this evidence is relevant because "the sole basis for Plaintiff's *Monell* claim is his argument that Dr. Papendick was the final decisionmaker in the decision to deny approval for Plaintiff to undergo colostomy revision surgery in 2017." ECF No. 196,

PageID.8205. Defendants contend that "[b]ecause MDOC—not Dr. Papendick—was the final decisionmaker (as Plaintiff is aware), Plaintiff's *Monell* claim fails." *Id.*

This evidence is likely irrelevant. As the Court stated in denying Corizon's motion for summary judgment, "whether Dr. Papendick ha[d] final decision-making authority over treatment approvals . . . is not relevant" to Plaintiff's *Monell* theory. ECF No. 73, PageID.2986. This is because "[a] plaintiff can make a showing of an illegal policy or custom by demonstrating *one of the following*: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (emphasis added). Put another way, there are four different ways in which a plaintiff can meet his burden of demonstrating an existence of an illegal policy or custom, and that an official with final decision-making authority ratified illegal decisions is just one way that showing can be made.

This Court has recognized that Plaintiff's *Monell* claim seems to rest on the first theory, which requires a showing of "formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over

time." *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)) (alteration in original). As this Court has already found, this theory does not require Plaintiff to show that Dr. Papendick was the final decisionmaker with respect to Corizon's denial of Plaintiff's colostomy reversal.

Notwithstanding, this evidence may be is relevant to providing the jury with background context regarding the alleged acts giving rise to this case. The Court will be in a better position to assess the relevancy of this evidence at trial and will defer ruling on this issue until trial. The same is true of evidence concerning any fault Defendants may attempt to apportion on non-parties.

Plaintiff also seeks to preclude Defendants from arguing that "any of the dismissed Prime Healthcare defendants[] also bear responsibility" for Plaintiff's alleged injury. ECF No. 160, PageID.6035. Defendants represent that they "do not intend to argue that former/dismissed parties share liability for Plaintiff's alleged injuries or to ask the jury to apportion liability to any such dismissed parties." ECF No. 196, PageID.8208. Indeed, this Court has recognized that evidence pertaining to dismissed parties and claims "is of little probative value" and would instead "only serve to confuse the jury, unnecessarily prolong trial and cause severe risk that the jury may base its verdict on an improper basis." *Sedore v. Landfair*, No. 2:22-cv-

23

10060, 2025 WL 1707639, at *4 (E.D. Mich. Mar. 14, 2025) (citation omitted). As such, this aspect of Plaintiff's motion in limine will be granted.

Based on the foregoing, this motion in limine is denied without prejudice as to the evidence demonstrating Michigan's policies that governed Dr. Papendick, and granted with respect to evidence pertaining to dismissed parties.

> xiii.  Motion to Designate Portions of Dr. Papendick's Deposition for Use at Trial [#161]

Plaintiff seeks an order permitting him to use portions of Dr. Papendick's deposition testimony at trial. While Dr. Papendick will provide live testimony at trial, Plaintiff seeks to introduce his deposition testimony "as a supplement thereto and to provide jurors with as much context and relevant information as possible so that they may get the whole story." ECF No. 161, PageID.6055. Defendants do not oppose Plaintiff's request, asserting that "[g]iven the unambiguous provisions of Rule 32(a)(3), Defendants do not dispute Plaintiff's right to use Dr. Papendick's deposition transcript[.]" ECF No. 198, PageID.8231.

Rule 32(a)(3) provides that "[a]n adverse party may use for any purpose the deposition of a party[.]" Fed. R. Civ. P. 32(a)(3). Because Defendants do not dispute Plaintiff's use of Dr. Papendick's deposition at trial despite his availability to testify live at trial, the Court will grant this motion in limine.

xiv.   Motion in Limine to Allow Evidence of Bid Materials Submitted by Corizon in Response to Department of Corrections Requests for Proposals [#171]

Plaintiff moves for the admission of three bids submitted by Corizon to various state governments. The first is Corizon's 2013 bid for a contract with the Kansas Department of Corrections, which states that "[a]s a company, Corizon has targeted several 'Key Performance Indicators (KPI)' for improvement across our contracts companywide . . . thereby enhancing our ability to meet the budget expectations of each of our clients across the country." ECF No. 66-23, PageID.2406. These KPIs included "Impatient Days per/1,000 Offenders," which "[m]easures volume of offsite care with the goal of reducing unnecessary offsite trips," and "Offender Patient Referrals per/1000 Offenders," which "[m]easures volume of physician specialty visits and other outpatient services with the goal of reducing unnecessary offsite trips." *Id.* at PageID.2406-07. The bid further states that Corizon's "main focus on these KPIs is to create a 'laser' focus and to target [its] collective improvement efforts in these areas in order to improve [its] chances of success in meeting client and budget expectations." *Id.* at PageID.2407.

The second is Corizon's 2020 bid for a contract with the State of Michigan. Therein, Corizon stated that "upon transitioning the psychiatry contract from the MDOC's previous provider in June 2016, . . . [it] implemented initiatives that decreased psychotropic medication spend by 60%, averaging $204,362 per month

25

for a total savings of $9.8M since the onset of the contract." ECF No. 66-18, PageID.2286.

The final bid is Corizon's 2012 bid for the renewal of its contract with the Tennessee Department of Corrections, which states:

> Corizon, Inc. has developed and implemented a sophisticated utilization management program to support our Tennessee providers and local hospital partners, enabling Corizon, Inc. to provide appropriate clinical care and improved continuity of services while returning value to the state of Tennessee. Through improved utilization processes that have resulted in reductions in inpatient days and inmate average length of stay, Corizon, Inc. has reduced the security costs associated with offsite transports since 2010 . . . . This reduction in offsite hospital days translates to savings for the TDOC in transportation and correctional officer costs as well as improved safety for the community.

ECF No. 66-21, PageID.2321. Plaintiff contends that this evidence is "highly relevant to the issues in this case" because "it will assist jurors in making determinations as to why [he] did not receive a colostomy reversal, and bears directly on [his] *Monell* claim that [Corizon] had a practice or policy of cutting costs on care for prisoners to save money for itself." ECF No. 171, PageID.7018.

Defendants argue that this evidence should be excluded for several reasons. First, they contend that this evidence is irrelevant under Rule 401 because the bids have "nothing to do" with the alleged acts giving rise to this case. Defendants note that the bids were not submitted during Plaintiff's incarceration, and that the Kansas and Tennessee bids pertain to states where Plaintiff was not incarcerated. Second,

26

Defendants argue that the evidence should be excluded under Rule 403 because its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. According to Defendants, "Plaintiff makes clear that he intends to make an illogical leap in reasoning to argue that because Corizon allegedly made some comments in bid materials about reduced expenditures, including with respect to psychiatric sleep medications, it establishes that Corizon denied Plaintiff's colostomy reversal surgery based on a policy for denying medical care to save costs." ECF No. 206, PageID.8781-82. Lastly, they claim these materials are hearsay but advance no argumentation to this effect, instead stating that "[t]o the extent the Court does not exclude this evidence outright, Defendants reserve all rights to make objections to such evidence at trial." *Id.* at PageID.8782.

The Court finds that these bid materials are relevant. They highlight Corizon's strategic effort to achieve cost savings by spending less on various forms of prisoner care. In this way, this evidence is probative of Plaintiff's *Monell* claim that Corizon had a policy or practice of spending less on prisoner care in order to save money. While the alleged acts giving rise to this case occurred in Michigan, the Kansas and Tennessee bid materials are nevertheless probative of a potential company-wide policy or practice. Furthermore, that these bid materials were submitted either before or after Plaintiff's incarceration does not defeat their relevance, as they are probative

27

of an enduring policy or practice beginning before Plaintiff's incarceration and continuing after his release.

Furthermore, the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury. As with the graph from the Reports, Defendants' concerns regarding Plaintiff's purported "illogical leap in reasoning" bear on the weight of the evidence rather than its admissibility. If Defendants believe the bid materials are insufficient to demonstrate the existence of an unlawful policy or practice, they may so argue at trial.

Lastly, the Tennessee and Kansas bids are excludable from the hearsay rule as party admissions. Under Federal Rule of Evidence 801(d), a statement is not hearsay if it is offered against an opposing party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2). The Tennessee bid states that it was "Prepared By[] Corizon, Inc." and lists Senior Director of Business Management Michael Miller as the "Point of Contact." ECF No. 66-21, PageID.2320. Similarly, the Kansas bid indicates that it was submitted by Corizon, and it was signed by Senior Vice President and Chief Development Officer Jonathan Walker. ECF No. 66-23, PageID.2404-05. As for the Michigan bid, however, the Court cannot ascertain from the excerpts cited by Plaintiff that these materials were prepared by Corizon. As

such, the Court will defer ruling on the admissibility of the Michigan bid until Plaintiff can establish that it satisfies an exception to the rule against hearsay.

For these reasons, the Court will grant the motion in limine as it relates to the Tennessee and Kansas bids, and deny it without prejudice as to the Michigan bid.

xv.   <u>Motion to Overrule Defendants' Objections to Dr. Webber's Deposition Testimony [#183]</u>

Plaintiff seeks an order overruling Defendants' objections to Dr. John Webber's deposition testimony. It appears that Plaintiff intends to use Dr. Webber's deposition testimony at trial, asserting that he "is unable to testify live at trial due to pre-scheduled patient surgeries." ECF No. 183, PageID.7648.

In the time since Plaintiff filed this motion, Defendants have withdrawn their objections to several portions of Dr. Webber's deposition.[4] Notwithstanding, Plaintiff has not yet moved for an order allowing for the use of his deposition testimony at trial. Instructive here is Rule 32(a)(4), which provides:

> **_Unavailable Witness._** A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds:
> (A) that the witness is dead;
> (B) that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition;
> (C) that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment;

---

[4] ECF No. 246, PageID.9609.

    (D) that the party offering the deposition could not procure the witness's attendance by subpoena; or

    (E) on motion and notice, that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used.

Fed. R. Civ. P. 32(a)(4). That Dr. Webber has "pre-scheduled patient surgeries" that may conflict with the trial date does not, without more, render him unavailable as provided for under this Rule. *See Bell v. CSX Transp., Inc.*, No. 00-40264, 2002 WL 34714566, at *3 (E.D. Mich. Apr. 4, 2002) (holding that a doctor having to cancel patient appointments does not constitute "exceptional circumstances" because such circumstances "would appear to apply to almost every doctor, resulting in essentially a per se rule that doctors are unavailable to testify because of the nature of their profession"). Moreover, the trial date has changed since Plaintiff filed this motion. As such, the Court will deny this motion without prejudice.

## B. Defendants' Motions in Limine

### i. Motion in Limine to Exclude Evidence and Argument Concerning "Medical Necessity" Under Medicare and Medicaid [#142]

Defendants move to preclude Plaintiff from introducing evidence or argument demonstrating that Medicare or Medicaid's payment of medical claims is evidence of "medically necessary" care under the Eighth Amendment. Specifically, Defendants anticipate that two of Plaintiff's expert witnesses—Dr. John Webber and Dr. Ralph Silverman—will testify that they are medical providers who accept

Medicare and Medicaid and that, based on their experience, these programs do not pay for care that is not "medically necessary." Defendants contend that such testimony is irrelevant, unfairly prejudicial, and likely to confuse the jury.

Defendants have not met their burden of demonstrating that this anticipated testimony is inadmissible. The anticipated testimony is relevant, as it tends to make it more probable that Plaintiff's colostomy reversal, having been reimbursed by Medicaid, was medically necessary. Moreover, the probative value of this anticipated testimony is not substantially outweighed by a risk of unfair prejudice or confusing the jury. Any potential prejudice to Defendants flows from the legitimate probative force of the testimony, rather than from some improper basis. Defendants are concerned that the jury may equate "medical necessity" as used by Medicare and Medicaid with the constitutional standard of "medical necessity" under the Eighth Amendment. However, any potential risk for prejudice or confusing the jury on this basis can be resolved through a jury instruction distinguishing between the two.

Defendants further contend that allowing Dr. Webber and Dr. Silverman to opine on Medicare and Medicaid's reimbursement of "medically necessary" care is tantamount to instructing the jury on the law. Indeed, "Rule 702 prohibits expert witnesses from testifying to legal conclusions." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). "An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case," *Id.*

31

(citing *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150-51 (6th Cir. 1985)), and courts generally exclude "expert testimony for stating a legal conclusion only when the witness explicitly testifies, in specialized legal terminology, that a defendant violated (or did not violate) the law." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (cleaned up). Here, however, Dr. Webber and Dr. Silverman are not expected to define "medical necessity" under the Eighth Amendment or opine on ultimate legal conclusions. Rather, they will testify about Medicare and Medicaid's reimbursement policies, which turns on the "medical necessity" of the procedure at issue. That the term "medical necessity" is used in both contexts does not transform their anticipated testimony about Medicare and Medicaid into an impermissible legal instruction. Any potential risk of confusing the jury can be addressed through a jury instruction.

Lastly, Defendants argue that Dr. Webber's and Dr. Silverman's anticipated testimony should be excluded because they lack experience in administering or processing claims under Medicaid or Medicare, and therefore cannot claim expertise in those programs or their statutory frameworks. This argument is unavailing. The Sixth Circuit has recognized that "a medical doctor is generally competent to testify regarding matters within his or her own professional experience." *Gass v. Marriott Hotel Servs.*, 558 F.3d 419, 427-28 (6th Cir. 2009). As practicing physicians who accept Medicare and Medicaid, Dr. Webber and Dr. Silverman have direct

32

experience with the services these programs cover. Medicare's and Medicaid's reimbursement of "medically necessary" care falls squarely within their professional experience. As such, Dr. Webber and Dr. Silverman are competent to testify on this subject.

For these reasons, this motion in limine is denied.

### ii. Motion in Limine to Exclude Evidence and Argument Regarding Defendants' Liability After June 8, 2017 [#143]

Defendants seek to preclude Plaintiff from presenting evidence or argument that Defendants are liable to Plaintiff for conditions or events that occurred after the MDOC denied his Step II Grievance Appeal on June 8, 2017. According to Defendants, the MDOC's denial of Plaintiff's Step II Grievance "was expressly based on MDOC's own policy, and not any alleged Corizon policy or Dr. Papendick's decision, and became final when the MDOC denied his Step III Grievance." ECF No. 143, PageID.5039. Defendants contend that this MDOC decision was a superseding cause that "breaks the causal chain" of Defendants' alleged misconduct, thus absolving them of liability. *Id.* As such, Defendants claim the Court "should limit the period of potential damages against Defendants from April 19, 2017 to June 8, 2017." ECF No. 210, PageID.8832.

While labeled a motion in limine, this motion is, in substance, an untimely motion for summary judgment. The Sixth Circuit condemns the use of motions in

33

limine to summarily dismiss portions of a claim. "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2003) (citation omitted). "In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary-judgment motion. Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.* Thus, "[w]here, as here, the motion in limine is no more than a rephrased summary-judgment motion, the motion should not be considered." *Id.* at 563.

Here, to prevail on his *Monell* claim, Plaintiff needs to demonstrate, among other things, that a Corizon policy or custom was the "moving force" behind his constitutional injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted). Defendants' motion in limine essentially asks this Court to find, as a matter of law, that Corizon's allegedly unlawful policy or practice was not the "moving force" behind Plaintiff's alleged injury, thus disposing of an element of Plaintiff's *Monell* claim. This request is improperly before the Court and should have been raised at summary judgment. As such, the Court will deny this motion.

   iii.  <u>Motion in Limine to Exclude Dr. Silverman [#144]</u>

Defendants move to exclude the expert testimony of Dr. Silverman, a medical doctor whom Plaintiff retained to opine on whether Defendants' treatment of Plaintiff met the applicable standard of care. First, Defendants argue that Dr. Silverman's opinions are unreliable under Federal Rule of Evidence 702 because he cites "no studies, literature, statistics, or data, or any other independent bases" to support them. ECF No. 144, PageID.5105. They specifically challenge several of Dr. Silverman's opinions, including his view that there is "broad consensus" that, absent contraindications, a colostomy created due to diverticulitis should be reversed within eight to twelve weeks, and that doing so is the standard of care. Defendants also challenge Dr. Silverman's opinion that colostomy takedown surgeries are medically necessary even when a patient's life is not at risk, as well as his assertion that such procedures can be safely performed after eight weeks, are not dangerous in general, and that Plaintiff lacked comorbidities that would have made the surgery difficult or high-risk.

"[T]he requirement that an expert's testimony be reliable means that it must be 'supported by appropriate validation—i.e., good grounds, based on what is known.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Daubert*, 509 U.S. at 590). A medical doctor is "generally competent to testify regarding matters within his or her own professional experience," *Gass v.*

*Marriott Hotel Servs., Inc.*, 558 F.3d 419, 427-28 (6th Cir. 2009), and the exclusion of a medical doctor's professional opinion, supported by his "extensive relevant experience," is "rarely justified in cases involving medical experts as opposed to, [for example,] supposed experts in the area of product liability." *Dickenson v. Cardiac and Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citations omitted).

Here, Dr. Silverman's challenged opinions are firmly grounded in his extensive professional experience. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Rees v. Target Corp.*, No. 06-10676, 2008 WL 7440009, at *4 (E.D. Mich. Mar. 31, 2008). As explained in his expert disclosures, Dr. Silverman is board certified in colorectal surgery and general surgery, and has treated patients with colostomies for nearly twenty years. In the course of his practice, he performs both the creation and the take down of colostomies. He typically performs one to two colostomy creation procedures per week, and one to two colostomy takedown procedures per week. Moreover, Dr.

36

Silverman has performed approximately a thousand colostomy takedowns over the course of his career. Dr. Silverman's challenged opinions arise from his years of hands-on experience in treating patients with colostomies, and as such, they are supported by "good grounds," satisfying Rule 702's reliability requirement. Moreover, the Court finds that his expert disclosures sufficiently explain his extensive clinical experience, and his opinions clearly flow from that experience.

Contrary to what Defendants assert, the fact that Dr. Silverman does not cite medical literature, studies, or other independent authorities in support of his opinions does not undermine the reliability of his opinions. Nothing in Rule 702 requires that a medical expert's opinions be grounded in such sources. To the contrary, the Sixth Circuit has recognized that a medical expert need not "demonstrate a familiarity with accepted medical literature or published standards in [an area] of specialization in order for his testimony to be reliable in the sense contemplated by Federal Rule of Evidence 702." *Dickenson*, 388 F.3d at 982. Rather, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of *experience*." *Id.* at 980 (emphasis in original) (quoting Fed. R. Evid. 702 advisory committee's note). Such is the case here. For these reasons, Defendants have not demonstrated that Dr. Silverman's testimony is excludable under Rule 702.

Second, Defendants argue that the probative value of Dr. Silverman's anticipated testimony is substantially outweighed by a danger of unfair prejudice and

37

confusing the jury. In essence, Defendants contend that Dr. Silverman's opinions do not address every element of Plaintiff's deliberate indifference claim, arguing, for example, that Dr. Silverman "does not opine that providing colostomy supplies and care" amounts to deliberate indifference, and that he fails to "address the fact that a doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." ECF No. 144, PageID.5108-09 (cleaned up). This argument is without merit. Whether Dr. Silverman's testimony proves every element of Plaintiff's claim does not bear on its admissibility. Rather, these concerns go to the weight of the evidence, and Defendants will be free to probe these purported shortcomings during cross-examination.

Lastly, Defendants assert that Dr. Silverman's anticipated testimony concerning the appropriateness of treatment Plaintiff received before he was in MDOC custody should be excluded as irrelevant. Upon review of Dr. Silverman's expert disclosures, however, it does not appear that he opines on the "appropriateness" of such treatment, and instead recites facts concerning such treatment to provide context for his opinions. When used in this way, these facts provide relevant background context.

For these reasons, the Court finds that Defendants have not demonstrated the inadmissibility of Dr. Silverman's anticipated expert testimony. As such, this motion

in limine is denied.

### iv.   Motion in Limine to Bifurcate Punitive Damages [#145]

Defendants move to bifurcate Plaintiff's request for punitive damages from his deliberate indifference claim and his request for compensatory damages. They argue that evidence concerning their "wealth and resources," which they anticipate Plaintiff will introduce in support of his claim for punitive damages, could improperly influence the jury's determination of liability and compensatory damages.

Federal Rule of Civil Procedure 42(b) governs the bifurcation of trials, providing that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The party seeking bifurcation has the burden of demonstrating [that] judicial economy would be promoted and that no party would be prejudiced by separate trials." *Marchese v. Milestone Sys., Inc.*, No. 12-12276, 2013 WL 12183618, at *2 (E.D. Mich. Dec. 3, 2013) (citation omitted). Whether to try issues separately under Rule 42(b) is within the district court's discretion. *Id.* "The decision to bifurcate is made on a case-by-case basis and is ultimately a practical decision." *Id.* (cleaned up).

Defendants have not shown that bifurcation is warranted here. First, bifurcation would not meaningfully promote convenience or efficiency, as the

39

evidence needed to prove liability likely overlaps with the evidence needed to prove punitive damages. To recover punitive damages, Plaintiff will need to prove that Defendants' conduct was "motivated by evil motive or intent" or involved "reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). A person's state of mind can be inferred from his conduct, and as such, evidence of the acts underlying Plaintiff's deliberate indifference claim will likely also bear on whether those acts were reckless, callous, or driven by evil intent. Moreover, while a defense verdict on liability would render punitive damages moot, any time saved would be minimal and would not meaningfully conserve judicial resources. Therefore, bifurcation risks duplicative proceedings and could prolong the case's resolution without meaningful benefit.

Second, bifurcation could prejudice Plaintiff. If he prevails on liability, he would be required to bear the added expense and effort of presenting his case for a second time. In contrast, while evidence of Defendants' financial condition carries some risk of influencing the jury on liability or compensatory damages, that risk can be managed through clear jury instructions directing the jury to consider such evidence only as it relates to punitive damages.

For these reasons, Defendants' request for bifurcation is denied.

     v.   Motion in Limine to Preclude Plaintiff from Making "Golden Rule" Arguments or Statements [#146]

Defendants move to preclude Plaintiff from offering impermissible "Golden Rule" evidence or argument at trial. In the time since Defendants filed this motion, the parties have stipulated that Plaintiff's counsel will not "make classic 'Golden Rule' arguments, such as specifically asking the jury to 'put yourself in Kohchise Jackson's shoes.' " ECF No. 246, PageID.9610. In light of this stipulation, this motion in limine is denied as moot.[5]

> vi. Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates Other than Plaintiff Concerning the Adequacy of Their Colostomy Care [#147]

Defendants seek to preclude Plaintiff from "offering any testimony, evidence, opinions, or argument, including from current or former inmates concerning the adequacy of the colostomy care that Corizon or Dr. Papendick" provided to them. ECF No. 147, PageID.5377. They specifically seek to exclude: (1) testimony from Larry Cowan and Keith Smith, who are current or former MDOC inmates; (2) affidavits from Mr. Cowan and Mr. Smith; and (3) photographs of Mr. Cowan and Mr. Swift. Defendants argue that this evidence is irrelevant and unfairly prejudicial. They also contend that the affidavits amount to impermissible hearsay.

---

[5] As evidenced by his response to this motion in limine, Plaintiff intends to use "Send a Message" arguments with respect to his request for punitive damages. The Court acknowledges that Defendants' motion is limited to "Golden Rule" arguments, and as such, this ruling does not address any potential "Send a Message" arguments Plaintiff may make.

41

Beginning with relevance, Defendants argue that "[t]his evidence has no probative value" without expert medical testimony establishing that Mr. Cowan and Mr. Smith were denied medically necessary care. ECF No. 147, PageID.5379. This argument is unavailing. It is axiomatic that "[t]he standard for relevance is capacious—evidence is relevant if it has 'any tendency' to make a 'fact of consequence' to the case 'more or less probable than it would be without the evidence.'" *Meng Huang v. Ohio State Univ.*, 116 F.4th 541, 564 (6th Cir. 2024). As the Sixth Circuit has explained:

> It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence. Even after the probative force of the evidence is spent, the proposition for it is offered can still seem quite improbable. Thus, the common objection that the inference for which the fact is offered 'does not necessarily follow' is untenable. It poses a standard of conclusiveness that very few single items of circumstantial evidence could ever meet. A brick is not a wall.

*Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (citation omitted). The fact that Plaintiff has not retained an expert to opine on whether Mr. Cowan's and Mr. Smith's colostomies were medically necessary as a matter of law does not render their testimony irrelevant. To the contrary, evidence that other inmates with similar medical needs also encountered comparable barriers or delays in treatment may lend support to Plaintiff's theory that cost considerations influenced Corizon's medical decision-making. Even if such evidence does not, standing alone, establish the existence of an illegal policy or custom, it may still serve as one piece of

42

circumstantial evidence from which the jury could draw that inference. As such, the Court finds that Mr. Cowan's and Mr. Smith's anticipated testimony and affidavits are relevant.

Moreover, Defendants have not demonstrated that Rule 403 warrants exclusion of this evidence. Any prejudice to Defendants would stem from the legitimate probative value of the testimony and affidavits, rather than from some improper purpose. To the extent this appears to not be the case at trial, Defendants may raise a Rule 403 objection.

As for the photographs Defendants seek to exclude, the Court has not been provided with either the photographs themselves or any explanation of the context in which Plaintiff intends to introduce them. As such, the Court cannot meaningfully assess their relevance or whether their probative value is substantially outweighed by a danger of unfair prejudice. The Court will therefore decline to rule on this issue at this time and will instead address the admissibility of the photographs at trial.

Similarly, the Court lacks sufficient information to resolve Defendants' hearsay objection. Defendants do not identify specific statements they contend constitute inadmissible hearsay. Indeed, it is possible that portions of the affidavit might fall within a recognized exclusion or exception to the rule against hearsay. The Court will therefore defer ruling on this objection until trial.

For these reasons, this motion in limine is denied without prejudice.

43

vii.   <u>Motion in Limine to Preclude Plaintiff from Offering Evidence or Argument Relating to the 2022 Corizon Divisional Merger or 2023 Bankruptcy [#149]</u>

Defendants seek to exclude evidence concerning (1) "the 2022 Plan of Divisional Merger and related business transactions involving" CHS TX and Corizon; (2) "the 2023 *In re Tehum* (fka Corizon Health Inc.) bankruptcy (including use of the term 'Texas Two-Step'"; and (3) "any other post-2021 financial information, transactions, or business plans." ECF No. 149, PageID.5512. Defendants claim this evidence is irrelevant and that its probative value is substantially outweighed by a danger of unfair prejudice and confusing the jury. In response, Plaintiff contends that this evidence is relevant to punitive damages and does not pose a risk of unfair prejudice or confusing the jury.

Beginning with evidence of the divisional merger and bankruptcy, Plaintiff contends that they reflect the "reprehensibility" of Corizon and CHS TX's alleged misconduct, as it demonstrates their "extensive efforts to place its assets beyond the reach of persons harmed by [their] obstinate refusals to provide medical care." ECF No. 203, PageID.8685. Indeed, "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Importantly, however, "[a] defendant's dissimilar acts, independent from the

44

acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *Id.* at 422-23.

Here, the divisional merger and subsequent bankruptcy are fundamentally dissimilar to the alleged acts giving rise to Plaintiff's deliberate indifference claim. The divisional merger and bankruptcy are corporate restructuring events, whereas Plaintiff's deliberate indifference claim arises from Defendants' provision of medical care. Even accepting Plaintiff's assertion that Corizon undertook the divisional merger and subsequent bankruptcy to shield its assets, punitive damages cannot be used to punish Corizon for engaging in allegedly unsavory business practices. At bottom, these corporate restructuring events are entirely distinct from the alleged acts giving rise to Plaintiff's deliberate indifference claim and bear no relation to the harm he allegedly suffered. Accordingly, the Court finds that evidence of the divisional merger and bankruptcy is irrelevant to punitive damages and will exclude it.[6]

_____

[6] Notwithstanding their request to exclude this evidence, Defendants assert that the jury should be informed that "(1) CHS TX[] was created in January 2022, and (2) CHS [TX] is a defendant representing Corizon's interests because CHS continued Corizon's business following a 2022 transaction." ECF No. 149, PageID.5522. They contend this information "is sufficient to inform the jury why CHS is a defendant and why Corizon is not present." *Id.* at PageID.5521. Plaintiff, on the other hand, claims "it is misleading to suggest that CHS TX[] was formed as a separate entity in January 2022 that then entered into a transaction with Corizon in May 2022" because

Next, the Court finds that Defendants' request to categorically exclude evidence of post-2021 financial information, transactions, and business plans is overly broad. Indeed, such evidence may be relevant to punitive damages, as "the financial resources of a defendant may be considered in fixing the amount of such damages." *Johnson v. Ford Motor Co.*, No. 19-cv-10167, 2023 WL 5095691, at *8 (E.D. Mich. Aug. 9, 2023) (citations omitted). Evidence of Defendants' post-2021 financial information, transactions, and business plans may inform their financial resources. Moreover, to the extent Defendants are concerned that such evidence may improperly influence the jury's liability and compensatory damages determinations, a limiting instruction directing the jury to consider the evidence solely for purposes of punitive damages can redress that concern.

For these reasons, this motion in limine is granted in part and denied in part. The Court will exclude evidence pertaining to the divisional merger and bankruptcy. The motion is denied in all other respects.

viii. Motion in Limine to Exclude Evidence of Previous Lawsuits Against Defendants [#163]

Defendants seek to "preclude Plaintiff from offering any testimony, evidence,

---

"Corizon *became* CHS TX in May of 2022[] by splitting off from itself an essentially-assetless shell company containing nothing but liabilities." ECF No. 203, PageID.8685. The Court believes that simply informing the jury that CHS TX is a continuation of Corizon, and has been since 2022, will be sufficient to explain Corizon's absence at trial.

opinions, or argument[] relating to any previously filed lawsuits against Defendants." ECF No. 163, PageID.6282. They assert that the precluded evidence should include (1) "putative testimony [from] any witnesses Plaintiff intends to call at trial," (2) "any exhibits on Plaintiff's proposed Exhibit List that contain complaints from other lawsuits," (3) "PACER case search results for the term 'Corizon' as a defendant for cases filed January 1, 2016 to December 31, 2016," and (4) "deposition transcripts from non-parties in unrelated cases." ECF No. 163, PageID.6282.

In response, Plaintiff contends that evidence of prior lawsuits against Defendants is relevant to both his *Monell* claim and his request for punitive damages. With respect to his *Monell* claim, Plaintiff argues that these lawsuits represent the "negative ramifications" of Defendants' alleged policy or custom of denying medical care to prisoners in order to save money, and suggest that Defendants knowingly tolerated the risk of litigation because the financial savings associated with the policy outweighed the costs of being sued.

The Court is unpersuaded. Previous lawsuits, standing alone, offer no meaningful insight into Defendants' decision-making and do not establish that they consciously weighed the risk of litigation against financial considerations in maintaining the alleged policy or custom. Moreover, even accepting Plaintiff's theory at face value, it does little, if anything, to establish the existence of the

allegedly unlawful policy or custom, or that the policy or custom was the "moving force" behind Plaintiff's constitutional injury. As such, under Plaintiff's theory, evidence of prior lawsuits carries minimal, if any, probative value to his *Monell* claim.

Notwithstanding, the Court finds that evidence of prior lawsuits against Defendants could potentially be relevant to Plaintiff's claim for punitive damages. As noted, to establish an entitlement to punitive damages, Plaintiff will need to demonstrate the reprehensibility of Defendants' actions. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The Supreme Court has recognized that "repeated misconduct is more reprehensible than an individual instance of malfeasance," and as such, "[e]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *BMW of N. Am. v. Gore*, 517 U.S. 559, 576-77 (1996). Prior cases in which Defendants were found liable for similar misconduct could, depending on the facts and circumstances, be relevant to punitive damages. Determining relevance will require a case-by-case assessment of the facts of each prior lawsuit. The Court has not been presented with the specific cases Plaintiff seeks

to introduce, and as such, the Court will defer ruling on this issue until trial.[7]

At this juncture, however, the Court finds that excluding complaints from prior lawsuits filed against Defendants and PACER search results referencing Corizon is appropriate. Complaints contain untested allegations, and PACER case search results do not provide any substantive findings on wrongdoing. In this way, this evidence sheds no light on whether Defendants did, in fact, engage in prohibited conduct, and as such it is not probative of the reprehensibility of Defendants' alleged misconduct.

Lastly, the Court turns to Defendants' request to exclude deposition transcripts from non-parties from unrelated cases. It is possible that this evidence may be admissible at trial. For instance, if a non-party deponent testifies, prior deposition testimony could be used for impeachment purposes, subject to the applicable rules of evidence. As such, a categorical exclusion of this evidence is not warranted at this juncture, and the Court will assess the admissibility of such

---

[7] In their motion, Defendants assert that their objections to Plaintiff's proposed exhibits, as set forth in the parties' proposed Final Pretrial Order, "identify any exhibits that should be excluded pursuant to this motion, as well [as] any other bases for excluding the exhibits." ECF No. 163, PageID.6283. However, the proposed Final Pretrial Order does not specify which exhibits relate to this motion in limine, nor has the Court been provided with the exhibits themselves to assess their admissibility. In addition, the objections are largely stated only by reference to the Federal Rules of Evidence, without any explanation as to why the exhibits should be excluded. As such, the Court will not address those objections.

evidence on a case-by-case basis at trial.

For these reasons, the motion in limine is granted in part and denied in part. The Court will exclude complaints from prior lawsuits filed against Defendants and PACER case search results. The motion is denied in all other respects.

      ix.  <u>Motion in Limine to Exclude Evidence Related to Corizon Outside of Michigan [#164]</u>

Defendants move to preclude Plaintiff from offering any evidence or argument relating to Corizon's activities outside of Michigan. Defendants point to Corizon's 2013 bid for a contract with the Kansas Department of Corrections and Corizon's 2020 bid for a contract with the Missouri Department of Corrections. They claim such evidence is irrelevant because "Corizon's contract with the MDOC created specific obligations to the MDOC and its prisoners," and as such, "[n]o other governmental entity, correctional facility entity, prison, or contract has any relevance to the MDOC contract" underlying this case. ECF No. 164, PageID.6381. Defendants further contend that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice.

Defendants have not shown that this evidence is inadmissible. As noted with respect to Plaintiff's motion in limine regarding Corizon's bid materials, evidence of Corizon's activities outside of Michigan may be probative of a broader, company-wide policy or custom of spending less on prisoner medical care in order to save

money. As such, evidence of Corizon's out-of-state activities could be relevant to Plaintiff's *Monell* claim. Moreover, with respect to the Kansas and Missouri bids, any potential prejudice to Defendants stems from the probative force of the evidence itself, not from any improper basis. As such, its probative value is not substantially outweighed by a danger of unfair prejudice.

For these reasons, this motion in limine is denied.

> ### x. Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care [#166]

Defendants seek an order precluding Plaintiff from offering evidence or argument "related to Corizon's business other than the provision of colostomy care, including evidence relating to: (1) patients, health care providers, medical conditions, diagnoses, care, or treatments, that are unrelated to colostomy care, or (2) Corizon's general business practices unrelated to colostomy care." ECF No. 166, PageID.6543. They claim this evidence is irrelevant and that its probative value is substantially outweighed by a danger of unfair prejudice.

Defendants have not demonstrated that this evidence is inadmissible. Here too, this evidence could be probative of a broad company-wide policy or custom of spending less on various types of prisoner medical care to achieve cost savings. In addition, the Court cannot properly evaluate Defendants' Rule 403 objection without knowing the specific content of the evidence falling under this category, which

Defendants have not provided to the Court.

For these reasons, this motion in limine is denied without prejudice.

    xi.  <u>Motion in Limine to Preclude Arguments Regarding the Value of Constitutional Rights [#165]</u>

Defendants seek an order precluding Plaintiff from offering any arguments regarding the numerical value of constitutional rights. They contend that, "[t]o the extent Plaintiff seeks to assert damages based on the importance of constitutional rights at stake, such evidence is irrelevant, and any probative value is substantially outweighed by the risk of unfair prejudice because it asks the jury to make a determination of damages outside of those that may be recovered." ECF No. 165, PageID.6511.

It is well-settled that "[d]amages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986)). Consistent with that principle, this Court routinely precludes plaintiffs from "ask[ing] the jury to assign a numerical value to the importance of abstract constitutional rights in any compensatory damages calculation." *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *7 (E.D. Mich. July 15, 2021). However, "mention of constitutional rights may be relevant both in determining liability for constitutional violations and to a

punitive damage assessment." *Id.* (citing *King*, 788 F.3d at 213). As such, a plaintiff may assert the general importance of the constitutional rights at stake in the course of establishing liability and punitive damages. *Id.* In doing so, "care must be taken to not suggest that the jury may calculate any damage award based on a right's perceived value." *Jackson-Gibson v. Beasley*, No. 20-cv-12765, 2025 WL 1078983, at *6 (E.D. Mich. Apr. 10, 2025).

Consistent with this authority, the Court will grant the motion in limine. Plaintiff may not ask the jury to assign a numerical value to the importance of his constitutional rights in calculating damages. He may, however, assert the importance of the constitutional rights at stake in the course of establishing liability and punitive damages.

xii.   Motion in Limine to Exclude Jan Watson and Cristin Rettler [#175][8]

Defendants move to preclude Plaintiff from introducing testimony from Dr. Jan Watson and Cristin Rettler. Defendants argue that Plaintiff's designation of these witnesses as non-retained experts under Federal Rule of Civil Procedure 26(a)(2)(C) was "a sham intended to untimely identify" them as fact witnesses. They further contend that their anticipated testimony is irrelevant, that its probative value is

---

[8] This motion is a "corrected" version of a previous motion Defendants filed to exclude these witnesses. The Court will consider only this "corrected" motion, and will deny the original motion (ECF No. 148) as moot.

substantially outweighed by a risk of unfair prejudice, and that it amounts to impermissible hearsay.

By way of background, Dr. Watson worked as a locum tenes doctor at an Arizona correctional facility in 2017. While she was not employed by CHS TX or Corizon, Corizon was the contracted health care provider during the time she worked at that facility. Ms. Rettler, on the other hand, is a former Corizon employee who worked as a physician's assistant from 2012 to 2014 in an Oregon correctional facility.

The Court begins with Defendants' claim that Plaintiff improperly identified Dr. Watson and Ms. Rettler as expert witnesses in an effort to circumvent the lay witness deadline. The Court will address this argument only as it relates to Ms. Rettler, as Dr. Watson was timely identified as a fact witness on Plaintiff's witness list. ECF No. 43, PageID.690.

It is well-settled in this Court that Rule 26(a)(2)(C)'s non-retained expert disclosure requirements apply to "hybrid witnesses," who are witnesses who can provide fact testimony based on their personal involvement in the underlying events and expert testimony based on their education, training, and experience. *United States v. EES Coke Battery, LLC*, No. 22-11191, 2025 WL 1621296, at *2 (E.D. Mich. June 9, 2025) (citation omitted). The paradigmatic example of a hybrid witness is a treating physician. When a treating physician merely recounts

54

observations made during the course of treatment—for example, the symptoms a patient reported, or the care the physician provided—their testimony is fact testimony. In contrast, when the physician relies on his medical training and experience to interpret those observations—for example, opining on the cause of a medical condition or on the adequacy of care—their testimony is derived from their education, training, and experience, and thus amounts to expert testimony. A treating physician can serve as a hybrid witness, and thus not file an expert report, when he "testifies within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007).

Here, it is true that Ms. Rettler is a medical professional who treated patients while working for Corizon. However, the opinions described in her Rule 26(a)(2)(C) disclosure largely center around her observations regarding Corizon's alleged policy or practice of denying medical care to prisoners in order to save money, rather than her opinions concerning medical care she provided. Such testimony is factual in nature and does not depend on her medical training or specialized knowledge. Therefore, Plaintiff should have designated Ms. Rettler as a fact witness rather than as a non-retained expert. Plaintiff has offered no explanation as to why his failure to do so should be excused as substantially justified or harmless. As such, Ms. Rettler

will be excluded from testifying at trial.

Next, the Court finds that Dr. Watson's anticipated testimony is relevant to the policy or custom element of Plaintiff's *Monell* claim. Dr. Watson testified at her deposition that she had difficulty referring patients to outside specialists and received pushback or outright denial from Corizon's utilization management physicians. Moreover, she testified that, on one occasion, she referred a patient who was experiencing frequent seizures to a neurologist, and that the request was denied because it was too expensive. This testimony tends to make the fact that Corizon's cost-cutting motives, rather than the assessment of health risks and the medical needs of patients, drove Corizon's approval of off-site referrals more probable than it would be without the testimony, which is a fact of consequence in determining Plaintiff's *Monell* claim. As such, the Court finds that Dr. Watson's anticipated testimony clears the relevance threshold.

Moreover, the probative value of Dr. Watson's anticipated testimony is not substantially outweighed by a danger of unfair prejudice. Any prejudice Defendants may suffer as a result of Dr. Watson's testimony is a direct result of its legitimate probative value, rather than from some improper basis.

Lastly, Defendants claim Dr. Watson should be precluded from testifying because her anticipated testimony lacks evidentiary foundation and is "inherently based on inadmissible hearsay." ECF No. 175, PageID.7309. This objection is

overly broad, as Defendants do not point to any specific aspect of her anticipated testimony that warrants exclusion on these grounds. Defendants may object at trial should it appear her testimony amounts to hearsay or lacks foundation.

For these reasons, this motion in limine is granted in part and denied in part. Ms. Rettler may not testify at trial. The motion is denied in all other respects.

xiii.   Motion in Limine to Exclude Sonya Fulks [#168]

Finally, Defendants move to preclude Sonya Fulks, one of Plaintiff's hybrid witnesses, from testifying at trial. First, Defendants argue that Ms. Fulks should not be permitted to opine on the standard of care for colostomy reversals, noting that, at her deposition, she stated her intention to opine on the need for a colostomy or a colostomy reversal and the "national standard of care for medical providers and practitioners." ECF No. 168, PageID.6894. Indeed, Plaintiff's Rule 26(a)(2)(C) disclosure for Ms. Fulks does not list this subject matter as a topic on which she will testify.[9]  As such, the Court agrees—and Plaintiff does not dispute—that Ms. Fulks cannot provide such testimony.

Second, Defendants claim that the remainder of Ms. Fulks's testimony should be excluded because it is "completely irrelevant to the question of whether it was

---

[9] Moreover, as the Court found with respect to Dr. Waston and Ms. Rettler, the opinions contained in Ms. Fulks's Rule 26(a)(2)(C) disclosure is fact, rather than expert, testimony. However, unlike Dr. Watson and Ms. Rettler, Defendants do not contend that Ms. Fulks was not timely disclosed as a fact witness.

medically necessary to reverse Plaintiff's colostomy in April 2017 or why Corizon approved continued care for his colostomy instead of a colostomy reversal surgery." ECF No. 168, PageID.6900. While this may be true, her anticipated testimony is probative of Corizon's alleged policy or practice of denying medical care to prisoners in order to save money. For instance, she is expected to testify that, in her role as an Oncology Case Manager for Corizon, "she routinely observed Corizon delay or deny necessary diagnostic testing and medical care to incarcerated patients," that "Corizon's Utilization Management team regularly made it difficult to obtain approval for diagnostic procedures like biopsies or radiation-related testing," and that "Corizon medical providers were consistently discouraged from sending patients to the emergency room." ECF No. 168-2, PageID.6919. Such testimony is relevant to the policy or practice element of Plaintiff's *Monell* claim. That her experience and insights pertain to oncology rather than colostomies does not defeat the relevance of this anticipated testimony, as it tends to demonstrate a broader pattern of denying medical care to save money.

Moreover, the probative value of this evidence is not substantially outweighed by a danger of unfair prejudice. Any potential prejudice to Defendants from this testimony is the result of its legitimate probative force.

For these reasons, this motion in limine is granted in part and denied in part. Ms. Fulks may not provide expert testimony regarding the standard of care with

respect to colostomies. The motion in limine is denied in all other respects.

## V.   <u>CONCLUSION</u>

Based on the foregoing,

- Plaintiff's Motion to Designate Portions of Dr. Kansakar's Deposition for Use at Trial [#129] is DENIED WITHOUT PREJUDICE;

- Plaintiff's Motion in Limine for Attorney-Conducted Voir Dire [#150] is DENIED;

- Plaintiff's Motion in Limine to Preclude Defendants From Eliciting Opinion Testimony from Non-Retained Experts for Whom Rule 26(a)(2)(C) Disclosures Were Not Provided [#151] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Allow Evidence of Michigan Utilization Management Reporting Samples and U/M Stats Report [#152] is GRANTED;

- Plaintiff's Motion in Limine to Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits [#153] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Preclude Any Evidence of or Reference to Other Cases Dr. Silverman Worked On [#154] is DENIED WITHOUT PREJUDICE;

- Plaintiff's Motion in Limine to Preclude Any Evidence of or Reference to Plaintiff's Emotional Outburst at the Hospital [#155] is GRANTED;

- Plaintiff's Motion in Limine to Exclude Hearsay Statement Purportedly Made by an Unidentified Speaker at Dr. Kansakar's Office [#156] is DENIED;

- Plaintiff's Motion in Limine to Exclude Evidence of Plaintiff's Receipt of Food Stamps [#157] is DENIED AS MOOT;

- Plaintiff's Motion in Limine to Exclude Evidence of and Reference to Plaintiff's Homelessness [#158] is DENIED AS MOOT;

- Plaintiff's Motion in Limine Regarding the Law of the Case [#159] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion in Limine to Preclude Defendants from Apportioning Fault on Any Non-Party [#160] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion to Designate Portions of Dr. Papendick's Deposition for Use at Trial [#161] is GRANTED;

- Plaintiff's Motion in Limine to Allow Evidence of Bid Materials Submitted by Corizon in Response to Department of Corrections Requests for Proposals [#171] is GRANTED IN PART and DENIED IN PART;

- Plaintiff's Motion to Overrule Defendants' Objections to Dr. Webber's Deposition Testimony [#183] IS DENIED WITHOUT PREJUDICE;

- Defendants' Motion in Limine to Exclude Evidence and Argument Concerning "Medical Necessity" Under Medicare and Medicaid [#142] is DENIED;

- Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Defendants' Liability After June 8, 2017 [#143] is DENIED;

60

- Defendants' Motion in Limine to Exclude Dr. Silverman [#144] is DENIED;

- Defendants' Motion in Limine to Bifurcate Punitive Damages [#145] is DENIED;

- Defendants' Motion in Limine to Preclude Plaintiff from Making "Golden Rule" Arguments or Statements [#146] is DENIED AS MOOT;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence from Inmates Other than Plaintiff Concerning the Adequacy of Their Colostomy Care [#147] is DENIED WITHOUT PREJUDICE;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence or Argument Relating to the 2022 Corizon Divisional Merger and 2023 Bankruptcy [#149] is GRANTED IN PART and DENIED IN PART;

- Defendants' Motion in Limine to Exclude Evidence of Previous Lawsuits Against Defendants [#163] is GRANTED IN PART and DENIED IN PART;

- Defendants' Motion in Limine to Exclude Evidence Related to Corizon Outside of Michigan [#164] is DENIED;

- Defendants' Motion in Limine to Preclude Plaintiff from Offering Evidence that is Unrelated to Corizon's Provision of Colostomy Care [#166] is DENIED WITHOUT PREJUDICE;

- Defendants' Motion in Limine to Preclude Arguments Regarding the Value of Constitutional Rights [#165] is GRANTED;

- Defendants' Motion in Limine to Exclude Jan Watson and Cristin Rettler [#148] is DENIED AS MOOT;

61

- Defendants' Corrected Motion in Limine to Exclude Jan Watson and Cristin Rettler [#175] is GRANTED IN PART and DENIED IN PART; and

- Defendants' Motion in Limine to Exclude Sonya Fulks [#168] is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated: March 11, 2026
/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 11, 2026, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager