**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,

v.

CHS TX, Inc., et al.,

        Defendants.

Case No. 2:19-cv-13382

Hon. Gershwin A. Drain

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**BRIEFING RE: OUTSTANDING EXHIBIT OBJECTIONS**

The Court has not requested briefing from the parties regarding the outstanding objections to exhibits in this case. In the event that the Court chooses to consider Defendant's filing regarding certain outstanding deposition objections (ECF No. 266), Plaintiff Kohchise Jackson respectfully submits the following responses:

**1) Defendants' Exhibit P- Rettler Deposition Transcript**

Defendants have lodged an apparent objection to their own Exhibit. This objection will likely be moot, as Ms. Rettler has agreed to take time off work to travel to Detroit to testify live. In the unlikely event that Ms. Rettler somehow becomes unavailable, her deposition testimony is admissible under Fed. R. Evid. 32(a)(4)(B), which operates as an independent exception to the hearsay rule. *See Lefebre v.*

1

*Remington Arms Co., LLC*, No. 2:17-CV-152, 2019 U.S. Dist. LEXIS 179670 at \*3-\*4 (W.D. Mich. June 3, 2019).

### 2)    Defendants' Exhibit F2, CHS TX, Inc.'s Initial Disclosures

CHS TX, Inc. is a mere continuation of Corizon Health, Inc., and so assumed Corizon's position in this lawsuit. Discovery was not re-opened and the Court did not set a new dispositive motion deadline; there was no reason for CHS TX, Inc. to file new initial disclosures in June of 2025 as if this case were beginning anew. Further, it is not clear for what purpose a party would introduce its own initial disclosures as a trial exhibit.

### 3)    Defendants' Exhibits M2, N2, P2, Q2, R2, and S2: Documents pertaining to other patients with colostomies withheld until years after the close of discovery

Rule 26 requires parties to provide opposing counsel with "a copy—or a description by category and location—**of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses**, unless the use would be solely for impeachment[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). This disclosure must be made at the ***beginning*** of the discovery period, within "14

days after the parties' Rule 26(f) conference[,]" unless a different time is set by stipulation or court order. Fed. R. Civ. P. 26(a)(1)(C).

Corizon and Dr. Papendick served initial disclosures in this case on August 25, 2020. Defendants' Initial Disclosures did not provide a copy of, or describe, any of the documents contained in Defendants' Exhibits M2, N2, P2, Q2, R2, or S2.

Discovery in this case was extended twice, *see* ECF No. 47; ECF No. 50, and closed on July 9, 2021. Defendants did not reveal the existence of these documents, or that they intended to use them at trial, until nearly four years after the close of discovery in flagrant violation of their Rule 26(a)(1)(A)(ii) disclosure obligations. Had Plaintiff known that Defendants intended to use these documents at trial, Plaintiff would have pursued an entirely different discovery strategy. Plaintiff would have investigated and sought to interview the specific patients whose billing and utilization-management records are contained in Defendants' Exhibits M2, N2, P2, Q2, R2, or S2, learned how their medical conditions compared to the condition of the Plaintiff, and interrogated Dr. Papendick at his deposition about why he approved those individuals' colostomy reversals, but did not approve a reversal for the Plaintiff. Plaintiff would have subpoenaed email communications between Corizon employees and MDOC employees pertaining to the patients whose records are contained in Exhibits M2, N2, P2, Q2, R2, or S2; sought internal Corizon emails and other records

pertaining to the decisions to reverse those individuals' colostomies in discovery, and likely selected witnesses to depose based on the content of those communications. In short, had Plaintiff known that Corizon intended to use the documents in Exhibits M2, N2, P2, Q2, R2, and S2 at trial, Plaintiff would have prepared for a completely different case.

Defendants' belated production of the documents in Exhibits M2, N2, P2, Q2, R2, and S2 also revealed, for the first time, that Defendants possess internal billing and utilization-management records for each MDOC prisoner that are maintained separately from the MDOC's Prison Health Record. In July of 2025, Defendants belatedly produced these internal billing and utilization management records for several other MDOC prisoners with colostomies, **but still have not produced** *Kohchise Jackson's* **internal billing and utilization-management records**, despite receiving a discovery request from the Plaintiff seeking such records nearly six years ago. *See* ECF No. 48-2, PageID.744.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."

4

*Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004). "The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Dobbins v. Greyhound Lines, Inc.,* 336 F.R.D. 144, 147 (E.D. Mich. 2020). Defendants have not shown that their failure to comply with Rule 26(a)(1)(A)(ii) with respect to these documents was substantially justified or harmless. Exhibits N2, P2, Q2, R2, and S2 must be excluded.

### 4)      Defendant's Exhibit I3- Affidavit of Timothy McKenna, D.O.

Defendants should be precluded from questioning their expert witnesses about Dr. McKenna's affidavit for the same reason that the Court has ruled that they may not question their expert witnesses on direct examination regarding the fifty-five medical journal articles they attached as exhibits: Dr. McKenna's affidavit was not listed as an item relied on by any of Defendants' experts in their Rule 26(a)(2)(B) reports. *See, e.g., Smith v. Pfizer Inc.*, No. 3:05-0444, 2010 U.S. Dist. LEXIS 47698 at *25-*26 (M.D. Tenn. May 14, 2010) ("Rule 26 requires an expert's report to disclose the materials he is using in support of his opinions. Parties cannot simply have their experts discuss anything that has been designated as a trial exhibit.").

5

Additionally, Dr. McKenna is an expert witness who was hired to produce his opinion by a dismissed party. Introducing his affidavit would necessitate revealing to the jury that the Prime Healthcare defendants are former parties to this lawsuit and that they have been dismissed. This could lead jurors to infer that the Prime Healthcare defendants were dismissed because Dr. McKenna's conclusions were correct. As this Court recently held in another prisoner civil rights case, "there is no probative value in admitting evidence of dismissed Defendants" and such evidence "is excludable under Rule 403 as it will only serve to confuse the jury, unnecessarily prolong trial and cause severe risk that the jury may base its verdict on an improper basis." *Sedore v. Lanfair,* 2025 U.S. Dist. LEXIS 117160 at *11 (E.D. Mich. March 14, 2025) (Drain, J.).

### 5) Defendant's Exhibits J3, K3, and M3

Defendants argue that these exhibits should be admitted because Plaintiff waived objections to other exhibits. Plaintiff's waiver of his objections to various other exhibits on Defendants' Exhibit List is not a concession that the exhibits he has waived his objections to are admissible under the Rules of Evidence. A waiver is not an admission that the objection was meritless; it is merely a decision by the party not to object as a matter of trial strategy.

Exhibits J3 and K3 are two versions of the Grievance Policy for the MDOC. Defendants clearly intend to argue that the denials of Plaintiff's prisoner grievances about the denial of medical care by Dr. Papendick constitute a "superseding cause" of Plaintiff's injury. *See* ECF No. 143. They claim that Dr. Papendick is not responsible for the consequences of his decision, because other MDOC officials involved in responding to prisoner grievances allegedly could have overturned his decision at a later time but chose not to. Per Defendants' theory, the individuals who denied the grievances are the "final decisionmakers" who are ultimately responsible for the harm to Plaintiff.

This is is not a legally-cognizable defense to an Eighth Amendment claim. Courts throughout the Sixth Circuit have consistently held that only the officials involved in the underlying conduct that is the subject of the grievance can be held legally responsible for the alleged harm, because grievance deniers lack personal involvement in the underlying unconstitutional conduct as a matter of law. *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care. Therefore, Martin failed to allege any personal involvement by defendant McGinnis in the alleged denial of medical treatment."); *See also, Proctor v. Applegate*, 611 F. Supp. 2d 743, 765 (E.D. Mich. 2009) ("where defendants' "only roles … involve the denial of administrative

7

grievances or the failure to act … they cannot be liable under § 1983."'") (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)); *Stringer v. Roach*, 2025 U.S. Dist. LEXIS 146225 at *7 (E.D. Mich. June 30, 2025) ("[s]imply reviewing and denying a plaintiff's grievance is not enough for liability[,]"); *Villanueva v. Washington*, 2023 U.S. Dist. LEXIS 210413 at *6 (E.D. Mich. Nov. 27, 2023) ("The Sixth Circuit has repeatedly held that a prison official's wrongful denial of a prison grievance does not violate any federal constitutional right absent any allegation that the official was involved in the underlying activity that was challenged in the grievance.") (collecting cases).

The actions of the MDOC officials who denied Plaintiff's grievances are irrelevant. The law is clear that how a prison official responds to an administrative grievance about a purported Eighth Amendment violation has no legal relevance to the underlying Eighth Amendment violation. Grievance policies and testimony about the MDOC grievance process has little to no probative value concerning any fact of consequence in this action and carries great risks of "confusing the issues" and "misleading the jury." FRE 403. It should not be admitted into evidence.

Exhibit M3 presents a different issue. It is an MDOC policy directive concerning healthcare services. Defendants intend to use this document to argue that MDOC policy required Dr. Papendick to deny colostomy reversal surgery to Plaintiff.

8

But the fact that a private-party defendant may have been compelled by the State to violate a Plaintiff's federal rights is not a defense to liability under § 1983. Rather, state compulsion is one basis for *imposing* § 1983 liability on private parties. *See, e.g. S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 565 (6th Cir. 2007); *Marble v. Snyder (In re Flint Water Cases)*, 453 F.Supp. 3d 970, 987 (E.D. Mich. 2020).

### 6)      Defendant's Exhibits P3, Q3 and R3

Plaintiff's grievance records should not be admitted for the reasons discussed above. In addition, the MDOC's responses to Plaintiff's grievances are hearsay not within any exception. The only potentially-applicable hearsay exceptions for the MDOC's responses to Plaintiff's grievances are FRE 803(6) and FRE 803(8). However, both of these exceptions only apply if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FRE 803(6)(E); FRE 803(8)(B).

For purposes of both FRE 803(6) and FRE 803(8), when records were prepared in anticipation of litigation, "the circumstances of their preparation tend to indicate a lack of trustworthiness." *Applebaum v. Target Corp.*, 831 F.3d 740, 744 (6th Cir. 2016); *see also, Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013) ("it is well-

established . . . that documents prepared in anticipation of litigation are not admissible under FRE 803(6).") (collecting cases).

As this Court is undoubtedly aware, the Prison Litigation Reform Act requires state prisoners to properly complete each step of their prison's grievance procedure before they can file a lawsuit in federal court. The MDOC employees who respond to prisoner grievances likewise understand that exhaustion of the grievance procedure is a mandatory prerequisite to suing the MDOC or its employees. The MDOC employees who responded to Mr. Jackson's grievances were indisputably aware that Mr. Jackson intended to litigate the subject matter of his grievance, because they specifically documented his oral threat to sue in their summary of Mr. Jackson's Step I grievance. *See* ECF No. 60-8, PageID.1523. ("It is documented that the Grievant, "Became so upset when told about the not approval consult request stating that he's planning to file a law suit.").

### 7) **Defendant's Exhibit S3**

While Defendants are correct that this letter is not hearsay per FRE 801(d)(2), the objections raised to this exhibit were not hearsay objections. The letter relates to Plaintiff's claims against the Prime Healthcare Defendants, who were dismissed on summary judgment. The Court has already ruled that evidence pertaining to dismissed

10

parties will be excluded. *See* ECF No. 254, PageID.9796.

### 8)     Defendants' Exhibit T3

Defendants argue that Exhibit T3 is a party admission because it was attached to Plaintiff's Complaint. However, "Rule 10(c) "does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact."" *Jones v. City of Cincinnati,* 521 F.3d 555, 561 (6th Cir. 2008) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454-56 (7th Cir. 1998)). This document could potentially be used to impeach Plaintiff's expert, the document itself is not a party admission merely because it was attached as an exhibit to the Complaint.

Respectfully submitted,

Dated: March 20, 2026

*/s/ Ian T. Cross*
IAN T. CROSS (P83367)
Attorney for Plaintiff
402 W. Liberty St.
Ann Arbor MI 48103
(734) 994-9590
ian@lawinannarbor.com
larry@lawinannarbor.com

11