**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KOHCHISE JACKSON,

      Plaintiff,

v.

CHS TX, INC., et al.,

      Defendants

Case No.: 2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**DEFENDANTS' WITNESS LIST AND SUMMARY OF WITNESS TESTIMONY**

Defendants CHS TX, Inc. and Dr. Keith Papendick, M.D. ("Defendants") respectfully file a summary of what the witnesses listed on their witness list will testify to as follows:

A.   The Defendants will call the following witnesses live:

1.   **Dr. Keith Papendick, M.D.**: Dr. Papendick will describe his role and responsibilities as a Utilization Manager working with Corizon Health, Inc. ("Corizon"). Dr. Papendick will testify that his only involvement in Plaintiff's care was when he approved Mr. Jackson for continued colostomy care and on-site follow-up on April 19, 2017 upon transfer out of the MDOC's intake facility. Dr. Papendick will explain why, in his medical judgment, the medical information that he considered supported his decision at that time. Dr. Papendick will further testify that cost of care was not a factor in his decision making generally, or as to Plaintiff. Dr. Papendick will also testify that he approved other colostomy reversal surgeries when medical necessity was demonstrated.

2. **Ronald E. Drinkert, NP**: Mr. Drinkert will testify to the medical examinations that he conducted for Plaintiff between March 24, 2017 and the time of his transfer out of the MDOC's intake facility in April 2017, including the medical judgments that he made and the basis for those medical judgments. Mr. Drinkert will testify to his interactions with Plaintiff. Mr. Drinkert will also testify that he ordered imaging and colostomy supplies for Plaintiff. Mr. Drinkert will further testify he contacted the office of the surgeon who performed Plainitff's colostomy, Dr. Erina Kansakar, and was advised by her office there were no urgent medical issues and there was no medical necessity for colostomy reversal. Mr. Drikert will testify that he did not see Plaintiff after that time.

3. **Dr. Patricia Schmidt**: Dr. Schmidt will testify to her background and positions with Corizon. Dr. Schmidt will testify to relevant details of Corizon's contract with the MDOC and who bore responsibility for costs under the MDOC's contract during the time of Plainitff's imprisonment. Dr. Schmidt will further testify what medical providers were Corizon employees and what medical providers were MDOC employees. Dr. Schmidt will also testify what medical kites are and how they are submitted, what a "407" is and how it is processed, and what the appeal process is when a patient or on-site provider disagrees with the result of the 407. Dr. Schmidt will further testify that Corizon provided access to UpToDate when evaluating 407 requests. Dr. Schmidt will testify Corizon was not involved with the MDOC grievance appeal process or any personal process the Plaintiff may have engaged in relating to his colostomy care. Dr. Schmidt will refute Plaintiff's theory that Plaintiff did not have colostomy reversal surgery in the MDOC because Corizon was trying to save money, and will provide necessary context to Plaintiff's "cost cutting" theory.

4. **Richard Russell**: Mr. Russell will testify he was the manager for the Grievance Section Office of Legal Affairs at the MDOC and will testify as to what the MDOC grievance process entails. Mr. Russell will testify that he prepared the initial MDOC contract with Corizon and will explain Corizon's role under the contract. He will also testify that it was the MDOC's policy to not reverse colostomies unless they were medically necessary, that the MDOC denied Plaintiff's request for a colostomy reversal surgery in 2017 for that reason, that the MDOV could have approved the request if the MDOC review of his records

found that it was medically necessary, and that Corizon was not involved in that process or decision.

5. **Dr. James McQuiston**: Dr. McQuiston will testify he is a board-certified general surgeon and that he has over thirty-two years' experience in complex abdominal surgery, including in creation, reversal, care and treatment of colostomies. Dr. McQuiston will testify consistent with his expert disclosure. Dr. McQuiston will further testify he reviewed Plaintiff's medical records, and will offer his expert opinion that there is in the medical records indicating that Plaintiff had demonstrated medical necessity for a colostomy reversal during his time in prison. Dr. McQuiston will also testify that Mr. Jackson was not put at any risk by waiting to have his colostomy reversed, that no complications developed before the colostomy reversed, and that Mr. Jackson had no complications associated with the reversal surgery that was done in 2019.

6. **Dr. Michael Duffy**: Dr. Duffy will testify he is board-certified and has been a Gastroenterologist for over thirty years. Dr. Duffy will testify he reviewed Mr. Jackson's medical records and there was nothing that indicated obvious medical harm arising from Mr. Jackson not having a colostomy reversal. The decision whether to make a reversal is a surgical decision that is based on various factors. Dr. Duffy will further testify there are complications that can occur with colostomy reversals. Dr. Duffy will testify that Mr. Jackson's colostomy appeared to function well while he was incarcerated and from a gastrointestinal standpoint, Mr. Jackson suffered no damage by not having his colostomy reversed as no medical necessity was demonstrated that warranted a reversal while he was in prison.

7. **Dr. Syed Jafri**: Dr. Jafri will testify he is a Urologist and is board-certified. Dr. Jafri will further testify Mr. Jackson did not suffer medical harm by having his colostomy reversal delayed until he was released from prison. Dr. Jafri will also testify he reviewed Mr. Jackson's medical records and found his colostomy was functioning well and there was no medical necessity to have his colostomy reversed while in prison. Dr. Jafri will further testify there are risks associated with a colostomy reversal, and it was reasonable for Mr. Jackson to be released from prison prior to undergoing this operation. Dr. Jafri will also testify

there was no medical necessity to reverse Mr. Jackson's colostomy while he was in prison.

**B.      Defendants will play portions of the videotaped *de bene esse* depositions of the following witnesses to the jury (on cross):**

1.      **Dr. Jeffrey Bomber, M.D**.: Dr. Bomber will testify he was the Northern Regional Medical Director for Corizon and eventually transitioned to being the State Medical Director for Corizon. Dr. Bomber will testify costs were not considered when making decisions based on medical necessity, and will provide additional testimony already recorded.

2.      **Dr. Erina Kansakar, M.D**.: Dr. Kansakar will testify she performed a colostomy on Mr. Jackson.  Dr. Kansakar will also testify to her judgment regarding the medical necessity of a colostomy reversal for Plaintiff, that she does not disagree that a colostomy reversal was not medically necessary for Plaintiff, and that she does not dispute that her office told a correctional medical provider that a colostomy reversal for Plaintiff was not urgent and that there was no timeframe for a reversal, and will provide additional testimony already recorded.

3.      **Dr. John Webber:**  Dr. Webber will testify that Plaintiff did not suffer any medical complications with his colostomy in prison, will testify to his medical judgment about when a reversal is medically necessary, will testify that he does not know what Dr. Papendick considered, and will provide additional testimony already recorded.

Defendants reserve the right to cross-examine any witness that Plaintiff calls.

Defendants reserve the right to recall in their case any witness that Plaintiff calls during its case-in-chief, any rebuttal witness, any witness on their "may call" list" if necessary, and to procure any testimony necessary to respond to Plainitff's evidence or arguments.

4

Dated: March 20, 2026

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:     /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

5

## CERTIFICATE OF SERVICE

I certify that, on March 20, 2026, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com

**BOWMAN AND BROOKE LLP**

By:     /s/*Sunny Rehsi*
        Sunny Rehsi (P80611)
        101 W. Big Beaver Road.,
        Suite 1100 Troy, MI 48084
        248.205.3300
        sunny.rehsi@bowmanandbrooke.com

        Adam Masin (Admitted 5/1/2025)
        750 Lexington Avenue
        New York, NY 10022
        646.914.6790
        adam.masin@bowmanandbrooke.com

6

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a
YesCare and Keith Papendick, M.D*