**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,

v.

CHS TX, INC., et al.,

        Defendants

Case No.: 2:19-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

**TRIAL BRIEF OF DEFENDANTS CHS TX, INC.**
**<u>AND KEITH PAPENDICK, M.D.</u>**

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

I.   INTRODUCTION ........................................................................................1

II.  NO REASONABLE JUROR WILL BE ABLE TO FIND THAT DR. PAPENDICK OR CORIZON VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS ..................................................................2

   A. DR. KEITH PAPENDICK ........................................................................2

      1. The Objective Component—There is No Evidence of a "Sufficiently Serious" Medical Need Requiring Colostomy Reversal. ............................................................................................3

      2. The Subjective Component—Dr. Papendick Did Not Have an Actionable State of Mind........................................................................5

   B. CORIZON HEALTH, INC..........................................................................10

III. CONCLUSION...............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Alspaugh v. McConnel*,
  643 F. 3d 162 (6th Cir. 2011) ................................................................8

*Anthony v. Swanson*,
  701 F. App'x 460 (6th Cir. 2017) ........................................................10

*Austin v. Corizon Health Care*,
  No. 24-10023, 2025 WL 1509364 (E.D. Mich. May 27, 2025) .........................8, 9

*Blackmore v. Kalamazoo County*,
  390 F. 3d 890 (6th Cir. 2004) ...............................................................3

*Braswell v. Corr. Corp. of Am.*,
  419 F. App' x 622 (6th Cir. 2011) ........................................................10

*Bruce v. Correctional Med. Servs. Inc.*,
  No. 3:06-cv-33, 2012 WL 4372378 (E.D. Tenn. Sept. 24, 2012) .........................7

*Burgess v. Fischer*,
  735 F.3d 462 (6th Cir. 2013) ...............................................................11

*Colwell v. Corizon Healthcare Inc.*,
  No. 11-cv-15586, 2014 WL 6686764 (E.D. Mich. Nov. 26, 2014) ............ 6, 9, 13

*Denham v. State of Ariz.*,
  97 F.3d 1459 (9th Cir. 1996) .................................................................1

*Dickens v. Withrow,*
  915 F.2d 1571 (6th Cir. 1990) .............................................................1, 5

*Dodson v. Wilkinson*,
  304 F. App'x 434 (6th Cir. 2008) ........................................................10

iii

*Durham v. Nu'Man,*

   97 F.3d 862 (6th Cir. 1996) ...................................................................................5

*Estelle v. Gamble,*

   429 U.S. 97 (1976) ................................................................ passim

*Farmer v. Brennan,*

   511 U.S. 825 (1994) ................................................................ 3, 6, 7

*Fox v. DeSoto,*

   489 F.3d 227 (6th Cir. 2007) ...............................................................................11

*Gray v. City of Detroit,*

   399 F. 3d 612 (6th Cir. 2005) ...............................................................................11

*Hall v. Pandya,*

   No. 14-cv-12022, 2015 WL 5212016 (E.D. Mich. Sept. 4, 2015).......................13

*Henry v. Michigan Dep't of Corr.,*

   27 F. App'x 573 (6th Cir. 2001) ...........................................................................3

*Jackson v. City of Cleveland,*

   925 F.3d 793 (6th Cir. 2019)................................................................................11

*Jackson v. Corizon Health, Inc.,*

   No. 19-cv-13382, 2021 WL 8013977 (E.D. Mich. Dec. 16, 2021) .....................14

*Jackson v. Corizon,*

   No. 19-cv-13382, 2020 WL 3529542 (E.D. Mich. Jun. 30, 2020) ......................14

*Jackson v. Corizon,*

   No. 19-cv-13382, 2020 WL 4577419 (E.D. Mich. Mar. 20, 2020) .....................14

*Johnson v. Karnes,*

   398 F.3d 868 (6th Cir. 2005)................................................................................11

*Kensu v. Corizon, Inc. et al.,*

   No. 22-1493, 2023 WL 1800276 (6th Cir. Feb. 7, 2023)....................................12

*LeMarbe v. Wisneski*,

    266 F.3d 429 (6th Cir. 2001) ...................................................................................8

*McClendon v. City of Detroit*,

    255 Fed. Appx. 980 (6th Cir. 2007) .....................................................................12

*Miller v. Calhoun Cty.*,

    408 F.3d 803 (6th Cir. 2005) ...................................................................................4

*Monell v. Dep't of Soc. Servs.*,

    436 U.S. 658 (1978) ......................................................................................... 10, 11

*Owens v. O'Dea*,

    149 F.3d 1184 (6th Cir. 1998) .................................................................................6

*Phillips v. Roane Cty., Tenn.*,

    534 F.3d 531 (6th Cir. 2008) ...................................................................................3

*Powell v. Messary*,

    11 F. App'x 389 (6th Cir. 2001) .............................................................................7

*Reynolds v. Wagner*,

    128 F.3d 166 (3rd Cir. 1997) .................................................................................13

*Rhinehart v. Scutt*,

    894 F.3d 721 (6th Cir. 2018) ...................................................................... passim

*Rhodes v. Chapman*,

    452 U.S. 337 (1981) ..................................................................................................3

*Richmond v. Huq*,

    885 F.3d 928 (6th Cir. 2018) ...................................................................................8

*Santiago v. Ringle*,

    734 F.3d 585 (6th Cir. 2013) ...................................................................................8

*Swarbrick v. Frantz*,

    No. 11-cv-01696-WYD-MJW, 2012 WL 833882 (D. Colo. Feb. 21, 2012).........2

*Thomas v. City of Chattanooga,*

    398 F.3d 426 (6th Cir. 2005) ................................................................................11

*Thomas v. Coble,*

    55 F. App''x 748 (6th Cir. 2003) .........................................................................10

*Titlow v. Correctional Med. Servs. Inc.,*

    507 Fed. Appx. 579 (6th Cir. 2012) ...............................................................7, 9

*Westlake v. Lucas,*

    537 F.2d 857 (6th Cir. 1976) .................................................................................8

*Whyde v. Sigsworth,*

    No. 22-3581, 2024 WL 4719649 (6th Cir. Nov. 8, 2024)....................................9

*Winslow v. Prison Health Services,*

    406 Fed. Appx. 671 (3rd Cir. 2011) ...................................................................13

*Wright v. City of Euclid, Ohio,*

    962 F.3d 852 (6th Cir. 2020) ...............................................................................12

*Wright v. Taylor,*

    79 F. App'x. 829 (6th Cir. 2003).........................................................................6

Statutes

42 U.S.C. § 1983 ..................................................................................... 7, 10

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976)

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

*Farmer v. Brennan*, 511 U.S. 825 (1994)

*Dickens v. Withrow*, 915 F.2d 1571 (6th Cir. 1990)

*Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018)

*Colwell v. Corizon Healthcare Inc.,* No. 11-cv-15586, 2014 WL 6686764 (E.D. Mich. Nov. 26, 2014)

*Hall v. Pandya*, No. 14-cv-12022, 2015 WL 5212016, at \*3 (E.D. Mich. Sept. 4, 2015)

## I.    INTRODUCTION

In an opinion directly on point, the Sixth Circuit rejected an argument that delay of a colostomy reversal constitutes an Eighth Amendment violation when there is a medical dispute about whether the procedure is elective. *See Dickens v. Withrow* 915 F.2d 1571 (6th Cir. 1990) (affirming dismissal and denial of motion to amend complaint). In *Dickens*, a prisoner brought a § 1983 action alleging that Michigan state correction officials violated his Eighth Amendment rights "by refusing to immediately schedule him for surgery to repair his colon (a colostomy closure)" and by keeping him on a waiting list which was at sixteen months when he filed his Complaint. *Id.* at *1. In words directly applicable here, the Sixth Circuit held:

> Upon review, we affirm the district court's judgment. Dickens basically argues that the colostomy closure should have been immediately scheduled because the closure is a medical necessity. Defendants responded by stating that Dickens's colostomy was functioning properly and that Dickens was placed on the surgical waiting list because they deemed the closure a medical non-emergency. The defendants were not deliberately indifferent to Dickens's medical needs because a difference of opinion between the plaintiff and his doctor regarding an elective surgical procedure does not state a claim for an eighth amendment violation.[1]

---

[1] *See also Denham v. State of Ariz.,* 97 F.3d 1459 (9th Cir. 1996) ("The evidence shows that an operation to close a colostomy, and by extension, the procedure to determine the appropriateness of closure, are not medically urgent procedures. Because Denham has not shown a delay in urgent or medically-required treatment, he has failed to show that defendants were deliberately indifferent to his serious medical needs by delaying his enema."); *Swarbrick v. Frantz*, No. 11-cv-01696-WYD-MJW, 2012 WL 833882, *9 (D. Colo. Feb. 21, 2012) (denial of a colostomy

At best, all Plaintiff will be able to show during this trial is that experienced health care providers can have a difference of medical judgment about the medical necessity and timing of a risky colostomy reversal surgery when the colostomy is functional and there is no medical complication that put the patient's health at risk. That difference of opinion is not an Eighth Amendment violation. The trial will also establish that Plaintiff's scattershot evidence relating to Corizon's supposed "cost cutting" motive has no relevance to Plaintiff's situation. Based on the evidence at trial, a reasonable jury properly instructed on the high bar set by Eighth Amendment law cannot possibly find an Eighth Amendment violation in this case.

## II.    NO REASONABLE JUROR WILL BE ABLE TO FIND THAT DR. PAPENDICK OR CORIZON VIOLATED PLAINTIFF'S EIGHTH AMENDMENT RIGHTS

### A.    DR. KEITH PAPENDICK

"[T]here is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." *Rhinehart v. Scutt*, 894 F.3d 721, 738–39 (6th Cir. 2018) (italics in original). Proving deliberate indifference under the Eighth Amendment therefore requires a two-prong inquiry: objective and subjective. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Henry v. Mich.*

---

reversal not an Eighth Amendment violation because "[a] medical difference of opinion is not actionable…").

*Dep't of Corr.*, 27 F. App'x 573, 575–76 (6th Cir. 2001). Plaintiff cannot establish either prong against Dr. Papendick in this case, who because of his role only considered Plaintiff's care on April 19, 2017, three weeks into his imprisonment. He did so exclusively based on the medical information he had "at this time."

    **1.    The Objective Component—There is No Evidence of a "Sufficiently Serious" Medical Need Requiring Colostomy Reversal.**

The objective component requires evidence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). For the medical need to be sufficiently serious, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted).

Here, Plaintiff did not have a "sufficiently serious" need to have a colostomy reversal on or about April 19, 2017, because (i) his colostomy was functional, (ii) he was not suffering from any medical complications that put his health at risk, (iii) Corizon provided him ongoing colostomy care and supplies, (iv) waiting to have a

3

colostomy reversal did not cause him any medical problems, and (v) a colostomy reversal surgery is associated with high morbidity and high mortality that, in a physician's medical judgment, must be weighed against the lack of medical complications with a functional colostomy at the time of the decision. Further, no physician mandated that Plaintiff have the surgery at that time. Dr. Papendick relied on information from Plaintiff's outside surgeon that a surgery then was not urgent or medically necessary. Dr. James McQuiston, who has decades of experience performing colostomy surgeries in Michigan, will testify that living with a functional colostomy for several years is not unusual, a reversal surgery was not medically necessary at that time, and providing Plaintiff with the care and supplies he needed plainly provided him a "civilized measure of life's necessities."

When, as here, "an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart*, 894 F.3d at 736 (6th Cir. 2018); *see also Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005). At a minimum, "[t]here must be medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain." *Rhinehart*, 894 F.3d at 737-38. "But mere failure to provide adequate medical care to a prisoner will not violate the Eighth Amendment." *Id.* at

4

737. "A doctor is not liable under the Eighth Amendment if he or she provides *reasonable* treatment, even if the outcome of the treatment is insufficient or even harmful." *Id.* at 738 (emphasis added). At a minimum, the plaintiff also must "place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment." *Id*. at 737.

Plaintiff cannot meet his burden to make these showings. As Dr. McQuiston will testify, Dr. Papendick reasonably approved Plaintiff for ongoing colostomy care and on-site follow-up, which helped ensure that he did not suffer from any serious medical complications with his colostomy. Plaintiff may have desired a different treatment, but it is undisputed that he did not suffer a detrimental medical effect from receiving this care and a difference of opinion amongst physicians is inadequate. As noted, the Sixth Circuit's opinion in *Dickens v. Withrow* is directly on point. Plaintiff cannot overcome that hurdle.

**2.    The Subjective Component—Dr. Papendick Did Not Have an Actionable State of Mind**

The subjective component requires evidence that a plaintiff's medical provider acted with a sufficiently culpable state of mind to inflict "unnecessary and wanton" pain. *Durham v. Nu'Man,* 97 F.3d 862, 869 (6th Cir. 1996); *Estelle*, 429 U.S. at 104–05. "The plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness." *Rhinehart*, 894 F.3d at 738; *Farmer*, 511 U.S. at 839-840 ("subjective recklessness as used in the criminal law"). There must

be a showing that the medical provider "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff cannot demonstrate that Dr. Papendick had the requisite state of mind as to his care because there is no evidence to support it. The evidence is undisputed that Dr. Papendick used his medical judgment, based on a litany of medical information, to approve Plaintiff for ongoing colostomy care "at this time." *See Colwell v. Corizon Healthcare Inc.,* No. 11-cv-15586, 2014 WL 6686764, at *43 (E.D. Mich. Nov. 26, 2014) (the Court's focus must be on whether, *at the time*…he acted with deliberate indifference…") (italics in original). The law is clear that even "mere negligence, or even gross negligence, will not suffice" to demonstrate the requisite of state of mind. *Wright v. Taylor*, 79 F. App'x. 829, 831 (6th Cir. 2003). "An allegation of questionable medical judgment states, at most, a claim for a medical malpractice, as opposed to a constitutional violation." *Owens v. O'Dea*, 149 F.3d 1184 (6th Cir. 1998); *Estelle,* 429 U.S. at 107 (poor exercise of medical judgment insufficient). Even a medical provider's "failure to alleviate a significant risk that he should have perceived but did not…cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Thus, if jury merely disagrees with Dr. Papendick's decision, that still falls miles short of a finding that he acted with criminal recklessness. *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) ("An examination of the record shows that the defendants provided Powell with medical treatment for his condition, even though he may not have been satisfied with the treatment that he received. . . Under these circumstances, Powell has alleged no more than a medical malpractice claim that is not cognizable under 42 U.S.C. § 1983."); *Titlow v. Correctional Med. Servs. Inc.*, 507 Fed. Appx. 579, 585 (6th Cir. 2012) (Committee's decision to deny surgical consult not deliberate indifference where an alternative treatment plan was proposed. Proposal of alternative plan showed lack of "deliberateness tantamount to an intent to punish."); *Bruce v. Correctional Med. Servs. Inc.*, No. 3:06-cv-33, 2012 WL 4372378 (E.D. Tenn. Sept. 24, 2012) (holding decision by doctor to delay surgery "traditionally fall[s] within the scope of a physician's medical judgment and [is], therefore not actionable…").

Importantly, testimony from Plaintiff's own physicians or experts cannot clear the required state of mind hurdle. A prisoner's reliance on testimony from physicians about what would have happened were they their private patient "at most raises a simple question of whether [his prison doctor] made the right medical judgment in treating him." *LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001). "A disagreement with a course of medical treatment does not rise to the level of a

federal constitutional claim under the Eighth Amendment." *Reinhart*, 894 F. 3d at 744 (*citing Alspaugh v. McConnel*, 643 F. 3d 162, 169 (6th Cir. 2011).  Indeed, a disagreement over "forms of treatment" are "a classic example of a matter for medical judgment" that "does **not** represent cruel and unusual punishment."  *Estelle*, 429 U.S. at 107 (emphasis added).

Accordingly, there is no constitutional violation *because* Dr. Papendick made a "medical judgment" and provided for ongoing care.  *Rhinehart*, 894 F.3d at 751; *Richmond v. Huq*, 885 F.3d 928, 941 (6th Cir. 2018) (holding that "it would be improper for this court to overturn [a doctor]'s medical judgment").  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976).  A treatment must be "so woefully inadequate as to amount to no treatment at all."  *Id*.; *Austin v. Corizon Health Care*, No. 24-10023, 2025 WL 1509364, at *1 (E.D. Mich. May 27, 2025) (granting summary dismissal); *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (granting summary judgment to prison doctors who did not prescribe inmate with treatment that a specialist had recommended because they prescribed an alternative treatment).  Plaintiff cannot come close to demonstrating "no treatment at all" for his colostomy.

8

Consistent with Eighth Amendment precedent, approving a prisoner to continue with "conservative treatment," rather than a risky surgery, does not amount to an Eighth Amendment violation absent evidence that the conservative treatment failed. *See Titlow,* 507 F. App'x at 585 (no liability for one physician who recommended "a specific alternative treatment plan" and that "conservative treating options should first be explored," but liability for another when complaints after four years "suggests that conservative treatment options failed"); *Colwell,* 2014 WL 6686764 (E.D. Mich. Nov. 26, 2014) (physician "not deliberately indifferent to [plaintiff's] health by requiring him to continue with conservative treatment" rather than ordering surgery consult). Here, it is undisputed that Plaintiff's continued colostomy care did not "fail"—Plaintiff's witnesses concede that he did not suffer any medical problems in prison or any ongoing medical problems post-release.

"The Constitution gives inmates a right to be free from deliberate indifference to their medical needs, but not a right to receive any particular treatment…" *Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *5 (6th Cir. Nov. 8, 2024). "Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim." *Austin,* 2025 WL 1509364, at *3 (E.D. Mich. May 27, 2025). Thus, Plaintiff's own "disagreement…with treatment he has received does not rise to the level of an Eighth Amendment violation." *Dodson v. Wilkinson*, 304 F. App'x

9

434, 440 (6th Cir. 2008) (citing *Estelle*, 429 U.S. at 107). Nor does "a desire for additional or different treatment...suffice to support an Eighth Amendment claim." *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017).

No reasonable jury, properly instructed on the high bar of an Eighth Amendment claim, can possibly find against Dr. Papendick based on the evidence.

## B.    CORIZON HEALTH, INC.

Corizon routinely approved colostomy reversal surgeries in Michigan (and outside Michigan) based on medical necessity and without regard to their cost. Plaintiff's belief that Corizon did not approve his surgery because of is cost is <u>wrong</u> and ignores the many non-Corizon reasons that he did not have the surgery in prison.

The Sixth Circuit applies the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas v. Coble,* 55 F. App'x 748, 748–49 (6th Cir. 2003). Under § 1983, municipal entities are not liable for the acts of their employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, Corizon "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.,* 419 F. App' x 622, 627 (6th Cir. 2011). However, even "before reaching the issue of whether the municipality was deliberately indifferent," the "plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality" under the standards set forth above. *Fox v. DeSoto,* 489 F.3d 227, 238

10

(6th Cir. 2007). Because Plaintiff cannot demonstrate that Dr. Papendick or any other Corizon provider violated his Constitutional rights, Plaintiff cannot establish a claim against Corizon.

Plaintiff also must show that the "violation occurred because of [an official]…policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (quoting *Monell*, 436 U.S. at 694). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). But a private contractor is only liable under a *Monell* claim "for a policy or custom *of that private contractor*, rather than a policy or custom of" a governmental entity such as the MDOC. *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (emphasis in original). Liability must also "rest on a direct causal connection between the policies or customs…and the constitutional injury to the plaintiff"); *Gray v. City of Detroit,* 399 F. 3d 612, 617 (6th Cir. 2005); *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (policy must be the "moving force" behind the violation); *Kensu v. Corizon, Inc. et al*., No. 22-1493, 2023 WL 1800276 (6th Cir. Feb. 7, 2023) (no meritorious claim when plaintiff "failed to

11

connect the dots between one of these alleged policies and the medical care he claims to have been denied"). Thus, evidence that the MDOC and MDOC policies, or the Plaintiff's own inaction, were the moving force as to why Plaintiff did not have a reversal surgery in prison is directly relevant to defeat Plaintiff's claims.

"[W]here no formal [company] policy exists, the critical question is whether there is a particular custom or practice that 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *McClendon v. City of Detroit,* 255 Fed. Appx. 980, 982 (6th Cir. 2007). As this Court just recognized in its motion *in limine* rulings, this question requires that Plaintiff demonstrate "formal rules or understandings—often but not always committed to writing—that [were] intended to, and [did], establish fixed plans of action to be followed under similar circumstances consistently and over time." *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 880 (6th Cir. 2020). Plaintiff cannot possibly make such a demonstration.

Defendants will conclusively demonstrate that Plaintiff's theory that Corizon had a "fixed plan" to deny colostomy reversals in Michigan based on a motivation to save money is wrong, that cost had nothing to do with medical decisions about the Plaintiff and his care, and that Plaintiff's "cost cutting" theory makes no sense under the circumstances of this case. None of Plaintiff's out-of-State evidence, or evidence about other medical issues, will have any connection to Plaintiff's

12

colostomy care decisions.  None of Plaintiff's in-State evidence will demonstrate that "cost cutting" was a motivation behind decisions made about Plaintiff.

It must be stressed that a healthcare company's *general* motivation to consider the cost of the care it provides fails to demonstrate an Eighth Amendment violation. As this District recognized in granting summary judgment to Corizon, "the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Colwell*, 2014 WL 668764, at *27 (E.D. Mich., Aug. 11, 2014) (*quoting Reynolds v. Wagner*, 128 F.3d 166, 175 (3rd Cir. 1997).  As such, "the naked assertion that Defendants considered cost…does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of cost considerations." *Winslow v. Prison Health Services*, 406 Fed. Appx. 671, 674-75 (3rd Cir. 2011).  As in *Colwell*, there is no evidence here that Corizon or Dr. Papendick made a decision about plaintiff, or about colostomy reversal surgeries in general, based ***"solely or primarily by profitability."***  *Colwell*, 2014 WL 668764, at *27 (E.D. Mich., Aug. 11, 2014) (emphasis added); *see also Hall v. Pandya*, No. 14-cv-12022, 2015 WL 5212016, at *3 (E.D. Mich. Sept. 4, 2015) (granting summary judgment to Corizon, rejecting adequacy of "vague factual allegation" that an unidentified nurse told him that Corizon denied him medical treatment for financial purposes).

13

The procedural history of this case is instructive in how this Court should view the fatal gap in Plaintiff's "cost cutting" theory at trial. Magistrate Judge Morris originally **granted Corizon and Dr. Papendick's motion to dismiss** because the Court found, correctly, that "the decision as the timeframe in which to perform a reversal of a colostomy is a medical decision that this court is reluctant "to second guess[.]" *Jackson v. Corizon*, No. 19-cv-13382, 2020 WL 4577419 (E.D. Mich. Mar. 20, 2020). Judge Berg only overruled that part of the Magistrate's Report and Recommendation because of the *allegation* that Corizon denied Plaintiff's surgery not for medical reasons but "in order to save money." *Jackson v. Corizon*, No. 19-cv-13382, 2020 WL 3529542 (E.D. Mich. Jun. 30, 2020).

At the summary judgment stage, this Court recognized that the case surviving against Corizon was still a "close call." *Jackson v. Corizon Health, Inc.,* No. 19-cv-13382, 2021 WL 8013977, at *9 (E.D. Mich. Dec. 16, 2021). At the time, the Court allowed the case against Corizon to proceed because the Court believed there was a question of fact "as to whether Corizon had a policy or custom of denying reversal of colostomies without engaging in any individualized assessment of each prisoner's condition **for the purpose of cutting costs** as further evidenced by Corizon's achieved goal of reducing spending." *Id*. (emphasis added)

Thus, Plaintiff's cost-cutting theory is the only reason this case survived to trial. But until trial, the Court has not been presented with evidence that explains

14

that Plaintiff's alleged general cost cutting motive had no relationship to Plaintiff or his specific desire for a colostomy reversal surgery. Without evidence that profitability was "solely or primarily" the motive *as to Plaintiff*, this case is what Magistrate Judge Morris found it was—at best a dispute over medical judgment that, as the Sixth Circuit held in *Dickens*, is not an Eighth Amendment violation.

## III.     CONCLUSION

WHEREFORE, Defendants expect to prevail at trial as a matter of law because no reasonable jury properly instructed on the high bar set by the Eighth Amendment law will be able to find for the Plaintiff against Corizon or Dr. Papendick.

Dated: March 20, 2026

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:     /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road., Suite 1100
Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)

15

123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

16

## CERTIFICATE OF SERVICE

I certify that, on March 20, 2026 a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Jonathan R. Marko** (P72450
**Michael L. Jones** (P85223)
**Allie J. Farris (P88654)**
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com
allie@markolaw.com

Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com
*Attorneys for Defendants CHS TX, Inc. d/b/a*
*YesCare and Keith Papendick, M.D.*

17