**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,

v.

CHS TX, Inc., et al.,

        Defendants.

Case No. 2:19-cv-13382

Hon. Gershwin A. Drain

---

**JOINT FINAL PRETRIAL ORDER**

**(1) Jurisdiction:**

Subject-matter jurisdiction over this action is proper in this court under 28 U.S.C. § 1331. This matter involves a federal question of law under the Eighth Amendment to the U.S. Constitution.

**(2) Plaintiff's Statement of Claims:**

Plaintiff Kohchise Jackson asserts that he entered the custody of the Michigan Department of Corrections ("MDOC") in March of 2017 with a temporary colostomy that his surgeon, Dr. Erina Kansakar, had intended to reverse the previous month. At all relevant times, Corizon Health, Inc. was the contractor responsible for providing health care services to MDOC prisoners. Per Corizon's contract with the MDOC, Corizon was partly responsible for the cost of hospitalizations and other medical services that were provided to prisoners off of prison grounds, such that when Corizon spent less on off-

1

site services, its profit margin increased. Corizon responded rationally to these economic incentives by massive cost-cutting in its areas of financial responsibility, including off- site care.

Corizon achieved these cost reductions through its utilization management program. Corizon's utilization management program came between prisoner-patients and their doctors, preventing patients from receiving the off-site care that their doctors had recommended. Primary care within the MDOC was provided by medical professionals who worked "on-site" in the prisons. But when these primary-care providers to referred their prisoner-patients to a specialist, the referrals were screened, and frequently blocked, by Corizon's Utilization Management Medical Directors ("UMMDs"). Defendant Dr. Keith Papendick was a UMMD who blocked a referral made by Plaintiff's primary-care physician, Dr. Mahir Alsalman, for colostomy reversal surgery. As a result, Plaintiff was forced to live for years with his intestine protruding out of his abdomen and discharging his waste into a plastic bag attached to his person. There was no legitimate medical reason to deny Plaintiff access to this surgery.

For litigation purposes, UMMDs and primary-care providers were instructed never to refer to a denial of care as a "denial." Instead, they used the euphemism "Alternative Treatment Plan," or "ATP." Corizon measured the performance of its UMMDs and prison-based primary-care providers, in part, by their ATP rates.

2

Primary- care providers were expected to have a low personal ATP rate, which they were encouraged to achieve by simply not requesting the types of specialty care that a UMMD was likely to deny, and encouraged to achieve by simply not requesting the types of specialty care that a UMMD was likely to deny, and only making specialist referrals sparingly and in the most dire medical situations. UMMDs were expected to have a relatively high ATP rate, and to prevent as much specialty care as possible. Corizon and its UMMDs knew that these policies would restrict patients' access to effective medical care and result in more litigation. But Corizon had developed a nationwide legal strategy to cheaply and efficiently defend against prisoner civil rights litigation, and from Corizon's perspective, to the extent that providing medical care was more expensive than defending against the additional lawsuits that would result from not denying the medical care, denying care was worth it.

Over the course of a few days in late April and early May of 2022, Corizon changed its state of incorporation from Delaware to Texas, merged with three of its subsidiaries, and then immediately underwent a "divisional merger" transaction with itself. Corizon divided itself into two companies: CHS TX, Inc. (the "NewCo"), and Corizon Health, Inc. (the "RemainCo") which subsequently changed its name to Tehum Care Services, Inc. The purpose of this transaction was to separate the assets of the company from its unsecured liabilities. These liabilities

3

included debts to vendors and specialty health care providers, tort liabilities to prisoners like the Plaintiff, and even defense and indemnity obligations for its own former employees. The divisional merger assigned all employees, all active contracts, and the vast majority of Corizon's assets to CHS TX, Inc., while responsibility for all of the unsecured debts and liabilities were left behind in the entity that became Tehum Care Services, Inc. CHS TX, Inc. is liable to Plaintiff for Corizon's pre-divisional-merger conduct under the doctrine of successor liability.

**(3) Statement of Defendants' Defenses:**

This trial is about whether the Eighth Amendment to the U.S. Constitution entitled Plaintiff Kohchise Jackson to have a colostomy reversal surgery approved by Dr. Keith Papendick and/or Corizon Health Inc. in April 2017 while Plaintiff was incarcerated in the Michigan Department of Corrections ("MDOC").

**CORIZON HEALTH, INC.:** Plaintiff cannot meet his burden to prove that Corizon violated Plaintiff's Eighth Amendment rights because (1) Corizon did not engage in an illegal policy, practice, or custom that was deliberately indifferent to Plaintiff's serious medical need, and (2) Corizon was not the final decisionmaker. The MDOC was the final decisionmaker.

First, the evidence will conclusively establish that Corizon had no profit or cost-saving motive to deny a colostomy reversal surgery in the MDOC and did not make these decisions in the MDOC based on profit or cost-saving considerations.

4

Plaintiff wants this case to be about anything other than the MDOC and the actual reasons for Corizon's medical decisions relating to requests for colostomy reversal surgery in the MDOC. Evidence outside of Michigan, and evidence unrelated to colostomy reversal surgery requests in the MDOC, are a distraction that has no bearing on Corizon's relevant practices in the MDOC or on Dr. Papendick's medical decision. Plaintiff's efforts to smear Corizon based on business transactions years after Plaintiff left the MDOC are also irrelevant to this case and to any medical decisions

Second, Plaintiff cannot establish any pattern of illegal activity in the MDOC or elsewhere because Plaintiff has no medical expert or treating physician who will testify that any other MDOC inmate, or any other inmate under Corizon's care, was denied a medically necessary colostomy reversal, much less based on an illegal policy, practice, or custom.

Third, Corizon was not indifferent to Plaintiff's serious medical needs. Corizon provided reasonable ongoing care for Plaintiff's colostomy, at Corizon's cost, for the duration of his incarceration. The day after Plaintiff entered prison on March 23, 2017, Corizon's NP, Ronald Drinkert, saw Plaintiff and performed a comprehensive intake history and physical. He issued detailed orders for medical equipment and supplies for his colostomy and counseled him on how to use the supplies and care for his colostomy. Nurse Drinket actually cared enough about

5

Plaintiff's concerns to call the office of Dr. Erina Kansakar, who created Plaintiff's colostomy. He was advised by Dr. Kansakar's office that there were no urgent medical issues, the colostomy was functional, and there was no medical necessity for a colostomy reversal. He reported this call twice in Plaintiff's chart. NP Drinkert had been in nursing for 20 years at that time. He had no incentive other than to accurately report what he saw and heard. He was not indifferent.

On April 18, 2019, following his transfer within the MDOC, Plaintiff was examined again by a second Corizon physician, Dr. Mahir Alsalman, who found that Plaintiff had a functional colostomy with no issues. Dr. Alsalman was not indifferent. He acceded to Plaintiff's wishes by submitting a "407" request for a general surgery consult.

Dr. Papendick was not indifferent. He considered the medical information in front of him, including the report from Dr. Kansakar's office, as well as UpToDate, an independent industry standard source for medical information, that helps clinicians determine medical necessity. He did not consider cost, nor did he know of the costs related to his decision. Corizon will present three Michigan physician experts, (1) a general surgeon with extensive experience performing colostomy surgeries, (2) a gastroenterologist, and (3) a urologist, who will testify that Plaintiff's colostomy reversal surgery was not medically necessary, and that waiting did not cause him any problems. These experts will also confirm Dr. Papendick's informed

6

understanding that colostomy reversal surgery can be a very risky surgery. These are all reasonable opinions from well-credentialed, Board Certified physicians experts. There is no Eighth Amendment violation just because another doctor might have a different opinion.

Fourth, Corizon cannot be liable under a *Monell* theory because Corizon and Dr. Papendick were not the final decisionmaker. The MDOC was the final decisionmarker. Plaintiff brought his desire for a colostomy reversal surgery directly to the MDOC. The MDOC denied his requests in May 2017, June 2017, and October 2017 based on the MDOC's own policy, and not because of any Corizon policy, and because MDOC healthcare providers also found that a reversal surgery was not medically necessary. The MDOC's imposition of its own policy on June 8, 2017, means both that Corizon and Dr. Papendick cannot be liable, and it is also a superseding event that breaks the causal chain with their decisions.

**DR. KEITH PAPENDICK**: Plaintiff cannot meet his burden to prove that Dr. Papendick violated Plaintiff's Eighth Amendment rights because Dr. Papendick did not display a deliberate indifference to a serious medical need. As discussed above, Dr. Papendick made a reasonable medical decision on April 19, 2017, based on the medical evidence before him, that a colostomy reversal surgery was not medically necessary "at that time," that reversal surgery involved serious and unnecessary risks, and that providing continuing care for the colostomy was

7

medically appropriate and reasonable.  Cost was not a factor in his decision.  The medical evidence Dr. Papendick reviewed, included three examinations from two different Corizon health care providers, Corizon-ordered abdominal imaging, consultation with UpToDate medical literature, and the contemporaneous reports of NP Drinkert's phone call with Dr. Kansakar' s office.

April 19, 2017 was the only date Dr. Papendick made any decision, or was asked to make any decision, related to Plaintiff's healthcare.  Nothing that may have happened relating to Plaintiff after April 19, 2017, has any bearing on Dr. Papendick's decision. Plaintiff cannot establish an Eighth Amendment violation when Dr. Papendick made a medical decision that resulted in ongoing care that did not cause Plaintiff any physical injury or harm.

The jury should return a verdict in favor of Corizon and in favor of Dr. Papendick.

**(4) Stipulation of Facts:**

The parties agree that the following facts are established, and no proofs need be offered at trial:

1.  Plaintiff Kohchise Jackson was in the Michigan Department of Corrections from March 23, 2017, until May 16, 2019.

2.  Defendant Dr. Keith Papendick, M.D. was employed as a Utilization Management Medical Director responsible for reviewing primary-care

8

providers' requests for off-site medical care for patients in the Michigan Department of Corrections throughout the time period when Plaintiff was in the MDOC.

3. In December of 2016, while Plaintiff was a pre-trial detainee in the St. Clair County Jail, Plaintiff underwent emergency surgery to address a colovesical fistula. The surgery involved creation of a colostomy.

4. Plaintiff entered the MDOC with a colostomy. In April of 2017, Dr. Mahir Alsalam submitted a request to refer Plaintiff for a surgical consult for colostomy reversal.

5. Plaintiff received a colostomy reversal surgery at Detroit Medical Center on June 19, 2019.

## (5) Issues of Fact to be Litigated:

1. Is Dr. Papendick liable to Plaintiff under the Eighth Amendment for deliberate indifference to Plaintiff's serious medical needs?

2. Is Defendant Corizon/CHS TC liable to Plaintiff under a *Monell* theory?

3. The amount of compensatory damages, if liability is proven.

4. The potential liability for and amount of punitive damages, if any.

**(6) Issues of law to be litigated:**

1. Any outstanding pretrial matters concerning issues of law, including jury instructions and verdict forms.

2. Any outstanding motions in limine.

3. Any evidentiary objections made at trial.

4. Any motions made during trial.

5. Any post-trial motions concerning judgment notwithstanding the verdict, judgment as a matter of law, motions for attorneys fees under § 1988 and other post-trial motions, should they arise.

**(7)   Evidentiary problems likely to arise at trial:**

Plaintiff has filed the following Motions in Limine:

1. Motion in Limine To Bar Evidence of Plaintiff's Prior Criminal History where such evidence constitutes an extraneous matter potentially bearing on Plaintiff's character and is irrelevant to this case.

2. Motion in Limine To Preclude Evidence of Plaintiff's Receipt of Food Stamps, as such evidence is irrelevant, can serve as an impermissible manner to impugn Plaintiff's character, and is evidence of a collateral source, which is barred under Michigan law from presenting to jurors.

3. Motion in Limine To Preclude Evidence of or Reference to Plaintiff Not

Having a Driver's License or His License Being Suspended, as such evidence bears no relevance to this case whatsoever.

4. Motion in Limine To Preclude Evidence of or Reference to Plaintiff's Use of Alcohol and/or Drugs, as such evidence of the fact Plaintiff used these substances in the past, and not on any date relevant to this case, is irrelevant and can only serve as a highly prejudicial means to attack Plaintiff's character.

5. Motion in Limine To Exclude Any Evidence or Circumstances Related to Being Shot in 2020 or Any Past Assaults, which is irrelevant to this case, highly prejudicial, and could only serve to inflame the jury's passions.

6. Motion in Limine To Preclude Evidence of or Reference to Plaintiff Not Having Custody of His Child, which is irrelevant in this matter and could only serve to prejudicially smear Plaintiff as a bad or irresponsible father to the jury.

7. Motion in Limine To Preclude Evidence of or Reference to Plaintiff Having a Sexually Transmitted Disease, which is irrelevant to this matter and will only serve to distract jurors from the real issues that are critical to this case and to inflame the jury's passions.

8. Motion in Limine To Preclude Evidence of or Reference to Plaintiff Being Homeless, as it is irrelevant that Plaintiff used to be homeless in the past and such evidence could only be presented by Defendants to present Plaintiff as

an unsympathetic or "money-grabbing" Plaintiff, rather than focus the case on its merits.

9. Motion in Limine To Preclude Evidence of or Reference to Plaintiff's Emotional Outburst at the Hospital, as the nurse's statement as to Plaintiff's alleged outburst is inadmissible hearsay and is also irrelevant to this constitutional case.

10. Motion in Limine to Preclude Defendants From Apportioning Fault on Any Non- Party, to prevent Defendants from impermissibly attempting to "shift the blame" for the denial of Plaintiff's colostomy reversal to any other party, including the Michigan Department of Corrections, where liability under § 1983 is joint and several, and private parties are liable under § 1983 when the State has compelled the private party to take action that violates a plaintiff's civil rights. Further, the MDOC responses to Plaintiff's prison grievances and the response to his letter to the Legislative Corrections Ombudsman are inadmissible hearsay.

11. Motion in Limine Regarding the Law of the Case, as Defendants cannot be permitted to argue that it is not subject to successor liability because it is not a successor to Corizon, or that Plaintiff's colostomy did not constitute a serious medical need, when the Court has already decided these issues against CHS TX in prior orders.

12

12. Motion in Limine To Preclude Evidence of or Reference to Dr. Silverman's or Dr. Watson's Irrelevant Past Lawsuits because such evidence is utterly irrelevant to the current case before this Court and the jurors.

13. Motion in Limine To Preclude Evidence of or Reference to Other Cases Dr. Silverman Worked On and Has Been Precluded From Testifying In, as such evidence is irrelevant given the extreme differences between cases and the stringent standards for expert testimony which allow for experts to testify in some cases but not other otherwise similar cases.

14. Motion in Limine To Allow For Limited Attorney Conducted Voir Dire, as the parties to this matter best know the case and can best question jurors to probe for relevant biases.

15. Motion in Limine to Preclude Defendants From Eliciting Expert Testimony From Plaintiff's Treating Health Care Providers, where Defendants did not provide summaries of the facts and opinions to which they are expected to testify at least ninety days before the trial date, per Fed. R. Civ. P. 26(a)(2)(D)(i).

16. Motion in Limine to Preclude Defendants From Eliciting Opinion Testimony From Persons Who Did Not Treat Plaintiff, but merely responded to his grievances concerning the denial of a colostomy reversal, and for whom Defendants also did not provide summaries of the facts and opinions to which

they are expected to testify at least ninety days before the trial date, per Fed. R. Civ. P. 26(a)(2)(D)(i).

17.    Motion in Limine to Preclude Ronald Drinkert, NP, From Testifying to Hearsay about what an unidentified person from Dr. Kansakar's office allegedly told him about Plaintiff's colostomy.

18.    Motion in Limine to allow evidence of State of Michigan Utilization Management Reporting Samples and April 2017 U/M Stats Report.

19.    Motion in Limine to allow evidence of bid materials submitted by Corizon in response to State Department of Corrections' RFPs.

Defendants' Have Filed the Following Motions in Limine:

1.    Motion in Limine to Preclude Plaintiff's Expert Dr. Silverman under Fed. R. Evid. 702 because his opinions about purported broad standards for colostomy care are ipse dixit with no foundation in authority or identified experience.

2.    Motion in Limine to Exclude Evidence From Outside Michigan, because all evidence Plaintiff wished to introduce from outside of Michigan is irrelevant, lacks a proper evidentiary foundation, and unduly prejudicial.

3.    Motion in Limine to Exclude Non-Colostomy Care, because all evidence Plaintiff wishes to introduce related to non-colostomy patients or care is

irrelevant, lacks a proper evidentiary foundation, is unsupported by expert medical testimony, and unduly prejudicial.

4. Motion in Limine to Exclude Dr. Watson and Christin Rettler, P.A. From Testifying, because these individuals have no connection to the MDOC, their brief experiences working in an Arizona prison and Oregon jail are not relevant, do not relate to colostomy care, no expert contends their experiences are representatives, their tales are are not supported by a proper evidentiary foundation, and their testimony would be unduly prejudicial.

5. Motion in Limine to Exclude Sonya Fulks From Testifying, because her experience as an Oncology Manager caring for cancer patients has no relevance to Plaintiff's colostomy care, she is not qualified to offer expert testimony about colostomy care, her testimony is not supported by a proper evidentiary foundations, and it would be unduly prejudicial.

6. Motion in Limine to Exclude Larry Cowan and Keith Swift From Testifying, because Plaintiff did not disclose a medical expert to opine that these individuals did not receive a medically necessary colostomy reversal, their own lay opinions are not admissible, their situations cannot establish a pattern without expert medical evidence, and their testimony would be unduly prejudicial.

7.   Motion in Limine to Limit Potential Damages Period to June 8, 2017, because on that date the MDOC denied Plaintiff's colostomy reversal surgery expressly based on the MDOC's own policy and findings, the MDOC was the final decisionmaker, and the MDOC's decision was a superseding cause that broke the causal chain from Dr. Papendick's decision on April 19, 2017.

8.   Motion in Limine to Exclude Divisional Merger/Bankruptcy, because these events years after Plaintiff was released from the MDOC are not relevant to his Eighth Amendment claims, the Court already found that an evidentiary hearing on successor liability was not necessary, and this evidence would be unduly prejudicial.

9.   Motion in Limine to Exclude Numerical Value of Constitutional Rights, seeks to preclude argument that constitutional rights have more monetary value so damages should be higher.

10.   Motion in Limine to Bifurcate Punitive / Exclude Financial Condition, seeks to exclude evidence only relating to potential punitive damages from the liability portion of trial, and to exclude evidence of Defendants' respective financial condition.

11.   Motion to Designate Dr. Bomber's testimony, asks the Court to admit his deposition testimony as designated because he is not available to testify at trial.

16

**(8) Witnesses:**

A.    The Plaintiff will call the following witnesses in person with the estimated designated time for direct examination (the time listed is Plaintiff's time):

    1.    Dr. Ralph Silverman, M.D. – 1.5 hours;

    2.    Dr. Jan Watson, M.D. – 45 minutes;

    3.    Kochise Jackson – 1 hour;

    4.    Sonya Fulks, R.N. – 1 hour;

    5.    Cristin Rettler, P.A. – 1 hour;

    6.    Larry Cowan (via Zoom) – 30 minutes;

    7.    Keith Swift – 45 minutes;

    8.    Dr. Keith Papendick, M.D. – 2 hours;

    9.    Brandon Chapman – 30 minutes;

    10.    Isaac Lefkowitz – 1.5 hours.

B.    The Plaintiff will call the following witnesses by playing portions of their videotaped depositions to the jury:

    1.    Dr. Erina Kansakar, M.D. – 45 minutes;

    2.    Dr. John Webber, M.D. – 45 minutes;

3. Dr. Jeffrey Bomber, M.D. – 1 hour.

C. The Plaintiff may call the following witnesses in person with the estimated designated time for direct examination:

1. Ronald "Mason" Gill – 30 minutes;

2. Subrina Aiken, R.N. – 15 minutes;

3. Magen M. Oaks, R.N. – 15 minutes;

4. Christine Ausmus, R.N. – 15 minutes;

5. Russel Harbaugh, R.N. – 15 minutes;

6. Richard D. Russel – 30 minutes;

7. Dr. William C. Borgerding, D.O. – 30 minutes;

D. The Defendants will call the following witnesses in person with the estimated designated time for direct examination:

1. Keith Papendick, M.D. – 1.5 hours;

2. Ronald E. Drinkert, NP – 45 minutes;

3. Dr. Patricia Schmidt – 1.5 hours;

4. Dr. James McQuiston – 1.5 hours;

5. Dr. Michael Duffy – 45 minutes;

6. Dr. Syed Jafri – 45 minutes.

E.    Defendants will call the following witnesses by playing portions of their videotaped depositions to the jury:

1.    Dr. Jeffrey Bomber, M.D.'s *de bene esse* deposition – 1 hour;

2.    Dr. Erina Kansakar, M.D.'s deposition – 1 hour.

F.    Defendants may call the following witnesses in person with the estimated designated time for direct examination:

1.    Kochise Jackson – 30 minutes;

2.    Subrina Siken, RN – 45 minutes;

3.    Dr. Mahir Alsalman – 45 minutes;

4.    Keith Barber – 30 minutes;

5.    Richard Harbaugh – 30 minutes;

6.    Debrah Marine – 30 minutes;

7.    Magen Oaks – 30 minutes;

8.    Richard Russell – 30 minutes;

9.    Whitney Thompkins – 30 minutes;

10.    Mary Koutz-Mikek – 30 minutes;

11.    Laura MacKimmie – 30 minutes;

12.    Christine Ausmus – 30 minutes.

Defendants reserve the right to recall any witness who Plaintiff calls live on direct, or any rebuttal witness.

**(9) Exhibits:**

Subject to pretrial rulings, the parties may offer the following exhibits:

| Exhibit Number | Description | Objected to | Received |
|---|---|---|---|
| 1 | Corizon-MDOC service contract, 2016-2021 | | Admitted by stipulation |
| 2 | Plaintiff's Prison Health Record | | Admitted by stipulation |
| 3 | Videotaped deposition of Dr. Keith Papendick, taken in this case | | Admitted by stipulation |
| 4 | Deposition of Dr. Keith Papendick in *Spiller v. Stieve*, 18-cv-00692 (W.D. Mich) | | Admitted by stipulation |
| 5 | Deposition of Dr. Keith Papendick in *Lashuay v. DeLine*, 17-cv-13581 (E.D. Mich.) | | Admitted by stipulation |
| 6 | Deposition of Dr. Keith Papendick in *Minley v. Pierce*, 19-cv-00153 (W.D. Mich.) | | Admitted by stipulation |
| 7 | Statement of Work Contract Activities submitted with Corizon's 2020 bid the renewed MDOC health care contract | | Admitted by stipulation |
| 8 | U/M Stats report submitted by Corizon to | Objection waived as to paragraph, objection resolved | Admitted by stipulation as to paragraph on pg. 21 |

| | | | |
|---|---|---|---|
| | Michigan DOC, April, 2017, w/ certification from records custodian | by MIL Ruling as to graphs on pgs. 11 and 12 | and graphs on pgs. 11 and 12 |
| 9 | 2017 Corizon Utilization Management manual | | Admitted by stipulation |
| 10 | Letter from Dr. Kansakar to St. Clair County Jail re: treatment plan for Plaintiff, Jan. 24, 2017 | | Admitted by stipulation |
| 11 | St. Clair County Jail institutional records for Kohchise Jackson | | Admitted by stipulation |
| 12 | DMC medical records for Kohchise Jackson | | Admitted by stipulation |
| 13 | Medicaid billing records relevant to Kohchise Jackson's reversal surgery | | Admitted by stipulation |
| 14 | Slides from presentation to Michigan house appropriations subcommittee, Mar. 3, 2021 | | Admitted per MIL Rulings |
| 15 | Materials submitted by Corizon with its 2021 bid for the Missouri DOC healthcare contract | | Admitted per MIL Rulings |
| 16 | Materials submitted by Corizon with its 2013 bid for the | | Admitted per MIL Rulings |

21

| | | | |
|---|---|---|---|
| | Kansas DOC healthcare contract | | |
| 17 | Dr. Erina Kansakar's office note re: Kohchise Jackson treatment plan, 12-27-2016 | | Admitted by stipulation |
| 18 | Defendants' responses to Plaintiff's Second Requests to Admit, Third Interrogatories and Fourth Requests for Production of Documents | | Admitted by stipulation |
| 19 | Transcript of the Deposition of Dr. Jeffrey Bomber, taken in this case | | Admitted by stipulation |
| 20 | Intentionally Left Blank | | |
| 21 | Transcript of 30(b)(6) deposition of Dr. Jeffrey Bomber, as Corizon corporate rep, taken in Estate of Franklin v. Heyns, et. al., 16-cv-13587 (E.D. Mich.) | | Admitted by stipulation |
| 22 | Intentionally Left Blank | | |
| 23 | Letter from DTMB Chief Procurement Officer to Corizon, May 30, 2019 | | Admitted by stipulation |
| 24 | Intentionally Left Blank | | |

22

| 25 | Michigan Department of Corrections' response to FOIA No. 20-3657, August 27, 2021 | | Admitted by stipulation |
|---|---|---|---|
| 26 | Dr. Mahir Alsalman's 04-18-2017 referral for a general surgery consult for colostomy reversal for Kohchise Jackson | | Admitted by stipulation |
| 27 | Dr. Papendick's 04-19-2017 ATP of Dr. Alsalman's general surgery referral for Kohchise Jackson | | Admitted by stipulation |
| 28 | Photographs of Larry Cowan's stoma | Fed. R. Evid. 401, 402, 403, 901, MIL to Exclude Cowan and Swift | |
| 29 | Photographs of Keith Swift's stoma | Fed. R. Evid. 401, 402, 403, 901, MIL to Exclude Cowan and Swift | |
| 30 | Corizon Health Site Staff Orientation slideshow | Fed. R. Evid. 401, 402, 403, 802 | |
| 31 | MDHHS Medicaid Provider Manual | | Admitted per MIL Rulings |
| 32 | 2017 Vendor Contracts Report to the Michigan Legislature | | Admitted per MIL Rulings |
| 33 | Intentionally Left Blank | | |
| 34 | Intentionally Left | | |

| | | | |
|---|---|---|---|
| | Blank | | |
| 35 | Corizon-produced resume for Dr. Keith Papendick | | Admitted by stipulation |
| 36 | Pictures of Kohchise Jackson and his family | | Admitted by stipulation |
| 37 | CV of Dr. Ralph Silverman | | Admitted by stipulation |
| 38 | CV of Cristin Rettler, PA | | Admitted per Court's 3/18/26 ruling allowing Rettler's testimony |
| 39 | CV of Sonya Fulks, RN | | Admitted per MIL Rulings |
| 40 | CV of Dr. Jan Watson | | Admitted per MIL Rulings |
| 41 | Papendick emails re: hernia repair, Nov. 29, 2016 | Fed. R. Evid. 401, 402, 403, MIL to exclude evidence of Non-Colostomy Care | |
| 42 | Papendick emails re: prosthesis, Nov. 2, 2016 | Fed. R. Evid. 401, 402, 403, MIL to exclude evidence of Non-Colostomy Care | |
| 43 | Papendick emails re: not paying surgeon for repairing hernia and removing mass, Nov. 28, 2016 | Fed. R. Evid. 401, 402, 403, MIL to exclude evidence of Non-Colostomy Care | |
| 44 | Intentionally Left Blank | | |
| 45 | Intentionally Left Blank | | |
| 46 | Intentionally Left Blank | | |

| 47 | Intentionally Left Blank | | |
|---|---|---|---|
| 48 | Intentionally Left Blank | | |
| 49 | Intentionally Left Blank | | |
| 50 | Intentionally Left Blank | | |
| 51 | Intentionally Left Blank | | |
| 52 | Affidavit of Jeffrey Sholey, Jan. 20, 2023 | Fed. R. Evid. 401, 402, 403, MIL to exclude Divisional Merger/Bankruptcy | |
| 53 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 54 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 55 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 56 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's |

| | | | |
|---|---|---|---|
| | | | testimony for any purposes other than impeachment |
| 57 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 58 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 59 | Intentionally Left Blank | | Objection resolved and Plaintiff agrees not to admit Isaac Lefkowitz's testimony for any purposes other than impeachment |
| 60 | Corizon performance reviews for Dr. Keith Papendick | | Admitted by stipulation |
| 61 | Corizon Technical Proposal for Tennessee DOC RFP #32901-31158 | | Admitted per MIL Rulings |
| 62 | Corizon bid materials for Delaware Department of Corrections RFP DOC20026-HEALTHCARE \| | | Admitted per MIL Rulings |

26

| | | | |
|---|---|---|---|
| | DECEMBER 23, 2019 2:00 P.M. | | |
| 63 | Photograph of Kohchise Jackson's stoma | | Admitted by stipulation |
| 64 | Corizon's Utilization Management Reporting Samples from MDOC RFP NO. 200000002287 | | Admitted per MIL Rulings |
| 65 | Resume of Dr. Patricia Schmidt | | Admitted by stipulation |
| 66 | Physician Agreement between Corizon Health, Inc., Quality Correctional Care of Michigan, P.C., and Patricia Schmidt, D.O., commencing July 19, 2019 | | **Plaintiff agrees not to use this exhibit if parties submit joint stipulation that QCCM employees are agents of CHS TX/Corizon |
| 67 | Irrevocable Stock Power between Quality Correctional Care of Michigan, P.C. and Patricia Schmidt, D.O., August 27, 2019 | | **Plaintiff agrees not to use this exhibit if parties submit joint stipulation that QCCM employees are agents of CHS TX/Corizon |
| 68 | Power of Attorney between Quality Correctional Care of Michigan, P.C. and Corizon Health, Inc., August 27, 2019 | | **Plaintiff agrees not to use this exhibit if parties submit joint stipulation that QCCM employees are agents of CHS TX/Corizon |

| 69 | Corizon bid materials submitted in response to Missouri DOC RFP NO.: B3Z14039, issued September 16, 2013 | | Admitted per MIL Rulings |
|---|---|---|---|
| 70 | MDOC Policy Directive PD 03.03.130, Effective Date 02/23/2009 | | Admitted by stipulation |
| 71 | MDOC Policy Directive PD 03.03.130, Effective Date 10/01/2019 | | Admitted by stipulation |
| 72 | *Quality of life in ostomy patients: a qualitative study.* Dabirian, et. al., Patient Preference and Adherence, 2011:5 1-5. | Fed. R. Evid. 401, 402, 403, 802 | |
| 73 | *Quality of life after surgery from rectal cancer: Do we still need a permanent colostomy?* Renner, et. al., Diseases of the Colon & Rectum 42(9):p 1160-1167, September 1999 | Fed. R. Evid. 401, 402, 403, 802 | |
| 74 | *The impact of restorative proctectomy versus permanent colostomy on health-related quality of life after* | Fed. R. Evid. 401, 402, 403, 802 | |

| | | | |
|---|---|---|---|
| | *rectal cancer surgery using the patient-generated index.* Robitaille, et. al., Surgery Volume 174, Issue 4, October 2023, Pages 813-818 | | |
| 75 | *Considerations in stoma reversal.* Sherman, et. al., Clin. Colon Rectal Surg. 2017;30:172-177 | Fed. R. Evid. 401, 402, 403, 802 | |
| 76 | Corizon 03/01/2014 Revision UM004 (Papendick Deposition Exhibit #2) | | Admitted by stipulation |
| 77 | UMMD Job Description (Papendick Exhibit #3) (CLG-Jackson-00618 – 620) | | Admitted by stipulation |
| 78 | Dr. Papendick's deposition transcript in Wright v Corizon, et al, taken on June 25, 2018 (Papendick Deposition Exhibit #4) | | Admitted by stipulation |
| 79 | PIP Manual 1 (Papendick Deposition Exhibit #5) | | Admitted by stipulation |
| 80 | PIP Manual 2 (Papendick Deposition Exhibit #6) | | Admitted by stipulation |

| | | | |
|---|---|---|---|
| 81 | Dr. Papendick's deposition transcript in Spiller v Stieve, taken March 27, 2019 (Papendick Deposition Exhibit #7) | | Admitted by stipulation |
| 82 | InGauge screenshots (Papendick Deposition Exhibit #8) (CLG-Jackson-00458 – 466) | | Admitted by stipulation |
| 83 | Resume – Dr. Papendick (Papendick Deposition Exhibit #9) | | Admitted by stipulation |
| 84 | Corizon Practitioner Clinical Onboarding Training Form (Papendick Deposition Exhibit #10) (CLG-Jackson-00266) | | Admitted by stipulation |
| 85 | LARA Corporations Online Filing System for Quality Correctional Care of Michigan (Bomber Deposition Exhibit #1) | | Admitted by stipulation |
| 86 | Corizon Practitioner Clinical Onboarding Form (Bomber Deposition Exhibit #2) | | Admitted by stipulation |

30

| | | | |
|---|---|---|---|
| 87 | Resume of Bethany Chester (Bomber Deposition Exhibit #3) | | Admitted by stipulation |
| 88 | InGauge Screenshots (Bomber Deposition Exhibit # 4) | | Admitted by stipulation |
| 89 | Resume of Lori Mignon Ernst (Bomber Deposition Exhibit #5) | | Admitted by stipulation |
| 90 | Corizon Performance Review for Dr. Keith Papendick (Bomber Deposition Exhibit #8) | | Admitted by stipulation |
| 91 | Dr. Keith Papendick Performance Review Records (CLG-Jackson-00578 – 588) | | Admitted by stipulation |
| 92 | Declaration of Erin Orlebecke, M.D., dated November 10, 2014 (Bomber Deposition Exhibit #10) | | Admitted by stipulation |
| 93 | Declaration of Harriet Squier, M.D., dated November 18, 2014 (Bomber Deposition Exhibit #11) | | Admitted by stipulation |
| 94 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Answer, | | Admitted by stipulation |

31

| | | | |
|---|---|---|---|
| | Jury Demand and Affirmative Defenses, filed July 14, 2020 | | |
| 95 | Defendant Corizon Health, Inc.'s Responses to Plaintiff's First Request for Production, dated November 12, 2020 | | Admitted by stipulation |
| 96 | Defendant Corizon Health, Inc.'s Responses to Plaintiff's First Interrogatories, Second Request for Production of Documents, and First Request to Admit, dated February 17, 2021 | | Admitted by stipulation |
| 97 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Responses to Plaintiff's Second Interrogatories and Third Request for Production of Documents, dated June 11, 2021 | | Admitted by stipulation |
| 98 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Responses to Plaintiff's Second Requests to Admit, Third Interrogatories and | | Admitted by stipulation |

| | | | |
|---|---|---|---|
| | Fourth Request for Production of Documents, dated July 7, 2021 | | |
| 99 | Corizon Michigan Referral Forms (CHS TX 000001 – 000020) | | Admitted by stipulation |
| 100 | Corizon Referral Forms (CHS TX 000021 – 000066) | | Admitted by stipulation |
| 101 | Corizon Health, Inc.'s Insurance Policy Coverage Declarations Page | | Admitted by stipulation |
| 102 | Corizon Provider Remittance Advice, dated September 16, 2021 (CHS TX 000067 – 000084) | | Admitted by stipulation |
| 103 | Corizon Provider Remittance Advice, dated March 26, 2018 (CHS TX 000085 – 000106) | | Admitted by stipulation |
| 104 | Corizon Provider Remittance Advice, dated March 26, 2018 (CHS TX 000107 – 000154) | | Admitted by stipulation |
| 105 | Corizon Provider Remittance Advice, dated September 26, 2019 (CHS TX 000155 – 000172) | | Admitted by stipulation |
| 106 | CV for Dr. John Webber, M.D. | | Admitted per MIL Rulings |

| | | | |
|---|---|---|---|
| 107 | Medical Records From Hope Surgical Services | | Admitted by stipulation |

## DEFENDANTS' EXHIBITS

Defendants' inclusion of any exhibits on Defendants' Exhibit List is not intended to be an admission that the exhibit is relevant or admissible for any purpose. Defendants reserve the right to object to any of Plaintiff's exhibits, notwithstanding their inclusion on Defendants' Exhibit List.

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| A | Medical Records From McLaren Port Huron Hospital (D000001 – 000275) | | *Defendants agree not to use portions unrelated to colostomy care (records for GSW treatment, STDs, etc.)* | Admitted by stipulation |
| B | Medical Records From Lake Huron Medical Center (C000001 – 001156) | | *Defendants agree not to use portions unrelated to colostomy care (records for GSW treatment, STDs, etc.)* | Admitted by stipulation |

34

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| C | Medical Records From St. Clair County Jail (G000001 – 000126) | | *Defendants agree not to use portions unrelated to colostomy care (records for GSW treatment, STDs, etc.)* | Admitted by stipulation |
| D | Medical Records From Hope Surgical Services (A000001 – 000029) | | | Admitted by stipulation |
| E | 2017 Medical Records From Michigan Department of Corrections | | | Admitted by stipulation |
| F | 2018 Medical Records From Michigan Department of Corrections | | | Admitted by stipulation |
| G | 2019 Medical Records From Michigan Department of Corrections | | | Admitted by stipulation |
| H | Medical Records From DMC Harper Hutzel Hospital (B000001 – 000700) | | | Admitted by stipulation |
| I | Medical Records From Select Specialists LLC (A000001 – 000059) | | | Admitted by stipulation |
| J | Records from Corizon (CLG-Jackson-00001 – 02169) | | | Admitted by stipulation |
| K | Intentionally Left Blank | | | |
| L | Deposition transcript of Sonya Fulks, RN, dated June 12, 2025 | | | Admitted by stipulation |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| M | Deposition transcript of Kohchise Jackson, dated March 22, 2021 | | | Admitted by stipulation |
| N | Deposition transcript of Erina Kansakar, M.D., dated March 5, 2021, with designations | | | Admitted by stipulation |
| O | Deposition transcript of Keith Papendick, M.D., dated May 10, 2021 | | | Admitted by stipulation |
| P | Deposition transcript of Cristin Rettler, P.A., June 20, 2025 <br><br> *Will remove if Court sustains its Order that she cannot testify* | | May be used only for impeachment purposes | |
| Q | Deposition transcript of Ralph Silverman, M.D., July 23, 2021, with designations | | May be used only for impeachment purposes | |
| R | Deposition transcript of Jan Watson, M.D., dated June 17, 2025 | | May be used only for impeachment purposes | |
| S | Curriculum Vitae of Ronald Drinkert, N.P. | | | Admitted by stipulation |
| T | Curriculum Vitae of Michael Duffy, M.D. | | | Admitted by stipulation |
| U | Curriculum Vitae of Syed Jafri, M.D. | | | Admitted by stipulation |
| V | Curriculum Vitae of James McQuiston, D.O. | | | Admitted by stipulation |
| W | Curriculum Vitae of Keith Papendick, M.D. | | | Admitted by |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | | | | stipulation |
| X | Curriculum Vitae of Cris Rettler, P.A. (Rettler Deposition Exhibit B)<br><br>*Will remove if Court sustains its Order that she cannot testify.* | | | Admitted by stipulation |
| Y | Curriculum Vitae of Ralph Silverman, M.D. (Silverman Deposition Exhibit A) | | | Admitted by stipulation |
| Z | LARA Corporations Online Filing System for Quality Correctional Care of Michigan (Bomber Deposition Exhibit #1) | | | Admitted by stipulation |
| A1 | Corizon Practitioner Clinical Onboarding Form (Bomber Deposition Exhibit #2) | | | Admitted by stipulation |
| B1 | Resume of Bethany Chester (Bomber Deposition Exhibit #3) | | | Admitted by stipulation |
| C1 | InGauge Screenshots (Bomber Deposition Exhibit # 4) | | | Admitted by stipulation |
| D1 | Resume of Lori Mignon Ernst (Bomber Deposition Exhibit #5) | | | Admitted by stipulation |
| E1 | Corizon Performance Review for Dr. Keith Papendick (Bomber Deposition Exhibit #8) | | | Admitted by stipulation |
| F1 | Dr. Keith Papendick Performance Review Records (CLG-Jackson-00578 – 588) | | | Admitted by stipulation |
| G1 | Intentionally Left Blank | | | |
| H1 | Intentionally Left Blank | | | |
| I1 | Corizon Utilization Management Manual 2017 (Papendick | | | Admitted by stipulation |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
|  | Deposition Exhibit #1)         (CLG-Jackson-00001 – 116) |  |  |  |
| J1 | Corizon 03/01/2014 Revision UM004 (Papendick Deposition Exhibit #2) |  |  | Admitted by stipulation |
| K1 | UMMD Job Description (Papendick Exhibit #3) (CLG-Jackson-00618 – 620) |  |  | Admitted by stipulation |
| L1 | Dr. Papendick's deposition transcript in Wright v Corizon, et al, taken on June 25, 2018 (Papendick Deposition Exhibit #4) |  |  | Admitted by stipulation |
| M1 | PIP Manual 1 (Papendick Deposition Exhibit #5) |  |  | Admitted by stipulation |
| N1 | PIP Manual 2 (Papendick Deposition Exhibit #6) |  |  | Admitted by stipulation |
| O1 | Dr. Papendick's deposition transcript in Spiller v Stieve, taken March 27, 2019 (Papendick Deposition Exhibit #7) |  |  | Admitted by stipulation |
| P1 | InGauge screenshots (Papendick Deposition Exhibit #8) (CLG-Jackson-00458 – 466) |  |  | Admitted by stipulation |
| Q1 | Resume – Dr. Papendick (Papendick Deposition Exhibit #9) |  |  | Admitted by stipulation |
| R1 | Corizon Practitioner Clinical Onboarding Training Form (Papendick Deposition Exhibit #10) (CLG-Jackson-00266) |  |  | Admitted by stipulation |
| S1 | Amended Complaint, filed January 3, 2020 |  |  | Admitted by stipulation |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| T1 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Answer, Jury Demand and Affirmative Defenses, filed July 14, 2020 | | | Admitted by stipulation |
| U1 | Defendant Corizon Health, Inc.'s Responses to Plaintiff's First Request for Production, dated November 12, 2020 | | | Admitted by stipulation |
| V1 | Defendant Corizon Health, Inc.'s Responses to Plaintiff's First Interrogatories, Second Request for Production of Documents, and First Request to Admit, dated February 17, 2021 | | | Admitted by stipulation |
| W1 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Responses to Plaintiff's Second Interrogatories and Third Request for Production of Documents, dated June 11, 2021 | | | Admitted by stipulation |
| X1 | Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s Responses to Plaintiff's Second Requests to Admit, Third Interrogatories and Fourth Request for Production of Documents, dated July 7, 2021 | | | Admitted by stipulation |
| Y1 | Plaintiff's Response to Defendants Corizon Health, Inc. and Keith Papendick, M.D.'s First Set of Interrogatories and Request for Production of Documents, dated November 9, 2020 | | | Admitted by stipulation |
| Z1 | Plaintiff's Expert Disclosure and Supplemental Response to | | | Admitted by |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | Defendant Corizon Health, Inc. and Keith Papendick, M.D.'s First Set of Interrogatories and Request for Production of Documents to Plaintiff, dated November 30, 2020 | | | stipulation |
| A2 | Plaintiff's Supplemental Response to Defendant Corizon Health, Inc. and Keith Papendick, M.D.'s Fourteenth Request for Production of Documents to Plaintiff, dated February 9, 2021 | | | Admitted by stipulation |
| B2 | Plaintiff's Supplemental Response to Defendant's Request to Produce #14, dated April 24, 2021 | | | Admitted by stipulation |
| C2 | Plaintiff's Supplemental Response to Defendant's Request to Produce #14, dated April 27, 2021 | | | Admitted by stipulation |
| D2 | Plaintiff's Supplemental Response to Defendant Corizon Health, Inc. and Keith Papendick, M.D.'s Fourteenth Request for Production of Documents to Plaintiff, dated June 10, 2021 | | | Admitted by stipulation |
| E2 | Plaintiff's Disclosure of Non-Retained Experts | | | Admitted by stipulation |
| F2 | CHS TX's Initial Disclosures | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c) | |
| G2 | Plaintiff's Initial Disclosures | | | Admitted by stipulation |
| H2 | Corizon and Dr. Papendick's Initial Disclosure | | | Admitted by |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | | | | stipulation |
| I2 | Intentionally Left Blank | | | |
| J2 | Intentionally Left Blank | | | |
| K2 | Omitted. | | | |
| L2 | Corizon Contract with Michigan Department of Corrections No. 071B6600081 and Contract Change Orders | | | Admitted by Stipulation |
| M2 | Corizon Michigan Referral Forms (CHS TX 000001 – 000020) | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| N2 | Corizon Referral Forms (CHS TX 000021 – 000066) | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| O2 | Corizon Health, Inc.'s Insurance Policy Coverage Declarations Page | | | Admitted by stipulation |
| P2 | Corizon Provider Remittance Advice, dated September 16, 2021 (CHS TX 000067 – 000084) Unredacted Exhibit available at Court's request. | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| Q2 | Corizon Provider Remittance Advice, dated March 26, 2018 (CHS TX 000085 – 000106) | | Object to late-disclosed documents, Fed. R. Civ. | |

41

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | Unredacted Exhibit available at Court's request. | | P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| R2 | Corizon Provider Remittance Advice, dated March 26, 2018 (CHS TX 000107 – 000154) Unredacted Exhibit available at Court's request. | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| S2 | Corizon Provider Remittance Advice, dated September 26, 2019 (CHS TX 000155 – 000172) Unredacted Exhibit available at Court's request. | | Object to late-disclosed documents, Fed. R. Civ. P. 37(c), Fed. R. Evid. 401, 402, 403, 802 | |
| T2 | Intentionally Left Blank | | | |
| U2 | Intentionally Left Blank | | | |
| V2 | Intentionally Left Blank | | | |
| W2 | Preliminary Expert Report from Ralph Silverman, M.D., dated December 29, 2020 | | | Admitted by stipulation |
| X2 | Silverman Declaration | | | Admitted by stipulation |
| Y2 | Intentionally Left Blank | | | |
| Z2 | Intentionally Left Blank | | | |
| A3 | Intentionally Left Blank | | | |
| B3 | Intentionally Left Blank | | | |
| C3 | Intentionally Left Blank | | | |
| D3 | Intentionally Left Blank | | | |
| E3 | Intentionally Left Blank | | | |
| F3 | Fee Schedule from Ralph Silverman, M.D. | | | Admitted by stipulation |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| G3 | Intentionally Left Blank | | | |
| H3 | Intentionally Left Blank | | | |
| I3 | Affidavit of Timothy McKenna, D.O. | | Fed. R. Evid. 802 | |
| J3 | Michigan Department of Corrections Policy Directive 03.02.130, Effective Date 07-09-2007 | | Fed. R. Evid. 401, 402, 403 | |
| K3 | Michigan Department of Corrections Policy Directive 03.02.130, Effective Date 03-18-2019 | | Fed. R. Evid. 401, 402, 403 | |
| L3 | Michigan Department of Corrections Policy Directive 03.03.130, Effective Date 10-01-2019 | | | Admitted by stipulation |
| M3 | Michigan Department of Corrections Policy Directive 03.03.130, Effective Date 04-01-2022 | | | Admitted by stipulation |
| N3 | Michigan Department of Corrections Policy Directive 03.04.100, Effective Date 02-01-2015 | | Fed. R. Evid. 401, 402, 403 | |
| O3 | Michigan Department of Corrections Policy Directive 04.06.184, Effective Date 06-26-2017 | | | Admitted by stipulation |
| P3 | Kohchise Jackson's MDOC Greivance Records | | Fed. R. Evid. 401, 402, 403, 802, MIL to exclude grievance responses | |

43

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| Q3 | Step II Grievance Appeal Response, dated June 8, 2017 | | Fed. R. Evid. 401, 402, 403, 802, MIL to exclude grievance responses | |
| R3 | Step III Grievance Response, dated October 13, 2017 | | Fed. R. Evid. 401, 402, 403, 802, MIL to exclude grievance responses | |
| S3 | Letter from Kohchise Jackson to Corrections Supervisor, dated February 21, 2017 | | Fed. R. Evid. 401, 402, 403, MIL to exclude evidence relating to dismissed parties | |
| T3 | UpToDate Treatment Recommendations for Colovesical Fistula | | Fed. R. Evid. 802 | |
| U3 | Intentionally Left Blank | | | |
| V3 | Letter from Office of the Legislative Corrections Ombudsman, dated November 7, 2017 | | | Admitted by stipulation |
| W3 | Etzioni DA, Mack TM, Beart RW Jr, Kaiser AM. Diverticulitis in the United States: 1998-2005: changing patterns of disease and treatment. Ann Surg. 2009;249(2):210-217. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| X3 | Boermeester MA, Humes DJ, Velmahos GC, Søreide K. | | Fed. R. Evid. 802, not | |

44

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | Contemporary review of risk-stratified management in acute uncomplicated and complicated diverticulitis. World J Surg. 2016;40(10):2537-2545. | | admissible under Fed. R. Evid. 803(18) | |
| Y3 | Stocchi L. Current indications and role of surgery in the management of sigmoid diverticulitis. World J Gastroenterol. 2010;16(7):804-817. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| Z3 | Cirocchi R, Trastulli S, Desiderio J, et al. . Treatment of Hinchey stage III-IV diverticulitis: a systematic review and meta-analysis. Int J Colorectal Dis. 2013;28(4):447-457. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| A4 | Horesh N, Rudnicki Y, Dreznik Y, et al. . Reversal of Hartmann's procedure: still a complicated operation. Tech Coloproctol. 2018;22(2):81-87. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| B4 | Pearce NW, Scott SD, Karran SJ. Timing and method of reversal of Hartmann's procedure. Br J Surg. 1992;79(8):839-841. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| C4 | Roe AM, Prabhu S, Ali A, Brown C, Brodribb AJ. Reversal of Hartmann's procedure: timing and operative technique. Br J Surg. 1991;78(10):1167-1170 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| D4 | Keck JO, Collopy BT, Ryan PJ, Fink R, Mackay JR, Woods RJ. Reversal of Hartmann's procedure: effect of timing and technique on ease and safety. Dis Colon Rectum. 1994;37(3):243-248. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| E4 | Khan AL, Ah-See AK, Crofts TJ, Heys SD, Eremin O. Reversal of Hartmann's colostomy. J R Coll Surg Edinb. 1994;39(4):239-242. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| F4 | Zafar SN, Changoor NR, Williams K, et al. . Race and socioeconomic disparities in national stoma reversal rates. Am J Surg. 2016;211(4):710-715. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| G4 | Gunnells DJ, Wood LN, Goss L, et al. . Racial disparities after stoma construction exist in time to closure after 1 year but not in overall stoma reversal rates. J Gastrointest Surg. 2018;22(2):250-258. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| H4 | Aquina CT, Probst CP, Becerra AZ, et al. . The impact of surgeon volume on colostomy reversal outcomes after Hartmann's procedure for diverticulitis. Surgery. 2016;160(5):1309-1317. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| I4 | Sier MF, van Gelder L, Ubbink DT, Bemelman WA, Oostenbroek RJ. Factors affecting timing of closure and non-reversal of temporary ileostomies. Int J Colorectal Dis. 2015;30(9):1185-1192. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| J4 | Roig JV, Cantos M, Balciscueta Z, et al. ; Sociedad Valenciana de Cirugía Cooperative Group . Hartmann's operation: how often is it reversed and at what cost? a multicentre study. Colorectal Dis. 2011;13(12):e396-e402. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| K4 | Herrle F, Sandra-Petrescu F, Weiss C, Post S, Runkel N, Kienle P. Quality of life and timing of stoma closure in patients with rectal cancer undergoing low anterior resection with diverting stoma: a multicenter longitudinal observational study. Dis Colon Rectum. 2016;59(4):281-290. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| L4 | Lasithiotakis K, Aghahoseini A, Alexander D. Is early reversal of defunctioning ileostomy a shorter, easier and less expensive operation? World J Surg. 2016;40(7):1737-1740. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| M4 | Alves A, Panis Y, Lelong B, Dousset B, Benoist S, Vicaut E. Randomized clinical trial of early versus delayed temporary stoma closure after proctectomy. Br J Surg. 2008;95(6):693-698. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| N4 | Khan S, Alvi R, Awan Z, Haroon N. Morbidity of colostomy reversal. J Pak Med Assoc. 2016;66(9):1081-1083. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| O4 | Hodgson R, An V, Stupart DA, Guest GD, Watters DA. Who gets Hartmann's reversed in a regional centre? Surgeon. 2016;14(4):184-189. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| P4 | Horesh N, Lessing Y, Rudnicki Y, et al. . Considerations for Hartmann's reversal and Hartmann's reversal outcomes: a multicenter study. Int J Colorectal Dis. 2017;32(11):1577-1582. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| Q4 | Hallam S, Mothe BS, Tirumulaju R. Hartmann's procedure, reversal and rate of stoma-free survival. Ann R Coll Surg Engl. 2018;100(4):301-307. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| R4 | Intentionally Left Blank | | | |
| S4 | Banerjee S, Leather AJ, Rennie JA et al. . Feasibility and morbidity of reversal of Hartmann's. 2005; (5): 454–459. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| T4 | Salem L, Anaya DA, Roberts KE, Flum DR. Hartmann's colectomy and reversal in diverticulitis: a population-level assessment. 2005; (5): 988–995. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| U4 | Aydin HN, Remzi FH, Tekkis PP, Fazio VW. Hartmann's reversal is associated with high postoperative adverse events. 2005; (11): 2,117–2,126. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| V4 | Lin FL, Boutros M, Da Silva GM et al. . Hartmann reversal: obesity adversely impacts outcome. 2013; (1): 83–90. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| W4 | Tokode OM, Akingboye A, Coker O. Factors affecting reversal following Hartmann's procedure: experience from two district general hospitals in the UK. 2011; (1): 79–83. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| X4 | Roque-Castellano C, Marchena-Gomez J, Hemmersbach-Miller M et al. . Analysis of the factors | | Fed. R. Evid. 802, not admissible | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | related to the decision of restoring intestinal continuity after Hartmann's procedure. 2007; (9): 1,091–1,096. | | under Fed. R. Evid. 803(18) | |
| Y4 | Okolica D, Bishawi M, Karas JR et al. . Factors influencing postoperative adverse events after Hartmann's reversal. 2012; (3): 369–373. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| Z4 | Antolovic D, Reissfelder C, Ozkan T et al. . Restoration of intestinal continuity after Hartmann's procedure--not a benign operation. Are there predictors for morbidity? 2011; (7): 989–996. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| A5 | Richards CH, Roxburgh CS, Surgical Research Group (SSRG). Surgical outcome in patients undergoing reversal of Hartmann's procedures: a multicentre study. 2015; (3): 242–249. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| B5 | Cellini C, Deeb AP, Sharma A et al. . Association between operative approach and complications in patients undergoing Hartmann's reversal. 2013; (8): 1,094–1,099. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| C5 | Zarnescu Vasiliu EC, Zarnescu NO, Costea R et al. . Morbidity after reversal of Hartmann operation: retrospective analysis of 56 patients. 2015; (4): 488–491. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| D5 | Garber A, Hyman N, Osler T. Complications of Hartmann takedown in a decade of preferred primary anastomosis. 2014; (1): 60–64. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| E5 | National Bowel Cancer Audit Project Team . London: Health and Social Care Information Centre; 2015. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| F5 | Tan WS, Lim JF, Tang CL, Eu KW. Reversal of Hartmann's procedure: experience in an Asian population. 2012; (1): 46–51. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| G5 | Fleming FJ, Gillen P. Reversal of Hartmann's procedure following acute diverticulitis: is timing everything? 2009; (10): 1,219–1,025. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| H5 | Pearce NW, Scott SD, Karran SJ. Timing and method of reversal of Hartmann's procedure. 1992; (8): 839–841. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| I5 | Schmelzer TM, Mostafa G, Norton HJ et al. . Reversal of Hartmann's procedure: a high-risk operation? 2007; (4): 598–597. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| J5 | Wieghard N, Geltzeiler CB, Tsikitis VL. Trends in the surgical management of diverticulitis. 2015; (1): 25–30. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| K5 | Salem L, Flum DR. Primary anastomosis or Hartmann's procedure for patients with diverticular peritonitis? A systematic review. 2004; (11): 1,953–1,964. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| L5 | Durán Giménez-Rico H, Abril Vega C, Herreros Rodríguez J et al. . Hartmann's procedure for obstructive carcinoma of the left colon and rectum: a comparative study with one-stage surgery. 2005; (7): 306–313. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| M5 | Cirocchi R, Farinella E, Trastulli S et al. . Safety and efficacy of endoscopic colonic stenting as a bridge to surgery in the management of intestinal obstruction due to left colon and rectal cancer: a systematic review and meta-analysis. 2013; (1): 14–21. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| N5 | Wright GP, Flermoen SL, Robinett DM et al. . Surgeon specialization impacts the management but not outcomes of acute complicated diverticulitis. 2016; (6): 1,035–1,040. | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| O5 | Vermeulen J, Gosselink MP, Busschbach JJV, Lange JF (2010) Avoiding or reversing hartmann's procedure provides improved quality of life after perforated diverticulitis. J Gastrointest Surg. 14(4):651–657 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| P5 | Haughn C, Ju B, Uchal M, Arnaud JP, Reed JF, Bergamaschi R (2008) Complication rates after Hartmann's reversal: open vs. laparoscopic approach. Dis Colon Rectum 51(*):1232-36 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| Q5 | Vaid S, Wallet J, Litt J, Bell T, Grim R, Ahuja V (2011) | | Fed. R. Evid. 802, not | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
|  | Application of a tertiary referral scoring system to predict nonreversal of Hartmann's procedure for diverticulitis in a community hospital. Am Surg. 77(7):814–819 |  | admissible under Fed. R. Evid. 803(18) |  |
| R5 | Milsom JW, Böhm B, Hammerhofer KA, Fazio V, Steiger E, Elson P (1998) A prospective, randomized trial comparing laparoscopic versus conventional techniques in colorectal cancer surgery: a preliminary report. J Am Coll Surg. 187(1):46–54 |  | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) |  |
| S5 | Stage JG, Schulze S, Møller P, Overgaard H, Andersen M, Rebsdorf-Pedersen VB et al (1997) Prospective randomized study of laparoscopic versus open colonic resection for adenocarcinoma. Br J Surg. 84(8):1174 |  | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) |  |
| T5 | Slawik S, Dixon AR (2008) Laparoscopic reversal of Hartmann's rectosigmoidectomy. Color Dis. 10(1):81–83 |  | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) |  |
| U5 | Macpherson SC, Hansell DT, Porteous C (1996) Laparoscopic-assisted reversal of Hartmann's procedure: a simplified technique and audit of twelve cases. J Laparoendosc Surg. 6(5):305–310 |  | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) |  |
| V5 | Rosen MJ, Cobb WS, Kercher KW, Sing RF, Heniford BT (2005) Laparoscopic restoration of intestinal continuity after Hartmann's procedure. American |  | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) |  |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | Journal of Surgery. 189(6):670–674 | | | |
| W5 | Fiscon V, Portale G, Mazzeo A, Migliorini G, Frigo F (2014) Laparoscopic reversal of Hartmann's procedure. Updates Surg. 66(4):277–281 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| X5 | Siddiqui MRS, Sajid MS, Baig MK (2010) Open vs laparoscopic approach for reversal of Hartmann's procedure: a systematic review. Color Dis. 12(8):733–741 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| Y5 | Dindo D, Demartines N, Clavien P-A (2004) Classification of surgical complications. Ann Surg 240(2):205–213 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| Z5 | Mazeh H, Greenstein AJ, Swedish K, Nguyen SQ, Lipskar A, Weber KJ, Chin EH, Divino CM (2009) Laparoscopic and open reversal of Hartmann's procedure - a comparative retrospective analysis. Surg Endosc Other Interv Tech. 23(3):496–502 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| A6 | van de Wall BJM, Draaisma WA, Schouten ES, Broeders IAMJ, Consten ECJ (2010) Conventional and laparoscopic reversal of the hartmann procedure: a review of literature. J Gastrointest Surg. 14(4):743–752 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| B6 | Walklett CL, Yeomans NP (2014) A retrospective case note review of laparoscopic versus open reversal of Hartmann's procedure. Ann R Coll Surg Engl 96(7):539–542 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| C6 | Boland E, Hsu A, Brand MI, Saclarides TJ (2007) Hartmanns colostomy reversal: outcome of patients undergoing surgery with the intention of eliminating fecal diversion. Am Surg. 73(7):664–667 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| D6 | Chouillard E, Pierard T, Campbell R, Tabary N (2009) Laparoscopically assisted Hartmann's reversal is an efficacious and efficient procedure: a case control study. Minerva Chir. 64(1):1–8 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| E6 | Tan WS, Lim JF, Tang CL, Eu KW (2012) Reversal of Hartmann's procedure: experience in an Asian population. Singapore Med J. 53(1):46–51 | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| F6 | https://my.clevelandclinic.org/health/procedures/ostomy-reversal | | Fed. R. Evid. 802, not admissible under Fed. R. Evid. 803(18) | |
| G6 | CV of Dr. Patricia Schmidt | | | Admitted by stipulation |

## (8)  Damages

The Plaintiff claims:

Damages for pain and suffering, emotional distress, physical distress, mental anguish, physical anguish, loss of reputation, embarrassment, humiliation, and the

physical effects associated with Defendant's conduct.

1.      Punitive damages.

2.      Attorneys fees and costs, per 42 U.S.C. § 1988.

3.      Pre-judgment interest.

4.      Post-judgment interest.

Defendants deny that Plaintiff is entitled to any damages, and any specific category of damages.

**(9)  Trial.**

This matter will be tried before a jury. The parties estimate that the presentation of proofs will require approximately seven days.

**(10) Settlement.**

A facilitation session was held with the Hon. James Rashid (Ret.) on July 7, 2025, but  was unsuccessful.

        SO ORDERED.

Dated: March 23, 2026                                    /s/Gershwin A. Drain
                                                          GERSHWIN A. DRAIN
                                                          United States District Judge