**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KOHCHISE JACKSON,

        Plaintiff,

-vs-

CHS TX, INC., *et al.,*

        Defendants.

Case No. 19-cv-13382

Hon. Gershwin A. Drain

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS, GALLAGHER & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
ALLIE J. FARRIS (P88654)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com
allie@markolaw.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

**<u>PLAINTIFF'S MOTION FOR ORDER PROHIBITING TRANSFER OF ASSETS AND COMPEL DISCOVERY</u>**

1

NOW COMES Plaintiff, **KOHCHISE JACKSON**, by and through his attorneys, **MARGOLIS, GALLAGHER & CROSS**, and **MARKO LAW, PLLC,** and for his Motion for Adverse Instruction Regarding Isaac Lefkowitz, states as follows:

1. On April 13, 2026, this Honorable Court entered a Judgment against Defendants. ECF No. 293, PageID. 10712.

2. The entered judgment was reflective of the jury's finding of liability against Defendants on Plaintiff's Eighth Amendment deliberate indifference and municipal liability claims under 42 U.S.C. § 1983, which at the conclusion of the eight-day trial, the jury awarded the following damages:

   a. Plaintiff was entitled to $7,500,000.00 in compensatory damages for non-economic damages suffered;

   b. Plaintiff was entitled to $300,000,000.00 in punitive damages accessed against Defendant Corizon Health, Inc./CHS TX, Inc.;

   c. Plaintiff was entitled to $100,000.00 in punitive damages accessed against Defendant Dr. Keith Papendick. ECF No. 290, PageID. 10703-10705.

3. Pursuant to Fed. R. Civ. P. 69(a), the procedure and proceedings supplementary to and in aid of a money judgment are governed by "the procedure of the state where the court is located."

4. Mich. Ct. R. 2.621 and Mich. Comp. Laws § 600.6104 provide the court an expansive authority to issue orders necessary for the enforcement of any monetary judgment entered and include the power to both:

(1) Compel a discovery of any property or things in an action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him; [and]

(2) Prevent the transfer of any property, money, or things in action, or delivery thereof to the judgment debtor[.]

5. Moreover, this Court maintains similar powers with respect to third parties who have in their possession the property of judgment debtors under Mich. Comp. Laws § 600.6119.

6. The $307,600,000.00 judgment entered in this matter remains wholly unsatisfied.

7. Defendant Defendant Corizon Health, Inc./CHS TX, Inc. came under the control of Isaac Lefkowitz and his private equity vehicle, Perigrove 1018, LLC, in December 2021—an individual who described this corporate restructuring to former defense counsel in this case as a tool to "force plaintiffs into accepting lower settlements." ECF No. 284-1, PageID.10623; **Exhibit 1, Amended Complaint in *Chapman & Assoc., P.C. v. Yescare, et. al,* Case No. 2:23-cv-11210 (E.D. Mich.) at pg. 8, ¶ 33(e).**

8. In April and May of 2022, Defendants executed a Texas "divisional merger" that transferred virtually all of Corizon's assets—including all cash save $1

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

million, all active contracts, employees, real estate, and trademarks—into CHS TX, Inc. (now YesCare Corp.), while leaving all historical tort liabilities in Corizon Health, Inc. (renamed Tehum Care Services, Inc.), which was capitalized with only $1 million. ECF No. 83-4, PageID.3407.

9. Prior to Tehum's Chapter 11 bankruptcy filing on February 13, 2023, over $200 million was transferred out of the entity retaining all liabilities and into YesCare and Lefkowitz-affiliated entities, including M2 LoanCo, LLC and Geneva Consulting, LLC. ECF No. 162-5, PageID.6264.

10. This Court has already found, on the record in this case, that "CHS TX is a mere continuation of pre-division Corizon" and that "CHS TX picked up right where Corizon left off." ECF No. 89, PageID.3684–85.

11. Aside from the divisional merger transaction, Mr. Lefkowitz has a well-documented history of secreting cash out of the Defendant through insider transactions with other entities he controls. For example, in January of 2022, Mr. Lefkowitz entered into an agreement to purchase 350,000 COVID test kits for approximately $2 million through another one of his companies, Seven Trade LLC, while simultaneously contracting to immediately resell those COVID test kits to Corizon Health, Inc. for $3.25 million. *See* **Exhibit 2, Declaration of Isaac Lefkowitz filed in Case No. 7:22-cv-01673 (S.D.N.Y.) at ¶¶ 7, 36, 39**; **Exhibit 3, Corizon Health, Inc. Purchase Order.** The result of these transactions, had they

been successful, would have been to siphon over $1 million from Corizon Health, Inc. into another of Mr. Lefkowitz' companies shortly before a planned bankruptcy filing, while disguising the transaction as an arms-length purchase of medical supplies from a vendor.

12.     Mr. Lefkowitz also successfully siphoned millions of dollars out of the Defendants into yet another entity he controlled, Geneva Consulting, LLC. He did so through a pre-divisional-merger "consulting agreement" with Corizon's parent company, and a post-divisional-merger "management services agreement" with Yescare Corp./CHS TX, Inc. Both agreements were entered into while Mr. Lefkowitz was an officer and/or director of all of the companies involved in the deals. **Exhibit 4,** ***In re: Tehum Care Services, Inc.*** **Second Amended Disclosure Statement at pg. 20**; **Exhibit 5, Geneva Consulting Management Services Agreement ("MSA") and Ancillary Agreements**.

13.     The "consulting agreement" resulted in Corizon Health paying $5.5 million to a newly-formed, Lefkowitz-controlled entity shortly before the divisional merger and bankruptcy, ostensibly for vaguely-defined consulting services. **Ex. 4 at 20.** Mr. Lefkowitz then repeatedly failed to disclose these insider payments to Geneva Consulting in the bankruptcy schedules and statements for Corizon Health (whose name he changed to Tehum Care Services before filing a Chapter 11 petition).

5

14. Immediately following the divisional merger, a "Management Services Agreement" was entered into between CHS TX, Inc., Yescare Corp., and Geneva Consulting, LLC. The agreement purported to give Geneva Consulting, LLC control over CHS TX, Inc.'s bank accounts, control over CHS TX, Inc.'s ability to enter into contracts, control over CHS TX, Inc.'s personnel decisions, and a lien on all of CHS TX, Inc.'s assets. *See* **Ex. 5 at ¶¶ 2.6, 2.7.1, 6.5 & Attachment D, *Security Agreement*, Bates YC-E-038700 to YC-E-038711**. These insider agreements granted Geneva Consulting, LLC a degree of effective control over CHS TX, Inc. that was equivalent to ownership of the entity, while allowing Geneva Consulting, LLC to deny in litigation that it held any equity interest in CHS TX, Inc.

15. In 2025, when a wrongful-death plaintiff in New Mexico attempted to add Geneva Consulting, LLC as a defendant in a tort lawsuit under a successor liability/alter ego theory, the principals of Geneva Consulting, LLC responded by dissolving Geneva Consulting, LLC. Their attorneys from Bowman & Brooke, the same firm that represented Defendants in this matter, then argued that as a dissolved entity, Geneva Consulting could not be sued. **Exhibit 6, Email from Bowman & Brooke Attorneys to Plaintiff's Attorney Michael Crawford, Aug. 20, 2025**.

16. Meanwhile, in early 2025, Isaac Lefkowitz formed the very similarly-named entity, "Geneva Consulting**s** LLC" in Tennessee. The registered office of "Geneva Consultings LLC" is 205 Powell Place, Brentwood, TN, the same address

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

6

as Corizon Health, Inc.'s, Yescare Corp.'s, and CHS TX., Inc.'s corporate headquarters. **Exhibit 7, Geneva Consultings LLC Articles of Organization**.

17.     Geneva Consultings LLC registered "CHS TX, Inc." as an assumed name, along with "Yescare services," "CHS FL, LLC," "CHS AL, LLC" and "CHS Employee Group, LLC," allowing it to transact business under the names of various other entities that constitute Mr. Lefkowitz' correctional healthcare business. *See* **Exhibit 8, Certificates of Assumed Name.** There is a substantial risk that these assumed name certificates allow Mr. Lefkowitz to deposit checks made out to entities like CHS TX, Inc. directly into Geneva Consultings, LLC's bank accounts, such that CHS TX, Inc.'s income can be diverted and concealed from creditors.

18.     In September of 2025, "Geneva Consultings LLC" changed its name to "TN Correct Health Services LLC." **Exhibit 9, Articles of Amendment.** In January of 2026, Mr. Lefkowitz used an "il@correct.health" email address, identifying himself in the signature block as the "CEO" of "Correct Health," to angrily refuse to pay his former bankruptcy attorneys approximately $700,000 that they were owed for their work in the Corizon Health/Tehum Care Services bankruptcy case. **Exhibit 10, Lefkowitz Email to His Former Bankruptcy Attorneys, Jan. 16, 2026.**

19.     "TN Correct Health Services LLC," branded as "Correct Health," is a confusingly-similar name to "CorrectHealth LLC," an unrelated, Georgia-based correctional healthcare company that also does business under the name "Correct

Health."[1] Mr. Lefkowitz appears to be attempting to shift his correctional healthcare business out of CHS TX Inc./Yescare Corp., which are exposed to substantial tort liability, and into a new entity with a name that is confusingly similar to the name of one of his competitors.

20.     This is not the first time that Mr. Lefkowitz has chosen a name for an entity that he secretly controls that is misleadingly-similar to the name of an unrelated, legitimate business. In November of 2022, Mr. Lefkowitz formed "Sigma RM LLC," a New York limited liability company that went by the name "Sigma Risk Management," using his personal residence as its corporate office. **Ex. 4 at 78.** Mr. Lefkowitz claimed that Sigma RM LLC was an independent risk-management company; and it was paid $150,000 per month out of the Debtor's bankruptcy estate. However, all of Sigma RM, LLC's employees were former employees of CHS TX, Inc.'s former in-house legal department. ***Id.*** "Sigma Risk Management" is also the name used by "Sigma Risk Management, Inc.," an unrelated, legitimate risk management business.[2]

21.     Accordingly, there exists valid concerns that Defendants will place property beyond the reach of this Court unless restrained from doing so, which courts

---

1 Compare "www.correcthealth.org" with "www.correct.health"
2 Compare "www.sigmarisk.com" with "www.sigmarm.org"

in this district have expressly recognized as sufficient basis for the entry of the relief requested herein.

22.     Concurrence was not sought pursuant to the nature and exigency of the relief sought to prevent irreparable harm to Plaintiffs, as well as established authority explicitly recognizing that "[a]s judges in this district held recently, '[p]ost-judgment orders containing such restrictions are routinely entered by Federal District Court and Michigan State Court judges, without regard to past conduct by the judgment debtor, and **often on an ex-parte basis**.'" *Motley v. Metro Man I,* 702 F. Supp. 3d 596, 609 (E.D. Mich. 2023) (collecting cases).

9

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant Plaintiff's Motion for Order Prohibiting Transfer of Assets and Compel Discovery and enter an Order:

(1)    compelling Defendants to disclose all property, assets, and financial interests subject to execution;

(2)    prohibiting Defendants and all related entities and third parties acting in concert with them from transferring, encumbering, or otherwise disposing of any such assets; and

(3)    granting any further relief this Court deems just and necessary to preserve Plaintiff's ability to enforce its $307.6 million judgment.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
Attorney for Plaintiff
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
Date: April 15, 2026    Email: jon@markolaw.com

10

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: ((313) 470-2011

MARKO LAW

JM MARKO LAW

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

      Plaintiff,

-vs-

CHS TX, INC., *et al.,*

      Defendants.

Case No. 19-cv-13382

Hon. Gershwin A. Drain

_____

LAWRENCE H. MARGOLIS (P69635)
IAN T. CROSS (P83367)
**MARGOLIS, GALLAGHER & CROSS**
Attorneys for Plaintiff
214 S. Main St., Ste. 200
Ann Arbor, MI 48104
(734) 994-9590
larry@lawinannarbor.com
ian@lawinannarbor.com

JONATHAN R. MARKO (P72450)
MICHAEL L. JONES (P85223)
ALLIE J. FARRIS (P88654)
**MARKO LAW, PLLC**
Co-counsel for Plaintiff
220 W. Congress, 4th Floor
Detroit, Michigan 48226
P: (313) 777-7529 / F: (313) 470-2011
jon@markolaw.com
michael@markolaw.com
allie@markolaw.com

ADAM MASIN
SUNNY REHSI (P80611)
**BOWMAN AND BROOKE LLP**
Attorney for CHS TX, Inc.
101 W. Big Beaver Rd., Ste. 1100
Troy, MI 48084
(248) 205-3300
Adam.masin@bowmanandbrooke.com
Sunny.rehsi@bowmanandbrooke.com

_____

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER PROHIBITING TRANSFER OF ASSETS AND COMPEL DISCOVERY

## CONCISE STATEMENT OF ISSUE PRESENTED

I.    Whether this Court should exercise its broad post-judgment authority under Fed. R. Civ. P. 69(a), Mich. Ct. R. 2.621, and Mich. Comp. Laws §§ 600.6104 and 600.6119 to compel discovery of assets and prohibit Defendants and their related entities from transferring property where a $307,600,000.00 judgment remains wholly unsatisfied and the record of this proceeding establishes a documented pattern of transferring hundreds of millions of dollars in assets beyond the reach of creditors through dissolution, bankruptcy, and corporate restructuring?

**Plaintiff states:**    **Yes.**

**This Court should state:**    **Yes.**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 69

Mich. Comp. Laws § 600.6104

Mich. Ct. R. 2.621

*Motley v. Metro Man I,* 702 F. Supp. 3d 596 (E.D. Mich. 2023)

*Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832 (E.D. Mich. 2018)

## STATEMENT OF MATERIAL FACTS AND RELEVANT PROCEEDINGS

Trial in this matter commenced on March 24, 2026. Following an eight-day jury trial in this Eighth Amendment deliberate indifference and municipal liability case under 42 U.S.C. § 1983, the jury returned its verdict on April 2, 2026, finding that Plaintiff Kohchise Jackson proved by a preponderance of the evidence that: (1) Defendant Dr. Keith Papendick was deliberately indifferent to Plaintiff's serious medical needs; (2) Defendant Corizon Health, Inc./CHS TX, Inc. was liable under a theory of municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); and (3) Plaintiff was entitled to punitive damages against Defendants Papendick and Corizon Health, Inc./CHS TX, Inc. ECF No. 290, PageID.10703–10705.

The jury awarded Plaintiff $7,500,000.00 in compensatory damages for non-economic harm, $300,000,000.00 in punitive damages against Defendant Corizon Health, Inc./CHS TX, Inc., and $100,000.00 in punitive damages against Defendant Keith Papendick. *Id.* at PageID.10704–05. On April 13, 2026, this Court entered judgment consistent with the verdict. ECF No. 293, PageID.10712.

That judgment now stands against an entity whose ownership and corporate structure were deliberately engineered to evade precisely this result.

Defendant Corizon Health, Inc./CHS TX, Inc., came under the control of Isaac Lefkowitz and his private equity vehicle, Perigrove 1018, LLC, in December 2021.

1

Within months, Lefkowitz, who described a similar corporate maneuver as a tool to "force plaintiffs into accepting lower settlements," implemented what nine United States Senators publicly condemned as a "Texas Two-Step" scheme. ECF No. 284-1, PageID.10622–27.

In April and May 2022, Corizon reincorporated in Texas and immediately executed a divisional merger that split the company into two entities with starkly unequal allocations of assets and liabilities. *See* ECF No. 83-4. CHS TX, Inc. (now operating as YesCare Corp.) received virtually all of Corizon's assets, including all cash except $1 million, all active contracts, employees, real estate, trademarks, and receivables. Corizon Health, Inc., later renamed Tehum Care Services, Inc., was left with all historical tort liabilities and only $1 million in cash. *Id*.

The asset extraction did not stop there. Before Tehum filed for Chapter 11 bankruptcy on February 13, 2023, more than $170 million was transferred to YesCare, and an additional approximately $31 million was funneled to Lefkowitz-affiliated entities, including M2 LoanCo, LLC and Geneva Consulting, LLC. ECF No. 162-5, PageID.6264. In total, over $200 million was removed from the entity that retained all liabilities. *Id*.

Lefkowitz personally directed the formation of the CHS entities across multiple states, and Corizon's own former CEO has since sued Lefkowitz and his associates, alleging that the divisional merger was "an old-fashioned bankruptcy

fraud scheme" designed to strip assets while avoiding liabilities, leaving hundreds of personal injury claims behind in an entity capitalized with only $1 million. See ECF No. 283-7, PageID.10387; **Exhibit 11, *Hyman v. YESCARE Corp.*, et al Complaint**.

The extraction of value through Lefkowitz-controlled intermediaries extended well beyond the divisional merger itself. Through a pre-merger consulting arrangement, Geneva Consulting, LLC, a Lefkowitz-controlled entity, received $5.5 million from Corizon for vaguely defined services, payments Lefkowitz then repeatedly failed to disclose in Tehum's bankruptcy filings. **Ex. 4 at 20.** Immediately following the divisional merger, a Management Services Agreement between CHS TX, Inc., YesCare Corp., and Geneva Consulting granted Geneva Consulting control over CHS TX's bank accounts, authority over its contracts and personnel decisions, and a lien on all of CHS TX's assets, providing effective dominion over the judgment debtor while preserving the appearance of corporate separateness. **Ex. 5.** Separately, Sigma RM, LLC, a Lefkowitz-formed entity operating under a name confusingly similar to an unrelated legitimate business, was paid $150,000 per month from the bankruptcy estate and staffed entirely by former CHS TX in-house legal personnel. **Ex. 4 at 78.**

That conduct has continued in direct response to this litigation. In January 2025, while Geneva Consulting LLC remained active, Lefkowitz quietly formed

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

3

"Geneva Consultings LLC" at 205 Powell Place, Brentwood, Tennessee, the same address as CHS TX's and YesCare's corporate headquarters, and registered "CHS TX, Inc." as one of its assumed names, creating a structure through which CHS TX's incoming payments can be diverted directly into a Lefkowitz-controlled account beyond the reach of this judgment. **Ex. 7; Ex. 8.** When a wrongful-death plaintiff in a separate proceeding thereafter sought to add Geneva Consulting LLC as a defendant on successor liability grounds, Defendants' principals dissolved Geneva Consulting LLC, and Bowman & Brooke, the same firm that defended CHS TX in this matter, argued to opposing counsel that the entity could not be named as a defendant because it no longer existed. Exhibit 6. The successor entity was subsequently renamed "TN Correct Health Services LLC" and, as of January 2026, Lefkowitz was operating it as CEO under the "Correct Health" brand. **Ex. 9; Ex. 10.**

This Court has already confirmed the continuity underlying that scheme, finding that CHS TX, Inc. is "a mere continuation of pre-division Corizon" and that "CHS TX picked up right where Corizon left off." ECF No. 89, PageID.3684–85.

Although the Bankruptcy Court confirmed a Chapter 11 Plan, it expressly permitted Plaintiff to opt out and pursue this judgment in the civil justice system. ECF No. 124-7, PageID.4529.

The result is straightforward. A $307.6 million judgment now stands against a judgment debtor whose principals have repeatedly demonstrated—through

4

bankruptcy proceedings, congressional scrutiny, and collateral litigation—a consistent and documented pattern of transferring assets beyond the reach of creditors.

## ARGUMENT

**I.   THIS COURT SHOULD EXERCISE ITS POST-JUDGMENT AUTHORITY BY ISSUING AN ORDER COMPELLING DISCOVERY AND PROHIBITING DEFENDANTS AND RELATED THIRD PARTIES FROM TRANSFERRING PROPERTY.**

A $307.6 million judgment now stands against a corporate structure deliberately engineered to evade it. The record does not present a speculative risk of asset dissipation, but a documented pattern of transferring hundreds of millions of dollars beyond the reach of creditors through the very mechanisms Defendants continue to control. Federal Rule 69 and Michigan law exist precisely for this moment. They vest this Court with broad, immediate authority to compel full financial disclosure and to restrain further transfers before the judgment is rendered meaningless. And critically, that authority does not depend on proof of completed fraud or even past misconduct. It is routinely exercised to prevent precisely the kind of asset shielding already established here. Where, as here, the judgment remains wholly unsatisfied and the risk of continued dissipation is not hypothetical but demonstrated, the requested relief is not extraordinary. It is necessary.

Both the federal rules and applicable Michigan state statutes provide robust authority to this Court to issue an order to prevent the transfer. Fed. R. Civ. P.

5

69(a)(1) provides in relevant party that: "[a] money judgment is enforced by a writ of execution. . . . The procedure on execution–and in proceedings supplementary to and in aid of judgment or execution–must accord with the procedure of the state where the court is located." Thus, Michigan law governs the relief sought here and supplies broad, supplementary enforcement powers.

Consistent with that mandate, this Court has repeatedly recognized the sweeping authority conferred by Michigan law to enforce unsatisfied judgments, including compelling discovery and restraining transfers of assets. As this Court explained:

> Michigan law grants a court broad authority to issue orders necessary for the enforcement of its judgments. After a monetary judgment has been rendered in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:
>
> > (1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;
> >
> > (2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor
>
> * * *
>
> . . . The statute also provides that "[i]t is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced." *Id.*

*Motley v. Metro Man I,* 702 F. Supp. 3d 596, 606 (E.D. Mich. 2023).

That authority is not narrow or conditional. It is intentionally broad, and designed to ensure that judgments are not rendered hollow by delay, concealment, or transfer of assets.

Similarly, in *Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832, 833–34 (E.D. Mich. 2018), this Court reaffirmed that post-judgment discovery and enforcement powers are expansive and readily available to judgment creditors:

> Michigan law provides the mechanisms to enforce monetary judgments. *See* M.C.R. 2.621 ("When a party to a civil action obtains a money judgment, that party may, by motion in that action or by a separate civil action...obtain relief supplementary to judgment under MCL 600.6101–600.6143." "**[T]he scope of postjudgment discovery is very broad**." *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007), quoting *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5thCir. 1995). Fed. R. Civ. P. 69(a)(2) provides that a judgment creditor "may obtain discovery from any person-including the judgment debtor-as provided in these rules or by the procedure of the state where the court is located."

> The statutory provisions incorporated in M.C.R. 2.621(2) give the court an expansive range of authority. Under M.C.L. § 6104(1), a court may compel discovery of any property of the judgment debtor or any property due or held in trust for the debtor. Under subsection (2) of that statute, a court may "[p]revent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor." *Id.* (emphasis added).

And that authority extends beyond the judgment debtor itself to those holding or controlling its assets. As this Court has recognized:

> In addition to broad discovery, the state statute authorizes restraining a third party from transferring a debtor's property for two years:

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

MARKO LAW

7

> When a third party having in his or its possession property or moneys belonging to the judgment debtor or who is indebted to the judgment debtor. . . is hereby forbidden to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the judgment debtor or to which he may be entitled or which may thereafter be acquired by or become due to said judgment debtor, or to pay over or otherwise dispose of any moneys due or to become due to such judgment debtor, not exempt by law from application to the satisfaction of the judgment, until the further order of the court except that such third party is not obliged to withhold the payment of any moneys beyond double the amount claimed in such subpoena by the judgment creditor. To effect such restraining provision, a copy of this section must be indorsed on or attached to the copy of the subpoena or order served on the third party.

*Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2018 WL 11437829, at *2 (E.D. Mich. Dec. 7, 2018) (quoting Mich. Comp. Laws § 600.6119(1)).

This Court has made clear that the purpose of such relief is straightforward: to ensure that a judgment creditor can actually collect on a valid judgment by restraining the transfer of assets before they disappear. As this Court explained, such orders "allow[s] a judgment creditor to obtain a restraint on the transfer of a judgment debtor's assets." *JPMorgan Chase Bank, N.A. v. Winget*, No. 08-CV-13845, 2019 WL 4492838, at *5 (E.D. Mich. July 22, 2019).

Just as important, courts in this district have repeatedly confirmed that this relief is not conditioned on any showing of prior misconduct. To the contrary, "[a]s judges in this district held recently, '[p]ost-judgment orders containing such restrictions are routinely entered by Federal District Court and Michigan State Court

8

judges, without regard to past conduct by the judgment debtor, and often on an ex-parte basis.'" *Motley*, 702 F.Supp.3d at 609 (collecting cases).

Indeed, the threshold for relief is minimal. This Court has found it sufficient where a judgment creditor simply attests to a concern that assets may be placed beyond reach, coupled with nonpayment of the judgment. *Laborers Pension Tr. Fund - Detroit & Vicinity v. USA Plumbing & Sewer Serv., Inc.*, No. 23-10437, 2023 WL 3874243, at *1 (E.D. Mich. June 7, 2023) (finding adequate an creditor attorney's affidavit "indicat[ing]… concerns that 'Defendant will place property beyond the reach of this court unless restrained from doing so by order of this court," together with the defendants' failure to satisfy the judgment).

If that minimal showing suffices, then the circumstances here more than justify relief. While no showing of misconduct is required, courts have readily granted such orders where the record reflects a history of bankruptcy maneuvering, questionable transactions, or a concrete risk of asset dissipation.

*Motley* is illustrative. There, this Court imposed a post-judgment asset-transfer prohibition and appointed a receiver where the judgment debtor's principals had deployed a network of more than sixty-five affiliated entities to move assets, orchestrated a prior bankruptcy through which assets were transferred to a new entity without approval or consideration, and initiated a foreclosure action targeting the debtor's primary asset shortly after judgment entered. *Motley*, 702 F.Supp.3d at 608–

09. The Court concluded that this pattern constituted a deliberate scheme to render the debtor uncollectable.

Critically, the Court did not require proof that fraud had already been consummated. The debtor's documented history of asset intermingling, discovery obstruction, and delay tactics was itself sufficient to justify entry of the requested relief. *Id.* at 609–12.

Here, the Court's exercise of its authority is not merely justified, it is compelled. The same relief routinely granted on far thinner records is warranted in full here. Plaintiff seeks an Order compelling discovery of any property or things in action belonging to the judgment debtor, and of any property, money, or things in action due to or held in trust for it, together with an order prohibiting Defendants from transferring any such property or assets. That relief is squarely authorized under the governing framework already set forth.

As this Court has routinely made clear, no showing of a previous conduct on behalf of the judgment debtor is required to enter an order compelling discovery or preventing the transfer of property. Even under the minimal showing recognized in *Laborers Pension*, Plaintiff has satisfied the standard. Plaintiff's counsel submits an affidavit attesting to the same concerns found sufficient in that case, coupled with the undisputed fact that the judgment remains wholly unsatisfied. **Exhibit 12, Affidavit.** That alone is enough.

10

But this case does not rest on minimal showings. It presents precisely the type of record that courts have found overwhelmingly sufficient to justify immediate post-judgment restraints. Defendants and their affiliated entities have engaged in a documented pattern of dissolution, bankruptcy maneuvering, and strategic allocation of assets and liabilities that materially heightens the risk of continued dissipation.

The comparison to *Motley* is direct and dispositive. There, this Court acted where the judgment debtor used a network of affiliated entities to move assets and orchestrated transactions that rendered the debtor uncollectable. Here, Defendants did the same on a far greater scale. Through the Lefkowitz-directed divisional merger, more than $200 million in assets was stripped from the entity retaining tort liabilities and transferred to YesCare and Lefkowitz-affiliated entities before this judgment was even entered. If the conduct in *Motley* justified the most aggressive collection remedies available, the conduct here compels at least the same result.

What further distinguishes this case, and makes the need for immediate relief more acute, is that the misconduct is not confined to the pre-judgment period. It continued throughout the pendency of this litigation and into the months immediately preceding trial. During that period, Defendants' principals dissolved a key affiliated entity holding effective control over the judgment debtor's assets at the precise moment it faced successor liability exposure in separate proceedings, with the same firm that defended CHS TX in this matter, arguing to opposing counsel that

11

the entity could not be named as a defendant because it no longer existed. **Ex. 6.** A replacement entity bearing a near-identical name, registered at CHS TX's own corporate headquarters, had already been formed and had registered the judgment debtor's name as an assumed name, a mechanism that enables direct diversion of CHS TX's receivables into an outside account. **Ex. 7; Ex. 8.** The *Motley* debtor's post-judgment maneuvering was itself sufficient to compel relief; the conduct here is more systematic, more deliberate, and more immediately threatening to the collectability of this Court's judgment.

The same is true under *Comerica Bank*. There, this Court entered ex parte orders prohibiting asset transfers and compelling creditor examinations based on an affidavit attesting only that the judgment remained unpaid and that assets might exist to satisfy it. *Comerica Bank*, 314 F.Supp.3d at 833–34. The affidavit submitted here, as well as the established factual records throughout this case, provide that same foundation and more.

In short, the risk of dissipation in this case is not hypothetical and does not depend on inference. It is established by the record of this proceeding.

Accordingly, pursuant to Mich. Comp. Laws § 600.6119(1), and consistent with this Court's authority to restrain third parties holding or controlling a debtor's assets, the requested Order should extend to Defendants and all related entities and individuals involved in the control, transfer, or possession of those assets, including

12

Corizon Health, Inc.; Tehum Care Services, Inc.; Quality Correctional Care of Michigan, P.C.; CHS TX, Inc.; Sigma RM, LLC; YesCare Corp.; Geneva Consulting, LLC; CHS AL, LLC; the Tehum GUC Liquidating Trust; the Tehum Personal Injury Trust; and any entity related to, affiliated with, or that is a successor or predecessor to any of the foregoing, together with each of their respective current and former officers, members, directors, shareholders, employees, agents, attorneys, and insurers, including Isaac Lefkowitz, as well as any additional entities or individuals identified through the compelled discovery authorized by this Court.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

13

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant

Plaintiff's Motion for Order Prohibiting Transfer of Assets and Compel Discovery

and enter an Order:

(1)    compelling Defendants to disclose all property, assets, and financial interests subject to execution;

(2)    prohibiting Defendants and all related entities and third parties acting in concert with them from transferring, encumbering, or otherwise disposing of any such assets; and

(3)    granting any further relief this Court deems just and necessary to preserve Plaintiff's ability to enforce its $307.6 million judgment.

Respectfully submitted,

*/s/ Jonathan R. Marko*
Jonathan R. Marko (P72450)
Attorney for Plaintiff
**MARKO LAW, PLLC**
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
Date: April 15, 2026    Email: jon@markolaw.com

### PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **April 15, 2026**, via:

☐ U.S. Mail        ☐ Fax
☐ Hand Delivered    ☐ Overnight Carrier
☐ Certified Mail     ☐ Other: Mi-FILE Truefiling
☒ ECF System       ☐ Email

14

_/s/ Melinda S. Morisset_

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

15