# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KOHCHISE JACKSON,

       Plaintiff,

v.

CHS TX, INC., et al.,

       Defendants

Case No.: 2:19-cv-13382-GAD-PTM

U.S. DISTRICT COURT JUDGE
HON. GERSHWIN A. DRAIN

## DEFENDANT CHS TX, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER PROHIBITING TRANSFER OF ASSETS AND COMPEL DISCOVERY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF ISSUES PRESENTED................................................................1

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................2

    I.   INTRODUCTION AND FACTUAL BACKGROUND ...............................3

    II.  ARGUMENT.........................................................................................9

       (1) Plaintiff Is Not Likely to Prevail on the Merits of Post-Trial
           Motions,  Much Less In An Amount That Justifies Their
           Request ..............................................................................11

       (2) Plaintiff Fails to Demonstrate that Plaintiff Will Be
           Irreparably Harmed ..............................................................15

       (3) CHS TX and Thousands of Prisoners Will Be Irreparably
           Harmed If Plaintiff's Motion if Granted ..................................16

       (4) Public Interest Weights Against Shutting Down CHS TX .....................17

    III. CONCLUSION.......................................................................................19

i

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allstate Ins. Co. v. Mercyland Health Servs., PLLC,*
No. 18-13336, 2021 WL 1406878 (E.D. Mich. Feb. 12, 2021) ...........................10

*Ayala v. Terhune,*
195 F. App'x 87 (2006) ......................................................................................12

*Bach v. First Union Nat. Bank,*
486 F.3d 150 (6th Cir. 2007) .............................................................................14

*Baker v. Omsbudsman,*
2:20cv36-MHT, 2023 WL 246977 (M.D. Ala. Mar. 10, 2023) ............................12

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 559 (1996) ..........................................................................................13

*Bridgeport Music, Inc. Justin Combs Pub.,*
507 F.3d 470 (6th Cir. 2007) .............................................................................14

*Chicago Title Ins. Corp. v. Magnuson,*
487 F.3d 985 (6th Cir. 2007) .............................................................................14

*Colwell v. Corizon Healthcare Inc.,*
2014 WL 6686764 (E.D. Mich. Nov. 26, 2014) .................................................11

*Comerica Bank v. Esshaki,*
314 F. Supp. 3d 832 (E.D. Mich. 2018) .............................................................17

*Denham v. State of Ariz.,*
97 F.3d 1459 (9th Cir. 1996) .............................................................................12

*Dickens v. Withrow,*
915 F.2d 1571 (6th Cir. 1990) ...........................................................................12

*Holmes v. City of Massillon,*
78 F.3d 1041 (6th Cir. 1996) .............................................................................15

*Hopper v. McFadden,*
No. 3:22-cv-00454-MR, 2023 WL 7434980 (W.D.N.C. Nov. 8, 2023) ..............12

*JPMorgan Chase Bank, N.A. v. Winget,*
No. 08-CV-13845, 2019 WL 4492838 (E.D. Mich. July 22, 2019) ....................10

*Kidis v. Reid,*
976 F.3d 708 (6th Cir. 2020) .............................................................................14

*Laborers Pension Tr. Fund - Detroit & Vicinity v. USA Plumbing & Sewer Serv., Inc.,*
No. 23-10437, 2023 WL 3874243 (E.D. Mich. June 7, 2023) ............................17

*Laborers' Pension Trust Fund – Detroit & Vicinity v. Telegraph Paving Co.,*
2012 WL 2018054 (E.D. Mich. 2012) ...................................................................10
*Morgan v. New York Life Ins. Co.,*
559 F.3d 425 (2009) ...........................................................................................14
*Motley v. Metro Man I,*
702 F. Supp. 3d 596 (E.D. Mich. 2023) ...............................................................16
*Prime Rate Premium Fin. Corp. v. Larson,*
No. 14-12397, 2019 WL 13204112 (E.D. Mich. Apr. 15, 2019).........................10
*Ross v. Carpenter,*
No. 3:15-CV-03013-RAL, 2016 WL 3223620 (D.S.D. June 8, 2016)................12
*Ross v. Carpenter,*
676 F.App'x 612 (8th Cir. 2017)..........................................................................12
*Seales v. Zberkot,*
2019 WL 3309070 (E.D. Mich. April 19, 2019)...................................................14
*State Farm Mut. Auto. Ins. Co. v. Campbell,*
538 U.S. 408 (2003) ..................................................................................... 13, 14
*Swarbrick v. Frantz,*
No. 11-cv-01696-WYD-MJW, 2012 WL 833882 (D. Colo. Feb. 21, 2012).......12
*Swift v. Edelman,*
2018 WL 6438614 (W.D. Mich. Nov. 8, 2018) ...................................................12

Statutes

M.C.L.A. 600.6104 ...................................................................................... 9, 10

Rules

Fed. R. Civ. P.50(b) ..................................................................................... 5, 10, 11
Fed. R. Civ. P. 59(b), (e)...........................................................................................5
Fed. R. Civ. P. 59(d) .................................................................................................5
Fed. R. Civ. P. 62(a)..................................................................................................3
MCR 2.614..................................................................................................................9

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should Order an unlimited freeze of CHS TX's assets based on the judgment entered on April 13, 2026 when Federal Rule of Civil Procedure 62 provides that execution on a judgment and proceedings to enforce it are automatically stayed for 30 days after its entry and the thirty-day period has not passed?

> Defendant's Answer:  No
> Plaintiff's Answer:  Yes
> The Court Should Answer:  No

2.      Whether the Court should Order an unlimited freeze of CHS TX's assets based on the jury's verdict before the Court has considered or ruled on CHS TX's post-trial motions seeking judgment as matter of law, a new trial, or remittitur of compensatory and punitive damages, and when doing so would cause immediate irreparable harm to CHS TX's business and jeopardize the healthcare of over 15,000 offenders?

> Defendant's Answer:  No
> Plaintiff's Answer:  Yes
> The Court Should Answer:  No

1

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Allstate Ins. Co. v. Mercyland Health Servs., PLLC,* No. 18-13336, 2021 WL 1406878, at *10 (E.D. Mich. Feb. 12, 2021)

*Laborers' Pension Trust Fund – Detroit & Vicinity v. Telegraph Paving Co.,* 2012 WL 2018054 (E.D. Mich. 2012) (restraining transfers "only outside the ordinary course of business")

*JPMorgan Chase Bank, N.A. v. Winget*, No. 08-CV-13845, 2019 WL 4492838, at *5 (E.D. Mich. July 22, 2019)

*Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2019 WL 13204112, at *2 (E.D. Mich. Apr. 15, 2019)

*Steinberg v. Young*, 641 F.Supp.2d 637, 641 (E.D. Mich. 2009)

MCR 2.614

M.C.L.A. 600.6104

2

## I.  INTRODUCTION AND FACTUAL BACKGROUND

Defendant CHS TX, Inc. ("CHS TX") is a Texas corporation with its headquarters in Brentwood, Tennessee.  CHS TX was formed on May 5, 2022.  CHS TX is party to 14 active contracts to provide correctional healthcare to incarcerated offenders, including in the St. Clair, Michigan county jail.  In total, CHS TX is responsible for the Constitutionally-protected health care of approximately 15,800 incarcerated offenders.  *See* **Exhibit A**, Affidavit of James T. Sprouse, dated April 28, 2026 ("Sprouse Aff."), at ¶ 2-4.  CHS TX has approximately 500 creditors.  Most of CHS TX's creditors are health care facilities, practices, and providers, including government and/or government-related entities, and third-party vendors necessary to conduct CHS TX's business.  *See* Sprouse Aff., ¶ 5.

On April 2, 2026, Plaintiff obtained a jury verdict against CHS TX, awarding $7.5 million in compensatory damages and $300 million in punitive damages.[1]  ECF. No. 290.  The Court entered judgment against CHS TX on April 13, 2026.  ECF. No. 293.  Pursuant to Federal Rule of Civil Procedure 62(a), the automatic 30 day stay of execution on a judgment and proceedings to enforce it will not pass until May 13, 2026.  Plaintiff has not moved for an Order lifting the Rule 62 automatic stay.

---

[1]  The jury also awarded $100,000 in punitive damages against Defendant Keith Papendick, M.D.

3

CHS TX's liability was premised solely on the Court's pretrial ruling that CHS TX bore successor liability for the conduct of Corizon Health, Inc., ("Corizon").   Corizon is the entity that held the contract with the Michigan Department of Corrections ("MDOC") when Plaintiff was in prison from March 2017-May 2019.   Corizon's contract with the MDOC expired on September 28, 2021.   *See* P. Tr. Ex. 1, p.1.   Corizon, later renamed Tehum Care Services, Inc. ("Tehum"), filed for Chapter 11 bankruptcy on February 13, 2023 in the U.S. Bankruptcy Court for the Southern District of Texas (Houston Division), Case No 23-90086.   Plaintiff decided to opt-out of the now-effective Bankruptcy Plan, including any recovery Plaintiff could have had through the relevant "PI/WD Trust" created by the Plan, in order to pursue his successor liability claim against CHS TX. Tehum's bankruptcy case remains active.   The successor to Tehum is now represented solely by the Trustee of the GUC Trust.

On April 15, 2026—just two days after the Court entered the judgment— Plaintiff filed a "Motion for Order Prohibiting Transfer of Assets and Compel Discovery." ECF. No. 294.  Plaintiff has not served any post-trial discovery on CHS TX.  Plainitff's motion nevertheless seeks an Order compelling CHS TX "to disclose all property, assets, and financial interests subject to execution."

Plaintiff's motion also seeks an Order "prohibiting [CHS TX] and all related entities and third parties acting in concert with them from transferring, encumbering,

or otherwise disposing of such assets." *Id*.  The Plainitff's brief identifies the following entities it seeks to encumber other than CHS TX: "Corizon Health, Inc., Tehum Care Services, Inc., Quality Correctional Care of Michigan, P.C., Sigma RM, LLC, YesCare Corp., Geneva Consulting LLC, CHS AL, LLC, the Tehum GUC Liquidating Trust, the Tehum Personal Injury Trust," Issac Lefkowitz, and "any entity related to, affiliated with, or that is a successor or predecessor to any of the foregoing, together with each of their respective current of former officers, members, directors, shareholder, employees, agent, attorney, and insurers."  Pl. Br, p. 13.  To CHS TX's knowledge, Plaintiff has not served its Motion on any entity or person other than CHS TX through the Court's ECF system.

Pursuant to Federal Rule of Civil Procedure 50(b), CHS TX has 28 days after the entry of judgment to file a renewed motion for judgment as a matter of law, and may include an alternative request for a new trial and/or a motion to alter or amend judgment, including a request to remit the compensatory damages award and the punitive damages award.  *See* Fed. R. Civ. P. 59(b), (e).  Further, the Court may order a new trial on its own imitative no later than 28 days after the entry of judgment, or, after giving the parties notice and an opportunity to be heard, or for reasons not stated in CHS TX's motion.  Fed. R. Civ. P. 59(d).  CHS TX's post-trial motions are due to be filed on or before May 11, 2026.

Plainitff's Motion is based on several false factual assertions and on unfounded speculation that CHS TX may make improper efforts to avoid paying the judgment. But notably absent from Plaintiff's Motion is any allegation or demonstration that CHS TX has engaged in impropriety relating to its finances. In response to the allegations and innuendo in Plaintiff's motion, the facts are:

- "Geneva Consulting, LLC," "Geneva Consultings, LLC," "TN Correct Health Services LLC," or "Correct Health" do not have any contractual agreements to have control over the assets of CHS TX or YesCare Corp. The allegation in Plainitff's motion that one or more of these entities is part of a "a structure through which CHS TX's incoming payments can be diverted into an [Isaac] Lefkowitz-controlled account beyond the reach of this judgment" is false. *See* Sprouse Aff., ¶ 6. To the extent Plaintiff alleges that ***Corizon*** paid Geneva Consulting LLC $5.5 million "***before*** the divisional merger and bankruptcy," i.e., prior to May 2022, this allegation says nothing about CHS TX or its recent activity. Plaintiff concedes that Geneva Consulting LLC was dissolved in 2025.

- Plaintiff asserts "[t]here is a substantial risk that these assumed name certificates [relating to Geneva Consultings LLC] allow Mr. Lefkowitz to deposit checks made out to entities like CHS TX, Inc. directly into Geneva Consultings, LLC's bank accounts, such that CHS TX, Inc.'s income can be diverted and concealed from creditors." There is no risk of that occurring because Geneva

6

Consultings LLC, TN Correct Health Services LLC, and/or Correct Health do not have any contractual agreements to have control over the assets of CHS TX or YesCare Corp.  Sprouse Aff., ¶ 7.

- Quality Correctional Care of Michigan, P.C. ("QCCM") is not a parent, subsidiary, or corporate sibling of CHS TX, Inc., and does not have access to, control over, or the right to access or control CHS TX's bank accounts or other assets. QCCM is the physician-owned entity, as required by Michigan law, that currently provides health care to approximately 360 inmates in the St. Clair, MI county jail. CHS TX has a services contract with QCCM under which QCCM provides its services to those inmates.  QCCM has no other contract with CHS TX.  Sprouse Aff., ¶ 8.

- CHS TX does not have any corporate relationship with Tehum Care Services, Inc. (fka Corizon Health, Inc.), which filed for Chapter 11 bankruptcy on February 13, 2023 in the U.S. Bankruptcy Court for the Southern District of Texas, Case No.  23-90086.  On March 3, 2025, the Bankruptcy Court entered an Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor. *See* Bnkr. Doc. No. 2014.  Tehum is not involved in the control, transfer, or possession of CHS TX's assets and does not have any right to control, transfer, or possess them.  Sprouse Aff., ¶ 9.

7

- Plaintiff refers to a "Tehum GUC Liquidating Trust" and a "Tehum Personal Injury Trust" (the "Trusts"), which mis-identifies the Plan's "GUC Trust" and the "PI/WD Trust."  Regardless, the Trusts are not involved in the control, transfer, or possession of CHS TX's assets and do not have any right to control, transfer, or possess them.  Sprouse Aff., ¶ 10.

- CHS AL, LLC is not a parent or subsidiary of CHS TX.  CHS AL, LLC is not involved in the control, transfer, or possession of CHS TX's assets and does not have any right to control, transfer, or possess them.  Sprouse Aff., ¶ 11.

- Plaintiff's motion refers to a potential Corizon transaction in 2022 relating to COVID testing kits.  As Plaintiff concedes, this transaction *did not occur* and the potential transaction did not involve CHS TX, Inc.  Pl. Br. p. 4-5.

- Plaintiff alleges that Sigma RM, LLC provided risk management services and was paid "out of the Debtor's bankruptcy estate."  Payments made *by Tehum's bankruptcy estate* do not involve CHS TX's finances.  Pl. Br. p. 8.

If CHS TX cannot receive or transfer its assets in the ordinary course of business, CHS TX would be unable to maintain employees, purchase medical products or pharmaceuticals, pay its creditors, fulfill its contractual obligations to government entities, or otherwise conduct the business necessary to provide correctional healthcare to over 15,000 offenders.  Shutting down CHS TX's business would also harm Plaintiff's ability to obtain satisfaction on any judgment that the

Court enters after considering post-trial motions, if any, because CHS TX cannot earn its anticipated revenue if it cannot transact business in the ordinary course. Sprouse Aff., ¶ 12-13.

## II.   ARGUMENT

CHS TX is responsible for the Constitutionally-protected health care of approximately 15,800 incarcerated offenders, including in the St. Clair County, Michigan jail in this District.  Without even mentioning the standard for obtaining injunctive relief, Plaintiff's motion asks the Court to enjoin CHS TX from transferring any of its assets for any purpose in anticipation of being able to collect on the jury's verdict.  Granting this request would effectively shut down CHS TX's business and put the health care of over 15,000 offenders in immediate jeopardy based on the Plainitff's speculation and false assertions.  The Court should not allow that to happen.

M.C.L.A. 600.6104 on its face does not require that the Court take any action. Section 6104 provides that a judge "may" take certain actions including "[m]ake any order as within his directions seems appropriate."  Notably, MCR 2.614 provides that where a motion for a new trial or motion for other relief from judgment is timely filed, "execution may not issue on the judgment and proceedings may not be taken for its enforcement ***until the expiration of 21 days after entry of the order deciding the motion***, unless otherwise ordered by the court on motion for good cause."  Thus,

Michigan expressly recognizes that a court will normally decide post-trial motions seeking relief from judgment before efforts to collect the judgment are contemplated. That is the sensible approach the Court should take here. The Court should decline to rule on Plainitff's motion until after it has decided post-trial motions.

Whenever the Court considers Plainitff's request, the Court should not impose the limitless asset freeze that Plaintiff seeks. Courts considering requests pursuant to M.C.L.A. 600.6104 routinely limit restraints only outside the ordinary course of business. *See Allstate Ins. Co. v. Mercyland Health Servs., PLLC,* No. 18-13336, 2021 WL 1406878, at *10 (E.D. Mich. Feb. 12, 2021) (limiting asset transfers "outside (1) the ordinary course of their business and (2) the payment of ordinary personal expenses."); *Laborers' Pension Trust Fund – Detroit & Vicinity v. Telegraph Paving Co.,* 2012 WL 2018054 (E.D. Mich. 2012) (restraining transfers "only outside the ordinary course of business"). *Accord JPMorgan Chase Bank, N.A. v. Winget*, No. 08-CV-13845, 2019 WL 4492838, at *5 (E.D. Mich. July 22, 2019) (approving "restraint on transfer of property only outside the ordinary course of business"); *Prime Rate Premium Fin. Corp. v. Larson*, No. 14-12397, 2019 WL 13204112, at *2 (E.D. Mich. Apr. 15, 2019) (restraining transfer "except in the ordinary course of business").

Although Plainitff's motion does not discuss it, the relief Plaintiff seeks is equivalent to an injunction. *See, e.g., Steinberg v. Young*, 641 F.Supp.2d 637, 641

(E.D. Mich. 2009) (applying injunction factors to deny request for asset transfer freeze). Plainitff's request should be denied for the same reasons an injunction would be denied.

### (1) Plaintiff Is Not Likely to Prevail on the Merits of Post-Trial Motions, Much Less In An Amount That Justifies Their Request

CHS will file Rule 50 and Rule 59 motions on or before May 11, 2026 seeking judgment as a matter of law, or in the alternative, a new trial and/or remittitur of compensatory and punitive damages. The Court should not contemplate whether CHS TX should be subject to some form of asset transfer limitation until the Court has first considered and ruled on CHS TX's post-trial motions and determined that there is even a judgment for Plaintiff to collect.[2]

As CHS TX will argue, CHS is entitled to judgment as a matter of law because, amongst other reasons, no reasonable jury adequately instructed on the law could have found that Plaintiff proved his *Monell* claim. Plaintiff failed to introduce evidence that any identifiable Corizon provider made a deliberate decision to delay his colostomy reversal surgery "solely or primarily" as a result of an alleged formal, illegal Corizon cost-cutting policy rather than based on their medical judgment. *See Colwell v. Corizon Healthcare Inc.,* 2014 WL 6686764, *4-5 (E.D. Mich. Nov. 26,

---

[2]     CHS TX expressly preserves all arguments in support of judgment as a matter of law, or in the alternative, a new trial and/or remittitur of compensatory and punitive damages. This brief is not intended to describe all of CHS TX's Rule 50 or 59 arguments and does not waive any arguments.

2014), *aff'd* (6th Cir. 2015) (prison physician "not deliberately indifferent to [plaintiff's] health by requiring him to continue with conservative treatment" rather than ordering surgery consult.").  In the absence of demonstrating a direct causal connection between his purported *Monell* cost-cutting theory and the decisions made by Plaintiff's providers about his desire for a colostomy reversal surgery—and especially absent any medical complications—this case proved to be no different than the litany of cases that have rejected Plaintiff's **exact** claim as a matter of law. *See Dickens v. Withrow* 915 F.2d 1571 (6th Cir. 1990) (affirming dismissal of a claim by a Michigan prisoner that his Eighth Amendment rights were violated "by refusing to immediately schedule him for surgery to repair his colon (a colostomy closure)" and by keeping him on a sixteen-month waiting list.); *Denham v. State of Ariz.,* 97 F.3d 1459 (9th Cir. 1996) ("The evidence shows that an operation to close a colostomy, and by extension, the procedure to determine the appropriateness of closure, are not medically urgent procedures."); *Ross v. Carpenter*, No. 3:15-CV-03013-RAL, 2016 WL 3223620 (D.S.D. June 8, 2016) ("Ross's belief that he cannot regain a 'somewhat normal life style[ ] and bodily function' because the colostomy is 'gross' and has an 'odor' does not establish medical necessity under a serious medical need analysis"), *aff'd*, 676 F. App'x 612 (8th Cir. 2017); *Ayala v. Terhune*, 195 F. App'x 87 (2006) (3d Cir. 2006) (affirming district court's holding that a failure to approve colostomy reversal surgery for eight years did not constitute

deliberate indifference); *Hopper v. McFadden*, No. 3:22-cv-00454-MR, 2023 WL 7434980, at *8 (W.D.N.C. Nov. 8, 2023) (granting summary judgment when the need for colostomy reversal was not "urgent or emergent"). *See also Baker v. Omsbudsman*, No. 2:20-cv36-MHT, 2023 WL 246977 (M.D. Ala. Mar. 10, 2023); *Swift v. Edelman*, 2018 WL 6438614 (W.D. Mich. Nov. 8, 2018); *Swarbrick v. Frantz*, No. 11-cv-01696-WYD-MJW, 2012 WL 833882, at *9 (D. Colo. Feb. 21, 2012). The notion that the same exact medical circumstance that resulted in dismissal of these Eighth Amendment cases as a matter of law could support a deliberate indifference claim in this case turns the law on its head.

CHS TX will also seek, in the alternative, a new trial and/or remittitur of the jury's compensatory damages award and punitive damages award. In particular, the Court should recognize the fundamental unfairness and irreparable harm that would be caused if the Court based any asset freeze on the jury's facially unconstitutional punitive damages award. The Fourteenth Amendment and the Fifth Amendment's Due Process Clause "prohibit[] the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). Due process requires that before a punitive damages award may issue, one must have received "fair notice" both of what conduct is prohibited as well as "the severity of the penalty that a State may impose" when a person commits the prohibited

13

conduct.  *State Farm*, 538 U.S. at 417.  Otherwise, the award "furthers no legitimate purpose" and "constitutes an arbitrary deprivation of property."  *Id*.

As noted, the "fair notice" of precedent is that the exact medical circumstance at issue fails to support an Eighth Amendment case and, therefore, cannot possibly serve as a basis for punitive damages.  "Even where the jury has found an entitlement to punitive damages, the appropriate punitive damages award may still be zero."  *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1001 (6th Cir. 2007) (applying the *State Farm* factors and holding that the district court erred in upholding a jury verdict for any punitive damages following the jury's $32.4 million punitive damages and $10.8 million compensatory damages award).  The Court should decline to permit punitive damages in light of the precedent rejecting Plaintiff's exact claim.

The Supreme Court's "guideposts tightly constrain the range of constitutionally acceptable awards" even when an award is permitted.  *Kidis v. Reid*, 976 F.3d 708, 715 (6th Cir. 2020).  The Supreme Court and Sixth Circuit have made clear that, as here, "[w]hen compensatory damages are substantial, then a lesser ratio, ***perhaps only equal to compensatory damages***, can reach the outermost limit of the due process guarantee."  *Bridgeport Music, Inc. Justin Combs Pub.*, 507 F.3d 470, 488-489 (6th Cir. 2007) (quoting *State Farm,* 538 U.S. at 425) (emphasis added); *Morgan v. New York Life Ins. Co.*, 559 F.3d 425 (2009) (requiring reduction of  $10

million punitive damages award at a 1.67:1 ration "by a significant amount"); *Bach v. First Union Nat. Bank,* 486 F.3d 150, 156–57 (6th Cir. 2007) (ordering "no more" than a 1:1 ratio); *Seales v. Zberkot*, 2019 WL 3309070, *6 (E.D. Mich. April 19, 2019) (Drain, J.) (reducing punitive damages from 2:1 to 1:1 ratio); *rev'd on other grounds*, 959 F.3d 235, 240 (6th Cir. 2020) (holding the District Court should have granted defendant's motion for judgment as a matter of law).

Although the grossly excessive compensatory damages award and unconstitutional punitive damages awards both support a new trial, *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996), the Court should at a minimum recognize now that the amount of the jury's verdict will not survive scrutiny and that post-trial motions will, at the very least, eliminate most of the jury's award. The Court should therefore table any consideration of Plaintiff's motion until the amount of an appealable judgment is known - if any - or in the alternative, base any decision on the likely remitted award.

### (2) Plaintiff Fails to Demonstrate that Plaintiff Will Be Irreparably Harmed

Plaintiff's motion fails to demonstrate that Plaintiff will be irreparably harmed if the Court does not grant the motion. As an initial matter, Plaintiff does not argue that the Court should lift the Rule 62 automatic stay that prevents Plaintiff from taking action to collect on the judgment until at least May 13, 2026. Plaintiff also fails to consider that the amount of the jury's verdict will not withstand scrutiny.

15

The Court should not base a ruling on speculation and innuendo. Plaintiff fails to allege, much less demonstrate, that **CHS TX** has ever taken any action to hide or improperly divert funds for the purposes of avoiding paying this judgment. Moreover, shutting down CHS TX's business would actually harm Plaintiff's ability to obtain satisfaction on any judgment that the Court enters after considering post-trial motions, if any, because CHS TX cannot earn its anticipated revenue if it cannot transact business in the ordinary course.

### (3) CHS TX and Thousands of Prisoners Will Be Irreparably Harmed If Plainitff's Motion if Granted

Shutting down CHS TX's ability to pay its bills in the ordinary course of business would put hundreds of people out of work and put the Constitutionally-protected health care rights of thousands of prisoners – including those in the St. Clair County jail in this District - in immediate jeopardy as states and other municipalities would have to scramble to find ways to continue care. Plaintiff's request to shut down CHS TX is therefore the height of hypocrisy. If Plainitff's theory at trial was that CHS TX should have spent even more money on patient care, their theory now appears to be that thousands of prisoners should be immediately denied care so the money that would be spent on their care can be paid instead to Plaintiff (and his lawyers). An out-of-control jury verdict that will not survive post-trial motions should not be permitted to shut down a company, chill an entire health care industry, and put the care of thousands of prisoners at immediate risk –

16

especially where, as Plaintiff's own evidence acknowledged, are "sicker than the average community dweller" and cannot just "go somewhere else."   Tr. Tans. 3/30/26, pg. 23 (Rettler).

**(4)  Public Interest Weights Against Shutting Down CHS TX**

For the same reasons as explained above, public interest weighs heavily against shutting down CHS TX's ability to conduct is ordinary business.

Plaintiff's reliance on *Motley v. Metro Man I,* 702 F. Supp. 3d 596, 600 (E.D. Mich. 2023) only underlines why their requested relief is premature and should be denied.  Judgment in *Motely* was entered on January 4, 2023.  On June 14, 2023, the Court amended judgment to award attorney's fees, costs, and interest.  Plaintiff did not file a motion seeking to prevent the Defendant from transferring property until October 3, 2023—ten months after the Court entered judgment and almost four months after the Court entered the amended judgment.  In the between entry of judgment and the Plainitff's motion, the plaintiff made several unsuccessful attempts to collect on the judgment, including service of a subpoena duces tecum on Defendant which the defendant did not comply with.   Plainitff's motion was therefore based on allegations that the Defendant's owners were engaged in a post-judgment scheme to hide Defendant's assets and frustrate collection of the judgment.

None of these facts are present or alleged here.  Plaintiff's motion came only 2 days after the Court entered judgment.  Plaintiff has not made any effort to collect

17

on the judgment (and cannot do so now) and the Court has not yet considered post-trial motions or entered a final appealable Order.  The cases on which Plaintiff relies also involved certainty on the amount of the judgment.    In *Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832 (E.D. Mich. 2018), there was "stipulated amended judgment" against signators and guarantors of loans from Plaintiff to Comerica Bank totaling approximately $6 million and prior efforts to obtain a creditor's exam.  *Id*. at 833.    In *Laborers Pension Tr. Fund - Detroit & Vicinity v. USA Plumbing & Sewer Serv., Inc*., No. 23-10437, 2023 WL 3874243, at *1 (E.D. Mich. June 7, 2023), there was a judgment by default of $42, 995.08 plus interest and prior collection efforts.

None of the cases on which Plaintiff relies involved a trial resulting in an impermissibly excessive compensatory damages award or an out-of-control, facially unconstitutional punitive damages award.  None involved complex and dispositive legal questions that will likely be the subject of appeal regardless of decisions on post-trial motions, such as whether Texas companies entering into a valid contract governed by Texas law have a right to have their choice of law relating to the disposition of assets enforced in other jurisdictions.  And none involves an outcome that flies in the face of voluminous precedent rejecting the same exact claim that Plaintiff asserted here.

18

Accordingly, the Court should deny Plainitff's motion in its entirety. At a minimum, the Court should defer consideration of Plaintiff's motion, including the request for post-trial discovery, until after the Court has ruled on CHS TX's post-trial motions.

## III. CONCLUSION

For the foregoing reasons, CHS TX requests that the Court deny Plaintiff's "Motion for Order Prohibiting Transfer of Assets and Compel Discovery."

Dated: April 29, 2026            Respectfully submitted,

**BOWMAN AND BROOKE LLP**

By:    /s/*Sunny Rehsi*
         Sunny Rehsi (P80611)
         101 W. Big Beaver Road.,
         Suite 1100 Troy, MI 48084
         248.205.3300
         sunny.rehsi@bowmanandbrooke.com

         Adam Masin (Admitted 5/1/2025)
         750 Lexington Avenue
         New York, NY 10022
         646.914.6790
         adam.masin@bowmanandbrooke.com

         Rachel B. Weil (Admitted 7/16/25)
         123 South Broad Street, Suite 1512
         Philadelphia, PA 19109
         267.908.7097
         rachel.weil@bowmanandbrooke.com

         *Attorneys for Defendants CHS TX, Inc. d/b/a YesCare*

19

## CERTIFICATE OF SERVICE

I certify that, on April 29, 2026, a copy of the foregoing document in the above-captioned proceeding has been served upon the attorneys listed below via electronic mail:

**Ian T. Cross** (P83367)
Cross Law PLLC
Attorneys for Plaintiff
402 W. Liberty St.
Ann Arbor, MI  48103
724.994.9590
ian@lawinannarbor.com

**Laurence H. Margolis** (P69635)
Margolis Law Firm
Attorneys for Plaintiff
214 South Main St., Suite 202
Ann Arbor, MI 48104
734.994.9590
assistant@lawinannarbor.com

**Jonathan R. Marko** (P72450)
**Michael L. Jones** (P85223)
**Allie J. Faris** (P88654)
Marko Law, PLLC
220 W. Congress, 4th Floor
Detroit, MI 48226
313.777.7529
jon@markolaw.com
michael@markolaw.com
allie@markolaw.com

**BOWMAN AND BROOKE LLP**

By:   /s/*Sunny Rehsi*
Sunny Rehsi (P80611)
101 W. Big Beaver Road.,
Suite 1100 Troy, MI 48084
248.205.3300
sunny.rehsi@bowmanandbrooke.com

20

Adam Masin (Admitted 5/1/2025)
750 Lexington Avenue
New York, NY 10022
646.914.6790
adam.masin@bowmanandbrooke.com

Rachel B. Weil (Admitted 7/16/25)
123 South Broad Street, Suite 1512
Philadelphia, PA 19109
267.908.7097
rachel.weil@bowmanandbrooke.com

*Attorneys for Defendants CHS TX, Inc. d/b/a
YesCare and Keith Papendick, M.D.*

21